UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| RED BARN MOTORS, INC, DONALD B. RICHARDSON, AND BARBARA A. RICHARDSON | CIVIL ACTION NO. 13-00778 |
| VERSUS | JUDGE BRIAN A. JACKSON |
| NEXTGEAR CAPITAL, INC, as successor-in-interest to DEALER SERVICES CORPORATION, and LOUISIANA'S FIRST CHOICE AUTO AUCTION, L.L.C. | MAG. RICHARD L. BOURGEOIS, JR. |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## REPLY MEMORANDUM OF LOUISANA'S FIRST CHOICE AUTO AUCTION TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

### MAY IT PLEASE THE COURT:

Louisiana's First Choice Auto Auction, L.L.C. ("First Choice") submits this reply in response to Plaintiffs' opposition. For the reasons set forth in its original brief, and as more fully set forth herein, First Choice should be granted the relief requested in its motions.

### The Louisiana Additional Default Remedies Act Is Inapplicable to First Choice

The Louisiana Additional Default Remedies Act (LSA-R.S. 6:966) ("the ADRA") provides the procedure by which a "secured party" may enforce a security interest against a defaulting debtor, without previous citation or judgment. The Act is intended for the benefit of secured parties who comply with the procedure provided therein.

Plaintiffs acknowledge in their memorandum that Defendant, First Choice, is not a secured party under the ADRA. Indeed, there has never been any lender-debtor relationship between First Choice and Plaintiffs. First Choice is not a lender at all. It is in the business of conducting auctions

1

of vehicles. Nevertheless, Plaintiffs seek to hold First Choice responsible for alleged violations of the ADRA. Specifically, as alleged in Count III of Plaintiffs' Complaint, First Choice and the secured party "seized" the "between eleven and fourteen Red Barn vehicles…without providing proper notice to Red Barn," and that First Choice and the secured party "illegally seized Red Barn assets by failing to abide by the requirements as set forth in" the ADRA. (Complaint, Paragraphs 35-36).

Plaintiffs creatively argue in their opposition that First Choice was acting as a "repossession agent." Not only do Plaintiffs fail to make that allegation in their Complaint, the reality is that the vehicles, if one tries to make sense of the Complaint, were already in the possession of First Choice and it repossessed nothing. While First Choice believes that discovery will show that First Choice did not "seize" any vehicles or even turn any vehicles over to the secured party without the authority of Red Barn, First Choice submits that it should not be required to incur the expense and inconvenience of pursuing discovery, as Plaintiffs cannot allege a claim against First Choice under the ADRA.

First Choice refers this Court to the 2005 opinion of the Attorney General for the State of Louisiana, which is described as an opinion that provides a general overview of the rules and procedures, regarding self-help repossession laws…." The Opinion describes the statute as intend to "provide additional remedies on default by a debtor under a secured transaction, entitling the secured party to obtain possession and dispose of motor vehicles in which they have a security interest." La. Atty. Gen. Op. No. 05-0020 (La.A.G.), 2005 WL 658804. (A copy is attached to this Reply Memorandum.) Thus, if the "secured party" in this case or any other fails to comply with the procedures required to obtain possession of the vehicle in which it has a security interest, any claim that the debtor might have should be solely against the secured party, and not against an

2

innocent third party, such as First Choice, who had nothing to gain by permitting the vehicles to be removed from its property.

Finally, although is evident that First Choice is not a "repossession agent" as contemplated by the statute, First Choice submits that it would be a matter for the State, and not a private party such as Red Barn, to assert a claim against First Choice for failure to obtain a "repossession agent license."

The ADRA is intended to assist a secured party in obtaining possession of its collateral. If the secured party here, NextGear, failed to comply with the procedure, then Plaintiffs' ADRA claim is against NextGear, and not against First Choice.

## Plaintiffs Did Not State A Clam For Conversion Against First Choice

While the title of Plaintiffs' Count III references "Conversion and Illegal Seizure," the word "conversion" does not appear in any of the six paragraphs of allegations stated in this Count. Plaintiffs' allegations of conversion appear to be based exclusively on the purported breaches of the ADRA. For the reasons already set forth hereinabove, the ADRA is inapplicable to First Choice.

Further, Plaintiffs cite *Chrysler Credit Corp. v. Whitney National Bank*, 51 F.3d 553 (5th Cir. 1995), as support for their claim against First Choice for conversion. However, the facts in *Chrysler* Credit are easily distinguished.

In *Chrysler Credit*, a dispute arose between two primary creditors for Toyota of Jefferson, namely, Chrysler Credit Corp. and Whitney National Bank. *Id* at 555. Toyota's primary operating account was held at Whitney, and Whitney also provided personal loans to the Normands, the owners of Toyota. Chrysler Credit provided floor plan financing for new vehicles sold by Toyota.

