IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| RED BARN MOTORS, INC., PLATINUM MOTORS, INC., MATTINGLY AUTO SALES, INC., and YOUNG EXECUTIVE MANAGEMENT & CONSULTING SERVICES, INC., individually and on behalf of other members of the general public similarly situated, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:14-cv-01589-TWP-DKL |
| v. | ) ) | |
| COX ENTERPRISES, INC., COX AUTOMOTIVE, INC., NEXTGEAR CAPITAL, INC. F/K/A DEALER SERVICES CORPORATION, successor by merger with Manheim Automotive Financial Services, Inc., and JOHN WICK, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

Charging interest on a voluntary commercial line of credit in accordance with an admittedly valid and enforceable contract is not an act of racketeering. Neither is owning or working for the company that provides that credit. But Plaintiffs seek to convince this Court otherwise.

By their own Amended Complaint, Plaintiffs acknowledge that they entered into contractual lines of credit with Defendant NextGear Capital, Inc. f/k/a Dealer Services Corporation ("NextGear") for the acquisition of motor vehicle inventory that they could sell in their dealership operations; that contractual interest was due to NextGear under those lines of credit (known as "floor plans"); and that Plaintiffs successfully used those floor plans to acquire inventory from auto auctions with NextGear financing. At most, then, this case is about the

1

contractual propriety of the few days of interest NextGear allegedly charged between the time

when an obligation to fund was incurred by Plaintiffs' purchase at auction and the time when

money was actually transferred to the auction on Plaintiffs' behalf.  Even though NextGear is

extant, a party to the case, and adequately capitalized to satisfy any (unlikely) liability to

Plaintiffs, Plaintiffs now seek to drag into this case two companies and an employee they did not

contract with or borrow from, and who had no involvement with the transactions at issue.

Plainly, Plaintiffs' Amended Complaint cannot meet the plausibility standard of Rule 12 or the

particularity standard of Rule 9.  This is most obvious with respect to the three defendants who

had nothing to do with floor plan financing provided to Plaintiffs, but is true of NextGear as

well.  Each of the causes of action in the Amended Complaint must therefore be dismissed for

failure to state a claim.

### Factual Background

NextGear is an automotive financing company that provides lines of credit to used car

dealers, among others, to enable them to purchase vehicles at auction.  (Am. Compl. ¶ 5 [ECF

No. 117].)  These lines of credit are often referred to in the industry as "floor plan"

arrangements.  (*Id.* at ¶ 9.)  A used car dealer who has a floor plan with NextGear can purchase a

vehicle at auction, take it off the lot, and market it for resale, but defer payment on that vehicle

until a later date.  (*Id.* at ¶ 12.)  That is possible for the dealers, such as Plaintiffs, because

NextGear pays the auction directly, on the dealer's behalf, according to the terms of its own

contract or other arrangement with the relevant auction.  In turn, the borrowing dealer agrees to

pay interest and fees to NextGear for the benefit of access to this funding.  (*See, e.g.*, Am.

Compl. Ex. A.)  A dealer that does not have a floor plan agreement with NextGear (or another

finance company), on the other hand, must use its own funds to pay the auction on the date of

purchase in order to obtain possession of the vehicle.

2

Each of the named Plaintiffs in this case entered into valid and binding floor plan agreements with NextGear and purchased inventory using NextGear lines of credit.  (*Id.* at ¶¶ 39-40, 55-56, 64-65, 72-73 & Exs. A, C, D, E.)  There is no dispute that those agreements were valid and that Plaintiffs owed NextGear principal and interest for those purchases.  But the named Plaintiffs claim to have been charged interest improperly under those agreements.  (*See, e.g.*, Am. Compl. ¶ 125.)  According to the Amended Complaint, each named Plaintiff was purportedly charged interest starting from the date it purchased a vehicle at auction, even if funds were not actually advanced until a few days or weeks later.  (*Id.* at ¶¶ 13-16.)  Whether and for how long interest was charged before a Plaintiff's obligation was funded is alleged to vary from vehicle to vehicle (*id.* at ¶ 16), so Plaintiffs do not provide information about more than one specific interest transaction.  However, it is undisputed that at least some—if not most—of the interest paid by Plaintiffs was properly charged under their floor plan agreements with NextGear.  (*See id.* at ¶¶ 46, 60, 69, 77.)  And, importantly, Plaintiffs received the benefit of their inventory, including possession and ability to re-sell the vehicles, during the gap period immediately after purchase at auction when they allege interest should not have been charged.

There is no allegation that the charges from NextGear to Plaintiffs were hidden; in fact, they were contemporaneously debited from Plaintiffs' accounts from time to time when due.  (*Compare id.* at ¶¶ 19-20, *with id.* at ¶¶ 46, 60, 69, 77.)  Named Plaintiffs (a) had access to their floor plan agreements and agreed interest rates (*id.* at ¶¶ 39, 55, 64, 72 & Exs. A, C, D, E); (b) knew the purchase dates and prices for the vehicles they acquired at auction and put on their respective floor plans with NextGear; and (c) had access to their own banking records showing the amounts and dates NextGear debited their accounts (Am. Compl. ¶¶ 45-46; *cf.* Am. Compl.

Ex. B).  Thus, Plaintiffs were fully aware of the interest being charged and could have contested any allegedly incorrect charge at the time it appeared.

Instead, Plaintiffs now, years later, assert that their alleged payment of a few days' or weeks' interest constitutes a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") because NextGear is part of a larger corporate structure and has employees.  But the new defendants named for the first time in the Amended Complaint—Cox Enterprises, Inc. ("Cox Enterprises"), Cox Automotive, Inc. ("Cox Auto"), and John Wick—are not alleged to have done anything pertinent to the interest charges at issue other than exist.  (*See* Am. Compl. ¶¶ 3-4, 98.)  Almost all of the allegations about these defendants are conclusory rather than factual, and may therefore be ignored for purposes of this Motion to Dismiss.

Finally, Plaintiffs also generically allege that NextGear interfered with their business relationships with various unnamed auctions by "blacklisting" them.  (*See id.* at ¶¶ 8, 145.) Plaintiffs provide no allegations that would explain why a third party's decision not to do business with them is NextGear's fault and not their own.  Nor do Plaintiffs explain why NextGear would somehow be precluded from notifying auctions that NextGear funding was no longer available for dealers who had defaulted on their repayment obligations.

