**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**(Indianapolis Division)**

| | | |
|---|---|---|
| **RED BARN MOTORS, INC.,** | * | **DOCKET NO. 1:14-cv-01589-TWP-DKL** |
| **PLATINUM MOTORS, INC.,** | * | |
| **MATTINGLY AUTO SALES, INC.,** | * | **CLASS ACTION** |
| **YOUNG EXECUTIVE MANAGEMENT** | * | **Jury Trial Demanded** |
| **& CONSULTING SERVICES, INC.,** | * | |
| **Individually, and on behalf of other** | * | |
| **members of the general public** | * | |
| **similarly situated** | * | |
| | * | |
| **v.** | * | |
| | * | |
| **COX ENTERPRISES, INC.,** | * | |
| **COX AUTOMOTIVE, INC.,** | * | |
| **NEXTGEAR CAPITAL, INC.,** | * | |
| **F/K/A DEALER SERVICES** | * | |
| **CORPORATION, successor by merger** | * | |
| **with Manheim Automotive Financial** | * | |
| **Services, Inc., and JOHN WICK** | * | |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
## TO DISMISS AMENDED COMPLAINT

Plaintiffs--Red Barn Motors, Inc. ("Red Barn"), Platinum Motors, Inc. ("Platinum"),

Mattingly Auto Sales, Inc. ("Mattingly"), and Young Executive Management & Consulting

Services, Inc. ("Young") –submit this memorandum in opposition to the motion to dismiss filed

by Defendants Cox Enterprises, Inc. ("Cox"), Cox Automotive, Inc. ("Cox Automotive"),

NextGear Capital, Inc. ("NextGear"), and John Wick ("Mr. Wick") (collectively, all defendants

except NextGear, "the Cox Defendants").[1] As set forth below, Plaintiffs' claims are adequately

pleaded and should not be dismissed.

---

[1] *See* R. Doc. 126 (Motion to Dismiss Amended Complaint) and R. Doc. 127 (Brief in Support of Motion
to Dismiss Amended Complaint) ("Def. Mem.").

## FACTUAL BACKGROUND

As set forth in Plaintiffs' **41-page, 154-paragraph** Verified Amended Complaint, [2] Defendants are not innocent lenders who charged Plaintiffs interest according to the written agreements between them. Instead, Defendants illegally and improperly enriched themselves at the expense of the tens of thousands of used car dealers who entered into Floorplan Agreements with NextGear. Amd. Compl., ¶ 10. Dealers, including Plaintiffs and other purported class members, used Floorplan Agreements to finance used automobile purchases from auction companies throughout the United States. Both verbally and in the Floorplan Agreement, NextGear represented that Plaintiffs would not be charged interest or curtailment fees until NextGear paid for the vehicles. *Id*. at ¶ 7; Exh. C, p. 1, Sec. 1(a). As Plaintiffs allege, NextGear and the other Defendants, including its General Counsel and its parent companies, Cox and Cox Automotive, knew these representations were false and knowingly and willfully violated the terms of the Floorplan Agreements. Then, when Plaintiffs were not able to pay the amounts purportedly owed to NextGear, Defendants interfered with Plaintiffs' relationships with the auctions, which were essential to their business, causing additional harm to Plaintiffs and other class members.

Even though NextGear began charging interest and curtailment fees to Plaintiffs from the date of the auction, NextGear itself did not pay the auction companies until it received titles for those vehicles. Although Defendants in their motion to dismiss briefing try to diminish Plaintiffs' losses to a "few days of interest," the time between the auction date and when NextGear actually made payment to the auction companies was as long as eight weeks. *Id.*, ¶¶ 13-16. The delay resulted in a windfall for NextGear and the Defendants, who were receiving payments from the

---

[2] R. Doc. 117 (the "Amended Complaint" or "Amd. Compl.").

Plaintiffs without having outlaid a single dollar to the auction companies. Regardless whether NextGear charged Plaintiffs interest on money not lent for a few days or several weeks, this conduct is contrary to law and the terms of the Floorplan Agreements, and over the course of many thousands of transactions reaped a huge cumulative windfall for Defendants at the expense of Plaintiffs and all those similarly situated.

The Amended Complaint alleges that these bad acts were not done by NextGear alone, but were accomplished through a conspiracy by and among NextGear and its corporate parents and employees to defraud, in part, through the use of interstate wire communications by electronically debiting the fraudulent interest payments from bank accounts held by Plaintiffs and others similarly situated. *Id*., ¶ 17. Because Plaintiffs had no way of knowing when NextGear paid the auctions at the time the interest was debited from their bank accounts, other than through the fabricated statements provided by NextGear, Defendants were easily able to conceal their scheme. *Id*., ¶¶ 18-19 and Exh. B. Plaintiffs only learned of the scheme when NextGear returned interest payments to Red Barn related to a vehicle purchased at auction, but which title ultimately could not be obtained. *Id*., ¶¶ 41-42. Because NextGear did not pay the auctions until the title was provided to it, there was no reason for NextGear to charge interest to Red Barn. After this discovery, Red Barn also learned that it had been charged interest on money for vehicles on which it paid cash and had not financed through the NextGear floorplan at all. *Id*. However, after confronting NextGear about these issues and the financial problems that resulted from the Defendants' scheme, Red Barn was blacklisted by NextGear, impairing its ability to participate in the auctions that are essential to its operations. *Id*., ¶¶ 45, 145-147. Likewise, NextGear blacklisted the other Plaintiffs, impairing their ability to do business. *Id.,* ¶¶ 145-147.

The Amended Complaint clearly outlines the systematic and calculated scheme perpetrated by Defendants on Plaintiffs and tens of thousands of other similarly situated used car dealers that had Floorplan Agreements with NextGear and the several causes of action that seek redress for these actions. Defendants' motion to dismiss is without merit and should be denied in its entirety.

## APPLICABLE STANDARDS OF REVIEW

### I.   Rule 12(b)(6) Standard of Review

A complaint will survive a Rule 12(b)(6) motion to dismiss where it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotes omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In ruling on a motion to dismiss, a court must draw all reasonable inferences in favor of the plaintiff, construe allegations of a complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Fortres Grand Corp. v. Warner Bros. Entertainment Inc.,* 763 F.3d 696, 700 (7th Cir. 2014); *Bontkowski v. First Nat'l Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993). While the factual allegations of the complaint must at least "raise a right to relief above the speculative level" in order to survive a 12(b)(6) motion to dismiss, a pleading need only convey enough information to allow the defendant to understand the gravamen of the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999). Notably, "the bar to survive a motion to dismiss is not high." *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010) (taking into account *Iqbal* and *Twombly*). "The plaintiff's claims should survive dismissal if relief could be granted under any set of facts that could be

proved consistent with the allegations." *Dawson v. Gen. Motors Corp.,* 977 F.2d 369, 372 (7th Cir. 1992). "Federal pleading rules… do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 135 S. Ct. 346, 346 (2014).

With regard to a motion to dismiss based on statute of limitations, the Seventh Circuit is clear that "'[d]ismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations.'" *Sidney Hillman Health Center of Rochester v. Abbott Laboratories, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015)(quoting *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir.2009)). "As long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial), at which point the district court may determine compliance with the statute of limitations based on a more complete factual record." *Id.* (citing *Clark v. City of Braidwood*, 318 F.3d 764, 767 (7th Cir.2003) (reversing dismissal because, "at this stage, the question is only whether there is any set of facts that if proven would establish a defense to the statute of limitations, and that possibility exists" (citation omitted)); *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 80 (7th Cir.1992) ("[W]hen a complaint is dismissed at the pleadings stage the question is not what are the facts, but is there a set of facts that if proved would show that the case had merit?")).

