IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RED BARN MOTORS, INC., PLATINUM MOTORS, INC., MATTINGLY AUTO SALES, INC., and YOUNG EXECUTIVE MANAGEMENT & CONSULTING SERVICES, INC., individually and on behalf of other members of the general public similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>COX ENTERPRISES, INC., COX AUTOMOTIVE, INC., NEXTGEAR CAPITAL, INC. F/K/A DEALER SERVICES CORPORATION, successor by merger with Manheim Automotive Financial Services, Inc., and JOHN WICK,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 1:14-cv-01589-TWP-DKL<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## **REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

Despite boasting of the length of their "*41-page, 154 paragraph*" Amended Complaint and then attempting to replead it with their 35-page Opposition to Defendants' Motion to Dismiss Amended Complaint [Doc. 135] (the "Opposition"), Plaintiffs still fail to state a cognizable claim against NextGear or any of the other defendants. As a result, their Amended Complaint should be dismissed.

Plaintiffs now expressly concede the interest charges at issue are governed by the floor plan agreements between the parties, which are attached to the Amended Complaint. Since those agreements are clear on their face, can be construed by the Court as a matter of law, and clearly allow the charges, each claim of Plaintiffs relating to interest charges fails. The agreements provide that NextGear is entitled to charge interest once a financial obligation is incurred or an

1

agreement to pay on behalf of a dealer is made—and that obligation or agreement occurs at the time a vehicle is purchased and NextGear's credit is bound.  What happens between NextGear and a third party simply does not matter for Plaintiffs, practically or under the contracts at issue.

In addition, the RICO and tortious interference claims remain too vague and implausible to state a claim.  As a result, Plaintiffs' claims are without merit and the Amended Complaint should be dismissed as a matter of law.

I. **Plaintiffs' Breach of Contract Claim Fails Because the Unambiguous Terms of the Contract Demonstrate That Plaintiffs' Allegations Do Not Constitute a Breach (Count 3).**

    A. <u>The Plain Language of the Floor Plan Agreements Allows NextGear to Charge Interest from the Date a Dealer Purchases a Vehicle Using a Floor Plan.</u>

After confirming that the floor plan agreements at issue are valid and that they address the issue of when interest begins to accrue (*see, e.g.*, Opposition at 12, 19), Plaintiffs attempt to manufacture ambiguity from the express terms of those agreements.  But there is no ambiguity.  The agreements relied upon by Plaintiffs and attached to the Amended Complaint provide by their plain terms that NextGear may charge interest from the date a dealer purchases a vehicle using a NextGear floor plan.

As outlined in the defendants' opening brief (Brief in Support of Motion to Dismiss Amended Complaint [Doc. 127] ("Motion to Dismiss Brief") at 22-23), interest charges under Plaintiffs' floor plan agreements are governed by Section 3 of the agreement, which provides:

> Interest shall accrue on *all Dealer Liabilities* in accordance with the following: (a) *All outstanding Liabilities under this Note shall accrue interest* (based upon a 360 day year), on a per annum basis and shall be compounded daily at the Base Rate plus the applicable Contract Rate, Risk Rate, or Default Rate until paid in full.

(Am. Compl. Exs. A, C, D, E, at § 3(a) (emphasis added).)  The unambiguous terms of the Note therefore provide that interest accrues on all Liabilities, not only on Advances.  "Liabilities" are defined to include "any and all . . . financial obligations," including but not limited to Advances,

"absolute or contingent, . . . due or to become due . . . ." (Am. Compl. Exs. A, C, E, at § 1(y); Am. Compl. Ex. D, at § 1(v).) Because Plaintiffs became obligated to fund their vehicle purchases at auction from the moment of a purchase and used the availability of NextGear credit to cover that obligation, they incurred a Liability as of that moment as a matter of law. Under the terms of the floor plan agreement, then, interest was correctly charged from that moment.

