# EXHIBIT 1

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF RIVERSIDE - CENTRAL

MICHAEL GRISSOM Sole Proprietor doing
Business as American Family Auto,

    Plaintiff,

  vs.                              No. RIC475298

DEALER SERVICES CORPORATION, a
Delaware corporation; BOSCH KIA, a
Nevada Corporation dba, FONTANA
BOSCH AUTO CENTER INC., DIAL FINANCE;
CLAUDIA PONCE, an individual; ROSA D.
MACIAS, an individual; ALFRED KING,
an individual; CARLOS BOSCH, an
individual; MARK WHITE, an individual;
and DOES 1 through 100, inclusive,

    Defendants.

---

DEPOSITION OF JOHN WICK

Santa Ana, California

Friday, February 25, 2011

Reported by:  ANGELA METZ

CSR No. 12454

1

```
 1        not.
 2             Q    Okay.  Well, does it matter to DSC when
 3        the -- when these millions of dollars of loans are
 4        actually funded?
 5             A    No.
 6             Q    Okay.  And so when DSC -- DSC doesn't care
 7        when -- is it a fair statement DSC doesn't care when
 8        the loan is funded; correct?
 9             A    Well, I'm not sure we don't care, but from
10        a perspective of DSC's primary concern, if the car
11        has been floorplanned at the auction, we're
12        contractually obligated to pay the auction.
13                  It's a contingent liability that DSC has to
14        pay the auction once the funding conditions are met,
15        if there are any conductions.
16             Q    And you have these contracts with the
17        auctions; correct?
18             A    Yes.
19             Q    And they allow you to pay them later?  In
20        other words not -- they -- they allow you to -- the
21        car can get off the lot before they're actually
22        paid; correct?
23             A    Based on our promise to the auction to pay
24        that.
25             Q    Right.
```

Timestamps: 12:47 (line 5), 12:48 (lines 10, 15, 20, 25)

```
       1    a -- there's a lag there from the time it actually
       2    is deposited into our accounts.
       3         Q    Okay.  And when do you start charging the
       4    dealer on an individual loan?
12:49  5         A    The moment that it's floorplanned.
       6         Q    Okay.  And is that -- can that be prior to
       7    funding of the loan?
       8         A    Of course.
       9         Q    Have you ever given a thought as to whether
12:50 10    it's proper for you to charge a dealer on a loan
      11    before the loan is funded?
      12         A    I think it's proper.
      13         Q    And what do you base that on?
      14         A    Well, because we have a contractual
12:50 15    obligation to pay the seller, whether they have
      16    given the seller or the buyer possession of that car
      17    or not.
      18              In other words, we're contractually
      19    obligated to pay the auction.
12:50 20         Q    But wouldn't it be true that DSC could
      21    enjoy the float or the access to those funds until
      22    it actually funds the loan?
      23         A    Sure.
      24         Q    Okay.  And that's -- you're -- we're all
12:50 25    familiar with what we call "playing the float";
```

86