UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
(Indianapolis Division)

| | | |
|---|---|---|
| **RED BARN MOTORS, INC.,** | * | **DOCKET NO. 1:14-cv-01589-TWP-DKL** |
| **PLATINUM MOTORS, INC.,** | * | |
| **MATTINGLY AUTO SALES, INC.,** | * | **CLASS ACTION** |
| **YOUNG EXECUTIVE MANAGEMENT** | * | **Jury Trial Demanded** |
| **& CONSULTING SERVICES, INC.,** | * | |
| **Individually, and on behalf of other** | * | |
| **members of the general public** | * | |
| **similarly situated,** | * | |
| | * | |
| **v.** | * | |
| | * | |
| **COX ENTERPRISES, INC.,** | * | |
| **COX AUTOMOTIVE, INC.,** | * | |
| **NEXTGEAR CAPITAL, INC.,** | * | |
| **F/K/A DEALER SERVICES** | * | |
| **CORPORATION, successor by merger** | * | |
| **with Manheim Automotive Financial** | * | |
| **Services, Inc., and JOHN WICK.** | * | |
| | * | |

*************************************************************************

**MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
AND APPOINTMENT OF CLASS COUNSEL**

NOW INTO COURT, through undersigned counsel, come the Named Plaintiffs, Red Barn

Motors, Inc. ("Red Barn"), Platinum Motors, Inc. ("Platinum"), and Mattingly Auto Sales, Inc.

("Mattingly," together with the other named plaintiffs, the "Named Plaintiffs"), individually and

on behalf of those individuals and entities who are similarly situated ("putative Class Members";

together with Named Plaintiffs, the "Plaintiffs"), and respectfully submit this memorandum in

support of their Motion for Class Certification and Appointment of Class Counsel pursuant to Rules 23(c)(1)(A)[1] and 23(g)[2] of the Federal Rules of Civil Procedure.[3]

## I.      PRELIMINARY STATEMENT

Certification for class action treatment of the issues and claims alleged in the Verified Amended Complaint filed on March 11, 2016 (R. Doc. 117) ("Amended Complaint" or "Amd. Compl.") (claims asserted therein hereafter "Class Claims") is appropriate under Rule 23 and will enable the Court to conduct an efficient, readily-manageable adjudication of the Class Claims. NextGear Capital Inc. f/k/a Dealer Services Corporation, successor by merger with Manheim Automotive Financial Services, Inc. ("NextGear"), is an automotive financing company that offers a revolving line of credit for used car dealers to purchase used cars at auction. The revolving line of credit is commonly referred to (and will hereafter be referred to) as a "Floorplan Agreement." Each of the Plaintiffs was a used car dealer that entered into a Floorplan Agreement with NextGear. Each Floorplan Agreement contained a Demand Promissory Note and Security Agreement that was substantively identical in the pertinent respects.[4]

---

[1] Fed. R. Civ. P. 23(c)(1)(A) provides, "At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action."

[2] Fed. R. Civ. P. 23(g) pertains to the appointment of class counsel.

[3] This Motion is filed by Red Barn, Platinum, and Mattingly, and not by the fourth previously-identified named plaintiff, Young Executive Management& Consulting Services, Inc. ("Young"). Young has filed an unopposed motion to voluntarily withdraw Young as a named plaintiff. *See* R. Doc. 152. Should the motion to withdraw be denied for any reason, the Plaintiffs reserve the right to amend this motion as necessary to incorporate Young.

 The Plaintiffs file herewith a Motion for Oral Argument pursuant to L.R. 7-5.

[4] *See* Amd. Compl., Exhs. A, C, and D (R. Docs. 117-1, -3, and -4) (Floorplan Agreements entered into by the Named Plaintiffs) ("Named Plaintiffs' Floorplan Agreements"); *see also* **Exhs. H** through **O** hereto (sample Floorplan Agreements produced by NextGear for the years 2005 through 2012). All redactions in the sample Floorplan Agreements were in the NextGear production.

As alleged in the Complaint, each of the Plaintiffs was harmed by the Defendants' wrongful conduct, including, but not limited to, charging interest and fees relating to the Floorplan Agreements on monies not yet lent. Thus, the Court can determine the claims of all Plaintiffs arising from such wrongdoing in a single adjudication. For the reasons more fully set forth below, this case satisfies each of the requirements for class certification pursuant to Rule 23, and the Court should grant Plaintiffs' motion to certify the Class and appoint Class Counsel.

## II.       THE FACTS, THE CLAIMS, AND THE CLASS

### A.  FACTUAL SUMMARY

The Named Plaintiffs are used car dealers that purchased used cars at auction to sell to customers. The Named Plaintiffs used the Floorplan Agreements to finance used automobile purchases from auction companies throughout the United States. Under the Floorplan Agreements, NextGear would make a loan for the cost of the vehicles purchased at auction and would retain title to the vehicles until the customer dealer had paid off the loan. Each such Floorplan Agreement contained substantively identical terms. NextGear operates throughout the United States and, according to its website, provides financing to over 18,000 customer dealers pursuant to Floorplan Agreements.[5] NextGear employs the same lending practices nationwide.

Both verbally and in the Floorplan Agreements, NextGear represented that the Named Plaintiffs would not be charged interest or curtailment fees until NextGear paid for the vehicles.[6] As the Named Plaintiffs allege, NextGear and the other Defendants, including its General Counsel,

---

[5] *See* Amd. Compl. at ¶ 10; *see also* NextGear Welcome Packet, available at http://www.nextgearcapital.com/welcome-packet/ (last accessed September 30, 2016) ("Over 18,000 dealers have already partnered with NextGear Capital looking for the same thing: a simple way to floor plan.").

[6] Amd. Compl. at ¶ 7 and Exh. C, p. 1, Sec. 1(a).

John Wick, and its parent companies, Cox Enterprises, Inc. and Cox Automotive, Inc. (collectively, "the Cox Defendants"; collectively with NextGear, the "Defendants"), knew these representations were false and knowingly and willfully violated the terms of the Floorplan Agreements. NextGear did not actually advance any money on behalf of the customer dealers until the auction houses delivered the vehicles' titles.  The timing varied, but could take as long as eight weeks. Nonetheless, NextGear charged interest and fees, including but not limited to floorplan fees and curtailment fees, on the loans to the customer dealers as of the date of the auction. In short, NextGear routinely charged the customer dealers interest and fees on money it had not lent, collecting payments by debiting the Plaintiffs' checking accounts without having outlaid a single dollar to the auction companies.[7]

The Floorplan Agreements at issue in this case were form contracts used by NextGear with its customer dealers between January 2005 and July 2013. To begin, the Named Plaintiffs' Floorplan Agreements contained Demand Promissory Note and Security Agreements that were substantively identical in the pertinent respects—they provided that interest could be charged when NextGear made a payment (an "Advance") to a third party on the dealer's behalf—not as of the (often earlier) date of the auction.[8] The sample Floorplan Agreements produced by the Defendants for the years 2005 through 2012 contain Demand Promissory Note and Security Agreements that

---

[7] *See* Amd. Compl. at ¶¶ 12-16.

