


**DEFENDANT'S EXHIBIT 5** Mattingly

## Dealer Services Corporation
## CONFIDENTIAL APPLICATION FOR FLOORPLAN LINE OF CREDIT
Form 1-300

### BUSINESS INFORMATION

**Exact Legal Name:** Mattingly Auto Sales Inc.
**DBA Name:**
**Requested Floorplan Amount $:** 100,000
**Business Type:** [X] Corporation [ ] Sole-Prop [ ] Partnership [ ] LLC
**Have you applied with DSC before?** [ ] Yes [X] No
**If Yes, When?** / /    **What location?**
**Federal Tax ID:** ███
**Dealer License #:** ███
**Expiration Date:** 12/31/06
**State of Incorporation or Residence:** Kentucky
**State Tax ID:** ███
**Phone #:** ███  **Fax #:** SAME  **Business Email:** ███
**Physical Address:** ███
**Mailing Address:** SAME
**City, State, Zip, County:** Hardinsburg Ky 40143
**City, State, Zip, County:** SAME

### DEALERSHIP INFORMATION
[X] Own or [ ] Rent your Lot | Dealership does [X] Retail or [ ] Wholesale Only | Year Business Started: 86 | # of Employees: 2
**Average # of Sales/Mth:** 15 | **Average Price/unit:** N/A | **# of vehicles lot will hold?** 100 | **How many units on lot now?** 25
**Services you offer:** [ ] Mechanical [ ] Insurance [ ] Warranties – List Name(s) of Warranty Co:
[ ] Consignment [ ] Body Shop [ ] BHPH – List Name(s) of Finance Co:
**Where are the majority of your units obtained?** [X] Auction [ ] Wholesalers [ ] Retailers [ ] Trade-Ins [ ] Internet [ ] Other, Explain:

### BANKING INFORMATION
**Bank Name:** [X] Business [ ] Personal  **City, State:** ███  **Contact Name:** ███
**Checking Account #:** ███  **Bank Routing #:** ███  **Bank Phone #:** ███

### FLOORPLANNING INFORMATION
**Floorplan Finance Company Name:** MAFS | **Yr Start:** 99 | **Credit Line $:** 125K | **Balance $:** N/A
**Floorplan Finance Company Name:** | **Yr Start:** | **Credit Line $:** | **Balance $:**

### AFFILIATED AUCTIONS
**Auction Name:** LAA | **YR Registered:** 98 | **Auction Access #:** ███
**Auction Name:** Wolfe's AA | **YR Registered:** 98 | **Auction Access #:** ███

### INSURANCE INFORMATION
[X] I have physical damage insurance [ ] I do not have physical damage insurance.
**Amount of Insurance $:** 500K
**Insurance Carrier:** J.W. Insurance Co Ky  **Phone #:** 800-537-7968  **Renewal Date:** 12-2006

### SIGNOR 1 INFORMATION
**Principle Name:** Barry Mattingly  **Title:** owner  **% of ownership:** 100
**Home address, City, State, Zip:** ███ Hardinsburg Ky 40143
[X] Own [ ] Rent  **Home Phone:** ███  **Cell Phone:** ███  **SS#:** ███
**Driver License #:** ███  **Expiration Date:** 11/18/2008  **DOB:** ███

### SIGNOR 2 INFORMATION
**Principle Name:**  **Title:**  **% of ownership:**
**Home address, City, State, Zip:**
[ ] Own [ ] Rent  **Home Phone:**  **Cell Phone:**  **SS#:**
**Driver License #:**  **Expiration Date:** / /  **DOB:** / /

### AGREEMENT
I hereby certify the information contained within this application and on any accompanying financial statements is true, complete, and accurate. I authorize DSC to obtain credit information from a credit bureau, and any financial institution or trade creditor that I have provided as well as any other credit investigation that DSC in DSC's sole discretion deems necessary. I also authorize DSC to contact any third parties and to disclose information including information contained in this application, for the purpose, of among other things, obtaining inter-creditor agreements and perfecting DSC's security interest. By submission of this Application, Dealer expressly authorizes and agrees to accept all facsimile transmissions from DSC including, but not limited to, account information and promotional materials.

### SIGNATURES
**Signature:** [signed]  **Date:** 10/10/06  **Signature:**  **Date:**

**EXHIBIT Q**

NG_003432

| | | | | |
|---|---|---|---|---|
| Exact Legal Name: Mattingly Auto Sales, Inc. | | | | |
| DBA Name: | | | | |
| Requested Floorplan Amount: $100,000.00 | Business Type: | ☒ Corporation | ☐ Sole-Prop  ☐ Partnership  ☐ LLC | |
| Federal Tax ID: | Dealer License #: | | Expiration Date: 12/31/06 | |
| State of Incorporation or Residence: KY | | State Organization ID: | | |
| Phone #: | Fax #: | | Business Email: | |
| Physical Address: | | Mailing Address: | | |
| City, State, Zip, County: Hardinsburg, KY 40143 | | City, State, Zip, County: | | |

| | | | | |
|---|---|---|---|---|
| Bank Name: ☒ Business ☐ Personal | City, State: | | Checking Act#: | Routing #: |

| | | | |
|---|---|---|---|
| Principle Name: Barry W Mattingly | Title: PRESIDENT | | % of ownership: 100% |
| Home address, City, State, Zip: | Hardinsburg KY 40143 | | |
| ☒ Own  ☐ Rent | Home Phone: | SS#: | DOB: |
| Driver License #: | Expiration Date: 11/18/08 | | |

| | | | |
|---|---|---|---|
| Principle Name: | Title: | | % of ownership: |
| Home address, City, State, Zip: | | | |
| ☐ Own  ☐ Rent | Home Phone: | SS#: | DOB: |
| Driver License #: | Expiration Date: | | |

I hereby certify the information contained within this application and on any accompanying financial statements is true, complete, and accurate. I authorize DSC to obtain credit information from a credit bureau, and any financial institution or trade creditor that I have provided as well as any other credit investigation that DSC in DSCs sole discretion deems necessary. I also authorize DSC to contact any third parties and to disclose information including information contained in this application, for the purpose of among other things, obtaining inter-creditor agreements and perfecting DSCs security interest. By submission of this Application, Dealer expressly authorizes and agrees to accept all facsimile transmissions from DSC including, but not limited to, account information and promotional materials.

