UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RED BARN MOTORS, INC., PLATINUM MOTORS, INC., MATTINGLY AUTO SALES, INC., YOUNG EXECUTIVE MANAGEMENT & CONSULTING SERVICES, INC., Individually, and on behalf of other members of the general public similarly situated, Plaintiffs, | ) |
| -v- | ) Docket No. 1:14-cv-01589-TWP-DKL |
| COX ENTERPRISES, INC., COX AUTOMOTIVE, INC., NEXTGEAR CAPITAL, INC. f/k/a DEALER SERVICES CORPORATION, successor by merger with Manheim Automotive Financial Services, Inc., and JOHN WICK, Defendants. | ) Class Action |

The deposition upon oral examination of **STUART LABAUVE**, a witness produced and sworn before me, Tami L. Scott, Notary Public in and for the County of Marion, State of Indiana, taken on behalf of the Plaintiffs at the offices of Bose, McKinney & Evans, 111 Monument Circle, Suite 2700, Indianapolis, Marion County, Indiana, on November 9, 2016, at 9:00 a.m., pursuant to the Federal Rules of Civil Procedure.

**ASSOCIATED REPORTING, INC.**
**251 EAST OHIO STREET, SUITE 940**
**INDIANAPOLIS, INDIANA 46204**
**(317) 631-0940**
**www.associated-reporting.com**

**EXHIBIT "B"**

APPEARANCES

FOR THE PLAINTIFFS:

DELANEY & DELANEY
Audreyalice Warner
3646 North Washington Boulevard
Indianapolis, Indiana 46205

SHER GARNER CAHILL RICHTER KLEIN & HILBERT
Matthew M. Coman
Jake Airey
909 Poydras Street, Suite 2800
New Orleans, LA 70112

FOR THE DEFENDANT NEXTGEAR CAPITAL F/K/A DEALER SERVICES CORPORATION:

BOSE MCKINNEY & EVANS
Paul D. Vink
David J. Jurkiewicz
111 Monument Circle
Suite 2700
Indianapolis, IN 46204

FOR THE DEFENDANTS:

SUTHERLAND ASBILL & BRENNAN LLP
Jason S. McCarter
999 Peachtree Street N.E., Suite 2300
Atlanta, GA 30309

INDEX OF EXAMINATION

| | PAGE |
|---|---|
| EXAMINATION BY MR. COMAN | 4 |

INDEX OF EXHIBITS


| NO. | DESCRIPTION | PAGE |
|---|---|---|
| 1 | Notice of Deposition | 5 |
| 2 | DSC Floorplan Application and attached documents | 94 |
| 3 | DSC Floorplan Application and attached documents | 98 |
| 4 | DSC/Louisiana's First Choice contract | 128 |
| 5 | Credit Authorization to Dealer Services Corporation For ACH Deposit and attached documents | 133 |
| 6 | Credit Authorization to Dealer Services Corporation for ACH Deposit and attached documents | 137 |
| 7 | 7/19/2011 Hanson/Gaylor e-mail | 143 |
| 8 | Online application documentation | 145 |
| 9 | 7/21/2011 Hanson/LaBauve e-mail regarding apps | 147 |
| 10 | 7/23/2011 Hanson/LaBauve e-mail chain | 149 |
| 11 | DSC Floorplan Application and attached documents | 151 |
| 12 | February 7, 2012 Teate/LaBauve e-mails regarding fee waivers | 155 |
| 13 | Red Barn Motors Over $200K Floorplan Request | 158 |
| 14 | E-mail exchange regarding Red Barn Motors, Inc. | 161 |
| 15 | Financial Summary | 164 |
| 16 | 11/1/2012 credit report | 169 |
| 17 | 4/26/2013 NextGear Receivable Detail Report | 178 |
| 18 | 3/18/2013 NextGear Receivable Detail Report | 179 |
| 19 | NextGear Capital document regarding Red Barn Motors, Inc. | 183 |
| 20 | March 2013 e-mails regarding Red Barn Motors, Inc. NSFs | 195 |
| 21 | 3/15/2013 e-mails regarding Red Barn Motors, Inc. NSFs | 197 |
| 22 | 3/15/2013 e-mail regarding Red Barn Motors, Inc. NSFs | 199 |
| 23 | 3/26/2013 e-mails regarding Red Barn | 200 |
| 24 | E-mails regarding Red Barn Contracted Vehicle Sales Title Dilemma | 202 |
| 25 | 4/10/2013 e-mail with Red Barn current inventory | 203 |
| 26 | 4/19/2013 e-mail regarding KO report | 204 |

