IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RED BARN MOTORS, INC., PLATINUM MOTORS, INC., and MATTINGLY AUTO SALES, INC., individually and on behalf of other members of the general public similarly situated, <br><br>  Plaintiffs, <br><br> v. <br><br> COX ENTERPRISES, INC., COX AUTOMOTIVE, INC., NEXTGEAR CAPITAL, INC. F/K/A DEALER SERVICES CORPORATION, successor by merger with Manheim Automotive Financial Services, Inc., and JOHN WICK, <br><br>  Defendants. | Case No. 1:14-cv-01589-TWP-DKL |

**DEFENDANTS' SUR-REPLY IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Plaintiffs seek to dramatically re-define their proposed class for a third time in their reply brief. Even with a new class definition and reliance on new evidence, however, Plaintiffs still fall short of the requirements of Rule 23.

Plaintiffs initially pleaded that they sought to represent a class of "[a]ll residents, individuals, and companies in the United States of America that contract with NextGear/DSC as a customer dealer and that were charged interest (and fees) on money not lent, at any time, continuing through the date of the final disposition of this action." (Am. Compl. [Doc. 117] ¶ 80.) Because this was plainly a fail-safe class without any time limitation, Plaintiffs amended their proposed class in their certification motion to include "[a]ll used car dealers in the United

States of America that were parties to a Floorplan Agreement with NextGear effective during the time period of January 2005 through July 2013." (Br. [Doc. 154] at 7.)

Plaintiffs have long known that NextGear was created in 2013 following the merger of two competing companies with only partially-overlapping customer bases. (Am. Compl. ¶ 2.) Indeed, Plaintiffs' discovery requests sought extensive information from both predecessor companies, Manheim Automotive Financial Services, Inc. ("MAFS") and Dealer Services Corporation ("DSC"). (*See, e.g.*, Pls.' Third Set of Requests for Production to NextGear [Ex. A], Definition 11.) Plaintiffs even sought to depose a witness from MAFS until two days after they filed their reply brief.

After conducting months of discovery on both MAFS and DSC, and after arguing for thirty-one pages in their opening brief that the proposed class—including MAFS dealers—should be certified, Plaintiffs now in their reply brief have abandoned their class definition. They now "clarify" their prior pleadings by proposing, for the first time, a new class limited to those dealers who did business with only one of NextGear's predecessor companies, DSC. (Reply [Doc. 165] at 2.) But Plaintiffs' new, third iteration of their class definition does nothing to cure the problems discussed throughout NextGear's opposition brief. Certification should therefore be denied.

## ARGUMENT AND CITATION OF AUTHORITY

### I. Individual Issues Predominate With Respect to Plaintiffs' Contract Claim, Even Under the New Class Definition.

Plaintiffs' attempt to manufacture common questions related to their contract claim fails because the questions raised do not "generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citation omitted). To the contrary, proving liability and damages will call for a determination of individual issues as to

2

each putative class member. Because the Court must make numerous separate findings to determine whether an individual dealer has valid contract claims against NextGear, common questions do not predominate and the newly-defined class (like the one proposed in the motion for certification) should not be certified.

The first question the Court will have to address for each putative class member is which contract governs that dealer's relationship with NextGear. Plaintiffs are simply wrong that all dealers entered into "substantively identical form contracts" with NextGear. NextGear used at least three different operative contracts over the course of the class period. Each of these contracts involves different terms and varying definitions. For example, one version of a contract provided in a separate Term Sheet that interest "shall accrue on all Advances," another provided in the Note itself that interest "shall accrue on all Dealer Liabilities," and the most recent provides that interest will run from the "Floorplan Date," which will often be the date of sale. (10/12/2007 DSC Contract Documentation [Ex. B], Term Sheet, NG_004914; 6/21/2011 DSC Contract Documentation [Ex. C] § 3, NG_005037; NextGear 2013 Note [Doc. 160-3] § 3(a) and App. A, NG_005148, NG_005161.) DSC also changed the way it incorporated rates and fees into its contracts in 2008. (*See* 6/21/2011 DSC Contract Documentation [Ex. C] § 5(m), NG_005040.)

