IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| RED BARN MOTORS, INC., PLATINUM | ) | |
| MOTORS, INC., and MATTINGLY AUTO SALES, | ) | |
| INC., individually and on behalf of other | ) | |
| members of the general public similarly | ) | |
| situated, | ) | |
| | ) | Case No. 1:14-cv-01589-TWP-DKL |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COX ENTERPRISES, INC., COX | ) | |
| AUTOMOTIVE, INC., NEXTGEAR CAPITAL, | ) | |
| INC. F/K/A DEALER SERVICES | ) | |
| CORPORATION, successor by merger with | ) | |
| Manheim Automotive Financial Services, Inc., | ) | |
| and JOHN WICK, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

EXPERT REPORT OF
DAVID P. HOFFMAN

FEBRUARY 10, 2017

**EXHIBIT A**

Red Barn Motors, Inc., et al. vs. Cox Enterprises, Inc., et al.
Expert Report of David P. Hoffman

Table of Contents

I.      Introduction and Professional Qualifications…………………………..……..2

II.     Background and Scope of Engagement……………………………………….……3

III.    Summary of Expert Opinions……………………………………………….……...5

IV.     Bases for Expert Opinions……………………………………………………….……6

V.      Exhibits

        1.  David P. Hoffman CV

        2.  Data and Information Considered

        3.  Red Barn Motors, Inc. – Balance Under Floor Plan Agreement

        4.  Mattingly Auto Sales, Inc. – Balance Due on Judgment

        5.  Platinum Motors, Inc. – Balance Due on Judgment

Red Barn Motors, Inc., et al. vs. Cox Enterprises, Inc., et al.
Expert Report of David P. Hoffman

I.        Introduction and Professional Qualifications

I have been retained by Eversheds Sutherland (US) LLP, counsel for Cox Enterprises, Inc., Cox Automotive, Inc., NextGear Capital, Inc., and John Wick to provide expert opinions about damages in the matter of Red Barn Motors, Inc., et al. vs. Cox Enterprises, Inc., et al.

I am a Managing Director and shareholder of Acuitas, Inc., an accounting firm that provides valuation and forensic accounting services.  Prior to joining Acuitas in January 2013 I spent 23 years with the international accounting firms of PricewaterhouseCoopers and Ernst & Young. The last ten years I was a partner with Ernst & Young's Assurance and Advisory Services practice where I specialized in providing forensic accounting services.  According to the American Institute of Certified Public Accountants ("AICPA"), "Forensic accounting services generally involve the application of specialized knowledge and investigative skills possessed by CPAs to collect, analyze, and evaluate evidential matter and to interpret and communicate findings in the courtroom, boardroom, or other legal or administrative venue".[1]

I have extensive experience in the field of calculating and evaluating damages claims in a variety of situations including damages suffered by businesses and individuals.  I am a Certified Public Accountant ("CPA") licensed in Georgia, a Certified Fraud Examiner ("CFE") and Certified in Financial Forensics ("CFF") by the AICPA.  On numerous occasions I have provided expert testimony in Federal courts, state courts and other dispute resolution settings, including arbitrations.  I have also served as a Trier of fact in arbitration proceedings.  I am a co-editor and chapter author of the Fifth Edition of the Litigation Services Handbook, a long recognized leading text that provides guidance to CPAs, economists and other professionals who are called upon to evaluate damages and to provide expert testimony about those damages before a Trier of fact.

---

[1] AICPA Practice Aid 10-1, *Serving as an Expert Witness or Consultant,* page 6.

Red Barn Motors, Inc., et al. vs. Cox Enterprises, Inc., et al.
Expert Report of David P. Hoffman

I have significant experience with the automobile and truck dealership industries, including conducting forensic accounting investigations and serving as an expert witness related to financial, accounting and damages issues impacting dealerships operating in numerous markets and of various sizes selling diverse brands. I have also provided consulting services not related to litigation matters where I evaluated issues including dealership operations, internal accounting controls, finance and insurance departments and inventory management. My clients in this industry have included lenders, finance companies, dealerships and the United States government. In addition to engagements related to dealerships, I have experience with clients that manufacture passenger vehicles and heavy duty trucks.

