UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:

RED BARN MOTORS, INC.                                CASE NO. 13-10548
    Debtor                                       CHAPTER 11

ORDER CONFIRMING DEBTOR'S AMENDED PLAN OF REORGANIZATION

Considering the Debtor's *Amended Plan of Reorganization* [P-83] ("Amended Plan"), the argument and representations of counsel, including counsel for Whitney Bank's statement that her client's plan objection had been cured, the evidence admitted at the December 18, 2013 hearing, the record of the case, and applicable law,

IT IS ORDERED that the *Amended Plan of Reorganization*, a copy of which is attached to this order as Exhibit "A," is CONFIRMED.

Baton Rouge, Louisiana, January 6, 2014.

**s/ Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT B**

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF LOUISIANA

IN RE:

**CASE NO. 13-10548**

**RED BARN MOTORS, INC.**
    **DEBTOR**

**CHAPTER 11**
**Dated December 10, 2013**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## DEBTOR'S AMENDED PLAN OF REORGANIZATION

### INTRODUCTION

Red Barn Motors, Inc. ("Red Barn Motors"), as debtor and debtor-in-possession ("Debtor"), proposes the following Amended Chapter 11 Plan of Reorganization ("Plan") with respect to its Chapter 11 case pursuant to Section 1121(a) of Title 11 of the United States Code (the "Bankruptcy Code").

Reference is made to the Disclosure Statement with respect to this Plan, distributed contemporaneously herewith, for a discussion of the Debtor's history, business, property, operations, risk factors, a summary and analysis of this Plan and certain related matters. Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Fed. R. Bankr. P. 3019, the Debtor respectfully reserves the right to alter, amend, modify, revoke or withdraw this Plan prior to consummation of this Plan.

NO SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH THAT ARE APPROVED BY THE BANKRUPTCY COURT, HAVE BEEN AUTHORIZED BY THE BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCE OR REJECTION OF THIS PLAN.

## I. DEFINED TERMS, RULES OF INTERPRETATION
## AND COMPUTATION OF TIME

**1.1. Rules of Construction**. For purposes of this Plan, unless otherwise provided herein: (a) any reference in this Plan to a contract, instrument, document, release, indenture or other agreement, whether existing or contemplated, being in a particular form or on particular terms and conditions means that such contract, instrument, document, release, indenture or other agreement shall be substantially in such form or substantially on such terms and conditions; (b) unless otherwise specified, all references in this Plan to the Introduction, Appendices, Articles, Sections, Schedules and Exhibits are references to the Introduction, Appendices, Articles, Sections, Schedules and Exhibits of or to this Plan; (c) captions and headings in this Plan are intended for convenience of reference only and are not intended to be part of or to affect interpretation of this Plan; (d) the words "herein," "hereof," "hereunder," "hereto" and other

1

words of similar import refer to this Plan in its entirety rather than to a particular portion of this Plan; (e) whenever it appears appropriate from the context, each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and neuter; and (f) the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

**1.2. Computation of Time**.  Unless otherwise expressly provided, Fed. R. Bankr. P. 9006(a) shall apply in computing time prescribed or allowed by this Plan.

**1.3. Definitions**.  For purposes of this Chapter 11 Plan of Reorganization and any subsequent amendments or modifications hereof, the terms set forth in the attached Uniform Glossary of Defined Terms for Plan, Disclosure Statement and Plan Documents shall have the meanings set forth therein, and any term used herein, which is defined in the Bankruptcy Code but not defined herein, shall have the meaning set forth in the Bankruptcy Code.


## II. TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS
## PRIORITY TAX CLAIMS AGAINST THE DEBTOR

**2.1. Administrative Expense Claims**.  On the later of (i) the Effective Date or (ii) the date on which an Administrative Expense Claim becomes Allowed, the Reorganized Debtor shall either (a) pay to each Holder of an Allowed Administrative Expense Claim, in Cash, the full amount of such Allowed Administrative Expense Claim, or (b) satisfy and discharge such Administrative Expense Claim in accordance with such other terms that the Reorganized Debtor and such Holder shall have agreed upon in writing; *provided, however,* that such agreed-upon treatment shall not be more favorable than the treatment provided in subsection (a).

   **2.1.1.** *Bar Date for Filing Administrative Expense Claims*.  Requests for payment of Administrative Expense Claims and hearing notices related thereto shall be Filed and properly served in accordance with the local rules of the Bankruptcy Court no later than thirty (30) days after the Effective Date.  Such request shall include at a minimum (a) the name of the Holder of the Administrative Expense Claim, (b) the amount of the Administrative Expense Claim, and (c) the basis for the Administrative Expense Claim.  **Failure to file and serve such request and related notice(s) timely and properly shall result in the Administrative Expense Claim being forever barred and discharged.**

   **2.1.2.** *Professional Compensation Claims*.  All professionals or other entities requesting compensation or reimbursement of expenses under Sections 327, 328, 330, 331, 333, 503(b), 506 and 1103 of the Bankruptcy Code for services rendered before the Effective Date (including any compensation requested by any professional for any other entity for making a substantial contri-bution in the Reorganization Case) shall File and serve on the Reorganized Debtor an application for final allowance of compensation and reimbursement of expenses no later than thirty (30) days after the Effective Date.  Payment of such claims shall be from the cash of the Debtor.

   **2.1.3.** *Ordinary Course Liabilities*.  Holders of Administrative Expense Claims based on unpaid and undisputed amounts due by the Debtor in Possession for goods and services provided to it after the Petition Date and before the Effective Date arising in the ordinary course

of the Debtor's *business* shall not be required to file any request for payment of such Claims but each shall be deemed to be an Allowed Administrative Expense Claim in the undisputed amount recognized by the Debtor in Possession. Such deemed Allowed Administrative Expense Claims shall be paid in the ordinary course of business by the Reorganized Debtor without any further action by the Holders of such Claims.

