**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**(Indianapolis Division)**

| | | |
|---|---|---|
| **RED BARN MOTORS, INC.,** | * | **DOCKET NO. 1:14-cv-01589-TWP-DKL** |
| **PLATINUM MOTORS, INC.,** | * | |
| **MATTINGLY AUTO SALES, INC.,** | * | **CLASS ACTION** |
| **Individually, and on behalf of other** | * | |
| **members of the general public** | * | |
| **similarly situated** | * | |
| | * | |
| **v.** | * | |
| | * | |
| **COX ENTERPRISES, INC.,** | * | |
| **COX AUTOMOTIVE, INC.,** | * | |
| **NEXTGEAR CAPITAL, INC.,** | * | |
| **F/K/A DEALER SERVICES** | * | |
| **CORPORATION, successor by merger** | * | |
| **with Manheim Automotive Financial** | * | |
| **Services, Inc., and JOHN WICK** | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON BREACH OF CONTRACT CLAIM

Plaintiffs—Red Barn Motors, Inc. ("Red Barn"), Platinum Motors, Inc. ("Platinum"), and Mattingly Auto Sales, Inc. ("Mattingly")—respectfully submit this memorandum in support of their motion for partial summary judgment on their breach of contract claim against Defendant, NextGear Capital, Inc. f/k/a Dealer Services Corporation ("NextGear").

The crux of Plaintiffs' breach of contract claim is that NextGear charged them interest on certain transactions prior to making an advance, *i.e.,* interest accrued *before* NextGear had made any payment to an auction on their behalf. The essential facts relevant to the breach of contract are not in dispute. As set forth below, there is no dispute that each Plaintiff entered into a contract with NextGear, that NextGear routinely charged interest beginning on the floorplan date rather than on the date of advance, or that for certain transactions there was a delay between the date NextGear

began charging interest and the date NextGear made an advance on Plaintiffs' behalf. There is not even a dispute as to the amount of interest NextGear charged Plaintiffs on their transactions prior to making advances on their behalf, *i.e.,* the existence or amount of Plaintiffs' damages arising from NextGear's breach of contract. Thus, there is no genuine issue as to any material fact relevant to Plaintiffs' breach of contract claim. The only dispute is a legal one—whether NextGear's practice of charging interest prior to making an advance constituted a breach of its contract with Plaintiffs. That issue, the interpretation of the contract, is appropriately decided on summary judgment. The contract is ambiguous on its face with respect to when NextGear could begin charging interest, and therefore must be construed against NextGear, its drafter. Plaintiffs are entitled to partial summary judgment on both liability and damages as to their breach of contract claim.

## **PROCEDURAL BACKGROUND**

This suit was originally filed on December 3, 2013 in the United States District Court for the Middle District of Louisiana. That Court transferred the matter to this Court on September 30, 2014. Plaintiffs filed their Verified Amended Complaint on March 11, 2016, adding new substantive claims as well as claims on behalf of a putative class. Dkt. 117. Defendants filed a motion to dismiss Plaintiffs' claims on April 15, 2016, which Plaintiffs opposed. Dkt. 126; Dkt. 127; Dkt. 135. On March 27, 2017, this Court entered an Order denying defendants' motion in part and granting it in part. Dkt. 187. Plaintiffs' breach of contract claim, as well as their constructive fraud and substantive RICO claims, remain.[1]

---

[1]     Also pending before the Court is Plaintiffs' motion for class certification and appointment of class counsel, which was filed on September 30, 2016. Dkt. 153. That motion is set for oral argument on May 9, 2016.  Dkt. 189.

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE[2]

1. NextGear is an automotive financing company that provides line of credit financing to used car dealers throughout the United States. *See* Answer and Affirmative Defenses of Defendants Cox Automotive, Inc., NextGear Capital, Inc., and John Wick, Dkt. 188 ("Answer"), ¶¶ 5 and 9.

2. Dealers utilize the revolving lines of credit, sometimes referred to in the auto industry as floorplan agreements, to purchase used cars for resale, most commonly at auction. *See* Answer, ¶¶ 5 and 9; Excerpt of Transcript of December 20, 2016 Rule 30(b)(6) Deposition of NextGear ("NextGear 30(b)(6) Depo."), attached to Designation of Evidence as **Exhibit A**, at 107:20-108:4 (auctions are the majority, maybe 75 or 80 percent, of transactions).

3. Each Plaintiff entered into a floorplan agreement with NextGear in the form of a Demand Promissory Note and Security Agreement. *See* Answer, ¶ 39; ¶ 55 and ¶ 64.

4. On or about July 29, 2011, Red Barn and NextGear entered into a Demand Promissory Note and Security Agreement in the principal sum of $200,000.00; that contract was attached to the Amended Complaint as Exhibit A. *See* Answer, ¶ 39 and Dkt. 117-1.

5. On or about May 23, 2011, Platinum and NextGear entered into a Demand Promissory Note and Security Agreement in the principal sum of $35,000.00; that contract was attached to the Amended Complaint as Exhibit C. *See* Answer, ¶ 55 and Dkt. 117-3.

