IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RED BARN MOTORS, INC., PLATINUM MOTORS, INC., MATTINGLY AUTO SALES, INC., and YOUNG EXECUTIVE MANAGEMENT & CONSULTING SERVICES, INC., individually and on behalf of other members of the general public similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COX ENTERPRISES, INC., COX AUTOMOTIVE, INC., NEXTGEAR CAPITAL, INC. F/K/A DEALER SERVICES CORPORATION, successor by merger with Manheim Automotive Financial Services, Inc., and JOHN WICK,<br><br>Defendants. | Case No. 1:14-cv-01589-TWP-DKL |

## DEFENDANT NEXTGEAR CAPITAL, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' SECOND SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

Pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure, Defendant NextGear Capital, Inc. ("NextGear") objects and responds to Plaintiffs' Second Set of Interrogatories and Requests for Production of Documents as follows:

### Objections to Plaintiffs' Instructions and Definitions

1. NextGear objects to producing responses to Plaintiffs' Interrogatories and Requests for Production within 30 days after service. Pursuant to the agreement of counsel, NextGear is producing its written responses and objections and responsive documents on or before October 27, 2016. Further, NextGear's discovery, review, and investigation of the claims made in this litigation is ongoing. All responses contained herein are based only on such

38075441.5

# EXHIBIT 1

5. NextGear objects to Plaintiffs' Definition 18, which purports to define the term "Floorplan Agreement," as vague and ambiguous. NextGear and its predecessors in interest, Dealer Services Corporation ("DSC") and Manheim Automotive Financial Services, Inc. ("MAFS"), have used different and sometimes separate notes, security agreements, fee schedules, powers of attorney, and, in some cases, various types of guaranties, subordination agreements, issue- or state-specific amendments, and other documents. These documents memorializing a customer's line of credit with NextGear changed over time; varied in business terms, number, and type from dealer to dealer; varied between NextGear, MAFS, and DSC; and may have varied on special deals and promotions.

6. NextGear objects to Plaintiffs' Definitions 16 ("Transaction"), 17 ("Auction"), 19 ("Customer Dealer"), and 20 ("Date of the Auction") as vague and ambiguous insofar as they incorporate the vague and ambiguous term "Floorplan Agreement."

7. In light of Young Executive Management & Consulting Services, Inc.'s withdrawal from this litigation, NextGear has not searched for documents or information relating to that former named Plaintiff.

## Specific Responses and Objections to Interrogatories

13. Please provide a detailed explanation of the reasons for which you defaulted each of the named Plaintiffs under any Floorplan Agreement, including but not limited to an identification of the documents and relevant dates on which your answer is based.

**Response:**

Mattingly Auto Sales, Inc. ("Mattingly"): On May 8, 2012, DSC Account Executive Lourdes Givens was informed by her counterpart at MAFS that MAFS was defaulting Mattingly's MAFS account and that MAFS would be attempting to repossess its collateral from Mattingly. Givens was told that MAFS had discovered Mattingly creating fraudulent "sales" on online venues, including Online Vehicle Exchange ("OVE"), by colluding with the "seller" to

3

inflate the purchase price reported for the sale; getting MAFS and DSC to advance the full, inflated purchase price; and then splitting the surplus over the actual transaction price with the seller. Mattingly was able to do this because its principal was aware that MAFS and DSC would advance 100% of the "purchase price" if the transaction was completed through an auction, whether online or otherwise. Givens reviewed the titles held by DSC on Mattingly's transactions and confirmed that Mattingly had been re-flooring vehicles at a higher price; that most of the transactions occurred on OVE or online at ABC Auction and therefore the vehicles did not run through any auction lanes and were not subject to competitive bidding; and that most of the transactions were with the same seller. Givens informed NextGear's Risk Department of her findings. Based on the event of default under Mattingly's agreement with NextGear, NextGear attempted to repossess the vehicles on the dealer's lot on May 9, 2012. Only five cars remained at the dealer's location, however.

Red Barn Motors, Inc. ("Red Barn"): On March 14, 2013, a payment that had posted to Red Barn's NextGear account on March 11, 2013 was returned for insufficient funds. On that same day, NextGear Risk Account Manager Melissa Robinson received a call from Inspector Ronnie Wisner. Wisner advised Robinson that he had spoken to the dealer that day. Wisner further advised that the dealer had stated to Wisner that: (1) the dealer had told NextGear to pick up its collateral; (2) the dealer and his wife were in bad health; and (3) the dealer was "out of trust" regarding six to eight units already. Robinson immediately provided this information to Risk Account Manager Keith Klingler. On March 15, 2013, six more payments from Red Barn were returned for insufficient funds. On that same day, Risk Account Manager Brad Cohen received an e-mail with the following contents from Account Executive Stuart LaBauve:

