IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RED BARN MOTORS, INC., PLATINUM MOTORS, INC., and MATTINGLY AUTO SALES, INC., individually and on behalf of other members of the general public similarly situated,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>COX AUTOMOTIVE, INC., NEXTGEAR CAPITAL, INC. F/K/A DEALER SERVICES CORPORATION, successor by merger with Manheim Automotive Financial Services, Inc., and JOHN WICK,<br><br>　　　　Defendants. | Case No. 1:14-cv-01589-TWP-DKL |

## DECLARATION OF ADAM GALEMA

1.　I am over twenty-one years of age, of sound mind, and competent to make this declaration.

2.　I currently serve as the Senior Director of Finance for Defendant NextGear Capital, Inc. ("NextGear") and have held that position for two years. Before that, I was Controller of NextGear for several years. In my current role, I am responsible for the financial reporting of the company and that it aligns with and reflects our business operations. In that capacity, I am familiar with our floor plan products and related charges and default practices. This Declaration is based on my own personal knowledge, in reliance on the regular practices and procedures of NextGear, and on the records maintained by NextGear.

3.　NextGear was formed as Dealer Services Corporation ("DSC") and began doing business in 2005. When it started, DSC was an independent automotive financing company. One of DSC's competitors was Manheim Automotive Financial Services, Inc. ("MAFS"), which was affiliated with Cox Automotive, Inc. (f/k/a Manheim, Inc.) and the Manheim auctions. DSC itself, however, was not affiliated with any auction or bank.

4.　On March 1, 2012, DSC was acquired by Cox Automotive, Inc. ("Cox Auto").

5.　In January 2013, MAFS was merged into DSC and the surviving company was renamed NextGear Capital, Inc.

**EXHIBIT 14**

6. Prior to their merger in 2013, DSC and MAFS had different practices and, as competitors, had not coordinated with each other on interest or any other contract terms. DSC has not changed its general practices with respect to charging interest for units floored at auction since the acquisition by Cox Auto or the merger by which it became NextGear.

7. Cox Auto has indirect ownership and oversight of NextGear, but it has never directed NextGear's day-to-day interest and fee structure, Note terms, or default reporting to Auction Insurance Agency, either before or after the acquisition in 2012. NextGear decides those items for itself.

8. NextGear is an automotive financing company that offers revolving lines of credit to licensed car dealers for the purchase of motor vehicle inventory. These lines of credit are often referred to in the industry as "floor plans."

9. A floor plan with NextGear allows dealers to acquire vehicles without having to pay cash for them at the time of purchase. The dealer pays interest and fees to NextGear, and in exchange, NextGear takes on the credit risk while the dealer attempts to sell the inventory. The borrowing dealer grants NextGear a security interest in all the dealer's inventory and other personal property to secure the obligation, including but not limited to the units specifically financed by NextGear. Once the dealer receives payment, sells or otherwise disposes of a financed vehicle, or it reaches the maturity date, whichever is earlier, payment is due to NextGear.

10. Under its funding agreements with the auctions, NextGear has an obligation to pay an auction for a vehicle floor planned with NextGear at auction from the date of the auction. When a dealer floor plans a vehicle purchase at auction, the exact timing of financial settlement with the auction, varies by auction (*e.g.*, day of sale, upon notice that the auction has title, or upon receipt of title), but from the date of auction, NextGear is either conditionally or unconditionally committed to pay the auction for the unit on the dealer's behalf. Any agreed conditions (such as delivery of title) are outside NextGear's control at that point.

11. Thus, if a dealer floor plans a vehicle purchase at auction, NextGear immediately takes on the risk that the dealer will not pay for the vehicle. At that point, the dealer has use of the car for its inventory and business purposes, and NextGear is financially exposed to nonpayment and loss of collateral. Even if a dealer sells a vehicle it floor planned with NextGear without paying NextGear for the vehicle, NextGear must still pay the auction for the vehicle. In fact, each of the named Plaintiffs defaulted and failed to pay NextGear for certain vehicles, but NextGear still paid the auctions for those vehicles.

12. NextGear is a leading provider of loans in the independent used car floor planning space and has charged interest and fees from the date of auction on directly-financed auction purchases since 2005. To the best of my knowledge, all of our major competitors (*e.g.*, Automotive Finance Corporation, Auction Credit Enterprises, Westlake Flooring, AutoUse) do the same. Given that it is common in the used car floor planning industry, I would not expect a dealer to be surprised that interest and fees for directly-financed auction purchases would begin on the date of auction.

13. NextGear does not, as a general practice, initiate verbal representations to dealers regarding the accrual of interest, but if asked, NextGear will accurately describe how the contract and auction funding works.

14. NextGear relied on the provision in its promissory notes stating that "any statement of Dealer's account" provided by NextGear is binding on the dealer as to the amount owed, unless the dealer objects within 30 days, in continuing to loan to dealers after each 30-day period lapses. NextGear would not continue to loan to dealers if past transactions and obligations were not considered definitive and resolved.

15. NextGear has never operated, managed, participated in, or conducted a RICO enterprise related in any way to the KO Book, the plaintiffs, or our interest practices. NextGear has also never committed any act of racketeering as defined in 28 U.S.C. § 1961(1) related in any way to the KO Book, the plaintiffs, or our interest practices.

16. Platinum last floor planned a vehicle with DSC in 2011. It did not sign a new contract with NextGear in 2013.

17. As of July 26, 2013, Red Barn owed NextGear more than $134,775.06 in principal, fees, interest, and other charges on vehicles purchased, as well as account-level charges.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and accurate to the best of my knowledge.

This 26 day of April, 2017.

_____
Adam Galema

3