IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

RED BARN MOTORS, INC., PLATINUM       )
MOTORS, INC., and MATTINGLY AUTO      )
SALES, INC., individually and on behalf of   )
other members of the general public similarly  )
situated,                             )
                                      )
             Plaintiffs,              )
                                      )          Case No. 1:14-cv-01589-TWP-DKL
v.                                    )
                                      )
COX AUTOMOTIVE, INC., NEXTGEAR        )
CAPITAL, INC. F/K/A DEALER SERVICES   )
CORPORATION, successor by merger with )
Manheim Automotive Financial Services, Inc., )
and JOHN WICK,                        )
                                      )
             Defendants.              )

## NEXTGEAR'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON BREACH OF CONTRACT CLAIM

Plaintiffs urge this Court to adopt an interpretation of their floor plan agreements that would let them take auction cars for free. Plaintiffs acknowledge that they could take possession of cars the day of auction *only* because NextGear committed to pay the auction on Plaintiffs' behalf, a commitment that immediately saddled NextGear with an obligation to pay for the car and shifted all risk to NextGear. Yet Plaintiffs' entire contract claim is predicated on the notion that NextGear cannot charge interest for that credit and risk. Plaintiffs seek a substantial benefit—immediate possession of cars they can resell—without paying a dime.

Plaintiffs' novel claim is all the more galling given that Plaintiffs defaulted on their payment obligations to NextGear and collectively failed to pay NextGear over $224,000, more than *twenty-five times* the total interest they claim they were overcharged under their interpretation of the floor plan agreements. Plaintiffs also misused NextGear funds, wrote bad

checks to NextGear, and fraudulently sold cars out of trust (*i.e.*, without paying off their balances).  Not content with dodging payment for cars they floor planned through NextGear, Plaintiffs now claim *they* are entitled to damages because NextGear began charging interest at the same time that it assumed the obligation to pay for Plaintiffs' cars.  Plaintiffs' interpretation is not only untenable, commercially unreasonable, and patently unfair, but it is contrary to the plain language of the floor plan agreements.

The floor plan agreements are explicit that interest can be charged on all Liabilities, including Advances, and that an Advance can be either an actual payment or a commitment to pay.  Such a commitment occurred the moment Plaintiffs bought a car at auction using a floor plan.  Plaintiffs ask the Court to give them free financing by rewriting their contracts, years after the fact, to add a new term about when NextGear settles up with third-party auctions behind the scenes.  But such a restriction is nowhere in the Notes.[1]

The crux of Plaintiffs' case is that "NextGear charged interest to Plaintiffs for a period of time prior to making advances on their behalf" and that the Notes are ambiguous as to whether that is allowed.  (Pls.' MPSJ Br. [Doc. 195] at 6.)  But Plaintiffs ignore that interest under the Notes expressly accrues on all Liabilities—which explicitly include "Advances"—and that an "advance" is actually a defined term that includes both payments *and* "loans" made on Plaintiffs' behalf.  In other words, Plaintiffs mislead the Court by purposely omitting from their brief that the agreed meaning of "Advance" includes commitments to pay, such as those at issue to auctions, not just completed payments, as Plaintiffs would have this Court believe.

The Notes outline Plaintiffs' promise to pay NextGear; they do not restrict NextGear or address its payment arrangements with third-party vendors (like the auctions)—nor should they.

---

[1] "Notes" and "floor plan agreements" are used interchangeably, as both refer to the Demand Promissory Note and Security Agreement signed by each Plaintiff.

Quite simply, that information is not relevant to Plaintiffs' use of NextGear's credit to obtain inventory without immediately paying for it, just as arrangements between Visa and Kroger have no bearing on a consumer, so long as he or she obtains groceries without immediate cash payment by using a credit card. By express agreement between Plaintiffs and NextGear—all of which are sophisticated commercial parties—interest runs from the point NextGear is financially obligated for Plaintiffs' purchase, not from some later date not addressed in the Notes.

Even if the Court accepted Plaintiffs' theory that NextGear's arrangements with third-party vendors are material to the interest charges between the parties to this case, any ambiguity in the Notes requires recourse to extrinsic evidence like the parties' intent, course of performance, and trade practice, all of which are disputed.[2]

In short, Defendants' motion for summary judgment on the contract claim [Doc. 192] can and should be granted because NextGear properly charges "Interest" on all "Liabilities," which expressly include commitments to pay the auction on account of Plaintiffs. On the other hand, Plaintiffs' breach of contract theory hinges on a hidden "ambiguity," which at most creates issues of fact for trial.

---

[2] In their brief, Plaintiffs argue the floor plan agreements are ambiguous instead of plainly in their favor. This alleged ambiguity is fatal to Plaintiffs' pending Motion for Class Certification [Doc. 153], because determining the contract's meaning would require borrower-by-borrower proof of intent, course of performance, and other extrinsic evidence. *See Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1030 (8th Cir. 2010) ("liability to the entire class for breach of contract cannot be established with common evidence" where ambiguity has "open[ed] the door for extrinsic evidence"); *Cox v. Sherman Capital LLC*, No. 1:12-cv-01654-TWP-MJD, 2016 WL 274877, at *11 (S.D. Ind. Jan. 22, 2016) (predominance and superiority requirements not met "without some indication that the Plaintiffs' claims are capable of proof through evidence common to the class"); *Adams v. Kansas City Life Ins. Co.*, 192 F.R.D. 274, 282 (W.D. Mo. 2000) ("By allowing extrinsic evidence of the parties' dealings, the breach of contract claims become individualized and not reasonably susceptible to class action treatment.").

## FACTUAL BACKGROUND

The parties do not dispute that they entered into contracts by which NextGear provided financing to or on behalf of each of the named Plaintiffs.  (Plaintiffs' Statement of Material Facts Not in Dispute [Doc. 195, at 3-7] ("SMF") ¶¶ 1-6, 8.)  Although the Plaintiffs did not negotiate changes to NextGear's proposed form, they could have sought changes to the terms—*e.g.*, in the incorporated Term Sheet—before signing the contract.  (Deposition of Adam Galema as NextGear Capital, Inc. 30(b)(6) Representative ("NextGear Dep.") [Ex. 29] 56:4-59:22.)

Plaintiffs do not dispute that their contracts provided for accrual of interest on all "Liabilities":

> Interest shall accrue on all Dealer Liabilities in accordance with the following: (a) All outstanding Liabilities under this Note shall accrue interest (based upon a 360 day year), on a per annum basis and shall be compounded daily at the Base Rate plus the applicable Contract Rate, Risk Rate, or Default Rate until paid in full.

