## Red Barn Motors, Inc. et al v. NextGear Capital, Inc. et al

My name is Dan Wojcik and I specialize in bank consulting, business valuations and litigation consulting. I served as President of National Bank of Arkansas from 2000-2005 and for a short time as President and CEO of Parkway Bank. I have more than 40 years of banking experience including extensive assistance to banks and federal and state regulatory agencies to turn around financial institutions that were under restrictive regulatory orders. My *Curriculum Vitae* is attached to this report along with a list of depositions I have given and articles I have authored.

I have been engaged by counsel for the plaintiffs (Red Barn Plaintiffs) in the above case to render my opinion on lending industry standards and practices as to when interest can begin to accrue on a loan and thus when interest can be charged to the borrower.

In developing this opinion, I have reviewed the following documents, relied on my knowledge of standard and commonly accepted lending practices and my experience as a bank executive, loan officer and bank-turnaround specialist.

- Red Barn account summaries outlining vehicles purchased by VIN, unit purchase date, flooring date, seller-auction name, amount financed and actual date of advances under the Floor Plan.

- Next Gear's Demand Promissory Note, Floor Plan Agreement and Loan and Security Agreement including Reserve Agreement, Advance Schedules, Power of Attorney, Individual Guarantee and ACH Authorization and Request.

- Declaration of Adam Galena, Vice President of Finance for Next Gear Capital, Inc.

- Master Facility and Inter-Creditor Agreement

My compensation for this engagement is $250.00 per hour for my time researching and developing this opinion; $300.00 per hour for deposition testimony; and $350.00 per hour for testimony at trial.

## My Opinion

*It is standard industry lending practice* to charge interest to borrowers for using money actually borrowed. Interest for a loan is based on the concept that the borrower enjoys the benefits of using or renting money for a specific period of time. Money can be advanced or transferred to the borrower directly or to third parties on behalf of the borrower. For example, a business may receive loan funds directly from the lender to be used for daily operating needs. Or funds could be transferred to the seller of equipment on behalf of the borrower who is purchasing the equipment.

EXHIBIT 14

To determine the amount of interest to charge for using or renting money the following three variables are multiplied: 1) the interest rate; 2) the amount borrowed; and 3) the specific number of days or time the money has been borrowed and thus physically transferred to the borrower or a third party. *The effective date to begin calculating interest cannot be determined until the transfer is actually made.* If no money is physically transferred or lent then the borrower obviously cannot use the money and should not be charged interest.

Interest should not be confused with a fee, which is entirely different. It is common for lenders to charge borrowers fixed or flat fees for *services performed or as a guarantee that funds will be made available* to borrowers *at some future date*. Such a guarantee or Floorplan fee is entirely independent of interest, which is a charge for the use of money actually disbursed or lent.

*It is not common or an accepted lending industry practice* to charge interest on monies that have not been actually advanced, disbursed or lent for the benefit or use of a borrower or third party. In the case of *Red Barn Motors, Inc. et al v NextGear Capital, Inc. et al.,* it is my understanding that in many instances, no money was advanced or lent by NextGear Capital for a time between when Plaintiffs purchased cars, generally at auction, and placed them on their floorplans and when NextGear Capital advanced funds to the auctions, which was at times several days or weeks later. NextGear Capital assessed interest charges to the Plaintiffs as if money had been disbursed and transferred to the third party (generally an auction house) on behalf of Plaintiffs, when such funds had not been disbursed and transferred.

In summary, the actions by Next Gear Capital of charging interest prior to advancing or transferring money to either Plaintiffs or a third party, such as an auction house, is not a common or standard lending industry practice. If NextGear Capital intended to charge a fee before money was advanced, I would expect that NextGear Capital would make specific disclosures to its borrowers of NextGear Capital's practice.

My opinion is based on my examination of facts of this case and my professional experience. I reserve the right to modify or add to my opinions should new information and/or documents become available to me.

Dan Wojcik

Date: January 9, 2017

EXHIBIT 14