**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**(Indianapolis Division)**

| | | |
|---|---|---|
| **RED BARN MOTORS, INC.,** | * | **DOCKET NO. 1:14-cv-01589-TWP-DKL** |
| **PLATINUM MOTORS, INC.,** | * | |
| **MATTINGLY AUTO SALES, INC.,** | * | **CLASS ACTION** |
| **Individually, and on behalf of other** | * | |
| **members of the general public** | * | |
| **similarly situated,** | * | |
| | * | |
| **v.** | * | |
| | * | |
| **COX ENTERPRISES, INC.,** | * | |
| **COX AUTOMOTIVE, INC.,** | * | |
| **NEXTGEAR CAPITAL, INC.,** | * | |
| **F/K/A DEALER SERVICES** | * | |
| **CORPORATION, successor by merger** | * | |
| **with Manheim Automotive Financial** | * | |
| **Services, Inc., and JOHN WICK,** | * | |
| | * | |

**************************************************************************

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT ON BREACH OF CONTRACT CLAIM**

Plaintiffs—Red Barn Motors, Inc. ("Red Barn"), Platinum Motors, Inc. ("Platinum"), and Mattingly Auto Sales, Inc. ("Mattingly")—respectfully submit this reply memorandum in support of their motion for partial summary judgment on their breach of contract claim against Defendant, NextGear Capital, Inc., f/k/a Dealer Services Corporation ("NextGear") (Dkt. 194).

**RESPONSE TO NEXTGEAR'S STATEMENT OF
MATERIAL FACTS IN DISPUTE**

NextGear's opposition contains responses to eight of the 23 paragraphs in Plaintiffs' Statement of Material Facts Not in Dispute. The remaining paragraphs (1-5, 8-14, 16, 21, and 22)—most of which Defendants actually cite in their Factual Background section[1]—are admitted

---

[1] *See also* Dkt. 207, at p. 4 (citing ¶¶ 1-6 and 8); p. 5 (citing ¶ 22); p. 6 (citing ¶¶ 9-14).

pursuant to L.R. 56-1(f). Even as to the facts to which NextGear does specifically respond, as set forth below, NextGear has failed to raise a genuine issue of material fact that would preclude summary judgment.

6.      NextGear does not dispute that Mattingly entered into a binding contract with NextGear in 2009. NextGear is correct that Mattingly also did sign a contract with NextGear in 2006.[2] However, the 2009 contract provided that it was "intended by the parties as an amendment and restatement of any prior Demand Promissory Note and Security Agreement(s) between DSC and Dealer." *See* Dkt. 117-4 at p. 7, ¶ 14.[3]

7.      NextGear's assertion that "… some dealers sought and obtained changes to the terms of the Note, and that the Term Sheet incorporated in the Note often varied by dealer" is not supported by the evidence. At the NextGear 30(b)(6) deposition, Mr. Galema acknowledged that the Notes are "generally not" individually negotiated with particular dealers. NextGear 30(b)(6) Depo. (Dkt. 196-1), 58:9-20. Mr. Galema could offer no specifics to support his assertion that "certain points" of the contract had been negotiated with particular dealers, stating that he "was not involved in [such negotiations] directly[,]" and he estimated that the terms of the contract were changed for individual dealers probably around ten times out of 20,000 contracts. *Id.*, 58:9-59:22. And there is no evidence that the relevant terms of the contracts (those affecting the accrual of interest) were negotiated and changed for Plaintiffs or other dealers. Any differences in negotiated terms were to

---

[2]      The version of the 2006 contract attached to Defendants' opposition (Dkt. 197-34) is missing pages 4 and 15; those pages were likewise missing from NextGear's document production.
[3]      To the extent the 2006 contract is relevant, that contract is similar to Mattingly's 2009 contract in the pertinent respects, including the definitions of Advance, Interest, and Liabilities. Thus, all arguments made in Plaintiffs' Motion also pertain to the 2006 Mattingly contract and are incorporated herein by reference.

the interest rate and fees charged to a particular dealer, *see, e.g.*, NextGear Depo. 55:22-57:13, which do not affect the issues raised by this suit or by Plaintiffs' Motion.[4]

15, 18-20.       NextGear's assertion here represents not a factual dispute, but a dispute over the proper interpretation of Plaintiffs' Contracts with NextGear. Defendants do not and cannot dispute that on transactions for which there was a delay between the flooring date and the "Total For" date, NextGear charged interest to Plaintiffs for a period of time prior to making a payment to an auction on their behalf, nor do they dispute the amounts of interest charged to each Plaintiff before a payment was made to an auction on their behalf. Rather, Defendants assert that the definition of "Advance" in the Contracts allowed NextGear to charge interest beginning on the floor plan date.

