IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| RED BARN MOTORS, INC., PLATINUM MOTORS, INC., and MATTINGLY AUTO SALES, INC., individually and on behalf of other members of the general public similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:14-cv-01589-TWP-DKL |
| COX AUTOMOTIVE, INC., NEXTGEAR CAPITAL, INC. F/K/A DEALER SERVICES CORPORATION, successor by merger with Manheim Automotive Financial Services, Inc., and JOHN WICK, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**REPLY IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Despite evolving contract interpretation theories, inconsistent legal positions, and liberties taken with the record, Plaintiffs fail to raise genuine issues of fact that would preclude summary judgment to Defendants on Plaintiffs' three remaining claims. There is no dispute that NextGear became obligated to fund an auction from the purchase date when Plaintiffs floor planned a vehicle at auction, which means that interest can be charged from that date and Plaintiffs' claims are without merit.

Defendants' summary judgment motion demonstrated that all three parties involved in a floor plan transaction—NextGear, auction, and dealer—understand NextGear is on the hook on the auction date to pay for cars a dealer floor plans. (MSJ Br. [Doc. 193] at 16-18.) Plaintiffs acknowledge this evidence. (Resp. Br. [Doc. 209] at 2 n.2.) Although Plaintiffs argue incorrectly that the evidence consists of legal conclusions the Court should ignore, they do not

meet their burden under Rule 56(c)(1) to show a genuine issue of fact.  So, for example, while arguing that a Liability must be "outstanding" to accrue interest, Plaintiffs overlook that a Liability *is* outstanding when a car is taken from auction using NextGear credit, as the dealer immediately becomes liable to pay NextGear, just like a customer is liable to a credit card company from the date of a credit card purchase.

Plaintiffs have now conceded that all three of their claims "flow from" the Notes, specifically the definitions of Interest, Liabilities, and Advance.[1]  Thus, their constructive fraud and RICO claims also must fall with the contract claim.  But even if Plaintiffs' Notes were ambiguous on the interest issue, as Plaintiffs contend (Resp. Br. [Doc. 209] at 10-14; Pls.' MPSJ Br. [Doc. 195] at 12-18), that means they can reasonably be read in two ways.  It is undisputed that NextGear consistently applied the contracts and interest according to its reading; that it billed the Plaintiffs consistently with that reading throughout their relationship; that NextGear did not believe its auction payment dates were relevant to Plaintiffs because such payment was between NextGear and the auctions; and that NextGear responded truthfully when two of the Plaintiffs asked about when interest began to be charged.  It is implausible—indeed, absurd—to infer a grand fraudulent scheme merely because NextGear consistently did what it believed it was contractually permitted to do.

Finally, in their Opposition, Plaintiffs mislead the Court about the record of their own knowledge, defaults, and fraudulent behavior.  Plaintiffs attempt to deny or explain away many

---

[1] *See* Transcript of Class Certification Oral Argument ("Hr'g Tr.") [Doc. 202] 6:1-10 ("[A]ll of the claims that remain in the case flow from that form contract. . . . On our constructive fraud and RICO claims, those also flow from the same contracts and the associated statements provided by NextGear.  So all of the claims derive from the same form contracts . . . ."), 6:19-21, 7:1-3, 7:17-23, 8:6-18 ("the material terms where the deception occurred, where the constructive fraud derives from, where the RICO claim comes from, are three provisions that are defined in the same way across the contracts . . . [I]nterest, [L]iabilities, and [A]dvance"), 10:17-18.

of the fraudulent acts that they openly admitted in depositions.  The Court should reject

Plaintiffs' attempt to rewrite history, as it should reject Plaintiffs' novel quest to recover a

windfall for interest charges they incurred but did not pay in full.  Instead, on the record before

it, the Court should grant summary judgment to Defendants on all of the claims raised by

Plaintiffs.

**UNDISPUTED FACTS**

Plaintiffs cannot create genuine disputes of fact by misrepresenting the evidence in the

record.  Many of Plaintiffs' factual claims are without support and may be disregarded.

***Plaintiffs Misrepresent the Record***

Plaintiffs assert, "In the Floorplan Agreements, NextGear represented that Plaintiffs

would not be charged interest until NextGear paid for the vehicles."  (Resp. Br. [Doc. 209] at 3.)

No such representation can be found anywhere in any of the Plaintiffs' Notes, whether in the

language cited by Plaintiffs or anywhere else.  What is clear is that Plaintiffs admit that there was

no misrepresentation; rather, NextGear acted in accordance with its understanding of the Notes.

(Red Barn Dep. [Doc. 197-6] 225:1-20; Hr'g Tr. [Doc. 202] 8:5-10, 5:24-6:10.)

Plaintiffs continue to try to make much out of one instance in which a Red Barn purchase

of a Ford 500 was unwound by a third-party auction in early 2013.  (*See* Resp. Br. [Doc. 209] at

7.)  There are at least two problems with Plaintiffs' reliance on this transaction.  First, Red Barn

admitted that it knew long before 2013 that NextGear charged interest before transferring funds

to an auction: Devon London testified that in "June or July of 2012," his account representative

"got back with me and basically said, that's the way that it is, you know.  They -- they charge

interest from the date of the sale versus the date of the actual loan."  (Red Barn Dep. [Doc. 197-

6] 183:5-184:5.)  Second, Plaintiffs acknowledge that auctions retain the unilateral ability to

cancel a deal if they cannot provide title and that *NextGear reimbursed all sums* paid on the Ford

500.  (Resp. Br. [Doc. 209] at 7, 6 n.10.)  Thus, that transaction is atypical and tells the Court

nothing about the other transactions financed by NextGear for Red Barn—including the more

than 100 transactions financed *after* the Ford 500 purchase.  (*See* Red Barn Transaction Report

[Doc. 197-15].)