During the existence of the floor plan agreement with Chrysler, Toyota was overdrawn in its operating account with Whitney, and Whitney began covering Toyota's checks to Chrysler when they were insufficient funds in Toyota's account. Toyota began depositing proceeds from the sale of cars directly into its Whitney account, rather than pay Chrysler Credit, in violation of the floor plan agreement. Finally, Whitney dishonored two checks that Toyota wrote to Chrysler, and Toyota filed for bankruptcy.

Thereafter, Chrysler sued Whitney for conspiring with Toyota to commit the tort of conversion. The Fifth Circuit affirmed the district court's judgment against Whitney for conversion, finding that: "Whitney did not merely inadvertently assist tortious activity by Toyota." In fact, "Whitney was aware of its role and knew that it was furthering a tortious scheme." *Id* at 557. The evidence made it clear that "Whitney's relationship with Toyota and the Normands was beyond the boundaries of normal and ordinary banking practices." *Id*.

In stark contrast to the facts in *Chrysler Credit*, First Choice did not benefit in any manner by the alleged turnover of Red Barn vehicles to NextGear. Nor have Plaintiffs alleged any such benefit. While it is still unclear as to what vehicles are at issue, and why those vehicles were located on First Choice's property, the fact is that First Choice did not conspire with NextGear, had no motive to conspire with NextGear, and received no benefit by the removal of the vehicles from its property (regardless of what vehicles are involved or how they were removed). The distinctions from the *Chrysler Credit* case demonstrate precisely why First Choice should be dismissed from this lawsuit.

First Choice gained nothing from the act of turning these vehicles over to NextGear, whom they reasonably believed to hold superior title. Accordingly, Plaintiffs claim of conversion should be dismissed.

4

## The Vehicles Must Be Identified In The Complaint

Plaintiffs, presumably in an attempt to cure their failure to provide in their Complaint an adequate description of the vehicles at issue, attached to their brief eleven sheets of paper that identify vehicles by year, make, color, model and VIN No. The documents also state the date of purchase and identify the seller as First Choice. The documents are not, however, titles to vehicles. If these documents are intended to describe the vehicles at issue, then the vehicles need to be identified in the Complaint itself. This is particularly true, as it is perplexing as to how the vehicles that Plaintiffs claim (according to the documents) were purchased from First Choice are the vehicles that it also claims were "seized" by First Choice.

As stated in its original memorandum, in the event that First Choice is not dismissed from this lawsuit on its motion to dismiss, then First Choice requires a more definite statement in the Complaint as to the vehicles at the center of this litigation.

## Barbara A. Richardson is not a Proper Party Plaintiff

Mrs. Richardson contends that her "one-half interest in their community property is threatened by the attempts of NextGear to seek performance against her husband under the guarantee." This interesting argument would entitle any non-signatory spouse to any contract, including any loan or guaranty, to individually file suit against the creditor to protect the undivided community in which that non-signatory spouse owns an undivided one-half interest. To take this further, if one spouse signs a contract, and the other non-signatory spouse is concerned that the contract is void or illegal, can the non-signatory spouse initiate a lawsuit even if the signatory spouse has no interest in doing so or disagrees with the interpretation of the non-signatory spouse? These are interesting questions. First Choice submits, as a matter of law, public policy, and

common sense, the issue should be resolved against permitted Mrs. Richardson to proceed as a plaintiff in this case.

## Conclusion

For the reasons stated hereinabove and in its original memorandum, Plaintiffs' motion to dismiss should be granted.

Respectfully Submitted:

/s/ Lisa Brener
Lisa Brener, La. Bar #01809
Chelsea Cusimano, La. Bar #34857
**Brener Law Firm, LLC**
3640 Magazine Street
New Orleans, LA 70115
Telephone: (504) 302-7802
Facsimile: (504)304-4759
lbrener@brenerlawfirm.com

*Attorneys for Louisiana's First Choice Auto Auction*

## CERTIFICATE OF SERVICE

I hereby certify that on 11th day of March a copy of the foregoing Reply Memorandum of Louisiana's First Choice to Plaintiffs' Opposition to Motion to Dismiss was filed electronically with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to the following:

Cassie E. Felder
Cassie Felder & Associates, L.L.C.
263 3rd Street, Suite 308
Baton Rouge, LA 70801

Robin B. Cheatham
Adams & Reese, LLP
701 Poydras Street, Suite 4500
New Orleans, LA 70139

/s/Lisa Brener
Lisa Brener