### Motion to Dismiss Standard

A complaint must be dismissed if the plaintiff's factual allegations do not state a claim to relief that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 12(b)(6).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although a court assumes on a motion to dismiss that all facts alleged in the complaint are true, courts need not accept labels or legal conclusions couched as factual allegations.  *See Twombly*, 550 U.S. at 555.  If the well-

4

pleaded facts only allow a court to infer "the mere possibility of misconduct," the plaintiff has not met its burden to show its entitlement to relief, and the complaint should be dismissed. *Iqbal*, 556 U.S. at 679.

Claims sounding in fraud must be pleaded with particularity. Fed. R. Civ. P. 9(b). Rule 9(b) requires a complaint alleging fraud to provide "'the who, what, when, where, and how.'" *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (quoting *United States ex rel. Gross v. AIDS Research Alliance–Chicago*, 415 F.3d 601, 605 (7th Cir. 2005)).

Rule 9(b) applies to all aspects of civil RICO claims, especially when multiple defendants are involved. *See Sims v. New Penn Fin. LLC*, No. 3:15-cv-00263, 2016 WL 558920, at *10 (N.D. Ind. Feb. 12, 2016). In a civil RICO claim, this pleading standard entitles defendants to be "apprised of the roles they each played in the alleged scheme"; in general, a plaintiff may not "treat multiple corporate defendants as one entity." *United States v. Sanford-Brown, Ltd.*, 788 F.3d 696, 705-06 (7th Cir. 2015) (rejecting argument that allegations against civil RICO defendants "need not be so specific when the corporate defendants 'are related corporations that can most likely sort out their involvement without significant difficulty'"); *see also Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998) ("in a multiple defendant case, Rule 9(b) requires a RICO plaintiff to plead sufficient facts to notify each defendant of his alleged participation in the scheme").

This standard, of course, also applies to claims for actual and constructive fraud. *Cox v. Sherman Capital LLC*, No. 1:12-cv-01654-TWP, 2015 WL 3513889, at *4 (S.D. Ind. June 3, 2015). And, because Rule 9(b) applies to "averments of fraud," it applies to other state-law claims that are "premised upon a course of fraudulent conduct" as well. *Borsellino*, 477 F.3d at

5

507 (applying Rule 9(b) to state-law claims for tortious interference with economic advantage, interference with fiduciary relationship, and civil conspiracy).  For example, when premised on a fraudulent scheme, a claim for unjust enrichment is subject to Rule 9(b)'s heightened pleading standards.  *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 950 (7th Cir. 2013).

**Argument and Citation of Authority**

**I.**     **The Substantive RICO Claim Against All Defendants Must Be Dismissed (Count 1).**

The Amended Complaint fails to assert a valid claim for violating RICO.  The statutory provision upon which Plaintiffs rely makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ."  18 U.S.C. § 1962(c).  To state a claim under this provision, Plaintiffs must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (footnote omitted).  Plaintiffs' allegations are insufficient to meet this standard.

        A.      <u>Plaintiffs Have Failed to Allege That Any Defendant "Conducted" or "Participated in the Conduct of" an Enterprise.</u>

Plaintiffs stumble at the very first step of the RICO analysis: the conduct of an enterprise's affairs.  The Supreme Court has held that to be liable for "conduct[ing] or participat[ing] . . . in the conduct of [an] enterprise's affairs" under section 1962(c), a defendant "must participate in the operation or management of the enterprise itself."  *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993).  To meet this requirement, Plaintiffs must show that the defendants here had "some part in directing [the enterprise's] affairs," although "a formal position in the enterprise" is unnecessary.  *Id.* at 179.  "[M]ere participation in the activities of the enterprise," as opposed to operation or management of the enterprise, is insufficient to

6

establish liability under section 1962(c).  *Goren*, 156 F.3d at 727.  And liability may only be premised on "showing that the defendants conducted or participated in the conduct of the *enterprise's* affairs, not just their *own* affairs."  *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 646 (7th Cir. 1995) (quoting *Reves*, 507 U.S. at 185) (internal punctuation omitted); *United Food & Commercial Workers Unions & Emp'rs Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 854 (7th Cir. 2013).

Further, the Seventh Circuit has rejected the notion that "if a corporation engages in a pattern of racketeering activity, RICO liability falls on whoever in the corporation committed the acts constituting the illegal activity."  *Emery v. Am. Gen. Fin., Inc.*, 134 F.3d 1321, 1325 (7th Cir. 1998).  Thus, for example, in *Clark v. Integrity Financial Group, Inc.*, the Court dismissed a RICO complaint against an individual who was a shareholder, board member, and former officer of a corporate RICO defendant because the complaint contained no allegations of his participation in the fraudulent scheme other than "[g]eneral averments of [his] 'knowledge' of fraudulent conduct."  No. TH00-0028-C-T/H, 2000 WL 988516, at *4-5 (S.D. Ind. July 17, 2000).

Because this case involves multiple defendants, Rule 9(b) requires Plaintiffs to plead sufficient facts "to notify each defendant of his alleged participation in the scheme."  *Goren*, 156 F.3d at 726.  The limited, conclusory allegations relating to Cox Enterprises, Cox Auto, and John Wick certainly do not meet this standard.

There are no allegations in the Amended Complaint—let alone particularized ones—of either Cox Enterprises or Cox Auto participating in the operation or management of the alleged NextGear/DSC enterprise.  They are identified in passing as RICO persons, and the alleged enterprise involving all defendants supposedly includes them.  (*See* Am. Compl. ¶¶ 95-99.)  But

the factual allegations as to who conducted the enterprise's operations involve NextGear, acting through its account executives and lower-level employees (*id.* at ¶¶ 7, 14-16, 19-20, 98); the Amended Complaint has nothing to say about any activities, organization, or management on the part of the corporate Cox entities.

Plaintiffs have also provided no particularized factual allegations of John Wick's role in the alleged RICO enterprise.  The Amended Complaint contains conclusory allegations that Mr. Wick "knowingly established" the approach to charging customers interest.  (*Id.* at ¶ 98.)  Mr. Wick is also alleged to have testified in unrelated litigation, long after the supposed initiation of the purported scheme, about the calculation of interest under NextGear lines of credit.  (*Id.* at ¶ 21 n.11.)  These general averments of knowledge of NextGear's alleged scheme are insufficient to establish that Mr. Wick played some definable role in the participation, management, or organization of the alleged enterprise.  *Clark*, 2000 WL 988516, at *5.  Further, the conclusory allegations regarding Mr. Wick's knowledge of his company's practices are completely lacking in factual support or detail regarding the "who, what, when, where, and how" that are required to state a fraud claim with particularity.

Because Plaintiffs have provided no factual allegations that plausibly suggest Cox Enterprises, Cox Auto, or Mr. Wick participated in the operation or management of a RICO enterprise or any other fraudulent scheme, the RICO claims against them must be dismissed. And this conclusion is also fatal to the claim against NextGear, for reasons that will be discussed below.