## II.   Rule 9(b) Standard of Review

When reviewing claims that a complaint fails to comply with Fed. R. Civ. P. 9(b), the court examines whether the circumstances are stated with particularity. *GE Capital Corp. v. Lease*

*Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997); *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) (Rule 9(b) "particularity" means "the who, what, when, where, and how: the first paragraph of any newspaper story."). However, courts have looked at how Rule 9(b) interacts with the requirement to make a "short and plain statement" and have determined that plaintiffs "need only set forth the basic outline of the scheme … ." *Caliber Partners, Ltd. v. Affeld*, 583 F. Supp. 1308, 1311 (N.D.Ill.1984). A plaintiff satisfies Rule 9(b) when he provides a "general outline of the alleged fraud scheme" sufficient to "reasonably notify the defendants of their purported role" in the fraud. *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992). Moreover, plaintiffs are not required to allege all of the evidentiary details in their complaint that will be used to support the claim. *Caliber Partners*, 538 F. Supp. at 1311. Finally, "Rule 9(b) specifically permits general allegations of knowledge and intent. To require a plaintiff to plead such matters, which are peculiarly within a defendant's knowledge, would impose an impermissible burden." *Id.*

## III.   <u>RICO Standard of Review</u>

This Court must read the RICO statute "broadly." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 (1985); *Morgan v. Bank of Waukegan*, 804 F.2d 970, 974 (7th Cir. 1986). While the actual fraud allegations of a RICO claim must provide the particularity required by Rule 9(b) (and do so in Plaintiffs' Amended Complaint), the enterprise allegations need only meet the pleading requirements of Rule 8(a). *United Food & Commercial Workers Unions & Employers Midwest Health Benefit Fund v. Walgreen Co.,* 719 F.3d 849, 853 (7th Cir. 2013); *Crissen v. Gupta*, 2014 WL 301615, *8 (S.D. Ind. Jan. 28, 2014) ("[E]nterprise allegations necessary to support a RICO claim need only meet the requirements of Fed. R. Civ. P. 8(a), and not the heightened pleading

requirements of Fed. R. Civ. P. 9(b).") (citing *Walgreen*, 719 F.3d at 854)). Thus, a RICO plaintiff must only provide a short and plain statement identifying the enterprise in a "simple, concise, and direct" manner. Fed. R. Civ. P. 8(a) & (e).

## LAW AND ARGUMENT

As set forth below, the claims of Platinum, Mattingly, and Young (the "New Plaintiffs") are not barred by res judicata.[3] In addition, Plaintiffs plead allegations sufficient to state claims for breach of contract, constructive fraud, tortious interference with business relationships, unjust enrichment, and civil RICO, and conspiracy to violate RICO.

## I.    The New Plaintiffs' Claims Are Not Barred by Res Judicata.

As res judicata is an affirmative defense, it is Defendants' burden to demonstrate that res judicata bars the New Plaintiffs' claims. *See Fisher v. State,* 878 N.E.2d 457, 460-61 (Ind. Ct. App. 2007). Defendants have not met that burden, and the New Plaintiffs' claims are not barred by res judicata. First, these claims were not adjudicated on the merits by the narrow default judgments in NextGear's debt collection suits, as those suits did not extend to the broad scope of factual and legal issues presented in this case. Second, these claims could not have been determined in the prior suits as they had not accrued at that time, due to Defendants' fraudulent concealment.

### A.  The Four Requirements for Claim Preclusion

Under Indiana law,[4] res judicata is divided into two branches: claim preclusion and issue preclusion. *Angelopoulos v. Angelopoulos,* 2 N.E.3d 688, 696 (Ind. Ct. App. 2013). Defendants

---

[3] Defendants do not make a res judicata argument against Red Barn because NextGear did not obtain a default judgment against Red Barn.

[4] Because the default judgments relied on by NextGear were rendered by an Indiana state court, Indiana law must be applied to determine whether this suit is barred by res judicata. *Arlin–Golf, LLC v. Village of Arlington Heights*, 631 F.3d 818, 821 (7th Cir. 2011).

argue that claim preclusion applies. Claim preclusion only bars a subsequent action when four requirements are satisfied: (1) the former judgment must have been rendered by a court of competent jurisdiction; (2) the former judgment must have been rendered on the merits; (3) the matter now in issue was, or could have been, determined in the prior action; and (4) the controversy adjudicated in the former action must have been between the parties to the present suit or their privies. *Id.* (citing *Indianapolis Downs, LLC v. Herr*, 834 N.E.2d 699, 703 (Ind. Ct. App.2005)). All four requirements must be met for claim preclusion to apply.[5] In this case, the second and third requirements are not met. Thus, the New Plaintiffs' claims are not barred.

## B. The Default Judgments Do Not Constitute Judgments on the Merits as to the Claims Asserted in this Suit.

The second requirement for claim preclusion is not met because the default judgments entered against the New Plaintiffs are not judgments on the merits as to the claims raised in the Amended Complaint against NextGear. While Defendants argue that default judgments are judgments on the merits for purposes of res judicata, this is not true of all default judgments for all purposes. Rather, "[w]here a default judgment is entered, ***only those issues presented by the complaint can be deemed concluded;*** the defaulting party cannot be charged with admitting matters not within the complaint by his default." *Van Den Biggelaar v. Wagner*, 978 F. Supp. 848, 856-57 (N.D. Ind. 1997) (citations omitted) (emphasis added).[6]

The state court default judgments cited by NextGear are not final judgments on the merits with respect to the claims raised in the Amended Complaint, as the debt collection suits in which

---

[5] *See, e.g., id.; Indianapolis Downs,* 834 N.E.2d at 703; *Afolabi v. Atl. Mortgage & Inv. Corp.,* 849 N.E.2d 1170, 1173 (Ind. Ct. App. 2006).

[6] *See also State Exch. Bank of Culver v. Teague,* 495 N.E.2d 262, 267 (Ind. Ct. App. 1986) (cited in *Eichenberger v. Eichenberger,* 743 N.E.2d 370, 374 (Ind. Ct. App. 2001), the case relied upon by Defendants) (same principle).

8

those judgments were entered were extremely limited and did not address the issues raised in the Amended Complaint. The approximately 4-page complaints filed against each of the New Plaintiffs alleged one cause of action against the customer dealer (breach of contract for default and unpaid amounts under the applicable promissory notes)[7] and very few facts (the existence of a Promissory Note and Floorplan Agreement, the guaranty signed by the principal of the customer dealer, the advance of funds, and the failure to repay). The Amended Complaint sets forth six claims against NextGear (civil RICO, conspiracy to violate RICO, breach of contract, constructive fraud, tortious interference with business relationships, and unjust enrichment), both on behalf of Plaintiffs and a putative class of similarly situated dealers. It contains detailed factual allegations relating to Plaintiffs' lending relationships with NextGear and NextGear's practices with respect to Plaintiffs and dealers nationwide, describing the Account Executives' solicitation of Plaintiffs and other customer dealers to enter into Floorplan Agreements with the company, the company's scheme to defraud Plaintiffs, its charging of interest and fees on amounts not yet loaned, and its interference with the dealers' business relationships with the auctions. The collection lawsuits did not address any of these issues, and the default judgments certainly did not resolve them. The New Plaintiffs' claims in this suit cannot be deemed adjudicated by the default judgments.[8]

### C. The Claims Asserted Herein Could Not Have Been Determined in the State Court Collection Suits.

The third requirement for claim preclusion is not met; the New Plaintiffs' claims were not and could not have been determined in the state court collection suits. NextGear's argument that

---

[7] DSC also asserted a claim for breach of guaranty against each of the individual guarantors based on the dealers' default under the note.

[8] At a minimum, issues of fact remain regarding whether the New Plaintiffs' claims against NextGear fall within the scope of the default judgments against those Plaintiffs, and such issues of fact should not be determined on a motion to dismiss.

these claims would have been compulsory counterclaims in the collection suits is without merit. NextGear's reference to the definition of compulsory counterclaims under Indiana Rule of Trial Procedure Rule 13(A) focuses on the "same transaction or occurrence" language of the rule but excludes the preceding language which is critical to the analysis here:

> **(A) Compulsory counterclaims.** A pleading shall state as a counterclaim *any claim which at the time of serving the pleading the pleader has against any opposing party*, if it arises out of the transaction or occurrence that is the subject-matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction…

Ind. R. Trial P. 13(A) (emphasis in bold italics added). Under this rule, claims which had not accrued at the time of the original suit cannot be considered compulsory counterclaims. *See id.* and *State Exch. Bank,* 495 N.E.2d at 267 (claims that did not accrue until well after the time for filing an answer had expired could not be considered compulsory counterclaims under Rule 13(A)). The New Plaintiffs' claims were not compulsory counterclaims within the scope of Rule 13(A) because they had not accrued at the time NextGear's collection suits were initiated. Accepting the allegations of the Amended Complaint as true, the New Plaintiffs had not and could not have discovered their claims at the time of NextGear's collection suits.