Plaintiffs invite the Court to narrowly focus *only* on "Advances" while ignoring the much broader definition of "Liabilities" (*see* Opposition at 14 & n.16).[1] However, even the term "Advance" covers NextGear's executory commitment to fund. The floor plan agreement defines "Advance" broadly. An "Advance" is a "*loan or payment* in any amount made pursuant to this Note by DSC to Dealer or on Dealer's behalf to any third party." (Am. Compl. Exs. A, C, D, E, at § 1(a) (emphasis added).) Although "loan" is not separately defined in the floor plan agreement, its common definition includes "*the creation of debt by the lender's* payment of or *agreement to pay money* to the debtor or *to a third party for the account of the debtor*." Black's Law Dictionary (emphasis added). In other words, an Advance includes not only NextGear's payment of the purchase price for a vehicle, but it also encompasses NextGear's promise to pay the third-party auction on behalf of a dealer. *Cf. Bowman v. Int'l Bus. Machines Corp.*, 853 F. Supp. 2d 766, 770 (S.D. Ind. 2012) ("Additionally, the court should make every effort to avoid an interpretation that renders any words, phrases, or terms ineffective or meaningless.").

In short, an Advance is made and a Liability is incurred on the date a dealer purchases a vehicle using a NextGear floor plan. That rare Advances are reversed by NextGear when a condition subsequent (*e.g.*, title delivery) goes unfulfilled by the auction only supports this

---

[1] Plaintiffs also invent their own standard, arguing that NextGear promised to charge interest only from the date of payment to a third party. (*See* Opposition at 2, 13, 17.) But that language is nowhere to be found in the floor plan agreements at issue.

3

analysis.  Plaintiffs point to one unwound floor plan transaction as evidence that it was never proper for NextGear to collect interest and fees at all.  (*See* Am. Compl. ¶¶ 41-42.)  But in that case, the dealer's obligation to the auction, and thus NextGear's to the auction, were undone by the auction's failure to deliver title (a promise to both the dealer and NextGear), and thus the whole transaction could be reversed.  In that case, as Plaintiffs allege, their interest payments were refunded and no interest was charged.  In other words, Plaintiffs suffered no harm.  Plaintiffs offer no allegation or argument that NextGear ever failed to fund once any applicable conditions were met.

Plaintiffs also try to make much out of allegedly inconsistent deposition testimony from NextGear's general counsel, John Wick.  Of course, parol evidence is neither necessary nor appropriate where the contracts are unambiguous on their face, as is the case here.  See *Gonzalez v. Kokot*, 314 F.3d 311, 316 (7th Cir. 2002) (citing *Deckard v. Gen. Motors Corp.*, 307 F.3d 556, 563 (7th Cir. 2002)) ("the parol-evidence rule prohibits courts from considering evidence outside the four corners of an agreement unless the terms of that agreement are ambiguous").  Nevertheless, Plaintiffs disingenuously attempt to create ambiguity by quoting excerpts from Mr. Wick's testimony in a way calculated to mislead the Court.  The complete exchange selectively quoted in paragraph 21, footnote 11 of the Amended Complaint makes clear that Mr. Wick in 2011 interpreted the floor plan agreements in the very same way NextGear now interprets them:

> Q.  Okay.  And when do you start charging the dealer on an individual loan?
>
> A.  The moment that it's floorplanned.
>
> Q.  Okay.  And is that -- can that be prior to funding of the loan?
>
> A.  Of course.
>
> Q.  *Have you ever given a thought as to whether it's proper for you to charge a dealer on a loan before the loan is funded?*

> A.  *I think it's proper.*
>
> Q.  And what do you base that on?
>
> A.  *Well, because we have a contractual obligation to pay the seller, whether they have given the seller or the buyer possession of that car or not.*
>
> *In other words, we're contractually obligated to pay the auction.*
>
> Q.  But wouldn't it be true that DSC could enjoy the float or the access to those funds until it actually funds the loan?
>
> A.  Sure.

(2/25/2011 Deposition of John Wick, attached hereto as Exhibit 1, at 86:3-23 (emphasis added).[2]) In addition, Mr. Wick explained in the same deposition that NextGear's obligation to pay attaches at the time a used car is purchased at auction by means of a floor plan agreement:

> Q.  Okay.  And so when DSC -- DSC doesn't care when -- is it a fair statement DSC doesn't care when the loan is funded; correct?
>
> A.  Well, I'm not sure we don't care, but from a perspective of DSC's primary concern, if the car has been floorplanned at the auction, we're contractually obligated to pay the auction.
>
> It's a contingent liability that DSC has to pay the auction once the funding conditions are met, if there are any conditions.
>
> Q.  And you have those contracts with the auctions; correct?
>
> A.  Yes.
>
> Q.  And they allow you to pay them later?  In other words not -- they -- they allow you to -- the car can get off the lot before they're actually paid; correct?
>
> A.  Based on our promise to the auction to pay that.