[8] *See, e.g.,* Named Plaintiffs' Floorplan Agreements at § 1(a) (defining "Advance" as "any loan or payment in any amount made pursuant to this Note by DSC ***to Dealer or on Dealer's behalf to any third party***"); 1(n) (defining "DSC Financed Inventory" as "any Unit now or hereinafter acquired or retained by Dealer ***pursuant to an Advance*** under this Note. DSC Financed Inventory includes Purchase Money Inventory"); § 1(w) (defining "Interest" as "the aggregate rate of interest which accrues on all Liabilities owed by Dealer to DSC…"); § 1(dd) (defining "Purchase Money Inventory" as "a Unit acquired by Dealer ***pursuant to an Advance under this Note***"); §§ 5(b) and (c) (stating that if DSC makes an Advance, "the Advance shall be deemed an additional Liability under this Note ***from the date on which the Advance is made***.") (emphasis added).

4

are substantively identical to the Named Plaintiffs' notes in their provisions governing when interest could be charged.[9] In contrast, the two sample 2013 contracts (effective August 5, 2013) produced by the Defendants contained new and different language purporting to allow interest to be charged from the sale date or the date of a request for an advance, regardless of when funds were advanced.[10] Due to that key difference, the Plaintiffs' proposed Class includes only dealers who were party to Floorplan Agreements with NextGear effective during January 2005 through July 2013, when the substantively identical form contracts were used, and excludes dealers who were party to contracts with NextGear effective after July 2013, when it appears the new interest language was used.

---

[9] *See, e.g.,* **Exhs. H** through **O** hereto, Demand Promissory Note and Security Agreements at § 1 (all containing definitions of Advance, Interest, and Purchase Money Inventory that are identical or substantially similar to the definitions of those terms found in the Named Plaintiffs' Floorplan Agreements, and the 2009 through 2012 notes also containing definitions of DSC Financed Inventory that are identical or substantially similar to those in the Named Plaintiffs' Floorplan Agreements) and §§ 4(b) and (c) (providing, like sections 5(b) and (c) of the Named Plaintiffs' Floorplan Agreements, that if DSC makes an Advance, that advance shall be deemed a Liability from the date on which the Advance is made).

[10] *See, e.g.,* sample Floorplan Agreement for the year 2013 (Addendum to Demand Promissory Note and Loan and Security Agreement and attached documents), attached as **Exh. P** hereto, at NG_005148, Demand Promissory Note and Loan Security Agreement, § 3(a) (providing, in pertinent part, that "All outstanding Liabilities relating to a Floorplan Advance or a Receivable Advance *shall accrue Interest on a per annum basis from the Floorplan Date* or the Receivable Origination Date, as the case may be…") and NG_005161 (Appendix A), (24) (defining "Floorplan Advance" as "an Advance made pursuant to this Note relating to a Unit of Inventory to be offered for sale, lease or rent, or leased or rented by Borrower in the Ordinary Course of Business") and (25) (defining "Floorplan Date" as "(a) for a Universal Source Purchase, the sale date*, regardless of the date the Floorplan Advance is actually requested or funded*; and (b) for a Specific Source Purchase, the date the request for the Floorplan Advance is received by Lender, *regardless of the date such Floorplan Advance is actually funded*.") (emphasis added).

The earlier versions of the Floorplan Agreement contained no such language, instead simply providing that interest shall accrue on all outstanding liabilities "on a per annum basis" (*see* Named Plaintiffs' Floorplan Agreements and 2009 through 2012 agreements at § 3(a)) or that interest shall accrue at "a variable rate" or "the stated interest rate" "on a per annum basis" (*see* 2005 through 2008 agreements at p. 1, first paragraph).

NextGear's practice of charging interest and fees before advancing any funds on the Plaintiffs' behalf, in breach of the Floorplan Agreements and over the course of many thousands of transactions for many thousands of customer dealers, reaped a huge cumulative windfall for the Defendants at the expense of the Plaintiffs. Moreover, when the Plaintiffs were not able to pay the amounts purportedly owed to NextGear, Defendants interfered with the Plaintiffs' relationships with the auction companies, which were essential to their business, causing additional harm to the Plaintiffs.

These bad acts were not done by NextGear alone, but were accomplished through a conspiracy by and among NextGear and the Cox Defendants to defraud the Plaintiffs, in part, through the use of interstate wire communications by electronically debiting the fraudulent interest payments and fees from their bank accounts.[11] The Defendants were easily able to conceal their scheme, because, although the Plaintiffs may have known interest and fees were debited from the Plaintiffs' bank accounts, they had no way of knowing when NextGear paid the auctions (thus, making the loan) and only had access to the fabricated statements provided by NextGear.[12] Further, after defrauding the Plaintiffs as described above, and after the Plaintiffs fell behind on payments under the Floorplan Agreements, NextGear blacklisted the Plaintiffs with the auction companies. As a result of the blacklisting, the auction houses prohibited the Plaintiffs from attending and participating in the routine sales of used cars, further economically damaging the Plaintiffs and impairing their ability to do business.[13] The Amended Complaint details the systematic and calculated scheme perpetrated by the Defendants on the Named Plaintiffs and tens of thousands of

---

[11] *See, e.g.,* Amd. Compl. at ¶¶ 13-17.
[12] *Id*. at ¶¶ 18-19 and Exh. B.
[13] *Id.* at ¶¶ 145-147.

6

similarly situated used car dealers that had Floorplan Agreements with NextGear, and the several causes of action that seek redress for these actions.

### B.  CLASS CLAIMS

The Class Claims arise out of (i) the Defendants' wrongful and deceptive solicitation of the Plaintiffs to enter into the Floorplan Agreements, after which NextGear would charge the Plaintiffs interest and/or fees on money not lent, (ii) the Defendants' wrongful and deceptive practice of charging the Plaintiffs interest and fees on money not lent, in breach of the Floorplan Agreements, (iii) the Defendants' fraudulent practice of omitting and concealing from the Plaintiffs material facts relating to the Floorplan Agreements, including, but not limited to, its practice of charging interest and fees on money not lent; (iv) the Defendants' fraudulent scheme and practice of interfering with the Plaintiffs' business relationships with the auction houses where the Plaintiffs purchased used vehicles by "blacklisting" the Plaintiffs from auctions when those customer dealers became delinquent in their payments to NextGear, and (v) the Defendants' wrongful and deceptive practice of backdating loans made pursuant to the Floorplan Agreement in order to charge the Plaintiffs interest and fees on loans before such loans were made.