**SIGNATURES**

Signature: [signed] Barry Mattingly   Date: 1/2/06   Signature:   Date:

**DSC ONLY:**
Home Branch: 159/LOUISVILLE/MARK/HS
Credit Line: $ 100,000.00
Rate: 3.5%
Curtailment: 2            (7.5% / 15%)

Account #:
FP Fee: $ 45.00
Term: 30/30/30
Curtailment Fee: $ 45/30

1

NG_003378

## DEMAND PROMISSORY NOTE
## AND SECURITY AGREEMENT

TO: Dealer Services Corporation
11555 N. Meridian St.
Suite 220
Carmel, IN 46032

FOR VALUE RECEIVED, the undersigned dealer ("Dealer") promises to pay to the order of Dealer Services Corporation, a Delaware corporation ("DSC"), with its principal office at 11555 N. Meridian Street, Suite 220, Carmel, Indiana 46032 or such other place as DSC may designate in writing, in lawful money of the United States of America, the principal sum of ONE HUNDRED THOUSAND DOLLARS $100,000.00 ) (the "Credit Limit") or such greater or lesser sum which may be advanced from time to time, together with all costs, interest and fees and expenses as provided for under this Note and all accrued Interest which shall accrue at a variable rate (based upon a 360 day year), adjusted each business day, based upon the most recent prime rate published in The Wall Street Journal plus an additional interest factor per Dealer's Term Sheet on a per annum basis and shall be compounded daily.

In the event that Dealer is in Default under the terms of this Note, interest shall accrue at a variable rate, adjusted each business day, based upon the most recent prime rate published in The Wall Street Journal plus eight percent (8%) per annum, with such interest compounded daily and accruing from the date on which the Event of Default first occurred. Upon demand by DSC or upon an Event of Default, Dealer shall pay the Liabilities as provided herein.

The undersigned Dealer waives demand, presentment for payment, notice of dishonor, protest and notice of protest, and expressly agrees that that this Note and all payments coming due under it may be extended or modified, from time to time without in any way affecting Dealer's liability hereunder. Dealer understands that this Note matures upon issuance, and that DSC may, at any time, and without notice to Dealer, with or without cause, demand that the Note be immediately paid in full. The demand nature of this Note does not limit DSC's election of remedies upon a default by Dealer. At DSC's option, DSC may reference a term of default for the purpose of permitting DSC to receive interest at the Default Rate. It is agreed that DSC may demand partial payments under this Note and said partial demand shall not change DSC's rights under this Note.

NOW, THEREFORE in consideration of the mutual covenants, agreements and conditions contained herein, the parties agree as follows:

1. DEFINITIONS: Capitalized terms used in this Note without definition shall have the respective meanings as set forth below. All other terms in this Note shall be defined by the meanings provided for in the Uniform Commercial Code as enacted in the State of Indiana where applicable.

   (a) "Advance" shall mean all loans or payments pursuant to this Note made by DSC to Dealer or on Dealer's behalf to any third party.

   (b) "Check" shall mean all payments by, or on behalf of, Dealer to DSC not made in cash or via certified funds.

   (c) "Collateral" shall mean all Dealer's assets and properties wherever located, including without limitation all Equipment of any kind or nature, all vehicles, vehicle parts and other Inventory now owned or hereafter acquired, without limitation, the Purchase Money Inventory as hereinafter defined, and all additions, accessions, accessories, replacements, and proceeds thereof; all documents, accounts, chattel paper, and general intangible now owned or hereafter acquired by Dealer together with the proceeds thereof; all of Dealer's books and records relating to the foregoing.

   (d) "Collateral Audit Fee" shall mean the non-refundable fee payable to DSC by Dealer in the amount set forth on the Term Sheet that relates to audits of Dealer's Inventory that may be conducted from time to time by DSC or its representatives.

   (e) "Credit Limit" shall mean the maximum amount Dealer may borrow at any one time under this Note.

   (f) "Dealer's Place of Business" shall mean that place where the Collateral and Dealer's books and record are kept, where Dealer's operations are conducted from and/or if Dealer is a legally recognized business entity where Dealer's registered office is located.

   (g) "Default Rate" shall mean the rate of interest allowed under this Note which shall accrue on all Dealer's liabilities while any uncured event of default by Dealer exists.

   (h) "Equipment" shall mean all goods other than Inventory held for sale, lease or daily rental by Dealer in the ordinary course of business.

   (i) "Extension" shall mean that grant by DSC to Dealer of additional time an Advance for an item of Inventory becomes due and payable.

[Left margin vertical text:] THIS IS A COPY OF THE DEMAND PROMISSORY NOTE AND SECURITY AGREEMENT; THE SOLE ORIGINAL COUNTERPART OF THIS DEMAND PROMISSORY NOTE AND SECURITY AGREEMENT HAS BEEN DELIVERED TO TEXTRON FINANACIAL CORPORATION, AS AGENT, UNDER THAT CERTAIN AMENDED AND RESTATED PARTICIPATION AGREEMENT DATED AS OF MAY 31, 2006; EXCEPT AS EXPRESSLY PERMITTED IN SAID AMENDED AND RESTATED PARTICIPATION AGREEMENT, ANY PURCHASE OR OTHER TRANSFER OF THIS DEMAND PROMISSORY NOTE AND SECURITY AGREEMENT FROM DEALER SERVICES CORPORATION WILL VIOLATE THE RIGHTS OF THE PARTICIPANTS UNDER SAID AMENDED AND RESTATED PARTICIPATION AGREEMENT.

(j) "Floorplan Fee" shall mean the fee charged by DSC to Dealer set forth on the Term Sheet for each individual item of Inventory. Additionally, in the event no Term Sheet is executed and effective, then the Floorplan Fee shall be equal to One hundred Fifty Dollars ($150.00).

(k) "Interest" shall mean that finance charge which accrues on all Liabilities owed by Dealer to DSC under or arising out of this Note.

(l) "Late Fee" shall mean the fee charged by DSC to Dealer for each item of Inventory that Dealer fails to remit payment under this Note when due.

(m) "Liabilities" shall mean all Advances, debts, Inventory Liabilities, financial obligations, charges, expenses, fees, attorney fees, costs of collection, covenants, and duties owing, arising, due or payable from Dealer to DSC of any kind or nature, present of future, under any instrument, guaranty, or other document whether arising under this Note or any other agreement, whether directly or indirectly (including those acquired by assignment), absolute or contingent, primary or secondary, due or to become due, now existing or hereafter arising and however acquired including, without limitation, all interest, Floorplan Fees, Collateral Audit Fees, NSF Fees, Late Fees and other expenses, costs or fees provided by this Agreement.

(n) "Maturity Date" shall mean the date an Advance for an item of Inventory becomes due and payable.

(o) "MSO" shall mean the manufacturer's certificate of origin or other document evidencing ownership of a Unit issued by the manufacturer of the Unit.

(p) "Note" shall mean this Demand Promissory Note and Security Agreement and all present and future Addendums referenced herein.