approved, this was not something that you would negotiate with the customer; correct?

A We could discuss terms.

Q Right. And the terms being, what, the 60/30/30 terms?

A Depends on what they were interested in would fit for their business model that they told us about.

Q Right. You wouldn't -- I'm sorry -- on like Exhibit 3 and Exhibit 2, they wouldn't have -- the customer dealer wouldn't have the option to go, you know what, I want to change this definition to advance, or I want to change that definition; correct?

A Yes, sir.

Q This was a take it or leave it; correct?

A Yes, sir.

Q The only options they would have would be what -- the Term Sheet numbers; correct?

A Yes, sir.

Q And what options were those, again?

A We had different options of terms we could do. Depends on the line of credit they were applying for.

Q If I was a customer dealer back in 2007, could I say Stuart, 2 percent, that's what I'm willing to pay.

Did he have that option?

A If his credit was strong enough and if there was -- on the terms, yes, we could negotiate some of that stuff.

Q Did you often negotiate interest rates?

A We could if we needed to.

Q How many times have you changed an interest rate?

A I couldn't give you an exact number.

Q Less than five?

A It was more than that.

Q Less than ten?

A More than that.

Q How many?

A I don't know. We've talked to the number we did before. I don't know how many, you know, sales that I've done, and I don't know how many contract terms -- I can't tell you all the terms because in the middle of contracts, we can change terms as well.

Q The records would show whatever they are; correct?

A Yes, sir.

Q But as far as the contract itself, the customer didn't have the option of altering in any fashion?

A No, sir.

Q Correct?

Q When DSC, and if DSC pays the auction later, they're charging interest and fees on money they're not lending; correct?

MR. VINK: Object to the form of the question.

Q You can answer.

A We are obligated to pay for that unit and we are responsible for that unit if anything was to happen to it, so we are on the hook for that unit when it's on the floorplan.

Q Floorplan date goes first; correct?

A Yes, sir.

Q DSC and NextGear pays auction later; correct?

A Yes, sir.

Q Not the same date; correct?

A Sometimes it might be. I don't know the --

Q But sometimes it's not?

A It depends on the circumstance.

Q Correct. DSC and NextGear is charging interest on money it's not lending; correct?

MR. VINK: Object to the form of the question. It's the exact same question he just answered.

Q You can answer.

MR. VINK: You don't need to answer it again unless you have something to change from your previous answer.

Q Take a look at page 14, if you keep flipping. Do you see second from the bottom, that section of transactions that start with the 1997 Ford Explorer?
A On page 14?
Q Yes, sir.
A Yes, sir.
Q Okay. Do you see the Flooring Date, or I'm sorry, the Unit Purchased Date?
A Yes, sir.
Q Is what?
A 8/17/2012.
Q I'm looking at the 1997 Ford Explorer.
A Oh, I'm looking at an '02.
Q Okay. 1997, Stock Number 58.
A We're on different pages.
Q Okay. NGR14.
A Yes, sir. '97 Ford Explorer XLT.
Q Stock Number 58; is that correct?
A Yes, sir.
Q What is the Unit Purchase Date?
A August 26, 2011.
Q That's from an auction?
A Oak View Auto Auction.
Q Red Barn buys it at Oak View; correct?
A Yes, sir.