In addition, dealers could in some cases negotiate terms in the contract, and NextGear's account executives could (and did) offer different options of terms and interest rates. (Deposition of Stuart LaBauve [Ex. D] ("LaBauve Dep.") 103:17-104:6; Declaration of Adam Galema [Doc. 160-2] ("Galema Decl.") ¶ 11.) Each dealer had (and has) a unique term sheet or advance schedule identifying the terms and interest rates applicable to that dealer. All of these substantive differences in the applicable contractual terms will affect the claims of each potential

3

class member.  And since the proposed class includes hundreds of dealers operating under multiple versions of these different contracts, the question of which contract governs must be answered on an individual basis.

The second question the Court must answer is whether a given putative class member may proceed with class litigation.  The most recent version of NextGear's Note contains an arbitration and class waiver agreement.  (NextGear 2013 Note [Doc. 160-3] § 22, NG_005157 to -58.)  Thus, some class members are precluded from participating in class litigation, which the Court will again have to determine on an individual basis.[1]

Another series of questions the Court will have to address has to do with the facts supporting liability: when a vehicle was floor planned, at which auction, when interest began to accrue, and when funds were transferred to the auction.  Even if, as Plaintiffs claim, the various contracts could all be interpreted in a uniform way (which is false), whether NextGear is liable under Plaintiffs' theory will depend in part on the arrangement NextGear had with each auction.  The evidence is undisputed that those arrangements varied.  (LaBauve Dep. 114:12-116:2; Galema Decl. ¶¶ 15-16.)  But even under their strained interpretation of the contracts, Plaintiffs must agree there is no liability in cases where payment was made to an auction on the floor plan date.  These questions are not red herrings; rather, they speak to the heart of the certification

---

[1] Unlike the defendant in *Garcia v. JCPenney Corp.*, No. 12-CV-3687, 2016 WL 878203, at *7 (N.D. Ill. Mar. 8, 2016), defendants do not assert that the named Plaintiffs' claims are subject to arbitration.  Nor are defendants at this stage of the proceedings arguing that dealers who signed the NextGear Note must arbitrate their claims (though defendants reserve the right to make such an argument at the appropriate time).  Rather, the fact that the Court will have to rule on potentially thousands of individual motions to compel arbitration after certifying a class weighs against a finding that certification is appropriate.  Plaintiffs provide no insight into how the Court will manage motions to compel arbitration as to each individual dealer, when those dealers are not currently aware of or active in this suit and must preserve their rights by contesting arbitration or proceeding with an individual arbitration pursuant to the terms of the contract.

4

issue and demonstrate that the Plaintiffs' proposed class is not "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).[2]

Another set of questions the Court must answer on an individual basis is whether various affirmative defenses bar putative class members' claims. For example, the limitations period for a breach of contract claim involving the payment of money is six years, shorter than the proposed eight-year class period. *See* Ind. Code § 34-11-2-9; *Heritage Acceptance Corp. v. Romine*, 6 N.E.3d 460, 462-63 (Ind. Ct. App. 2014); *Landers v. Wabash Ctr., Inc.*, 983 N.E.2d 1169, 1171–72 (Ind. Ct. App. 2013) (unjust enrichment). Therefore, among the thousands of dealers and tens of thousands of transactions, there will undoubtedly be many potential class members whose claims are wholly or partially barred by the statute of limitations.

In addition, the Court will be called upon to analyze other defenses on an individual basis. For example, the three most common versions of the contracts used by DSC and NextGear provide that dealers are deemed to accept account statements (which include interest and fees due) not objected to following receipt. (10/12/2007 DSC Contract Documentation [Ex. B] § 3(h), NG_004909; 6/21/2011 DSC Contract Documentation [Ex. C] § 4(k), NG_005038; NextGear 2013 Note [Doc. 160-3] § 5(m), NG_005152.) Access to, use, review, and acceptance of those statements must be analyzed as to each dealer to determine whether a particular dealer has waived its claims.