My curriculum vitae, including expert testimony during the last four years and publications authored in the last ten years, is attached as Exhibit 1.

During the course of my work in this matter, I have been assisted by other Acuitas employees who have conducted their work under my direction and supervision. Acuitas is being compensated for our time based on hourly rates of $575 for myself and ranging from $175 to $475 for other team members. Professional fees charged by Acuitas are not contingent on the outcome of this matter. In reaching my opinions I, and the team that assisted me, have considered the materials listed at Exhibit 2. The opinions expressed herein are based on information available to me as of this date. Should new information become available, I will consider that information and, if necessary, update my opinions accordingly.

II.     Background and Scope of Engagement

Red Barn Motors, Inc. ("Red Barn"), Platinum Motors, Inc. ("Platinum"), and Mattingly Auto Sales, Inc. ("Mattingly") filed suit in the United States District Court for the Southern District of Indiana, Indianapolis Division against Cox Enterprises, Inc. ("Cox Enterprises"), Cox Automotive, Inc. ("Cox Auto"), NextGear Capital, Inc., f/k/a Dealer Services Corporation ("NextGear"), and John Wick ("Wick"). Throughout this report I may refer to Red Barn,

3

Red Barn Motors, Inc., et al. vs. Cox Enterprises, Inc., et al.
Expert Report of David P. Hoffman

Platinum and Mattingly collectively as "Plaintiffs".  If appropriate, I may also refer to Cox Enterprises, Cox Auto, NextGear and Wick collectively as "Defendants".

I understand that each of the Plaintiffs are individual entities that operate used car dealerships in Louisiana, Virginia and Kentucky, respectively.  At various times during the period relevant to the allegations in this case, each Plaintiff entered into a revolving line of credit agreement, commonly referred to in the auto industry as floorplan agreements, with NextGear.  Pursuant to the terms of the floorplan agreements, Plaintiffs used funds provided by NextGear to finance the acquisition of inventory from automotive auctions, among other sources.  As is common in the industry, Plaintiffs were required to repay NextGear once a specifically financed vehicle had been sold to a consumer or upon maturity.  I also understand that Red Barn, Platinum and Mattingly were each unable to repay amounts advanced and ultimately defaulted on their respective agreements with NextGear.

In general terms, each of the Plaintiffs alleges that one or more Defendants improperly calculated and charged interest related to advances made under the floorplan agreements and that one or more of the Defendants interfered with the Plaintiffs business operations.  Ultimately, the Plaintiffs allege that the Defendants' interference caused the Plaintiffs to be "blacklisted", which precluded them from participating in certain automotive auctions.  This allegedly prevented them from having access to new sources of inventory and allegedly caused them to incur economic damages.

Based on my review of the pleadings, the Plaintiffs allege they have incurred damages because of improperly calculated interest, alleged loss of past, present and future earnings, loss of goodwill, devaluation of their businesses and loss of customers.  The Plaintiffs are also alleging damages related to attorney fees, costs of litigation and other undefined consequential damages. I understand that the deadline for the submission of expert reports by the Plaintiffs has passed and that neither Red Barn, Platinum or Mattingly designated an expert witness to opine on the topic

4

Red Barn Motors, Inc., et al. vs. Cox Enterprises, Inc., et al.
Expert Report of David P. Hoffman

of damages other than the amount of interest associated with the allegations against NextGear as set-forth in the Plaintiffs' <u>Verified Amended Complaint</u>.

Counsel for the Defendants has retained me to evaluate the Plaintiffs' damages claims and to provide expert opinions related to issues concerning the Plaintiffs' damages claims (apart from those related to the alleged charging of improper interest by NextGear to the named Plaintiffs).[2] I have also been retained to calculate the amount owed by each Plaintiff to Nextgear for the nonpayment of amounts due under their individual lending arrangements with NextGear.

III.     Summary of Expert Opinions

A.  In my opinion, the types of damages claimed by the Plaintiffs, as described in the pleadings, should be calculated as lost profits.  However, it is my understanding that none of the Plaintiffs have provided a calculation of lost profits, nor have they identified an expert who was retained to make a calculation of alleged lost profits.