**2.2. Priority Tax Claims**. Except to the extent that the Reorganized Debtor and a Holder of an Allowed Priority Tax Claim against the Debtor agree to a different treatment, each Holder of an Allowed Priority Tax Claim against the Debtor shall receive, at the sole option of the Reorganized Debtor, (a) on the Effective Date, Cash in an amount equal to the unpaid portion of such Allowed Priority Tax Claim, or (b) commencing forty-five (45) days after the occurrence of the Effective Date and continuing over a period not exceeding five (5) years from and after the Order For Relief Date, equal quarterly Cash payments in an aggregate amount equal to the unpaid portion of such Allowed Priority Tax Claim, together with interest at the applicable rate under nonbankruptcy law, subject to the sole option of the Reorganized Debtor, as applicable, to prepay the entire amount of the unpaid portion of Allowed Priority Tax Claim and in a manner not less favorable than the most favored nonpriority unsecured Claim provided for by the Plan. All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligations become due. Any Priority Tax Claim secured by a lien shall retain such lien to secure its claim until paid in full.

# III. CLASSIFICATION OF CLAIMS
# AGAINST AND INTERESTS IN DEBTOR

**3.1. Classification of Claims**. Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtor. A Claim or Interest is placed in a particular Class for the purposes of voting on this Plan and of receiving Distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been paid, released, withdrawn or otherwise settled prior to the Effective Date. In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims of the kinds specified in Sections 507(a)(2) and 507(a)(8), respectively, of the Bankruptcy Code have not been classified and their treatment is set forth in Article II.

**3.2. Classes**. The Claims against the Debtor are classified as follows:

**3.2.1. *Class 1:*** Class 1 consists of the secured claim of Whitney Bank in the amount of approximately Twenty-Nine Thousand Dollars ($29,000.00) which is secured by the residence of the owners of Red Barn Motors in Denham Springs, Louisiana. This class is not impaired and is therefore not entitled to vote on the Plan.

**3.2.2. *Class 2:*** Class 2 consists of the secured claim of Fair Hugh in the amount of approximately Ninety-five Thousand Dollars ($95,000.00) which is secured by a lot adjoining the Red Barn Motors office. This class is not impaired and is therefore not entitled to vote on the Plan.

**3.2.3.** *Class 3:* Class 3 consists of the secured claim of Republic Finance in the amount of approximately $8,000.00 secured by a one acre lot in Walker, Louisiana. This claim is impaired and is entitled to vote on the Plan.

**3.2.4.** *Class 4:* Convenience Class of Unsecured Creditors

**3.2.5** *Class 5:* General Unsecured Claims. Class 5 shall consist of all Allowed General Unsecured Claims not eligible for or not electing into Class 4.

## IV. TREATMENT OF CLAIMS AND INTERESTS
## AND DESIGNATION WITH RESPECT TO IMPAIRMENT

### 4.1. Treatment of Class 1 – Whitney Bank

**4.1.1.** *Impairment and Voting.* Class 1 consists of the claim of Whitney Bank and is not impaired by this Plan. The Holder of the Class 1 Claim is not entitled to vote to accept or reject this Plan. The Class 1 Claim is secured by the residence of the owners of Red Barn Motors located at 8628 Shadow Springs Blvd., Denham Springs, Louisiana, 70726, owned by the Debtor.

**4.1.2.** *Treatment.* Prior to the Effective Date, the monthly payments owed to Whitney Bank will have been paid by an affiliate of the Debtor. The Holder of the Class 1 Claim shall retain all of its existing liens, privileges and encumbrances in the Assets of the Debtor with the same validity, priority and extent that existed on the Petition Date to secure the timely repayment of the Class 1 Claim.

Beginning on the Effective Date, the Debtor shall timely pay monthly mortgage payments, together with all taxes and insurance premiums pertaining to the collateral securing this Claim, in default of which the rights of Whitney Bank under its security documents shall obtain. Except as specifically modified hereby, all terms and conditions of the notes, guarantees and security agreements between the parties shall remain in full force and effect. All terms and conditions of the note and guarantees affecting the unsecured loan shall remain in full force and effect.

Finally, to the extent the loans in favor of Whitney Bank are cross-collateralized, Whitney Bank shall retain all of its existing liens against any and all collateral securing those loans and nothing in this Disclosure Statement or the Plan shall affect those existing liens held by Whitney Bank against such collateral.

### 4.2. Treatment of Class 2 – Fair Hugh Secured Claim.

**4.2.1.** *Impairment and Voting.* Class 2 is not impaired by this Plan. The Holder of the Class 2 Claim is not entitled to vote to accept or reject this Plan. The Class 2 Claim is secured by the Debtor's lot adjoining its business office in Denham Springs, Louisiana.

4

**4.2.2.** *Treatment.* Prior to the Effective Date, the monthly payments owed to Fair Hugh will have been paid by an affiliate of the Debtor. The Holder of the Class 2 Claim shall retain all of its existing liens, privileges and encumbrances in the Assets of the Debtor with the same validity, priority and extent that existed on the Petition Date to secure the timely repayment of the Class 2 Claim.

Beginning on the Effective Date, the Debtor shall timely pay monthly mortgage payments, together with all taxes and insurance premiums pertaining to the collateral securing this Claim, in default of which the rights of Fair Hugh under its security documents shall obtain. Except as specifically modified hereby, all terms and conditions of the notes, guarantees and security agreements between the parties shall remain in full force and effect.

The Holder of the Class 2 Claim shall retain all of its existing liens, privileges and encumbrances in the Debtor's Assets with the same validity, priority and extent that existed on the Petition Date to secure the timely repayment of the Class 2 Claim.

## 4.3. Treatment of Class 3 – Republic Finance.

**4.3.1.** *Impairment and Voting.* Class 3 is impaired by this Plan. The Holder of the Class 3 Claim is entitled to vote to accept or reject this Plan. The Class 3 Claim is secured by the Debtor's one acre lot located in Walker, Louisiana.

**4.3.2.** *Treatment.* On the Effective Date, all accrued unpaid interest calculated at the non-default contractual rate of 4.0% per annum plus any amounts Allowed by the Bankruptcy Court pursuant to 11 U.S.C. § 506(b) shall be capitalized and added to the outstanding principal balance of approximately $8,000.00 due under the Republic Finance judgment ("the New Principal Balance"). As permitted under 11 U.S.C. § 1123(a)(5)(H), the maturity of the New Principal Balance shall be extended to twenty-four (24) months from the Effective Date ("the New Maturity Date"). The Debtor shall then make an annual payment of interest only on the anniversary of the Effective Date on the New Principal Balance at the rate of 4.0% per annum from the Effective Date. The entire New Principal Balance shall be due on the second anniversary of the Effective Date or upon the sale of the collateral, whichever occurs first. The Debtor shall have the right to prepay principal on the New Principal Balance at any time and to pay the entire New Principal Balance of the Class 3 Claim in full at any time prior to the New Maturity Date without penalty. The Holder of the Class 3 Claim shall retain all of its existing liens, privileges and encumbrances in the Debtor' Assets with the same validity, priority and extent that existed on the Petition Date to secure the timely repayment of the Class 3 Claim.