6. On or about February 5, 2009, Mattingly and NextGear entered into a Demand Promissory Note and Security Agreement in the principal sum of $100,000.00; that

---

[2]     *See* S.D. Ind. L.R. 56-1(a).

3

contract was attached to the Amended Complaint as Exhibit D. *See* Answer, ¶ 64 and Dkt. 117-4.

7. The floorplan agreement at issue in this case was a form, or "take-it-or-leave-it" contract drafted by NextGear. *See* NextGear 30(b)(6) Depo., at 58:9-59:10 (the Demand Promissory Note and Security Agreement is "generally a take-it-or-leave-it" contract, the terms of which are generally not individually negotiated with dealers).

8. Red Barn, Platinum, and Mattingly utilized their floorplan agreements as needed to purchase vehicles, often at auction, for resale on their car lots. *See* Answer, ¶ 40 (Red Barn); ¶ 56 (Platinum); and ¶ 65 (Mattingly); NextGear 30(b)(6) Depo. at 107:20-108:4 (majority of transactions were at auction).

9. For purposes of this litigation, NextGear created and produced account summaries for each Plaintiff containing certain information pertaining to each of their transactions with NextGear. *See* Excerpt of November 10, 2016 Deposition of Adam Galema ("Galema Depo."), attached to Designation of Evidence as **Exhibit B**, at 25:2-26:17 (the Red Barn account summary was created by NextGear specifically for this litigation); NextGear 30(b)(6) Depo. at 17:18-23 (the account summaries report was "created for this case"); NGR-000001-000035 ("Account Summaries") (Dkt. 165-4, also attached as Exhibit 2 to NextGear 30(b)(6) Depo.).

10. The Account Summaries contain, among other information, the "Flooring Date" and the "Total For" date for each of the Plaintiffs' transactions with NextGear. *See* Account Summaries.

11. The "Flooring Date" was the date on which the Plaintiffs placed a vehicle on their floorplan, or "floorplanned" a vehicle. *See* NextGear 30(b)(6) Depo. at 9:12-14 ("Q. And then the "Flooring Date" is the date that it was floorplanned with NextGear; correct? A. That's correct.").

12. The "Total For" date was the date on which NextGear transferred cash to the seller, generally an auction, on Plaintiffs' behalf. *See* Galema Depo. at 38:8-14 ("Total for" is "the total of the transactions that were funded on that particular date" … "the date that NextGear sent cash to the auction.").

13. NextGear charged the Plaintiffs interest beginning on the Flooring Date (also known as the floorplan date). *See* Defendant NextGear Capital, Inc.'s First Amended Responses and Objections to Plaintiffs' First Set of Written Discovery, dated September 27, 2016, attached to Designation of Evidence as **Exhibit C**, Responses to Requests for Admission 3, 4, and 5 (in response to requests relating to the timing of interest charges to Red Barn, Platinum, and Mattingly, respectively, stating that "NextGear generally began to charge interest as of the floor plan date"); NextGear 30(b)(6) Depo. at 9:12-14 ("Q. And then the 'Flooring Date' is the date that it was floorplanned with NextGear, correct? A. That's correct.") and 96:2-9 (agreeing there is no dispute that NextGear charges interest beginning on the floorplan date).

14. The floorplan date sometimes occurred days or weeks before NextGear made payment to an auction on a customer dealer's behalf. *See* Account Summaries; NextGear 30(b)(6) Depo. at 96:2-9 (agreeing that "there are some times and some transactions a

5

time period between when NextGear/DSC begins charging interest to the dealers and when they pay the auction for the car").

15. With respect to transactions for which there was a delay between the flooring date and the "Total For" date, NextGear charged interest to Plaintiffs for a period of time prior to making advances on their behalf. *See* Account Summaries; NextGear 30(b)(6) Depo. at 96:2-9.

16. Plaintiffs' accounting expert witness, Jay Cunningham, used a per diem methodology to calculate the interest accrued on Plaintiffs' NextGear accounts prior to advances being made by NextGear. *See* Excerpt of Transcript of February 2, 2017 Deposition of Jay Cunningham ("Cunningham Depo."), excerpt attached to Designation of Evidence as **Exhibit D**, at 5:16-6:2 (identifying Cunningham's report) and Exhibit 1 thereto (Expert Report of Jay Cunningham ("Cunningham Report")) at p. 2, fn. 3 and 4 and accompanying text.

17. Defendants have stipulated to the per diem methodology of calculating the interest charged to the Plaintiffs. *See* December 27, 2016 Email Exchange Between Tracey Ledbetter, Katie Lasky, and Kerry Murphy, attached to Designation of Evidence as **Exhibit E**. *See also* Cunningham Depo. at 49:5-18 (parties have stipulated to use of per diem methodology with respect to the interest charged to the Plaintiffs); Excerpt of Transcript of March 30, 2017 Deposition of David Hoffman ("Hoffman Depo."), excerpt attached to Designation of Evidence as **Exhibit F**, at 25:1-13 (stating that Hoffman, NextGear's accounting expert, read Cunningham's report and was not offering any opinions on his report or methodology).