> I got a call from our auditor on Wednesday saying that the dealership had closed. I went to the lot to find out what was going on. There was no one there but the lot

> was full of cars. I wrote down all the vin's to see what was ours. Yesterday morning I went thru the receivable detail and I was able to verify I had touched 42 of our 72 units.
>
> I talked with Donald Richardson who is our signer but he said I needed to talk Devon, his son in law about missing units. When I talked to Devon he gave me two more places to look to locate cars. I went there yesterday and was able to touch 3 others. I talked to Devon again yesterday afternoon and he said a couple more units were brought back by customers. I am going to meet with him this morning to get the keys to what we have and bill of sales for sold units are start moving the inventory to the auction. Devon did call me late last night and said they are meeting with some people today who are interested in buying the lot. I let him know that is fine but I still need to start the process of securing our units.

Later that day, Cohen and Robinson each independently noted in NextGear's system that they had been informed that Red Barn had been the subject of a television news story on Channel 9 News in Baton Rouge, Louisiana. Based on this information regarding returned payments and the closure of the dealership, the account was referred to collections in March 2013.

Platinum Motors, Inc. ("Platinum"): On August 2, 2011, DSC's lot auditor, Sean Tabb, conducted a lot audit of the 15 vehicles that were on Platinum's DSC floor plan. As of August 8, 2011, four of these 15 vehicles had not been accounted for, despite owner Nicol Perry's representations that she would e-mail picture verifications of the missing vehicles to NextGear's Audit Reconciliation Representative. On August 17, 2011, Risk Account Manager Don Tyte requested that the local Account Executive, Lundy Touch, stop by the dealership and check on the status of the missing units. On August 18, 2011, a payment that had posted to Platinum's NextGear account on August 15, 2011 was returned for insufficient funds. On August 19, 2011, three more payments were returned for insufficient funds, and on August 22, 2011, six more payments were returned for insufficient funds. On August 24, 2011, Touch informed Tyte by e-mail that she was to meet the dealer at the auction that day to sell some of Platinum's inventory to pay DSC. Between August 24, 2011 and September 6, 2011, Touch attempted to work with

5

Perry to bring Platinum's account up to date. DSC received a wire on September 2, 2011 that paid off two vehicles—Stock #1 and #4—but the account remained delinquent. On September 13, 2011, DSC's Joshua Gerstung e-mailed and telephoned Perry to discuss past due and upcoming payments. Tyte recommended on September 15, 2011 that DSC end its relationship with Platinum.

Further, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, NextGear directs Plaintiffs to documentation produced, in some cases subject to a protective order, in response to Request for Production No. 22 reflecting information regarding Plaintiff's defaults.

## Specific Responses and Objections to Requests for Production

22. Please produce any and all documents identified in or relied upon in your answer to Interrogatory No. 13.

**Response:** NextGear has searched for and is producing with this response documents relating to the default of Red Barn, Mattingly, and Platinum. In addition, NextGear has previously produced subject to a protective order documents that may be responsive to this request, including NG_005996, NG_006539, NG_006538, and NG_005988.

23. Please produce all documents and information provided to Auction Insurance Agency regarding any of the named Plaintiffs.

**Response:** NextGear objects to Request No. 23 as overbroad insofar as it seeks "all documents and information," and NextGear may not have retained every written document related to the named Plaintiffs. Subject to and without waiving its objections, NextGear has performed a reasonable search of its computer system and certain custodians' email files, and has produced subject to a protective order emails and documents responsive to this request.

24. Please produce all documents and information provided to any party for inclusion in the "KO Book" that refers, relates or pertains in any way to any of the named Plaintiffs.

6

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RED BARN MOTORS, INC., PLATINUM MOTORS, INC., MATTINGLY AUTO SALES, INC., and YOUNG EXECUTIVE MANAGEMENT & CONSULTING SERVICES, INC., individually and on behalf of other members of the general public similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COX ENTERPRISES, INC., COX AUTOMOTIVE, INC., NEXTGEAR CAPITAL, INC. F/K/A DEALER SERVICES CORPORATION, successor by merger with Manheim Automotive Financial Services, Inc., and JOHN WICK,<br><br>Defendants. | Case No. 1:14-cv-01589-TWP-DKL |

## VERIFICATION

PERSONALLY APPEARED before me, the undersigned officer duly authorized by law to administer oaths, Adam Galema, who, after first being sworn, deposes and says, based on his personal knowledge and the documents and information available to him, that the factual statements relating to NextGear Capital, Inc. and its predecessor in interest Dealer Services Corporation contained in NextGear Capital, Inc.'s Responses and Objections to Plaintiffs' Second Set of Interrogatories are true and correct to the best of his knowledge, information, and belief.

*[signature on following page]*

1

_____
Adam Galema

Sworn to and subscribed before me
This 27th day of October, 2016

_____
Notary Public

My Commission Expires: 5/9/17

2