(Red Barn Note [Doc. 197-31] § 3(a), NG_003563; Mattingly 2009 Note [Doc. 197-35] § 3(a), MA 000024; Platinum Note [Doc. 197-37] § 3(a), NG_003514.)  "Liabilities" are in turn broadly defined as

> any and all Advances, debts, DSC Financed Inventory Liabilities, financial obligations, DSC Administrative Fees, DSC Universal Fees, Interest, Floorplan Fees, NSF fees, late fees, charges, expenses, attorney fees, costs of collection, covenants, and duties owing, arising, due or payable from Dealer to DSC of any kind or nature, present o[r] future, under any instrument, guaranty, or other document whether arising under this Note or any other agreement, whether directly or indirectly (including those acquired by assignment), absolute or contingent, primary or secondary, due or to become due, now existing or hereafter arising and however acquired.

(Red Barn Note [Doc. 197-31] § 1(y), NG_003562; Mattingly 2009 Note [Doc. 197-35] § 1(v), MA 000023; Platinum Note [Doc. 197-37] § 1(y), NG_003513.)  The Notes also define "Advance" broadly, as a "*loan or payment* in any amount made pursuant to this Note by [NextGear] to Dealer or on Dealer's behalf to any third party."  (Red Barn Note [Doc. 197-31]

§ 1(a), NG_003561 (emphasis added); Mattingly 2009 Note [Doc. 197-35] § 1(a), MA 000022 (emphasis added); Platinum Note [Doc. 197-37] § 1(a), NG_003512 (emphasis added).)  "[A]ny statement of Dealer's account" provided by NextGear is definitive and binding on dealers as to the amount owed unless the dealer objects within 30 days.  (Red Barn Note [Doc. 197-31] § 4(k), NG_003564; Mattingly 2009 Note [Doc. 197-35] § 4(h), MA 000025; Platinum Note [Doc. 197-37] § 4(k), NG_003515.)

During the entire time that NextGear did business with the named Plaintiffs, it charged interest from the date of auction for vehicles purchased at auction using a floor plan.  (4/26/2017 Galema Decl. [Doc. 197-24] ¶ 12.)  Both Red Barn and Mattingly knew this and nevertheless continued to do business with NextGear.  (Red Barn Dep. [Doc. 197-6] 75:19-77:6, 182:20-184:23, 186:20-187:7, 217:23-220:10; Red Barn Resp. to Interrog. 6 [Doc. 197-2]; Red Barn Transaction Report [Doc. 197-15]; Mattingly Dep. [Doc. 197-8] 75:6-76:18, 152:4-153:18, 153:25-155:9.)

In 2013, NextGear began to use a different form of contract.  (SMF ¶ 22.)  None of the Plaintiffs executed that version of the contract, as they had all defaulted on their payment obligations to NextGear in or before 2013.  (Red Barn Dep. [Doc. 197-6] 200:25-201:10; Red Barn (Richardson) Dep. [Doc. 197-7] 42:17-23; Mattingly Dep. [Doc. 197-8] 45:1-15; 4/26/2017 Galema Decl. [Doc. 197-24] ¶ 16; NextGear's Resp. to Interrog. 13 [Doc. 197-1].)  Like the Plaintiffs' contracts, though, the 2013 version of the contract provided that "Interest shall accrue on Borrower's Liabilities" and defined an Advance as "any discretionary *loan or payment* in any amount, for any purpose, made pursuant to this Note by Lender to Borrower or on Borrower's behalf to any third party."  (NextGear 2013 Note [Doc. 160-3] § 3 & App. A, NG_005148, NG_005160 (emphasis added).)

After this litigation was filed, NextGear created and provided account summaries specifically to respond to discovery.  (SMF ¶¶ 9-14.)  Those account summaries identified the dates on which a vehicle was floor planned and interest began to accrue (the "flooring date") and the dates on which funding was transferred to the auction (the "total for" date).  (*Id.* ¶¶ 11-12.) The summaries also identified vehicles for which the Plaintiffs failed to repay NextGear ("written off" vehicles).  Pursuant to the terms of the Plaintiffs' Notes, the "flooring date" was also the date on which an Advance—as defined in the contract—was made and a Liability was incurred, because that was the date NextGear committed to pay the auction on Plaintiffs' behalf.

Plaintiffs' expert has attempted to quantify Plaintiffs' alleged damages, but the amounts he calculated are significantly lower than the amounts each Plaintiff owes to NextGear. (*Compare* SMF ¶¶ 18-21 (calculating allegedly wrongful interest of $7,083.82 for Red Barn, $961.58 for Mattingly, and $44.55 for Platinum), *with* 4/26/2017 Galema Decl. [Doc. 197-24] ¶ 17 (Red Barn owed NextGear over $130,000 in June 2013); Mattingly Judgment [Doc. 197-36] (entering judgment of $58,433 against Mattingly in favor of NextGear); Platinum Judgment [Doc. 197-22] (entering judgment of $35,775 against Platinum in favor of NextGear).)

### STATEMENT OF MATERIAL FACTS IN DISPUTE

6.     This statement is incomplete, as Mattingly had previously signed a contract with NextGear in 2006.  (Mattingly 2006 Note [Doc. 197-34]; Mattingly Dep. [Doc. 197-8] 62:2-64:25.)

7.     Plaintiffs ignore that some dealers sought and obtained changes to the terms of the Note, and that the Term Sheet incorporated in the Note often varied by dealer.  (NextGear Dep. [Ex. 29] 56:4-59:22; 10/31/2016 Galema Decl. [Doc. 197-13] ¶¶ 9-10.)

15, 18-20.     Plaintiffs ignore the contractually-agreed definition of the term "advance" in these statements.  NextGear began to charge interest on a vehicle floor planned at auction on

the date of an Advance; that is, the auction date, when NextGear committed to pay the auction on the Plaintiffs' behalf.  (Red Barn Note [Doc. 197-31] § 1(a), NG_003561; Mattingly 2009 Note [Doc. 197-35] § 1(a), MA 000022; Platinum Note [Doc. 197-37] § 1(a), NG_003512; 4/26/2017 Galema Decl. [Doc. 197-24] ¶ 12; Plaintiffs' Transaction Reports [Docs. 197-15, 197-17, 197-20].)