17.       NextGear does not dispute that Defendants have stipulated to the per diem methodology of calculating the interest charged to the Plaintiffs. Also, contrary to NextGear's assertion, Plaintiffs' statement as to the stipulation referred only to the named Plaintiffs, on whose behalf the Motion was filed, and it does not suggest that NextGear had stipulated to any methodology for the proposed Class. Indeed, Plaintiffs' Motion attached the email exchange between counsel in which the stipulation was reached. *See* Dkt. 196-5.

23.       Contrary to NextGear's assertion, Plaintiffs' statement regarding the terms of the 2013 NextGear contract is not misleading as to those terms; it contains specific references to the sections of that contract providing that interest could be charged prior to the date of an Advance. *See* Dkt. 195 at p. 5, ¶ 23 (citing section 3(a) and Appendix A to 2013 contract at (24) and (25), which provide as follows: § 3(a) ( "All outstanding Liabilities relating to a Floorplan Advance or a

---

[4]       *See* Dkt. 207 at p. 4 (acknowledging that "the Plaintiffs did not negotiate changes to NextGear's proposed form" and asserting that "they could have sought changes to the terms— *e.g.*, in the incorporated Term Sheet…").

Receivable Advance shall accrue Interest on a per annum basis from the Floorplan Date or the

Receivable Origination Date, as the case may be…"), Appendix A at (24) (defining "Floorplan

Advance" as "an Advance made pursuant to this Note relating to a Unit of Inventory to be offered

for sale, lease or rent, or leased or rented by Borrower in the Ordinary Course of Business") and

(25) (defining "Floorplan Date" as "(a) for a Universal Source Purchase, the sale date, *regardless

of the date the Floorplan Advance is actually requested or funded*; and (b) for a Specific Source

Purchase, the date the request for the Floorplan Advance is received by Lender, *regardless of the

date such Floorplan Advance is actually funded*.") (emphasis added). NextGear does not and

cannot dispute the addition of those terms to the 2013 contract.

## LAW AND ARGUMENT

I.    **NextGear's Arguments Relating to Interpretation of the Contract Are Without
      Merit, and Plaintiffs Are Entitled to Summary Judgment on Their Breach of
      Contract Claim.**

NextGear's arguments in opposition to Plaintiffs' motion for partial summary judgment

with regard to the requirements of the Contracts are built on a combination of omissions of key

terms from the Contracts and logical fallacies.

First, NextGear reads the term "outstanding" completely out of the Contracts' provision

regarding the accrual of interest, which actually provides, "All ***outstanding*** Liabilities under this

Note shall accrue interest…."[5] NextGear's argument would eliminate "outstanding" such that

interest could be provided to accrue as to all defined "Liabilities" under the Contracts, regardless

whether they were "outstanding" Liabilities. Under NextGear's argument, this would allow for the

accrual of interest against "future" costs of collection and attorneys' fees, for example, or against

_____
[5]      *See* Dkt. 117-1, Dkt. 117-3, and Dkt. 117-4, at § 3 (emphasis added).

4

debts "hereafter arising," all of which are included in the broad definition of "Liabilities." Not only does such an interpretation result in an absurdity, it also results in an impossibility—as it would not be possible to calculate interest on a future or contingent amount that has not even arisen yet. *See USA Life One Ins. Co. of Indiana v. Nuckolls*, 682 N.E.2d 534, 539 (Ind. 1997) (rejecting interpretations of contract terms that result in "some absurdity"); *Gyr v. Hagemann*, 163 N.E.2d 212, 225 (Ind. App. 1960) ("Further, it is not to be presumed, in interpreting a written contract, that the parties intend to undertake the performance of impossible acts.").