    Like Mr. London, Mattingly's owner specifically testified that, while doing business with

NextGear, he knew that he was paying interest before NextGear funded a loan:  "Just in a -- I

said in a jokingly -- I'm sure that they told me it was common practice, but I said, 'That's kind of

a shame that I'm paying interest on *something that you-all are still holding the money on* that I

don't even have yet.'"  (Mattingly Dep. [Doc. 197-8] 76:7-11 (emphasis added); *see also id.* at

154:4-155:2 (Mr. Mattingly was "aware [he was] being charged interest for that period" when

title was absent).)  Despite Mr. Mattingly's deposition testimony, Plaintiffs represent to the Court

that there was "no way for Mr. Mattingly to know or even suspect that NextGear had not paid for

the car on the times that it did not have the title."  (Resp. Br. [Doc. 209] at 6 n.10.)  Mr.

Mattingly clearly knew; he said as much under oath.

    Plaintiffs also assert that "NextGear's scheme allowed it to double dip, charging both a

fee to guarantee the extension of credit, then, in many instances, charging interest before funding

payment."  (Resp. Br. [Doc. 209] at 16.)  But no party has ever taken the position that the floor

plan contracts do not allow NextGear to charge both fees and interest, and Plaintiffs have not

challenged the fees charged.  Even Plaintiffs' own expert would disagree with their

characterization of this issue: he states that fees are "entirely independent of interest."  (Report of

Dan Wojcik [Doc. 210-14].)

    Plaintiffs further claim that NextGear took possession of Red Barn collateral after it had

"drained Red Barn of all available credit and equity."  (Resp. Br. [Doc. 209] at 7-8.)  This also is

a distortion of the record.  Red Barn admitted during its deposition that it was forced to declare bankruptcy not because of anything NextGear did, but because other sources of retail funding dried up.  (Red Barn Dep. [Doc. 197-6] 108:17-109:24.)

In addition to misstating their relationship with NextGear, Plaintiffs attempt to whitewash their own bad acts.  For example:

- NextGear does not assert that Red Barn wrote bad checks.  The evidence is that Red Barn's ACH payments were returned for insufficient funds, and Red Barn's corporate representative admitted that "[t]here may have been ACHs that weren't paid."  (Red Barn Dep. [Doc. 197-6] 106:19-107:4; NextGear's Resp. to Interrog. 13 [Doc. 197-1].)

- Plaintiffs emphatically declare that Red Barn "did not make payments on Devon London's home" (Resp. Br. [Doc. 209] at 9, 31), but fail to acknowledge the deposition testimony that a house owned by Red Barn's owners, Don and Barbara Richardson, was paid for with NextGear collateral.  (Red Barn Dep. [Doc. 197-6] 171:25-172:20.)

- Regardless of their excuses for doing so, it is undisputed that Plaintiffs sold vehicles out of trust—a crime and a fraud under state law.  *See, e.g.*, Va. Code § 18.2-115; Ky. Rev. Stat. § 517.060; La. Stat. § 14:72.4.

- Mattingly never filed bankruptcy, so its debt could not have been discharged.  (Mattingly Dep. [Doc. 197-8] 132:11-16.)

***Plaintiffs Misrepresent Their Case to the Court***

In their Opposition, Plaintiffs criticize NextGear for stating that their tort claims are merely an attempt to repackage their breach of contract claim.  (Resp. Br. [Doc. 209] at 15.)  But Plaintiffs themselves repeatedly told the Court as much during recent oral argument, stating that "all of the claims that remain in the case flow from that form contract" and "our constructive

fraud and RICO claims, those also flow from the same contracts and the associated statements

provided by NextGear."  (Hr'g Tr. [Doc. 202] 6:1-10; *see also id.* at 6:19-21, 7:17-23, 8:5-10.)

Plaintiffs also spend pages in their Opposition discussing their "blacklisting" allegations.

(Resp. Br. [Doc. 209] at 7-9, 20.)  Yet during oral argument, counsel told the Court, "The

blacklisting claims have been dismissed out of the case . . . .  Those claims are done.  We don't --

they're not part of the claims that we're seeking class certification on."  (Hr'g Tr. [Doc. 202]

28:2-10.)  Plaintiffs cannot abandon claims that are fatal to class certification and then resurrect

them on summary judgment.

**ARGUMENT AND AUTHORITY**

On this motion for summary judgment, Plaintiffs must put forth evidence in support of

their claims; they cannot rely on bare assertions or allegations in their complaint.  *See Tri-Gen*

*Inc. v. Int'l Union of Operating Eng'rs, Local 150, AFL-CIO*, 433 F.3d 1024, 1038 (7th Cir.

2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)) ("A plaintiff may not

defeat the defendant's properly supported motion for summary judgment without offering any

significant probative evidence tending to support the complaint." (internal quotation marks

omitted)).  Plaintiffs' failure to submit evidence supporting their claims renders those claims

subject to summary judgment.

**I.**     **NextGear Is Entitled to Summary Judgment on Plaintiffs' Breach of Contract Claim.**

Notwithstanding their attempts to confuse the issues and insert ambiguity where none

exists, Plaintiffs do not dispute the evidence that NextGear was financially responsible for a

financed car from the date of auction.  Under the Notes at issue, NextGear is therefore entitled to

collect interest from that date, regardless of when funds were physically transferred to an

auction.