> B.  Plaintiffs Have Failed to Allege a RICO "Enterprise" Separate from the "Pattern of Racketeering Activity."

Plaintiffs' RICO claim also fails because they have not sufficiently alleged the second element of a RICO claim: an enterprise.  A RICO "enterprise" is "any individual, partnership,

corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).[1]  In the Seventh Circuit, Plaintiffs must allege a RICO enterprise that has "an ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision making," with "goals separate from the predicate acts themselves." *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000) (citations omitted); *cf. Boyle v. United States*, 556 U.S. 938, 946 (2009) ("From the terms of RICO, it is apparent that an association-in-fact enterprise must have at least three structural features:  a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.").

An "enterprise" cannot simply be "a name for the crimes the defendants committed, or for their agreement to commit these crimes," but must exist "as an organization with a structure and goals separate from the predicate acts themselves." *United States v. Masters*, 924 F.2d 1362, 1367 (7th Cir. 1991).  "RICO plaintiffs cannot establish structure by defining the enterprise through what it supposedly does"; in other words, the allegations fail if the goal of the enterprise is defined as the allegedly fraudulent scheme at issue in the complaint.  *See Stachon*, 229 F.3d at 676; *see also Union Fed. Bank v. Howard*, No. 1:05-CV-00031, 2005 WL 2031060, at *6 (N.D. Ind. Aug. 23, 2005) (dismissing RICO claim alleging that enterprise's purpose was "a scheme and artifice to defraud Plaintiffs in the form of false, fraudulent and misleading appraisals").  And "[t]he fact that the Defendants allegedly used fraudulent means to carry out their own business affairs does not automatically turn them into a RICO enterprise.  Every conspiracy is

---

[1] Plaintiffs assert that the defendants were involved in an "association-in-fact" enterprise (Am. Compl. ¶ 95), which is "a group of persons associated together for a common purpose of engaging in a course of conduct."  *United States v. Turkette*, 452 U.S. 576, 583 (1981).

not an enterprise for RICO purposes." *Panwar v. Access Therapies, Inc.*, 975 F. Supp. 2d 948, 957 (S.D. Ind. 2013).

The allegations of the Amended Complaint do not sufficiently identify an enterprise having a structure or purpose separate from the alleged fraudulent scheme. The only allegation about the supposed enterprise in this case is that its purpose is "maximizing profits by fraudulently charging and debiting money from accounts held by its customer used car dealers on money not lent by NextGear/DSC" (Am. Compl. ¶ 96) and "defrauding customers for the Enterprise's unlawful financial gain" (*id.* at ¶ 98). Under Seventh Circuit precedent, Plaintiffs' pleading is insufficient as a matter of law because it contains no allegations about the purpose of the alleged enterprise aside from the fraudulent scheme. *Stachon*, 229 F.3d at 676.

Further, the factual allegations in the Amended Complaint describe the defendants' conduct of their own legitimate business affairs—lending money and collecting interest—and not the affairs of a separate enterprise. The Amended Complaint contains no allegations about the structure of an enterprise; the purported role of Cox Enterprises, Cox Auto, or John Wick in an enterprise; or how these defendants supposedly participated in an enterprise's decision-making or activities. Even if the allegations of the Amended Complaint were true and NextGear had used fraudulent means to collect interest—which is manifestly not the case—*Panwar* makes clear that this would not make NextGear a RICO enterprise. "The fact that the Defendants allegedly used fraudulent means to carry out their own business affairs does not automatically turn them into a RICO enterprise." *Panwar*, 975 F. Supp. 2d at 957.

Plaintiffs' Amended Complaint describes a company and its employees carrying out the company's own business affairs and defines no purpose of an enterprise aside from the allegedly

fraudulent scheme.  These allegations are insufficient to state a RICO claim in the Seventh

Circuit, and therefore Plaintiffs' RICO claim should be dismissed.

      C.    <u>Plaintiffs Have Failed to Allege a RICO "Enterprise" Separate from the Supposed</u>
<u>RICO "Persons."</u>

Plaintiffs' enterprise-related allegations are also insufficient for a second reason: they do

not meet the requirement that the allegedly liable RICO "person" be distinct from the alleged

RICO "enterprise."  *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001) ("to

establish liability under § 1962(c) one must allege and prove the existence of two distinct

entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by

a different name"); *Walgreen Co.*, 719 F.3d at 853.  Where the distinct "persons" are members of

the same corporate family, this requirement is not met.

An alleged conspiracy between a corporation and its subsidiaries or employees does not

violate RICO because a company and the members of its "corporate family" do not constitute a

RICO enterprise.  *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 226 (7th Cir. 1997).  In

*Fitzgerald*, the plaintiff brought claims of warranty fraud and alleged a RICO enterprise of "a

'Chrysler family' consisting of subsidiaries of the Chrysler Corporation engaged in various

facets of production, financing, and marketing of Chrysler automobiles . . . to the investing

public."  *Id.* at 226.  The Seventh Circuit rejected the notion of "applying RICO to a free-

standing corporation" like Chrysler—or NextGear—simply because the corporation must do

business through its agents.  *Id.* at 227.  *See also Richmond*, 52 F.3d at 645 ("An enterprise must

be more than a group of people who get together to commit a pattern of racketeering activity, and

more than a group of associated businesses that are operated in concert under the control of one

family.") (citations and internal punctuation omitted).  Thus, in this circuit, a complaint should

be dismissed where the allegations amount to no more than defendants who are either

subsidiaries or affiliated corporations, or individuals who are employees or agents of one of the corporate entities. *See Emery*, 134 F.3d at 1325; *Bucklew v. Hawkins, Ash, Baptie & Co.*, 329 F.3d 923, 934 (7th Cir. 2003)*; Rocha v. FedEx Corp.*, 15 F. Supp. 3d 796, 807 (N.D. Ill. 2014); *Lachmund v. ADM Inv'r Servs., Inc.*, 26 F. Supp. 2d 1107, 1117 (N.D. Ind. 1998), *aff'd*, 191 F.3d 777 (7th Cir. 1999).