In Indiana, "the cause of action of a tort claim accrues and the statute of limitations begins to run when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another." *Wehling v. Citizens Nat. Bank,* 586 N.E.2d 840, 843 (Ind. 1992). Likewise, a breach of contract claim accrues when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered the breach of contract. *McFreen v. Alcatel-Lucent USA, Inc.,* 2014 WL 6997843, *2 (S.D. Ind. Dec. 10, 2014)

10

(citing *Wehling,* 586 N.E.3d at 842). Plaintiffs allege that NextGear fraudulently omitted and concealed material facts from its customer dealers, including:

> a) The actual interest rates charged to Plaintiffs under the Floorplan Agreements;
>
> b) The fact that NextGear did not pay the auction houses for the vehicles purchased by Plaintiffs until NextGear received the title to the vehicles purchased;
>
> c) The fact that NextGear began charging interest and curtailment fees to Plaintiffs from the date of the auction despite the fact that no money had been lent or obligated under the Floorplan Agreements; and
>
> d) The fact that NextGear intended to interfere with the business relationships of Plaintiffs by "blacklisting" Plaintiffs with the auction houses at which they routinely purchased used cars as part of their business, as a result of which these auction houses prohibited Plaintiffs from attending and participating in the routine sales of used cars, further economically damaging Plaintiffs and others similarly situated.

Amd. Compl., ¶ 19. *See also id.* at ¶¶ 1-18, 20, Count 1, and Count 4. These allegations are at the heart of Plaintiffs' claims, including the claims that NextGear seeks to dismiss on res judicata grounds. When these allegations are accepted as true, as is required on a motion to dismiss, the Court cannot find that the New Plaintiffs knew or should have discovered in 2012, 2013, or 2014 (the dates of the NextGear's complaints) that they had sustained an injury as a result of NextGear's tortious acts or that NextGear had breached the Floorplan Agreements.[9]

---

[9] Further, whether the New Plaintiffs reasonably could have discovered the relevant facts from the review of their bank statements as Defendants contend is a question of fact that cannot be resolved on a motion to dismiss. *McFreen v. Alcatel-Lucent USA, Inc.,* 2014 WL 6997843, *2 (S.D. Ind. Dec. 10, 2014) ("Although the discovery rule inquiry is an objective one… Indiana courts recognize, the date upon which a plaintiff discovered facts which, in the exercise of ordinary diligence, should lead to the discovery of [causation] and resulting injury, is often a question of fact… Questions of fact cannot be resolved by a motion to dismiss.") (internal quotation marks and citations omitted). Further, contrary to NextGear's passing

In short, the default judgments were not judgments on the merits as to the claims asserted by the New Plaintiffs, and the claims asserted here had not accrued and could not have been determined in the collection suits. Thus, two of the requirements for claim preclusion are not met and claim preclusion does not bar the New Plaintiffs' claims against NextGear. *See Angelopoulos*, 2 N.E.3d at 696; *Indianapolis Downs*, 834 N.E.2d at 703; *Afolabi*, 849 N.E.2d at 1173.[10]

## II.   Plaintiffs Adequately State a Claim for Breach of Contract.

The elements of a breach of contract claim under Indiana law are (a) the existence of a contract, (b) defendant's breach thereof, and (c) damages.[11] As to the first element, Plaintiffs have established the existence of a contract. NextGear concedes that each Plaintiff entered into a floorplan agreement with NextGear. Each such agreement was titled "Demand Promissory Note

---

argument, Plaintiffs' claims asserted herein were not affirmative defenses in the collection suits, because as discussed in Section B, *supra,* these claims raise matters relating to NextGear's conduct that were outside the scope of NextGear's case in the collection suits. *Caesars Riverboat Casino, LLC v. Kephart,* 934 N.E.2d 1120, 1125 (Ind. 2010) (whether a defense is affirmative "depends upon whether it controverts an element of a plaintiff's prima facie case or raises matters outside the scope of the prima facie case.") (internal citations and quotation omitted).

[10] "[E]ven where the technical requirements of res judicata have been established, a court may nonetheless refuse to apply the doctrine." *Van Den Biggelaar v. Wagner*, 978 F. Supp. 848, 857 (N.D. Ind. 1997) (citing *International Harvester Co. v. Occupational Safety Comm'n*, 628 F.2d 982 (7th Cir. 1980)). The Seventh Circuit "does not adhere to a rigid view of the doctrine. Res judicata must yield on occasion to competing public policies." *Id*. at 856-857. "[F]inality and fairness are both important goals of the doctrine of res judicata, but when there is an apparent conflict between these two goals, fairness is to be chosen without hesitation." *U.S. Automatic Sprinkler Co. v. Reliable Automatic Sprinkler Co.*, 2008 WL 474234, *7 (S.D. Ind. Feb. 15, 2008). The default judgments were entered in collection suits filed by a company that improperly charged thousands of dealers interest and fees on amounts not yet lent, actively interfered with their relationships with the auctions essential to their business, and fraudulently concealed the entire scheme. Construing the Amended Complaint in the light most favorable to Plaintiffs, as a result of NextGear's actions, the New Plaintiffs and other class members were not in a position to defend against the prior suits. Class actions should allow a group of plaintiffs for whom it would not be individually feasible to pursue a certain claim to pursue those claims collectively. *See e.g.*, *Uhl v. Thoroughbred Tech. & Telecommunications, Inc.*, 2001 WL 987840, *9 (S.D. Ind. Aug. 28, 2001), *aff'd*, 309 F.3d 978 (7th Cir. 2002). To dismiss the New Plaintiffs' claims on the basis of res judicata would violate fundamental fairness.

[11] *Roche Diagnostics Operations, Inc. v. Marsh Supermarkets, LLC,* 987 N.E.2d 72, 85 (Ind. Ct. App. 2013) (citing *Ruse v. Bleeke*, 914 N.E.2d 1, 11 (Ind. Ct. App. 2009)).

and Security Agreement."[12]

As to the second element, Plaintiffs allege that NextGear breached the Floorplan Agreements by charging interest and curtailment fees on money not actually lent, in that NextGear promised in the Demand Promissory Note and Security Agreement that it would only charge interest and curtailment fees from the date a payment was made to a third party. Amd. Compl., ¶¶ 122-125. NextGear concedes that, rather than charging interest from the date it made a payment to a third party, NextGear charged interest from the date of the auction. *See* Def. Mem., p. 23.

NextGear argues, citing three subsections of the Floorplan Agreements—§§ 3, 1(w), and 1(t), and a provision from the U.C.C.—§ 2-328(2), that there was no breach of contract because the "express terms" of the Floorplan Agreements allowed NextGear to charge interest from the date of the auction. *See* Def. Mem., pp. 22-23. However, John Wick, the drafter of the contract,[13] has stated under oath that "advance means we have ***taken our money and either given it to the debtor or a third party on their behalf***, and it's a liability under the note. So you can imagine the easiest advances be the purchases at the auctions. The dealer wants the car. They don't have the money. They request that we give them a credit advance. ***And we advance money*** on their behalf to the auction." (emphasis added). Exhibit 1 at 112:8-15. Of course, on a motion to dismiss, it is premature for a court "to construe the limited facts, which have yet to be fleshed out through discovery, and interpret the various [contractual provisions that one party] contends are controlling without regard to other provisions of the contract." *Beke v. Amica Gen. Agency Inc.,* 2014 WL

---

[12] Amd. Compl., ¶¶ 39, 55, 64, 72, and 121; Defendants' Memorandum at pp. 22-23.

[13] See February 25, 2011 Deposition of John Wick ("Wick Depo."), 96:8-9 (excerpts attached hereto as Exhibit 1). This deposition is referenced in Plaintiffs' Amended Complaint. *See* Amd. Compl., ¶¶ 21 and n. 11;, *see Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012*); Indiana Hi-Rail Corp. v. CSX Transp.*, Inc., 818 F. Supp. 1254, 1259 (S.D. Ind. 1993) (incorporation by reference doctrine).

6066122, *4 (N.D. Ind. Nov. 10, 2014) (citation omitted).[14] Dismissal would be especially premature here where NextGear has given contradictory interpretations of its own contract.

If the Court does examine the provisions cited by NextGear, they cannot be viewed in a vacuum; rather, the Court must interpret the contract as a whole.[15] The contract as a whole provides that interest was to be charged beginning when NextGear made a payment to a third party on the dealer's behalf.[16] If the Court finds any ambiguity in the contractual terms as to when interest was to be charged, that issue cannot be resolved on a motion to dismiss but should be determined by the factfinder. *Rego-Fix AG v. Techniks, Inc.,* 2011 WL 471370, *3 (S.D. Ind. Feb. 2, 2011) ("While a court may take into consideration the plain language in a contract when reviewing a motion to dismiss a claim based on that contract, any ambiguity that might exist in the contract pushes the issue to the fact-finder.") (citation omitted). Further, as the Indiana Supreme Court has held, "when there is ambiguity in a contract, it is construed against its drafter." *MPACT Const. Grp., LLC v. Superior Concrete Constructors, Inc*., 802 N.E.2d 901, 910 (Ind. 2004). Thus, any dispute as to when interest would be charged should be resolved in Plaintiffs' favor.