(*Id.* at 84:6-24.)  This testimony not only belies Plaintiffs' claims about NextGear's supposed inconsistencies, but it is entirely consistent with the definitions of "Liabilities" and "Advance"

---

[2] Citations to Mr. Wick's testimony do not convert the Motion to Dismiss into a motion for summary judgment, as the deposition is cited and quoted in Plaintiffs' Amended Complaint. (Am. Compl. ¶ 21 n.11; *see also* Opposition at 13, 25-26 & Ex. 1.)  The portion of Mr. Wick's testimony omitted from the Amended Complaint has been italicized.

5

and the incorporated "loan" term discussed above. Plaintiffs' careful use of ellipsis to mask the true character of Mr. Wick's testimony is indicative of the liberties taken throughout the Amended Complaint and Opposition.

There can be no breach of contract where the complained-of action is expressly allowed by the admitted contract. As a result, Plaintiffs' claims based on a purported breach of the contract must all fail.

>    B.   Plaintiffs' Breach of Contract Claim Stems from NextGear's Payment Terms with an Unrelated Third Party.

It is now clear from their Opposition that Plaintiffs' breach of contract claim is not founded on the contractual relationship between Plaintiffs and NextGear at all. Plaintiffs openly admit that they "knew they were being charged interest beginning on the date of the auction." (Opposition at 19.) Plaintiffs also had in their possession the floor plan agreements that established the terms on which NextGear would extend credit to auctions on Plaintiffs' behalf. (*See* Am. Compl. ¶¶ 39, 55, 64, 72.) While they were doing business with NextGear, Plaintiffs had no gripe with being charged interest from the date of the auction and never once asserted that the floor plan agreements provided for something different. This is so because each Plaintiff got exactly what it wanted and expected from the floor plan agreements—financing that allowed it to take possession of vehicles the day of an auction because NextGear, not the Plaintiff, was obligated to pay the auction.

Carefully parsed, Plaintiffs' breach of contract claim actually arises from NextGear's contractual relationship *with third parties*, the auctions. Plaintiffs contend that NextGear's payment to the auction at some point other than the date of the auction somehow results in a breach of NextGear's contract *with Plaintiffs*. (*See* Opposition at 3, 19.) Plaintiffs do not explain how NextGear's negotiated payment to a third party on their behalf has any bearing on

6

NextGear's contractual obligations to Plaintiffs. It does not. Again, Plaintiffs received exactly what they bargained for: possession of vehicles—and an agreement by NextGear to pay on their behalf—from the date they purchased a vehicle at auction using a NextGear floor plan. And Plaintiffs acknowledge they were aware that interest charges began to accrue on the date of auction, which was consistent with what they understood the floor plan agreements to permit. It was only later, when Plaintiffs supposedly learned of the arrangement between NextGear and the auctions, that Plaintiffs interpreted the floor plan agreements differently. But NextGear's negotiated terms of payment with the auctions are of no concern to Plaintiffs, and cannot possibly give rise to a breach of contract claim on floor plan agreements that have nothing to do with the timing of NextGear's payments to the auctions.[3] Plaintiffs' breach of contract claim therefore fails as a matter of law.

C.   Plaintiffs Cannot Show They Suffered Any Damages.

Having failed to plead a breach, Plaintiffs can point to no proximately caused interest or curtailment fee damages[4]. This is particularly true where Plaintiffs have expressly waived any claim for wrongful charges in the admitted contracts. Plaintiffs now acknowledge that they received account statements from NextGear (Opposition at 18) and that those statements showed Plaintiffs when interest began to accrue (Opposition at 19). Under the terms of Plaintiffs' admittedly valid and enforceable floor plan agreements, those statements were binding on

---

[3] A simple analogy demonstrates the flaw in Plaintiffs' breach of contract claim. Assume a customer uses a credit card to purchase gas at a gas station. What the customer wants and expects is to be able to fill her tank and drive away, knowing that the credit card company will pay the gas station and the customer will then, in turn, pay the credit card company. Whether the credit card company actually pays the gas station the day of the transaction, a week later, or a year later is of no matter to the customer. That is an issue negotiated between the credit card company and the gas station.