The Class Claims are set forth in the Amended Complaint. Class certification pursuant to Rule 23 is further supported by the declarations of Red Barn, Platinum, and Mattingly as well as the affidavits of  James Garner, Lynn Swanson, Cassie Felder, and Kathleen DeLaney, appended as **Exhibits A** through **G** to this Memorandum and incorporated by reference herein.

### C.  THE DEFINITION OF THE CLASS

The Named Plaintiffs seek certification of a "Class" as follows:

All used car dealers in the United States of America that were parties to a Floorplan Agreement with NextGear effective during the time period of January 2005 through July 2013.

While this definition differs slightly from the definition pled in the Amended Complaint, the complaint reserved the right to amend the Class definition as needed.[14] Moreover, this proposed, revised definition is a narrower version of what was pled; the original definition was not limited in time, while the revised definition is limited to the 2005 through 2013 time-frame. And while this version includes all dealers who contracted with NextGear during the applicable time-frame (rather than all dealers that were charged interest and fees on money not lent), this change is a clarifying one and is consistent with the allegations that NextGear charged all members of the proposed Class interest and fees on money not lent.[15] Because "the alteration does not change the essential scope of the class as stated in the amended complaint," to save the parties' time and resources, the Plaintiffs may alter their class definition at this stage. *See, e.g., Carter v. Indiana State Fair Comm'n,* No. 1:11-CV-00852-TWP, 2012 WL 4481348, at *4 (S.D. Ind. Sept. 28, 2012).

## III.    LAW AND ANALYSIS

This case is ideally suited for class action treatment because it presents common claims against the Defendants for their: (a) substantive violations of RICO; (b) conspiracy to violate RICO; (c) breach of contract; (d) constructive fraud; (e) tortious interference with business relationships; and (f) unjust enrichment arising out of their fraudulent practice of charging interest and fees on money not lent. These Class Claims necessarily involve common questions of law and fact among the "tens of thousands" (by the Defendants' own count) of used car dealers who entered into Floorplan Agreements to facilitate the purchase of cars at auction. Using these Floorplan

---

[14] *See* Amd. Compl. at ¶¶ 80 and 81.
[15] *See, e.g., id.* at ¶ 124 and Count 3 generally.

Agreements, NextGear unlawfully charged the Plaintiffs interest and fees on money it had not lent. The amounts of interest and fees improperly charged to each dealer, while significant to the dealer itself, are such that it would be impracticable for each dealer to file an individual lawsuit. Accordingly, the Plaintiffs seek to bring the common claims of the dealers in a class action against the Defendants.

## A. THE REQUIREMENTS FOR CLASS CERTIFICATION

The requirements for class certification are set forth in Federal Rule of Civil Procedure 23. To certify a class under Rule 23, a proposed class must satisfy the requirements of Rule 23(a)— numerosity, typicality, commonality, and adequacy of representation[16]—as well as one of the three alternatives in Rule 23(b). *Messner v. Northshore Univ. Health System,* 669 F.3d 802, 811 (7th Cir. 2012) (citing *Siegel v. Shell Oil Co.,* 612 F.3d 932, 935 (7th Cir. 2010)).

In this case, certification is being sought under Rule 23(b)(1)(A) and/or 23(b)(3). Under Rule 23(b)(1)(A), proponents of the class must show that "prosecuting separate actions by … individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class[.]" Under Rule 23(b)(3), proponents of the class must show: (1) that the questions of law or fact common to the members of the proposed class predominate over questions affecting only individual class members; and (2) that a class action is superior to other available methods of resolving the controversy. *Id.* While the Plaintiffs bear the burden of showing that a

---

[16] As Rule 23(a) states: "One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Each of these requirements is discussed in more detail in Section B(2) below.

proposed class satisfies the Rule 23 requirements, they need not make that showing to a degree of absolute certainty. It is sufficient if each disputed requirement has been proven by a preponderance of evidence. *Messner,* 669 F.3d at 811 (citing *Trotter v. Klincar,* 748 F.2d 1177, 1184 (7th Cir. 1984); *see also Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.,* 546 F.3d 196, 202 (2d Cir. 2008)).

Rule 23 also requires that a class be defined … based on objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). The Seventh Circuit has long characterized the test for determining ascertainability as "weak[.]" *Id*. at 659-661. A class definition satisfies the established meaning of ascertainability by "defining classes clearly and with objective criteria." *Id.* at 672. Class definitions generally need to identify a particular group, harmed during a particular time frame, in a particular location, in a particular way. *Mullins,* 795 F.3d at 660.

The Seventh Circuit has emphasized that classes "defined by the activities of the defendants" are generally sufficiently definite to satisfy this requirement. *Alliance to End Repression v. Rochford*, 565 F.2d 975, 987 (7th Cir. 1977); *see also, e.g., Boatman v. Murphy,* No. 1:10-CV-158-WTLDML, 2010 WL 2178821, at *2 (S.D. Ind. May 27, 2010) (citing same) and *Schepers v. Comm'r,* No. 1:09-CV-1324-WTL-TAB, 2010 WL 761225, at *1 (S.D. Ind. Mar. 3, 2010) (citing same). Moreover, the Seventh Circuit has rejected a heightened standard of ascertainability that would require plaintiffs to prove at the certification stage that there is a "reliable and administratively feasible" way to identify all who fall within the class definition. *Mullins*, 795 F.3d at 657. It is not fatal for a class definition to require some inquiry into individual records, so long as the inquiry is not so daunting as to make the class definition insufficient. *Selburg*, 2012 WL 4514152, at *2 (quoting *Sadler v. Midland Credit Mgt., Inc.,* No. 06–C–5045, 2008 WL 2692274, at *3 (N.D. Ill. July 3, 2008)).

10

### B. THE REQUIREMENTS FOR CLASS CERTIFICATION ARE MET HERE.

As discussed below, this Court should certify the proposed Class because the allegations set forth in the Amended Complaint satisfy the requirements of Rule 23—ascertainability; numerosity, commonality, typicality, and adequacy as required by Rule 23(a); a risk of inconsistent or varying adjudications as contemplated by Rule 23(b)(1)(A); and predominance of common questions over individual questions and superiority of a class action over other available methods as set forth in Rule 23(b)(3).