(q) "Period" shall mean that number of days set forth in the Term Sheet, beginning on the date of an Advance and ending on the Maturity Date, and any extension thereto, that an item of Inventory will be financed by DSC to Dealer pursuant to the terms of this Note. Additionally, in the event no Term Sheet is executed and effective, then the Period shall be Thirty (30) days.

(r) "Inventory" shall mean all items of inventory held for sale, lease or daily rental, including but not limited to, Purchase Money Inventory.

(s) "Purchase Money Inventory" shall mean a Unit acquired by Dealer with funds Advanced by DSC for the purpose of acquiring said Unit.

(t) "Retail Installment Contract" shall mean a contract entered into between Dealer and Dealer's customer in the ordinary course of business where DSC Inventory is the item sold under the contract.

(u) "Shortage" shall mean the difference between a payment received by DSC and the amount owing arising, due, or payable from Dealer to DSC with respect to specific Advances for specific items of Inventory.

(v) "Terms and Conditions" shall mean all provisions of this Note.

(w) "Term Sheet" shall mean the addendum to this Note, as modified from time to time, which indicates specific binding terms, including but not limited to, Credit limits, Floorplan Fees, Collateral Audit Fees, Late Fees Interest and Number of Maturity Date Extensions.

(x) "Title" shall mean the certificate of title or other document evidencing ownership of a Unit issued by a duly authorized state, province or government agency.

(y) "UCC" shall mean the Uniform Commercial Code as enacted in the State of Indiana.

(z) "Unit" shall mean any manufactured item, including vehicles for which a certificate of title which is the subject of an Advance by DSC to Dealer.

2. GRANT OF SECURITY INTEREST: In order to secure full and prompt payment of all Liabilities and performance of all obligations of Dealer to DSC, Dealer hereby:

(a) Grants to DSC, together with its subsidiaries, affiliates and assigns, a continuing security interest in all Collateral, including but not limited to, Inventory. This security interest is given to DSC to secure Dealer's Liabilities to DSC under this Note, as may be amended from time to time, all without relief from valuation or appraisement laws.

(b) Agrees to execute and deliver such financing statements and amendments thereto as DSC shall require from time to time.

NG_003380

(q) That Dealer shall not disclose to any third party, without the written consent of DSC, any terms and conditions applicable to Dealer's DSC account, whether such terms and conditions are contained in the Term Sheet or this Note.

(r) That Dealer expressly authorizes and agrees to accept all facsimile transmissions from DSC including, but not limited to, account information and promotional materials.

(s) That Dealer may have an account with DSC where information can be accessed and transmissions can be sent through DSC's website located at www.discoverdsc.com. Dealer shall have the means to control access to the account information by passwords and a dealer account number in accordance with policies and procedures set forth by DSC. To participate, Dealer shall execute all documents required by DSC to register for such additional service and shall abide by DSC's policies and procedures set forth therein. Dealer agrees such documents shall be incorporated herein by reference and made part of this Note.

4. CREDIT TERMS AND PROCEDURES:

(a) The decision to make an Advance to Dealer is the exclusive right of DSC and Dealer understands that DSC may refuse to make an Advance at any time, with or without cause. Dealer is not obligated to finance any Inventory through DSC.

(b) All Dealer requests to DSC for an Advance for the purpose of acquiring Purchase Money Inventory must include a copy of the bill of sale for any Purchase Money Inventory, indicating the actual purchase price and vendor, a completed Odometer Disclosure Statement and the Unit's certificate of title showing that it has been duly assigned to Dealer. All Other Dealer requests to DSC for an Advance for purposes of financing or refinancing Inventory Dealer has previously acquired an interest in must include the Unit's certificate of title showing that it has been duly assigned to Dealer and such information that DSC may require. If DSC elects to make any such Advance, the Advance shall be deemed an additional Liability under this Note from the date on which the Advance is made.

(c) DSC is not required but may make, without notice to Dealer and without regard to the Dealer's Credit Limit, Advance on Dealer's behalf, for any liability to a third party at any time Dealer is in default under the terms of this Note. If DSC elects to make any such Advance, the Advance shall be deemed an additional Liability under this Note from the date on which the Advance is made.

(d) Dealer must be in complete compliance with this Note before an Advance request will be approved by DSC. Additionally, DSC may require certain other information from Dealer to be submitted on a certified and sworn affidavit including, but not limited to, a statement that Dealer has not used any Advance for other than its originally requested and verified purpose.

(e) Dealer shall pay to DSC at the offices of DSC Inventory and Purchase Money Inventory Liabilities, on demand and without notice, with respect to an item of Inventory or Purchase Money Inventory on the earlier of: (a) forty-eight (48) hours after the disposition by sale or otherwise of an item of Inventory or Purchase Money Inventory; or (b) the Maturity Date. DSC shall apply such payments to the Inventory or Purchase Money Inventory Liabilities incurred from said item of Inventory or Purchase Money Inventory. Notwithstanding anything herein to the contrary, after the disposition by sale or otherwise and subsequent payment to DSC as delineated above, a Shortage exists between any payments received by DSC and the Inventory or Purchase Money Inventory Liability with respect to an item of Inventory or Purchase Money Inventory, that Shortage shall be considered a Liability owed by Dealer to DSC and secured with Collateral other than Inventory or Purchase Money Inventory. Dealer shall pay to DSC at the offices of DSC all other Liabilities, on demand and without notice. The order and method of application of such payments of the Liabilities shall be in the discretion of DSC.

(f) If Dealer is in compliance with all other provisions of this Note, DSC may, in its sole discretion, permit an Extension of the Maturity Date relative to an item of Inventory, upon the payment of Shortage, Interest, Floorplan Fee(s) and a principal reduction of the outstanding Advance relating to such item of Inventory pursuant to this Note as established in the Term Sheet.

(g) So long as Dealer is not in default of this Note, Dealer may sell Inventory to bona fide buyers in the ordinary and regular course of Dealer's business, but nothing herein shall be deemed to waive or release any interest DSC may have hereunder or under any other agreement in any proceeds or replacements of the Inventory. Upon the sale of any item of Inventory, Dealer shall hold the amount received from the disposition of Inventory in Trust for the benefit of DSC and Dealer shall pay to DSC, in accordance with this Note an amount equal to the unpaid balance of the Inventory Liabilities and Liabilities relating to such Inventory.

(h) Dealer shall allow DSC's officers, employees, agents, attorneys, designees and representatives, including but not limited to representatives of Textron Financial Corporation, access to Dealer's books and records and the Dealer's Place of Business to conduct an audit of Dealer's inventory. Dealer shall be responsible for and agrees to pay all of DSC's expenses in conducting such audit.