---

[2] NextGear also disagrees with Plaintiffs' interpretation of the relevant contracts. Plaintiffs acknowledge that the most common version of the current NextGear contract provides that NextGear may charge interest from the "Floorplan Date." (Reply at 4-5 n.9.) The DSC contracts clearly provided that interest may be charged once NextGear incurred an obligation to pay—which happens, in most cases, when a dealer buys a vehicle at auction. (*See* Motion to Dismiss and Reply in Support [Docs. 126, 127, 136].) Because this issue is more appropriately addressed in dispositive motions on the merits, NextGear will not belabor the point here.

In a similar vein, a number of dealers in the proposed class, including Plaintiffs Red Barn and Mattingly, were well aware of how NextGear calculated interest during their borrowing relationships, and they continued to accept and use NextGear's money thereafter. (Rule 30(b)(6) Deposition of Red Barn Motors, Inc. [Ex. E] ("Red Barn Dep.") 183:5-184:23; Rule 30(b)(6) Deposition of Mattingly Auto Sales, Inc. [Ex. F] ("Mattingly Dep.") 75:6-76:18, 155:6-9.) Would-be class members who were aware of the interest charges during their relationship with NextGear will face waiver, ratification, course of conduct, and mitigation of damages defenses based on facts unique to each dealer. Likewise, a court will need to consider NextGear's defenses as to dealers against whom NextGear holds judgments, or the hundreds of dealers who settled their accounts with NextGear and released their claims through individually-negotiated settlement agreements. (Galema Decl. ¶¶ 26-27; *see also* Opp'n Br. [Doc. 160] at 23, 26-27.)

All of these individual issues predominate over any common questions in this case. Class certification is therefore inappropriate, notwithstanding the smaller class now proposed.

## II. Individual Issues Predominate With Respect to Plaintiffs' Non-Contract Claims.

The RICO and tort claims asserted by Plaintiffs involve even fewer common questions than the contract claims. Plaintiffs say little about their non-contract claims, but concede that those claims raise individual issues. (Reply at 15.) In fact, individual issues predominate.

Representations to each dealer about its floor plan agreement and interest charges were made on an individual basis, if at all, by one of more than a hundred account executives employed by NextGear during the putative class period; there was no script provided to the account executives. (LaBauve Dep. 116:3-16, 120:10-21; Galema Decl. ¶ 20.) Whether a particular dealer reviewed information available to it through account statements, receivable detail reports, and the like will be a question with different answers for each dealer. (*See, e.g.*, Red Barn Dep. 76:2-77:6 ("daily" review of statements); Mattingly Dep. 50:22-52:6 (continuous

6

access to balances and charges through website).)  Whether NextGear reported a dealer to Auction Insurance Agency when the dealer failed to pay, and whether Auction Insurance Agency added the dealer to the KO Book, depended on the dealer's unique circumstances.  (*See* Galema Decl. ¶ 38 (most NextGear dealers not in KO Book).)  The Court will also need to analyze the statute of limitations transaction by transaction, as all of the relevant limitations periods for the tort claims are shorter than the proposed class period.  *Agency Holding Corp. v. Malley-Duff & Assocs.*, 483 U.S. 143, 156 (1987) (four years for RICO); *Gas Tech. Inst. v. Rehmat*, 524 F. Supp. 2d 1058, 1069 (N.D. Ill. 2007) (four years for conspiracy to violate RICO); *Wells v. Stone City Bank*, 691 N.E.2d 1246, 1250 (Ind. Ct. App. 1998) (six years for constructive fraud); *GL Indus. of Mich., Inc. v. Forstmann-Little*, 800 F. Supp. 695, 700 (S.D. Ind. 1991) (two years for tortious interference).