B.  I have reviewed the accounting and financial records produced and the deposition testimony of the Plaintiffs.  In my opinion, the evidence does not support that the Plaintiffs have suffered lost profits and, based on the information available, it is not possible to make a reliable calculation of alleged lost profits.

C.  I have calculated the amounts currently due by the Plaintiffs pursuant to the applicable judgment(s) or floorplan agreements involving each through the date of the expected trial in this matter.  To the extent they are relevant to a counterclaim, a setoff defense, or otherwise, the balances due are as follows:

---

[2] Plaintiffs have filed this suit on behalf of themselves and a putative class of NextGear customers that may also allege the same claims stated in the <u>Verified Amended Complaint</u>.  Should a class of plaintiffs be certified by the Court, the scope of my engagement may be modified to address claims of economic damages raised by any new class members including the component of damages related to interest allegedly charged by NextGear on floorplan agreements with any and all class members.  Should that occur, I will consider relevant new information that becomes available and, if necessary, amend or supplement my expert report as permitted by the Court.

Red Barn Motors, Inc., et al. vs. Cox Enterprises, Inc., et al.
Expert Report of David P. Hoffman

    i.    Red Barn - $184,330

    ii.   Mattingly - $81,063

   iii.   Platinum - $42,058

IV.    Bases for Expert Opinions

    A.  <u>Damages Claimed</u>

The Plaintiffs allege at paragraph 126 of the <u>Verified Amended Complaint</u> that they:

> [h]ave sustained damages in the following non-exclusive particulars:
>
> a)  loss of earnings (past, present, and future);
>
> b)  business interruption;
>
> c)  property loss (to include money);
>
> d)  loss of customers;
>
> e)  loss of goodwill;
>
> f)  devaluation of their businesses;
>
> g)  other pecuniary losses including, but not limited to, attorney fees, costs, and interest; and
>
> h)  other consequential damages as may be ongoing, as well as any other equitable relief as this Court deems just and proper.[3]

The concept of awarding damages to a plaintiff, when the defendant is found to be liable for the alleged tortious acts, is typically to return the plaintiff to the same economic condition it would have enjoyed but for the alleged bad act of the defendant. In my experience, damages can be measured as either lost profits suffered or the lost value of a business, but not both. Allowing both alleged types of damages

---

[3] Verified Amended Complaint, paragraph 126, page 31.

6

Red Barn Motors, Inc., et al. vs. Cox Enterprises, Inc., et al.
Expert Report of David P. Hoffman

could result in a duplication or double recovery of damages.[4]  Guidance provided by the American Institute of Certified Public Accountants ("AICPA") explains that "Lost profits are typically claimed as an element of economic damages in a litigation setting.  Damage analyses are prepared to provide an estimate of the detriment suffered by the plaintiff as a result of a wrongful act of the defendant".[5]

Lost profits are typically calculated as the difference between what a business would have earned during the loss period ("but for" earnings) less what it actually did earn during the loss period ("as is" earnings).[6]  In my experience, and in my opinion, categories a, b, c, and d of the damages claimed by the Plaintiffs are commonly measured as lost profits.

On the other hand, if the plaintiff's business was completely destroyed, the lost value of the business typically serves as the measure of damages.  Lost value is calculated using the same theoretical premise as lost profits except for the fact that the loss is of a permanent nature.  It is calculated as the present value of what the business would have earned ("but for") less what the business can earn now ("as is").  In the case of a destroyed business, the "as is" amount is zero because the business has been destroyed.[7]  This is clearly not the situation in this case because the Plaintiffs' businesses remain active.[8]  In my experience, and in my opinion, categories e and f claimed by the Plaintiffs would only apply in the case of a business that is no longer in existence.

---

[4] Litigation Services Handbook, The Role of the Financial Expert, John Wiley & Sons, Inc., Fifth Edition 2013, Chapter 4, page 17.
[5] AICPA Practice Aid 06-4, *Calculating Lost Profits*, page 3.
[6] Litigation Services Handbook, The Role of the Financial Expert, John Wiley & Sons, Inc., Fifth Edition 2013, Chapter 4, page 8.
[7] Ibid, Chapter 10, page 2.
[8] I understand that Platinum ceased operations in 2014.  However, it remained in operations for approximately 3 years after the last transaction financed by NextGear.  Further, as discussed later, Platinum has produced no financial records.