## 4.4. Treatment of Class 4 – Convenience Class of Unsecured Claims.

**4.4.1.** *Impairment and Voting*. Class 4 consists of the Holders of Unsecured Claims in amounts equal to or less than Five Thousand Dollars ($5,000.00) or those Holders of Unsecured Claims in amounts in excess of Five Thousand Dollars ($5,000.00) who elect to reduce their claim to Five Thousand Dollars ($5,000.00). Class 4 Claims are impaired by this Plan. Each Holder of Class 4 Claim is entitled to vote to accept or reject this Plan.

**4.4.2. *Treatment*.** Each holder of a Class 4 Claim shall receive a cash payment from the Debtor on the Effective Date equal to fifty (50%) percent of its Allowed General Unsecured Claim. The remaining balance of each Allowed General Unsecured Claim shall be paid six (6) months from the Effective Date.

**4.5. Treatment of Class 5 – General Class of Unsecured Claims.**

    **4.5.1. *Impairment and Voting*.** Class 5 consists of the Holders of Unsecured Claims in amounts in excess of Five Thousand Dollars ($5,000.00) which do not elect to reduce their claim to Five Thousand Dollars ($5,000.00). Class 5 Claims are impaired by this Plan. Each Holder of Class 5 Claim is entitled to vote to accept or reject this Plan.

    **4.5.2. *Treatment*.** The Debtor shall pay Holders of Allowed Class 5 Claims on a Pro Rata Basis with no interest on a quarterly basis beginning on April 15, 2014 or on the Effective Date whichever is later, and on the 15th day of the following months of July, October and January the entire amount of the Creditors' Disbursement Fund as of the end of the previous quarter until such Allowed Claims are paid in full. For example, the second Plan payment shall be paid on July 15, 2014, from the Creditors' Disbursement Fund as of June 30, 2014. Based on the Debtor's projections, Allowed Class 5 Claims will be paid in full within two (2) years of the Effective Date.

## V. PROVISIONS REGARDING VOTING, EFFECT OF REJECTION BY IMPAIRED CLASSES, AND CONSEQUENCES OF NONCONFIRMABILITY

**5.1. Voting Rights.** Each Holder of an Allowed Claim or Allowed Interest as of the Voting Deadline in an impaired Class of Claims that is not deemed to have accepted this Plan shall be entitled to vote separately to accept or reject this Plan as provided in the order entered by the Bankruptcy Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject this Plan.

**5.2. Acceptance Requirements.** An impaired Class of Claims shall have accepted this Plan if votes in favor of this Plan have been cast by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on this Plan. An impaired Class of Interests shall have accepted this Plan if votes in favor of this Plan have been cast by at least two-thirds (2/3) in amount of the Interests in such Class that have voted on this Plan.

**5.3. Cramdown.** If all applicable requirements for Confirmation of this Plan are met as set forth in Section 1129(a)(1) through (13) of the Bankruptcy Code, except Subsection (8) thereof, this Plan shall be treated as a request that the Bankruptcy Court confirm this Plan in accordance with Section 1129(b) of the Bankruptcy Code, notwithstanding the failure to satisfy the requirements of Section 1129(a)(8), on the basis that this Plan is fair and equitable and does not discriminate unfairly with respect to each Class of Claims that is impaired under, and has not accepted, this Plan.

**5.4. Tabulation of the Votes**.  The Debtor shall cause the tabulation of all votes on this Plan for the purpose of determining whether this Plan satisfies Sections 1129(a)(8) and/or (10) of the Bankruptcy Code.

## VI. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**6.1. Assumption of Contracts and Leases**.

The Debtor is a party to any certain pre-petition executory contracts listed on Exhibit 1, attached hereto  The Debtor has designated on that Exhibit which of such executory contracts it hereby chooses to accept and assumed.  Except as otherwise provided herein or pursuant to the Confirmation Order, as of the Effective Date, if any pre-petition executory contracts between the Debtor and any Person they shall be assumed pursuant to Section 365(a) of the Bankruptcy Code except for any executory contract or unexpired lease that has been assigned or rejected or renegotiated and either assumed or rejected on renegotiated terms, pursuant to an order of the Bankruptcy Court entered prior to the Effective Date.  Entry of the Confirmation Order shall constitute approval, pursuant to Section 365(a) of the Bankruptcy Code, of the assumption of executory contracts and unexpired leases provided for on Exhibit 1, attached hereto.

## VII. MEANS OF IMPLEMENTATION OF THE PLAN

**7.1. Summary of Reorganization of the Debtor**.  On and after the Effective Date, all Assets of the Debtor and their estate shall vest in the Reorganized Debtor free and clear of all Liens, encumbrances, and claims _except_ for the Liens securing any Priority Tax Claims and the Liens securing the Class 1, 2, and 3 Claims.  On and after the Effective Date, the Reorganized Debtor may operate their business, may use, acquire and dispose of property, may retain, compensate and pay any professionals or advisors, and compromise or settle any causes of action, claims or interests without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by the Plan and the Confirmation Order.  All payments due on or after the Effective Date shall be made from the Debtor's cash on hand and from the future revenues derived from the Reorganized Debtor's sale of used motor vehicles.

**7.2. Post-Effective Date Management of the Reorganized Debtor**.  Except as expressly provided in this Plan, the operation, management and control of the Reorganized Debtor shall remain with Don Richardson.

**7.3. Authorization to Implement this Plan**.  The entry of the Confirmation Order shall constitute authorization for the Debtor and the Reorganized Debtor to take or cause to be taken all action necessary or appropriate to implement all provisions of, and to consummate this Plan and the Plan Documents prior to, on and after the Effective Date and all such actions taken or caused to be taken for which Bankruptcy Court authorization is required shall be deemed to have

been authorized by the Bankruptcy Court without further act or action under any applicable law, order, rule or regulation, except as otherwise expressly set forth in this Plan.

**7.4. Effectuating Documents and Further Transactions**.  The Debtor and the Reorganized Debtor are authorized and directed to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan Documents.