6

18. The total amount of interest that NextGear charged to Red Barn on its transactions prior to an advance by NextGear (referred to in Cunningham's report as "Accrued Interest Overcharges") was $7,083.82. *See* Cunningham Report at p. 10, Table 1, and Exhibit 3 thereto (schedule of accrued interest overcharges).

19. The total amount of interest that NextGear charged to Platinum on its transactions prior to an advance by NextGear was $44.55. *See id.*

20. The total amount of interest that NextGear charged to Mattingly on its transactions prior to an advance by NextGear was $961.58. *See id.*

21. Cunningham also calculated prejudgment interest on the Accrued Interest Overcharges, at the rate of eight percent per annum, in the amounts of $2,903.67 for Red Barn, $587.21 for Mattingly, and $21.46 for Platinum. *See* Cunningham Report at p. 10, Table 1, and Exhibit 4 thereto (prejudgment interest calculation of accrued interest overcharges).

22. In 2013, NextGear began using a revised version of its floorplan agreement. *See* Declaration of Adam Galema, Dkt. 160-2 at ¶ 12 and agreement attached as Exhibit A thereto, Dkt. 160-3 ("2013 Contract"), also attached as Dkt. 154-17.

23. The 2013 version of NextGear's floorplan agreement specifically provided that interest could be charged prior to an Advance being made. *See* 2013 Contract at § 3(a) and Appendix A thereto at (24) and (25).

For the reasons set forth below, Plaintiffs are entitled to partial summary judgment as to both liability and damages on their breach of contract claim against NextGear.

## APPLICABLE STANDARD OF REVIEW

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008) (citing Fed. R. Civ. P. 56(c)).

"The nonmovant must set forth specific facts to show that a genuine issue exists. The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted) (overruled on other grounds).

The Court may consider a motion for partial summary judgment "as to particular issues or facts in a case, even if those issues are not in and of themselves dispositive of a claim or case." *Chubb Indem. Ins. Co. v. 21 E. Cedar, LLC*, 2014 WL 2619469, *4 (N.D. Ill. June 12, 2014); *see also Hill-Jackson v. FAF, Inc.*, 2011 WL 3902772, *2 (S.D. Ind. Sept. 6, 2011) ("A party may file a motion for partial summary judgment in order to dispose of and narrow down issues for trial."); Fed. R. Civ. P. 56(a). "Generally, construction of a written contract is a question of law for which summary judgment is particularly appropriate." *Walker v. Trailer Transit, Inc.,* 1 F. Supp. 3d 879,

882 (S.D. Ind. 2014), *aff'd in part,* 824 F.3d 688 (7th Cir. 2016) (quoting *Manzon v. Stant Corp.,* 202 F.Supp.2d 851, 856 (S.D. Ind. 2002)).

Here, Plaintiffs seek summary judgment on their breach of contract claim against NextGear and explicitly preserve their remaining causes of action (constructive fraud and substantive RICO) that are not addressed in this motion.[3]

## LAW AND ARGUMENT

Pursuant to the terms of their floorplan agreement with NextGear, Plaintiffs' breach of contract claim is governed by Indiana law.[4] The elements of a breach of contract claim under Indiana law are (a) the existence of a contract, (b) defendant's breach thereof, and (c) damages. *Roche Diagnostics Operations, Inc. v. Marsh Supermarkets, LLC,* 987 N.E.2d 72, 85 (Ind. Ct. App. 2013) (citing *Ruse v. Bleeke,* 914 N.E.2d 1, 11 (Ind. Ct. App. 2009)). As set forth below, all three elements are satisfied here with respect to Plaintiffs' breach of contract claim against NextGear, and summary judgment in Plaintiffs' favor is appropriate.

## I.   Existence of a Contract

There is no doubt that Plaintiffs have established the existence of a contract. Under Indiana law, a valid contract must contain an offer, acceptance, consideration, and a meeting of the minds. *See Prefontaine v. Green,* 2016 WL 4140939, *7 (S.D. Ind. Aug. 4, 2016) (citing *Conwell v. Gray Loon Outdoor Marketing Grp., Inc.,* 906 N.E.2d 805, 812-13 (Ind. 2009)). As this Court recently held, "[t]he parties agree that they entered into contracts." Dkt. 186 at p. 27. Indeed, it is undisputed

---

[3]     Because Plaintiffs will not conduct class discovery until after the Court rules on class certification (Dkt. 178), Plaintiffs specifically reserve the right to supplement this filing as needed following class discovery, including but not limited to seeking summary judgment on behalf of the entire class.

[4]     Dkt. 117-1, Dkt. 117-3, and Dkt. 117-4 at § 21 (Governing Law).

that each Plaintiff entered into a contract, specifically a Demand Promissory Note and Security Agreement, also known as a floorplan agreement, with NextGear.[5]

## II.   **Defendant's Breach of Contract**

As to the second element of Plaintiffs' contract claim—the Defendant's breach of the applicable contracts—the Court must determine whether (a) NextGear charged Plaintiffs interest beginning on the floorplan date rather than the sometimes later date of NextGear's advance to a third-party seller, generally an auction; and (b) this practice constituted a breach of Plaintiffs' floorplan agreements with NextGear. As discussed below, the answers to both questions are yes.