17.    This statement is incorrect to the extent it suggests NextGear stipulated to a *per diem* methodology for any dealer other than the three named Plaintiffs.  The *per diem* methodology was only stipulated between the parties for purposes of the three named Plaintiffs, and NextGear has expressly reserved its right to borrower-specific proof of damages for the members of any certified class.  (*See* 12/27/2016 Email from Tracey Ledbetter [Doc. 196-5].)

23.    This statement is misleading, as it implies that the definition of an Advance materially changed in 2013.  In fact, the definition of an Advance in the Plaintiffs' floor plan agreements is substantially the same as the definition in the 2013 Note.  (*Compare* Red Barn Note [Doc. 197-31] § 1(a), NG_003561; Mattingly 2009 Note [Doc. 197-35] § 1(a), MA 000022; Platinum Note [Doc. 197-37] § 1(a), NG_003512, *with* NextGear 2013 Note [Doc. 160-3] App. A, NG_005160.)

## ARGUMENT AND CITATION OF AUTHORITY

**I.**    **The Contracts Between NextGear and Plaintiffs Plainly Permit NextGear to Charge Interest from the Flooring Date.**

Plaintiffs' Notes unambiguously allow NextGear to charge interest from the date they incur a "Liability" or obtain an "Advance," regardless of when NextGear actually pays an auction.  Any other conclusion would give Plaintiffs free financing in the interim, while NextGear shoulders all the risk of nonpayment or damage to a vehicle.

7

Where "the contract language is unambiguous and the parties' intent is discernible from the written contract," as is the case here, a court must "give effect to the terms of the contract" without construing the contract or looking to extrinsic evidence. *Weigand Constr. Co. v. Stephens Fabrication, Inc.*, 929 N.E.2d 220, 226 (Ind. Ct. App. 2010).

In this case, the floor plan agreements state that interest "shall accrue" on all "outstanding Liabilities" under the Note. (*E.g.*, Red Barn Note [Doc. 197-31] § 3(a), NG_003563.) Liabilities are broadly defined to include all of the following:

> any and all Advances, debts, DSC Financed Inventory Liabilities, financial obligations, . . . charges, expenses, attorney fees, costs of collection, covenants, and duties owing, arising, due or payable from Dealer to [NextGear] of any kind or nature, present o[r] future, . . . whether directly or indirectly (including those acquired by assignment), absolute or contingent, primary or secondary, due or to become due, now existing or hereafter arising and however acquired.

(*E.g.*, *id.* § 1(y), NG_003562.)

The obligation to repay NextGear for its commitment to the auctions on Plaintiffs' behalf at the time of purchase was a "financial obligation," "covenant," or "duty" due or owing from Plaintiffs presently or in the future, absolute or contingent, primary or secondary, due or to become due, then existing or after arising—*i.e.*, a Liability as defined in the Notes. Plaintiffs were obligated to pay for a vehicle purchased at auction before they could leave with the vehicle. (Mattingly Dep. [Doc. 197-8] 38:10-23; *see also* Red Barn Dep. [Doc. 197-6] 61:1-11; Mattingly Dep. [Doc. 197-8] 37:13-23, 81:12-25; Platinum Dep. [Doc. 197-9] 53:16-21, 55:19-21.) Plaintiffs avoided having to pay cash to the auction by putting vehicles on their floor plans. (Red Barn Dep. [Doc. 197-6] 61:1-11; Mattingly Dep. [Doc. 197-8] 38:10-39:12; Platinum Dep. [Doc. 197-9] 52:24-53:21.) NextGear then immediately became obliged to pay the auction for the floor planned vehicle. (4/26/2017 Galema Decl. [Doc. 197-24] ¶ 10; Modjeski Decl. [Doc. 197-26] ¶ 4; Werner Decl. [Doc. 197-28] ¶ 4.) Plaintiffs in turn had to repay NextGear at or before

the "Maturity Date"—a date that ran from the date of auction and was transparent to Plaintiffs in their regular billing statements—for agreeing to pay money on their behalf.  (Red Barn Note [Doc. 197-31] § 5(e), NG_003565; Mattingly 2009 Note [Doc. 197-35] § 5(e), MA 000026; Platinum Note [Doc. 197-37] § 5(e), NG_003516; Red Barn Dep. [Doc. 197-6] 72:8-73:10, 75:19-76:16; Mattingly Dep. [Doc. 197-8] 46:17-48:1; Platinum Dep. [Doc. 197-9] 70:19-72:7, 65:10-68:24, 88:16-89:17.)

Here, Plaintiffs promised to pay interest to NextGear from the date they incurred a financial obligation.  Plaintiffs incurred, and NextGear assumed for them, an obligation to pay for auction vehicles *on the date of the auction*.  Therefore, Plaintiffs' floor plan agreements likewise require them to begin paying interest *on the date of the auction*.

The contracts state as much in the definition of "Advance," which is only one type of Liability.  The Plaintiffs' Notes define "Advance" as a "*loan **or** payment* in any amount made pursuant to this Note by [NextGear] to Dealer or on Dealer's behalf to any third party."  (*E.g.*, Red Barn Note [Doc. 197-31] § 1(a), NG_003561 (emphasis added).)  Because "loan" is not separately defined in the floor plan agreement, Indiana courts should apply its plain and ordinary meaning.  *Smith v. Allstate Ins. Co.*, 681 N.E.2d 220, 223 (Ind. Ct. App. 1997) (holding that language of contract must be given "plain and ordinary meaning," and contract term "is not ambiguous simply because it is not defined").  The common definition of the term "loan" includes "the creation of debt by the lender's payment of *or **agreement to pay money** to the debtor or *to a third party for the account of the debtor*."  Ind. Code § 24-4.5-3-106(1) (emphasis added); *see also* Black's Law Dictionary; *Miller v. Geels*, 643 N.E.2d 922, 928 (Ind. Ct. App. 1994) ("[I]t is well settled that, unless the contract provides otherwise, all applicable law in force

at the time the agreement is made impliedly forms a part of the agreement without any statement to that effect.").