The only reasonable interpretation of § 3 of the Contracts that resolves the absurdity and impossibility suggested by NextGear's interpretation is to read the term "outstanding" back into the provision to modify "Liabilities." Only those "Liabilities" that could be understood as "outstanding" would be subject to the accrual of interest. That is, currently owed, present, due, "now existing" "Advances, debts, DSC Financed Inventory Liabilities, financial obligations, … and duties[.]" By giving meaning to the term "outstanding" in the loan accrual provision of the Contracts, NextGear's assertion that the term "loan" (used in the definition of "Advance") would introduce a redundancy is also resolved. Even if "loan," which is not itself defined in the Contracts, were given the definition suggested by NextGear of meaning either a payment or an agreement to pay money, the term "outstanding" again guides the parties in determining that only the actual payments to third parties on the Plaintiffs' behalf would trigger the accrual of interest. In other words, only NextGear's insistence that "***outstanding*** Liabilities" should mean ***all*** defined "Liabilities" results in difficulties in interpreting the Contracts' interest-accrual provision.

In a recent decision, the Indiana Court of Appeals interpreted an "outstanding Liabilities" term to apply to the "balance of principal and accrued interest[.]" *Broadbent v. Fifth Third Bank*,

59 N.E.3d 305, 313-14 (Ind. App. 2016). Such an interpretation makes sense here, as well; otherwise NextGear could never advance funds to an auction company on one of the Plaintiffs' behalf, such that there was never a "principal" amount, yet claim that interest should have nevertheless accrued. As defined by *Black's Law Dictionary*, "outstanding" means, "unpaid; uncollected; as an outstanding debt[;] [c]onstituting an effective obligation." *Black's Law Dictionary* (6th ed. 1990), at 1102. Here, until NextGear actually advanced funds on behalf of one of the Plaintiffs to an auction company, it could not have a claim against that Plaintiff to discharge the debt for that principal amount; the obligation was not perfected.

NextGear attempts to remedy this absurdity in its own suggested interpretation by arguing that the undefined term, "financial obligation," presents an outstanding "Liability" because the Plaintiffs incur a financial obligation ***to the auction company*** the moment they leave the auction with a vehicle. In that argument, however, NextGear is dabbling in the defective argument of which it accuses Plaintiffs—piggy-backing on Plaintiffs' obligations to the auction companies to trigger the separate and distinct obligation to pay interest to NextGear. The financial reality is this:

- Plaintiffs satisfy their financial obligation to the auction companies through invocation of their floorplan agreement with NextGear;

- Plaintiffs do not invoke that floorplan agreement "for free," as suggested by NextGear, but compensate NextGear for the right to invoke that floorplan

6

agreement immediately through incurring Boarding Fees,[6] Floorplan Fees,[7] GPS
Fees, Vehicle Service Contract Fees, and other fees[8];

- **_Then_**, after the funds have been paid by NextGear to the auction companies on
  Plaintiffs' behalf, Plaintiffs begin to accrue interest on those amounts.

No other interpretation comports with the full terms of the Contracts without raising absurdities
and impossibilities.

Notably, Plaintiffs' interpretation—the only reasonable interpretation—does not require
the Court to read into the Contracts any terms regarding timing of payment from NextGear's
separate contracts with the auction companies. On the face of the Contracts between NextGear and
Plaintiffs, Plaintiffs accrued interest owed to NextGear from the time Liabilities become
"outstanding." While NextGear would suggest that this should be as "seamless" as a use of a credit
card at a grocery store, the fact that NextGear sometimes waits days or weeks to pay an auction
company belies such a suggestion. The lack of seamlessness is NextGear's own doing, but
Plaintiffs are not obligated under the Contracts to finance that, which would allow NextGear to

---

[6]     *See, e.g.*, Dkt. 117-1, Dkt. 117-3, and Dkt. 117-4, at § 1(d) ("'Boarding Fee' shall mean
that DSC Universal Fee charged by DSC to Dealer and added to the principal amount of the
Advance for each individual item of DSC Financed Inventory which is the subject of a DSC Lease
Program Advance.").

[7]     *See, e.g.*, Dkt. 117-1, Dkt. 117-3, and Dkt. 117-4, at § 1(u) ("'Floorplan Fee' shall mean
the fee charged by DSC to Dealer set forth on the Term Sheet for each individual item of DSC
Financed Inventory.").