As outlined in detail in Defendants' opening brief and in their opposition to Plaintiffs' motion for partial summary judgment [Doc. 193 at 16-22; Doc. 207 at 7-12], Plaintiffs' Notes unambiguously allow NextGear to charge interest from the date an obligation was incurred to an auction—*i.e.*, the auction date.  Nowhere do the Notes say that "interest was to be charged beginning when NextGear made a payment to a third party on the dealer's behalf."  (*Cf.* Resp. Br. [Doc. 209] at 14.)  Plaintiffs have no answer for the evidence that NextGear was committed to pay the auctions from the moment a car was floor planned on the date of auction.  (*See* 4/26/2017 Galema Decl. [Doc. 197-24] ¶¶ 10-11; Modjeski Decl. [Doc. 197-26] ¶¶ 4-5; Werner Decl. [Doc. 197-28] ¶¶ 4-5; 10/31/2016 Galema Decl. [Doc. 197-13] ¶¶ 15-16; *see also, e.g.*, Red Barn Dep. [Doc. 197-6] 61:1-11, 71:11-20.)  They also continue to try to sidestep the express definitions of "Liabilities" and "Advance," which unambiguously provide that both occur when an obligation is incurred, not just when money is transferred.  (*E.g.*, Red Barn Note [Doc. 197-31] §§ 1(a), 1(y), NG_003561-62.)[2]

After spending their entire summary judgment brief arguing that an "advance" means the payment of money to an auction (while ignoring the definition of "Advance" in the Notes), Plaintiffs now have abandoned that argument in their Opposition and instead latch on to the word "outstanding."  Again, Plaintiffs claim that this word somehow requires that money be paid before interest can accrue.  Certainly, it is true that NextGear cannot charge interest on a car Plaintiffs have not bought, or a car they bought without using a floor plan.  But as soon as NextGear becomes obligated to an auction—when the Plaintiff purchases a car using the floor

---

[2] Plaintiffs assert that this Court already found in its motion to dismiss order that the Notes are not unambiguous.  (Resp. Br. [Doc. 209] at 10-11.)  But the Court was clear that "there are sufficient allegations of a breach to allow the case to proceed *beyond the motion to dismiss stage*."  (Mot. to Dismiss Order [Doc. 186] at 27 (emphasis added).)  Now that the record is fully developed, the Court is free to look anew at the issue without being constrained by the lenient Rule 12(b) standard.

plan—there *is* an outstanding Liability.  "Liabilities" are defined as including "all Advances, debts, . . . financial obligations, . . . charges, expenses, . . . covenants, and duties owing, arising, due or payable from Dealer to DSC of any kind or nature, present or future . . . ."  (*E.g.*, Red Barn Note [Doc. 197-31] § 1(y), NG_003562.)  And an "Advance" includes "any loan or payment" made on a dealer's behalf to a third party.  (*Id.* at § 1(a), NG_3561.)  The moment NextGear becomes obligated to pay an auction for a car floor planned by a dealer, a loan has been made to the dealer and, at the same time, a *present or future* debt, financial obligation, charge, expense, or duty arises from the dealer to NextGear to pay fees, interest, and any principal.[3]  Inserting the word "outstanding" before "Liabilities" does not negate the broad definition of "Liabilities" in the Notes.

Plaintiffs charge that NextGear's interpretation "read[s] the word 'outstanding' wholly out of the Contracts."  (Resp. Br. [Doc. 209] at 11.)  But that is simply untrue.  A Liability becomes "outstanding" the moment NextGear becomes obligated to pay an auction on a dealer's behalf; NextGear's credit is not free and it is commercially unreasonable for Plaintiffs to continue to insist it should be.[4]  Plaintiffs cite to Black's Law Dictionary for the proposition that "debts 'now existing' would be 'outstanding Liabilities.'"  (*Id.* at 12.)  Precisely.  The moment NextGear became liable to an auction on behalf of Plaintiffs, Plaintiffs incurred a "debt" that was "now existing."  While Plaintiffs doggedly insist on a narrow definition of "Advance" that "requires that money be paid by NextGear" (*id.* at 13), the Notes actually say the term is much

---

[3] Likewise, the dealer immediately has many other covenants and duties under the Note, including to hold, insure, and allow audits of the new item of collateral at the dealer's lot.  (*E.g.*, Red Barn Note [Doc. 197-31] § 4(b), (c), (h), NG_003563-64.)

[4] Plaintiffs contend that their interpretation does not result in "free" credit because NextGear charged fees.  (Resp. Br. [Doc. 209] at 1, 12.)  However, Plaintiffs identify no evidence that the initial floor planning fee adequately and fairly compensated NextGear for assuming the risk of payment to the auctions.  It does not; the agreed Note provides for both fees *and* interest on floor planned units.  (*E.g.*, Red Barn Note [Doc. 197-31], Term Sheet, NG_003571.)

broader by explicitly including "any *loan or* payment . . . *made*" in the definition.  Because a loan is a form of debt, Plaintiffs' concession that "debts now existing" are "outstanding Liabilities" inexorably means "*loans* now existing" also constitute "outstanding Liabilities." Plaintiffs incurred an obligation to repay NextGear the moment NextGear's credit allowed Plaintiffs to leave an auction with a car.  That is a loan or debt.[5]