Here, Plaintiffs have not alleged any enterprise in which the defendants participated, other than dealing with their affiliated companies and employees in the ordinary course of their legitimate business. These allegations do not describe the prototypical RICO case described in *Fitzgerald*, 116 F.3d at 227, and they are not sufficient to make NextGear and its corporate family a RICO enterprise. Since Plaintiffs cannot allege management or operation of a RICO enterprise by Cox Enterprises, Cox Auto, or John Wick, the only conduct they even attempt to allege is that of NextGear itself. But NextGear alone cannot be both the RICO person and the RICO enterprise. *Browning v. Flexsteel Indus., Inc.*, 955 F. Supp. 2d 900, 908 (N.D. Ind. 2013). As a result, Plaintiffs have not sufficiently alleged a RICO enterprise that is distinct from the RICO person(s) they are attempting to sue, and their RICO claims must be dismissed.

> D.   The Statute of Limitations Bars Plaintiffs' RICO Claim.

Plaintiffs' claims against the new defendants added in the Amended Complaint are untimely. RICO claims have a four-year limitations period. *Agency Holding Corp. v. Malley-Duff & Assocs.*, 483 U.S. 143, 156 (1987); *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009). The limitations period begins to run from the time the plaintiff learned or could have learned of the *injury* by reasonable diligence—not from the time the plaintiff learned of the scheme or pattern of racketeering behavior. *Rotella v. Wood*, 528 U.S. 549, 556 (2000); *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 194-95 (1997); *Cancer Found., Inc.*, 559 F.3d at 674. Each overt act within the alleged RICO scheme that is timely is

12

permissible, but acts that fall outside of the statute of limitations are excluded as untimely and may not be bootstrapped to the timely-filed claims.  *Klehr*, 521 U.S. at 189-90; *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 802 (7th Cir. 2008).

Where, as here, the allegedly wrongful interest charges were open and obvious through Plaintiffs' bank statements and otherwise, the statute of limitations began to run once the allegedly wrongful charge was made.  Plaintiffs concede in their Amended Complaint that most of the complained-of interest charges were made more than four years ago.  (Am. Compl. ¶¶ 46, 60-61, 69-70, 77-78.)  Thus, the RICO claims related to those charges made before January 8, 2012—four years before Plaintiffs moved to amend their Complaint—must be dismissed because Plaintiffs have pleaded themselves out of court.  *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015) ("A complainant can plead himself out of court by including factual allegations that establish that the plaintiff is not entitled to relief as a matter of law. Thus, although a plaintiff need not anticipate or overcome affirmative defenses such as those based on the statute of limitations, if a plaintiff alleges facts sufficient to establish a statute of limitations defense, the district court may dismiss the complaint on that ground.") (internal citation omitted).

## II.     The RICO Conspiracy Claim Against All Defendants Must Be Dismissed (Count 2).

Plaintiffs' RICO conspiracy claim must fail because Plaintiffs have not sufficiently alleged that anyone agreed to participate in any enterprise or conspiracy.  A claim for RICO conspiracy under 18 U.S.C. § 1962(d) must allege "(1) that each defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity and (2) that each defendant further agreed that someone would commit at least two predicate acts to accomplish those goals."  *Goren*, 156 F.3d at 732 (footnote omitted).

13

A complaint involving a RICO conspiracy claim should be dismissed "if it contains only conclusory, vague and general allegations of a conspiracy." *Id.* at 733 (citations omitted). To survive a motion to dismiss, a claim under section 1962(d) must include either "facts indicating an act of agreement among the alleged conspirators *or* what roles the various defendants would play in the conspiracy." *Kuhn v. Asset Acceptance Capital Corp.*, No. 1:14-cv-00059-TWP-DML, 2015 WL 1505648, at *7 (S.D. Ind. Mar. 31, 2015) (citation omitted). These factual allegations must be pleaded with particularity under Rule 9(b). *Lachmund v. ADM Inv'r Servs., Inc.*, 191 F.3d 777, 782 (7th Cir. 1999).

Nowhere does the Amended Complaint provide anything other than "conclusory, vague and general" allegations of a conspiracy. (*Cf.* Am. Compl. ¶¶ 114-118.) There are no allegations that NextGear, Cox Enterprises, Cox Auto, or John Wick agreed amongst themselves to participate in the affairs of the alleged enterprise; that any defendant agreed that someone would commit two specific predicate acts to further that enterprise; or that any defendant agreed to play any particular role in the alleged conspiracy. The Amended Complaint's complete lack of factual allegations of any conspiratorial acts or agreements requires dismissal of the RICO conspiracy claim.

### III.    The Unjust Enrichment Claim Against the Corporate Defendants Must Be Dismissed (Count 6).

A.    <u>NextGear Cannot Be Liable for Unjust Enrichment Because Plaintiffs Have Pleaded and NextGear Admits the Existence of a Contract.</u>

Plaintiffs' claim for unjust enrichment against NextGear must be dismissed because it is undisputed that Plaintiffs are suing on a valid, enforceable contract. (*See, e.g.*, Am. Compl. at ¶¶ 121-126.) A claim for unjust enrichment arises where there is no governing contract but justice requires that a plaintiff be allowed to recover nonetheless. For this reason, the theory of unjust enrichment is inapplicable where there is an enforceable contract. *DiMizio v. Romo*, 756

14

N.E.2d 1018, 1025 (Ind. Ct. App. 2001).  "When the rights of parties are controlled by an express contract, recovery cannot be based on a theory implied in law."  *Zoeller v. E. Chicago Second Century, Inc.*, 904 N.E.2d 213, 221 (Ind. 2009) (citation omitted).  A party cannot seek equitable relief "*just in case*" its contract claim fails, unless it alleges that there was either no contract on point or the contract at issue was unenforceable.  *CoMentis, Inc. v. Purdue Research Found.*, 765 F. Supp. 2d 1092, 1103 (N.D. Ind. 2011).

Each of the named Plaintiffs alleges that it entered into a floor plan agreement with NextGear covering the vehicle sales advances at issue, and a fully-executed copy of each Plaintiff's agreement is attached to the Amended Complaint.  (Am. Compl. ¶¶ 39, 55, 64, 72 & Exs. A, C, D, E.)  NextGear admits and acknowledges that its predecessor, Dealer Services Corporation, entered into those contracts, which are valid and enforceable.  The rights and obligations of the parties are governed by those contracts.  Plaintiffs therefore cannot recover under an implied contract theory where express contracts already govern their borrower-lender relationship with NextGear.

   B.   There Are No Plausible Allegations of Enrichment of the Cox Defendants (or Mr. Wick).

An unjust enrichment claim against the non-NextGear defendants must also fail.  Plaintiffs do not allege any facts supporting the conclusory assertion that Cox Enterprises and Cox Auto were unjustly enriched.  (*See* Am. Compl. ¶ 151; *cf. id.* at ¶ 99.)  There are no facts indicating that Cox Enterprises or Cox Auto ever sought payment from Plaintiffs, and no allegations that any funds received by NextGear flowed into the accounts of those other entities.[2]

---

[2] Plaintiffs do not appear to bring an unjust enrichment claim against John Wick, but to the extent they do, there are no allegations whatsoever that he was personally enriched.