---

[14] NextGear's reliance on the U.C.C. to bolster its argument about the contract's "express terms" underscores that the terms of contract do not clearly support NextGear's interpretation.

[15] *See, e.g., Nikish Software Corp. v. Manatron, Inc.,* 801 F. Supp. 2d 791, 800 (S.D. Ind. 2011) (In contract cases, the Court's primary objective is to effectuate the intent of the parties at the time the contract was made, which is determined by examining the language the parties used to express their rights and duties… The Court must read the contract as a whole, construing language to give meaning to all of the contract's words, terms, and phrases.") (citation omitted); *Norwood Promotional Products, LLC v. KustomKoozies, LLC,* 835 F. Supp. 2d 685, 692 (S.D. Ind. 2011) ("… under Indiana law, it is this Court's obligation to interpret the contract as a whole in a manner that harmonizes its provisions and gives life to the intent of the parties") (citation omitted).

[16] *See, e.g.,* Floorplan Agreements, §§ 1(a) (defining Advance as "any loan or payment in any amount made pursuant to this Note by DSC *to Dealer or on Dealer's behalf to any third party*); 1(n) (defining DSC Financed Inventory "any Unit now or hereinafter acquired or retained by Dealer *pursuant to an Advance* under this Note); 1(w) (defining "Interest" as "the aggregate rate of interest which accrues on all Liabilities owed by Dealer to DSC…"); 3 (defining Interest Rate); 5(b) and (c) (stating that if DSC makes an Advance, "the Advance shall be deemed an additional Liability under this Note *from the date on which the Advance is made*.") (emphasis added).

14

Given NextGear's prior admissions concerning how interest should be calculated, and that NextGear now admits that it is calculating interest in a different manner, Plaintiffs properly allege the second element of a breach of contract claim.

Finally, as to the third element, Plaintiffs allege damages suffered as a result of NextGear's breach. *See, e.g.,* Amd. Compl., ¶ 14-16; 124-126. NextGear's argument that Plaintiffs were not damaged as they "received a benefit from NextGear" by being able to obtain inventory from the date of the auction fails for several reasons. NextGear's argument misstates the facts as pleaded and the benefit for which Plaintiffs bargained under the Floorplan Agreements, which was not the use of the cars but financing for the purchase of each car under certain agreed-upon terms. Plaintiffs did not receive the bargained-for benefit because NextGear breached the terms of the contract by charging interest and fees on money not loaned. Further, NextGear's suggestion that a plaintiff who receives any benefit from a contract cannot suffer damages when that contract is breached is unsupported by any legal authority.

Most importantly, NextGear's argument that Plaintiffs "were not damaged by the minimal interest charged between the date of purchase and the date payment was actually made by NextGear to the auction" presupposes the existence of some damages (the interest charged between the date of the auction and the date of payment). It also reaches a factual conclusion as to the amount of damages that is both unsupported by any evidence and inappropriate on this motion to dismiss. Plaintiffs allege that NextGear was improperly charging interest and fees for up to ***eight weeks*** before ever loaning any money to Plaintiffs. *See* Amd. Compl., ¶¶ 14-16. Plaintiffs also allege that vehicles that were specifically not financed by a dealer were nevertheless placed under the Floorplan Agreement by NextGear and charged interest and fees, causing debt to which the

15

dealer did not agree and which it was not prepared to pay. *Id.,* ¶ 45. Taking these allegations as true and reading the complaint in the light most favorable to Plaintiffs, the amount of interest improperly charged was not "minimal" but substantial. Further, the amount of the damages is not relevant here; the question is whether Plaintiffs have pled the existence of damages as needed to state a breach of contract claim, and they have done so.

### III.   Plaintiffs Adequately State a Claim for Constructive Fraud.

Defendants do not dispute that Plaintiffs' allegations satisfy elements two, four, or five of a constructive fraud claim, only that Plaintiffs cannot allege facts to satisfy elements one and three—a duty owing to the complaining party and reliance thereupon by the complaining party. However, Plaintiffs adequately plead both duty and reliance, and the constructive fraud claim should not be dismissed.

Under Indiana law, for purposes of a constructive fraud claim, a duty may arise in various ways, not simply when there is a fiduciary duty between the parties. For example, a duty may arise "where one party may possess knowledge not possessed by the other and may thereby enjoy a position of superiority over the other." *Strong v. Jackson*, 777 N.E.2d 1141, 1143 (Ind. Ct. App. 2002). For example, a duty to speak may arise between a bank and a checking account holder as a bank "is inherently in a position superior to its checking account holders, who, in order to conduct their business, must depend on the bank to protect the account holder's funds and to honor checks on the account holder's account when they are properly presented for payment." *Wells v. Stone City Bank*, 691 N.E.2d 1246, 1251 (Ind. Ct. App. 1998) (denying bank's motion for summary judgment on account holder's constructive fraud claim against bank for wrongfully dishonoring checks). A duty may also arise out of a confidential relationship between the parties, or the

existence of a power of attorney. *Hardy*, 603 N.E.2d at 901; *Doe v. Howe Military Sch.*, 227 F.3d 981, 991 (7th Cir. 2000); *Strong*, 777 N.E.2d at 1148. Further, the existence of a duty is a factual matter to be determined by the trier of fact and thus should not be resolved on a motion to dismiss. , *Am. United Life Ins. Co. v. Douglas*, 808 N.E.2d 690, 702-03 (Ind. Ct. App. 2004).

Plaintiffs allege that NextGear owed a duty to Plaintiffs and other class members to speak truthfully and not conceal the material facts set forth in paragraphs 128-130 of the Amended Complaint by virtue of the relationship between the parties— including specifically that NextGear/DSC possessed information not known to Plaintiffs and other members of the class regarding the Floorplan Agreements and its own policies and practices, and that NextGear as the lender enjoyed a superior relationship over Plaintiffs and other members of the class as borrowers. Amd. Compl., ¶ 131. For example, only NextGear knew when it made payments to the auction companies, and it concealed that fact from Plaintiffs. *Id., ¶¶* 13, 19-20, 128-130. NextGear also had access to the Plaintiffs' bank accounts and debited those accounts automatically. *Id., ¶¶* 14-15. At the initial meetings, Defendants made representations to Plaintiffs regarding the applicable interest rate and when that interest was to accrue, despite knowing that the rate was higher and would begin accruing sooner. *Id., ¶* 130. Defendants made these representations throughout their relationship with Plaintiffs and in the written documents Plaintiffs signed. Also, Plaintiffs were required to execute a power of attorney in favor of NextGear. *Id.*, Exh. C. When these allegations are accepted as true and read in Plaintiffs' favor, they establish that NextGear possessed superior knowledge and a superior relationship over Plaintiffs and other class members, giving rise to a

duty to speak and not conceal the material facts set forth in the Amended Complaint. *See, e.g.,*
*Strong,* 777 N.E.2d at 1143; *Hardy*, 603 N.E.2d at 901; *Doe*, 227 F.3d at 991.[17]

Plaintiffs support the reliance element with allegations that they relied on representations
by NextGear in entering into the Floorplan Agreements, and that they relied upon Defendants'
account statements that indicate advances were made on the day of auction, and not weeks or even
months later. Amd. Compl., ¶¶ 38-40; 131-135. Plaintiffs allege they relied on NextGear's
representations in numerous transactions. *Id.*, ¶¶ 46, 60, 69, 77. Because Plaintiffs had no way of
knowing the exact date that NextGear was making payments to the auctions, Plaintiffs believed
that the account statements NextGear created accurately showed the date such advances were made.
*Id.*, ¶¶ 14-18. Plaintiffs did not know that NextGear was backdating withdrawals. *Id.*, ¶ 44.