[4] The term "curtailment fee" is nowhere defined in the Amended Complaint, the Plaintiffs' Opposition, or the floor plan agreements.

Plaintiffs unless Plaintiffs timely objected to the charges. (Am. Compl. Exs. A, C, D, E, at § 4(k) ("any statement of Dealer's account furnished to Dealer by DSC, to the extent no objection is made in writing by Dealer within 30 days after receipt of such statement, shall constitute a definitive statement of Dealer's Credit Line and Liabilities as of the date of the statement and shall be binding upon Dealer").) They never did. What is more, Plaintiffs received the benefit of their bargain—both "financing for the purchase of each car" (Opposition at 15) as well as possession and use of the vehicles they purchased by means of NextGear loans—from the date of the auction. As a result, Plaintiffs cannot plausibly plead any damage from NextGear's alleged interest start date.

Thus, because the terms of the floor plan agreements relied upon by Plaintiffs are clear and unambiguous, this Court should determine as a matter of law that NextGear was entitled by the terms of its contracts to do exactly what Plaintiffs allege that they did. As a result, Plaintiffs' breach of contract and related claims should be dismissed.

## II. Plaintiffs' Constructive Fraud Claim Fails Because NextGear Has No Duty to Plaintiffs (Count 4).

As discussed above, there was no fraud, constructive or otherwise, on which Plaintiffs can sue, because there is no allegation that NextGear did or said it would do anything beyond what it was permitted to do by contract. But even if a constructive fraud claim were available, it must fail for the reasons stated in defendants' Motion to Dismiss Brief.

Plaintiffs do not contest the case law cited in Defendants' Brief in Support of Motion to Dismiss, which specifically provides that there is no special duty between a borrower and a lender. *Wilson v. Lincoln Fed. Sav. Bank*, 790 N.E.2d 1042, 1047 (Ind. Ct. App. 2003); *Fifth Third Bank v. Double Tree Lake Estates, LLC*, No. 2:11-CV-233-PPS-PRC, 2013 WL 587889, at *8 (N.D. Ind. Feb. 12, 2013) ("The mere existence of a relationship between a lender and its

8

borrower does not create a special relationship of trust or confidence."). Those cases demonstrate that Plaintiffs have not alleged—and cannot allege—the existence of a duty and therefore have not stated—and cannot state—a claim for constructive fraud. The decisions in *Hardy v. South Bend Sash & Door Co.* and *Doe v. Howe Military School*, cited by Plaintiffs in their Opposition, do not change the analysis. The plaintiff in *Hardy* alleged a confidential relationship between shareholders of a closely held corporation, but the court in that case found that there was no confidential relationship and therefore no constructive fraud. 603 N.E.2d 895, 901 (Ind. Ct. App. 1992). The court in *Doe* rejected the notion of a duty owed from a private school to a prospective student and affirmed summary judgment against the plaintiff on her fraud-based claims. 227 F.3d 981, 991 (7th Cir. 2000). There is no similar confidential relationship alleged in this case.

The mere existence of a power of attorney does not satisfy the duty element of a constructive fraud claim. The case Plaintiffs rely on for that proposition involved not only a power of attorney, but a long-time relationship between an older man and a friend whom he occasionally consulted about legal matters. *Strong v. Jackson*, 777 N.E.2d 1141, 1144 (Ind. Ct. App. 2002). The friend did not dispute that the evidence demonstrated a "relationship of continuous trust and confidence [by the older man] *beyond the formality of the Power of Attorney*"; that relationship was sufficient to demonstrate the duty element of a constructive fraud claim. *Id.* at 1148 (emphasis added). No such relationship is alleged to have existed between NextGear and the dealers who borrowed from it. In fact, the parties expressly agreed that neither was responsible for the liabilities or losses of the other and that there was no partnership or joint venture between them. (*See* Am. Compl. Exs. A, C, D, E, at § 13.)