#### 1. THE PROPOSED CLASS IS ASCERTAINABLE.

In this case, the Court can easily ascertain the Class from the class definition. The class definition is sufficiently precise for the Court to readily determine, as a matter of administrative feasibility, whether a particular individual is a member of the Class. The parties and the Court can ascertain the members of the Class from contracts and other records created and maintained by NextGear, including, but not limited to, the Floorplan Agreements and customer dealer lists. These records will show the names of the dealers that were parties to a Floorplan Agreement with NextGear effective during the time period of January 2005 through July 2013. Based on the allegations of the Amended Complaint, it is administratively feasible for the Court to ascertain whether a particular dealer fits within the definition of the Class.

#### 2. THE RULE 23(A) PREREQUISITES ARE SATISFIED HERE.

As set forth below, the definition of the proposed Class satisfies the four prerequisites for class certification under Rule 23(a): numerosity, commonality, typicality, and adequacy.

11

### a. The Members of the Class are So Numerous that Joinder of All Members is Impracticable, Satisfying the Requirements of Rule 23(a)(1).

The "numerosity" provision of Rule 23 requires that a class must be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). When the proposed class is large, "numbers alone may be dispositive." *Young v. Magnequench Int'l, Inc.,* 188 F.R.D. 504, 506 (S.D. Ind. 1999). While there is no bright-line test for numerosity, the Seventh Circuit has found that a class of forty plaintiffs can be sufficiently large to satisfy Rule 23(a)(1). *See Pruitt v. City of Chicago,* 472 F.3d 925, 926–27 (7th Cir. 2006) ("Sometimes even 40 plaintiffs would be unmanageable."); *Shields v. Local 705, Int'l Bhd. of Teamsters Pension Plan,* 188 F.3d 895, 897 (7th Cir. 1999) (noting that class consisted of class representative "and 35 other[s]"); *Swanson v. Am. Consumer Indus., Inc.,* 415 F.2d 1326, 1333 n. 9 (7th Cir. 1969) (even forty members could be sufficiently large to satisfy numerosity). Further, "[t]here is no magic number required, and a plaintiff need not demonstrate the exact number of class members so long as a conclusion is apparent from good-faith estimates." *Nelson v. IPALCO Enters., Inc*., 2003 WL 23101792, *3 (S.D. Ind. Sept. 30, 2003); *Ostler v. Level 3 Commc'ns, Inc.,* No. IP 00-0718-C H/K, 2002 WL 31040337, at *3 (S.D. Ind. Aug. 27, 2002); *see also Stoll v. Kraft Foods Glob., Inc.,* No. 1:09-CV-0364-TWP-DML, 2010 WL 3613828, at *5 (S.D. Ind. Sept. 6, 2010) (to establish numerosity, "[p]laintiffs must provide some evidence or reasonable estimate of the number of class members.") (citation omitted); *Schmidt v. Smith & Wollensky, LLC,* 268 F.R.D. 323, 326 (N.D. Ill. 2010) (court can use common sense in evaluating numerosity).

The requirement of numerosity is easily satisfied in this case. In the Defendants' own estimation, the proposed Class has "tens of thousands" of members. According to the Defendants' Motion to Stay Discovery, NextGear has provided credit to "tens of thousands" of car dealerships

since 2007.[17] On its website, NextGear claims to have over 18,000 used car dealers engaged with it in financing arrangements.[18] Whether the size of the putative class is 18,000 or "tens of thousands" of dealers, it would be impracticable to join all putative Class Members in a single suit. This is sufficient to support a finding that the proposed Class satisfies Rule 23(a)(1)'s numerosity requirement.

### b. There Are Multiple "Questions of Law or Fact Common to the Class" Satisfying the Commonality Requirement of Rule 23(a)(2).

The second Rule 23(a) requirement, commonality, requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). As discussed below, this requirement is satisfied here because this case presents questions of law and fact common to the proposed Class.

It is well-settled Supreme Court precedent that "[c]lass relief is 'peculiarly appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class.'" *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 155 (1982) (*quoting Califano v. Yamasaki*, 442 U.S. 682, 701 (1979)).[19] "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992); *see also Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (quoting *Rosario*, 963 F.2d at 1018). Commonality is satisfied where there is a "common question which is at the heart of the case." *Lindh v. Dir., Fed. Bureau of Prisons,* No. 2:14-CV-151-JMS-WGH, 2015 WL 179793, at *5 (S.D. Ind. Jan. 14, 2015), appeal dismissed (7th Cir. Aug. 18, 2015) (quoting *Rosario*, 963 F.2d at

---

[17] R. Doc. 119 at p. 2.

[18] *See* NextGear Capital Welcome Packet, available at http://www.nextgearcapital.com/welcome-packet/ (last accessed September 30, 2016).

[19] *See also Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 131 S. Ct. 2541, 2545, 180 L. Ed. 2d 374 (2011) (noting that *Falcon* "describes the proper approach to commonality").

1018). "[C]ommon nuclei of fact are typically manifest where … the defendants have engaged in standardized conduct towards members of the proposed class." *Keele,* 149 F.3d at 594; *Gentry v. Floyd Cty.,* 313 F.R.D. 72, 77 (S.D. Ind. 2016) (same).

Some factual variation does not preclude a finding of commonality; there need only be at least one question of law or fact common to the class. *Keele*, 149 F.3d at 594 (affirming class certification despite some variations); *Rosario*, 963 F.2d at 1017; *Cunningham Charter Corp. v. Learjet, Inc.,* 258 F.R.D. 320, 328 (S.D. Ill. 2009). All questions of fact or law need not be identical; rather, the requirement is satisfied as long as the class claims arise out of the same legal or remedial theory. *Weil v. Metal Techs., Inc.,* No. 215CV00016JMSDKL, 2016 WL 286396, at *11 (S.D. Ind. Jan. 25, 2016) (citing *In re Ready–Mixed Concrete Antitrust Litig.*, 261 F.R.D. 154, 167 (S.D. Ind. 2009)).

The Amended Complaint alleges common legal and factual questions derived from a common nucleus of operative facts pertaining to the Class as a whole, including, but not limited to:

1. Whether the Plaintiffs entered into Floorplan Agreements or similar contractual agreements for used car financing with NextGear;

2. Whether NextGear charged interest and fees to the Plaintiffs on money not actually lent to the Plaintiffs;

3. Whether the Floorplan Agreements were similar and allowed the charging of interest and fees prior to money being loaned under the Floorplan Agreements;

4. Whether the Defendants engaged in a pattern of racketeering activity as alleged in the Amended Complaint;

14

5.  Whether the Defendants were members of, or participants in, the conspiracy alleged in the Amended Complaint;

6.  Whether the Defendants committed wire and mail fraud through their scheme and artifice to defraud the Plaintiffs, through their efforts to obtain money and property by means of false and fraudulent pretenses and representations to the Plaintiffs; and through their use of interstate wire communications in their scheme and artifice to defraud the Plaintiffs;

7.  Whether the Defendants committed mail fraud by using the United States Postal Service or private or commercial interstate mail carriers to execute the scheme and artifice to defraud;

8.  Whether NextGear had a practice of intentionally interfering with business relationships between the Plaintiffs and auction houses;

9.  Whether the Defendants were unjustly enriched at the expense of the Plaintiffs by charging and collecting interest and fees from the Plaintiffs on money not lent; and

10. Whether the Plaintiffs are entitled to an award of reasonable attorneys' fees, pre-judgment interest, and costs of this suit.