(i) Upon request by Dealer to obtain, for a legitimate business purpose, the certificate of title to a Unit or Units held by DSC, DSC shall consider said request and, in DSC's sole discretion, may grant such request. In the event DSC grants such request, Dealer must deliver to DSC a check or draft in an amount equal to the Advance(s) relating to such Unit(s). Title(s) must be returned to DSC within the time period established by DSC or any outstanding Liabilities(s), Floorplan Fee(s) or accrued interest relating to Advance(s) for such Unit(s) shall become immediately due and payable and DSC may deposit or present such check or draft for payment in partial or whole satisfaction thereof, whichever the case may be.

5

(j) To protect DSC's interest, Dealer authorizes DSC to obtain credit information from a credit bureau, and any financial institutions or trade creditor that Dealer has provided as well as other credit investigation that DSC in DSC's sole discretion deems necessary. Dealer also authorizes DSC to contact any third parties to disclose information, including information contained in the DSC application, for the purpose of, among other things, obtaining intercreditor agreements and perfection of DSC's security interest. Further, if credit line is granted, Dealer authorizes DSC to review Dealer's account periodically, which may include obtaining additional credit reports.

(k) Dealer's account is subject to "NSF" fees in the amount equal to or greater of $25 dollars or the maximum amount permitted by law for each check or automated clearing house payment ("ACH") issued by Dealer which is subsequently returned for insufficient funds, in addition to any charge or fee imposed by Dealer's and/or DSC's depository institution. Dealer's account is also subject to a Late Fee charge in the amount equal to or the greater of $45 dollars or the maximum amount permitted by law for any item of Inventory that Dealer fails to remit payment under this Note when due. Dealer agrees that Late Fee charged by DSC is a reasonable estimate of DSC's probable losses due to the delay, inconvenience, and administrative expenses associated with a late payment. Dealer agrees that "NSF" fees and Late Fees are administrative expenses incurred by DSC subject to business and market conditions and may be adjusted by DSC without notice to Dealer at DSC's sole discretion.

5. EVENT OF DEFAULT: The occurrence of any of the following events shall be considered an "Event of Default" under this Note:

(a) The Dealer fails to perform any of its obligations, undertakings or covenants hereunder, including but not limited to, failure to make payment upon maturity or upon demand of any outstanding Liability under this Note; or

(b) Any warranty or representation made by the Dealer proving to have been false or misleading in any material respect when made, or any schedule, certificate, financial statement, report, notice, or other writing furnished by Dealer to DSC proving to have been false or misleading in any material respect when made or delivered; or

(c) Any damage or destruction of a substantial part of the Collateral occurs and appropriate insurance naming DSC as "Loss Payee" is not in affect ; or

(d) The Dealer becomes insolvent or consents to the appointment of a trustee, receiver or other custodian for the Dealer or any property thereof, or makes a general assignment for the benefit of creditors; or any bankruptcy, reorganization, debt arrangement, or other case or proceeding under any bankruptcy or insolvency law, or a dissolution or liquidation proceedings is commenced in respect of the Dealer; or

(e) Any material change in the management, ownership or control of Dealer; or

(f) The death or incompetence of Dealer or any Guarantor of this Note; or

(g) Any change in the financial condition of Dealer or Guarantor(s) that DSC deems adverse; or

(h) DSC deems itself insecure for any reason.

6. RIGHTS AND REMEDIES: Upon an event of default, DSC may, at its option and without notice, exercise any of the following rights in a separate, successive or concurrent fashion and such exercise of any right shall not preclude pursuit of other rights and remedies at a later time:

(a) Demand immediate payment of all Liabilities under this Note and all other indebtedness owed to DSC by Dealer. DSC shall have all the rights and remedies available hereunder, at law or in equity, including without limitation, the rights and remedies of a secured party under the Uniform Commercial Code in effect in the jurisdiction where the Collateral is kept. These rights and remedies include the right to cancel any unfunded Advances, to enter into Dealer's premises with or without legal process, but without force, and to take possession and remove the Collateral. At DSC's request and to the extent Dealer may lawfully do so, Dealer shall assemble, prepare for removal and make available to DSC at a place designated by DSC which is reasonably convenient for DSC and Dealer, such items of Collateral as DSC may deem sufficient to cover all Dealer's Liabilities to DSC; and

(b) Initiate proceedings to appoint a receiver in any court of competent jurisdiction. Dealer waives the right to notice and hearing of the appointment of a receiver and consents to the appointment without requiring DSC to post a bond; and

(c) To the extent allowed by law, Dealer gives consent to DSC to proceed in any action to collect on or execute against any and all bonds that Dealer has posted with any governmental authorities.

NG_003382

(d) Without limiting the foregoing, DSC may take control of any funds generated by the Collateral, and in DSC's name or Dealer's name, demand, collect, receipt for, settle, compromise, sue for, repossess, accept returns of, foreclose or realize upon any Collateral. Dealer waives any and all rights it may have to notice prior to seizure by DSC of any Collateral. Dealer agrees that private sale of any item financed by DSC at the amount owed to DSC on that item, less costs reasonably incurred by DSC in preparation of disposition of the Collateral, shall be a commercially reasonable method of disposition of the Collateral. Dealer shall be liable to DSC for any deficiency resulting from DSC's disposition of the Collateral. Dealer agrees that the Collateral is of the type customarily sold on a recognized market and that DSC therefore has no obligation to notify Dealer prior to a sale. However, Dealer agrees that ten (10) days written notice of public sale date or the date after which a private sale may occur shall be reasonable notice. DSC shall not be responsible for the accuracy or validity of any document or for the existence or value of any Collateral. DSC shall not be required to marshal any assets in favor of Dealer. DSC has no obligation to pursue any third person for any Liability to obligation owed to Dealer. Dealer further agrees to pay reasonable attorney fees and collection costs incurred by DSC in enforcing this Note after an event of default by Dealer. To the extent not prohibited by law, Dealer waives all appraisement, valuation, anti-deficiency, homestead, exemption or usury laws now or hereafter in effect and releases all right to appeal after payment in full.

7. POWER OF ATTORNEY: Dealer shall execute an irrevocable Power of Attorney in DSC's Favor and such Power of Attorney shall be incorporated herein by reference and made a part of this Note.

8. GUARANTEE(S): Dealer shall cause all owners of Dealer to execute an Individual Personal Guarantee. If Dealer is owned in whole or in part by a legally recognized business entity, then Dealer shall cause said entity to execute a Corporate Guarantee in addition to all required Individual Personal Guarantees. All such and the same shall be incorporated herein by reference and made a part of this Note.