Plaintiffs' allegation of a common scheme to defraud conflates two issues—(i) when NextGear began to charge interest, which all of NextGear's dealers knew or should have known, and (ii) when NextGear transferred funds to an auction, which, as it turns out, at least two named Plaintiffs also knew.  There is no evidence that any misrepresentations were made to Plaintiffs or any other dealers regarding interest.  (Red Barn Dep. 79:3-81:17, 182:20-184:23, 225:15-20; Mattingly Dep. 59:8-10, 75:6-76:18, 155:6-9.)  To the contrary, if NextGear's account executives spoke about interest at all, they stated that interest ran from the floor plan date.  (LaBauve Dep. 117:15-23.)

Plaintiffs claim that "when NextGear actually loaned money to Plaintiffs" was important to them.  (Reply at 15.)  But in almost all cases, the loan was made when the vehicle was purchased—which was neither omitted nor concealed.  In fact, when Plaintiffs asked when interest accrued, they were told the truth.  Red Barn's corporate representative specifically

testified: "And [the account executive] said, I'll have to get back with you. And he got back with me and basically said, that's the way that it is, you know. They -- they charge interest from the date of the sale versus the date of the actual loan." (Red Barn Dep. 183:16-184:1; *see also* Red Barn Dep. 184:2-23 (Red Barn continued to do business with NextGear for nine months after this conversation).) Plaintiffs admitted they had access to information about when money was debited from their accounts. (Opp'n Br. at 7, 9.) The named Plaintiffs were fully informed of the practices they now complain about, yet they elected to continue doing business with NextGear. (*Id.*) What representations were made to other putative class members, what they understood or expected, what they knew, and when they knew it will require an individualized analysis for every different dealer in the proposed class.

Plaintiffs' tortious interference allegations also require individual analysis. Much of the discussion of the KO Book in Plaintiffs' reply brief misconstrues the facts and the evidence. Defendants have no control over what Auction Insurance Agency, an independent third party, does with information NextGear or other entities provide about dealers. (Galema Decl. ¶¶ 35-36; Deposition of Adam Galema [Ex. G] ("Galema Dep.") 46:24-47:8 (general knowledge of relationship between NextGear and Auction Insurance Agency).) Not all auctions subscribe to the KO Book, and even those that do may permit dealers listed in the KO Book to do business on a cash basis at their auctions. (Red Barn Dep. 20:23-21:12, 57:13-25; Mattingly Dep. 24:7-25, 52:14-24, 28:8-10, 28:24-29:4; LaBauve Dep. 77:4-8, 82:23-83:3.) There is no evidence that NextGear reported Platinum to Auction Insurance Agency. With respect to Red Barn, NextGear merely reported the amount owed to it and stated, "Dealer is not responsive to collection attempts." (Galema Decl. ¶ 42 & Ex. C [Doc. 160-5], at NG_009411.) With respect to Mattingly, the evidence indicates that another entity reported Mattingly to Auction Insurance

Agency. (Galema Decl. ¶ 42 & Ex. E [Doc. 160-7].)[3] Even if NextGear had a practice of reporting dealers to the KO Book, which is not supported by the evidence in the record, the Court will have to address on a dealer-by-dealer basis whether NextGear was privileged to share with its business partners information about a dealer's default and other risks.[4]

Even among the three named Plaintiffs, it appears NextGear's practices varied with respect to representations regarding interest and the KO Book. And there is simply no record evidence of any communications with Auction Insurance Agency by the non-NextGear defendants. (*Cf.* Opp'n Br. at 29.) Individual issues predominate as to Plaintiffs' tort claims, and class certification is therefore inappropriate as to those claims.

## III.     Plaintiffs Are Still Inadequate and Atypical Representatives of the New Class.

Despite having narrowed their potential class, the named Plaintiffs are still neither typical nor adequate representatives. Both their claims and their defenses differ from those of the putative class.

Plaintiffs' claims relating to interest charges are atypical insofar as the named Plaintiffs did not even pay those charges on a number of vehicles. As discussed more fully in NextGear's opposition brief, Plaintiffs first attempted to defraud NextGear and ultimately defaulted on their debts to NextGear. Criminal and fraudulent acts are not "trivial," "insubstantial," or "petty," as Plaintiffs claim. Plaintiffs' conduct gives rise to a number of defenses, from unclean hands to

---

[3] Plaintiffs misrepresent the email attached as Exhibit H to their Reply [Doc. 165-8]. Far from being a "submission of dealer information to the K.O. Book," it is plainly an internal email notifying NextGear personnel of dealers added to the KO Book by Auction Insurance Agency in the past week. The email specifically notes that Mattingly was *not* "submitted by DSC."