7

Red Barn Motors, Inc., et al. vs. Cox Enterprises, Inc., et al.
Expert Report of David P. Hoffman

It is my understanding that the deadline for the Plaintiffs to provide an expert report on the topic of damages has passed and that no such expert report opining on lost profits or lost business value damages has been offered.  Further, the Plaintiffs have offered no specific or reliable information via responses to interrogatories regarding alleged damages.  Consequently, the Plaintiffs have failed to demonstrate any calculations of lost profits.

B.  Proving Lost Profits

Based on my experience in calculating lost profits, it is commonly accepted that the Plaintiffs must prove that the alleged damages are a result of the allegations raised against the Defendants.  As is also discussed in the AICPA guidance, "The fact of damages is required to be proven with reasonable certainty.  The fact of damages relates to whether the plaintiff can prove that the acts of the defendant caused damage to the plaintiff".[9]  This commonly referenced guidance goes on to state that, "Once the fact of damage has been established, the amount of damage can be calculated".[10]

It is commonly accepted that the first step associated with calculating lost profits is a determination of revenue that a plaintiff would have earned "but for" the alleged actions of the defendant(s).  After determining the amount of "but for revenue", a calculation of the costs associated with generating those revenues must be determined.  The costs, which are commonly known as "avoided costs", are then deducted from the amount of alleged lost revenue to arrive at lost profits.  A calculation of "avoided costs" should include an analysis of the plaintiff's cost structure and a determination of what are fixed versus variable costs.  Typically, only variable costs are considered to be "avoided costs".  Records that are typically used in order to evaluate lost revenues and avoided costs may include tax returns, accounting

---

[9] AICPA Practice Aid 06-4, *Calculating Lost Profits*, page 19.
[10] Ibid.

Red Barn Motors, Inc., et al. vs. Cox Enterprises, Inc., et al.
Expert Report of David P. Hoffman

records such as the general ledger, financial statements and a detailed breakdown of revenues and expenses during the relevant time period, detailed income statements and other reports reflecting the details of operations.

Based on my review of the available evidence, none of the Plaintiffs in this case have, in my opinion, adequately demonstrated that they have incurred losses as a result of the allegations stated in the <u>Verified Amended Complaint</u>.   Further, the records produced by each Plaintiff are wholly inadequate for purposes of making a reasonably certain and reliable calculation of lost profits.  Specific items supporting my opinions relevant to each Plaintiff are discussed below.

1.  Platinum

Platinum began operations sometime in either 2009 or 2010.[11]  On May 23, 2011, Platinum entered into various notes and security agreements related to a $35,000 Floorplan with DSC.[12]  In June and July 2011, Platinum financed approximately 20 vehicles using this Floorplan.[13]  Despite the testimony of Nicol Perry stating that Platinum utilized dealer management software systems ("DMS") during the period 2011 through 2014,[14] Platinum has provided no documents regarding revenues, expenses, or profits and losses which an expert may rely on for purposes of developing a damages calculation.  Platinum has also not produced financial statements, accounting records or tax returns.

Further, when asked during her deposition about damages incurred by Platinum, Ms. Perry stated that she believed the damages to Platinum

---

[11] December 6, 2016 transcript of Nicol Perry deposition, page 17.
[12] October 31, 2016 Declaration of Adam Galema, page 5 and Ex F.
[13] Ibid, page 6.
[14] Perry deposition transcript, pages 25, 26 and 161.

Red Barn Motors, Inc., et al. vs. Cox Enterprises, Inc., et al.
Expert Report of David P. Hoffman

consisted of "…probably a day of work".[15]  Even assuming a finding of liability on the part of the Defendants, absent a more supportable demonstration of causation and the provision of sufficient and relevant data upon which to base a calculation, it is my opinion that it is not possible to calculate lost profits or claimed loss of business value with the required reasonable degree of certainty.