## VIII. METHOD OF DISTRIBUTIONS UNDER THE PLAN AND CLAIMS RECONCILIATION

**8.1. Method of Distributions Under the Plan**.  Distributions under this Plan shall be made in accordance with the following:

**8.1.1. *Distributions for Claims Allowed as of the Effective Date***.  Other than as set forth herein, all Distributions under this Plan to be made on the Effective Date to Holders of Claims that are Allowed as of the Effective Date shall be deemed made on the Effective Date if made on the Effective Date or as promptly thereafter as practicable, but in any event no later than ten (10) days after the Effective Date.  In the event that, pursuant to this Plan, any Plan payment is to be paid on a date before the Effective Date, the Debtor shall place the payment in a trust account of their bankruptcy counsel for payment of the Claim on the Effective Date.

**8.1.2. *Distributions for Claims Allowed after the Effective Date***.  Following the Effective Date, the Reorganized Debtor shall make all distributions that become deliverable to Holders of Allowed Claims.

**8.1.3. *Delivery of Distributions***.  All Distributions to be made under this Plan shall be made to Holders of Allowed Claims (a) if any such Holder has filed a Proof of Claim, at the address of such Holder as set forth in the Proof of Claim, or at the addresses set forth in any written certification of address change delivered to the Disbursing Agent after the date of filing of such Proof of Claim, or (b) if any such Holder has not filed a Proof of Claim, at the last known address of such Holder as set forth in the Debtor' Schedules or Debtor' books and records.

**8.1.4. *Timing of Distributions***.  Any payment or other Distribution required to be made under this Plan on a day other than a Business Day shall be due on the next succeeding Business Day.  All payments or Distributions due on the Effective Date shall be made thereon or as soon as practicable thereafter but in no event later than ten (10) calendar days after the Effective Date. Any payment of Cash made pursuant to this Plan shall be deemed made when such payment by check or wire transfer is transmitted.

**8.1.5. *Minimum Cash Distributions***.  No Cash payment less than ten dollars ($10.00) shall be made to any Holder of a Claim unless a request therefore is made in writing to the Reorganized Debtor.

**8.1.6.** ***Unclaimed/Undeliverable Distributions***.   If any Cash or other Distribution pursuant to this Plan to any Holder of an Allowed Claim is returned as undeliverable, no further Distributions to such Holder shall be made until such time as the Reorganized Debtor are notified by written certification of such Holder's then-current address, at which time Distributions to such Holder shall be made without interest.

**8.1.7.** ***Failure to Claim Undeliverable Distributions***.   Any Holder of an Allowed Claim that does not assert a claim pursuant to this Plan for an undeliverable Distribution within one (1) year after the Distribution was initially attempted shall have its claim for such undeliverable Distribution discharged and such Distributions shall be deemed to be unclaimed property under Section 347(b) of the Bankruptcy Code.  After such date, all Cash or other Distribution shall be forfeited and transferred to or retained by the Reorganized Debtor free from any restrictions thereon, and the claim of any Holder to such Cash or other Distribution pursuant to this Plan shall be discharged and forever barred.   Nothing contained in this Plan shall require the Reorganized Debtor to attempt to locate any Holder of an Allowed Claim.

**8.1.8.** ***Withholding and Reporting Requirements***.   In connection with this Plan, the Debtor and the Reorganized Debtor, as applicable, shall comply with all withholding and reporting requirements imposed by federal, state, local, and/or foreign taxing authorities and all Distributions hereunder shall be subject to such withholding and reporting requirements. Notwithstanding the above, each Holder of an Allowed Claim that is to receive a Distribution shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any government unit, including income, withholding and other tax obligations, on account of such Distribution.

**8.1.9.** ***Setoff Rights***.   The Reorganized Debtor may, but shall not be required to, setoff against or recoup from the Holder of any Allowed Claim on which payments or other Distributions are to be made hereunder, claims of any nature that the Debtor or the Reorganized Debtor may have against the Holder of such Allowed Claim.  However, neither the failure to do so, nor the allowance of any Claim under this Plan, shall constitute a waiver or release of any such claim, right of setoff or right of recoupment against the Holder of such Allowed Claim.

**8.2. Claims Administration Responsibility**.

**8.2.1.** ***Right to Object to Claims***.   The Debtor and the Reorganized Debtor have the responsibility and authority for administering, disputing, objecting to, compromising and settling or otherwise resolving and finalizing Distributions (if any) with respect to all Claims.   In addition, the Reorganized Debtor may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Debtor have previously objected to such Claim.

**8.2.2.** ***Claims Objection Deadline***.  The Reorganized Debtor shall have until the date that is ninety (90) days after the Effective Date to bring any objections to Claims; *provided, however,* that such deadline may be extended by the Bankruptcy Court upon *ex parte* motion of the Reorganized Debtor.

**8.2.3.** ***Compromise and Settlements***.  From and after the Effective Date, and without any further approval by the Bankruptcy Court, the Reorganized Debtor may compromise and settle any Claims and Causes of Action against the Debtor or their Estate.

## 8.3. Process for Disputing Claims.

**8.3.1.** ***Disallowance of Improperly Filed Claims***.  Any Administrative Expense Claim or other Claim for which the filing of a motion for allowance is required shall be disallowed if such filing is not timely and properly made and set for hearing contemporaneously therewith, subject to the right of the Claimant to seek permission under applicable law to file a late Claim.

**8.3.2.** ***No Distributions Pending Allowance***.  If a Claim or any portion of a Claim is disputed, no payment or Distribution shall be made on account of the disputed portion of such Claim (or the entire Claim, if the entire Claim is disputed), unless such Disputed Claim or portion thereof becomes an Allowed Claim.

## IX. EFFECT OF CONFIRMATION OF PLAN

## 9.1. Discharge.

**9.1.1.** ***Discharge of Claims Against the Debtor and the Reorganized Debtor***.  Except as otherwise expressly provided in this Plan or the Confirmation Order, Confirmation of this Plan shall as of the Effective Date: (i) discharge the Debtor, the Reorganized Debtor and any of their Assets from all Claims demands, liabilities, other debts and Interests that arose on or before the Effective Date, including, without limitation, all debts of the kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (A) a Proof of Claim based on such debt is filed or deemed filed pursuant to Section 501 of the Bankruptcy Code, (B) a Claim based on such debt is Allowed pursuant to Section 502 of the Bankruptcy Code, or (C) the Holder of a Claim based on such debt has accepted this Plan; and (ii) preclude all Persons from asserting against the Debtor, the Reorganized Debtor or any of their Assets any other or further Claims or Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, all pursuant to Sections 524 and 1141 of the Bankruptcy Code.  The discharge provided in this provision shall void any judgment obtained against any of the Debtor at any time, to the extent that such judgment relates to a discharged Claim or cancelled Interest.