### 1.   *NextGear Routinely Charged Plaintiffs Interest From the Flooring Date, Often Prior to Making an Advance on Plaintiffs' Behalf to the Auction.*

There is no dispute that NextGear routinely charged Plaintiffs interest from the flooring date, not the date of NextGear's payment to the auction. NextGear's account summaries include, among other information, the "Flooring Date" for each of Plaintiffs' transactions with NextGear and the "Total For" date.[6] As NextGear has readily admitted, it routinely began charging interest on the "Flooring Date"—the date on which Plaintiffs would place a particular vehicle on their floorplan.[7] The "Total For" date was the date on which NextGear sent cash to the auction for the transactions listed.[8] By charging interest beginning on the flooring date rather than the date of advance, NextGear sometimes charged Plaintiffs interest for days or weeks before advancing any money on their behalf.[9]

---

[5]   *See* Stmt. of Facts, ¶ 3 and evidence cited therein.
[6]   *See* Stmt. of Facts, ¶¶ 9-10 and evidence cited therein.
[7]   *See* Stmt. of Facts, ¶¶ 11 and 13 and evidence cited therein.
[8]   *See* Stmt. of Facts, ¶ 12 and evidence cited therein.
[9]   *See* Stmt. of Facts, ¶¶ 14-15 and evidence cited therein.

10

A review of one transaction on the Red Barn transaction summary is instructive.[10] On August 26, 2011, Red Barn purchased a 1997 Ford Explorer XLT at auction, as reflected by the entries in the "flooring date" and "unit purchase date" columns.[11] NextGear began charging interest as of that date.[12] Red Barn paid off NextGear, with interest, on September 12, 2011, as reflected by the entry in the "completed date" column.[13] Meanwhile, NextGear did not pay the auction for that vehicle until October 7, 2011, almost a month later, as reflected by the entry in the "Total for" column.[14] Thus, for that particular transaction, NextGear charged interest for over a month before ever making a payment on Red Barn's behalf. While the length of time that interest was charged prior to an advance varied, there is no dispute that NextGear routinely charged interest from the flooring date and there were many transactions for which NextGear charged Plaintiffs interest for a period of time before making an advance.[15]

### 2. The Plaintiffs' Contract with NextGear Was a Form Contract and Was Ambiguous on the Issue of Whether Interest Could Be Charged Prior to an Advance by NextGear.

The contract, or "floorplan agreement", that Plaintiffs signed was a form contract, also known as a "take-it-or-leave-it" contract, drafted by NextGear.[16] As Mr. Galema testified on behalf of NextGear at the 30(b)(6) deposition:

58

```
 9   Q     Do you, on behalf of NextGear/DSC, have any
10         knowledge of the Demand Promissory Note and Security
11         Agreement, any of the terms in the Demand Promissory
12         Note and Security Agreement being individually
```

---

10      *See* NGR_000011-33. NGR_000001-000035 can be found at <u>Dkt. 165-4</u>.
11      *See* NGR_000014.
12      *See* Galema Depo. (Exhibit B to Designation of Evidence) at 55:8-12.
13      *See* NGR_000014 and Galema Depo., 54:20-55:7.
14      *See id.*
15      *See* Stmt. of Facts, ¶¶ 13-15 and evidence cited therein.
16      *See* Stmt. of Facts, ¶ 7 and evidence cited therein.

11

13      negotiated -- not including the Term Sheet -- the
14      Demand Promissory Note and Security Agreement, the
15      individual terms being individually negotiated with
16      any dealers during the relevant time period?
17  A   **They are generally not.  It is generally a**
18      **take-it-or-leave-it.**  I am aware that there have
19      been instances where certain points of that contract
20      and agreement have been negotiated.
21  Q   Do you have any specifics on those negotiations?
22  A   I was not involved in them directly.
23  Q   Do you know how many times that terms on the Demand
24      Promissory Note and Security Agreement were changed
25      for individual dealers?
59

1  A   I'm not familiar with the number exactly, no.
2  Q   Do you think it was less than ten?
3  A   Hard to say.  It's probably around that number.
4  Q   And do you know how many Demand Promissory Notes and
5      Security Agreements were signed with DSC between
6      2005 and 2013?
7  A   The exact number, I do not know.  There would have
8      been, just to give you an estimate, complete
9      estimate, maybe around, it's hard to say, **20,000**
10     **during that time frame.**

NextGear 30(b)(6) Depo. at 58:9-59:10 (emphasis added). In other words, NextGear estimated that

in only around ten of 20,000 contracts between 2005 and 2013—less than 1 percent of its

contracts—did NextGear change any of the terms for an individual customer dealer.