In other words, an Advance includes not only NextGear's payment of the purchase price for a vehicle, but it also encompasses NextGear's commitment to pay a third-party auction on behalf of a dealer. In an effort to confuse the term, Plaintiffs repeatedly refer in their brief to "advances" (in lower case) as a synonym for payment while intentionally ignoring that the word "Advance" is a defined term with a particular agreed meaning in the floor plan agreements. Plaintiffs cannot modify the contractual definition of a contract term simply by not capitalizing it in their briefing. Reading "Advance" as limited only to "payment," as Plaintiffs do, ignores the "loan or" language in the agreed definition and renders it meaningless and redundant. Such a reading would violate one of the most well-established canons of contract construction. *Bowman v. IBM Corp.*, 853 F. Supp. 2d 766, 770 (S.D. Ind. 2012) ("Additionally, the court should make every effort to avoid an interpretation that renders any words, phrases, or terms ineffective or meaningless."); *cf. Lawson v. Sun Microsys., Inc.*, 791 F.3d 754, 762 (7th Cir. 2015) (Indiana courts prefer interpretation that harmonizes contract provisions). Plaintiffs' contention that NextGear charges interest before an "advance" is made is purposely misleading. By contract, the Advance happened the moment a Plaintiff put a vehicle on its floor plan; NextGear at that point made a "loan," as it immediately became obligated to the auction to pay for the vehicle.[3]

---

[3] No ambiguity is created by NextGear's later use of a different form of note that none of the Plaintiffs signed. As an initial matter, a plaintiff cannot use the extrinsic evidence it seeks to introduce to show that the contract at issue is ambiguous in the first place. *Cf. Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 879 (7th Cir. 2005). Even if the later contract could be brought in as extrinsic evidence, the terms of the 2013 Note cannot tell us much about the parties' intent in 2009 or 2011. Finally, the fact that a different contract contains different language cannot create ambiguity where, as here, the relevant contract terms are clear on their face.

Plaintiffs want the Court to interpret their floor plan agreements to say that they could take cars immediately from auctions for free, by invoking NextGear's name and credit, and that NextGear was not entitled to any compensation for assuming the risk and payment obligation for the vehicles. That interpretation is, at the very least, commercially unreasonable and unprecedented in the industry. If Plaintiffs sold cars out of trust and never repaid NextGear—as in fact happened here—auctions would still look to NextGear rather than the Plaintiffs for payment. Certainly, these Plaintiffs have already gotten enough "free credit" from NextGear due to the hundreds of thousands of dollars of principal they never repaid and the collateral they converted.[4]

In short, the floor plan agreements plainly allow the interest charges at issue. Therefore, summary judgment should be granted in favor of Defendants, not Plaintiffs, on Plaintiffs' contract claims. (*See* Defs.' MSJ Br. [Doc. 193] at 16-22.)

## II.     The Contracts Between NextGear and Plaintiffs Establish No Restrictions on or Requirements for NextGear's Payments to Third-Party Auctions.

Plaintiffs are effectively asking the Court to read into their Notes additional terms concerning the timing of NextGear's payment to third-party auctions—something the Notes have nothing to do with. The floor plan allows a dealer to use its line of credit with NextGear to purchase cars without paying cash, in exchange for interest and the dealer's promise to repay. This process takes place every day, all over the country, with thousands of transactions, and is meant to be as seamless for a dealer (and an auction) as using a credit card at the grocery store. Meanwhile, NextGear assumes the obligation to pay the auction through separate agreements.

---

[4] Plaintiffs also received and failed to object to regular statements of their interest and charges, which by the unambiguous terms of their Notes are now binding and definitive. (*E.g.*, Red Barn Note [Doc. 197-31] § 4(k), NG_003564; *see also* Defs.' MSJ Br. [Doc. 193] at 21.)  Plaintiffs' motion should also be denied on that basis.

(4/26/2017 Galema Decl. [Doc. 197-24] ¶ 9.)  So long as the dealer gets the car and NextGear eventually settles the obligation to the third-party auction, the terms on which NextGear pays the third-party auctions are irrelevant to dealers.  There is no allegation here that NextGear failed to satisfy any commitments to the auctions.

Not surprisingly, the Notes, which govern the relationship between Plaintiffs and NextGear, make no mention of when or how NextGear must pay a third-party auction.  NextGear has separate agreements with auctions, much like credit card companies have separate merchant agreements with vendors.  Plaintiffs argue that somehow the contracts *between NextGear and them* are ambiguous because they do not address the terms *between NextGear and third parties*. That position is untenable as a matter of law.

Here, reading the contract as Plaintiffs want would mean either that (a) NextGear was required to pay the auctions immediately on the day of the auction, despite never having promised to do that, or (b) Plaintiffs get free credit—*i.e.*, the use of the vehicle inventory without paying for it—while NextGear bore all the risk.  The Court should reject Plaintiffs' invitation to rewrite the contracts in that manner and should deny Plaintiffs' motion.

## III.    To the Extent the Court Determines the Contracts Are Ambiguous, the Ambiguity Requires Resort to Extrinsic Evidence at Trial.

Even if the Court were to accept Plaintiffs' new theory that the floor plan agreements are ambiguous, resolution of the ambiguity will require the parties to present extrinsic evidence at trial.

In their brief, Plaintiffs seek to make much of a supposed distinction between latent and patent ambiguities under Indiana law.  But that distinction was abolished in Indiana over ten years ago.  In *University of Southern Indiana Foundation v. Baker*, the Indiana Supreme Court held that "the latent/patent distinction has not been consistently applied and no longer serves any

12

useful purpose." 843 N.E.2d 528, 535 (Ind. 2006). Indiana appellate courts have repeatedly recognized that the latent/patent distinction is a vestige of the past. *See, e.g.*, *In re Estate of Stayback*, 38 N.E.3d 705, 714 n.3 (Ind. Ct. App. 2015) (reciting *Baker's* holding that "the distinction between patent and latent ambiguities is not useful"); *Tender Loving Care Mgmt., Inc. v. Sherls*, 14 N.E.3d 67, 72 n.1 (Ind. Ct. App. 2014) (stating that in *Baker* "our supreme court abandoned a prior distinction between patent and latent ambiguities").[5]

Thus, Plaintiffs are not entitled to summary judgment because, under their theory that the Notes at issue are ambiguous, extrinsic evidence is necessary to ascertain the parties' intent. Extrinsic evidence includes "evidence relating to a contract but not appearing on the face of the contract because it comes from other sources, such as statements between the parties or the circumstances surrounding the agreement." *Tender Loving Care Mgmt.*, 14 N.E.3d at 72 (citation omitted). Relevant extrinsic evidence may also include evidence of course of dealing and course of performance. Ind. Code § 26-1-1-205(4).