[8]     For this same reason, this Court was right to reject Defendants' argument that Plaintiffs
have suffered no harm, at the Motion to Dismiss stage, and would be correct in rejecting it again
at this stage. NextGear's sole argument is that Plaintiffs got what they bargained for and gained
the benefit of being able to use NextGear's name and credit to purchase cars at auction—and that
the interest accrual was merely fair recompense for that benefit. NextGear ignores that myriad fees
were already incurred by Plaintiffs for that "benefit," and that the accrual of interest should have
only been as to "outstanding" Liabilities.

derive a windfall off of having "loaned" out the funds while still controlling and able to profit off of those funds still in its possession.

Because the only reasonable interpretation of the Contracts is that interest should only accrue on "outstanding" Liabilities, Defendants' attempt to sidestep the distinction between latent and patent ambiguities is of little moment. Indeed, the case relied on by Defendants is specific to whether courts may look to extrinsic evidence specifically in the trusts context, in order to determine a settlors' intent. *U. of S. Ind. Found. v. Baker*, 843 N.E.2d 528, 534-35 (Ind. 2006) (citing *Restatement Third of Property: Wills and Other Donative Transfers* § 11.1). Regardless, Defendants' insistence that the patent/latent ambiguity distinction "is a vestige of the past" does not hold up under a review of recent Indiana decisions, which still employ the distinction where appropriate. *See, e.g.*, *Sauter v. Perfect North Slopes, Inc.*, 993 F. Supp. 2d 926, 933-34 (S.D. Ind. 2014); *In re Estate of Rupley*, 12 N.E.3d 900, 903-04 (Ind. App. 2014) (Riley, J., concurring in part); *Weinreb v. Fannie Mae*, 993 N.E.2d 223, 232 (Ind. App. 2013). Furthermore, the distinction merely frames the analysis that, if an ambiguity in a contract arises on the face of the contract and not from its application, then the interpretation of that contract must be confined to the terms that are on the face of the contract—*i.e.*, that extrinsic evidence may only be relied on to resolve an extrinsically manifested ambiguity in the application of the contract.

Here, NextGear does not attempt to illustrate how the "ambiguity" in the Contracts arises from the application of the terms of the Contracts rather than just from the face of the Contracts. Both parties' briefing on the meaning of the interest-accrual provision delves into the contractual definitions of the terms involved and into a discussion of undefined terms of the Contracts. There is no discussion of how any facts external to the terms of the Contracts have given rise to an

ambiguity. NextGear glosses over this distinction only in a footnote, suggesting that any ambiguity only appears "when the parties apply the floor plan agreement[.]" Dkt. 207, at 13 n. 5. Respectfully, NextGear's aberration from the terms of the Contracts to calculate interest on funds that had not been advanced was not an "ambiguity," but was a breach. Under NextGear's argument, every breach would be an "ambiguity" and summary judgment would never be appropriate in a contract breach case. This is not the law.[9]

For each of these reasons, as well as those presented in Plaintiffs' original memorandum in support of this motion, Plaintiffs are entitled to partial summary judgment on their breach of contract claim.

## II.   Each of NextGear's Affirmative Defenses Fails, and None Preclude Summary Judgment in Plaintiffs' Favor.

As explained below and in Plaintiffs' opposition to Defendants' motion for summary judgment (Dkt. 209), none of NextGear's defenses undercut Plaintiffs' entitlement to judgment as a matter of law.

### A.   *Res Judicata and Setoff*

As in Defendants' Motion for Summary Judgment, NextGear again raises its *res judicata* and setoff defenses in response to Plaintiffs' Motion. For the reasons set forth in Plaintiffs'

---

[9]      In Defendants' brief (Dkt. 207 at p. 3, n. 2), they again attempt to "get the final word" on the fully-briefed class certification motion (Dkt. 199 at p. 3). This argument should be disregarded by the Court for the same reasons set forth in Plaintiffs' Motion to Strike Defendants' Notice of Additional Authority Affecting Class Certification (Dkt. 205). To the extent the Court does consider Defendants' argument, it should be rejected. As discussed herein and in Plaintiffs' original memorandum, the ambiguity in the Contracts is patent—apparent on the face of the contract itself—and interpretation of the Contracts requires no review of extrinsic evidence. Plaintiffs' argument as to the ambiguity of the NextGear Contracts has no bearing on class certification.

opposition (Dkt. 209 at pp. 24-28 (*res judicata*) and 28-29 (setoff)), which are incorporated herein by reference, Mattingly's and Platinum's claims are not barred by *res judicata* or setoff.