Plaintiffs further seek to bolster their "outstanding Liabilities" argument by claiming that NextGear has "not *risked* the money yet" when it assumes the obligation to pay an auction for a floor planned vehicle and, thus, receives a "windfall" for charging interest.  (*Id.* at 12-13.) Plaintiffs' claim is belied by the evidence.  Plaintiffs have directed the Court to *no* evidence controverting NextGear's evidence that all three parties to the floor planning arrangement (NextGear, dealer, and auction) understood NextGear to be obligated to an auction from the auction date, when a dealer floor planned a vehicle.  The record is replete with testimony establishing that NextGear became obligated to pay the auction immediately and did, in fact, pay auctions for a number of cars at issue for which Plaintiffs never repaid NextGear.  (*E.g.*, 4/26/2017 Galema Decl. [Doc. 197-24] ¶¶ 10-11; Modjeski Decl. [Doc. 197-26] ¶ 4; Werner Decl. [Doc. 197-28] ¶ 4.)  As it turned out, the risk arising from NextGear's mere obligation to pay on behalf of Plaintiffs was quite costly—to the tune of over $200,000—in its dealing with the three named Plaintiffs.  (4/26/2017 Galema Decl. [Doc. 197-24] ¶ 17; Mattingly Judgment [Doc. 197-36]; Platinum Judgment [Doc. 197-22].)

---

[5] In addition to being wrong that their Notes are ambiguous, Plaintiffs are also wrong about the effect of any ambiguity.  As discussed at length in NextGear's opposition to Plaintiffs' motion for partial summary judgment, contractual ambiguity would require the Court to review extrinsic evidence.  (MPSJ Resp. Br. [Doc. 207] at 12-17.)  Thus, either the contract is express in NextGear's favor and supports its motion for summary judgment, or a bench trial is required to hear and apply related extrinsic evidence.  Plaintiffs acknowledge as much in their Opposition by reciting a litany of cases in which summary judgment was denied to allow the fact-finder to consider extrinsic evidence to construe an ambiguous contract.  (Resp. Br. [Doc. 209] at 10-11.)

Plaintiffs' "windfall" argument contains no small amount of irony.  Plaintiffs have failed to repay hundreds of thousands of dollars to NextGear, and yet they have dragged NextGear through years of litigation seeking damages for interest charges Plaintiffs incurred, but largely did not pay.  By contrast, NextGear paid the auctions *even where the Plaintiffs failed to pay NextGear back*.  Plaintiffs' reading of their Notes would allow them free use of NextGear's financing (and vehicles that are collateral) for the period before NextGear settles with the auction, while NextGear bears all the risk.

The Court should not countenance Plaintiffs' attempts to manufacture ambiguity where there is none by omitting key terms of the contract, nor should it allow Plaintiffs to avoid summary judgment without providing evidence that would controvert Defendants' properly supported motion.  NextGear is entitled to judgment as a matter of law on Plaintiffs' breach of contract claim.

## II. NextGear Is Entitled to Summary Judgment on Plaintiffs' Constructive Fraud Claim.

Plaintiffs have not and cannot put forth sufficient evidence to support their constructive fraud claim.  In discussing NextGear's cited authorities, Plaintiffs mischaracterize the decision in *Tobin v. Ruman*, 819 N.E.2d 78 (Ind. Ct. App. 2004), as involving "an oral attorney fee/employment agreement and a conversion claim."  (Resp. Br. [Doc. 209] at 15.)  Plaintiffs refer the Court to pages 83-84 of the decision (*id.*), both of which repeatedly reference Count VII and describe it as a fraud claim.  *Tobin*, 819 N.E.2d at 83-84.  Section B of the court's decision contains the analysis leading to summary judgment on the fraud claim:

> [A] claimant who brings both a breach of contract and a fraud claim must prove that (1) the breaching party committed the separate and independent tort of fraud; and (2) the fraud resulted in injury distinct from that resulting from the breach. . . . In this case, our review of the designated evidence reveals that Tobin's fraud claim is, in fact, merely a repackaged version of his breach of contract claim.  As in *Miller,* the allegations making up his fraud claim amount to a series of

> misrepresentations stemming from and about the contract itself. . . . While Tobin
> may believe that Ruman's and RCH's breach was fraudulent, he has offered no
> evidence establishing that their actions constitute the separate and independent
> tort of fraud.

*Id.* at 86 (citations omitted); *see also Sheaff Brock Inv. Advisors, LLC v. Morton*, 7 N.E.3d 278,

288 (Ind. Ct. App. 2014).

Summary judgment on the constructive fraud claim is appropriate, as Plaintiffs have not

provided any evidence to support the separate and independent tort of constructive fraud, nor

have they demonstrated that the alleged constructive fraud resulted in any injury distinct from the

interest charges stemming from the alleged breach of their floor plan contracts.  In fact, Plaintiffs

repeatedly represented to the Court that "all of the claims that remain in the case flow from that

form contract [that plaintiffs signed with NextGear]. . . . On our constructive fraud and RICO

claims, those also flow from the same contracts . . . ."  (Hr'g Tr. [Doc. 202] 6:1-9.)  Plaintiffs

even specified that "the material terms where the deception occurred, where the constructive

fraud derives from . . . are three provisions that are defined in the same way across the

contracts," namely Interest, Liabilities, and Advance.  (*Id.* at 8:5-10; *see also id.* at 6:19-21.)