A claim for unjust enrichment requires a plaintiff to plead "(1) a benefit conferred upon another at the express or implied request of this other party; (2) allowing the other party to retain the benefit without restitution would be unjust; and (3) the plaintiff expected payment." *Woodruff v. Ind. Family & Soc. Servs. Admin.*, 964 N.E.2d 784, 791 (Ind. 2012). There is no allegation in the Amended Complaint that any Plaintiff conferred a "measurable" benefit—or any benefit—on Cox Enterprises or Cox Auto. *See Coppolillo v. Cort*, 947 N.E.2d 994, 997 (Ind. Ct. App. 2011) (citing *Zoeller*, 904 N.E.2d at 220). These two companies were not parties to the lending transaction between NextGear and Plaintiffs. There is also no allegation anywhere in the Amended Complaint that Cox Enterprises or Cox Auto expressly or impliedly requested that Plaintiffs make any payments or otherwise confer any benefit that might flow through to them. *See Ritzert Co. v. United Fid. Bank, FSB*, 935 N.E.2d 756, 763 (Ind. Ct. App. 2010) (affirming summary judgment on unjust enrichment claim when plaintiff subcontractors had no evidence that general contractor's lender requested they continue work after loan was fully disbursed). Because there was never any such request, Plaintiffs have not met their pleading burden and cannot sustain an unjust enrichment claim against Cox Enterprises or Cox Auto (or John Wick) as a matter of law.

## IV. The Tortious Interference Claim Against NextGear Must Be Dismissed (Count 5).

### A. Plaintiffs Have Not Stated a Claim That NextGear Tortiously Interfered with Any of Their Relationships.

Plaintiffs' tortious interference claim is so vaguely pleaded that it is unclear what NextGear is supposed to have done to interfere with Plaintiffs' business relationships or with which relationships NextGear is supposed to have interfered. The Amended Complaint merely states conclusory allegations that NextGear "intentionally tortiously interfered" with Plaintiffs' business relationships "by 'blacklisting' the Red Barn Plaintiffs with these auction houses, as a

result of which these auction houses prohibited the Red Barn Plaintiffs from attending and

participating in the routine sales of used cars," and "actively attempted to prohibit the Red Barn

Plaintiffs from participation in auctions."  (Am. Compl. ¶¶ 8, 145-146.)  The Amended

Complaint provides no explanation of how NextGear could have caused one or more unspecified

third-party auctions to take action against Plaintiffs.  These "legal conclusion[s] couched as . . .

factual allegation[s]" are insufficient to state a claim that is plausible on its face.  *Twombly*, 550

U.S. at 555; *Iqbal*, 556 U.S. at 678.

In any event, Plaintiffs' allegations are insufficient to state a claim for tortious

interference.  Under Indiana law, a cause of action for tortious interference with a business

relationship requires Plaintiffs to plead: "(1) the existence of a valid relationship; (2) the

defendant's knowledge of the existence of the relationship; (3) the defendant's intentional

interference with that relationship; (4) the absence of justification; and (5) damages resulting

from defendant's wrongful interference with the relationship."  *Gov't Payment Serv., Inc. v. Ace

Bail Bonds*, 854 N.E.2d 1205, 1209 (Ind. Ct. App. 2006).  The tort also requires "some

independent illegal action."  *Id.* (quoting *Brazauskas v. Fort Wayne-South Bend Diocese, Inc.*,

796 N.E.2d 286, 291 (Ind. 2003)).

As an initial matter, Plaintiffs' conclusory allegations do not identify any allegedly illegal

action performed in connection with the purported interference.  Plaintiffs allege the interference

with their auction relationships happened "after" the purported fraudulent interest scheme, but

they do not allege any illegal action NextGear took in interfering with their auction relationships.

Moreover, there is no claim that the alleged interference and the alleged fraud were in any way

connected.  Under Indiana law, the tortious interference claim should be dismissed on that

ground alone.  *See Pierce v. Zoetis, Inc.*, No. 15-1900, 2016 WL 1015130, at *5-6 (7th Cir. Mar.

15, 2016) (affirming dismissal of tortious interference claim where there was no plausible logical connection between alleged illegal action and termination of business relationship).

Further, Plaintiffs have not alleged—and cannot allege, consistent with their Rule 11 obligations—the element of absence of justification. "'[A]bsence of justification is established only if the interferer acted intentionally, without a legitimate business purpose, and the breach is malicious and exclusively directed to the injury and damage of another.'" *Rogovsky Enter., Inc. v. Masterbrand Cabinets, Inc.*, No. 3:15-cv-00022-RLY-WGH, 2015 WL 7721223, at *8 (S.D. Ind. Nov. 30, 2015) (quoting *Bilimoria Computer Sys., LLC v. Am. Online, Inc.*, 829 N.E.2d 150, 156-57 (Ind. Ct. App. 2005)). However, ceasing to do business with someone who has failed to pay you is a legitimate business purpose. *See, e.g.*, *Am. Commercial Lines LLC v. Lubrizol Corp.*, No. 4:12-cv-00135-SEB-WGH, 2015 WL 5295128, at *4 (S.D. Ind. Sept. 10, 2015) (granting summary judgment to defendant where evidence established "legitimate business purpose" for ending commercial relationship with third party, which then terminated contracts with plaintiff). According to the Amended Complaint, Red Barn Motors, Inc. ("Red Barn") was unable to pay its obligations to NextGear starting in March 2013. (Am. Compl. ¶ 47.) The other Plaintiffs likewise owe money to NextGear.[3]

Although less than clear, Plaintiffs appear to allege that NextGear chose not to provide financing to Plaintiffs, as permitted under the floor plan agreements (*see, e.g.*, Am. Compl. Ex. A, at § 5(a)), with the result that auctions were no longer willing to take financial risks by extending their own credit to Plaintiffs. If that is so, Plaintiffs have merely alleged that NextGear did what it was entitled (*i.e.*, justified) to do, which is insufficient to state a claim for

---

[3] As discussed more fully below, NextGear obtained judgments against Platinum Motors, Inc., Mattingly Auto Sales, Inc., and Young Executive Management & Consulting Services, Inc., and/or their respective guarantors, for the failure to repay financing extended by NextGear.

tortious interference. But again, the very inability of NextGear to determine from the pleadings what, exactly, it is alleged to have done to interfere is reason enough to dismiss the tortious interference claim.