Defendants' assertion that "Plaintiffs cannot reasonably have relied on any action or
representation by NextGear" (Def. Mem. At 21) fails because"[t]he question of whether the
plaintiff in fact relied on the misrepresentation is a question of fact to be determined by the finder
of fact[,]" *First National Bank v. Acra*, 462 N.E.2d 1345 (Ind. Ct. App. 1984). Such factual
determinations are not appropriate on a motion to dismiss, and Defendants' reliance argument
improperly seeks to have inferences drawn in Defendants' favor.

Moreover, Defendants' argument that Plaintiffs failed to exercise ordinary care because
the interest charges were "open and obvious" and debited from Plaintiffs' accounts glosses over
the details of Plaintiffs' allegations. Plaintiffs do not allege that NextGear concealed that it was
charging them interest. Rather, they allege that NextGear concealed a number of important facts:
(a) the actual interest rates charged; (b) that NextGear did not pay the auctions for the vehicles

---

[17] At a minimum, Plaintiffs have plead facts sufficient to raise a factual issue as to the existence of a duty
sufficient to avoid dismissal of their constructive fraud claim at this early stage.

18

until NextGear received the titles; (c) that NextGear began charging interest and fees from the date of the auction despite the fact that no money had been lent or obligated under the Floorplan Agreements; and (d) that NextGear intended to interfere with Plaintiffs' business relationships if they became adverse to NextGear by blacklisting them with the auctions. *See* Amd. Compl., ¶¶ 7-18, 19-20. Further, Defendants' suggestion that the interest charges were "open and obvious" fails when the Amended Complaint is construed in the light most favorable to Plaintiffs. The bank statements simply showed money being debited from their accounts, and the invoices and NextGear statements and website only showed when the interest began to accrue. *See* Amd. Compl., ¶¶ 8, 13-16, 19, 20, and 21 and Exh. B. No amount of review and analysis of bank statements or NextGear account statements could have revealed to Plaintiffs that NextGear did not pay the auctions for the vehicles on the date of the auctions but rather paid several days or weeks later. *See* Amd. Compl., ¶ 20; *see generally, id.,* ¶¶ 7-19. Plaintiffs knew they were being charged interest beginning on the date of the auction, but had no way of knowing that they had been charged interest and fees before money was lent, *i.e.*, that they had sustained an injury.

## IV.   **Tortious Interference**

### A.  **Plaintiffs Adequately State a Claim for Tortious Interference.**

NextGear incorrectly states that Plaintiffs assert a tortious interference with business relationships claim because NextGear would no longer lend money to Plaintiffs. *See* Def. Mem., p. 18. Plaintiffs are asserting a tortious interference with business relationships claim against NextGear because it interfered with Plaintiffs' business relationships with various auction houses where Plaintiffs had bidding privileges and frequently purchased automobiles either with cash or other forms of credit. *See* Amd. Compl., ¶¶ 43, 145. NextGear, through its power in the used car

industry, interfered with these relationships by pressuring the auction houses to not do business with Plaintiffs. *Id.*, ¶¶ 145-147. Plaintiffs adequately pleaded all five elements of a tortious interference with business relationship claim: (1) the existence of a valid relationship; (2) the defendant's knowledge of the existence of the relationship; (3) the defendant's intentional interference with that relationship; (4) the absence of justification; and (5) damages resulting from defendant's wrongful interference with the relationship. *Levee v. Beeching*, 729 N.E.2d 215, 222 (Ind. Ct. App. 2000).

The Amended Complaint alleges that Plaintiffs had relationships and bidding privileges with various auction companies to purchase and participate at auctions. *See* Amd. Compl., ¶¶ 8, 143. NextGear obviously knew that Plaintiffs had the ability to participate in the auctions because NextGear was financing Plaintiffs' transactions at the auction houses. *See id.*, Exh. B. After placing Plaintiffs in default through fraudulent and inflated invoices that charged interest and curtailment fees on money not lent, NextGear used its power and influence in the car industry to prohibit Plaintiffs from attending and purchasing cars at the auctions. *See id.*, ¶¶ 145-147. Plaintiffs could not attend auctions and sell or purchase cars because of NextGear's unjustified and intentional interference with Plaintiffs' ability to attend the auctions, even if Plaintiffs used cash or other means of financing when purchasing vehicles. *See id.*, ¶¶ 13-22. While NextGear could have informed the auction houses that Plaintiffs no longer had a line of credit with NextGear, NextGear had no justification to force the auction houses to blacklist Plaintiffs and use its power and influence in the industry to prevent Plaintiffs from participating in the auctions. Plaintiffs' inability to purchase vehicles due to NextGear's interference with its business relationships with auctions damaged Plaintiffs' ability to obtain and sell inventory and harmed their business. *See id.*, ¶ 149.

Plaintiffs further allege a RICO conspiracy and other illegal conduct on the part of NextGear and the other defendants. *See id.*, ¶¶ 100-103; 113-119. The illegal conduct of defrauding Plaintiffs and then running them out of business by interfering with Plaintiffs' auction relationships is part and parcel of the same conduct meant to conceal NextGear's fraudulent and criminal behavior. Plaintiffs adequately plead all five elements of a tortious interference with business relationship claim and that the interference comprised an illegal scheme to defraud.

### B.  Plaintiffs' Tortious Interference Claim Is Timely Pleaded.

Even based on the dates offered by Defendants for the accrual of Plaintiffs' tortious interference claim, there can be no dispute that the original complaint, filed on December 3, 2013, was timely as to all Plaintiffs under Indiana law. *See* Ind. Code § 34-11-2-4. Moreover, the end of Plaintiffs' relationship with NextGear has no relation to the blacklisting by NextGear to the auctions that were crucial for Plaintiffs' businesses. There are no allegations in the Amended Complaint that the end of the lending relationship between Plaintiffs and NextGear (and similarly the bankruptcy filing by Red Barn) gave rise to the tortious interference claims, and Defendants cannot prevail on a motion to dismiss based on "facts" not alleged in the Amended Complaint.

Similarly, there can be no dispute that the tortious interference claim, like the additional claims raised in the Amended Complaint, "relate back" to the timely filed original complaint. Fed. R. Civ. Pro. 15(c). "Federal Rule 15(c) provides that an amended complaint relates back to the date of the original complaint for purposes of tolling the statute of limitations where 'the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.'…Generally, an amended complaint in which the plaintiff merely adds legal conclusions or changes the theory of recovery will relate back

to the filing of the original complaint if 'the factual situation upon which the action depends remains the same and has been brought to defendant's attention by the original pleading.'" *Henderson v. Bolanda*, 253 F.3d 928, 931 (7th Cir. 2001) (quoting Fed.R.Civ.P. 15(c)(2) and 6A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure Civil 2d, § 1497 at 95 (1990), and citing *Kuba v. Ristow Trucking Co., Inc.*, 811 F.2d 1053, 1055 (7th Cir.1987); *Donnelly v. Yellow Freight System, Inc.*, 874 F.2d 402, 410 (7th Cir.1989)).

The tortious interference claim arising out of Defendants' "blacklisting" of Plaintiffs relates back to the "conduct, transaction, or occurrence set forth" in the original complaint. In the original complaint, Red Barn outlined conduct by Defendants that caused Red Barn financial distress, including the charging of interest on money not lent by Defendants and the seizure of cars that Red Barn was attempting to sell at auction. *See* Amd. Compl., ¶¶ 13-22. This conduct, including specifically preventing Red Barn from selling its vehicles at auction, is similar to the conduct alleged in the tortious interference claim in the Amended Complaint. Defendants' motion to dismiss that claim based on the statute of limitations is without merit and should be denied. *See, e.g.*, *Simon Property Group, L.P. v. my Simon, Inc.*, 2003 WL 23101787, *3 (S.D. Ind. 2003).

## V.   **Plaintiffs Adequately Allege the Defendants' Unjust Enrichment.**

Although NextGear has admitted the contracts with Plaintiffs, the Federal Rules of Civil Procedure permit Plaintiffs to plead all claims alternatively in their complaint. *See* Fed.R.Civ.P. 8(e)(2) (claims need not be consistent). *F. McConnell & Sons, Inc. v. Target Data Sys., Inc.*, 84 F. Supp. 2d 961, 977 (N.D. Ind. 1999) (collecting cases). Plaintiffs allege several claims against NextGear, and at this early stage it would be premature for the Court to dismiss the unjust

22

enrichment claim against NextGear. Additionally, because the contracts do not extend to the Cox Defendants, Plaintiffs' claims of unjust enrichment against the Cox Defendants remain viable.