Therefore, this Court should dismiss Plaintiffs' constructive fraud claim for failure to sufficiently plead a duty on the part of NextGear.[5]

In addition, Plaintiffs have not sufficiently alleged reliance on any representations by NextGear. The Amended Complaint merely recites a cursory allegation of reliance, but provides no particularity. The Opposition now adds allegations that Plaintiffs relied on account statements, which were never mentioned in the Amended Complaint, and that Plaintiffs relied on NextGear's unspecified representations when they made the transactions described in the Amended Complaint, even though Plaintiffs did not actually plead any such reliance. (*Compare* Opposition at 18, *with* Am. Compl. ¶¶ 46, 60, 69, 77.) Regardless of whether Plaintiffs could reasonably have relied on any representations by NextGear—which is unlikely under the circumstances—they failed to plead it, let alone with particularity. Moreover, as noted above, under Section 4(k) of the floor plan agreement, any such statements from NextGear are now deemed binding and accurate.

Plaintiffs' attempts to use the Opposition to add ineffectual allegations cannot save their fatally defective pleading. Rather, the Court should dismiss the constructive fraud claim.

### III. Plaintiffs' Tortious Interference Claim Fails Because It Is Too Vague, Implausible, and Untimely (Count 5).

Plaintiffs' attempt to re-plead their tortious interference claim in the Opposition is still insufficient to put NextGear on notice of what it did to interfere with Plaintiffs' business and how that was improper. Plaintiffs admit that "NextGear could have informed the auction houses

---

[5] Contrary to Plaintiffs' assertion in their brief, *American United Life Insurance Co. v. Douglas*, 808 N.E.2d 690 (Ind. Ct. App. 2004), does not hold that the existence of a duty is a factual question for the jury; the court in that case affirmed summary judgment on the constructive fraud claim. "The existence of a duty is a question of law and presents no issue of material fact." *Hardy*, 603 N.E.2d at 901 (affirming summary judgment for defendant on constructive fraud claim "[b]ecause there is no fiduciary duty under these facts and because the parties are not standing in a confidential relationship").

that Plaintiffs no longer had a line of credit with NextGear." (Opposition at 20.) In other words, NextGear was fully justified in informing the auctions of Plaintiffs' default in order to protect its own interest. Nevertheless, Plaintiffs complain that NextGear in some other unspecified way prevented them from attending third-party auctions and purchasing vehicles. But they still fail to allege how the tortious interference happened (*i.e.*, what was said, when, and to whom), why NextGear would "blacklist" Plaintiffs for some purpose other than the legitimate purpose of protecting its loan funds, how NextGear could exert such control over third-party auctions, including its competitors, or why those auctions would prevent Plaintiffs from purchasing vehicles if Plaintiffs had other sources of funding.

In addition, Plaintiffs ignore that a tortious interference claim requires "some independent illegal action." *Brazauskas v. Fort Wayne-S. Bend Diocese, Inc.*, 796 N.E.2d 286, 291 (Ind. 2003). Here, there is no alleged or plausible logical connection between the claim that NextGear improperly charged interest and the claim that NextGear interfered with Plaintiffs' separate relationships with auctions. The only attempt to connect the two is the vague, conclusory comment that everything in the Amended Complaint is all part of the same scheme. Setting aside that the interest charges were not, in fact, improper, as discussed above, Plaintiffs' allegations are insufficient to meet the illegal act requirement. *See Pierce v. Zoetis, Inc.*, No. 15-1900, 2016 WL 1015130, at *5-6 (7th Cir. Mar. 15, 2016).