Any one of these common issues of fact or law is alone sufficient for the Court to find commonality with respect to the Class. *Keele*, 149 F.3d at 594; *Rosario*, 963 F.2d at 1017; *Cunningham Charter Corp.,* 258 F.R.D. at 328.

Further, as the Seventh Circuit has recognized, cases arising out of form contracts are particularly appropriate for class treatment. *See Keele,* 149 F.3d at 594 (citing *Kleiner v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683, 691 (N.D.Ga.1983) ("When viewed in light of Rule 23, claims arising from interpretations of a form contract appear to present the classic case for treatment as a

class action...."); *Heartland Communications, Inc. v. Sprint Corp.*, 161 F.R.D. 111 (D. Kan. 1995) (certifying class where contracts signed by all class members contained virtually same provision as that challenged by class representative)). As discussed in Section II(A), *supra*, this is the case here for the Named Plaintiffs and all putative Class members who were parties to Floorplan Agreements with NextGear effective during the time period of January 2005 through July 2013. Each of the Named Plaintiffs signed a form contract with NextGear containing a Demand Promissory Note and Security Agreement that was substantively identical in the pertinent respects—providing that interest could be charged when NextGear made an Advance to a third party on the dealer's behalf.[20] Likewise, the sample promissory notes produced by the Defendants for the years 2005 through 2012 are substantively identical to the Named Plaintiffs' Floorplan Agreements in their provisions governing when interest could be charged.[21] In contrast, the sample 2013 contract (effective August 5, 2013) produced by the Defendants contained new and different language purporting to allow interest to be charged from the sale date or the date of a request for an advance, regardless of when funds were advanced.[22] The proposed Class includes only dealers who were party to contracts with NextGear effective during January 2005 through July 2013, when the substantively identical form contracts were used. Thus, the commonality requirement is met.

### c. The Claims of the Named Plaintiffs Are "Typical of the Claims of the Class" as Required by Rule 23(a)(3).

Rule 23(a)(3) requires named plaintiffs to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The question of typicality is closely related to the question of commonality. *Rosario,* 963 F.2d at

---

[20] *See* Amd. Compl., Exhs. A, C, and D, and pertinent provisions cited at n. 8, *supra*.
[21] *See* **Exhs. H** through **O** hereto, and pertinent provisions cited at n. 9, *supra*.
[22] *See* **Exh. P** hereto, and pertinent provisions cited at n. 10, *supra*.

1018. A party's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and the class representative's claims are based on the same legal theory. *Oshana,* 472 F.3d at 513; *Keele,* 149 F.3d at 595; *Rosario,* 963 F.2d at 1018. The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. *De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983). Because commonality and typicality are closely related, a finding of one often results in a finding of the other. *Id.*

The typicality requirement "directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Weil,* 2016 WL 286396, at *11 (citing *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009)). This requirement "focuses on the class representatives and whether their pursuit of their own claims will work for the benefit of the entire class .... 'Typical does not mean identical, and the typicality requirement is liberally construed.'" *Roe v. Bridgestone Corp.,* 257 F.R.D. 159, 167 (S.D. Ind. 2009) (citing *In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions,* 148 F.3d 283, 311 (3d Cir. 1998) and quoting *Gaspar v. Linvatec Corp.,* 167 F.R.D. 51, 57 (N.D. Ill. 1996)); *see also In re Ready-Mixed Concrete Antitrust Litig.,* 261 F.R.D. at 168 ("the representatives' claims need not be identical to the class members'; rather, it is sufficient if they are substantially similar") (citation omitted).

The claims of the Named Plaintiffs—Red Barn, Platinum, and Mattingly—are typical of the Class as they arise from the same course of conduct that gives rise to the claims of the putative Class Members and are based on the same legal theories. The Named Plaintiffs allege that the Defendants injured each of them and the other putative Class Members by a common course of conduct: conspiring to solicit the Plaintiffs to enter into Floorplan Agreements with NextGear,

after which they would wrongfully charge the Plaintiffs interest and/or fees on money not lent, in breach of the Floorplan Agreements, and then interfere with their relationships with auction houses by blacklisting them. Central to the Named Plaintiffs' claims are the Floorplan Agreements with NextGear, and the Named Plaintiffs' Floorplan Agreements contain substantively the same relevant terms as the Floorplan Agreements entered into by the putative Class Members. The wrongful conduct alleged by the Named Plaintiffs is central to NextGear's business model and, Plaintiffs allege, was used consistently with its "tens of thousands" of customer dealers nationwide, all of whom are putative Class Members. The Named Plaintiffs' claims have the "essential characteristics" of the claims of the putative Class Members, and the Named Plaintiffs' claims will work for the benefit of the entire Class. This is sufficient to show the requisite typicality.

### d. The Named Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Interests of the Putative Class Members, as Required by Rule 23(a)(4).

Pursuant to Rule 23(a)(4), the proposed class representatives must fairly and adequately protect the interests of the putative Class Members. Adequacy "consists of two parts: (1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.,* 649 F.3d 583, 592 (7th Cir. 2011). A plaintiff "must have a sufficient stake in the outcome to ensure zealous advocacy" and "must not have antagonistic or conflicting claims with other class members." *Gentry v. Floyd Cty.,* 313 F.R.D. 72, 80 (S.D. Ind. 2016) (citing *Harris v. Circuit City Stores, Inc.*, No. 2008 WL 400862, at *7 (N.D. Ill. Feb 07, 2008) (citing *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 594 (7th Cir. 1983)). Named counsel "must be experienced, qualified, and generally able to conduct the litigation." *Id.* (citing *Harris* and *Retired Chicago Police Ass'n*).