9. TERM SHEET(S): Prior to an Advance under this Note, Dealer shall execute a Term Sheet for each unique set of terms applicable to Dealer, which may be amended from time to time, and the same shall be incorporated herein by reference and made a part of this Note.

10. ASSIGNMENT: This Note may be assigned by DSC but Dealer may not assign this Note without the prior written consent of DSC.

11. INDEMNIFICATION: Dealer shall indemnify and hold DSC harmless from and against all , loss, damage, costs, or expenses of whatever kind or nature relating to claims of third parties arising out of or in any way connected to this Note or Dealer's business affairs including, without limitation, attorneys' fees and expenses incurred both in the defense of any action against DSC and in any action to enforce these indemnity rights as against the Dealer.

12. NO JOINT VENTURE OR PARTNERSHIP: Nothing contained herein shall confer upon DSC or Dealer any interest in, or subject either of them to any liability for, or in respect of the business, assets, profits, losses or liabilities of the other. This Note does not constitute and shall not be characterized as a joint venture or partnership between DSC and Dealer. Nothing in this section shall limit or restrict the respective obligations and undertakings of DSC and Dealer hereunder.

13. AMENDMENT, MODIFICATION AND MERGER: This Note and all documents incorporated herein by reference are intended by the parties as an amendment and restatement of any prior Demand Promissory Note and Security Agreement between the parties. With the exception of the modifications referenced in paragraph 4(k) above, this Note may not be modified or amended except upon the written consent of DSC and Dealer. However, descriptions of specific items of Inventory, amounts and terms of Advances, Maturity Date Extensions and rates, and finance, service, late and other charges allowed by this Note may be proven by ordinary course of business records of DSC.

14. EXECUTION: The parties understand and agree that DSC may execute this Note and all corresponding documents by affixing an authorized DSC Officer's signature via signature stamp and a facsimile reproduction of such authorized DSC Officer's signature on the Note and all corresponding documents shall be deemed original signatures. Dealer may only execute this Note by original signature.

15. NOTICES: All notices, requests and demands to or upon the respective parties hereto shall be deemed to have been duly given or made: if by hand or by facsimile, immediately upon the Business Day of receipt, if received before 5 p.m., recipient's time, otherwise on the next Business Day; if by Federal Express, Express Mail or any other overnight delivery service with proof of next day delivery on a Business Day, one (1) Business Day after dispatch; and if mailed by certified mail, return receipt requested, five (5) days after mailing. All notices, requests and demands are to be given or made to the respective parties at the address set forth herein:

To DSC: Dealer Services Corporation, 11555 N. Meridian St., Suite 220, Carmel, IN 46032
Telephone (317) 571-3721 Facsimile: (317) 571-3737

To Dealer: (Legal name and address) Mattingly Auto Sales, Inc.
Hardinsburg KY 40143

(Telephone and Facsimile)

7

16. NO WAIVER: No failure or delay by DSC in exercising any right, power, or privilege under this Note will operate as a waiver of such right, power, or privilege, and no single or partial exercise of any such right, power, or privilege will preclude any other or further exercise of such right, power, or privilege, or the exercise of any other right, power, or privilege.

17. TERMINATION: No termination of this Note shall alter Dealer's obligations and Liabilities relating to amounts funded or committed prior to the effective date of such termination, and all rights and remedies, including without limitation, the security interest granted herein and the rights of DSC as a secured party hereunder, shall extend until all Liabilities owed by Dealer to DSC have been satisfied.

18. LEGAL FEES AND COLLECTION COSTS: Dealer shall pay to DSC all reasonable legal fees, expenses and collection costs incurred as a result of Dealer's default or failure of any obligation under this Note.

19. SEVERABILITY: Any provision of this Agreement that is invalid or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity or unenforceability without rendering invalid or unenforceable the remaining provisions of this Agreement or affecting the validity or enforceability of any provision of this Agreement in any other jurisdiction.

20. GOVERNING LAW: The validity, enforceability and interpretation of this Note shall be governed by the laws of the State of Indiana without regard to conflicts of laws provisions thereof.

21. JURISDICTION AND VENUE: As evidenced by Dealer's signature below, Dealer submits to the personal jurisdiction and venue of the state or federal courts of Marion County, Indiana and agrees that any and all claims or disputes pertaining to this Note initiated by Dealer shall be brought in the state or federal courts of Marion County, Indiana. Further, Dealer expressly consents to such jurisdiction and venue of the state or federal courts in Marion County, Indiana to any action brought in such court by DSC and waives any claim of inconvenient forum with respect to any such action. DSC reserves the right to initiate and prosecute any action against Dealer in any court of competent jurisdiction and Dealer consents to such Forum as DSC may elect.

22. WAIVER OF BOND: Dealer waives, to the extent permitted by law, any bond or surety or security on such bond which might, but for this waiver, be required of DSC.

23. WAIVER OF JURY TRIAL: DEALER, AFTER CONSULTING OR HAVING HAD THE OPPORTUNITY TO CONSULT WITH COUNSEL, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LITIGATION BASED UPON OR ARISING OUT OF THIS NOTE OR ANY OTHER LOAN DOCUMENT OR ANY OF THE TRANSACTIONS CONTEMPLATED BY THIS NOTE OR ANY COURSE OF CONDUCT, STATEMENT, WHETHER ORAL OR WRITTEN, OR ACTIONS OF THE DEALER. THE DEALER SHALL NOT SEEK TO CONSOLIDATE, BY COUNTERCLAIM OR OTHERWISER, ANY ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. THESE PROVISIONS SHALL HAVE NOT BEEN DEEMED TO HAVE BEEN MODIFIED IN ANY RESPECT OR RELINQUISHED BY DSC EXCEPT BY WRITTEN INSTRUMENT EXECUTED BY BOTH DEALER AND DSC.

24. HEADINGS: Paragraph headings used in this Note are for reference only and shall not affect the construction of this Note.

WHEREFORE, the parties have, by their duly authorized representatives, executed this Note on the 30TH day of October, 2006.

Dealer: Mattingly Auto Sales, Inc.

By: _____
Barry W Mattingly, PRESIDENT

Accepted By:
Dealer Services Corporation

By: _____
DSC Officer

8

THIS IS A COPY OF THE DEMAND PROMISSORY NOTE AND SECURITY AGREEMENT; THE SOLE ORIGINAL COUNTERPART OF THIS DEMAND PROMISSORY NOTE AND SECURITY AGREEMENT HAS BEEN DELIVERED TO TEXTRON FINANACIAL CORPORATION, AS AGENT, UNDER THAT CERTAIN AMENDED AND RESTATED PARTICIPATION AGREEMENT DATED AS OF MAY 31, 2006; EXCEPT AS EXPRESSLY PERMITTED IN SAID AMENDED AND RESTATED PARTICIPATION AGREEMENT, ANY PURCHASE OR OTHER TRANSFER OF THIS DEMAND PROMISSORY NOTE AND SECURITY AGREEMENT FROM DEALER SERVICES CORPORATION WILL VIOLATE THE RIGHTS OF THE PARTICIPANTS UNDER SAID AMENDED AND RESTATED PARTICIPATION AGREEMENT.