[4] It is hard to imagine that, at least in some cases, NextGear would not have been justified in sharing with Auction Insurance Agency the simple fact that a dealer had failed to pay what was borrowed and was in default. Such justification negates a tortious interference claim as a matter of law. *See, e.g.*, *Bragg v. City of Muncie*, 930 N.E.2d 1144, 1148 (Ind. Ct. App. 2010) ("a legitimate reason for the defendant's actions provides the necessary justification to avoid liability").

waiver to anticipatory breach to *res judicata* to damage offsets.[5]  Further, Plaintiffs' claims and NextGear's defenses to those claims are based in part on oral representations that varied from dealer to dealer and account executive to account executive; Plaintiffs' experiences would not have been typical of the entire class.

Plaintiffs themselves admit they are not typical of any tortious interference class. Plaintiffs acknowledge that, at most, only "certain dealers" were reported to Auction Insurance Agency by NextGear.  (Reply at 16; *see also* Galema Decl. ¶ 38.)  Indeed, thousands of dealers who are part of the purported class timely paid their debts and would never have had reason to be reported to the Auction Insurance Agency or included in the KO Book.[6]  Plaintiffs do not even contend, much less establish, that NextGear tortiously interfered with the entire class.  As such, Plaintiffs' purported injuries are atypical.

Plaintiffs seek to make light of their criminal and fraudulent conduct by stating "they do not 'have halos over their heads,'" but claim they nevertheless can adequately represent the class. (Reply at 13.)  That Plaintiffs spend considerable time in their reply brief arguing the merits of the defenses against them (*see* Reply at 9-13) demonstrates that they will be distracted by defenses unique to them.  No matter how many times Plaintiffs revise their class definition, they cannot make themselves typical of the class or adequate representatives of the class.  Class certification should therefore be denied.

---

[5] NextGear has not yet answered and asserted its affirmative defenses, as it presently has a motion to dismiss pending [Doc. 126].

[6] *Compare* Reply at 9 n.16 (speculating that 4,000-5,000 dealers may have dealt with DSC during proposed class period without later signing arbitration agreement), *with* Reply at 11 n.17 (identifying only 541 DSC collection suits filed prior to end of 2012).  Plaintiffs acknowledge that only a fraction of the dealers in the proposed class had default issues similar to their own.

**IV.     The New Class Definition Includes Dealers Who Were Never Harmed.**

Plaintiffs' newly-proposed class, like the one it originally moved to certify, is overbroad insofar as it would include numerous dealers who were never harmed by NextGear's alleged wrongdoing. *Panwar v. Access Therapies, Inc.*, No. 1:12-cv-00619-TWP-TAB, 2015 WL 329013, at *3 (S.D. Ind. Jan. 22, 2015). For example, Plaintiffs' proposed class still includes dealers that signed a floor plan agreement with NextGear but never borrowed any money, those that never used their floor plan to purchase a vehicle from an auction during the proposed period, those that never defaulted to NextGear and were never placed in the KO Book, and those that only bought at auctions that NextGear paid immediately. (Galema Decl. ¶¶ 22-23, 38, 15-16.)

More fundamentally, the entire legal theory upon which Plaintiffs' contract claims are premised resulted in no harm to the class. By virtue of NextGear's credit, dealers were able to take possession of a car on the date of an auction and immediately offer that car for sale, just as a consumer can obtain merchandise by swiping his or her credit card at a store. Plaintiffs testified that the purpose of the floor plan was to buy vehicle inventory. (Mattingly Dep. 39:16-21, 52:10-16, 91:8-10; Red Barn Dep. 213:20-214:3.) They could not generally take possession of that inventory until they put it on their floor plan or provided some other form of payment. (Mattingly Dep. 38:10-23.) Just as a consumer using her credit card at a store has no reason to care exactly when the credit card company pays the store, the date on which NextGear actually transferred funds to the auctions is an issue between NextGear and the auctions that has no effect whatsoever on dealers. The proposed class has suffered no harm on the central contract claim.