2.    Mattingly

During the period November 2006 through May 2012, Mattingly financed the purchase of approximately 160 vehicles through DSC.[16]  I understand that during the period of 2006 through 2012, Mattingly was primarily engaged in the retail used car business but since 2012 has focused on wholesale of used vehicles.[17]  Mr. Mattingly also testified that he has not attempted to find a replacement floorplan lender since 2012.  Most importantly in my opinion, Mr. Mattingly was not even aware he was in the KO book until 2014 or 2015.[18]

While Mattingly produced Federal Income tax returns for the years 2004 through 2015, the level of detail available from tax returns is not enough to support the preparation of a reliable calculation of lost profits.  In my opinion, without further information, the available data is not sufficient for the preparation of an acceptable calculation of lost profits.

---

[15] Ibid, page 145-146.
[16] Galema declaration, page 5.
[17] October 19, 2016 transcript of Barry Mattingly deposition, page 16.
[18] Ibid, pages 114 and 166.

Red Barn Motors, Inc., et al. vs. Cox Enterprises, Inc., et al.
Expert Report of David P. Hoffman

3.   Red Barn

During the period of July 2011 through March 2013, Red Barn financed approximately 500 vehicles via a floorplan arrangement with NextGear.[19] Red Barn has produced financial and accounting data that included various operating statements, unaudited financial statements, and tax returns. However, based on my review, the documentation is not sufficient to prepare a reliable damages calculation.  I also noted unexplained discrepancies in the information produced.  For example, Red Barn produced a schedule entitled "Detail of Financial Deals 2010-2015" ("Deal Detail") which appears to reflect sales and cost of goods sold on a vehicle by vehicle basis.  However, the figures reflected in the Deal Detail do not correspond to the amounts reported in either the Red Barn financial statements or the tax returns.  As a result, without further information, it is my opinion that this data is not reliable and would not be sufficient for the preparation of an accepted calculation of lost profits.

Donald Richardson testified about a potential approach for calculating his damages during his deposition.  However, it is not enough to simply state that Red Barn experienced a decline in the amount of profit per car after ceasing business with NextGear; more information is required in order to link this decline to the allegations raised in the complaint.[20]  For example, Red Barn's gross profit percentage per car actually increased in 2014 when compared to 2013.  Also, looking only at the costs on the Deal Detail does not capture all potential avoided costs that may be reflected in Red Barn's income statements.   Without further details, it is not possible to know if the allegations against the Defendants caused Red Barn to incur lost profits.

---

[19] Galema Declaration, page 5.
[20] December 15, 2016 transcript of Donald Richardson, pages 62 – 63.

Red Barn Motors, Inc., et al. vs. Cox Enterprises, Inc., et al.
Expert Report of David P. Hoffman

C.  Balance of Outstanding Debts

I have calculated the amounts currently due by the Plaintiffs and any guarantors to NextGear pursuant to the applicable judgment(s) or floorplan agreements through the date of the expected trial in this matter.[21]  To the extent these figures are relevant to a counterclaim, a setoff defense, or otherwise, the methodology employed in making my calculations is discussed below.

1.  Red Barn

It is my understanding that a judgment has not been obtained against Red Barn but that Red Barn, via a Chapter 11 bankruptcy trustee, has made payments, totaling $12,859, under the terms of a Demand Promissory Note and Security Agreement dated July 27, 2011 with DSC.  Based on the estimated beginning balance of the outstanding debt, and assuming 9.5% interest compounded on a daily basis, the current outstanding obligation of Red Barn is $184,330.  See Exhibit 3 for a summary of the outstanding amount as of August 28, 2017.

2.  Mattingly

Public records support that NextGear obtained a default judgment against Mattingly on June 4, 2014 in the amount of $58,433.  NextGear informs me that Mattingly has made no payments since the judgment.  Based on an interest rate of 8%, compounded annually, the balance of the outstanding debt as of August 28, 2017 would be $81,063.  See Exhibit 4 for a summary of the outstanding amount.

---

[21] August 28, 2017.