**9.1.2.** ***Injunction Related to the Discharge***.  Except as otherwise provided in this Plan or the Confirmation Order, all entities that have held, currently hold or may hold Claims or other debts or liabilities against the Debtor or an Interest or other right of an equity security Holder in the Debtor that are discharged pursuant to the terms of this Plan are permanently enjoined, on and after the Effective Date, from taking any of the following actions on account of any such Claims, debts, liabilities or Interests or rights: (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim debt, liability, Interest or right other than to enforce any right to a Distribution pursuant to this Plan; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award decree or order against

the Debtor, the Reorganized Debtor or any of their Assets on account of any such Claim debt,
liability, Interest or right; (iii) creating, perfecting or enforcing any Lien or encumbrance against
the Debtor, the Reorganized Debtor or any of their Assets on account of any such Claim debt
liability, Interest or right; (iv) asserting any right of setoff subrogation or recoupment of any kind
against any debt, liability or obligation due to the Debtor, the Reorganized Debtor or any of their
Assets on account of any such Claim debt, liability, Interest or right; and (v) commencing or
continuing any action in any manner, in any place that does not comply with or is inconsistent
with the provisions of this Plan or the Confirmation Order.  Such injunction shall extend to any
successor of the Debtor, the Reorganized Debtor and any of their Assets.  Any entity injured by a
willful violation of such injunction shall recover actual damages, including costs and attorneys'
and experts' fees and disbursements, and, in appropriate circumstances, may recover punitive
damages from the willful violator.

**9.2. Retention of Causes of Action**.

    **9.2.1.** *Preservation of Rights of Action by the Debtor and the Reorganized Debtor*.
Except as provided in this Plan or in any contract, instrument, release or other agreement entered
into or delivered in connection with this Plan, in accordance with Section 1123(b) of the
Bankruptcy Code and to the fullest extent possible under applicable law, the Reorganized Debtor
shall retain and may enforce, and shall have the sole right to enforce, any claims, demands, rights
and Causes of Action that the Debtor or their Estate may hold against any Entity.   The
Reorganized Debtor or their successor may pursue such retained claims, demands, rights or
Causes of Action, as appropriate, in accordance with the best interests of the Reorganized
Debtor, or their successor.  Further, the Reorganized Debtor, as the case may be, retain their
rights to file and pursue, and shall have the sole right to file and pursue any adversary
proceedings against any account debtor related to debit balances or deposits owed to any Debtor.
Notwithstanding the above, the Debtor does not intend to bring any Avoidance Actions after
entry of the Confirmation Order.

## X. EFFECTIVENESS OF THE PLAN

**10.1. Conditions Precedent**.  This Plan shall not become effective unless and until the following
conditions have been satisfied:

    **10.1.1.** *Conditions to Effective Date*.

    (1)    The Confirmation Order, in form and substance satisfactory to the Debtor shall
have become a Final Order.

    (2)    The Debtor shall have sufficient cash on hand with which to make all payments
required to be made on the Effective Date.

    **10.2.** *Effect of Failure of Conditions*.  In the event that the conditions specified in
Article 10.1 have not been satisfied on or before thirty (30) days after the Confirmation Date,
then without an order of the Bankruptcy Court:  (a) this Plan shall be null and void in all

respects; (b) any settlement of Claims or Interests provided for hereby shall be null and void without further order of the Bankruptcy Court; and (c) the time within which the Debtor may assume and assign or reject all executory contracts and unexpired leases shall be extended for a period of sixty (60) days after such date.

# XI. RETENTION OF JURISDICTION

**11.1. Bankruptcy Court**.  Pursuant to Sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain such jurisdiction over all matters arising out of, and related to, the Reorganization Cases and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

**11.1.1.** allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including, without limitation, the resolution of any request for payment of any Administrative Expense Claim or Priority Tax Claim and the resolution of any objections to the allowance or priority of Claims or Interests;

**11.1.2.** hear and rule upon all Causes of Action retained by the Debtor and commenced and/or pursued by the Reorganized Debtor provided that such Causes of Action are properly before the Bankruptcy Court;

**11.1.3.** resolve any matters related to the rejection, assumption or assumption and assignment of any executory contract or unexpired lease to which any Debtor are a party or with respect to which the Debtor may be liable and to hear, determine, and, if necessary, liquidate any Claims arising therefrom;

**11.1.4.** ensure that Distributions on Allowed Claims are accomplished pursuant to the provisions of this Plan;

**11.1.5.** decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

**11.1.6.** enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all contracts, instruments, releases and other agreements or documents created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

**11.1.7.** resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, or enforcement of this Plan or any contract, instrument, release or other agreement or document that is executed or created pursuant to this Plan, or any entity's rights arising from or obligations incurred in connection with this Plan or such documents;

**11.1.8.** approve any modification of this Plan before or after the Effective Date pursuant to Section 1127 of the Bankruptcy Code or approve any modification of the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with this Plan, the Disclosure Statement or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, this Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with this Plan, the Disclosure Statement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan;

**11.1.9.** hear and determine all applications for compensation and reimbursement of expenses of Professionals under this Plan or under Sections 330, 331, 363, 503(b), 1103 and 1129(a)(9) of the Bankruptcy Code, which shall be payable by the Debtor only upon allowance thereof pursuant to the order of the Bankruptcy Court;

**11.1.10.** issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation of this Plan, implementation or enforcement of this Plan or the Confirmation Order, including designating one or more Persons under Fed. R. Bankr. P. 7070 and F. R. Civ. P. 70;

**11.1.11.** hear and determine matters concerning state**,** local and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

**11.1.12.** enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked or vacated, or if Distributions pursuant to this Plan are enjoined or stayed;

**11.1.13.** determine any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement, or document created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

**11.1.14.** enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Reorganization Case; and,

**11.1.15.** hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under the Bankruptcy Code.

**11.2. Alternative Jurisdiction**.   In the event that the Bankruptcy Court is found to lack jurisdiction to resolve any matter, then such matter may be brought before any court having jurisdiction with regard thereto; *provided, however,* that any party that has filed a Claim or votes to accept this Plan consents to the jurisdiction of the United States District Court for the Middle District of Louisiana and to venue in the Parish of  East Baton Rouge, Louisiana, regardless of whether the Class of which such party is a member votes to accept this Plan.