     That form NextGear contract, into which Plaintiffs entered, is ambiguous on the issue of

when NextGear could begin charging interest. Section 3 of the contract provides that "[i]nterest

shall accrue on all Dealer Liabilities…[.]"[17] Similarly, the agreement defines "Interest" as "the

---

[17]    *See* <u>Dkt. 117-1</u>, <u>Dkt. 117-3</u>, and <u>Dkt. 117-4</u> (Plaintiffs' contracts with NextGear and
Exhibits A, C, and D to Verified Amended Complaint) at § 3.

12

aggregate rate of interest which accrues on all Liabilities owed by Dealer to [NextGear] under or arising out of this Note…[.]"[18] It defines "Liabilities" as:

> any and all Advances, debts, DSC Financed Inventory Liabilities, financial obligations, DSC Administrative Fees, DSC Universal Fees, Interest, Floorplan Fees, NSF fees, late fees, charges, expenses, attorney fees, costs of collection, covenants, and duties owing, arising, due or payable from Dealer to [NextGear] of any kind or nature, present o[r] future, under any instrument, guaranty, or other document whether arising under this Note or any other agreement, whether directly or indirectly (including those acquired by assignment), absolute or contingent, primary or secondary, due or to become due, now existing or hereafter arising and however acquired.[19]

It is clear from the above definition and other contractual provisions that NextGear could charge interest when an advance was made on a dealer's behalf. The contract defines "Advance" as "any loan or payment in any amount made pursuant to this Note by DSC ***to Dealer or on Dealer's behalf to any third party*[.]"[20]** It defines "DSC Financed Inventory" as "any Unit now or hereinafter acquired or retained by Dealer ***pursuant to an Advance*** under this Note. DSC Financed Inventory includes Purchase Money Inventory[.]"[21] It defines "Purchase Money Inventory" as "a Unit acquired by Dealer ***pursuant to an Advance under this Note*[.]"[22]** Perhaps most importantly, the agreement states that if NextGear makes an Advance, "the Advance shall be deemed an additional Liability under this Note ***from the date on which the Advance is made*.**"[23] The contract

---

[18]   *See* <u>Dkt. 117-1</u> and <u>Dkt. 117-3</u> at § 1(w) and <u>Dkt. 117-4</u>, § 1(t).
[19]   *See* <u>Dkt. 117-1</u> and <u>Dkt. 117-3</u> at § 1(y) and <u>Dkt. 117-4</u> at § 1(v).
[20]   *See* <u>Dkt. 117-1</u>, <u>Dkt.117-3</u>, and <u>Dkt. 117-4</u> at § 1(a) (emphasis added).
[21]   *See* <u>Dkt. 117-1</u> and <u>Dkt. 117-3</u> at § 1(n) and <u>Dkt. 117-4</u> at § 1(l) (emphasis added).
[22]   *See* <u>Dkt. 117-1</u> and <u>Dkt. 117-3</u> at § 1(dd) and <u>Dkt. 117-4</u> at § 1(aa) (emphasis added).
[23]   *See* <u>Dkt. 117-1</u>; <u>Dkt. 117-3</u>; <u>Dkt. 117-4</u> at § 5(b) and (c) (emphasis added).

contains no language whatsoever stating that NextGear could charge interest on a transaction *before* an advance was made.

In contrast, NextGear's revised 2013 contract does contain such language, demonstrating the ambiguity of the earlier contract on the issue of whether interest could be charged prior to an advance.[24] The revised contract adds entirely new language specifically purporting to allow interest to be charged from the sale date or the date of a request for an advance, regardless of when funds actually were advanced. That contract states, in pertinent part: "All outstanding Liabilities relating to a Floorplan Advance or a Receivable Advance ***shall accrue Interest on a per annum basis from the Floorplan Date*** or the Receivable Origination Date…[.]" *See* 2013 Contract (Dkt. 160-3; Dkt. 154-17), at NG_005148, Demand Promissory Note and Loan Security Agreement, § 3(a) (emphasis added). It defines "Floorplan Date" as "(a) for a Universal Source Purchase, the sale date*, regardless of the date the Floorplan Advance is actually requested or funded*; and (b) for a Specific Source Purchase, the date the request for the Floorplan Advance is received by Lender, ***regardless of the date such Floorplan Advance is actually funded***." *See id.* at NG_005161 (Appendix A), (25) (emphasis added). The contract defines "Floorplan Advance" as "an Advance made pursuant to this Note relating to a Unit of Inventory to be offered for sale, lease or rent, or leased or rented by Borrower in the Ordinary Course of Business[.]" *See id.* at (24).

In short, NextGear's 2013 contract specifically states that interest would accrue beginning on the sale date or date of floorplan request, *regardless of the date such Floorplan Advance was actually funded.* In contrast, the earlier contract that Plaintiffs signed contains no such language.[25]

---

[24]    *See* Stmt. of Facts, ¶¶ 22-23 and evidence cited therein.

[25]    *See, e.g.,* NextGear 30(b)(6) Depo., Exhibit A to Designation of Evidence, at 89:2-90:16 (failing to identify any language similar to the "Floorplan Date" language contained in the 2013

Because Plaintiffs' contract uses undefined terms within its definition of Liabilities and lacked any language specifically allowing NextGear to charge interest before making an advance, the contract Plaintiffs signed was ambiguous on its face as to the issue of when interest could be charged.