For NextGear's part, the evidence is clear that it understood the floor plan agreements to allow it to charge interest from the date of auction. (4/26/2017 Galema Decl. [Doc. 197-24] ¶¶ 9-12.) Indeed, the evidence confirms that the named Plaintiffs had the same understanding, as they continually accepted charges on these terms. (Red Barn Note [Doc. 197-31] § 4(k), NG_003564; Mattingly 2009 Note [Doc. 197-35] § 4(h), MA 000025; Platinum Note [Doc. 197-

---

[5] Even under the outmoded patent/latent ambiguity distinction, extrinsic evidence would be required in this case. A latent ambiguity "arises not upon the face of the instrument by virtue of the words used, but emerges in attempting to apply those words in the manner directed in the instrument." *Hauck v. Second Nat'l Bank of Richmond*, 286 N.E.2d 852, 862 (Ind. Ct. App. 1972). In other words, latent ambiguities are uncovered during the implementation of the contract, if the terms of the contract apply to the situation in an ambiguous way. *See Adams v. Reinaker*, 808 N.E.2d 192 (Ind. Ct. App. 2004). Here, any ambiguity about how payment to non-party auctions affects interest charges only appears (if at all) when the parties apply the floor plan agreement, so it is at most a latent ambiguity calling for evidence of the parties' understanding.

37] § 4(k), NG_003515; *see also* Red Barn Dep. [Doc. 197-6] 75:19-77:6, 182:20-184:23, 186:20-187:7, 217:23-220:10; Red Barn Resp. to Interrog. 6 [Doc. 197-2]; Red Barn Transaction Report [Doc. 197-15]; Mattingly Dep. [Doc. 197-8] 75:6-76:18, 152:4-153:18, 153:25-155:9.) This approach is commercially reasonable and harmonizes the terms of the contract. *First Fed. Sav. Bank of Ind. v. Key Mkts., Inc.*, 559 N.E.2d 600, 604 (Ind. 1990) (court should attempt to "harmonize" all provisions of contract). What is more, charging interest from the date of auction is typical in the used vehicle floor plan industry. (4/26/2017 Galema Decl. [Doc. 197-24] ¶ 12; Expert Report of Jeffrey D. Widholm [Ex. 30] at 3-4; Deposition of Jeffrey D. Widholm [Ex. 31] 31:17-32:7.)

Plaintiffs' brief argues exclusively that the Notes are ambiguous (rather than expressly favorable), yet Plaintiffs do not provide *any* evidence that they had a different understanding of interest accrual under the floor plan agreements. Instead, Plaintiffs simply contend that the agreements must be construed against NextGear as the drafter. But that rule of construction is one of last resort that only applies when all other rules of construction fail. *Bishop v. Sanders*, 624 N.E.2d 64, 68 (Ind. Ct. App. 1993); *see also St. Paul Fire & Marine Ins. Co. v. Schilli Transp. Servs. Inc.*, 672 F.3d 451, 456 (7th Cir. 2012) (quoting *In re Kemper Ins. Cos.*, 819 N.E.2d 485, 490 (Ind. Ct. App. 2004)) ("We construe a contract against the drafter only if we cannot ascertain the parties' intent from all the ordinary interpretive guides."). Judge Hamilton has rejected the argument that a contract should be construed against the drafter when doing so would nullify certain words in a contract, as would be the case here:

> [Plaintiff] relies heavily on the Indiana contract law principle that ambiguities in a contract are to be construed against the drafter. Apart from cases of insurance policies, however, this principle of contract interpretation generally serves as a tie-breaker that is applied only if other rules of interpretation fail to resolve the ambiguity. . . . [P]laintiffs' interpretation of Section 2.2(d)(i) that effectively

14

nullifies Section 2.2(d)(ii) is contrary to the interpretation principles of Indiana contract law.

*C.S. & V. Ltd. v. W.E. Buehler Paper Co.*, No. IP02-0689-CH/K, 2002 WL 31255408, at *3-4

(S.D. Ind. Oct. 7, 2002).[6]

Plaintiffs' contention that extrinsic evidence can be ignored by simply construing the floor plan agreements against the drafter is incorrect. The Seventh Circuit, in *Estate of Suskovich v. Anthem Health Plans of Virginia, Inc.*, upheld this Court's consideration of extrinsic evidence to resolve ambiguities rather than reflexively construing a contract against the drafter:

> [B]ecause Trasys drafted the contract, the estate argues that contract law requires that any ambiguity be construed against the drafter. *United Thermal Indus., Inc. v. Asbestos Training & Employment, Inc.*, 920 F.2d 1345, 1349 (7th Cir. 1990). However, *United Thermal* also holds that extrinsic evidence of the intent of the parties can be admitted where the terms of the contract are unclear or ambiguous, and Indiana cases holding that ambiguities should be construed against the drafter also hold that extrinsic evidence of the parties' intent is admissible in order to resolve ambiguities. *See Rieth-Riley Const. Co., Inc. v. Auto-Owners Mut. Ins. Co.* 408 N.E.2d 640, 645 (Ind. Ct. App. 1980).

553 F.3d 559, 564-65 (7th Cir. 2009); *see also Entm't USA, Inc. v. Moorehead Commc'ns, Inc.*, 93 F. Supp. 3d 915, 930 n.8 (N.D. Ind. 2015) (quoting *Warrick Cty. ex rel. Conner v. Hill*, 973 N.E.2d 1138, 1144 (Ind. Ct. App. 2012)) ("[T]he Court questions OWW's premise that the rule of construing ambiguities against the drafter gives it a license to bypass relevant, extrinsic evidence in favor of declaring judgment for the non-drafter. As the case cited by OWW for this proposition states, 'the language creates an ambiguity, construed against the drafter, *for a fact-*

---

[6] Likewise, the Seventh Circuit in *BKCAP, LLC v. CAPTEC Franchise Trust 2000-1* refused to construe a contract against the drafter because the interpretation was "unreasonable" and "inconsistent with the contract language"; the court held instead that "the meaning of the Prepayment Premium is a question of fact that requires an examination of relevant extrinsic evidence." 572 F.3d 353, 362 (7th Cir. 2009). Similarly, as discussed above, in this case Plaintiffs' interpretation of "Advance" would nullify the "loan or" language in the Notes.

*finder to resolve.*' . . . Similarly, here, the Court finds the meaning of 'activation' to be an issue for the fact-finder.").