### B. *Ratification and Waiver*

NextGear also raises another contractual defense (this time under the moniker "Ratification and Waiver") that has already been rejected by this Court, arguing that the thirty-day notice provision at § 4(k) of the Contracts bars any claims by Plaintiffs that NextGear breached the Contracts by accruing interest against unreleased funds. This Court previously rejected this when it was part of Defendants' *res judicata* arguments:

> The Defendants suggest that the Plaintiffs could have discovered the facts giving rise to their injuries by a diligent review of their own bank statements, which would show when interest and other charges had been automatically debited from their accounts. However, this argument overlooks the fact that the bank account statements would not have indicated the actual interest rate charged or when NextGear actually paid the auction houses. Without knowing when NextGear actually paid the auction houses, the Plaintiffs could not have been apprised of the alleged scheme to prematurely charge fees and interest on their accounts well before NextGear paid the auction houses.

Dkt. 186 at 16. NextGear provides no new support for its argument, and it should be rejected for the same reasons. Indeed, the evidence in this case now establishes that Plaintiffs did not know and could not have known when NextGear paid the auctions. *See* Dkt. 209 at pp. 27-28.[10]

The Court's reasoning is further supported by a close reading of the language of the Contracts. Section 4(k) provides that a Dealer's account statement is a "definitive statement of

---

[10]     In support of its ratification and waiver argument, NextGear cites a 1968 case where the record "show[ed] that the Appellant did not examine its checks to determine whether the balance was correct, or whether all the canceled checks were present, or whether any of the canceled checks were forged." *V. H. Juerling & Sons, Inc. v. First Nat. Bank of Richmond,* 242 N.E.2d 111, 119 (Ind. App. 1st Div. 1968). In contrast, Plaintiffs did review their NextGear account statements (as Defendants acknowledge)—and, importantly, those statements did not show the dates of NextGear's payments to the auctions. *See* Dkt. 209 at pp. 27-28.

Dealer's Credit Line and Liabilities as of the date of the statement and shall be binding upon the dealer"; "Liabilities" is defined in turn to include "Interest"; but "Interest" is a defined term that does not, in turn, mean a definitive breakdown of the interest accrued and applicable as to each individualized purchase. Instead, it means "the aggregate rate of interest which accrues on all Liabilities owed by Dealer to DSC … by combining the Base Rate plus the applicable Contract Rate, Risk Rate or Default Rate." *E.g.*, Red Barn Note [Def. Ex. 21] § 1(w). As observed by this Court already, this does not include the information that would have been required for Plaintiffs to be apprised of the accrual of interest on funds not yet released to the auction houses.

C.  ***Release***

NextGear's assertion that the Settlement Agreement and Release ("Release") executed by Mattingly in 2014 precludes its current claims against NextGear is legally wrong. First, the Release must be interpreted under Kentucky law, not Indiana law. *See* Dkt. 160-25 at Section 5 ("This Agreement shall be governed by, construed by, and enforced in accordance with the laws of the State of Kentucky.").

It is well settled under Kentucky law that an "agreement to settle legal claims is essentially a contract subject to the rules of contract interpretation" and that contract interpretation is a legal question for the Court. *Alph C. Kaufman, Inc. v. Cornerstone Industries Corp.*, 2017 WL 943972, *10 (Ky. App. 2017)(citing *Cantrell Supply, Inc. v. Liberty Mutual Insurance Co.*, 94 S.W.3d 381, 384 (Ky. App. 2002)(quotations omitted).

The first recital of the Release defines "Lawsuit" as a "Small Claims Complaint against NextGear Capital in the District Small Claims Court of Breckinridge County, Kentucky, under Cause No. 13-S-00039." Dkt. 160-25 at p. 1. That Lawsuit was filed by Mr. Mattingly individually

and *pro se* for physical damage caused by NextGear to his home garage. *See* Dkt. 160-24.[11] The

relevant language in the Release clearly reflects that the settlement was only meant to resolve

claims related that Lawsuit and reads in full:

> This Agreement constitutes a release by Mattingly, in which
> Mattingly, on behalf of himself, his current and former agents,
> representatives, successors in interest, assigns, affiliates,
> predecessors, parents and subsidiaries, and all those acting on his
> behalf, RELEASES and FOREVER DISCHARGES NextGear
> Capital…from any and all claims, demands, damages, indebtedness,
> action, and causes of action, known or unknown, **on account of,**
> **arising out of, or in any way connected with the Lawsuit and the**
> **claims that were raised or could have been raised therein**.