This Court did not review the factual record in noting on the motion to dismiss that

Plaintiffs' allegations appeared sufficient to establish that a duty to speak existed (Mot. to

Dismiss Order [Doc. 186] at 39-41), and many of those allegations are now unsupported, or even

disproved, by the evidence.[6]  Defendants' opening brief outlines why none of the elements of a

constructive fraud claim has been shown here.  (MSJ Br. [Doc. 193] at 23-25.)

---

[6] Contrary to Plaintiffs' assertion, NextGear does "seriously dispute" that the Court previously held on a developed factual record that it owed Plaintiffs a duty to disclose its interest charging practices, that NextGear has such a duty, and "that NextGear did not so inform the Plaintiffs." (MSJ Br. [Doc. 193] at 25 n.6; *cf.* Resp. Br. [Doc. 209] at 16.)

When pressed on the elements of constructive fraud at the class certification hearing, Plaintiffs asserted that NextGear's documents show a deceptive misrepresentation and reliance because Plaintiffs "couldn't read those documents [the contracts and account statements] and understand when money was being advanced on their behalf versus when interest was being charged to them." (Hr'g Tr. [Doc. 202] 7:17-23.) This theory of recovery is almost identical to the theory rejected in *Morton*. In that case, an employee defended his constructive fraud claim by claiming that his employer "did not provide 'documentation from which [he] could determine whether or not he was being paid appropriately' and that [he] was 'forced to rely upon false and deceptive documentation' provided by [the employer]." *Morton*, 7 N.E.3d at 288. The court agreed with the trial court that "Morton does not allege that he sustained an injury distinct from that alleged in his breach of contract claim" and affirmed summary judgment in favor of the employer on the constructive fraud claim. *Id.*

Like the plaintiffs in *Morton* and *Tobin*, who provided no evidence of injuries other than those flowing from the alleged breaches of contract, Plaintiffs here assert no damages distinct from the allegedly improper interest charges. Indeed, they have told the Court that the injury is the same—interest charges on funds that had not been advanced on their behalf. (Hr'g Tr. [Doc. 202] 10:16-21.) Accordingly, the Court should grant summary judgment to NextGear on the constructive fraud claim.

## III.    Defendants Are Entitled to Summary Judgment on Plaintiffs' RICO Claim.

Even after months of discovery, Plaintiffs still cannot muster admissible evidence to create a genuine issue of material fact on their RICO claim. Despite relying on them in discovery, Plaintiffs have now disavowed their "blacklisting" allegations as a basis for their RICO claims. (*See* Hr'g Tr. [Doc. 202] 28:2-10.) Yet a RICO claim based on interest charges still fails as a matter of law because (1) Plaintiffs have no evidence of a predicate act; (2) they

lack evidence to support the "conduct" element; and (3) the absence of these two elements precludes them from proving proximate causation.

A.     <u>Plaintiffs Have No Evidence to Support a Claim for Wire or Mail Fraud.</u>

Mail or wire fraud requires Plaintiffs to prove (1) Defendants' participation in a scheme to defraud; (2) Defendants' intent to defraud; and (3) Defendants' use of the mail or wire services in furtherance of the scheme to defraud. *Aronoff v. DiBruno*, No. 1:04CV1126-JDT-WTL, 2005 WL 1940007, at \*5 (S.D. Ind. July 1, 2005) (citing 18 U.S.C. §§ 1341, 1343). Plaintiffs have not presented the Court with any evidence of the first two elements.

1.     *Plaintiffs Have No Evidence of a Scheme to Defraud.*

Boiled down to its essence, Plaintiffs' claim is that Defendants' use of the wires in the process of allegedly breaching a contract constitutes wire fraud. (Resp. Br. [Doc. 209] at 19.) But Plaintiffs cannot, as a matter of law, transform their breach of contract claim into a claim for wire fraud under RICO. The Seventh Circuit has warned that "a breach of contract claim . . . cannot be transmogrified into a RICO claim by the facile device of charging that the breach was fraudulent, indeed criminal." *Carr v. Tillery*, 591 F.3d 909, 918 (7th Cir. 2010). Otherwise every garden-variety breach of contract claim could morph into a RICO claim. *See id.* Plaintiffs acknowledge that the true dispute between these parties boils down to contract interpretation. (Hr'g Tr. [Doc. 202] 6:1-10, 8:5-18, 6:19-20.) And even if the Court agrees with Plaintiffs' interpretation of the floor plan agreement, a breach of contract does not constitute a scheme to defraud. *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, No. 92 C 2808, 1993 WL 8340, at \*4 (N.D. Ill. Jan. 8, 1993), *aff'd*, 20 F.3d 771 (7th Cir. 1994).

Rather, a "scheme to defraud is conduct intended or reasonably calculated to deceive a person of ordinary prudence or comprehension." *United States v. Walker*, 746 F.3d 300, 308 (7th Cir. 2014) (quoting *United States v. Hanson*, 41 F.3d 580, 583 (10th Cir. 1994)). In *United*

*States v. Weimert*, the Seventh Circuit emphasized the narrow scope of wire fraud: "'[W]e do not imply that all or even most instances of non-disclosure of information that someone might find relevant come within the purview' of the mail and wire fraud statutes."  819 F.3d 351, 357 (7th Cir. 2016) (quoting *United States v. Keplinger*, 776 F.2d 678, 697-98 (7th Cir. 1985)).  Even "sharp dealing or unethical conduct" does not suffice.  *Id.*; *see also Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1011 (7th Cir. 2004) (affirming summary judgment on RICO claim because evidence of repeated breaches of promises did not rise to level of fraud).