> B.      The Statute of Limitations Bars Plaintiffs' Tortious Interference Claim.

Plaintiffs' claim for tortious interference is not only poorly pleaded, but it is also untimely. Tortious interference claims have the same two-year limitations period as general tort claims. *Martin v. Richey*, 711 N.E.2d 1273, 1279 (Ind. 1999); Ind. Code § 34-11-2-4; *see also Graves v. Ind. Univ. Health*, 32 N.E.3d 1196, 1214 (Ind. Ct. App. 2015) (using two-year limitations period for tortious interference claim). "[A] tort claim accrues 'when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another.'" *Martin*, 711 N.E.2d at 1279 (quoting *Wehling v. Citizens Nat'l Bank*, 586 N.E.2d 840, 843 (Ind. 1992)).

The tortious interference claim in the Amended Complaint does not arise out of the same conduct, transaction, or occurrence set out in the original Complaint. The original Complaint contained no allegations of any purported blacklisting or coordination with auctions generally to bar any dealer from doing business with any auction. As a result, these new allegations do not relate back to the date the original Complaint was filed. Fed. R. Civ. P. 15(c)(1)(B).

Any tortious interference claim is therefore untimely where the alleged interference was or should have been discovered by January 8, 2014, two years before Plaintiffs moved to amend their Complaint. The Plaintiffs allege that each of their relationships with NextGear ended well before then, meaning the alleged interference must likewise have occurred well before 2014. Red Barn declared bankruptcy in April 2013 (Am. Compl. ¶ 50); Platinum Motors, Inc.'s relationship with NextGear ended in June 2012 (*id.* at ¶¶ 60-61); Mattingly Auto Sales, Inc.'s relationship with NextGear ended in May 2012 (*id.* at ¶¶ 69-70); and Young Executive

19

Management & Consulting Services, Inc. does not allege any interaction with NextGear after 2011 (*see id.* at ¶ 77).

As to Red Barn, it is clear that the tortious interference claim is untimely.  As a bankrupt entity, Red Barn could not have had the required "valid relationship" with auctions or other companies after April 25, 2013, which was over two years before the Amended Complaint was filed.  The other Plaintiffs should have discovered any alleged "blacklisting" as soon as they were barred from participating in an auction.  Since there are no allegations of interactions with NextGear or attempts to enter an auction later than June 2012, well over two years before the Amended Complaint was filed, the other Plaintiffs' claims are likewise time-barred.  The tortious interference claim should therefore be dismissed.

## V.      The Constructive Fraud Claim Against NextGear Must Be Dismissed (Count 4).

Plaintiffs' constructive fraud claim fails because NextGear owed no duty to Plaintiffs and Plaintiffs cannot plausibly allege that they relied on any purported misrepresentation or deception.  A claim for constructive fraud requires a plaintiff to allege five things:

> (i) a duty owing by the party to be charged to the complaining party due to their relationship; (ii) violation of that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when a duty to speak exists; (iii) reliance thereon by the complaining party; (iv) injury to the complaining party as a proximate result thereof; and (v) the gaining of an advantage by the party to be charged at the expense of the complaining party.

*Rice v. Strunk*, 670 N.E.2d 1280, 1284 (Ind. 1996).  Plaintiffs cannot allege at least two of these elements.

First, a lender/borrower relationship does not impose a special duty that could give rise to a constructive fraud claim.  "Absent special circumstances, a lender does not owe a fiduciary duty to a borrower."  *Wilson v. Lincoln Fed. Sav. Bank*, 790 N.E.2d 1042, 1047 (Ind. Ct. App. 2003).  For example, in *DeSimone v. Quicken Loans, Inc.*, the court granted judgment in favor of

20

a loan officer on a constructive fraud claim by a borrower.  No. 1:09-cv-01421-WTL-MJD, 2011

WL 2470642, at *7 (S.D. Ind. June 20, 2011).  The court held, "[t]his type of relationship does

not impose a special duty."  *Id.* (citing cases).  Since the only relationship between NextGear and

Plaintiffs is one between a lender or financing company and a borrower, there is no special duty

owed by NextGear to Plaintiffs.  "[W]here, as here, sophisticated parties sit at arm's length and

one is not truly at the mercy of another, the Court is loath to impose a 'special relationship.'"

*Sofaer Global Hedge Fund v. Brightpoint, Inc.*, No. 1:09-cv-01191-TWP-DML, 2011 WL

2413831, at *10 (S.D. Ind. June 10, 2011).

  Second, Plaintiffs cannot reasonably have relied on any action or representation by

NextGear.  "In enforcing this requirement [of reasonable reliance], Indiana courts reject fraud

claims that could have been prevented by reading a document."  *Lady Di's, Inc. v. Enhanced

Servs. Billing, Inc.*, No. 1:09-cv-00340-SEB-DML, 2010 WL 1258052, at *4 (S.D. Ind. Mar. 25,

2010) (citing *Weber v. Costin*, 654 N.E.2d 1130 (Ind. Ct. App. 1995)).  It is "a fundamental

proposition of Indiana law defining fraud: a party cannot rely on a statement if (s)he has not

exercised ordinary care in guarding against the potential for fraud."  *Id.* (citing *Plymale v.

Upright*, 419 N.E.2d 756 (Ind. Ct. App. 1981)).

  The only allegations of reliance in this case are conclusory and lack the particularity

required for fraud claims.  (*See* Am. Compl. ¶¶ 134-135.)  In any event, the allegedly wrongful

interest charges were open and obvious: Plaintiffs paid by contemporaneous debits from their

own bank accounts (*see id.* at ¶¶ 46, 59-60, 68-69, 76-77; *cf. id.* at Ex. B), so they did not need to

rely on representations by NextGear to have knowledge of the allegedly wrongful interest

charges.  Where Plaintiffs could have prevented the alleged harm by reading their floor plan

agreements and bank statements, they cannot show reasonable reliance.  As a result, the
constructive fraud claim must be dismissed.

**VI.      The Breach of Contract Claim Against NextGear Must Be Dismissed (Count 3).**

A review of the floor plan agreements attached to the Amended Complaint demonstrates
that those agreements were not breached, and therefore Plaintiffs cannot state a claim for breach
of contract.  Under Indiana law, "[t]he essential elements of a breach of contract action are 1) the
existence of a contract, 2) the defendant's breach thereof, and 3) damages." *Roche Diagnostics
Operations, Inc. v. Marsh Supermarkets, LLC*, 987 N.E.2d 72, 85 (Ind. Ct. App. 2013).  The
Court may consider the plain language of the contracts at issue in this case because Plaintiffs
have attached copies of their floor plan agreements to the Amended Complaint and the terms of
those contracts are central to Count 3.  *See Hongbo Han v. United Cont'l Holdings, Inc.*, 762
F.3d 598, 601 n.1 (7th Cir. 2014).  Count 3, the breach of contract claim, must fail because
Plaintiffs' allegations and theories of recovery contradict the plain language of their agreements.