"Unjust enrichment is an appropriate claim when 'no contract actually exists but where justice nevertheless warrants a recovery under the circumstances as though there had been a promise.'" *Desert Buy Palm Springs, Inc. v. DirectBuy, Inc.*, 2012 WL 2130558, *5 (N.D. Ind. 2012) (quoting *DiMizio v. Romo*, 756 N.E.2d 1018, 1024–1025 (Ind. Ct. App. 2001) and denying motion to dismiss unjust enrichment claims based on allegations that defendant wrongfully retained monies belonging to plaintiff that it was not owed). "A claim of unjust enrichment requires a claimant to allege that a measurable benefit has been conferred on the defendant 'under such circumstances that the defendant's retention of the benefit without payment would be unjust.'" *Id*. (quoting *Zoeller v. East Chicago Second Century, Inc.*, 904 N.E.2d 213, 220 (Ind. 2009)).

Plaintiffs allege that the Cox Defendants were unjustly enriched by "charging and collecting interest from the Red Barn Plaintiffs on money that was not lent…" such that "the Red Barn Plaintiffs and other members of the Class were unjustly deprived of the money and property unjustly taken from them…" Amd. Compl., ¶¶ 151-152. Taken as true, Plaintiffs' allegations are sufficient to state a basis for unjust enrichment by the Cox Defendants.

**VI.    Plaintiffs Adequately Plead a Substantive RICO Claim.**

Any analysis of a RICO claim must begin with the applicable provisions of the statute itself, which provides:

> It shall be unlawful for any person **employed by or associated** with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, **to conduct or participate**, directly or indirectly, **in the conduct of such enterprise's affairs** through a pattern of racketeering activity or collection of unlawful debt.

23

18 U.S.C. § 1962(c) (emphasis added). Next, the statute defines "person" as "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). The statute defines "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or *group of individuals associated in fact* although not a legal entity." 18 U.S.C. § 1961(4) (emphasis added). The statute defines "racketeering activity" as "*any act which is indictable* under any of the following provisions of Title 18, United States Code: . . . section 1341 (relating to mail fraud), [and] section 1343 (relating to wire fraud)…". 18 U.S.C. § 1961(1). Finally, the statute defines a "pattern of racketeering activity" as requiring "*at least two acts of racketeering activity*, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5) (emphasis added). Therefore, to "state a claim under § 1962(c), a RICO plaintiff must show the '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Jennings v. Auto Meter Products, Inc.*, 495 F.3d 466, 472 (7th Cir. 2007) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 474 U.S. 479, 496 (1985)).

### A.  Defendants Participated in the Affairs of the Enterprise.

The Amended Complaint alleges facts that demonstrate, even at this early stage, the participation of each Defendant in the affairs of the Enterprise. Plaintiffs allege that NextGear devised a scheme and artifice to defraud Plaintiffs and to obtain money and property by means of false and fraudulent pretenses and representations by charging "interest" to Plaintiffs, on money not lent by NextGear. Amd. Compl., ¶¶ 2-3, 36-78. Further, NextGear operates as a wholly-owned subsidiary of Cox Automotive, which maintains that it is "the world's leader in vehicle remarketing services and digital marketing and software solutions for automotive dealers and customers." *Id.*

In addition to owning and controlling and benefitting from its wholly-owned subsidiary, NextGear, Cox Automotive also owns/operates Manheim Auctions, and other industry components that "represent the biggest automotive marketing and remarketing company in the world." *Id.* Notably, Cox Automotive partners "with more than 40,000 dealers and touch over 65 percent of all car buyers in the U.S. with the most recognized brands in the industry." *Id.* Cox Automotive is a wholly owned subsidiary of Cox, which claims "revenues of more than $17 billion and approximately 55,000 employees." *Id.* In order to carry out the scheme and artifice to defraud, NextGear utilized several auction houses to defraud Plaintiffs. *Id.*, ¶ 8. These auction houses, some under the auspices of Manheim Auctions (Cox Automotive), concealed NextGear's actions, allowing NextGear to complete the scheme to defraud. *Id.*, ¶¶ 3-8, 36-78. In addition, after it illegally defrauded Plaintiffs, NextGear, using the power and influence of its parent corporate organizations-- Cox Automotive and Cox-- in the industry, blacklisted Plaintiffs with auctions owned and operated by Manheim and other industry auctions that existed independently from Defendants. As a result, these auction houses prohibited Plaintiffs from attending and participating in the routine sales of used cars, causing further damage to Plaintiffs. *Id.*, ¶¶ 8, 19-20.

As for Mr. Wick, NextGear's Chief Strategy Officer, Plaintiffs allege that he "leads the company's strategic and corporate development" and oversees "all corporate, legislative and litigation matters." *Id.*, ¶ 21. Mr. Wick admitted in prior sworn testimony, when confronted with this scheme, that NextGear charges the dealer/customer on individual loans prior to NextGear actually funding the loan. *Id.* In other words, he admitted that Defendants' policy and practice was

to take money from customers as interest on money not yet lent.[18] Such policy and practice contradicts the clear provisions contained in the Floorplan Agreements between NextGear and Plaintiffs. Mr. Wick allegedly drafted the contracts between NextGear and Plaintiffs. *Id.*, Exhs. A, C, D, and E. Moreover, Plaintiffs allege that Defendants and their associates concealed this policy and practice from their own customers, including Plaintiffs and other members of the putative class. This is the core of the alleged scheme and artifice to defraud.

Defendants incorrectly assert that *Reves v. Ernst & Young*, 507 U.S. 170 (1993), forecloses liability under 18 U.S.C. § 1962(c) for such conduct. The *Reves* Court explained that "the word 'participate' makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs …." *Id.* at 179. Further, under RICO, "an enterprise is 'operated' not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management. An enterprise also might be 'operated' or 'managed' by others 'associated with' the enterprise who exert control over it as, for example, by bribery." *Id.* at 184. Courts have interpreted the level of involvement required in an alleged enterprise as a relatively low hurdle for plaintiffs to clear, and further hold that whether defendants operate or manage an enterprise is an issue of fact that cannot be decided on a motion to dismiss.[19]

---

[18] In the same deposition, Mr. Wick admitted that he drafted the promissory notes and security agreements utilized with all customer dealers. Exh. 1, 96:8-9. Next, Mr. Wick testified that he trained others at NextGear on legal issues regarding the notes. *Id.,* 100:7-23. He further testified that NextGear used its relationship with Manheim to fund transactions without a title conveyance. *Id.,* 116:6-12.

[19] *See, e.g.*, *MCM Partners, Inc. v. Andrews-Bartlett & Assocs., Inc.*, 62 F.3d 967, 978 (7th Cir. 1995) (lower-rung participants are liable under RICO when they enable enterprise to achieve its goals by knowingly implementing management's decisions); *Baisch v. Gallina* 346 F.3d 366, 377 (2d Cir. 2003); *De Falco v. Bernas*, 244 F.3d 286, 309 (2d Cir. 2001); *United States v. Allen*, 155 F.3d 35, 42-43 (2d Cir. 1998) (holding question whether defendant "operated or managed" the affairs of an enterprise to be one of fact); *United States v. Posadas-Rios*, 158 F.3d 832, 856 (5th Cir. 1998) (distinguishing *Reves* and holding that a lower-rung employee need only take part in operation, not direct affairs). At a minimum, the question of whether a particular defendant actually operates or manages an enterprise is generally considered by

### B.  Plaintiffs Sufficiently Allege A RICO Enterprise.

RICO defines "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or ***group of individuals associated in fact*** although not a legal entity." 18 U.S.C. § 1961(4) (emphasis added). An association-in-fact does not require, however, any structural features beyond "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purposes." *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 655 (7th Cir. 2015) (quoting *Boyle v. United States*, 556 U.S. 938, 946 (2009)); *see also Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 389 (7th Cir. 2011) ("[T]he alleged enterprise in this case had purpose and relationships and it certainly had 'longevity,' and if *Boyle* is taken at face value[,] nothing more is required to make a conspiracy a RICO enterprise."). Defendants also complain that the alleged enterprise lacks "structure." However, the Seventh Circuit has consistently held, "[T]here must be some structure, to distinguish an enterprise from a mere conspiracy, ***but there need not be much***." *Burdett v. Miller*, 957 F.2d 1375, 1379 (7th Cir. 1992) (emphasis added).