The tortious interference claim is also untimely for the reasons stated in defendants' opening brief. (*See* Motion to Dismiss Brief at 19-20.) First, the tortious interference claim does not relate back to the filing date of the original Complaint because the "factual situation" described in the original Complaint is completely different from that described in the Amended Complaint. *See* Fed. R. Civ. P. 15(c)(1)(B). Allegations that NextGear repossessed collateral

11

after a borrower defaulted (Compl. ¶¶ 20-23; Am. Compl. ¶¶ 47-49) do not put NextGear on notice of or bring to its attention claims of interference with third-party relationships (Am. Compl. ¶¶ 8, 145-149). Second, the alleged interference must have occurred at or near the end of each Plaintiff's lending relationship with NextGear, which was well before January 2014. It is simply not plausible under *Twombly* to argue in Opposition, without actually alleging in the Amended Complaint, that NextGear would have waited until long after Plaintiffs defaulted on their payment obligations to interfere with their auction relationships.

Because the tortious interference claim is too vague and generic to put NextGear on notice of what it is alleged to have done, how, when, *or* why—even in spite of Plaintiffs' attempt to add allegations beyond those in their Amended Complaint—and because the claim is also untimely, the Court should dismiss Plaintiffs' tortious interference claim with prejudice.

IV. **Plaintiffs' Unjust Enrichment Claim Fails Because Plaintiffs Have a Governing Contract With NextGear and Do Not Allege Any Enrichment of Any Other Defendant (Count 6).**

Plaintiffs' short restatement of black-letter law on unjust enrichment does nothing to address the arguments raised by defendants in their Motion to Dismiss. (Motion to Dismiss Brief at 14-16.) All parties acknowledge the existence of valid and enforceable contracts between NextGear and each Plaintiff, and Plaintiffs now expressly argue that it covers the interest charges at issue. (Opposition at 2, 13.) Those admissions render an unjust enrichment claim against NextGear inappropriate. Further, Plaintiffs have not alleged any request for a benefit by, or any measurable benefit conferred on, any other defendant. Plaintiffs themselves benefitted from their dealings with NextGear; they received the financing and the vehicles that they bargained for in their floor plan agreements. As a result, for the reasons discussed in Defendants' Brief in Support of Motion to Dismiss, the unjust enrichment claim should be dismissed in its entirety.

12

**V.     Plaintiffs' RICO Claims Fail Because They Do Not Meet the Pleading Requirements (Counts 1 and 2).**

Burying their RICO arguments at the end of their brief, after leading with those claims in their Amended Complaint, Plaintiffs attempt to save their claims by changing their allegations. But, even if their brief were the proper venue to do so (and it is not), the RICO allegations remain muddled and insufficient to meet the pleading requirements for a RICO claim.

First, despite a 41-page Amended Complaint and 35-page Opposition, Plaintiffs still have not identified the alleged RICO enterprise at issue in this case. At times it seems Plaintiffs are alleging that the "Enterprise" consists of the four defendants. (*See, e.g.*, Am. Compl. ¶¶ 95, 97.) But Plaintiffs also say that the supposed enterprise either "includes" or "utilize[s]" others, such as auction houses and NextGear employees, and it is unclear whether those others are meant to be part of the enterprise. (*See, e.g.*, Opposition at 25; Am. Compl. ¶ 98.) This apparently purposeful confusion attempts to expand the enterprise while avoiding the requirement that Plaintiffs identify the structure of the enterprise and each defendant's participation in it. *Cf. Boyle v. United States*, 556 U.S. 938, 946 (2009); *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). The upshot of Plaintiffs' confused allegations is that they remain too vague to state a viable RICO claim.

Second, Plaintiffs must allege that a RICO defendant played some part in directing an enterprise's affairs. Contrary to Plaintiffs' incomplete quote from *Reves*, the Supreme Court held in that case that some action by a RICO defendant is required:

> Of course the word 'participate' makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase 'directly or indirectly' makes clear that RICO liability is not limited to those with a formal position in the enterprise, but *some* part in directing the enterprise's affairs is required.

13

507 U.S. at 179.  Here, even the additional "allegations" in Plaintiffs' Opposition do not identify any way the Cox corporate entities could be said to have directed an enterprise's affairs.  Rather, those defendants merely owned NextGear since 2012, own other companies, and have influence in the industry.  (*See* Opposition at 25.)  Whatever may be required to "participate" in a RICO enterprise, mere ownership and industry influence does not meet that standard.