18

### i.  The Named Plaintiffs will fairly and adequately represent and protect the Class.

Named Plaintiffs Red Barn, Platinum, and Mattingly have a sufficient stake in the outcome of the claims to ensure zealous pursuit of this action against the Defendants. Each has suffered monetary loss and damage to their business relationships as a result of the Defendants' wrongful conduct alleged in the Amended Complaint. Their interests are aligned with those of the putative Class Members, who have suffered from the Defendants' conduct in the same way. The Named Plaintiffs understand the allegations of the Complaint, and each will vigorously prosecute this action. Their interests are not antagonistic to the interests of the members of the Class, nor are there any conflicts of interest.[23]

### ii.  Counsel are experienced in class action litigation and will fairly and adequately protect the putative Class Members in this case.

The undersigned lawyers, serving as proposed Class counsel, are well-suited to represent the interests of the proposed Class. Rule 23(g)(1) provides that, "[u]nless a statute provides otherwise, a court that certifies a class must appoint class counsel." In evaluating proposed class counsel, the Court should consider the work counsel have done in identifying or investigating potential claims in the action; counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; counsel's knowledge of the applicable law; and the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). As "[a]n attorney appointed to serve as class counsel must fairly and adequately represent the interests of the class[,]" the court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4) and (g)(1)(B).

---

[23] *See* **Exhs. A** through **C** hereto (Red Barn Decl.; Platinum Decl.; and Mattingly Decl.).

The Named Plaintiffs seek appointment of their attorneys as Class Counsel in this case: Gladstone N. Jones, III; Lynn E. Swanson; and Kerry A. Murphy of Jones, Swanson, Huddell, and Garrison, LLC; James M. Garner, Ryan Adams, and Matthew Coman of Sher, Garner, Cahill, Richter, Klein, and Hilbert, LLC; Cassie E. Felder of Lugenbuhl, Wheaton, Peck, Rankin & Hubbard; and Liaison Class Counsel Kathleen A. DeLaney of DeLaney & DeLaney LLC. The Named Plaintiffs' counsel have worked extensively for several years to investigate the claims alleged on behalf of the Named Plaintiffs and the putative Class Members and are fully prepared to commit the resources necessary to represent the Named Plaintiffs and the putative Class Members. Further, the Named Plaintiffs' counsel have experience in handling class action and complex litigation. They are fully qualified to prosecute the claims asserted in this action, having successfully litigated many major class actions on behalf of thousands of plaintiffs as well as many other pieces of complex commercial litigation. *See* **Exhs. D** through **G** hereto (J. Garner Decl.; L. Swanson Decl.; C. Felder Decl.; and K. DeLaney Decl.). Thus, the adequacy requirements of Rules 23(a)(4) and 23(g) are satisfied in this case.

### 3. PLAINTIFFS SATISFY THE PREREQUISITES FOR CLASS CERTIFICATION UNDER RULE 23(B)(1)(A) AND (B)(3).

In addition to satisfying the four prerequisites set out in Rule 23(a), the proposed class must satisfy one of the requirements of Rule 23(b). In this case, the proposed class satisfies the requirements of both Rule 23(b)(1)(A) and (b)(3).

#### a. The Proposed Class Satisfies Rule 23(B)(1)(A).

This class action may be maintained under Rule 23(b)(1)(A), which authorizes class actions where prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish

20

incompatible standards of conduct for the party opposing the class. Here, even if prosecuting approximately 18,000 individual suits against the Defendants for the same conduct were feasible, such a large number of separate actions would undoubtedly lead to inconsistent or varying adjudications that would establish incompatible standards of conduct for the defendants. *See, e.g., Stoll v. Kraft Foods Glob., Inc.,* No. 1:09-CV-0364-TWP-DML, 2010 WL 3613828, at *7 (S.D. Ind. Sept. 6, 2010) ("Simply stated, if over 100 individual cases are tried, varying judgments are likely to ensue. In this sense—and KFG does not dispute this—Plaintiffs satisfy 23(b)(1)."). Accordingly, this class action may be maintained under Rule 23(b)(1)(A).

### b.  The Proposed Class Satisfies the Predominance Requirement of Rule 23(B)(3).

### 1.  The Predominance Requirement

This class action also may be maintained under Rule 23(b)(3), which authorizes class certification in cases where "the questions of law or fact common to class members predominate over any questions affecting only individual members, and … a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The predominance requirement is satisfied when "common questions represent a significant aspect of a case and … can be resolved for all members of a class in a single adjudication." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012). "Or, to put it another way, common questions can predominate if a common nucleus of operative facts and issues underlies the claims brought by the proposed class." *Id.* (citation omitted). "A proposed class of plaintiffs must prove the *existence* of a common question, and one that predominates over individual questions, but it need not prove that the answer to that question will be resolved in its favor." *Bell v. PNC Bank, Nat. Ass'n,* 800 F.3d 360, 376 (7th Cir. 2015) (emphasis in original). As

the U.S. Supreme Court has made clear, "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Ct. Ret. Plans & Trust Funds*, 113 S. Ct. 1184, 1191 (2013) (emphasis in original). Thus, at the class certification stage, plaintiffs need not prove their legal theory but must, instead, "demonstrate that [their] legal theory is *capable of proof at trial* through evidence that is common to the class rather than individual to its members." *Messner*, 669 F.3d at 818 (emphasis in original). "If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Id.* at 815. Individual questions need not be absent—the text of Rule 23(b)(3) itself contemplates that such questions will be present and requires only that those questions not predominate over the common questions. *Id.*

As the Seventh Circuit has warned, in conducting its Rule 23 certification analysis, "the court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *Messner*, 669 F.3d at 811 (citing *Schleicher v. Wendt*, 618 F.3d 679, 685 (7th Cir. 2010); *Kohen v. Pacific Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009); *Payton v. County of Kane*, 308 F.3d 673, 677 (7th Cir. 2002)). "'Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'" *Bell*, 800 F.3d at 376 (quoting *Amgen*, 133 S. Ct. at 1194–95). While Plaintiffs bear the burden of showing that a proposed class satisfies the Rule 23 requirements, they need not make that showing to a degree of absolute certainty; it is sufficient if each disputed requirement has been proven by a preponderance of the evidence. *Id.* (citing *Trotter*

22

*v. Klincar,* 748 F.2d 1177, 1184 (7th Cir. 1984), and *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.,* 546 F.3d 196, 202 (2d Cir. 2008)).

As discussed below, the proposed class satisfies the requirements of Rule 23(b)(3).

### 2. Common questions of fact and law predominate.

The factual questions presented in this case, set forth below, predominantly focus on the conduct of the Defendants, which is the cause of the Named Plaintiffs' and the putative Class Members' injuries, and which will require a presentation of evidence that is common across all putative Class Members' claims:

- The Defendants conspired to and did engage in a scheme to defraud the Plaintiffs by charging them interest and/or fees on loans before money was lent;

- NextGear actively solicited the Plaintiffs to enter into Floorplan Agreements whereby they could perpetrate their fraudulent scheme;

- NextGear charged the Plaintiffs interest and fees, including but not limited to floorplan fees and curtailment fees, as of the date of the auction rather than the day the money was lent under the Floorplan Agreements;

- NextGear misrepresented the date that interest began to accrue by backdating the loans to the date of auction, even though money was not lent until the delivery of the titles to the vehicles; and

- NextGear engaged in a practice of "blacklisting" the Plaintiffs with the auction houses to prevent them from participating in auctions on which their livelihood depended.