## TERM SHEET

Dealer: _____Mattingly Auto Sales, Inc._____

Dealer Number: ____ _____

Date of Original Note: __October 30TH____, 2006_

Dealer's DSC Branch: ____159/LOUISVILLE/MARK_____

Program Type: _____RETAIL_____

The following terms, as defined in the Demand Promissory Note and Security Agreement, shall apply effective immediately:

Floorplan Fee: The Floor Plan Fee shall be $45.00. Notwithstanding the foregoing, for each extension of the Maturity Date, the Floor Plan Fee shall be $45.00. Dealer may pay The Floor Plan Fee at the time of the Advance to avoid incurring interest charges thereon. If Dealer elects not to pay the Floor Plan Fee at the time of the Advance, the Interest will accrue per the terms of this Note. By initialing the box at the end of this paragraph dealer acknowledges that Interest will accrue on all amounts owing per terms of the Note. __BWM__

Collateral Audit Fee: The Collateral Audit Fee shall be $75.00 and shall be immediately due and payable on receipt.
Non Approved Source Fee: The Non-Approved Source Fee shall be $40.00 per Unit floored.

Period: The initial term for an Advance under this Note shall be 30 days and shall mature at that time. All extensions allowed for the same Advance shall be not more than 30 days.

Extensions: The number of Extensions allowed shall be 2.

Interest: Interest shall accrue on all Advances and under this Note at a variable rate, adjusted each business day, based upon the most recent prime rate published in The Wall Street Journal plus 3.5% per annum compounded daily. Upon default, Interest shall accrue per terms of Note.

Late Fee: The Overdue Fee shall be $45.00 per Unit floored.

Principal Reduction: The principal reduction fee for the first Maturity Date extension shall be 7.5% of the outstanding Advance relating to such item of Purchase Money Inventory. The principal reduction fee for the second Maturity Date extension shall be 15% of the outstanding Advance relating to such item of Purchase Money Inventory.

For Dealer to be paid directly by Dealer Services Corporation for any and all Floorplan purchases by Dealer, Dealer acknowledges that Dealer Services Corporation must hold a first priority security interest in Dealers Collateral, including but not limited to Inventory and Purchase Money Inventory. __BWM__.

Executed by the undersigned duly authorized representatives effective as of the 30TH day of October, 2006_.

Dealer: **Mattingly Auto Sales, Inc.**                             Dealer Services Corporation

(DBA): ____ _____                                        By: _/s/ John E. Fuller_
By: _/s/ Barry W Mattingly_ PRESIDENT                                 DSC Officer
    Barry W Mattingly, PRESIDENT

That Dealer shall not disclose to any third party, without the written consent of DSC, any terms and conditions appearing herein and applicable to Dealer's DSC account.

9

NG_003385

## POWER OF ATTORNEY

**Mattingly Auto Sales, Inc.**, ("Dealer"), hereby irrevocably appoints Dealer Services Corporation ("DSC"), a Delaware Corporation with its principal place of business located at 11555 N. Meridian St., Suite 220, Carmel, Indiana, 46032, as its lawful attorney-in-fact by executing this Power of Attorney in accordance with the Demand Promissory Note and Security Agreement contemporaneously entered by Dealer and DSC, to which all capitalized terms used herein shall have the meanings set forth in the Note, to act with or without the occurrence of an Event of Default and with or without notice to Dealer:

(a) act with general authority and delegate such authority with respect to all Dealer's personal property and all transactions relating thereto;

(b) to execute security agreements and related documents necessary for Dealer to acquire Collateral;

(c) to endorse any document, instrument, evidence of title or title or related documents necessary to protect the Collateral in the name of Dealer;

(d) to endorse notes, checks, drafts, money orders, documents, or other evidences of payment, shipment or storage or any form of Collateral on behalf of and in the name of Dealer and deposit the same in the account of DSC on account any Liability owing DSC from Dealer under the Note;

(e) to demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose or realize upon the Collateral and any insurance claims thereon in such manner as DSC may determine

(f) to sign and send on behalf of Dealer any invoice or bill of lading relating to any account, on drafts against customers, on schedules and assignments of accounts, on notices of assignment, financing statements and other public records, on verifications of accounts and on notices to customers;

(g) to sign the Borrower's name all proofs of claim against any account debtor on behalf of Dealer;

(h) to notify the post office authorities to change the address for delivery of the Dealer's mail to an address designated by DSC;

(i) to endorse Dealer's name on all applications, documents, papers, certificates and instruments necessary or expedient for DSC to use the Intellectual Property, or necessary or expedient to grant or issue any exclusive or nonexclusive license under the Intellectual Property to anyone else, or necessary or expedient for the DSC to assign, pledge, convey or otherwise transfer title in, or dispose of, the Intellectual Property to anyone else, for the purpose of recording, registering, filing or accomplishing any other formula with respect to the Intellectual Property; and

(j) to do all things necessary to satisfy Dealer's obligations and Liabilities under the Note.

Neither the Secured Party nor any attorney will be liable for any acts or omissions or for any error of judgment or mistake of fact or law, absent gross negligence, bad faith or willful misconduct. This power, being coupled with an interest, is irrevocable until the Liabilities have been fully satisfied.

Dealer: **Mattingly Auto Sales, Inc.**
Executed this 30TH day of October, 2006

By: _____Barry W Mattingly_____   Title: PRESIDENT _____PRESIDENT_____

STATE OF _KENTUCKY_ )
                                          )ss:
COUNTY OF _JEFFERSON_ )

I, _MARK HOLLEY_____, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY that

_BARRY MATTINGLY_____, personally known to me to be the same person(s) whose name(s) is/are subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that he/she/they signed, sealed and delivered the said instrument as his/her/their free and voluntary act, for the uses and purposes therein set forth.
Given under my hand and notarial seal this _2ND_ day of _NOV_, 200_6_.