Plaintiffs respond by arguing that dealers did not get the benefit of their bargain because they supposedly entered into a lending relationship with NextGear to obtain "financing" rather than vehicle inventory for resale. But Plaintiffs got both. (*Compare* Reply at 18, *with* Red Barn Dep. 213:25-214:3 ("Q. Okay. And did that credit allow you to acquire more inventory and

11

make more profit? A. Yes. It allowed us to generate more inventory.").) This is simply a distinction without a difference—and one that beggars belief. Financing is the act or process of raising or providing funds or furnishing credit, which NextGear undisputedly did. *Hyche v. State*, 934 N.E.2d 1176, 1179 (Ind. Ct. App. 2010) (citing Black's Law Dictionary 663; The American Heritage Dictionary 504). The purported class, no matter its composition, will suffer from the fatal defect that it cannot demonstrate harm on the contract claim.

Likewise, on the tortious interference claims, most of the putative class members—even in the newly-defined class—are not in the KO Book. The majority of those not subject to arbitration ended their relationships with NextGear and/or wound up their car businesses voluntarily without experiencing any issues with default, reporting to Auction Insurance Agency, or listing in the KO Book. (Galema Decl. ¶¶ 24, 38.) Still others have satisfactory arrangements to acquire inventory, at auction and otherwise, without regard to their KO Book status. (*Cf., e.g.*, Red Barn Dep. 20:23-21:12; Mattingly Dep. 24:7-25, 52:14-24, 28:8-10, 28:24-29:4.)

Plaintiffs' proposed class includes all dealers who signed contracts with NextGear over an eight-year period, without regard to the varying terms of their business relationships with NextGear, how those relationships ended (if at all), or whether they suffered the injuries alleged by Plaintiffs. Such a class should not be certified. *See, e.g.*, *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (denying class certification in part because proposed class "could include millions who were not deceived and thus have no grievance").

## V. A Class Action Will Be Unmanageable.

Plaintiffs' reply raises numerous manageability issues, many of which are discussed above. These issues demonstrate that a class action is not a superior way to handle Plaintiffs' claims. That individual plaintiffs have the incentive and ability to bring an action on their own behalf is evident based on the assertion in Plaintiffs' own class certification brief that each

putative class member suffered damages exceeding "tens of thousands of dollars each." (Br. at 28-29.) Plaintiffs now seek to distance themselves from this assertion by claiming that most putative class members are small businesses. (Reply at 18-19.) But Plaintiffs provide no evidence about the number of small dealers in the putative class. The average credit line for NextGear dealers is $300,000 (Galema Dep. 39:15-18), larger than any of the named Plaintiffs' lines,[7] suggesting that the average class member would have more incentive than the named Plaintiffs to bring its own claims (at least if those claims were meritorious).

It also remains unclear how the Court will determine the amount of interest and fees allegedly wrongfully collected from each dealer. Defendants produced the transaction reports on which Plaintiffs now rely (Reply at 5, 7, 19-20) on August 31, 2016, and yet Plaintiffs have repeatedly since claimed that they cannot determine the amount of their damages. (Amended Responses to Interrogatory No. 14 by Red Barn, Mattingly, and Platinum [Ex. H]; Red Barn Dep. 191:6-13; Mattingly Dep. 164:2-8.) Plaintiffs' inability to calculate their own damages from the records they claim contain all the information needed demonstrates the difficulty the Court would face in determining each putative class member's damages. *Cf. Espejo v. Santander Consumer USA, Inc.*, No. 11 C 8987, 2016 WL 6037625, at *8 (N.D. Ill. Oct. 14, 2016) (plaintiffs cannot rely on defendants' records for class certification where they previously challenged same records). In short, Plaintiffs insist this Court can do what they themselves cannot in calculating damages.[8]

---

[7] Red Barn's credit line was $200,000 [Doc. 160-15, at NG_003561], Mattingly's credit line was $150,000 [Doc. 160-20, at MA 000034], and Platinum's credit line was $35,000 [Doc. 160-8, at NG_003512].