Red Barn Motors, Inc., et al. vs. Cox Enterprises, Inc., et al.
Expert Report of David P. Hoffman

 

   3.  Platinum

Public records support that NextGear obtained a default judgment against Platinum on February 11, 2014 in the amount of $35,775.  NextGear informs me that Platinum has made payments since the judgment totaling $4,542.  Based on an interest rate of 8%, compounded annually, the balance of the outstanding debt as of August 28, 2017 would be $42,058.  See Exhibit 5 for a summary of the outstanding amount.

Red Barn Motors, Inc., et al. vs. Cox Enterprises, Inc., et al.
Expert Report of David P. Hoffman

****

David P. Hoffman

Date

David P. Hoffman
<u>Curriculum Vitae</u>

<u>Education</u>

Bachelor of Science Degree Accounting - December 1989
Louisiana State University
Baton Rouge, Louisiana

<u>Certifications</u>

Certified Public Accountant, Georgia
Certified Fraud Examiner, ACFE
Certified in Financial Forensics, AICPA

<u>Professional Employment</u>

**Acuitas, Inc.**
January 2013 – Present, Managing Director and Shareholder

**Ernst & Young LLP**
July 2002 – December 2012. Partner, Fraud Investigation & Dispute Services
May 1999 – July 2002.  Senior Manager

**PricewaterhouseCoopers, LLP (Coopers & Lybrand prior to merger with Price Waterhouse)**
January 1990 – May 1999.  Associate, Senior Associate, Manager, audit practice and litigation consulting services

<u>Testimony Experience Last 4 Years</u>

United States of America ex rel, v DaVita and Gambro Healthcare, Inc. – November 2013 and December 2013, Deposition

Dyadic International, Inc. vs. Ernst & Young, LLP, et al.  – July, September and October 2014, Deposition

State of Georgia v. Ebony Ray and Marina Davis – February 2015, Trial

Highwater Systems, LLC, et al. v Joshua Andrew Stallworth, et al. – April 2015, TRO Hearing

SFI Belmont vs. John Q. Hammons Hotels - July 2015, Deposition

Go Fast Charters, LLC vs. Texaco Caribbean, Inc. – July 2016, Deposition

MSi Lighting, Inc. and MSi, LLC vs. Cree, Inc. – October 2016, Deposition

Dyadic International, Inc. vs. Ernst & Young, LLP, et al.  – February 2017, Trial

<u>Articles and Publications Authored Last 10 Years</u>

Recent Bank Failures and the Forensic Accountant's Role, <u>Litigation Services Handbook, The Role of the Financial Expert,</u> John Wiley & Sons, Inc, Fifth Edition 2013 Cumulative Supplement.

Chapter author and co-editor, <u>Litigation Services Handbook, The Role of the Financial Expert,</u> John Wiley & Sons, Inc, Fifth Edition 2012.

"Vendor allowances in retail industry, not cut and dry", *Chain Store Age – July 2009.*

"Rules for Experts – US Perspective", *Disputes and Differences* - February/March 2008

Exhibit 2

Data and Information Considered

1.  Verified Amended Complaint

2.  Declaration and related exhibits of Adam Galema dated October 31, 2016 (NG_005148-005163, NGR_000011-000033, NG_009411-9416, NGR_000001-000010, NG_009417-009433, NG_003511-003532, NGR_000034-000035, NG_003533-003553, NG_003508-003510, PM 000001-000033)

3.  AICPA Forensic and Valuation Services Practice Aid, *Attaining Reasonable Certainty in Economic Damages Calculations.*

4.  AICPA Practice Aid 06-4, *Calculating Lost Profits.*

5.  Weil, Roman L., Daniel G. Lentz, and David P. Hoffman, *Litigation Services Handbook the Role of the Financial Expert.* Fifth ed. (New Jersey: Wiley, 2013)

6.  Red Barn Motors Balance Sheets, 2010 – 2015 (RB 2590-2600)

7.  Red Barn Motors Income Statements, 2010 – 2015 (RB 2601-2616)

8.  Red Barn Motors consigned purchases report from ABC Auctions

9.  Red Barn Motors purchase report from ABC Auctions

10. Red Barn Motors 2010-2014 Federal Income Tax return

11. Red Barn Motors detailed transaction report, 2011-2016 (RB 2617-2913)

12. Red Barn Motors Louisiana Department of Public Safety and Corrections monthly report of vehicles sold, 2010-2016 (RB 2300-2589)