## XII. MISCELLANEOUS PROVISIONS

**12.1. Authorization of Effectuating Documents and Further Transactions**.  The Debtor's President, Don Richardson, is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures and other agreements or documents, and to take such actions as may be necessary or appropriate, to effectuate and further evidence the terms and conditions of this Plan and the debt and equity securities issued pursuant to this Plan.

**12.2. Exemption from Transfer Taxes**.  Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under this Plan, the creation of any mortgage, deed of trust, Lien, pledge or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

**12.3. Statutory Fees**.  All fees payable pursuant to Section 1930 of Title 28 of the United States Code shall be paid by the Debtor on or before the Effective Date, and thereafter by the Reorganized Debtor.  The Debtor shall pay all such fees on a timely basis and comply with all reporting requirements of the Office of the U.S. Trustee.

**12.4. Third Party Agreements**.  The Distributions to the various Classes of Claims hereunder shall not affect the right of any Person to levy, garnish, attach, or employ any other legal process with respect to such Distributions by reason of any claimed subordination rights or otherwise. All of such rights and any agreements relating thereto shall remain in full force and effect, except as compromised and settled pursuant to this Plan.  Distributions shall be subject to and modified by any Final Order directing distributions other than as provided in this Plan.

**12.5. Severability**.  In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision in this Plan is invalid, void or unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other provision of this Plan, or alter, amend, revoke, or withdraw this Plan.

**12.6. Governing Law**.  Except to the extent that federal law (including, but not limited to, the Bankruptcy Code and the Bankruptcy Rules) is applicable or this Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Louisiana without giving effect to its conflicts of law principles.

**12.7. Notices**.  Any notice required or permitted to be provided under this Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight delivery service, freight prepaid.  If to the Debtor or Reorganized Debtor, any such notice shall be directed to the following at the addresses set forth below:

Red Barn Motors, Inc.
Attn: Don Richardson
26007 LA Hwy. 16
Denham Springs, Louisiana  70726

with a copy to:

Mr. Don Richardson
8628 Shadow Springs Blvd.
Denham Springs, Louisiana  70726

and to:

Steffes, Vingiello & McKenzie, LLC
13702 Coursey Blvd., Building 3
Baton Rouge, Louisiana  70817
Attention:  Arthur A. Vingiello
E-mail:  *avingiello@steffeslaw*.com
Facsimile:  (225) 751-1998

**12.8. Interest and Attorneys' Fees**.  Interest accrued after the Petition Date shall accrue and be paid on Claims only to the extent specifically provided for in this Plan, the Confirmation Order or as otherwise required by the Bankruptcy Court or applicable law.  No award or reimbursement of attorneys' fees or related expenses or disbursements shall be allowed on, or in connection with, any Claim, except as set forth in this Plan or as ordered by the Bankruptcy Court.

**12.9. Binding Effect**.  This Plan shall be binding upon the Debtor, the Reorganized Debtor, the Holders of all Claims and Interests, parties in interest, Persons, Entities and Governmental Units and their respective successors and assigns.  To the extent any provision of the Disclosure Statement or any other solicitation document may be inconsistent with the terms of this Plan, the terms of this Plan shall be binding and conclusive.

**12.10. No Admissions**.  As to contested matters, adversary proceedings and other Causes of Action or threatened Causes of Actions, nothing in this Plan, the Disclosure Statement or other Plan Documents shall constitute or be construed as an admission by any Person of any fact or liability, stipulation, or waiver, but rather as a statement made in settlement negotiations.  This Plan shall not be construed to be conclusive advice on the tax, securities, and other legal effects of this Plan as to Holders of Claims against, or Interests in, the Debtor or any of their subsidiaries and affiliates, as debtor and debtor-in-possession in this Reorganization Case.

The undersigned have executed this Amended Plan of Reorganization, as of the 10th day of December, 2013.

Respectfully submitted;

By: s/ Don Richardson, President
Red Barn Motors, Inc., Debtor

STEFFES, VINGIELLO & McKENZIE, LLC
13702 Coursey Blvd., Building 3
Baton Rouge, Louisiana  70817
Telephone:  (225) 751-1751
Facsimile:  (225) 751-1998
E-mail:  *avingiello@steffeslaw.com*

By: s/Arthur A. Vingiello
ARTHUR A. VINGIELLO (#13098)

## UNIFORM GLOSSARY OF DEFINED TERMS FOR PLAN, DISCLOSURE STATEMENT, AND PLAN DOCUMENTS

*Administrative Expense* means (a) any cost or expense of administration of the Reorganization Case incurred before the Effective Date and allowable under Section 503(b) of the Bankruptcy Code and entitled to priority under Section 507(a)(2) of the Bankruptcy Code including, without limitation, (i) any actual and necessary post-petition cost or expense of preserving the Estate or operating the businesses of the Debtor, (ii) any payment required to cure a default on an Assumed Contract, (iii) any post-petition cost, indebtedness, or contractual obligation duly and validly incurred or assumed by the Debtor in the ordinary course of their business, and (iv) compensation or reimbursement of expenses of professionals to the extent allowed by the Bankruptcy Court under Sections 330(a) or 331 of the Bankruptcy Code and (b) any fee or charge assessed against the Estates under 28 U.S.C. § 1930.

*Administrative Expense Claim* means any Claim for the payment of an Administrative Expense.

*Allowed* means Bankruptcy Court approval of a Claim or Interest.

*Allowed Amount* of any Claim or Interest means the amount at which that Claim or Interest is Allowed.

*Allowed Claim; Allowed Interest* means any Claim or Interest in the Debtor or their Estate, (i) proof of which was filed on or before the Bar Date (defined below), (ii) if no such proof of Claim or Interest has been timely filed, which has been or hereafter is listed by the Debtor in their Schedules as liquidated in amount and not disputed or contingent or (iii) any Interest registered in the membership register maintained by or on behalf of the Debtor as of the Record Date, in each such case in clauses (i), (ii) and (iii) above, a Claim or Interest as to which no objection to the allowance thereof, or action to equitably subordinate or otherwise seek recovery from the Holder of the Claim or Interest, has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order, or as to which an objection has been interposed and such Claim has been allowed in whole or in part by a Final Order.