NextGear's motion to dismiss argued that "the contracts expressly contemplate that interest may accrue not only on advances actually made, but on other financial obligations, fees, and so on…" and cited a U.C.C. provision for the argument that Plaintiffs became obligated to fund their vehicle purchases at auction from the moment of a sale. Dkt. 127 at p. 23. Importantly, however, neither the definition of "Liabilities" nor any other part of the contract defines "financial obligations" or "debts," or certain other terms used in the Liabilities definition. NextGear's reliance on the U.C.C. to bolster its argument about the contract's so-called "express terms" underscores that those terms themselves did not clearly and expressly allow NextGear to charge interest before advancing funds on Plaintiffs' behalf. *See, e.g., Walker v. Trailer Transit, Inc.*, 1 F. Supp. 3d 879, 882 (S.D. Ind. 2014), *aff'd in part*, 824 F.3d 688 (7th Cir. 2016) (citation and quotation omitted)("Only when a contract is ambiguous or uncertain in its terms will extrinsic facts be useful in construing the contract and ascertaining the intent of the parties; otherwise, interpretation of the contract is purely a question of law to be determined by the trial court."); *Whitaker v. Brunner*, 814 N.E.2d 288, 294 (Ind. App. 2004) ("If…a contract is ambiguous, its meaning must be determined by examining extrinsic evidence and its construction is a matter for

---

contract appendix, stating "it does not appear to be this addendum that this is included in[,]" and declining the opportunity to review the entire Red Barn contract to locate the pertinent language). As NextGear's counsel stated at the 30(b)(6) deposition, "… the contracts speak for themselves… it's in there or not, and the Court can look at it and determine." *Id.* at 90:9-12.

15

the fact-finder.") (citation omitted). Indeed, the Court rejected NextGear's argument that the contract was clear and unambiguous in denying the motion to dismiss. <u>Dkt. 186</u> at p. 27.

### 3.   *Summary Judgment Is Appropriate Because the Contract Is Ambiguous On Its Face and Must Be Construed in Favor of Plaintiffs and Against NextGear, the Drafter.*

Generally, construction of a written contract is a question of law amenable to summary judgment. *Walker,* 1 F. Supp. 3d at 882.[26] This is true even where the language used in a contract gives rise to some ambiguity. As this Court has explained:

> "[I]f reasonable men would find the contract susceptible of more than one construction, ambiguity exists making summary judgment inappropriate. However, if the ambiguity arises not because of extrinsic facts but by reason of the language used, construction of the ambiguous contract is a question of law for the court." *McCae Mgmt. Corp. v. Merchants Nat. Bank & Trust Co. of Indianapolis*, 553 N.E.2d 884, 887 (Ind. Ct. App. 1990). A contract term is not ambiguous merely because the parties disagree about the term's meaning. *Roy A. Miller & Sons, Inc. v. Indust. Hardwoods Corp.*, 775 N.E.2d 1168, 1173 (Ind. Ct. App. 2002).
>
> Ambiguity in a contract may be one of two types: patent or latent. Patent ambiguity is "apparent on the face of the instrument and arises from an inconsistency or inherent uncertainty of language used so that it either conveys no definite meaning or a confused meaning." *Oxford Fin. Grp., Ltd. v. Evans*, 795 N.E.2d 1135, 1143 (Ind. Ct. App. 2003). A latent ambiguity, on the other hand, "rises only upon attempting to implement the contract." *Id.* at 1144. Patent ambiguities present pure questions of law, while latent ambiguities are resolved as questions of fact. *Felker v. Sw. Emergency Med. Serv., Inc.*, 521 F.Supp.2d 857, 867 (S.D. Ind. 2007). Extrinsic evidence is admissible to explain the meaning of a latent ambiguity,

---

[26]    *See also Yaglowski v. Trinity College of the Bible and Trinity Theological Seminary, Inc.*, 2015 WL 728384, *3 (S.D. Ind. 2015) (quoting *Breeding v. Kye's, Inc.,* 831 N.E.2d 188, 190 (Ind. Ct. App. 2005) (under Indiana law, interpretation of a contract's terms "'is generally a question of law for which summary judgment is particularly appropriate.'"); *Agrigenetics, Inc. v. Pioneer Hi-Bred Intern., Inc.,* 758 F. Supp. 2d 766, 771–72 (S.D. Ind. 2010) (recognizing that the "Seventh Circuit favors summary judgment as a means to resolve disputes over the interpretation of a contract.") (citing *Murphy v. Keystone Steel & Wire Co.*, 61 F.3d 560, 564–65 (7th Cir.1995) and *Metalex Corp. v. Uniden Corp. of America*, 863 F.2d 1331, 1333 (7th Cir. 1988)).