In striking down the latent/patent distinction relied upon by Plaintiffs in this case, the Indiana Supreme Court was unequivocal that "where an instrument is ambiguous, *all relevant extrinsic evidence may properly be considered in resolving the ambiguity*." *Baker*, 843 N.E.2d at 535 (emphasis added). Indeed, the Court itself considered extrinsic evidence to ascertain the intent of the grantor of a trust in resolving the ambiguity in a trust document. *Id.* The Indiana Court of Appeals has since recognized *Baker's* clear holding: "Indiana adheres to the rule that when interpreting an ambiguous written instrument, all relevant extrinsic evidence may be considered to resolve any ambiguity, regardless of its nature." *City of Kokomo ex rel. Goodnight v. Pogue*, 940 N.E.2d 833, 841 (Ind. Ct. App. 2010).[7]

Because the evidence of the parties' intent (described above) indicates that Plaintiffs understood interest to accrue on the date of an auction, because that approach harmonizes the various definitions and contractual provisions relating to interest, and because NextGear's interpretation is industry standard and commercially reasonable, the Court should find that the

---

[7] Plaintiffs cite three Indiana Supreme Court decisions stating that ambiguous contracts are construed against the drafter: *Bradshaw v. Chandler*, 916 N.E.2d 163 (Ind. 2009), *MPACT Construction Group, LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901 (Ind. 2004), and *Fresh Cut, Inc. v. Fazli*, 650 N.E.2d 1126 (Ind. 1995). None of those decisions held that extrinsic evidence should be ignored. In *Bradshaw*, the Court merely noted that *insurance contracts* are construed against the insurer. 916 N.E.2d at 166. In *MPACT*, the Court stated in dicta that ambiguous contracts are construed against the drafter, but ultimately held that there was no meeting of the minds. 802 N.E.2d at 910. In *Fresh Cut*, after noting that ambiguous contracts are construed against the drafter, the Court nevertheless rejected summary judgment and held that extrinsic evidence must be considered. 650 N.E.2d at 1133 ("[W]hile the contract is ambiguous and uncertain in its terms, we believe that the meaning of the contract may well need to be determined by extrinsic evidence. As such, its construction is a matter for the factfinder."). Moreover, *MPACT* and *Fresh Cut* were decided *prior to* the Indiana Supreme Court's clear pronouncement in *Baker* that "all relevant extrinsic evidence" may be considered to resolve ambiguity. 843 N.E.2d at 535.

extrinsic evidence compels an interpretation of the contract that interest accrues from the date of auction.  While NextGear disagrees that the floor plan agreements are ambiguous as to the charging of interest from the date of auction (when NextGear assumes Plaintiffs' debt), that is Plaintiffs' sole theory on the contract claim, so even if the Court finds ambiguity, it merely underscores that there are questions of fact as to the parties' intent requiring denial of Plaintiffs' motion for partial summary judgment.

## IV.    Plaintiffs Have Not Suffered Any Harm.

Plaintiffs got what they bargained for—financing and the ability to buy and resell a vehicle immediately—so they cannot show that they suffered any damage.  Plaintiffs became obligated to fund their vehicle purchases at auction from the moment of a sale.  *See* U.C.C. § 2-328(2) ("A sale by auction is complete when the auctioneer so announces by the fall of the hammer or in other customary manner."); *Miller v. Geels*, 643 N.E.2d at 928 (existing law forms part of agreement).  Indeed, Plaintiffs acknowledge that they would not be permitted to take a car they purchased without paying for it on the day of the auction.  (Red Barn Dep. [Doc. 197-6] 61:1-11 ("you have to make some form of payment to the auction to take the car out"); Mattingly Dep. [Doc. 197-8] 38:10-23 ("in all cases, you have to find some way to pay for the car before you take it"), 81:2-82:8; Platinum Dep. [Doc. 197-9] 53:16-21 ("you have to pay the auction on the date of the auction"); Modjeski Decl. [Doc. 197-26] ¶ 6; Werner Decl. [Doc. 197-28] ¶ 6.)

When Plaintiffs used NextGear's name and credit to cover their obligations to an auction, NextGear assumed their responsibility to pay the auction, and Plaintiffs incurred a substitute obligation to repay NextGear.  From the moment the car was purchased at auction, Plaintiffs acknowledge that they enjoyed the full benefit of NextGear's credit—they had the additional item of inventory to sell for a profit and could defer paying cash for it.  (Red Barn Dep. [Doc. 197-6] 62:10-19, 66:24-67:21, 68:24-69:6, 71:11-20 ("we didn't have to come out of pocket for

the purchase money"), 213:25-214:3; Mattingly Dep. [Doc. 197-8] 42:9-15, 46:17-20 ("you

don't have to pay cash for it that day"), 153:25-154:3; Platinum Dep. [Doc. 197-9] 51:7-55:21,

58:16-19, 59:5-7, 97:11-16 ("you were able to take the car . . . [w]ithout putting any cash out of

your own").)  That is the epitome of a loan on which interest typically accrues between

commercial parties.  *Cf.* Ind. Code § 24-4.5-3-106(1).

Granting summary judgment to Plaintiffs would award them unjust enrichment through

free use of vehicle inventory for the period prior to settlement between NextGear and the

auction, while NextGear bore all the risk.  (And with these three Plaintiffs, that risk turned out to

be quite costly.)  But Plaintiffs were not harmed during that period, as they had the full benefit of

NextGear's credit.  Thus, Plaintiffs cannot establish the third element of a breach of contract

claim: damages.

**V.     Plaintiffs Are Not Entitled to Summary Judgment Because Their Breach of
          Contract Claim Is Barred by NextGear's Affirmative Defenses.**

In addition to the legal flaws and factual disputes that permeate their breach of contract

claim, Plaintiffs' contract claim is barred by defenses such as *res judicata*, setoff, ratification or

waiver, and release.

A.     *Res Judicata*

The claims of both Mattingly and Platinum are barred by the doctrine of *res judicata*.  As

laid out in more detail in the brief supporting Defendants' motion for summary judgment [Doc.

193, at 30-33], there has been (1) a judgment (2) on the merits (3) between NextGear and both

Mattingly and Platinum involving (4) the issue of interest charged to Plaintiffs.  *See Hensley v.

Jasper Police Dep't,* 163 F. Supp. 2d 1006, 1021 (S.D. Ind. 2001).

Each of these factors is undisputed here.  NextGear obtained judgments against Platinum

and Mattingly for failing to repay financing extended by NextGear.  (Mattingly Judgment [Doc.

18

197-36]; Platinum Judgment [Doc. 197-22].)  Both Plaintiffs admit that they in fact owed the

money to NextGear, and Mattingly acknowledged contemporaneous knowledge of the lawsuit.