Dkt. 160-25 at Section 3 (emphasis added). The claims raised by Mattingly Auto Sales in the

instant litigation are in no way "on account of, arising out of, or in any way connected with" the

suit filed by Mr. Mattingly *pro se* in Small Claims Court in Breckinridge County, Kentucky for

physical damage to his home garage. To stretch the Release as urged by NextGear to include the

claims in this matter is contrary to the plain language of that agreement and the rules of contract

interpretation under Kentucky law and must be rejected. *See e.g.*, *Brester Homes of Kentucky, LLC*

*v. Kentucky Bank*, 2014-CA-000434-MR, 2016 WL 6127720, at *2 (Ky. App. Oct. 21, 2016),

*review denied* (Mar. 15, 2017).

---

[11]     Although NextGear contends that Mattingly Auto Sales is an "affiliate" of Barry Mattingly,
it cites no legal authority. The Release does not define affiliate and *Black's Law Dictionary* defines
affiliate as a "[c]ompany effectively controlled by another company. A branch, division, or
subsidiary. … Corporations which are related as parent and subsidiary, characterized by identity
of ownership of capital stock" (*Black's Law Dictionary* (6th ed. 1990), at 58), which is not
applicable to the relationship between Mr. Mattingly and Mattingly Auto Sales.

## CONCLUSION

For the reasons set forth herein, as well as those set forth in Plaintiffs' original memorandum, Plaintiffs' motion for partial summary judgment should be granted and judgment should be entered in Plaintiffs' favor as to both liability and damages for breach of contract.

Respectfully submitted,

 _/s/ Kerry A. Murphy_
CATHERINE E. LASKY (La. Bar No. 28652)
*Pro Hac Vice*
KERRY A. MURPHY (La. Bar No. 31382)
*Pro Hac Vice*
**LASKY MURPHY LLC**
715 Girod Street, Suite 250
New Orleans, Louisiana 70130
Telephone: (504) 603-1500
Facsimile: (504) 603-1503
klasky@laskymurphy.com
kmurphy@laskymurphy.com

GLADSTONE N. JONES, III (La. Bar No. 22221) *Pro Hac Vice*
LYNN E. SWANSON (La. Bar No. 22650)
*Pro Hac Vice*
**JONES, SWANSON, HUDDELL & GARRISON, L.L.C**.
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
Telephone: (504) 523-2500
Facsimile: (504) 523-2508
gjones@jonesswanson.com
lswanson@jonesswanson.com

CASSIE E. FELDER (La. Bar No. 27805)
*Pro Hac Vice*
**THE CASSIE FELDER LAW FIRM**
7515 Jefferson Hwy., #313
Baton Rouge, LA 70806
Main: (504) 232-1733
Cell: (504) 400-1127
cassie@cassiefelderlaw.com

JAMES M. GARNER (La. Bar No. 19589)
*Pro Hac Vice*
RYAN D. ADAMS (La. Bar No. 27931)
*Pro Hac Vice*
MATTHEW M. COMAN
(La. Bar No. 23613)
*Pro Hac Vice*
**SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C.**
909 Poydras Street, Suite 2800
New Orleans, Louisiana  70112
Telephone: (504) 299-2100
Facsimile: (504) 299-2300
jgarner@shergarner.com
radams@shergarner.com
mcoman@shergarner.com

Kathleen A. DeLaney (#18604-49)
**DELANEY & DELANEY LLC**
3646 North Washington Blvd.
Indianapolis, IN 46205
Telephone: (317) 920-0400
Facsimile: (317) 0404
Kathleen@delaneylaw.net

**COUNSEL FOR PLAINTIFFS AND THE PROPOSED CLASS**

13

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of June, 2017, a copy of the foregoing was filed electronically. Notice of the filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

David J. Jurkiewicz
Paul D. Vink
BOSE MCKINNEY & EVANS, LLP
111 Monument Circle
Suite 2700
Indianapolis, IN 46204

Jason S. McCarter
Tracey K. Ledbetter
EVERSHEDS SUTHERLAND (US) LLP
999 Peachtree Street, NE, Suite 2300
Atlanta, GA 30309-3996

*/s/ Kerry A. Murphy*