Proof of a scheme to defraud requires showing that the defendant "made a material false statement, misrepresentation, or promise, or concealed a material fact."  *Weimert*, 819 F.3d at 355.  In this case, Plaintiffs acknowledge that NextGear never made *any* affirmative misrepresentations to them.  (Red Barn Dep. [Doc. 197-6] 79:3-81:17, 182:20-183:4, 225:1-20; Red Barn (Richardson) Dep. [Doc. 197-7] 23:12-25, 24:20-25:14, 26:2-12, 35:3-39:3; Mattingly Dep. [Doc. 197-8] 59:8-10, 74:25-76:18; Platinum Dep. [Doc. 197-9] 95:5-10, 78:23-81:16, 93:3-10, 97:17-25.)[7]  When concealment is the alleged basis for the scheme to defraud, as seems to be the case here, the "mere failure to disclose, absent something more" (such as an "elaborate attempt at concealment") will not constitute wire or mail fraud under RICO.  *See Reynolds v. E. Dyer Dev. Co.*, 882 F.2d 1249, 1252 (7th Cir. 1989).

Plaintiffs have pointed to no evidence of acts of deceit or chicanery by Defendants.  The account summaries they repeatedly cite show only what NextGear does not dispute: that in certain instances NextGear did not settle with an auction immediately but still charged interest to

---

[7] To the extent Plaintiffs allege a misrepresentation in the form of wrongfully charged interest, courts have held that "to hold that a wrongfully charged fee constitutes, in itself, a misrepresentation, would be to broaden the word's meaning, and the reach of RICO, past the point of meaning."  *Braswell Wood Co. v. Waste Away Grp., Inc.*, No. 2:09-CV-891-WKW, 2010 WL 3168125, at *4 (M.D. Ala. Aug. 10, 2010) (holding that alleged improper charges under terms of contract were not misrepresentations for purposes of RICO wire or mail fraud).

compensate for the liability it had already incurred.  Plaintiffs offer no evidence to controvert

their own testimony that when asked, NextGear disclosed the timing of when interest was

charged.  NextGear firmly believes that the Notes permit its method of charging interest, while

Plaintiffs have argued that the Notes are ambiguous on that issue—*i.e.*, they might or might not

be read that way.  Any dispute about that is contractual, not a scheme to defraud.

2. *Plaintiffs Cannot Prove that Defendants Intended to Defraud Them.*

"[W]hat distinguishes a breach of contract claim, which involves a failure to honor a

promise, from a fraud claim, which involves a plan not to keep one's promises, is the specific

intent to defraud."  *Bell Enters. Venture v. Santanna Nat. Gas Corp.*, No. 01 C 2212, 2003 WL

1338453, at *2 (N.D. Ill. Mar. 12, 2003) (citation omitted).  Intent to defraud for purposes of

wire or mail fraud "requires proof that the defendant acted willfully 'with the specific intent to

deceive or cheat, usually for the purpose of getting financial gain for one's self or causing

financial loss to another.'"  *Weimert*, 819 F.3d at 355 (quoting *United States v. Faruki*, 803 F.3d

847, 853 (7th Cir. 2015)).

Defendants have specifically testified to their lack of malicious intent here; the evidence

shows NextGear representatives answered truthfully when asked about interest; and at least two

of the Plaintiffs were aware of the interest accrual date and continued to borrow anyway.

(4/26/2017 Galema Decl. [Doc. 197-24] ¶ 13; Red Barn Dep. [Doc. 197-6] 183:5-184:23;

Mattingly Dep. [Doc. 197-8] 75:6-76:18, 154:4-155:9; *see also* LaBauve Dep. [Doc. 210-8]

57:25-58:9.)  This undisputed evidence closes the door on any inference that NextGear—or any

other Defendant—had any intent to defraud.

Plaintiffs have not countered this evidence, but merely contort it by asserting that

NextGear employee Stuart LaBauve "concealed that NextGear would charge interest from the

date of the auction regardless of when NextGear funded or loaned the money on Red Barn's

behalf." (Resp. Br. [Doc. 209] at 6-7.) In fact, the testimony was simply that the subject of interest did not come up. (LaBauve Dep. [Doc. 210-8] 167:12-168:6.) Notably, both of Red Barn's corporate representatives testified that no one at NextGear/DSC made any false representations to Red Barn about the timing of interest. (Red Barn Dep. [Doc. 197-6] 79:3-81:17; Red Barn (Richardson) Dep. [Doc. 197-7] 23:12-25:14, 26:2-12, 35:3-39:3.)[8] Because Plaintiffs have no probative evidence that Defendants engaged in a scheme to defraud them, and because their fraud-based claims derive solely from contract, Plaintiffs cannot prove the predicate act of wire fraud.

B.    Plaintiffs Have No Evidence That Any Defendant or Auction Participated in or Managed the Conduct of a RICO Enterprise.

Plaintiffs also have no evidence that any of the Defendants participated in or managed the conduct of a RICO enterprise. This lack of evidence bars the RICO claim as a matter of law because only defendants that "exercise a 'degree of direction' over the enterprise" will be liable for RICO violations. *Indiana v. Pastrick*, No. 3:04 CV 506, 2008 WL 2626784, at *3 (N.D. Ind. June 26, 2008).