First, a review of the floor plan agreements shows that, as a matter of law, Plaintiffs'
allegations do not state a claim for breach of contract.  The agreements attached to the Amended
Complaint provide, "[i]nterest shall accrue on all Dealer Liabilities in accordance with" certain
terms.  (Am. Compl. Exs. A, C, D, E, at § 3.)  "Interest" is defined to accrue on "all Liabilities
owed by Dealer to [NextGear]."  (Am. Compl. Exs. A, C, E, at § 1(w); Am. Compl. Ex. D, at
§ 1(t).)  "Liabilities" are in turn defined as

> any and all Advances, debts, DSC Financed Inventory Liabilities, financial
> obligations, DSC Administrative Fees, DSC Universal Fees, Interest, Floorplan
> Fees, NSF fees, late fees, charges, expenses, attorney fees, costs of collection,
> covenants, and duties owing, arising, due or payable from Dealer to [NextGear] of
> any kind or nature, present o[r] future, under any instrument, guaranty, or other
> document whether arising under this Note or any other agreement, whether
> directly or indirectly (including those acquired by assignment), absolute or
> contingent, primary or secondary, due or to become due, now existing or hereafter
> arising and however acquired.

(Am. Compl. Exs. A, C, E, at § 1(y); Am. Compl. Ex. D, at § 1(v).)  Thus, the contracts expressly contemplate that interest may accrue not only on advances actually made, but on other financial obligations, fees, and so on, whether present or future, direct or indirect, absolute or contingent, or due or to become due.  Plaintiffs became obligated to fund their vehicle purchases at auction from the moment of a sale, *see* U.C.C. § 2-328(2) ("A sale by auction is complete when the auctioneer so announces by the fall of the hammer or in other customary manner."), regardless of when the payment was due.  On the auction sale day, then, Plaintiffs incurred a Liability—a financial obligation.  (*Cf.* Am. Compl. ¶ 12.)  To the extent NextGear has an arrangement with a dealer and an auction to advance payment for a purchased vehicle directly to the auction in the dealer's stead, the express terms of the floor plan agreement allow NextGear to charge interest from the date that Liability was incurred, *i.e.*, the date of the auction purchase by the dealer-borrower.[4]

Second, because Plaintiffs were able to obtain inventory from the day of the auction sale using the financing from NextGear, they obtained a benefit from NextGear, pursuant to the floor plan agreement, as of the date they purchased a vehicle.  In light of such benefit, they were not damaged by the minimal interest charged between the date of purchase and the date payment was actually made by NextGear to the auction.

Even taking all of Plaintiffs' allegations as true, Plaintiffs do not state a claim for breach of contract.  The claim for breach of contract must therefore be dismissed.

---

[4] Of course, Plaintiffs, as car dealers, are generally buying and re-selling vehicles as quickly as possible to make and retain a profit and to benefit their own businesses, regardless of when NextGear funded their auction source.

35283684.6

**VII.** *Res Judicata* **Bars Certain Plaintiffs' RICO, Breach of Contract, Constructive Fraud, and Unjust Enrichment Claims Against NextGear (Counts 1-4, 6).**

The claims arising from allegations of improper interest are also barred by *res judicata* insofar as they have been raised by the new named Plaintiffs—Platinum Motors, Inc. ("Platinum"), Mattingly Auto Sales, Inc. ("Mattingly"), and Young Executive Management & Consulting Services, Inc. ("Young"). Under Indiana law, *res judicata*, or claim preclusion, applies when there has been (1) a judgment (2) on the merits (3) between the same parties and their privies involving (4) the issue which was or might have been determined in the prior litigation. *See Hensley v. Jasper Police Dep't,* 163 F. Supp. 2d 1006, 1021 (S.D. Ind. 2001) (citing *Leal v. Krajewski*, 803 F.2d 332, 334 (7th Cir. 1986)). Platinum, Mattingly, and Young were previously sued by NextGear after they failed to repay financing extended by NextGear, and NextGear obtained judgments against each of them or their privies. (*See* Complaints and Judgments, Exs. 1-6.[5]) Because these Plaintiffs failed to raise the allegedly improper interest charges in prior litigation under the same loan agreements and floor plans at issue here, they cannot bring claims arising out of those charges now.

The judgments entered against Plaintiffs or their privies have preclusive effect on Plaintiffs' claims in this litigation. As an initial matter, they demonstrate the first three elements of *res judicata*: (1) a judgment (2) on the merits (3) between the same parties and their privies.

---

[5] NextGear requests that the Court take judicial notice of the attached state-court complaints and judgment orders, which show "[t]he fact that the state litigation occurred and involved certain claims and produced certain outcomes." *Hanover Grp., Inc. v. Manufactured Home Cmtys. Inc.*, No. IP00-0739-C-T/G, 2000 WL 1124877, at *3 (S.D. Ind. July 12, 2000); *see also Philips Med. Sys. Int'l, B.V. v. Bruetman,* 982 F.2d 211, 215 (7th Cir. 1992) (taking judicial notice of default judgment in prior proceeding between same parties). As in *Hanover*, the pleadings and judgment orders attached as Exhibits 1-6 are the proper subject of judicial notice in support of this Rule 12(b)(6) motion. 2000 WL 112877, at *3. The Court may take judicial notice of these exhibits without converting this motion to one for summary judgment. "[F]acts subject to determination by judicial notice may be considered when a court must resolve a motion pursuant to either Rule 12(b)(6) or 12(c)." *Id.* at *3 (citing *Mandarino v. Pollard*, 718 F.2d 845, 849 (7th Cir. 1983)).

The exhibits to this brief consist of default judgments for breach of contract claims by NextGear against Platinum and Mattingly, as well as default judgments against the guarantors of Young.[6] (*See* Judgments, Exs. 2, 4, 6.)  Under Indiana law, default judgments are "judgment[s] on the merits" for purposes of *res judicata.  Eichenberger v. Eichenberger*, 743 N.E.2d 370, 374 (Ind. Ct. App. 2001).  NextGear was the plaintiff in each of the prior actions, and the judgments obtained were against Platinum, Mattingly, and the guarantors of Young; thus, each judgment was between the parties and their privies that are involved in the present case.  Young is properly considered a "privy" to the prior judgment against its guarantors because the guarantors were representing its interests in the action, and its interests were such that it would be bound by the default judgment.  *See Weinreb v. Fannie Mae*, 993 N.E.2d 223, 230 (Ind. Ct. App. 2013) ("[I]n determining the parties for *res judicata* purposes, this court looks beyond the nominal parties and treats those whose interest are involved as the real parties.") (citing *MicroVote Gen. Corp. v. Ind. Election Comm'n*, 924 N.E.2d 184, 196 (Ind. Ct. App. 2010)).