Here, Plaintiffs allege that the Enterprise is "an ongoing, continuing group or unit of persons and entities associated together for the common purpose of maximizing profits by fraudulently debiting money from accounts held by its customer used car dealers on money not lent by NextGear." Amd. Compl., ¶ 96. Plaintiffs further allege that, although "Defendants participate in and are part of the NextGear Enterprise, Defendants also exist separately and distinctly from the enterprise." *Id.*, ¶ 97. The Enterprise alleged "maintains a structure, in that the executive management of NextGear (including Mr. Wick, as detailed above) knowingly

---

courts to be a question of fact that is left to the ultimate factfinder. *United States v. Allen*, 155 F.3d 35, 42-43 (2d Cir. 1998).

established a uniform approach to secretly charge customers interest and curtailment fees which NextGear itself was unauthorized to obtain….” *Id.*, ¶ 98. Further, the alleged Enterprise “includes auction houses owned and operated by Defendants as well as other auction houses associated with Defendants where these auction houses concealed NextGear’s actions allowing NextGear to conduct the pattern of racketeering activity.” *Id.* The Amended Complaint also alleges that, as part of the scheme and artifice to defraud, the Enterprise uses auction houses and individuals to blacklist the Plaintiffs. *Id.*, ¶¶ 8, 19-20. The Amended Complaint clearly satisfies the requisite structural features explained in *Bible* to defeat a motion to dismiss. *See* 799 F.3d at 655.

The Amended Complaint describes with particularity the structural components and the actual fraudulent conduct perpetrated by the Enterprise and its associates over a long period of time. The NextGear Enterprise existed (and still exists) by utilizing auction houses, companies, and lower-rung employees such as Stuart LaBauve, Lourdes Givens, Mark Holley, and Sean Tabb to execute its predicate acts of numerous wire fraud transmissions. Amd. Compl., ¶¶ 13-20. The Enterprise’s fraudulent conduct against each Plaintiff is alleged with particularity:

- As to Red Barn, the NextGear Enterprise undertook 524 transactions with Red Barn where the NextGear Enterprise electronically debited approximately $80,000 in interest fees from Red Barn’s account. *Id.,* ¶ 46. As alleged, the NextGear Enterprise obtained much of this money from Red Barn by fraudulent representations and false pretenses because NextGear “never lent the principal sum to Red Barn in the first place….” *Id.* These wire fraud predicate acts alleged in the Amended Complaint are detailed in the attached and incorporated Red Barn account history. *Id.*, Exh. B. As shown on this account history, NextGear began committing the wire fraud acts on or about August 16, 2011, and continued doing so until on or about March 11, 2013. *Id.*

- The NextGear Enterprise undertook approximately 1,000 transactions with Platinum where the NextGear Enterprise electronically debited interest fees from Platinum’s account. *Id.*, ¶ 60. As alleged, the NextGear Enterprise obtained much of this money from Platinum by fraudulent representations and false pretenses because NextGear “never lent the principal sum to Platinum Motors in the first place….” *Id.* NextGear began committing the wire

fraud acts concerning Platinum on or about May 23, 2011, and continued doing so until on or about June 21, 2012. *Id.*

- The NextGear Enterprise undertook approximately 320 transactions with Mattingly where the NextGear Enterprise electronically debited interest fees from Mattingly's account. *Id.*, ¶ 69. As alleged, the NextGear Enterprise obtained much of this money from Mattingly by fraudulent representations and false pretenses because NextGear "never lent the principal sum to Mattingly Auto in the first place…." *Id.* NextGear began committing the wire fraud acts concerning Mattingly in or near February 2009, and continued doing so until in or near May 2012. *Id.*

- The NextGear Enterprise conducted approximately seven transactions with Young where the NextGear Enterprise electronically debited interest fees from Young's account. *Id.*, ¶ 77. As alleged, the NextGear Enterprise obtained much of this money from Young by fraudulent representations and false pretenses because NextGear "never lent the principal sum to Executive Auto Group in the first place. . . ." *Id.*

As set forth above, the Amended Complaint alleges particularized fraudulent activity sufficient to defeat a motion to dismiss.

### C. Plaintiffs Sufficiently Allege A RICO Enterprise Distinct from the RICO Person.

Defendants incorrectly assert that Plaintiffs have failed to "meet the requirement that the allegedly liable RICO 'Person' be distinct from the alleged RICO 'enterprise.'" *See* Def. Mem., p. 11. Section 1962(c) of RICO "requires *only some* separate and distinct existence for the person and the enterprise." *Chen v. Mayflower Transit, Inc.*, 315 F. Supp. 2d 866, 901 (N.D. Ill. 2004). Defendants' assertion is unfounded and the alleged Enterprise is distinct from the named RICO persons. *See Wesleyan Pension Fund Inc. v. First Albany Corp.*, 964 F. Supp. 1255, 1275-76 (S.D. Ind. 1997)("A parent corporation can be a 'person' separate and distinct from its wholly-owned subsidiary, the 'enterprise.'"). *See also Ashland Oil, Inc. v. Arnett*, 875 F.2d 1271, 1280 (7th Cir. 1989)(determining that controlling shareholder of a corporation-enterprise was a separate and distinct entity from that enterprise). The corporate owner is distinct from the corporation because the corporation was "a legally different entity with different rights and responsibilities due to its

different legal status." *Cedric Kushner Promotions Ltd. v. King*, 533 U.S. 158, 163 (2001). Here, unlike the cases cited by Defendants, the RICO persons are not identical to the group making up the Enterprise. The Enterprise is not only composed of wholly-owned subsidiaries but separately owned entities and individuals.

The cases cited by Defendants—*Fitzgerald v. Chrysler Corp.*, 116 F.3d 225 (7th Cir. 1997) and *Emery v. American General Finance, Inc.*, 134 F.3d 1321 (7th Cir. 1998)—are inapplicable as *Fitzgerald* dealt with Chrysler and its agents and *Emery* dealt with American General Corporation and its subsidiaries. Here, the Amended Complaint does not simply include a corporation and its subparts; as set forth above, it alleges an enterprise that includes more than Defendants and their subsidiaries. Moreover, *Fitzgerald* and *Emery* recognize the possibility that a corporation and its agents or affiliates can constitute a RICO enterprise and that control group or the people who control a corporation can be distinct from a corporation. *See Emery*, 134 F.3d at 1324-1325 ("What is distinct from the corporation is the people who control it...").

Plaintiffs allege that the Enterprise is more than simply an association that conducts the normal affairs of the RICO Defendants. Specifically, the alleged Enterprise carries out Defendants' scheme by committing multiple acts of wire fraud by charging interest and fees on money never lent and by blacklisting their victims. This is separate and distinct from Defendants' regular business of providing financing for the secondary market of used car sales.

"The requirement that a RICO defendant have engaged in the enterprise's affairs rather than just its own is simply another reference to the fact that a RICO defendant must be distinct from the alleged enterprise." *Chen*, 315 F. Supp. 2d at 906. Plaintiffs have alleged that the wrongdoing was performed on behalf of the enterprise rather than the RICO Defendants, and the

wrongdoing is therefore not solely the RICO Defendants "own affairs." Plaintiffs have alleged a RICO enterprise distinct and separate from the RICO persons (and their affairs), and that the enterprises are not merely "incidental business relationships."

In addition, courts have consistently approved RICO complaints where Defendants are among the members of a separate association-in-fact enterprise. For example, in *Burdett v. Miller*, 957 F.2d 1375, 1379-80 (7th Cir. 1992), the Seventh Circuit concluded that association-in-fact of an accountant and three sponsors of an investment could constitute an enterprise. Numerous courts in other circuits have reached similar conclusions.[20]

## VII.  Plaintiffs Adequately Plead a RICO Conspiracy Claim.

Next, Defendants incorrectly assert that Plaintiffs have failed to plead the RICO conspiracy claim. The RICO statute provides, "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). A RICO claim is broad, but a RICO conspiracy claim is even broader. Anyone who agrees or conspires to pursue the same criminal objective can be held liable for a RICO violation. *Salinas v. United States*, 522 U.S. 52, 63-64 (1997). Thus, to state a viable claim under § 1962(d), a plaintiff must allege (1) that each defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity, and (2) that each defendant further agreed that someone would commit at least two predicate acts to accomplish those goals. *Goren v. New Vision Int'l Inc.*, 156 F.3d 721, 732 (7th Cir 1998). "If conspirators have a plan

---

[20] *See Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 263-64 (2d Cir. 1995); *U.S. v. Console*, 13 F.3d 641, 652 (3d Cir. 1993); *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*, 868 F.2d 740, 748 (5th Cir. 1989); *Alcorn County v. U.S. Interstate Supplies*, 731 F.2d 1160, 1168 (5th Cir. 1984); *Davis v. Mutual Life Ins. Co.*, 6 F.3d 367, 378 (6th Cir. 1993); *Litton Sys., Inc. v. Ssangyong Cement Indus., Co.*, 1997 WL 59360, *9 (Fed. Cir. Feb. 13, 1997); *Living Designs, Inc. v. E.I. DuPont de Nemours and Co.*, 431 F.3d 353, 361 (9th Cir. 2005); *U.S. v. Blinder*, 10 F.3d 1468, 1473 (9th Cir. 1993).

which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators." *Salinas* 522 U.S. at 64. A conspirator must simply intend to further an endeavor that, if completed, would satisfy all elements of a civil RICO claim. *Id.* at 65. Further, courts have recognized ***intra-corporate conspiracies*** because corporations and their subsidiaries and employees are distinct legal entities, and, thus, agents may be liable for their own conspiratorial actions. *Ashland Oil*, 875 F.2d at 1281. Here, Plaintiffs allege "facts indicating an act of agreement among the alleged conspirators or what roles the various defendants would play in the conspiracy." *Lachmund v. ADM Investor Servs. Inc.*, 181 F.3d 777, 785 (7th Cir. 1999).