Finally, Plaintiffs have failed to allege that the RICO defendants are doing something more than simply carrying out their own business affairs.  *United Food & Commercial Workers Unions & Emp'rs Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 854 (7th Cir. 2013).  Plaintiffs allege that NextGear is breaching its contracts in the course of its usual business of loaning money to used car dealers.  Of course, as discussed above, NextGear's actions do not actually constitute a breach of contract.  Its contracts allow NextGear to charge interest from the time it makes a promise to pay on behalf of its dealer customers.  That resolves the RICO claims.  Yet even if NextGear were to miscalculate the date at which interest begins to run—and even if it were to do so fraudulently—it would not turn NextGear and its corporate family into a RICO enterprise.  *Panwar v. Access Therapies, Inc.*, 975 F. Supp. 2d 948, 957 (S.D. Ind. 2013).  There is no allegation that NextGear failed to provide Plaintiffs with the loans provided for in the contracts they signed, which Plaintiffs then used to finance inventory for their businesses; Plaintiffs' only contention is that extra charges were made at the margin.  Similarly, there is no allegation that Cox Enterprises and Cox Auto have ever done anything other than actively engage in the legitimate automotive businesses discussed in the Amended Complaint and Opposition.  (*See, e.g.*, Opposition at 24-25.)

Plaintiffs' RICO conspiracy claim fares no better than its substantive claim.  Plaintiffs merely recite conclusory allegations in the Amended Complaint that someone agreed to

14

something, but these conclusory allegations are insufficient to allow a court to infer the specific agreements required to be pleaded under *Goren v. New Vision International, Inc.*, 156 F.3d 721, 732 (7th Cir. 1998). Indeed, Plaintiffs now appear to have changed their tune and describe the conspiracy as one to "blacklist" Plaintiffs, not to charge interest (*compare* Am. Compl. ¶¶ 96, 98, *with* Opposition at 25)—but there is still no allegation that such a "blacklisting" involves any agreement between any defendant and any auction, or the commission of any predicate acts of mail or wire fraud. The completely different story that Plaintiffs are telling in their Opposition demonstrates the failings of the Amended Complaint.

Having spent another 11 pages trying to explain their RICO allegations, and having again failed to frame a legally cognizable RICO claim, Plaintiffs have done no more than demonstrate why their RICO claims must fail. The RICO claims should therefore be dismissed with prejudice.

## VI. Three of the Plaintiffs Cannot Bring This Action Due to the Doctrine of *Res Judicata*.

As Plaintiffs acknowledge, a default judgment is a judgment on the merits for *res judicata* purposes as to issues presented by the complaint in the prior action. Here, the state-court complaints filed against three Plaintiffs (Platinum, Mattingly, and Young) allege specific amounts due and owing under their floor plan agreements with NextGear, through advances and otherwise. These amounts included principal *and interest*. (*See* Ex. 1 to Motion to Dismiss, at ¶¶ 7-10; Ex. 3 to Motion to Dismiss, at ¶¶ 8-11; Ex. 5 to Motion to Dismiss, at ¶¶ 9-12.) Any assertion that NextGear's principal and interest charges were improper should have been raised in the state court, by defense or counterclaim. By entering a default judgment, the state court determined that the Plaintiffs were legally obliged to pay the interest charged by NextGear. In other words, one of the issues specifically presented and adjudged in those prior actions was that

15

Plaintiffs owed the very interest of which they now complain. Their related claims in this lawsuit are therefore precluded.

Plaintiffs knew all along what they were being charged. They now admit they received or had access to bank and account statements showing when interest was charged and advances were made, and in what amount. (Opposition at 18, 19.) Plaintiffs could easily have asked when their loans were funded by NextGear to the auctions, since they claim to have discussed their interest rate and accrual date with their account representatives. (Opposition at 17.) They did not.[6] But this means that in the exercise of ordinary diligence, Plaintiffs could have discovered by the time they were sued for default that they had potential claims related to interest payments, and could have raised those issues as affirmative defenses and/or counterclaims. *Res judicata* requires nothing more. *Hensley v. Jasper Police Dep't*, 163 F. Supp. 2d 1006, 1021 (S.D. Ind. 2001) (stating the fourth element of claim preclusion under Indiana law is that "the matter at issue was, or might have been, determined in the former suit"). As Plaintiffs recognize, their causes of action had therefore accrued by the time they were sued for default. (*See* Opposition at 10.)