Likewise, common legal issues predominate on each of Plaintiffs' theories of liability, including:

23

- Whether NextGear breached the Floorplan Agreements, which are substantively identical across the Class, by charging certain interest and fees on money not lent;

- Whether the Defendants' conduct constitutes substantive violations of RICO;

- Whether the Defendants conspired to violate RICO;

- Whether NextGear's prevailing practices in communicating with auction companies comprised a tortious interference with the Plaintiffs' business relationships with the used car auctions; and

- Whether the Defendants were unjustly enriched by their fraudulent practice of charging interest and/or fees on money not lent.

These common factual and legal questions represent a "significant aspect" of the case and can be resolved for all members of the Class in a single adjudication. *Messner,* 669 F.3d at 815. Further, these common questions predominate because "a common nucleus of operative facts and issues" underlies the claims brought by the proposed class. *Id.* Resolution of questions of liability common to the class must necessarily precede any issues of individual damages and any individual defenses.

The Plaintiffs intend to prove their case by focusing on Defendants' conduct toward the Class as a whole. The proposed Class is "sufficiently cohesive to warrant adjudication by representation," *Messner,* 669 F.3d at 814, because each of the foregoing allegations against the Defendants arise from their consistent scheme and practice of defrauding the customer dealers nationwide and charging interest on monies not lent, in breach of the substantially similar Floorplan Agreements used with all of the Plaintiffs. These theories of class liability asserted by the Named Plaintiffs against Defendants do not depend on individual issues of causation or reliance. The Class does not rely on separate individual courses of conduct or misrepresentation

24

directed at or received by individual Class members, and the Plaintiffs' legal theory "is capable of proof at trial through evidence that is common to the class rather than individual to its members." *Messner,* 669 F.3d at 818. That evidence will primarily focus on the Defendants' conduct applicable to the entire class, not conduct specific to individual members of the Class.

### 3.  Broadly applicable defenses predominate.

To certify the Class, the Court may also address whether broadly applicable or individual defenses predominate. *See, e.g., Nelson,* 2003 WL 23101792, at *12-13. While the Defendants have not yet filed an answer, the majority of the defenses raised in the Defendants' Motion to Dismiss (R. Docs. 126 and 127) present broadly applicable issues, weighing in favor of a finding of predominance. *See id.*

The Defendants have argued that the Plaintiffs failed to properly allege a RICO claim; the Plaintiffs' claims are barred by the statute of limitations because the charges to all Plaintiffs were open and obvious based on their account statements; the Plaintiffs' unjust enrichment claims are barred because the Plaintiffs entered into valid, enforceable contracts; the Plaintiffs failed to properly plead a tortious interference with business relationships claim; the Defendants had no special duty giving rise to a constructive fraud claim; and the Plaintiffs' breach of contract claim fails based on the interpretation of contractual terms common to all Plaintiffs. The Defendants have contended that these defenses apply to all named Plaintiffs and other putative class members. The Defendants also raised a *res judicata* defense against all of the Named Plaintiffs except Red Barn, based on default judgments that were entered against those plaintiffs in collection suits. While no such judgment was entered against Red Barn, the *res judicata* defense does not undermine the predominance of common issues in this case. *See, e.g., Nelson,* 2003 WL 23101792,

at *12 (certain potential defenses that would not apply to all class members "do not undermine the predominance of common issues over individual issues").

### 4. A consistent methodology can be applied to calculate the Plaintiffs' damages.

In analyzing the predominance requirement for a class action, courts must consider whether the plaintiffs' damages are "susceptible of measurement across the entire class." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 760 (7th Cir.2014) (citing *Comcast Corp. v. Behrend,* 133 S. Ct. 1426, 1433 (2013)). "[T]here must be a single or common method that can be used to measure and quantify the damages of each class member[.]" NEWBERG ON CLASS ACTIONS § 12:4 (5th ed. 2016). Further, "[i]t is well established that the presence of individualized questions regarding damages does not prevent certification under Rule 23(b)(3)." *Messner,* 669 F.3d at 815.

Plaintiffs have alleged that Defendants damaged them and their businesses by, *inter alia,* improperly charging them interest and fees on money not lent and by blacklisting them from used car auctions. As to the former, the method of measuring damages across all Plaintiffs is simply the total amount of interest and fees that NextGear charged between the date of the auction and the date on which it actually advanced money on the dealer's behalf under the Floorplan Agreement. In instances where NextGear charged interest and fees even though the customer dealer did not ultimately use the Floorplan Agreement, the Class member would be entitled to a refund of all interest and fees. This method of calculating damages could be applied across the entire putative Class. As for the blacklisting claims, damages could be measured by comparing the Plaintiff's appraised value or profitability before and after NextGear's blacklisting prevented it from participating in the auctions where it did business. In short, individual damages for every one of the Plaintiffs can be determined using the same methodology.

26

Moreover, even if it were necessary to conduct individual damages determinations in this case, that would not require denial of class certification. *See Mullins,* 795 F.3d at 671 ("[W]here the defendant's liability can be determined on a class-wide basis, but … there is no common method for determining individual damages[,] … courts often bifurcate the case into a liability phase and a damages phase."); *Arreola v. Godinez,* 546 F.3d 788, 801 (7th Cir. 2008) ("Although the extent of each class member's personal damages might vary, district judges can devise solutions to address that problem if there are substantial common issues that outweigh the single variable of damages amounts…. [T]he need for individual damages determinations does not, in and of itself, require denial of [plaintiff's] motion for certification.").

### 5. Separate trials would involve the same repetitive evidence.

If this Court refused to certify this case as a class action, the potential result might be tens of thousands of separate cases and trials. However, if every Named Plaintiff and every other putative Class Member were to bring his and her own individual actions, each would be required to establish Defendants' liability with exactly the same allegations and exactly the same proof in order to prevail. "The trials on the merits of each such claim would all involve essentially the same evidence of the same actions of the defendants." *Nelson,* 2003 WL 23101792 at *13. As this Court held in *Nelson*:

> The prospect of hearing dozens, scores, or even hundreds [and in this case, thousands or tens of thousands] of claims in which essentially the same extensive evidence of the defendants' conduct would have to be repeated shows, in the court's view, the predominance of common issues over individual issues.