My Commission Expires: _1/10/2009_           _____Notary Public_____

10

NG_003386

## INDIVIDUAL PERSONAL GUARANTY

WHEREAS, Dealer Services Corporation, a Delaware Corporation ("DSC""), in consideration of any present or future loans or other financial advances to **Mattingly Auto Sales, Inc.** (hereinafter sometimes referred to as "Debtor"); and

WHEREAS, on the 30TH day of **October, 2006**, Debtor executed and delivered to DSC its principal Demand Note and Security Agreement; and

WHEREAS, the loan of DSC to Debtor is conditioned upon said indebtedness being personally guaranteed as to the payment thereof by **Barry W Mattingly** (hereinafter referred to as "Guarantor"); and

WHEREAS, in consideration of the financial and other support that the Debtor has provided, and such financial and other support as the Debtor may in the future provide, to the Guarantor, and in order to induce DSC to provide Credit to Debtor, and because Guarantor has determined that executing this Guaranty is in its interest and to its financial benefit, the Guarantor is willing to guarantee the obligations of Debtor under the Note; and

WHEREAS the Guaranty shall be irrevocable, continuing and unconditional as to all Liabilities owed by Debtor at all times;
1. NOW, THEREFORE, the Guarantor, in executing this Individual Person Guaranty (hereinafter referred to as "Guaranty"), jointly and severally guarantees that Debtor will promptly pay the full amount of principal and interest, all costs and fees including but not limited to reasonable attorney fees and collection costs and any other liabilities arising out of the Note as and when the same shall in any manner be or become due, either according to the terms and conditions provided in said Note or upon acceleration of the payment thereof by reason of a default, as a primary not a secondary liability of Guarantor.

2. Without limiting the generality of the foregoing, the Guarantor agrees that he will pay the full amount of principal and interest of said Note now or hereafter due as, and when the same shall in any manner be or become due, either according to the terms and conditions provided in said Note or upon acceleration of the payment thereof by reason of a default, as primary and not a secondary liability of Guarantor.

3. The Guarantor hereby waives demand, notice of dishonor, presentment for payment, protest and notice of protest and of non-performance on all of said indebtedness; and if said indebtedness is renewed, or if the time for payment thereof be extended (to which Guarantor hereby expressly consents to any such renewal or extension) either with or without notice to Guarantor, Guarantor unconditionally guarantee the payment of such indebtedness at the time fixed for the payment thereof in and by any such renewal or extension. Guarantor further waives all rights, by statute or otherwise, to require the holder of the note to institute suit against the original maker of said note; also to exercise diligence in enforcing this or any other instrument.

To the extent permitted by law, Guarantor waives all defenses legally available to Guarantor, Guarantor being bound to the payment of said indebtedness of the original maker of said note. The holder of the note may take any new or additional or substituted security from time to time without in any way impairing the obligation of the undersigned; and the impairment of the security, which said holder may from time to time hold as security for said loan, shall in no way operate to discharge the undersigned in whole or in part, it being specifically agreed that the holder is not required to exercise diligence to enforce its rights against the original maker of said note. The holder is hereby authorized at any time, in its sole discretion and without notice, to take, change, release or in any way deal with the security herein; but the holder of the note shall be under no obligation to collect or to protect any of such security or said indebtedness, and its neglect or failure to collect or protect the same is excused. Acceptance of the Guarantee is waived.

4. Forbearance on the part of DSC to take steps to enforce payment of said indebtedness arising from Guarantor default in any respect whatever, or the giving of further time to the original maker of said Note, shall in no way release the undersigned, but the undersigned shall remain jointly and severally liable hereunder for the prompt payment of said indebtedness.

5. This Guarantee is for the use and benefit of the holder of said note, who in the first instance will be DSC. This Guarantee shall also be for the use and benefit of any subsequent owner of said Note, and each owner of said Note may assign this Guarantee to his successor owner of said Note.

6. All reasonable costs and expenses, including attorney's fees, incurred by the holder of said Note to enforce this Guarantee, shall be paid by the undersigned.

7. The liability of the Guarantor shall continue until payment is made of every obligation of the Debtor now or hereafter incurred in connection with said Note, and until payment is made of any loss or damage incurred by the DSC with respect to any matter covered by this Guarantee.

11

NG_003387

8. Guarantor consents that, without affecting the Guarantor's liability, the DSC may, without notice to or consent of Guarantor on such terms as DSC may deem advisable, extend in whole or in part, by renewal or otherwise, the time of payment of the debt now or hereafter owing by the Debtor to the DSC or held by the DSC as security for any obligation herein described, or may do or refrain from doing any act whatever. Guarantor also consents that DSC may release, surrender, exchange, modify, impair or extend the periods of duration or the time for performance or payment of any collateral securing the obligations of Debtor to DSC, and may also settle or compromise any claim of DSC against Debtor or against any other person or corporation whose obligation is held by DSC as collateral security for any obligation of Debtor or DSC. Guarantor hereby ratifies and affirms any such actions, and all such actions shall be binding on Guarantor, and Guarantor hereby waives all defenses, counterclaims or offsets which Guarantor may have.

9. Guarantor also waives notice of failure of any person to pay to DSC any debt held by DSC as collateral security for the obligations of Debtor, and all defenses, offsets and counterclaims which Guarantor may at any time have to any claim of DSC against Debtor.

10. Guarantor represents that at the time of the execution and delivery of this Guaranty nothing exists to impair the effectiveness of this Guarantee.

11. Guarantor understands that so long as any indebtedness exists from Debtor to DSC, Debtor is not permitted to repay any loans or obligation owing Guarantor, present or future. Guarantor agrees that any such payments made by Debtor to Guarantor shall be held in trust for the benefit of DSC and shall be immediately delivered to DSC.

12. DSC may, at its option, proceed in the first instance against the Guarantor to collect the obligations covered by this Guarantee without first proceeding against any other person, firm or corporation, and without resorting to any property held by DSC as collateral security.

13. This Guaranty shall be governed by the laws of the State of Indiana and Guarantor expressly consents to the jurisdiction of the Courts of the State of Indiana and to Venue in the Superior or Circuit Courts of Marion County, Indiana.

14. Guarantor understands that the right to trial by jury is an unconditional right afforded by the United States Constitution and understands that right may be waived. Guarantor has consulted with or has had the opportunity to consult with his/her attorney and hereby knowingly, intentionally and voluntarily waives any right to trial by jury regarding any litigation arising out of or in connection with this Guaranty. Guarantor understands that DSC also has waived its right to trial by jury and agrees that such waiver by Guarantor and DSC are for the mutual benefit of the parties. Further, Guarantor understands and agrees that such waiver is a material inducement for both parties in entering into this Guaranty and transactions relating thereto.

15. Any provision of this Guaranty that is invalid or unenforceable shall be ineffective to the extent of such invalidity or unenforceability without rendering invalid or unenforceable the remaining provisions of this Agreement or affecting the validity or enforceability of any provision of this Agreement.