[8] Further, the transaction reports on which Plaintiffs rely were created, at significant time and expense, to respond to discovery in this litigation. (Galema Dep. 25:10-26:6.) Preparing such reports for thousands of putative class members would be time-consuming, would be a cost plaintiffs should bear, and would not even address the extent of any non-contractual damages.

In addition, Plaintiffs seem to suggest that the Court should certify a class, and then NextGear should file thousands of individual motions to compel arbitration as to those dealers subject to arbitration. (Reply at 8-9.) Presumably NextGear would also need to file thousands of motions to dismiss or motions for summary judgment as to those dealers, like Plaintiffs, subject to individual defenses. But addressing those individual issues on a case-by-case basis is sure to place a heavy burden on the Court's resources—not to mention on putative class members who would find themselves in time-consuming legal proceedings that they did not initiate but that could deprive them of their individual rights.

A class action will waste resources by bringing into this case dealers with individual issues who may not have been harmed. Determining who has been harmed, to whom NextGear is liable, and what damages they suffered will be a complicated task and one better suited for individual lawsuits rather than a class action.

## CONCLUSION

Plaintiffs' revised class definition and new, often misconstrued evidence cannot salvage their class claims. Because Plaintiffs still have not met their burden to show that the Rule 23 requirements are met, this Court should deny the motion for class certification.

Respectfully submitted, this 5th day of December, 2016.

        *s/ Tracey K. Ledbetter*
David J. Jurkiewicz (18018-53)
Paul D. Vink (23785-32)
BOSE McKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN  46204
(317) 684-5000
(317) 684-5173 fax
djurkiewicz@boselaw.com
pvink@boselaw.com

        Jason S. McCarter (*pro hac vice*)
        Tracey K. Ledbetter (*pro hac vice*)
        SUTHERLAND ASBILL & BRENNAN LLP
        999 Peachtree Street, NE, Suite 2300
        Atlanta, GA 30309-3996
        (404) 853-8000
        (404) 853-8806 fax
        jason.mccarter@sutherland.com
        tracey.ledbetter@sutherland.com

        *Attorneys for Defendants Cox Enterprises, Inc., Cox Automotive, Inc., NextGear Capital, Inc. f/k/a Dealer Services Corporation, and John Wick*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been served upon the following counsel of record via the Court's electronic service notification system, this 5th day of December, 2016:

| | |
|---|---|
| Ryan D. Adams | Gladstone N. Jones, III |
| James M. Garner | Lynn E. Swanson |
| Matthew M. Coman | Kerry A. Murphy |
| Jacob A. Airey | Catherine E. Lasky |
| SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C. | JONES, SWANSON, HUDDELL & GARRISON, LLC |
| radams@shergarner.com | gjones@jonesswanson.com |
| jgarner@shergarner.com | lswanson@jonesswanson.com |
| mcoman@shergarner.com | greed@jonesswanson.com |
| jairey@shergarner.com | cmason@jonesswanson.com |
| ksimcox@shergarner.com | sjoshua@jonesswanson.com |
| akeller@shergarner.com | kmurphy@jonesswanson.com |
| jstockstill@shergarner.com | lreeves@jonesswanson.com |
| jchocheles@shergarner.com | klasky@jonesswanson.com |
| priggs@shergarner.com | |
| | |
| Cassie E. Felder | Kathleen A. DeLaney |
| LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD | DELANEY & DELANEY LLC |
| cfelder@lawla.com | Kathleen@delaneylaw.net |
| kfisher@lawla.com | |
| | |
| Lisa Brener | |
| BRENER LAW FIRM, LLC | |
| lbrener@brenerlawfirm.com | |
| tkeller@brenerlawfirm.com | |

                                                *s/ Tracey K. Ledbetter*
                                                 Tracey K. Ledbetter