13. Red Barn Motors rate fee and term schedule (NG_005186-005312)

14. Red Barn Motors' DSC Floor plan Application (NG_003560-003581)

15. Special Attorney Report - 2011 Red Barn Sales (RB 2914-2925)

16. Special Attorney Report - 2012 Red Barn Sales (RB 2926-2940)

17. Special Attorney Report - 2013 Red Barn Sales (RB 2941-2947)

18. Long Beach Auto Auction buyer's history report for Red Barn Motors

19. Receivable detail report for Red Barn Motors, March 27, 2013

20. Demand Promissory Note and Security Agreement between Red Barn Motors and Dealer Services Corporation (NG_003560-003570)

21. Receivable detail report for Mattingly Auto Sales, Inc., May 5, 2012 (NG_008725-008727)

22. Mattingly Auto Sales 2004-2015 Federal Income Tax returns (JH_0001-0057)

Exhibit 2

Data and Information Considered

23. Mattingly Auto Sales consigned purchases report from ABC Auctions

24. Mattingly Auto Sales purchase report from ABC Auctions

25. Mattingly Auto Sales purchase summary from Clark County Auto Auction, January
2006-November 2016

26. Mattingly Auto Sales purchase summary from Kentucky Auto Auction, January 2006-
November 2016

27. Mattingly Auto Sales purchase summary from Wolfe's Evansville Auto Auction, 2007 –
2012

28. Mattingly Auto Sales sold report from Wolfe's Evansville Auto Auction, 2007-2016

29. Entry of Default Judgment against Mattingly Auto Sales, Inc. (NG_003433-NG_003435)

30. Next Gear sales report to Mattingly Auto, Inc., November 2006 – May 2012
(NGR_000001-000010)

31. Entry of Default Judgment against Platinum Motors, (NG_003508-003510)

32. Next Gear sales report to Platinum Motors, June 2011 – July 2011 (NGR_000034-
000035)

33. Receivables detail report for Platinum Motors, August 22, 2011 (NG_008905-008907)

34. Platinum Motors purchase report from Tidewater Auto Auction, ABC Virginia Location,
2011-2015

35. Platinum Motors sold report from Tidewater Auto Auctions, ABC Virginia Location,
2011-2015

36. Platinum Motors purchase report from Tidewater Auto Auctions, Eagle Auction
Location, 2011-2014

37. Platinum Motors sold report from Tidewater Auto Auctions, Eagle Auction Location,
2014

38. Platinum Motors outstanding floor plan receivables, 2011-2016

39. Car Key Auto 2009 sales report (PM 000038-000040)

40. Car Key Auto Income Statement for January 2009 – March 2010 (PM 000041-000087)

41. Car Key Auto, Inc. proof of insurance 2010, 2011, and 2013 (PM 000034-000035)

42. Transcript of October 19, 2016 deposition of Barry Wayne Mattingly

43. Transcript of December 6, 2016 deposition of Nicol Zenia Perry

Exhibit 2

Data and Information Considered

44. Transcript of October 25, 2016 deposition of Devon London

45. Transcript of December 15, 2016 deposition of Denise Mattingly

46. Transcript of December 15, 2016 deposition of Donald Richardson

47. Next Gear's First Interrogatories to Mattingly Auto Sales

48. Next Gear's First Interrogatories to Platinum Motors

49. Next Gear's First Interrogatories to Red Barn Motors

50. Next Gear's Request for Production to Mattingly Auto Sales

51. Next Gear's Request for Production to Platinum Motors

52. Next Gear's Request for Production to Red Barn Motors

53. Mattingly Auto Sales' Responses to First Interrogatories

54. Mattingly Auto Sales' Responses to First Request for Production

55. Platinum Motors' Responses to First Interrogatories

56. Platinum Motors' Responses to First Request for Production

57. Red Barn Motors' Responses to First Interrogatories