*Assets* means all property in which the Debtor hold a legal or equitable interest, including all property described in 11 U.S.C. § 541 and all property disclosed in such Debtor' respective Schedules and the Disclosure Statement.

*Avoidance Actions* any means all of the Debtor' and the Estate's rights and claims under Sections 541 through 553 of the Bankruptcy Code, inclusive, or under any similar or related state or federal statute or common law, whether or not an action is initiated on or before the Effective Date.

*Ballot* means each of the ballot forms for voting to accept or reject the Plan distributed to all Holders of Impaired Claims entitled to vote on the Plan.

***Balloting and Claims Agent*** means Steffes, Vingiello & McKenzie, LLC, 13702 Coursey Blvd., Building 3, Baton Rouge, Louisiana  70817.

***Bankruptcy Code*** means Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.,* as in effect on the Petition Date, together with all amendments and modifications thereto subsequently made, to the extent applicable to the Reorganization Cases.

***Bankruptcy Court*** means the United States Bankruptcy Court for the Middle District of Louisiana, or such other court having jurisdiction over the Reorganization Case.

***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure and the local rules and general orders of the Bankruptcy Court, as in effect on the Petition Date, together with all amendments and modifications thereto subsequently made applicable to the Reorganization Cases.

***Bar Date*** means the date(s) by which any Entity asserting certain Claims against the Debtor must have filed a Proof of Claim or be forever barred from asserting such Claims against the Debtor or their Estate, as established by any order(s) of the Bankruptcy Court or the Plan.

***Business Day*** means any day other than a Saturday, Sunday, or legal holiday (as such term is defined in Bankruptcy Rule 9006(a)).

***Cash*** means cash, cash equivalents, and other readily marketable securities or instruments, including, without limitation, direct obligations of the United States and certificates of deposit issued by federally insured banks.

***Causes of Action*** means all causes of action, rights, claims, and demands against any Persons that the Debtor or their Estate own or have an interest in or can assert in any fashion, or which could be asserted by the Debtor on behalf of any Creditor or Creditor representative under the Bankruptcy Code as Debtor in Possession, including but not limited to actions under 11 U.S.C. § 510 to subordinate Claims.

***Claim*** has the meaning set forth in Section 101(5) of the Bankruptcy Code, against the Debtor or their Estate whether or not asserted.

***Claimant*** means the Holder of a Claim.

***Class*** means a category of Holders of Claims or Interests, as set forth in Articles III of the Plan pursuant to Section 1122 of the Bankruptcy Code.

***Collateral*** means any property or interest in property of an Estate that is subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state law.

***Confirmation, Confirmation of the Plan,*** or ***Plan Confirmation*** means the approval of the Plan by the Bankruptcy Court at the Confirmation Hearing.

*Confirmation Date* means the date on which the Confirmation Order is entered on the docket of the Bankruptcy Court.

*Confirmation Hearing* means the hearing held by the Bankruptcy Court pursuant to Section 1128 of the Bankruptcy Code to consider Confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

*Confirmation Order* means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 and other applicable sections of the Bankruptcy Code.

*Convenience Class* means the Holders of Unsecured Claims in amounts equal to or less than Five Thousand Dollars ($5,000.00) or those Holders of Unsecured Claims in amounts greater than Five Thousand Dollars ($5,000.00) who elect to reduce their claim to Five Thousand Dollars ($5,000.00).

*Creditor* means any Person or Entity holding a Claim against the Debtor's Estate or pursuant to Section 102(5) of the Bankruptcy Code against property of the Debtor that arose or is deemed to have arisen on or prior to the Petition Date.

*Creditors' Disbursement Fund* means that fund of money established by the Debtor from the following sources:

> a) net cash flow from sales operations which is all cash over and above Debtor's monthly operating expenses (which average $22,113.00) and the funding of the Operational Reserve (see definition) as necessary; and,

> b) collections from BHPH receivables as follows: collections will be used to pay the Whitney Bank secured payment of $994.00, the Fair Hugh payment of $1,362.00, $2,000.00 per month into the Operational Reserve (see definition), and $5,000.00 per month into Red Barn Motors vehicle inventory for one (1) year or until that inventory reaches a maximum of $125,000.00 (roughly 80 vehicles). The balance of collections will be put into the Creditors' Disbursement Fund for distribution to Class 5 Claimants.

*Debtor* means Red Barn Motors, Inc.

*Debtor in Possession* means the Debtor between the Petition Date and the Effective Date when acting in the capacity of representative of their Estate in the Reorganization Case.

*Disclosure Statement* means the Disclosure Statement in Support of the Plan of Reorganization Proposed by the Debtor dated October 22, 2013, including all exhibits attached thereto or referenced therein, as submitted pursuant to Section 1125 of the Bankruptcy Code and approved by the Bankruptcy Court, as such Disclosure Statement may be further amended, supplemented, or modified from time to time.

***Disputed Claim*** means a Claim that is not an Allowed Claim, including a Claim that is, in whole or in part:  (a) listed on the Schedules as, or proof of which is filed as, unliquidated, disputed or contingent; (b) as to which a Proof of Claim designating such Claim as liquidated in amount and not contingent was not timely and properly filed; (c) as to which the Debtor, Reorganized Debtor, or other party in interest has filed a timely objection or request for estimation in accordance with the Bankruptcy Code and Bankruptcy Rules; or (d) is otherwise disputed by the Debtor, the Reorganized Debtor or other party in interest in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order.

***Distribution*** means any distribution by the Debtor or the Reorganized Debtor to the Holders of Allowed Claims pursuant to the Plan.

***Effective Date*** means the date specified by the Debtor in a notice filed with the Bankruptcy Court as the date on which this Plan shall take effect, and which occurs after (i) the Confirmation Order becomes a Final Order; and (ii) the condition precedent to the Effective Date provided for in Article X of the Plan has been satisfied.