16

but is not admissible to explain a patent ambiguity. *Id.*

*Walker*, 1 F. Supp. 3d at 882. Here, the ambiguity in the contract is patent, because it is apparent on the face of the instrument itself. The ambiguity as to when NextGear could begin charging interest arises "not because of extrinsic facts but by reason of the language used" in the contract, particularly the definition of Liabilities, read in conjunction with the provision allowing interest to accrue on all Liabilities.[27] Accordingly, construction of the contract is a question of law for the Court. *Id.*

Further, under Indiana law, any ambiguities in the contract are to be construed against the drafter. *See, e.g., Craig v. Pepperidge Farm, Inc.*, 2011 WL 1626585, *2 (S.D. Ind. 2011) (citing *BKCAP, LLC v. CAPTEC Franchise Trust 2000–1*, 572 F.3d 353, 361 (7th Cir. 2009)); *Bradshaw v. Chandler*, 916 N.E.2d 163, 166 (Ind. 2009); *Fresh Cut, Inc. v. Fazli*, 650 N.E.2d 1126, 1132 (Ind. 1995) ("an ambiguous contract will be construed against its drafter.").[28] Here, the contract signed by Plaintiffs was drafted by NextGear, and indeed was a form, "take-it-or-leave-it" contract used by NextGear with nearly all of its customer dealers.[29] Further, Plaintiffs' interpretation of the

---

[27]    Indeed, in its recent decision on NextGear's motion to dismiss, this Court held that "[t]he contracts are not sufficiently clear to support the argument that NextGear was plainly allowed to charge interest and fees before actually paying the auction houses on the Plaintiffs' behalf." Dkt.186 at p. 27.

[28]    Under Indiana law, resolving contractual ambiguities against the drafter is only possible if the plaintiffs offer an interpretation of the contract that is reasonably consistent with the contract language. *See, e.g., BKCAP, LLC v. CAPTEC Fran. Trust 2000-1,* 572 F.3d 353, 361 (7th Cir. 2009), *as amended* (Aug. 5, 2009) (citing *MPACT Constr. Group, LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 910 (Ind. 2004) (concluding that certain contractual provisions "support both [parties'] arguments" and therefore construing against the drafter); *Showboat Marina Casino P'ship v. Tonn & Blank Constr.*, 790 N.E.2d 595, 598–99 (Ind. Ct. App. 2003) (interpreting ambiguous contract in favor of non-drafter's right to sue when contract contained two "contradictory methods of resolving any disputes under the contract")). *See also, e.g., Craig*, 2010 WL 3447560 at *6 (citations omitted).

[29]    *See* Stmt. of Facts, ¶ 7 and evidence cited therein.

contract is reasonably consistent with the contract's language, which specifically allowed interest to be charged when an Advance was made and did not specifically allow interest to be charged upon the floorplan date. Plaintiffs' interpretation is further supported by the fact that the 2013 NextGear contract specifically allowed interest to be charged from the floorplan date. Accordingly, the contract should be construed in Plaintiffs' favor and the Court should find that NextGear breached the contract by charging interest beginning on the floorplan date, prior to making an advance on Plaintiffs' behalf.

## III.    Existence of Damages

Finally, as to the third element of the contract claim, Plaintiffs suffered damages as a result of NextGear's breach. There is no dispute that on certain transactions, NextGear charged interest to Plaintiffs before making advances on their behalf.[30]

## IV.    Amount of Damages

In addition to liability for breach of contract, Plaintiffs are entitled to summary judgment as to the amount of their damages because there is no dispute as to that amount. Accountant Jay Cunningham, an expert witness for Plaintiffs, used a per diem methodology to calculate the interest accrued on Plaintiffs' NextGear accounts prior to advances being made by NextGear.[31] Indeed, Defendants have stipulated to the per diem methodology used by Cunningham.[32] The total amount

---

[30]    *See* Stmt. of Facts, ¶¶ 13-15 and evidence cited therein. Likewise, there is no dispute that NextGear charged interest to all of its dealers beginning on the floorplan date, not the date of advance. NextGear 30(b)(6) Depo. at 9:12-14 and 96:2-9. Thus, there is no dispute that the putative class will thus meet the damages element of the breach of contract claim as Plaintiffs do. Accordingly, Plaintiffs explicitly reserve the right to supplement this filing as needed following class discovery.

[31]    *See* Stmt. of Facts, ¶ 16 and evidence cited therein.

[32]    *See* Stmt. of Facts, ¶ 17 and evidence cited therein.

of interest that NextGear charged to Red Barn on its transactions prior to an advance by NextGear (referred to in Cunningham's report as Accrued Interest Overcharges) was $7,083.82; to Mattingly, $961.58; and to Platinum, $44.55.[33]

Finally, Plaintiffs are entitled to prejudgment interest at eight percent per annum.[34] Cunningham calculated prejudgment interest in the amounts of $2,903.67 for Red Barn, $587.21 for Mattingly, and $21.46 for Platinum.[35] In total, per Cunningham's calculations, Plaintiffs are entitled to the following damages suffered as a result of NextGear's breach of contract: Red Barn, $9,987.49; Mattingly, $1,548.79; and Platinum, $66.01. None of Cunningham's calculations of Plaintiffs' damages are disputed by NextGear. Thus, Plaintiffs are entitled to summary judgment as to the amount of their damages.[36]

---

[33]    See Stmt. of Facts, ¶¶ 18-20 and evidence cited therein. Cunningham's report also includes in its calculation of damages, and Plaintiffs seek, prejudgment interest on the Accrued Interest Overcharges. See Cunningham Report (Exhibit 1 to Cunningham Depo., Exhibit D to Designation of Evidence) at p. 10.