(Mattingly Dep. [Doc. 197-8] 124:8-10, 130:25-132:16; Platinum Dep. [Doc. 197-9] 131:15-17.)

Under Indiana law, default judgments are "judgment[s] on the merits" for purposes of *res*

*judicata*. *Eichenberger v. Eichenberger*, 743 N.E.2d 370, 374 (Ind. Ct. App. 2001).

Further, the evidence also demonstrates that Plaintiffs' claims against NextGear arising

out of alleged wrongful interest could have been determined in the prior action.  *Weinreb v.*

*Fannie Mae*, 993 N.E.2d 223, 229 (Ind. Ct. App. 2013).  Mattingly's owner admitted that he

knew NextGear charged interest before a vehicle's title arrived (that is, before NextGear settled

up with the auctions); he discussed the issue with NextGear personnel and, after learning that this

was NextGear's "common practice," continued to use NextGear financing.  (Mattingly Dep.

[Doc. 197-8] 74:25-76:18, 152:4-153:18, 153:25-155:9.)  In light of Mattingly's full knowledge

about how NextGear charged interest, Mattingly could have raised its breach of contract claim as

a defense or counterclaim to NextGear's collection action.  Platinum, too, should have

investigated its claim and brought it in the earlier action.  *See Autocephalous Greek-Orthodox*

*Church of Cyprus v. Goldberg & Feldman Fine Arts, Inc.*, 717 F. Supp. 1374, 1387 (S.D. Ind.

1989), *aff'd*, 917 F.2d 278 (7th Cir. 1990).

Mattingly and Platinum cannot argue that the prior actions were somehow unrelated to

their claims in this case.  It is undisputed that the prior judgments against Mattingly and Platinum

were for recovery of principal and interest based on loans to them.  If NextGear had no right to

charge some of the claimed interest, as they now contend here, they should have raised that as a

defense or counterclaim in the prior action.  Having failed to raise the breach of contract

argument or claim in their collection actions, Plaintiffs should not be permitted to raise it here.

B.    Setoff

Mattingly and Platinum should also be barred from recovery under the doctrine of setoff, which "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A." *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18 (1995) (internal citation omitted); *see Pichon v. Am. Heritage Banco, Inc.*, 983 N.E.2d 589, 601 (Ind. Ct. App. 2013) (recognizing right to set off outstanding debt against any recovery). NextGear holds judgments in the amount of $58,433 against Mattingly and $35,775 against Platinum—which amounts far exceed Plaintiffs' alleged damages. (*Compare* SMF ¶¶ 18-21, *with* Mattingly Judgment [Doc. 197-36] (entering judgment of $58,433 against Mattingly in favor of NextGear); Platinum Judgment [Doc. 197-22] (entering judgment of $35,775 against Platinum in favor of NextGear).) Thus, these Plaintiffs are not entitled to summary judgment against NextGear.

C.    Ratification and Waiver

All of the Plaintiffs have ratified or waived any claim for excessive charges under their contracts. In a contract dispute, "waiver involves giving up the right to treat the contract as breached by the opposing party." *Tri-State Carbonic, LLC v. Orscheln Farm & Home LLC*, No. 4:10-CV-71-WGH-TWP, 2011 WL 3878277, at *5 (S.D. Ind. Aug. 31, 2011). Whether a contract provision has been waived by one of the contracting parties is usually a question of fact for the jury. *Rogier v. Am. Testing & Eng'g Corp.*, 734 N.E.2d 606, 620 (Ind. Ct. App. 2000) (citing *van de Leuv v. Methodist Hosp. of Ind., Inc.*, 642 N.E.2d 531, 533 (Ind. Ct. App. 1994)). In some cases, "[s]ilence can amount to waiver where there is a duty to speak." *Stewart v. Walker*, 597 N.E.2d 368, 376 (Ind. Ct. App. 1992).

In this case, the floor plan agreements provide that "any statement of Dealer's account" provided by NextGear is definitive and binding on dealers as to the amount owed unless the

dealer objects within 30 days.  (Red Barn Note [Doc. 197-31] § 4(k), NG_003564; Mattingly

2009 Note [Doc. 197-35] § 4(h), MA 000025; Platinum Note [Doc. 197-37] § 4(k),

NG_003515.)  Failure to timely object constitutes a ratification or waiver of a later claim as a

matter of law.  In *V.H. Juerling & Sons, Inc. v. First National Bank of Richmond*, the Indiana

Court of Appeals barred claims by a bank depositor against the bank relating to forged checks

because the depositor's lack of diligence in reviewing statements constituted ratification or

waiver:

> Therefore, we must hold as a matter of law, that by the failure of the appellant to
> make such an examination of the bank statements every month, the appellant was
> guilty of such negligence as to amount to a ratification of the banks' actions in
> paying the forged checks and to preclude the appellant's recovery from the banks.
> We think the cases clearly hold the depositor liable for his failure to examine the
> statements furnished to him by the bank, so that if he fails to make such an
> examination within a reasonable time, and fails to notify the bank of any
> irregularities he then acquiesces in the bank's conduct and confirms its action.

242 N.E.2d 111, 119 (Ind. Ct. App. 1968).

Red Barn admits that it printed and reviewed statements "daily" from NextGear's online

account portal showing Red Barn's transactions with, and charges from, NextGear.  (Red Barn

Dep. [Doc. 197-6] 76:2-77:6.)  Further, during the course of its business relationship with

NextGear, Red Barn claims to have learned that NextGear did not settle with the selling auction

on the date that interest began to accrue.  (*Id.* at 182:20-184:23, 186:20-187:7, 217:23-220:10.)

Red Barn's corporate representative and General Manager testified that he "confronted" his

NextGear representative in June 2012 to ask, "[W]hy are we being charged interest when I

haven't even chosen the floorplan[?]"  (*Id.* at 183:5-184:5; Red Barn Resp. to Interrog. 6 [Doc.

197-2].)  According to Red Barn, the NextGear representative responded, "That was just the way

that it was. . . . They always go from the date of the sale."  (Red Barn Dep. [Doc. 197-6] 217:23-

218:20.)  Nonetheless, Red Barn continued to borrow NextGear's money for auction purchases.

(Red Barn Dep. [Doc. 197-6] 183:5-184:23; Red Barn Transaction Report [Doc. 197-15] (showing over 200 units floored with NextGear, at a principal value in excess of $850,000, *after* June 2012).)