Plaintiffs have designated no evidence rebutting Defendants' evidence that "Cox Auto . . . has never directed NextGear's day-to-day interest and fee structure, [or] Note terms . . . either before or after the acquisition in 2012. NextGear decides those items for itself." (4/26/2017 Galema Decl. [Doc. 197-24] ¶ 7; McKinney Decl. [Doc. 197-25] ¶ 6.) Plaintiffs attempt to twist the evidence by asserting that NextGear "admitted that Cox Auto continued this fraudulent conduct when it purchased DSC and merged DSC with Manheim to create NextGear." (Resp. Br. [Doc. 209] at 21.) But neither of the declarations Plaintiffs cite says that. (*See*

---

[8] Further, there is absolutely *no* evidence that Cox Auto or John Wick had any intent to defraud anyone. Indeed, Cox Auto could not have participated in any supposed scheme prior to its acquisition of DSC in 2012—which was long after each of the Plaintiffs contracted with DSC.

4/26/2017 Galema Decl. [Doc. 197-24]; Wick Decl. [197-29].)  They simply state that

NextGear's treatment of interest has not changed since the acquisition by Cox Auto, and that

Cox Auto has never participated in or given any input on that issue.

Similarly, Plaintiffs have no evidence that John Wick participated in or managed

NextGear's operations relating to interest.  They have failed to rebut his testimony that he "never

directed [NextGear's] operations regarding sales representations or interest calculations . . . ."

(Wick Decl. [197-29] ¶ 3.)  Plaintiffs cite to Mr. Wick's deposition testimony from another case,

given prior to Cox Auto's acquisition of DSC, which discusses a lending contract.  (Resp. Br.

[Doc. 209] at 1-2 (citing Wick Dep. [Doc. 210-4] 96:7-98:22).)  But they fail to provide the

Court with a copy of this contract, or to prove its relationship to the contracts at issue here.

Without such evidence, Plaintiffs' arguments fail, as it is not appropriate for the Court to

consider evidence outside the summary judgment record.  *See Seng-Tiong Ho v. Taflove*, 648

F.3d 489, 497 (7th Cir. 2011); Fed. R. Civ. P. 56(c)(1).  The facts and testimony before the Court

are that Mr. Wick did not direct or participate in interest calculations, and Plaintiffs have

presented no evidence that Mr. Wick directed or participated in any alleged scheme to defraud

Plaintiffs through improper interest charges.  The evidentiary record simply does not support

Plaintiffs' RICO claim.

C.      Plaintiffs' RICO Claim Fails to Establish Proximate Causation.

Plaintiffs are correct that there are four factors for RICO standing.  But those four factors

require a finding of causation: a RICO plaintiff must show that it has been "injured in [its]

business or property by reason of the conduct of a qualifying enterprise's affairs through a

pattern of acts indictable as mail [or wire] fraud."  *Bridge v. Phoenix Bond & Indemnity Co.*, 553

U.S. 639, 647 (2008).  As discussed above, Plaintiffs have not shown that their alleged injuries

occurred "by reason of" either the conduct of "a qualifying enterprise" or a pattern of acts

indictable as wire fraud.  Yet the *Bridge* Court emphasized, "[t]he gravamen of the offense is the scheme to defraud," *id.*, and Plaintiffs have no evidence of such a scheme.  Plaintiffs' RICO claim fails as a matter of law.

## IV.   Defendants Are Entitled to Summary Judgment Due to Plaintiffs' Wrongful Acts.

### A.   Res Judicata

Plaintiffs attempt to avoid the effects of the prior judgments against Mattingly and Platinum by pretending that interest was not at issue in the prior cases, and that, at the time, they did not know or could not have known anything about when interest accrued.  Both attempts to circumvent the effect of the prior judgments are based on false premises.  First, it cannot be disputed that the prior lawsuits alleged that Platinum and Mattingly "fail[ed] to make payments of principal and/or interest due" under their Notes and sought to recover unpaid interest.  (*See* Platinum Complaint [Doc. 197-21] ¶¶ 10, 16.)  Thus, the interest charges about which Plaintiffs now complain *were* at issue in the prior cases.  Second, as discussed in Defendants' opening brief, Mattingly (which knew about the interest issue) and Platinum (which could have known) could and should have objected to the interest charges when the collection suits were filed.  (MSJ Br. [Doc. 193] at 31-33.)  But they did not, and that failure bars their claims now.

### B.   Setoff

Plaintiffs' assertion that setoff must be pled as a counterclaim is simply incorrect.  Setoff may be asserted as either an affirmative defense or a counterclaim.  *See, e.g.*, *Perez v. PBI Bank, Inc.*, No. 1:14-cv-01429-SEB-MJD, 2015 WL 500874, at *8-9 (S.D. Ind. Feb. 4, 2015).  And even if better presented as a counterclaim, it should nonetheless be accepted as an affirmative defense.  Fed. R. Civ. P. 8(c).  The Court can determine at the summary judgment stage that Defendants are entitled to a setoff, even if issues of Defendants' liability remain for trial.

C.     Unclean Hands

Plaintiffs work overtime to explain away their past bad acts, not the least of which was defaulting on their obligations to NextGear to the tune of hundreds of thousands of dollars.  But their fraudulent acts went far beyond that.  For example, Plaintiffs do not dispute that all three dealers committed criminal and fraudulent acts under state law by selling floor planned vehicles out of trust.  (NextGear's Resp. to Interrog. 13 [Doc. 197-1]; Mattingly Dep. [Doc. 197-8] 99:6-100:14, 206:21-207:15; Platinum Dep. [Doc. 197-9] 108:12-109:2.)