Finally, Plaintiffs' claims against NextGear arising out of allegations of wrongful interest could have been determined in the prior action.  *Weinreb*, 993 N.E.2d at 229.  This fourth *res judicata* factor "means that any matter within the issues of the [prior] case that *might have been* alleged and proven will be presumed to have been proven and adjudicated."  *Stefansson v. Source One Mortg.*, No. 1:02-cv-00773-LJM-WTL, 2004 WL 540921, at *2 (S.D. Ind. Jan. 29, 2004) (citing *Hensley*, 163 F. Supp. 2d at 1022) (emphasis added).

Any affirmative defense or compulsory counterclaim that a party was required to raise in the prior action will be deemed proven and adjudicated for *res judicata* purposes.  *See id.*

---

[6] NextGear was unable to obtain a judgment against Young itself, as the corporation was no longer in existence at the time of the lawsuit, which also raises the question of how it can be a Plaintiff here.

35283684.6

(applying *res judicata* to affirmative defense under Indiana Rule of Trial Procedure 8(c));

*Hilliard v. Jacobs*, 927 N.E.2d 393, 402 (Ind. Ct. App. 2010) (noting that failure to pursue

compulsory counterclaims will preclude party from raising them in subsequent action due to *res

judicata*).  Indiana rules define a compulsory counterclaim as one that "arises out of the

transaction or occurrence that is the subject-matter of the opposing party's claim and does not

require for its adjudication the presence of third parties of whom the court cannot acquire

jurisdiction."  Ind. R. Trial P. 13(A).

NextGear brought the prior actions against Platinum, Mattingly, and Young for breaching

their contracts—the same contracts that Plaintiffs now rely on for their claims against

NextGear—by, among other things, failing to pay interest thereunder.  (*See* Complaints, Exs. 1,

3, 5.)  Had Plaintiffs answered or defended against NextGear's complaints in the prior actions,

Indiana's rules of procedure required them to raise their civil RICO, RICO conspiracy, breach of

contract, constructive fraud, and unjust enrichment claims as affirmative defenses or compulsory

counterclaims against NextGear.  *See* Ind. R. Trial P. 13(A); *Matrix IV, Inc. v. Am. Nat'l Bank &

Trust Co. of Chicago*, 649 F.3d 539, 549 (7th Cir. 2011) (holding that civil RICO is no exception

to *res judicata*).

The new Plaintiffs' failure to raise a wrongful interest defense or counterclaim in the

prior contract actions against them now precludes them from pursuing their RICO, breach of

contract, constructive fraud, and unjust enrichment claims against NextGear.  Those claims are

all expressly based on the same contractual relationships between the parties.  Because these

matters could have been determined in the prior actions, the claims asserted by Platinum,

Mattingly, and Young against NextGear in Counts 1-4 and 6 of the Amended Complaint should

now be dismissed with prejudice.

**Conclusion**

Plaintiffs have not stated a claim for RICO or for violations of state common law.

Indeed, their allegations show that the facts simply do not support any such claims.  In addition,

certain claims against NextGear are barred by the doctrine of *res judicata*.  For all the reasons

stated above, the Court should dismiss the Amended Complaint with prejudice.

Respectfully submitted, this 15th day of April, 2016.


*/s/  David J. Jurkiewicz*
David J. Jurkiewicz (18018-53)
Paul D. Vink (23785-32)

*Attorneys for Defendants Cox Enterprises, Inc., Cox*
*Automotive, Inc., NextGear Capital, Inc. f/k/a*
*Dealer Services Corporation, and John Wick*

BOSE McKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN  46204
(317) 684-5000
(317) 684-5173 fax
djurkiewicz@boselaw.com
pvink@boselaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been served upon the following counsel of record via the Court's electronic service notification system, this 15th day of April, 2016:

Ryan D. Adams
SHER GARNER CAHILL RICHTER
KLEIN & HILBERT LLC
radams@shergarner.com

Lisa Brener
Brener Law Firm, LLC
lbrener@brenerlawfirm.com,tkeller@brenerlawfirm.com

Matthew M. Coman
SHER GARNER CAHILL RICHTER
KLEIN & HILBERT LLC
mcoman@shergarner.com
jairey@shergarner.com
ksimcox@shergarner.com
akeller@shergarner.com
jstockstill@shergarner.com

Cassie E. Felder
LUGENBUHL, WHEATON, PECK,
RANKIN & HUBBARD
cfelder@lawla.com,kfisher@lawla.com

James M. Garner
SHER GARNER CAHILL RICHTER
KLEIN & HILBERT, LLC
jgarner@shergarner.com
jchocheles@shergarner.com
priggs@shergarner.com

Steven D. Groth
BOSE MCKINNEY & EVANS, LLP
sgroth@boselaw.com
sford@boselaw.com
lcooper@boselaw.com

David J. Jurkiewicz
BOSE MCKINNEY & EVANS, LLP
djurkiewicz@boselaw.com
clindsey@boselaw.com
mwakefield@boselaw.com

Joshua P. Melder
CASSIE FELDER & ASSOCIATES,
LLC
joshua@felderllc.com
kelley@felderllc.com

Kerry A. Murphy
JONES, SWANSON, HUDDELL &
GARRISON, LLC
kmurphy@jonesswanson.com
greed@jonesswanson.com
cmason@jonesswanson.com
lreeves@jonesswanson.com
klasky@jonesswanson.com
sjoshua@jonesswanson.com

Lynn E. Swanson
JONES, SWANSON, HUDDELL&
GARRISON, LLC
lswanson@jonesswanson.com
greed@jonesswanson.com
cmason@jonesswanson.com
sjoshua@jonesswanson.com

Paul D. Vink
BOSE MCKINNEY & EVANS, LLP
pvink@boselaw.com
clindsey@boselaw.com

28

Gladstone N. Jones
JONES SWANSON HUDDELL &
GARRISON, LLC
gjones@jonesswanson.com
greed@jonesswanson.com
cmason@jonesswanson.com
sjoshua@jonesswanson.com


/s/ *David J. Jurkiewicz*
David J. Jurkiewicz