"A RICO conspiracy, like all conspiracies, ***does not require direct evidence of agreement***; an agreement can be ***inferred from the circumstances***." *U.S. v. Neapolitan*, 791 F.2d 489, 501(7th Cir 1986) (emphasis added). Once the plan is in place, a partner, supporter, or even a third party who agreed to participate can be guilty of RICO conspiracy. *Salinas*, 522 US at 64. The Amended Complaint specifically alleges that each defendant entered into an agreement to violate RICO, and the allegations regarding the conspiratorial agreement "can be inferred from the circumstances." Amd. Compl., ¶¶ 113-119. Here, Plaintiffs allege that there is an agreement to participate in the affairs of the RICO enterprise as well as an agreement to the commission of two specific predicate acts (by someone) on behalf of the enterprise. Notably, as referenced above, the Amended Complaint describes the relevant corporate entities, individuals John Wick, Stuart LaBauve, Lourdes Givens, Mark Holley, and Sean Tabb, and numerous auctions houses both owned and operated by the RICO Defendants and others utilized by the RICO Defendants to blacklist Plaintiffs. These allegations are sufficient to support a claim for RICO conspiracy. *See also Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989) (a conspiracy claim must contain supportive factual

32

allegations describing the general composition of the conspiracy, some or all of its broad objectives, and the defendant's general role in the conspiracy). Here, Plaintiffs allege facts sufficient to support the existence of a conspiracy, and the claim should not be dismissed.

## VIII.   Plaintiffs' RICO Claims Are Not Time-Barred.

Defendants' assertion that the RICO claims are time-barred is incorrect. It is well-settled that civil RICO causes of actions do not accrue until the plaintiff discovers, or reasonably should have discovered, its injury. *Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004); *Bontkowski v. First Nat'l Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993). Although RICO does not provide an express statute of limitations for actions brought under its civil enforcement provision, the Supreme Court has held that civil RICO claims should be governed by the same four-year statute of limitations that governs closely related claims under the Clayton Act. *See Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 150-56 (1987) (analyzing the statutory relationship and legislative history of 18 U.S.C. § 1964 and the Clayton Act, 15 U.S.C. §15); *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009) ("The statute of limitations for a civil RICO cause of action is a ***fairly generous four years***.") (emphasis added).

In *Barry Aviation*, the Seventh Circuit explained the accrual of actions under RICO:

> For both RICO claims and §1983 claims, a cause of action accrues when the plaintiff knew or should have known that it had sustained an injury. … ***[T]he accrual date is not determined when the injury occurs but when it is discovered or should have been discovered***…. [S]elf-concealing frauds do not extend the limitations period through equitable tolling but, instead, ***postpone the date of accrual by preventing the plaintiff from discovering he is a victim of a fraud***.

377 F.3d at 688 (emphasis added) (citing *Cada v. Baxter Healthcare*, 920 F.2d 446, 450 (7th Cir. 1990); *Martin v. Consultants & Admins., Inc.*, 966 F.2d 1078, 1094 n.17 (7th Cir. 1992)).

Further, under RICO, a plaintiff's claim does not accrue until *after* the alleged defendants have engaged in a "pattern of racketeering" activity. *McCool v. Strata Oil Co.*, 972 F.2d 1452, 1465 (7th Cir. 1992) ("There must, of course, be a pattern of racketeering before the plaintiff's RICO claim accrues, and this requirement might delay accrual until after the plaintiff discovers her injury."). Therefore, the statute of limitations for RICO claims begin to accrue when both a "pattern of racketeering" (*i.e.* two predicate acts-has occurred), and when the plaintiff knows or should know he or she was injured.

Defendants incorrectly assert that the "wrongful interest charges were open and obvious through Plaintiffs' bank statements and otherwise…." Def. Mem., p. 13. To the contrary, Defendants debited the interests and curtailment fees from Plaintiffs' accounts under the false pretense that the NextGear had actually funded the loans at the time of the auction as opposed to the time of the delivery of the title for individual vehicles. Amd. Compl., ¶¶ 13-18. Accordingly, Plaintiffs had no cause to believe that NextGear was illegally defrauding them by committing multiple and continuous wire frauds through these transactions (which all affected interstate commerce). As to Red Barn, the Amended Complaint is clear that there was no cause to believe an injury had occurred until, at the earliest, June 2012. *Id.*, ¶¶ 41-45. Plaintiffs filed their Motion for Leave to Amend in January 2016, which included the Amended Complaint alleging its RICO causes of action, well within the four-year statute of limitations. Rec. Doc. No. 89. As for the remaining Plaintiffs, they were not aware of and had no reason to investigate NextGear's concealed fraudulent activities. Thus is the nature of the concealed wire fraud that Plaintiffs plainly allege and dismissal of Plaintiffs' RICO claims is not merited.

## CONCLUSION

For the reasons set forth herein, Defendants' motion to dismiss should be denied in its entirety.

Respectfully submitted,

| | |
|---|---|
| */s/ Kerry A. Murphy* | JAMES M. GARNER (La. Bar No. 19589) |
| GLADSTONE N. JONES, III (La. Bar No. 22221) | *Pro Hac Vice* |
| *Pro Hac Vice* | RYAN D. ADAMS (La. Bar No. 27931) |
| LYNN E. SWANSON (La. Bar No. 22650) | *Pro Hac Vice* |
| *Pro Hac Vice* | MATTHEW M. COMAN |
| KERRY A. MURPHY (La. Bar No. 31382) | (La. Bar No. 23613) |
| *Pro Hac Vice* | *Pro Hac Vice* |
| **JONES, SWANSON, HUDDELL &** | **SHER GARNER CAHILL RICHTER** |
| **GARRISON, L.L.C**. | **KLEIN & HILBERT, L.L.C.** |
| 601 Poydras Street, Suite 2655 | 909 Poydras Street, Suite 2800 |
| New Orleans, Louisiana 70130 | New Orleans, Louisiana 70112 |
| Telephone: (504) 523-2500 | Telephone: (504) 299-2100 |
| Facsimile: (504) 523-2508 | Facsimile: (504) 299-2300 |
| gjones@jonesswanson.com | jgarner@shergarner.com |
| lswanson@jonesswanson.com | radams@shergarner.com |
| kmurphy@jonesswanson.com | mcoman@shergarner.com |
| | |
| CASSIE E. FELDER (La. Bar No. 27805) | Kathleen A. DeLaney (#18604-49) |
| *Pro Hac Vice* | **DELANEY & DELANEY LLC** |
| **LUGENBUHL, WHEATON, PECK,** | 3646 North Washington Blvd. |
| **RANKIN & HUBBARD** | Indianapolis, IN 46205 |
| 9311 Bluebonnet Blvd., Suite A | Telephone: (317) 920-0400 |
| Baton Rouge, Louisiana 70810 | Facsimile: (317) 0404 |
| Telephone: (225) 291-1990 | Kathleen@delaneylaw.net |
| Facsimile: (504) 3109195 | |
| cfelder@felderllc.com | |

**COUNSEL FOR PLAINTIFFS AND**
**THE PROPOSED CLASS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have on this 16th day of May, 2016, served a copy of the foregoing upon all counsel of record by CM/ECF filing.

*/s/ Kerry A. Murphy*

36