Plaintiffs tacitly admit that the requirements for application of *res judicata* have been met here, but ask the Court to ignore that based on an appeal to "fundamental fairness." (Opposition at 12 n.10.) The equities go both ways, however. Plaintiffs could and should have addressed the alleged issue of wrongful interest in the collection suits (if not earlier), rather than allowing alleged damages to grow, letting the years pass, and now dragging completely new parties Cox Enterprises, Cox Auto, and John Wick into a putative RICO class action.

---

[6] Although not strictly relevant to a motion to dismiss, it is likely that Plaintiffs did not ask about the date of funding because it had no bearing on them. As discussed above, NextGear gave Plaintiffs immediate access to vehicles without Plaintiffs having to pay an auction, which is exactly what Plaintiffs had bargained for.

16

## VII. Conclusion

Plaintiffs' misrepresentations and half-truths cannot mask the fact that NextGear is only alleged to have done what it was contractually entitled to do. Thus, not only do Plaintiffs' RICO allegations fail—even after the attempted repleading throughout Plaintiffs' Opposition—but in addition, Plaintiffs' breach of contract claim is simply unsupported by the plain and unambiguous language of the contract attached to the Amended Complaint. For all the reasons stated above and in NextGear's opening Motion to Dismiss Brief, the Court should dismiss the Amended Complaint with prejudice.

Respectfully submitted, this 26th day of May, 2016.

/s/ David J. Jurkiewicz
David J. Jurkiewicz (18018-53)
Paul D. Vink (23785-32)

*Attorneys for Defendants Cox Enterprises, Inc., Cox Automotive, Inc., NextGear Capital, Inc. f/k/a Dealer Services Corporation, and John Wick*

BOSE McKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
(317) 684-5000
(317) 684-5173 fax
djurkiewicz@boselaw.com
pvink@boselaw.com

36124801.4 / 3007493v3

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing has been served upon the following counsel of record via the Court's electronic service notification system, this 26th day of May, 2016:

| | |
|---|---|
| Ryan D. Adams<br>James M. Garner<br>Matthew M. Coman<br>SHER GARNER CAHILL RICHTER<br>KLEIN & HILBERT, LLC<br>radams@shergarner.com<br>jgarner@shergarner.com<br>mcoman@shergarner.com<br>jairey@shergarner.com<br>ksimcox@shergarner.com<br>akeller@shergarner.com<br>jstockstill@shergarner.com<br>jchocheles@shergarner.com<br>priggs@shergarner.com | David J. Jurkiewicz<br>Paul D. Vink<br>Steven D. Groth<br>BOSE McKINNEY & EVANS LLP<br>111 Monument Circle, Suite 2700<br>Indianapolis, IN 46204<br>(317) 684-5000<br>(317) 684-5173 fax<br>djurkiewicz@boselaw.com<br>pvink@boselaw.com<br>sgroth@boselaw.com<br>lcooper@boselaw.com<br>sford@boselaw.com<br>clindsey@boselaw.com<br>mwakefield@boselaw.com |
| Cassie E. Felder<br>LUGENBUHL, WHEATON, PECK,<br>RANKIN & HUBBARD<br>cfelder@lawla.com<br>kfisher@lawla.com | Gladstone N. Jones, III<br>Lynn E. Swanson<br>Kerry A. Murphy<br>JONES, SWANSON, HUDDELL &<br>GARRISON, LLC<br>gjones@jonesswanson.com<br>lswanson@jonesswanson.com<br>greed@jonesswanson.com<br>cmason@jonesswanson.com<br>sjoshua@jonesswanson.com<br>kmurphy@jonesswanson.com<br>lreeves@jonesswanson.com<br>klasky@jonesswanson.com |
| Lisa Brener<br>BRENER LAW FIRM, LLC<br>lbrener@brenerlawfirm.com<br>tkeller@brenerlawfirm.com | |
| Kathleen A. DeLaney<br>DELANEY & DELANEY LLC<br>Kathleen@delaneylaw.net | |

*/s/ David J. Jurkiewicz*
David J. Jurkiewicz