*Id.* This prospect should again lead the Court to the conclusion that the common issues of law or fact in this case predominate over any purely individual issues.

Therefore, the predominance criterion of Rule 23(b)(3) is satisfied in this case.

### c. The Proposed Class Satisfies the Superiority Requirement of Rule 23(B)(3).

Under Rule 23(b)(3), a class action must also be superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3) class actions are designed to "cover cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Suchanek v. Sturm Foods, Inc.,* 764 F.3d 750, 759 (7th Cir. 2014) (quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 615, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (internal quotation omitted)). Considerations relevant to the superiority of a class action over individual lawsuits include: (A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. *Id.* These factors strongly weigh in favor of class certification when applied to this case.

With respect to the first factor, as with many of the other Rule 23 requirements discussed above, the fact that this case involves a common nucleus of operative facts arising from Defendants' class-wide conduct and substantively identical contracts supports a finding that a class action here will "achieve economies of time, effort, and expense" and that the class members' interests are better served by a class action than by individually controlling the prosecution of separate actions. It would be cost-prohibitive for each individual Plaintiff to prosecute these claims in an individual action. The Named Plaintiffs and putative Class Members are primarily small businesses that were wrongfully charged interest and/or fees in the range of tens of thousands of

dollars each and suffered additional harm to their business as a result of NextGear's blacklisting. Each Plaintiff suffered damages that significantly harmed its business; nonetheless, the fees and costs of litigation would quickly consume any potential recovery if the Plaintiffs were forced to assert their claims in individual actions. It would be difficult for an individual Plaintiff to prosecute its claim in a separate lawsuit, and it would be difficult for any attorney to bring an individual action of this magnitude and complexity where the costs of litigation are likely to absorb, if not exceed, any potential recovery.

With respect to the second factor, no other actions have been commenced in any state or federal forum by any other putative Class Members. Thus, the second factor does not weigh against class certification.

With respect to the third factor, concentrating the claims of the Plaintiffs in this forum is desirable, particularly from the standpoint of judicial economy. The Southern District of Indiana is the center of gravity for NextGear's operations, as NextGear is headquartered in Carmel, Indiana 46032.[24] All Defendants conduct substantial business in this District, and some of the actions giving rise to the Amended Complaint took place in this District. Further, NextGear provided for this jurisdiction (specifically Marion and Hamilton Counties) in the Floorplan Agreements. Without certification, the Court would be required to expend substantial judicial resources to evaluate individual claims of tens of thousands of plaintiffs based on the same operative facts, evidence, and legal issues. Defendants would expend considerable resources responding to the same evidence, producing the same witnesses, and litigating the same defenses in individual lawsuits. The scope and extent of the resources required by tens of thousands of individual

---

[24] *See* NextGear Contact Information, available at https://www.nextgearcapital.com/contact-us/ (last accessed September 30, 2016).

plaintiffs filing separate lawsuits in different jurisdictions would "threaten[] a great waste of judicial time and energy, to the detriment of many other litigants." *Nelson,* 2003 WL 23101792 at *15.

Finally, with respect to the fourth factor, Plaintiffs do not envision any significant difficulties will be faced in managing this case as a class action. Rule 23(b)(3)'s superiority requirement "is comparative: the court must assess efficiency with an eye toward other available methods." *Mullins,* 795 F.3d at 664. "Ironically, those Rule 23(b)(3) actions requiring the most management may yield the greatest pay-off in terms of effective dispute resolution." *Id.* (citing 7AA Wright et al., FEDERAL PRACTICE & PROCEDURE § 1780). Because district courts "have considerable experience with and flexibility in engineering solutions to difficult problems of case management" and discretion to, for example, insist on details of the named plaintiff's plan for notifying the class and managing the action "[i]f faced with what appear to be unusually difficult manageability problems at the certification stage," "refusing to certify on manageability grounds alone should be the last resort." *Mullins,* 795 F.3d at 664. Given the flexibility this Court may exercise in dealing with a class action, case management should not be an issue.

Accordingly, this Court should find a class action in this case to be superior to any other available means of adjudicating this controversy in a fair and efficient manner, and should certify the requested class in this case.

## IV.    CONCLUSION

For the foregoing reasons, this case satisfies all of the criteria for certification as a class action pursuant to Rule 23. The Court should grant Plaintiffs' motion for class certification and appointment of Class Counsel and certify this action as a class action under Rule 23(b)(1)(a) and/or (b)(3) on behalf of the putative Class Members. The Court should also grant the Named Plaintiffs' request to appoint their counsel as Class Counsel in this case.

Respectfully submitted,

*/s/ Kerry A. Murphy*
Gladstone N. Jones (La. Bar #22221) (*pro hac vice*)
Lynn E. Swanson (La. Bar #22650) (*pro hac vice*)
Kerry A. Murphy (La. Bar #31382) (*pro hac vice*)
**JONES, SWANSON, HUDDELL & GARRISON, L.L.C.**
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
Telephone: (504) 523-2500
Facsimile: (504) 523-2508

James M. Garner (La. Bar #19589) (*pro hac vice*)
Ryan D. Adams (La. Bar #27931) (*pro hac vice*)
Matthew M. Coman (#23613) (*pro hac vice*)
**SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C.**
909 Poydras Street
Suite 2800
New Orleans, Louisiana 70112
Telephone: (504) 299-2100
Facsimile: (504) 299-2300

Cassie E. Felder (La. Bar #27805) (*pro hac vice*)
**LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD**
9311 Bluebonnet Blvd., Suite A
Baton Rouge, Louisiana 70810
Telephone: (225) 291-1990
Facsimile: (504) 3109195

31

and

Kathleen A. DeLaney (#18604-49)
**DeLaney & Delaney LLC**
3646 North Washington Blvd.
Indianapolis, IN 46205
Telephone: (317) 920-0400
Facsimile: (317) 0404

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I do hereby certify that I have, on the 30th day of September, 2016, served a copy of the

foreging Motion for Class Certification and Appointment of Class Counsel on all counsel of

record via electronic service by the court's CM/ECF system. Notice of this filing will be sent to

all counsel of record by operation of the Court's electronic filing system.

David J. Jurkiewicz
Paul D. Vinkp
Stephen D. Groth
**Bose, McKinney & Evans, L.L.P.**
djurkiewicz@boselaw.com, pvink@boselaw.com, sgroth@boselaw.com

Tracey K. Ledbetter
Jason S. McCarter
**Sutherland Asbill & Brennan LLP**
Tracey.ledbetter@sutherland.com, Jason.mccarter@sutherland.com


*/s/ Kerry A. Murphy*
Kerry A. Murphy