16. Words of "Guarantee" contained herein in no way diminish or impair the absolute liability hereby created.

Executed by the undersigned this 30TH day of October, 2006

_____
Guarantor

STATE OF _KENTUCKY_ )
                    )ss:
COUNTY OF _JEFFERSON_ )

I, _MARK HOLLEY_ _____, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY that

_BARRY MATTINGLY_ _____, personally known to me to be the same person(s) whose name(s) is/are subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that he/she/they signed, sealed and delivered the said instrument as his/her/their free and voluntary act, for the uses and purposes therein set forth.
Given under my hand and notarial seal this _2nd_ day of _NOV_____, 200_6_.

_____
Notary Public

My Commission Expires: _1/10/2009_

12

## INCUMBENCY CERTIFICATE

I, BARRY W. MATTINGLY, Secretary of MATTINGLY AUTO SALES, a corporation organized and existing under the laws of the State of KY, do hereby certify that each of the following persons named below is a duly elected or appointed officer of the Corporation, is a qualified and acting officer of the Corporation holding the offices set forth below beside his/her name.

| Name | Office |
|---|---|
| BARRY W. MATTINGLY | President |
| | Secretary |
| | Treasurer |

IN WITNESS WHEREOF, I have executed this Incumbency Certificate as of this 2nd day of NOV, 2006.

_____
Secretary

13

## CORPORATE RESOLUTION

The undersigned hereby certifies that the following resolution was adopted at a meeting of the Board of Directors of _MATTINGLY AUTO SALES_, a corporation organized and existing under the laws of the State of _KY_, (the "Corporation").

**RESOLVED**: that the Corporation enter into and execute a Demand Note and Security Agreement and all corresponding documents with and in favor of Dealer Services Corporation ("DSC") for the purpose of obtaining a DSC line of credit.

**RESOLVED**: that any Officer of this Corporation, and their successors in office (each, an "Authorized Officer"), each acting alone, are authorized to enter into and execute any Demand Note and Security Agreement and all corresponding documents with and in favor of DSC as such Authorized Officer deems appropriate in the exercise of his or her discretion, and the execution of such documents with such changed provisions shall be the duly authorized act of this Corporation.

**I CERTIFY THAT THE FOREGOING RESOLTIONS ARE IN FULL FORCE AND EFFECT AND HAVE NOT BEEN REVOKED OR RECINDED AS OF THIS DATE.**

IN WITNESS WHEREOF, I have hereunto set my hand and affixed hereunto the seal of this corporation this _2ND_ day of _NOV_, 200_6_.

_____
Secretary

14

NG_003390

**Dealer understands that........**

_____ DSC charges fees. Including but not limited to: floorplan fees, late fees, postage fees, collateral audit fees and interest. Curtailment fees are term plan period specific and are added on the 1st day of the each term.

_____ Dealer's collateral, records and sales information will be periodically audited by a DSC representative or a third party contracted by DSC. Dealer is responsible for the $75 charge of that service.

_____ All vehicles are due to be paid off within 48 hours of the disposition of the vehicle or at contract maturity, whichever comes first. All payments must be remitted with a separate check per payoff. Multiple curtailments may be made on one check up to $10,000. **NOTE: Cash is not accepted.**

_____ Funds paid to DSC should be available for immediate clearing.

_____ Dealer is responsible for inventory management. Dealer has been given a log on to www.discoverdsc.com. Inventory/Account should be reviewed daily on line.

_____ Any funds returned non-sufficient must be replaced within 24 hours by certified funds. There is a $25 NSF fee on all returned items.

_____ Dealer is required to have physical damage insurance of at least 50% of the approved credit line. A certificate of insurance listing DSC as the Loss Payee must be provided by the contract signing date. If dealer does not meet requirements or insurance certificate is not provided, DSC will charge insurance on floored vehicles.

_____ The fee for vehicles over $35K is .5% of the purchase amount.

_____ All vehicles over $50K, including auction purchases, must have prior approval from Field Service or Area Service Manager.

Upon payoff, titles are sent out via FedEx only upon dealer request. DSC does not send titles via regular mail.
_____ Initial here if you would like titles to be sent out via FedEx ($10 charge per package or price based on type of delivery).
_____ Initial here if you would like titles to be held at the branch for pickup.

Upon dealer request, DSC will obtain clean titles for "full" or non-reassignable titles. The charge for this is $50 (or price based on fee as charged by state motor vehicle departments).
_____ Initial here if you would like DSC to re-title non-reassignable titles.

*In addition to reading and understanding my DSC contract packet, I have reviewed the above "Quick Facts". I agree with each fact.*

_____   _11/7/06_   _____
Dealer Signature                    Date                    DSC Representative

16

NG_003391

## Contract Closing Checklist

### Prepare and execute these required documents

- [x] **Demand Promissory Note and Security Agreement**
  (Signed by Officer if Dealer is a Corporation)
  (Signed by Member if Dealer is an LLC)
  (Signed by Owner if Dealer is Sole Proprietor)
  (Signed by Partner if Dealer is a Partnership)

- [x] **Power of Attorney**
  (Same as Demand Promissory Note and Security Agreement)

- [x] **All necessary Personal Guaranties**
  (Signed by Majority Owner(s)/Stock Holder(s)/Member(s))
  (Additional PG's as Credit Committee requires)

- [x] **Term Sheet**
  (Same as Demand Promissory Note and Security Agreement)

### Prepare and execute the documents that apply

- [ ] **Physical Damage Insurance Application**
  (Same as Demand Promissory Note and Security Agreement if Dealer does not have sufficient insurance or if Dealer wants DSC's Insurance)

- [x] **Corporate Resolution**
  (Signed by secretary if Dealer is a Corporation)

- [ ] **Member Resolution**
  (Signed by Member if Dealer is a LLC)

- [x] **Incumbency Certificate**
  (Signed by Secretary or Member)

- [ ] **Corporate Guaranty**
  (If Dealer is partly owned by another business entity and Credit Committee requires the that entity to sign the guarantee)

- [ ] **Corporate Resolution**
  (If guarantee referenced in item 9 is needed and the entity is a Corporation, the Secretary of the guaranteeing Corporation should sign the resolution authorizing the guarantee.)

- [ ] **Member Resolution**
  (If guarantee referenced in item 9 is needed and the entity is an LLC, the member of the guaranteeing LLC should sign the resolution authorizing the guarantee.)

- [ ] **Incumbency Certificate**
  (Signed by secretary or Member of the guaranteeing Corporation or LLC)

- [x] **ACH form**
  (Same as Demand Note and Security Agreement if Dealer desires to be paid ACH)

17

NG_003392