58. Red Barn Motors' Responses to First Request for Production

59. Mattingly Auto Sales' Amended Responses to Next Gear's First Interrogatories

60. Mattingly Auto Sales' Amended Responses to Next Gear's First Request for Production

61. Platinum Motors' Amended Responses to Next Gear's First Interrogatories

62. Red Barn Motors' Amended Responses to Next Gear's First Interrogatories

63. Red Barn Motors' Amended Responses to Next Gear's First Request for Production

64. Next Gear's Second Request for Production to Mattingly Auto Sales

65. Next Gear's Second Request for Production to Platinum Motors

66. Next Gear's Second Request for Production to Red Barn Motors

67. Mattingly Auto Sales' Second Response to Next Gear's Second Request for Production

68. Platinum Motors' Second Response to Next Gear's Second Request for Production

69. Red Barn Motors' Second Response to Next Gear's Second Request for Production

70. Next Gear's subpoena to Jackson Hewitt, Inc.

71. January 20, 2010 Expert Report of Jay Cunningham

72. Next Gear's subpoena to Greg A. Kennedy, CPA

73. Indiana Code 24-4.6 Special Provisions Concerning Certain Transactions

**Exhibit 3**

**Red Barn Motors, Inc.**
**Outstanding Debt**

| Date | Beginning Balance | | Payments Received | Ending Balance | | Accrued Interest[1] | |
|---|---|---|---|---|---|---|---|
| July 26, 2013 | $ | 134,775 [2] | - | $ | 134,775 | | |
| 2013 | | 134,775 | - | | 134,775 | $ | 5,737 |
| 2014 | | 134,775 | (807) | | 133,968 | | 14,192 |
| 2015 | | 133,968 | (8,894) | | 125,074 | | 15,106 |
| 2016 | | 125,074 | (2,820) | | 122,254 | | 16,064 |
| August 28, 2017 | | 122,254 | (338) | | 121,916 | | 11,314 |
| | | | | | | | |
| Total | | | $    (12,859) | | | $ | 62,414 |
| | | | | | | | |
| | | | Outstanding Principal | | | | 121,916 |
| | | | | | | | |
| | | | Total | | | $ | 184,330 |

1. Interest accrues at 9.5%. Compounded daily per Demand Promissory Note paragraph 3 (a). (NG_003561-3569)

2. Balance due as of  July 26, 2013; Demand Promissory Note dated July 27, 2011. (NG_003561-3569).

**Exhibit 4**

**Mattingly Auto Sales, Inc.**
**Outstanding Debt**

| Date | Beginning Balance | Payments Received | Ending Balance | Accrued Interest[1] |
|---|---|---|---|---|
| June 4, 2013 | $   58,433 [2] | | $   58,433 | |
| 2013 | 58,433 | - | 58,433 | $   2,689 |
| 2014 | 58,433 | - | 58,433 | 4,890 |
| 2015 | 58,433 | - | 58,433 | 5,281 |
| 2016 | 58,433 | - | 58,433 | 5,719 |
| August 28, 2017 | 58,433 | - | 58,433 | 4,051 |
| | | | | |
| Total | | $          - | | $   22,630 |
| | | | | |
| | | Outstanding Principal | | 58,433 |
| | | Total | | $   81,063 |

1.  Interest calculated at 8.0% per annum.  Compounded annually. IC24-4.6-1-104 (d)(2).
2.  Entry of Default Judgment.  (NG_003433 - 3435)

**Exhibit 5**

**Platinum Motors, Inc.**
**Outstanding Debt**

| Date | Beginning Balance | Payments Received | Ending Balance | Accrued Interest[1] |
|---|---|---|---|---|
| February 11, 2014 | $  35,775 [2] |  | $     35,775 |  |
| 2014 | 35,775 | - | 35,775 | $     2,533 |
| 2015 | 35,775 | (555) | 35,221 | 3,062 |
| 2016 | 35,221 | (3,988) | 31,233 | 3,129 |
| August 28, 2017 | 31,233 | - | 31,233 | 2,102 |
| Total |  | $   (4,542) |  | $   10,825 |
| Outstanding Principal |  |  |  | 31,233 |
| Total |  |  |  | $   42,058 |

1. Interest calculated at 8.0% per annum.  Compounded annually. IC24-4.6-1-104 (d)(2).
2. Entry of Default Judgment.  (NG_003508 - 3510)