***Entity*** has the meaning set forth in Section 101(15) of the Bankruptcy Code.

***Equity Interests*** or ***Interests*** means the rights of the Holders of the equity securities of the Debtor.

***Estate*** means the legal entity administering the property of the Debtor, in its capacity as a Debtor in Possession, between the Petition Date and the Effective Date, created pursuant to Section 541 of the Bankruptcy Code.

***Filed*** means properly and timely filed with the Bankruptcy Court in the Bankruptcy Case, as reflected on the official docket of the Court for the Bankruptcy Case and properly served, as such filing and service are required pursuant to the Bankruptcy Code, Bankruptcy Rules and/or Order of the Court.

***Final Order*** means an order of a court:  (a) as to which the time to appeal, petition for writ of certiorari, or otherwise seek appellate review or to move for reargument, rehearing, reconsideration or stay has expired and as to which no appeal, petition for writ of certiorari, or other appellate review, or proceedings for reargument, rehearing, reconsideration or stay shall then be pending; or (b) as to which any right to appeal, petition for certiorari, or move for reargument, rehearing or stay shall have been waived in writing by all parties with such right; or (c) in the event that an appeal, writ of certiorari, or other appellate review or reargument, rehearing, reconsideration or stay thereof has been sought, which order shall have been affirmed by the highest court to which such order was appealed or from which writ of certiorari or other appellate review or reargument, rehearing, reconsideration or stay was sought, and as to which the time to take any further appeal, to petition for writ of certiorari, to otherwise seek appellate review, and to move for reargument, rehearing, reconsideration or stay shall have expired; *provided, however*, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or under Section 1144 of the Bankruptcy Code, or any analogous rule

under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order.

*General Unsecured Claim* means a Claim against the Debtor that is not an Administrative Expense Claim, a Priority Tax Claim, or a Secured Claim (but shall not include Claims that are disallowed or released, whether by operation of law or pursuant to order of the Bankruptcy Court, written release or settlement, the provisions of the Plan or otherwise), which Claims are classified in Class 5 of the Plan.

*Governmental Unit* has the meaning ascribed to such term in Section 101(27) of the Bankruptcy Code.

*Holder* means any Person holding an Interest or Claim.

*Impaired* means a Claim or a Class of Claims that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

*Lien* has the meaning set forth in Section 101(37) of the Bankruptcy Code.

*Opererational Reserve* means that fund of money established by the Debtor from sales operations and collection of BHPH receivables until the fund reaches two (2) months of estimated operational expenses, i.e. $44,226.00.

*Order for Relief Date* means the Petition Date.

*Petition Date* means April 26, 2013, the date on which the Debtor's Reorganization Case was commenced with the filing of a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

*Plan* means this Amended Plan of Reorganization for the Debtor, proposed by the Debtor, dated December 10, 2013 under Chapter 11 of the United States Bankruptcy Code, including all exhibits attached hereto or referenced therein, as the same may be amended, modified, or supplemented from time to time.

*Priority Tax Claim* means a Claim of a Governmental Unit of the kind specified in Section 507(a)(8) of the Bankruptcy Code and specifically includes such claims that are secured by Liens.

*Pro Rata* means, with reference to any Distribution on account of any Allowed Claim or Allowed Interest in a Class, a Distribution equal in amount to the ratio (expressed as a percentage) that the amount of such claim bears to the aggregate amount of all Allowed Claims in the same Class.

*Proof of Claim* means any proof of claim filed with the Bankruptcy Court or the Balloting and Claims Agent with respect to the Debtor pursuant to Section 501 of the Bankruptcy Code and Bankruptcy Rules 3001 or 3002.

***Reorganization Case*** means this Chapter 11 case.

***Reorganized Debtor*** means the Debtor after the occurrence of the Effective Date.

***Schedules*** means the schedules, statements, and lists filed by the Debtor with the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as may be amended or supplemented from time to time.

***Secured Claim*** means any Claim that is (a) secured in whole or part, as of the Petition Date, by a Lien against property of a Debtor that is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law, or (b) subject to setoff under Section 553 of the Bankruptcy Code; *provided**, however,*** with respect to both (a) and (b) above, a Claim is a Secured Claim only to the extent of the value, net of any senior Lien, of the Estate's interest in the assets or property securing any such Claim or the amount subject to setoff, as the case may be.

***Tax Claim*** means any Claim for any and all federal, state, county and local income, *ad valorem*, excise, stamp and other taxes of any type or nature whatsoever.

***U.S. Trustee*** means the Office of the United States Trustee.

***Voting Deadline*** means the deadline set by the Bankruptcy Court for submitting Ballots on the Plan.

# Red Barn Motors, Inc.
## Case # 13-10548
### Executory Contracts and Unexpired leases

| Name | Date | Purpose | Status |
|---|---|---|---|
| * Marlin Bank | Nov-12 | Copy Machines | Still Using.  Trying to re-negotiate for reduced contract as all machines not now needed - |
| Cox Communications | Jul-12 | Cable | Recently discontinued service as would not restructure the lease for reduced services -=balance owning. |
| *AT&T | Oct-13 | Phone & Internet | restoring contract with termination of Cox services |
| * Carfax | May-10 | reports | Still using |
| * First Data Global Leasing | Jun-10 | Credit Card Machines | Still using.  Returned some of equipment.  Lease balance owing.  FDGL pursuing guarantors. |
| * Equifax | Mar-11 | reports | Continuing |
| All Data | Jan-13 | diagnostic program | contract terminated. |
| Wright Express | Jul-12 | gas card | Service terminated.  Balance owing |
| Fuelman | Dec-11 | gas card | Service terminated.  Balance owing |
| * Arceneaux Pest Management | May-10 | pest control | Continuing |
| * Signature Alarms | Apr-10 | Security | Continuing on reduced service basis |
| * Central Dispatch | Oct-10 | Car Carrier | Continuing on pay as you go basis |
| Chase Bank | Nov-11 | Credit Card | Card use discontinued. Balance owing. |
| Pelican Pages | Aug-11 | advertising | Discontinued |
| Sunshine Media | Feb-11 | advertising | Discontinued |
| * Friday Systems | Apr-13 | Inventory software | Reinstututed contract.  Currently using. |
| * Greg Kennedy, CPA | Feb-11 | payroll processing | Continuing to use. |
| * Autonique | Jan-13 | Auto reports | Continuing to use. |

Note:  Parties to contracts/leases are Red Barn Motors, Inc. and vendor.

* Assumed by Debtor pursuant to Plan of Reorganization