[34]    See, e.g., Mall at Potomac Mills, LLC v. Control Bldg. Services, Inc., 2015 WL 329181, *6–7 (S.D. Ind. 2015) ("'In diversity actions, federal courts must look to state law to determine the propriety of awarding prejudgment interest. In Indiana, prejudgment interest is available when damages are ascertainable in accordance with fixed rules of evidence and accepted standards of valuation at the time damages accrue, but is not appropriate when the trier of fact must use its best judgment to assess the amount of damages. The underlying purpose of awarding prejudgment interest on compensatory damages is to make the wronged party whole by compensating that party for being deprived of the money prior to judgment.'") (quoting Dale R. Horning Co. v. Falconer Glass Industries, Inc., 730 F.Supp. 962, 969 (S.D. Ind. 1990)); Easyrest, Inc. v. Future Foam, Inc., 2008 WL 126647, *2 (S.D. Ind. 2008) ("Under Indiana law, prejudgment interest is to be awarded where the amount of damages was fixed and ascertainable.... Under Indiana Code 24-4.6-1-103, unless a different rate is specified by contract, prejudgment interest is awardable at a rate of Eight Percent (8%) per annum from the time payment was due until judgment is entered") (citation omitted). Plaintiffs' damages for breach of contract are ascertainable and indeed have already been calculated by Cunningham using the methodology to which NextGear has stipulated.

[35]    See Stmt. of Facts, ¶ 21 and evidence cited therein.

[36]    Just as Plaintiffs' damages were readily calculable from the information provided on the account summaries from NextGear, so will be the damages of the putative class members using

## <u>CONCLUSION</u>

For the reasons set forth herein, Plaintiffs' motion for partial summary judgment should be granted and judgment should be entered in Plaintiffs' favor and against NextGear as to both liability and damages for breach of contract.

---

spreadsheet account summaries created by NextGear from its records. Plaintiffs explicitly reserve the right to supplement this filing as needed following class discovery.

20

Respectfully submitted,

*/s/ Kerry A. Murphy*
CATHERINE E. LASKY (La. Bar No. 28652)
*Pro Hac Vice*
KERRY A. MURPHY (La. Bar No. 31382)
*Pro Hac Vice*
**LASKY MURPHY LLC**
715 Girod Street, Suite 250
New Orleans, Louisiana 70130
Telephone: (504) 603-1500
Facsimile: (504) 603-1503
klasky@laskymurphy.com
kmurphy@laskymurphy.com


GLADSTONE N. JONES, III (La. Bar No.
22221) *Pro Hac Vice*
LYNN E. SWANSON (La. Bar No. 22650)
*Pro Hac Vice*
**JONES, SWANSON, HUDDELL &
GARRISON, L.L.C**.
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
Telephone: (504) 523-2500
Facsimile: (504) 523-2508
gjones@jonesswanson.com
lswanson@jonesswanson.co


CASSIE E. FELDER (La. Bar No. 27805)
*Pro Hac Vice*
**THE CASSIE FELDER LAW FIRM**
7515 Jefferson Hwy., #313
Baton Rouge, LA 70806
Main: (504) 232-1733
Cell: (504) 400-1127
cassie@cassiefelderlaw.com

JAMES M. GARNER (La. Bar No. 19589)
*Pro Hac Vice*
RYAN D. ADAMS (La. Bar No. 27931)
*Pro Hac Vice*
MATTHEW M. COMAN
(La. Bar No. 23613)
*Pro Hac Vice*
**SHER GARNER CAHILL RICHTER
KLEIN & HILBERT, L.L.C.**
909 Poydras Street, Suite 2800
New Orleans, Louisiana  70112
Telephone: (504) 299-2100
Facsimile: (504) 299-2300
jgarner@shergarner.com
radams@shergarner.com
mcoman@shergarner.com


Kathleen A. DeLaney (#18604-49)
**DELANEY & DELANEY LLC**
3646 North Washington Blvd.
Indianapolis, IN 46205
Telephone: (317) 920-0400
Facsimile: (317) 0404
Kathleen@delaneylaw.net


**COUNSEL FOR PLAINTIFFS AND
THE PROPOSED CLASS**

21

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 26th day of April, 2017, a copy of the foregoing was filed electronically. Notice of the filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

> David J. Jurkiewicz
> Paul D. Vink
> BOSE MCKINNEY & EVANS, LLP
> 111 Monument Circle
> Suite 2700
> Indianapolis, IN 46204
>
> Jason S. McCarter
> Tracey K. Ledbetter
> EVERSHEDS SUTHERLAND (US) LLP
> 999 Peachtree Street, NE, Suite 2300
> Atlanta, GA 30309-3996

*/s/ Kerry A. Murphy*