Similarly, Mattingly had continuous access to information about its NextGear account, including balances and charges, through the NextGear website.  (Mattingly Dep. [Doc. 197-8] 50:22-52:6, 74:13-24; *see also* 10/31/2016 Galema Decl. [Doc. 197-13] ¶¶ 18-19.)  It too was aware that NextGear charged interest in a manner with which it disagreed.  Mattingly's owner testified that he raised the issue of paying interest before title arrived with NextGear's account representatives "from day one," that those account representatives confirmed it was "common practice," and that Mattingly continued to borrow from NextGear following those discussions. (Mattingly Dep. [Doc. 197-8] 75:6-76:18, 154:4-155:9.)

Platinum likewise regularly accessed information about amounts it owed NextGear through its online account; it also received statements by mail or at the local office, and called NextGear to find out how much it owed.  (Platinum Dep. [Doc. 197-9] 65:10-24, 67:19-70:9, 72:3-7, 90:19-22.)

All of the Plaintiffs received and accepted statements of interest detailing what they owed to NextGear that were "definitive and binding" absent an objection within 30 days.  And Red Barn and Mattingly both continued to do business with NextGear after becoming fully aware that interest accrued from the date of auction.  Thus, Plaintiffs ratified NextGear's interest charges and/or waived their right to complain about those charges long after they received statements from NextGear.  *V.H. Juerling & Sons*, 242 N.E.2d at 119.  At the very least, factual disputes over Plaintiffs' ratification and/or waiver preclude an award of summary judgment in their favor.

D.      Release

Finally, Mattingly has released its breach of contract claim.  "Generally, appellate courts uphold releases as releases serve the important public policy of facilitating the orderly settlement of disputes." *Haub v. Eldridge*, 981 N.E.2d 96, 101 (Ind. Ct. App. 2012).  "Interpretation of a release, like any other contract, is determined by the terms of the particular instrument, considered in light of all facts and circumstances.  Absent an ambiguity, release provisions are interpreted as a matter of law, and [courts] look only to the instrument to ascertain the parties' intent." *Moore v. Wells Fargo Constr.*, 903 N.E.2d 525, 531 (Ind. Ct. App. 2009) (citation omitted).

Mattingly's owner, Barry Mattingly, filed a lawsuit against NextGear in October 2013 relating to property damage allegedly caused by NextGear during its attempted repossession of vehicles held as collateral for financing under the floor plan agreement.  (Small Claims Complaint, *Mattingly v. NextGear Capital* [Doc. 160-24]; Mattingly Dep. [Doc. 160-18] 138:21-139:15, 140:12-142:9.)  The repossession occurred after Mattingly's default to NextGear under the agreements at issue here.  The parties eventually settled that dispute by written agreement, in which Mr. Mattingly, "on behalf of himself [and] his current and former . . . affiliates," released NextGear from any and all claims related to that small claims lawsuit "and the claims that were raised or could have been raised therein."  (Settlement Agreement and Release [Doc. 160-25]; Mattingly Dep. [Doc. 160-18] 141:22-144:17.)

Mattingly is a dealership wholly owned by (and therefore affiliated with) Mr. Mattingly, and it was fully aware of the manner in which NextGear calculated interest when it defaulted and had vehicles repossessed.  Mattingly's release should entitle NextGear to summary judgment.  At a minimum, it raises a separate question of fact and law, which Plaintiffs have not addressed in

their motion, as to whether Mattingly's claim against NextGear for breach of contract is barred.

Mattingly's request for summary judgment against NextGear must be denied.

## CONCLUSION

NextGear did nothing more than charge interest from the date Plaintiffs used their credit

and NextGear became obligated to pay the auctions on their behalf.  From that moment,

NextGear assumed the obligation to pay the auction and assumed all risk associated with

extending credit.  Plaintiffs enjoyed the benefit of the credit by leaving auctions with inventory

they could immediately resell on their car lots, all without using any of their own cash.  Even

though the three Plaintiffs failed to repay NextGear over $224,000 between them, they want the

Court to award them more, and they have misrepresented defined terms in their floor plan

agreements in an attempt to manufacture a claim.  But a review of the Notes at issue and the

undisputed facts shows that the Notes are not ambiguous and that they allow NextGear to collect

interest from the date of auction.  As such, Plaintiffs are not entitled to a free lunch—or to free

credit—and the Court should deny Plaintiffs' Motion for Partial Summary Judgment.

Respectfully submitted, this 19th day of May, 2017.

 *s/ Tracey K. Ledbetter*
David J. Jurkiewicz (18018-53)
Paul D. Vink (23785-32)
BOSE McKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN  46204
(317) 684-5000
(317) 684-5173 fax
djurkiewicz@boselaw.com
pvink@boselaw.com

Jason S. McCarter (*pro hac vice*)
Tracey K. Ledbetter (*pro hac vice*)
EVERSHEDS SUTHERLAND (US) LLP
999 Peachtree Street, NE, Suite 2300
Atlanta, GA 30309-3996

(404) 853-8000
(404) 853-8806 fax
jasonmccarter@eversheds-sutherland.com
traceyledbetter@eversheds-sutherland.com

*Attorneys for Defendants Cox Automotive, Inc.,*
*NextGear Capital, Inc. f/k/a Dealer Services*
*Corporation, and John Wick*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been served upon the following counsel of record via the Court's electronic service notification system, this 19th day of May, 2017:

Ryan D. Adams
James M. Garner
Matthew M. Coman
Jacob A. Airey
SHER GARNER CAHILL RICHTER
KLEIN & HILBERT, L.L.C.
radams@shergarner.com
jgarner@shergarner.com
mcoman@shergarner.com
jairey@shergarner.com

Catherine E. Lasky
Kerry A. Murphy
LASKY MURPHY LLC
klasky@laskymurphy.com
kmurphy@laskymurphy.com

Cassie E. Felder
LUGENBUHL, WHEATON, PECK,
RANKIN & HUBBARD
cfelder@lawla.com

Gladstone N. Jones, III
Lynn E. Swanson
JONES, SWANSON, HUDDELL &
GARRISON, LLC
gjones@jonesswanson.com
lswanson@jonesswanson.com

Kathleen A. DeLaney
DELANEY & DELANEY LLC
Kathleen@delaneylaw.net

Lisa Brener
BRENER LAW FIRM, LLC
lbrener@brenerlawfirm.com

_s/ Tracey K. Ledbetter_
Tracey K. Ledbetter