Although Plaintiffs make much of the fact that Red Barn did not attempt to pass "checks that didn't clear" (Resp. Br. [Doc. 209] at 31)—a phrase nowhere found in Defendants' opening brief—there is no dispute that Red Barn made several payments to NextGear that were returned for insufficient funds.  (Red Barn Dep. [Doc. 197-6] 106:19-107:4; NextGear's Resp. to Interrog. 13 [Doc. 197-1].)  Whether these payments were by check or electronic funds transfer is of no moment.  In addition, while it may be true that Red Barn did not make payments on Devon London's home *per se*, Mr. London admitted that proceeds from the sale of cars that were NextGear collateral were used to make payments for a house owned by Red Barn's owner (and referred to as a "Devon house payment").  (*Compare* Resp. Br. [Doc. 209] at 31, *with* Red Barn Dep. [Doc. 197-6] 171:25-172:20.)

Mattingly also admitted to several fraudulent acts, including putting a vehicle on its floor plan after it had already sold the vehicle.  (Givens Dep. [Doc. 197-11] 156:19-157:9.)  Mattingly also obtained financing from NextGear by making false representations about the status of a vehicle it was floor planning and by colluding with another dealer to obtain inflated prices for certain vehicles.  (Mattingly Dep. [Doc. 197-8] 91:15-95:21 (two floor plans, pre-arranged price), 182:7-192:25 (pre-arranged price); Givens Dep. [Doc. 197-11] 156:19-157:9, 168:4-170:17.)  As to claims that it believed the judgment against it was discharged in bankruptcy,

Mattingly admits that the company itself never filed bankruptcy.  (Mattingly Dep. [Doc. 197-8] 132:11-16.)  And, despite now being fully aware that the company's debt has *not* been discharged, Mattingly has still made no effort to pay the judgment.

Platinum tries to excuse its selling vehicles out of trust based on its relationship with another dealer.  (Platinum Dep. [Doc. 197-9] 108:12-109:2, 18:14-19:9 (Platinum began under umbrella of Car Key Auto); NextGear Resp. to Interrog. 13 [Doc. 197-1].)  But if Platinum failed to maintain possession of vehicles that it floor planned with NextGear, as it now claims, it also violated the provisions of its Note requiring it to keep collateral at its place of business and to maintain accurate records of its business.  (Platinum Note [Doc. 197-37] § 4(b), (g), NG_003514-15.)  In addition, Platinum does not deny that it made payments to NextGear that were dishonored.  (NextGear Resp. to Interrog. 13 [Doc. 197-1].)

No amount of ink on summary judgment can whitewash Plaintiffs' fraudulent acts.  The evidence demonstrates that despite their excuses, each of the Plaintiffs defaulted and committed serious frauds against NextGear.  Plaintiffs' attempt to depict themselves as victims is contrary to the evidence.  Plaintiffs' unclean hands should bar their claims.

### CONCLUSION

Summary judgment should be granted in favor of Defendants on all claims.  It is undisputed and uncontroverted that NextGear became obligated to fund an auction from the purchase date when Plaintiffs floor planned a vehicle at auction, and the unambiguous terms of the Notes therefore provide that a Liability was incurred (*i.e.*, became "outstanding") and interest properly began to accrue then.  No amount of creative lawyering can entitle Plaintiffs to free financing.  And even if this Court were to find the Notes ambiguous and in need of further scrutiny through extrinsic evidence at trial, Plaintiffs' claims arise in contract, not fraud or RICO.

Respectfully submitted, this 7th day of June, 2017.

 *s/ Tracey K. Ledbetter*
David J. Jurkiewicz (18018-53)
Paul D. Vink (23785-32)
BOSE McKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN  46204
(317) 684-5000
(317) 684-5173 fax
djurkiewicz@boselaw.com
pvink@boselaw.com

Jason S. McCarter (*pro hac vice*)
Tracey K. Ledbetter (*pro hac vice*)
EVERSHEDS SUTHERLAND (US) LLP
999 Peachtree Street, NE, Suite 2300
Atlanta, GA 30309-3996
(404) 853-8000
(404) 853-8806 fax
jasonmccarter@eversheds-sutherland.com
traceyledbetter@eversheds-sutherland.com

*Attorneys for Defendants Cox Automotive, Inc.,*
*NextGear Capital, Inc. f/k/a Dealer Services*
*Corporation, and John Wick*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing has been served upon the

following counsel of record via the Court's electronic service notification system, this 7th day of

June, 2017:

Ryan D. Adams
James M. Garner
Matthew M. Coman
Jacob A. Airey
SHER GARNER CAHILL RICHTER
KLEIN & HILBERT, L.L.C.
radams@shergarner.com
jgarner@shergarner.com
mcoman@shergarner.com
jairey@shergarner.com

Catherine E. Lasky
Kerry A. Murphy
LASKY MURPHY LLC
klasky@laskymurphy.com
kmurphy@laskymurphy.com

Cassie E. Felder
LUGENBUHL, WHEATON, PECK,
RANKIN & HUBBARD
cfelder@lawla.com

Gladstone N. Jones, III
Lynn E. Swanson
JONES, SWANSON, HUDDELL &
GARRISON, LLC
gjones@jonesswanson.com
lswanson@jonesswanson.com

Kathleen A. DeLaney
DELANEY & DELANEY LLC
Kathleen@delaneylaw.net

Lisa Brener
BRENER LAW FIRM, LLC
lbrener@brenerlawfirm.com


 *s/ Tracey K. Ledbetter*
Tracey K. Ledbetter