UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| RED BARN MOTORS, INC., PLATINUM MOTORS, INC., and MATTINGLY AUTO SALES, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:14-cv-01589-TWP-DKL |
| NEXTGEAR CAPITAL, INC., f/k/a DEALER SERVICES CORPORATION, COX ENTERPRISES, INC., COX AUTOMOTIVE, INC., and JOHN WICK, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**ENTRY ON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

This matter is before the Court on a Motion for Class Certification and Appointment of Class Counsel filed by Plaintiffs Red Barn Motors, Inc. ("Red Barn"), Platinum Motors, Inc. ("Platinum Motors"), and Mattingly Auto Sales, Inc. ("Mattingly Auto") (collectively, "Plaintiffs") (Filing No. 153).[1] The Plaintiffs entered into agreements with Defendant NextGear Capital, Inc. ("NextGear"), formerly known as Dealer Services Corporation ("DSC"), which provided lines of credit for financing the Plaintiffs' used car dealership operations. When the Plaintiffs discovered that they had been charged fees and interest on money that had not yet actually been loaned, they initiated this litigation, asserting claims for breach of contract, constructive fraud, tortious interference with business relationships, unjust enrichment, violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and RICO conspiracy. Following a motion to dismiss the Plaintiffs' Amended Complaint, the

---

[1] Former plaintiff Young Executive Management & Consulting Services, Inc. ("Executive Auto Group") filed a motion to voluntarily withdraw as a plaintiff on September 30, 2016 (Filing No. 152), which the Court granted on October 3, 2016 (Filing No. 156). Thus, Executive Auto Group is no longer a named plaintiff in the case.

Court entered an Order narrowing the claims to breach of contract, constructive fraud, and the substantive RICO violation (Filing No. 186).[2]  On September 30, 2016, the Plaintiffs filed their Motion for Class Certification.  For the following reasons, the Motion for Class Certification is **granted in part and denied in part**.

## I.   <u>BACKGROUND</u>[3]

Plaintiffs Red Barn, Platinum Motors, and Mattingly Auto operate used car dealerships. Red Barn is a small, family-owned and operated used car dealership in Louisiana.  Platinum Motors is located in Chesapeake, Virginia.  Mattingly Auto is located in Hardinsburg, Kentucky. Each of the Plaintiffs was solicited by NextGear to enter into a contract whereby NextGear would issue a line of credit to the Plaintiffs so that the Plaintiffs could purchase used vehicles at automobile auctions and the vehicles would initially be paid for by NextGear.  The Plaintiffs would then later pay NextGear the amount NextGear paid the auction on behalf of the Plaintiffs as well as interest and other fees.  Each of the Plaintiffs entered into an agreement with NextGear, specifically called a "Demand Promissory Note and Security Agreement."  These agreements provided to the Plaintiffs a revolving line of credit—commonly referred to as a floorplan agreement—to purchase vehicles at auctions, which would then be resold at their used car dealerships.

Defendant NextGear has its principal place of business in Carmel, Indiana, and is a wholly-owned subsidiary of Defendant Cox Automotive, Inc.  Cox Automotive in turn is a wholly-owned subsidiary of Defendant Cox Enterprises, Inc.  Cox Automotive is a world leader in vehicle

---

[2] All claims against Defendant Cox Enterprises, Inc. were dismissed in the Court's Order on Defendants' Motion to Dismiss (Filing No. 186 at 42).

[3] This background section should look familiar to the parties because, in drafting this section, the Court borrowed heavily from the background section of its Order on Defendants' Motion to Dismiss for the sake of judicial efficiency.

remarketing services and digital marketing and software solutions for automotive dealers and customers.  In addition to owning and operating NextGear, Cox Automotive also owns and operates Kelley Blue Book and Autotrader among other companies.  NextGear is an automotive financing company that provides line-of-credit financing to used car dealers that purchase used automobiles from auction companies throughout the United States.  NextGear also owns and operates some auction houses.  NextGear operates throughout the United States by way of almost two hundred account executives and eighteen regional directors.  Defendant John Wick ("Mr. Wick") is general counsel and corporate secretary for NextGear.  Mr. Wick oversees all corporate, legislative, and litigation matters of NextGear.  Mr. Wick also leads NextGear's strategic and corporate development.

In their Amended Complaint, the Plaintiffs describe the typical auction and financing transaction:

> Typically, Floorplan Agreements are used by used car dealers in conjunction with vehicle auctions in the following manner: a) a new car dealer receives a trade-in vehicle; b) the new car dealer then provides the trade-in vehicle to an auction company to present to numerous used car dealers at auction on a particular date; c) once a used car dealer's bid is accepted, the used car dealer takes possession of the vehicle; d) on the date of the auction, the used car dealer either pays the auction company directly or employs an automotive financing company (such as a NextGear/DSC) to pay the auction company on that day and provide financing by means of a Floorplan Agreement with the used car dealer for the purchase of the vehicle; e) the new car dealer delivers the title for the vehicle to the auction company; f) the auction company forwards the title to whomever paid it - either the used car dealer that paid the auction company directly, or the automotive financing company that provided financing by means of a Floorplan Agreement. If the title is forwarded to the automotive financing company that provided financing by means of a Floorplan Agreement, the used car dealer pays the automotive financing company fees and interest on the money loaned while the used car dealer attempts to sell the vehicle to a new buyer. Once the used car dealer sells the car to a new buyer, the used car dealer pays off the automotive financing company in full.

(Filing No. 117 at 5.)   The Plaintiffs assert that NextGear deviates from this typical model.

"NextGear/DSC, however, does not pay the auction houses until NextGear/DSC receives the title

to the vehicles purchased, even though NextGear/DSC charges interest and curtailment fees to the Red Barn Plaintiffs under the illusion that NextGear/DSC has already paid the auction house for the vehicles." *Id.* It can take as long as eight weeks for NextGear to receive title to a vehicle purchased at an auction, at which point it pays the auction for the vehicle; however, NextGear begins charging interest and fees at the time of the sale at the auction.

The Plaintiffs further allege that the Defendants,

> devised a scheme and artifice to defraud the [] Plaintiffs and others similarly situated, and to obtain money and property by means of false and fraudulent pretenses and representations by charging "interest" to the [] Plaintiffs and others similarly situated, on money not lent from NextGear/DSC to the [] Plaintiffs.

(Filing No. 117 at 2).

Regarding Red Barn's experience with NextGear, in June or July 2011 at the Oak View Auto Auction in Baton Rouge, Louisiana, Stuart LaBauve ("Mr. LaBauve"), a NextGear account executive, solicited Red Barn through Devon London ("Mr. London"), Red Barn's general manager, to enter into a floorplan agreement. NextGear wanted to provide a revolving line of credit to Red Barn to allow it to purchase used cars at auctions that would then be placed on its sales lot for resale. In June or July 2011, following the initial meeting between Mr. LaBauve and Mr. London, Mr. LaBauve visited Red Barn's business in Denham Springs, Louisiana, to solicit Red Barn through its owner, Donald Richardson, to enter into a floorplan agreement with NextGear.

On July 27, 2011, Red Barn and NextGear entered into a floorplan agreement, providing a line of credit up to $200,000.00 to Red Barn. The agreement required payment of interest and other fees as well as any principal amounts paid on behalf of Red Barn. After entering into the agreement, Red Barn occasionally used the floorplan agreement to purchase vehicles at auction in order to sell them at the Red Barn used car lot.

In June 2012, Red Barn entered into a verbal agreement with multiple automobile auction houses that gave Red Barn up to seven days to decide whether it wanted to use its NextGear line of credit to pay for vehicles purchased at the auctions or whether it would pay for the vehicles using some other method such as cash. Even when Red Barn delayed its decision to use the line of credit provided by NextGear to purchase vehicles from these auctions, NextGear backdated the withdrawal on the line of credit to the date of the purchase at auction, and NextGear charged interest and fees from that backdated date.

Later in June 2012, Red Barn's general manager discovered transactions in which Red Barn had not used the floorplan agreement to purchase vehicles, so NextGear never actually loaned money to Red Barn for the purchase of those vehicles. However, NextGear charged interest to Red Barn as though NextGear had actually provided the financing for the vehicles.

Around November 2, 2012, Red Barn purchased a vehicle using the NextGear floorplan agreement. The auction house was unable to obtain title to the vehicle after 180 days, and Red Barn already had paid off its line of credit with NextGear for the purchase of the vehicle. NextGear never paid the auction house for the vehicle, so it voluntarily reimbursed Red Barn all of the interest and fees that it had been collecting from Red Barn over the span of 180 days on the vehicle because the title was never delivered.

Between August 2011 and March 2013, Red Barn used NextGear's floorplan agreement for 524 transactions. NextGear electronically debited approximately $80,000.00 in interest from Red Barn's bank account. Much of the money NextGear electronically debited from Red Barn's account was based on money that was never actually loaned to Red Barn for the purchase of vehicles, or NextGear actually loaned the money for a much shorter period of time than the period for which interest and fees were charged.

During the course of Red Barn's nearly two-year lending relationship with NextGear, Red Barn communicated regularly with Mr. LaBauve, the NextGear account executive, regarding Red Barn's floorplan agreement through in-person, telephone, and email communications. During all of these communications, NextGear concealed the fact that NextGear did not pay the auction houses for the vehicles purchased until it received the title, but it began charging interest and fees from the date of the auction, sometimes as much as eight weeks earlier, even though no money had been loaned. NextGear also concealed facts regarding the actual interest rates charged. NextGear worked with several auction houses, including some auction houses owned and operated by NextGear, to conceal these facts from Red Barn. The auction houses concealed NextGear's actions, allowing NextGear to continue its course of conduct.

Red Barn alleges that NextGear intentionally interfered with the business relationships held by Red Barn with various auction houses by "blacklisting" Red Barn with these auction houses. As a result, auction houses prohibited Red Barn from attending and participating in the routine sales of used cars, which further damaged Red Barn financially.

In March 2013, Red Barn began experiencing financial difficulties, which resulted in an inability to make payments on its floorplan agreement with NextGear. Because of this, in April 2013, NextGear began seizing Red Barn's assets, including vehicles on the Red Barn sales lot. In April 2013, Red Barn employees delivered between eleven and fourteen vehicles to Louisiana First Choice Auto Auction ("First Choice") with the intent to sell the vehicles and use the proceeds from the sales to pay NextGear on the debt under the floorplan agreement. However, Red Barn was unable to sell the vehicles because First Choice, without Red Barn's knowledge or consent, seized the vehicles and has held the vehicles since the time of seizure. On April 25, 2013, Red Barn filed a Chapter 11 voluntary petition for bankruptcy.

6

Plaintiffs Platinum Motors and Mattingly Auto had similar experiences where they were solicited by NextGear account executives to enter into a contract whereby NextGear would issue a line of credit so that they could purchase vehicles at auctions and the vehicles would initially be paid for by NextGear.  Like Red Barn, Platinum Motors and Mattingly Auto each entered into a Demand Promissory Note and Security Agreement with NextGear, which provided them with a revolving line of credit to purchase vehicles at auctions, which would then be resold at their used car dealerships.  NextGear electronically debited interest and fees from Platinum Motors' and Mattingly Auto's bank accounts.  As was the case with Red Barn, much of the money NextGear electronically debited from the accounts was based on money that was never actually loaned for the purchase of vehicles, or NextGear actually loaned the money for a much shorter period of time than the period for which interest and fees were charged.  Similar to Red Barn's experience with NextGear, Platinum Motors and Mattingly Auto were charged interest and fees based on the date of the purchase at auction even though payment was not made until NextGear received title from the auction houses—sometimes as long as eight weeks later.  Platinum Motors and Mattingly Auto also allege that they were blacklisted by NextGear with various auction houses, thereby interfering with their valid business relationships.

The Plaintiffs' Amended Complaint, filed March 11, 2016, asserted claims for breach of contract, constructive fraud, tortious interference with business relationships, unjust enrichment, violation of RICO, and a RICO conspiracy (Filing No. 117).  The Amended Complaint did not include First Choice as a defendant but added Cox Enterprises, Cox Automotive, and Mr. Wick as defendants.  The Amended Complaint also added Platinum Motors, Mattingly Auto, and Executive Auto Group as plaintiffs and removed Donald and Barbara Richardson as plaintiffs.

The Defendants filed their motion to dismiss the Amended Complaint on April 15, 2016 (Filing No. 126), asserting that the claims should be dismissed because of a failure to state a plausible claim, a failure to plead fraud with specificity, *res judicata*, and the statute of limitations. On March 27, 2017, the Court granted in part and denied in part the Defendants' motion to dismiss. Plaintiffs' breach of contract claim and constructive fraud claim against NextGear survived the motion to dismiss as well as the substantive RICO claim against NextGear, Cox Automotive, and Mr. Wick. However, all claims against Cox Enterprises and the claims for RICO conspiracy, unjust enrichment, and tortious interference were dismissed (Filing No. 186 at 42).

Plaintiffs filed their Motion for Class Certification on September 30, 2016, seeking certification of the following class: "All used car dealers in the United States of America that were parties to a Floorplan Agreement with NextGear effective during the time period of January 2005 through July 2013." (Filing No. 154 at 7.) In their Reply Brief, the Plaintiffs revised their proposed class to narrow the definition of the class: "All used car dealers in the United States of America that were parties to a Floorplan Agreement with DSC, n/k/a NextGear, effective during the time period of January 2005 through July 2013." (Filing No. 165 at 2.)

## II.    <u>LEGAL STANDARD</u>

Class action lawsuits are governed by Federal Rule of Civil Procedure 23. Pursuant to Rule 23, the named parties of a class of plaintiffs may sue on behalf of all the members of a class if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Courts are required to conduct "a rigorous analysis" to determine whether the requirements of Rule 23(a) have been satisfied. *Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir.

8

2003); *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982) ("actual, not presumed, conformance with Rule 23(a) remains . . . indispensable").

Rule 23 also requires that "classes be defined clearly and based on objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). A class definition satisfies the "established meaning of ascertainability by defining classes clearly and with objective criteria." *Id.* at 672. "[C]lass definitions generally need to identify a particular group, harmed during a particular time frame, in a particular location, in a particular way." *Id.* at 660.

"To be certified, a proposed class must satisfy the requirements of Federal Rule of Civil Procedure 23(a), as well as one of the three alternatives in Rule 23(b)." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). Rule 23(b)(1)(A) is satisfied if "prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Rule 23(b)(3) is satisfied if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

A party seeking class certification bears the burden of proof in establishing each of the requirements under Rule 23. *Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 90 (7th Cir. 1977). The failure to satisfy any one of these elements precludes certification. *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 596 (7th Cir. 1993). The Court has broad discretion to determine whether certification is appropriate. *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008).

In deciding whether to certify a class, the Court is not required to accept the allegations in the complaint as true. *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676–77 (7th Cir. 2001).

While consideration of class certification is not "a dress rehearsal for the trial on the merits," the court "must receive evidence and resolve the disputes before deciding whether to certify the class." *Messner*, 669 F.3d at 811 (quoting *Szabo*, 249 F.3d at 676).

The court should make any factual and legal inquiries needed to ensure that the requirements for class certification are satisfied even if the underlying considerations overlap with the merits of the case. *Szabo*, 249 F.3d at 676. In evaluating class certification, the court must take into consideration the substantive elements of a plaintiff's claim, inquire into the proof necessary for the various elements, and envision the form that trial on the issues would take. *See Simer v. Rios*, 661 F.2d 655, 672 (7th Cir. 1981).

### III.   DISCUSSION

The Plaintiffs assert that class certification is appropriate in this action because they can meet all the requirements of Rule 23—ascertainability; numerosity, commonality, typicality, and adequacy as required by Rule 23(a); a risk of inconsistent or varying adjudications as contemplated by Rule 23(b)(1)(A); and predominance of common questions over individual questions and superiority of a class action over other available methods as set forth in Rule 23(b)(3). As noted above, the Plaintiffs seek certification of the following proposed class: "All used car dealers in the United States of America that were parties to a Floorplan Agreement with DSC, n/k/a NextGear, effective during the time period of January 2005 through July 2013." (Filing No. 165 at 2.) The Court will address each of the requirements of Rule 23 in turn.

### A.   Ascertainability

Rule 23 requires that "classes be defined clearly and based on objective criteria." *Mullins*, 795 F.3d at 659. The Plaintiffs assert that the Court can easily ascertain the class from the class definition because the definition is sufficiently precise for the Court to readily determine whether

a particular individual is a member of the class.  The parties and the Court will be able to ascertain the members of the class from the contracts and other records created and maintained by NextGear, including the floorplan agreements and customer dealer lists, which show what car dealers were parties to floorplan agreements with DSC, n/k/a NextGear, during the time period of January 2005 through July 2013.

Responding to the ascertainability argument, the Defendants assert that the proposed class definition is too broad because it includes many putative class members who have never been injured by the Defendants, and "[w]hile not all class members need to be injured in order to certify a class, the inclusion of a great number of non-injured plaintiffs renders the class too broad, and thus not ascertainable." *Panwar v. Access Therapies, Inc.*, 2015 U.S. Dist. LEXIS 7584, at *9 (S.D. Ind. Jan. 22, 2015).

The Defendants argue that most members of the putative class have not been injured because they immediately obtained vehicles from the auctions while NextGear accepted the credit risk on their behalf.  The Defendants assert that the timing of when NextGear actually settled up with the auctions had no effect on the car dealers because they were able to take possession of the cars and offer them for sale immediately.  This is exactly what they had bargained for according to the Defendants.  They explain that most dealers paid their bills on time and therefore never had issues with being blacklisted or pursued for default.  They argue that, because "a great number of non-injured plaintiffs" would be included in the proposed class, the putative class is not ascertainable.

The Plaintiffs reply that the Defendants' argument makes an improper assumption about the merits of the case and that the Plaintiffs do not allege that under the floorplan agreements they bargained for the use of cars but rather for financing the purchase of cars under certain agreed-

11

upon terms.  They assert that the putative class members did not receive that bargained-for benefit because NextGear breached the terms of the contract by charging interest and fees on money not actually loaned, which resulted in substantial additional interest charges that they never agreed to pay.  The Plaintiffs argue that the Defendants' suggestion that the timing of the actual payments on the car dealers' behalf is inconsequential ignores the central question of this case, which is whether the contracts permitted NextGear to charge interest and fees before advancing any funds.  The proposed class definition focuses on that central question, and thus, meets the ascertainability requirement.

The Court finds the proposed class is ascertainable because the definition is clear and based on objective criteria.  It can be readily determined whether an entity is within the proposed class— did the used car dealer enter into a floorplan agreement with DSC, n/k/a NextGear, effective during the time period of January 2005 through July 2013.  NextGear's floorplan agreements and customer dealer lists will show whether a car dealer is within the class. The Defendants' argument concerning injury and taking possession of cars for immediate resale is misplaced.  The claimed injury arises from the question of premature interest and fees, not a delay in being able to possess and resell a vehicle.  Therefore, the Court rejects the Defendants' argument concerning ascertainability and finds the Plaintiffs' argument persuasive.  The proposed class definition is based on objective criteria and is ascertainable.

**B.      Numerosity**

Next, the Plaintiffs assert that their proposed class easily meets the numerosity requirement of Rule 23.  The class must be so numerous that joinder of all members is impracticable.  Fed. R. Civ. P. 23(a)(1).  The Plaintiffs explain that there are no bright-line tests for numerosity, but they point to Seventh Circuit cases that determined that forty plaintiffs were sufficiently numerous to

have a class action.  The Plaintiffs point to the Defendants' own assertions on its website that it has thousands of used car dealer clients and that it has "tens of thousands of car dealerships to which NextGear has provided credit."  (Filing No. 119 at 2, Defendants' Motion to Stay Discovery.)  The Plaintiffs suggest that the numerosity requirement is easily met because joining thousands of putative class members is obviously impracticable.

The Defendants did not respond in writing to the argument concerning numerosity for class certification.  During the hearing on the Motion for Class Certification, the Defendants conceded that the numerosity requirement is met (Filing No. 202 at 13).  The Court agrees that numerosity exists based on the putative class including "tens of thousands" of used car dealers.

## C. __Commonality__

Quoting the Seventh Circuit, the Plaintiffs explain that "[a] common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)."  *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).  "Common nuclei of fact are typically manifest where . . . the defendants have engaged in standardized conduct towards members of the proposed class."  *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998).  "The fact that there is some factual variation among the class grievances will not defeat a class action."  *Rosario*, 963 F.2d at 1017.  "Class relief is peculiarly appropriate when the issues involved are common to the class as a whole and when they turn on questions of law applicable in the same manner to each member of the class."  *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (citations and quotation marked omitted).

The Plaintiffs assert that there are numerous legal and factual questions common to the putative class as a whole and then list some of those "common questions":

1.  Whether the Plaintiffs entered into Floorplan Agreements or similar contractual agreements for used car financing with NextGear;

2. Whether NextGear charged interest and fees to the Plaintiffs on money not actually lent to the Plaintiffs;

3. Whether the Floorplan Agreements were similar and allowed the charging of interest and fees prior to money being loaned under the Floorplan Agreements;

4. Whether the Defendants engaged in a pattern of racketeering activity as alleged in the Amended Complaint;

5. Whether the Defendants were members of, or participants in, the conspiracy alleged in the Amended Complaint;

6. Whether the Defendants committed wire and mail fraud through their scheme and artifice to defraud the Plaintiffs, through their efforts to obtain money and property by means of false and fraudulent pretenses and representations to the Plaintiffs; and through their use of interstate wire communications in their scheme and artifice to defraud the Plaintiffs;

7. Whether the Defendants committed mail fraud by using the United States Postal Service or private or commercial interstate mail carriers to execute the scheme and artifice to defraud;

8. Whether NextGear had a practice of intentionally interfering with business relationships between the Plaintiffs and auction houses;

9. Whether the Defendants were unjustly enriched at the expense of the Plaintiffs by charging and collecting interest and fees from the Plaintiffs on money not lent; and

10. Whether the Plaintiffs are entitled to an award of reasonable attorneys' fees, prejudgment interest, and costs of this suit.

(Filing No. 154 at 14–15.)[4]

Citing Seventh Circuit case law, the Plaintiffs argue that claims arising out of form contracts are particularly well-suited for class treatment. *Keele*, 149 F.3d at 594 (quoting *Kleiner v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683, 691 (N.D. Ga. 1983) ("When viewed in light of Rule 23, claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action . . . .")). The Plaintiffs argue that such is the case here: the named plaintiffs and the putative class members each entered into a form contract with NextGear, and those form contracts are substantively identical in the relevant provisions.

The Plaintiffs assert that, pursuant to the form contract, NextGear carried out similar conduct against each of the Plaintiffs and putative class members. The questions of fact and law

---

[4] Some of these questions are no longer relevant following the Court's Order on Defendants' Motion to Dismiss, which dismissed some of the claims (Filing No. 186).

surrounding the breach of these nearly identical contracts are common for all putative class members. Whether NextGear charged interest on money not actually loaned is a question common to all putative class members as well as whether prematurely charging interest was a breach of contract. The Plaintiffs suggest that the commonality requirement is met because the proposed class includes only car dealers who contracted with NextGear during January 2005 through July 2013 under nearly identical form contracts.

Regarding the substantive RICO and constructive fraud claims, the Plaintiffs assert that they have shown a common scheme to defraud that was carried out by NextGear, its account executives, Cox Automotive, and its affiliated and non-affiliated auction houses, which was perpetrated in a similar manner against the Plaintiffs and the putative class members.

They explain that the Defendants devised a common scheme to secretly charge customers interest and fees to which NextGear was not entitled, to conceal that activity, and to carry out individual, fraudulent transactions via automatic debits from bank accounts. NextGear then concealed any information that would inform its customer dealers of the wrongful interest charges. This wrongful electronic debiting of interest and fees and concealment of information as to when NextGear actually loaned money occurred in a similar manner on a classwide basis. Thus, the Plaintiffs assert, common issues of fact exist to support class certification on the RICO and constructive fraud claims.

The Defendants respond that the commonality requirement is not met in this case because the Plaintiffs have failed to identify any common question, legal or factual, that is capable of classwide resolution. The Defendants assert that "[a]ny competently crafted class complaint literally raises common questions," and a common question will support class certification only if "determination of its truth or falsity will resolve an issue that is central to the validity of each one

of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (citation and quotation marks omitted).  Proceeding as a class must allow the Court "to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 350.

The Defendants argue that many of the "common" questions posed by the Plaintiffs cannot be resolved on a classwide basis because they must be answered on a case-by-case basis, and they will not generate common answers that could drive the resolution of the litigation.  They assert that the questions whether NextGear solicited any particular putative class member to enter into a floorplan agreement, whether NextGear made any representations to any putative class members about when interest would begin to accrue, and whether NextGear charged interest and fees before it actually delivered funds to an auction each must be proven separately as to each dealer, and thus, the answers can only be determined on an individual, not a classwide, basis.  Specific representations to each dealer may have been different, and thousands of dealers in the putative class may have interpreted contract terms differently than the named Plaintiffs.

The Defendants also briefly assert that the different putative class members signed different contracts containing different terms with different predecessor companies.  Thus, the question of whether the timing of interest charges was appropriate will depend on the interpretation of several different contract documents, and where an interpretation of one contract will not resolve the central issue as to putative class members whose contract terms differ, the Plaintiffs have not identified a common question.

However, this issue of different contracts with different predecessor companies was resolved when the Plaintiffs narrowed their proposed class definition in their Reply Brief to include only those dealers that were parties to a floorplan agreement with DSC, n/k/a NextGear, effective during the time period of January 2005 through July 2013.

The Defendants focus their response to the RICO and constructive fraud claims on the predominance factor rather than the commonality factor.  However, they briefly assert that merely restating the causes of action or the class definition is insufficient to support the commonality factor, and merely having "suffered a violation of the same provision of law" does not create commonality.  *Dukes*, 564 U.S. at 350.  The Defendants argue that questions about whether they "engaged in a pattern of racketeering activity" cannot suffice to show commonality.  More is required, and what matters is whether all the putative class members have suffered the same injury.

The Plaintiffs reply that central to this case is their breach of contract claim, which focuses on the factual allegation that NextGear, as a regular practice applicable to all of its customer dealers, charged interest and fees on money not actually loaned.  NextGear supports this universal practice by relying on its floorplan agreement that was executed with all the putative class members.  The Plaintiffs argue,

> The issues of whether the putative class members were, as Plaintiffs allege and as the sample DSC contracts suggest, parties to substantively identical form contracts with NextGear, and whether those contracts allowed NextGear to charge interest and fees on money not lent, are important and common issues of fact and law to be determined on a class wide basis.

(Filing No. 165 at 6.)  They conclude that either of these common questions is sufficient for finding commonality to support class certification.

The Plaintiffs acknowledge that the RICO and constructive fraud claims will raise individual issues and questions, but they assert that all dealers were defrauded through a common scheme using the same documents and concealing the same information by way of similar conduct on the part of the Defendants.

Having considered the parties' arguments and the case law, the Court finds that there are questions of law and fact common to the putative class regarding the breach of contract claim

against NextGear.  The Supreme Court explained that "[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Dukes*, 564 U.S. at 349–50 (citation and quotation marks omitted). This standard has been met: the Plaintiffs have demonstrated that the putative class has suffered the same alleged wrongful, premature collection of interest and fees based on the same form contract and similar conduct by NextGear.

Furthermore, commonality exists where the "determination of [the question] will resolve an issue that is central to the validity of each one of the claims in one stroke," and where it will "generate common *answers* apt to drive the resolution of the litigation." *Id.* Such is the case here where the central common question—whether the floorplan agreement allowed NextGear to charge interest and fees on money not yet actually loaned—will produce an answer that can lead to resolution of the claim for the class "in one stroke."

Concerning the RICO and constructive fraud claims, the Court recognizes that there are some individual issues that can arise under these claims; however, the existence of individual questions does not preclude the existence of common questions of law or fact.  The relationship and comparison between the individual questions and common questions is considered under the predominance factor, which the Court will address below. The Plaintiffs have directed the Court's attention to two cases where fraud claims were certified as a class action even though arguments were raised regarding individualized, oral misrepresentations to support the fraud claim. *See Nelson v. IPALCO Enters.*, 2003 U.S. Dist. LEXIS 26392, at *15 (S.D. Ind. Sep. 30, 2003) (certifying a class claim of fraud where the "relevant representations were distributed or made available on a class-wide basis"); *Rohlfing v. Manor Care*, 1997 U.S. Dist. LEXIS 3779, at *21 (N.D. Ill. Mar. 27, 1997) (in RICO class actions based on fraud, "[w]hen the fraud was perpetrated in a uniform manner against every member of the class, such as when all plaintiffs received

virtually identical written materials from the defendants, courts typically hold that individual reliance questions do not predominate").

Requests for class certification on fraud claims are not uniformly denied simply because there may be individual issues regarding misrepresentations.  Rather, courts look at the nature of the misrepresentations and whether they are common to the putative class.  In this case, the Plaintiffs base their RICO and constructive fraud claims on a scheme common to all putative class members involving the floorplan agreements solicited by NextGear and the concealment of material information regarding when interest would be charged in comparison to when money was actually loaned.  Whether the alleged scheme to defraud actually exists can be answered commonly as to the class because the claim is tied directly to the floorplan agreements that are common across the class.  If it does exist and was carried out, the injuries suffered would be similar across the putative class arising out of similar conduct by the Defendants.  There is at least one common question that can support class certification of the RICO and constructive fraud claims.

**D.      Typicality**

Class certification requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and her claims are based on the same legal theory."  *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (citation and quotation marks omitted).  "Even though some factual variations may not defeat typicality, the requirement is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large." *Id.* (citation and quotation marks omitted).

The Plaintiffs assert that their claims are typical of the claims of the class because the claims of both the named Plaintiffs and the putative class members arise from the same events and transactions involving the same defendants and are based on the same legal theories.  Typical is not the same as identical, and the focus should be on whether the class representative's pursuit of their own claims will work for the benefit of the entire class.  *Roe v. Bridgestone Corp.*, 257 F.R.D. 159, 167 (S.D. Ind. 2009).

The Plaintiffs argue that their claims are typical of the class claims because they arise out of NextGear's common course of conduct of soliciting the Plaintiffs to enter floorplan agreements and then wrongfully charging the Plaintiffs interest and fees on money not actually loaned.  This same practice was implemented against the putative class members; the wrongful conduct is central to NextGear's business model and was consistently used with NextGear's thousands of customer dealers nationwide, which make up the putative class.  The Plaintiffs argue that their claims have the essential characteristics of the claims of the putative class, and the pursuit of their claims will work for the benefit of the entire class.  Therefore, the Plaintiffs assert the typicality requirement is met.

The Defendants respond that "[a] plaintiff's claims need not be identical to those of other class members, but a court will deny class certification when the variation in claims between potential class members strikes at the heart of the respective causes of action."  *Shepherd v. ASI, Ltd.*, 295 F.R.D. 289, 298 (S.D. Ind. 2013).  The Defendants further assert,

> The presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiff's representation. The fear is that the named plaintiff will become distracted by the presence of a possible defense applicable only to him so that the representation of the rest of the class will suffer.

*CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011) (citation and quotation marks omitted).  The Defendants argue that, because the named Plaintiffs have unique claims and are subject to unique defenses, they would be inadequate representatives and the typicality requirement cannot be met.

The Defendants assert that the named Plaintiffs' claims are atypical to the extent that the claims are based on any "blacklisting" or tortious interference because most of NextGear's customer dealers remain in good standing with NextGear and the auto auctions around the country while the named Plaintiffs do not.  However, the tort claims based on "blacklisting" were dismissed by the Court.

The Defendants further assert that, "unlike the named Plaintiffs, the majority of NextGear's dealers do business with NextGear pursuant to the most recent version of NextGear's loan agreement, which contains an arbitration clause with class and damage waivers."  (Filing No. 160 at 30.) They argue that, to the extent the claims are based on non-standardized oral communications, each claim will be unique and subject to unique communications and interactions between the parties thereby destroying any typicality.

Concerning potential defenses that could defeat typicality, the Defendants argue that the named Plaintiffs have defaulted on their contractual obligations to NextGear and owe money to NextGear, so NextGear has defenses against the named Plaintiffs that likely will not apply to the proposed class such as anticipatory breach, setoff, and unclean hands.  Mattingly Auto executed a release of NextGear in a small claims court, and Platinum Motors' corporate existence has been terminated. Red Barn purportedly preserved its claims against NextGear in its bankruptcy "whereas other putative class members who filed bankruptcy will not have preserved their claims."

21

*Id.* at 32. Thus, the injuries, claims, and defenses associated with the named Plaintiffs are not typical of the proposed class.

In reply, the Plaintiffs assert that the Defendants' argument simply fails with respect to the claims.  The claims of the named Plaintiffs and the putative class members are the same:  they arise from the same practice that results in the same injury.  NextGear prematurely charged interest and fees on money not yet actually loaned, which resulted in excessive interest charges.  The Plaintiffs point out that typicality "should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *CE Design*, 637 F.3d at 725. The pertinent issue is the Defendants' conduct that was common across the putative class: charging interest from the date of the auction even though payment was not made to the auction until days or weeks later.

The Plaintiffs further reply that their contractual defaults do not change the fact that they and the putative class suffered the same injury resulting from the Defendants' same conduct.  They argue that even if their contractual defaults were relevant, the defaults do not make them atypical of the class because many of NextGear's customer dealers defaulted on their obligations to NextGear as indicated by Hamilton County, Indiana court records showing that between May 2010 and the end of 2012, DSC/NextGear filed 541 collection suits against dealers and secured default judgments in nearly half of them (248 suits).

The Plaintiffs assert that the other defenses raised by the Defendants also do not affect typicality.  Red Barn's preservation of its claims against NextGear in its bankruptcy proceedings does not affect the nature of its underlying claims in this action.  Mattingly Auto's settlement agreement with NextGear was limited in scope and was reached in a small claims suit relating to physical damage to Mattingly Auto's garage.  The settlement agreement has no relevance to

Mattingly Auto's claims in this suit.  Platinum Motors' status with the Virginia Secretary of State as being dissolved is irrelevant to the typicality analysis because it does not prevent Platinum Motors from suing or being sued according to Virginia Code § 13.1-745(B)(5) ("Dissolution of a corporation does not . . . [p]revent commencement of a proceeding by or against the corporation in its corporate name[.]").  The Plaintiffs argue the defenses raised by the Defendants simply are red herrings, and the claims asserted by the named Plaintiffs are typical of the putative class.

In considering the typicality factor, the Court is mindful that a claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [the] claims are based on the same legal theory," and this "requirement is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large."  *Oshana*, 472 F.3d at 514.

As the Seventh Circuit cautioned,

> We don't want to be misunderstood, however, as extending an invitation to defendants to try to derail legitimate class actions by conjuring up trivial credibility problems or insubstantial defenses unique to the class representative. Serious challenges to typicality and adequacy must be distinguished from petty issues manufactured by defendants to distract the judge from his or her proper focus.

*CE Design*, 637 F.3d at 728.  The Seventh Circuit further noted that typicality "should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members."  *Id.* at 725.

After reviewing the parties' arguments and materials, the Court is persuaded that the typicality requirement is satisfied because the claims asserted by the named Plaintiffs arise from the same course of conduct that gives rise to the claims of the putative class members and are based on the same legal theories—breach of contract, constructive fraud, and RICO claims arising out of premature interest charges based on contracts and the concealment of information by the

Defendants.  These essential characteristics are the same for the named Plaintiffs and the proposed class.

While there may be some variations in the applicability of defenses against various class members, those variations do not undermine the essential characteristics of the claims asserted in this action that drive the resolution of the dispute.  It appears that some of the asserted defenses (such as default, setoff, and unclean hands) may be similarly raised against numerous class members, not just the named Plaintiffs.  Having some factual variations does not necessarily defeat typicality, and the typicality requirement does not demand that the claims and defenses be identical.  Furthermore, Mattingly Auto's narrow settlement agreement in a small claims court action and Platinum Motors' dissolution do not appear to affect any claims in this action.  The Court concludes that the claims of the representative parties are typical of the claims of the class.

**E.     <u>Adequacy of Representation</u>**

Rule 23(a)'s requirement that "the representative parties will fairly and adequately protect the interests of the class" demands "(1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel."  *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011).

> To be an adequate representative of a class, a plaintiff (1) must have a sufficient stake in the outcome to ensure zealous advocacy; (2) must not have antagonistic or conflicting claims with other class members; and (3) must have counsel who are experienced, qualified, and generally able to conduct the litigation.

*Gentry v. Floyd Cnty.*, 313 F.R.D. 72, 80 (S.D. Ind. 2016).

Concerning this requirement, the Plaintiffs assert they have a sufficient stake in the outcome of the claims to ensure the zealous pursuit of this action against the Defendants.  They explain that each named Plaintiff has suffered monetary loss and damage to their business

24

relationships as a result of the Defendants' conduct, and their interests align with those of the putative class members who have suffered from the Defendants' conduct in the same way.  They assert that they understand the allegations of their Amended Complaint and are committed to vigorously prosecute the action.  They further assert that their interests are not antagonistic to the interests of the members of the proposed class, and there are no conflicts of interest.

The Plaintiffs explain that their counsel are experienced in class actions and complex litigation and have spent substantial time investigating and prosecuting the claims in this matter. Counsel asserts that they are prepared to commit the resources necessary to pursue the claims to resolution. They have attached declarations from counsel detailing counsel's education, employment, and litigation experience.  Thus, the Plaintiffs assert that the requirement to fairly and adequately protect the interests of the class is satisfied.

The Defendants argue a proposed class representative is not adequate if its claims conflict with or are antagonistic to the claims and interests of the putative class members it seeks to represent.  *Cox v. Sherman Capital LLC*, 2016 U.S. Dist. LEXIS 7400, at *21 (S.D. Ind. Jan. 22, 2016).  Further, "[a] named plaintiff who has serious credibility problems or who is likely to devote too much attention to rebutting an individual defense may not be an adequate class representative." *CE Design*, 637 F.3d at 726.  The Defendants assert the named Plaintiffs are inadequate to represent the class because their claims and interest are not aligned with the class's claims and interest.

The Defendants rely on their arguments concerning typicality—especially their argument regarding unique defenses—to support their adequacy argument and then assert that the named Plaintiffs will not fairly and adequately protect the interests of the class because they will likely focus on responding to defenses rather than pursuing class claims.  The Defendants specifically

point to the individual defenses of default, unclean hands, setoff, and release.  They also assert that the named Plaintiffs defrauded NextGear, which affects their credibility and the ability to adequately represent the proposed class.

Pointing to deposition testimony (Filing No. 160 at 34), the Defendants argue that the class representatives do not know the factual basis of their own claims, so they cannot adequately represent the proposed class.  Additionally, they point out Platinum Motors has been minimally responsive to discovery requests, which raises concerns about Platinum Motors' motivation to vigorously pursue the claims for the class.

The Defendants conclude that the "Plaintiffs' baggage creates credibility problems and dealer-specific issues that will conflict with their representation of a class.  Simply put, Plaintiffs are inadequate to represent and bind a class of thousands of absent dealers, many of whom are still in current and harmonious credit relationships with NextGear." *Id.* at 35.  The Defendants do not challenge the adequacy of the Plaintiffs' proposed class counsel.

Replying to the Defendants' argument, the Plaintiffs reassert on their typicality argument and further assert that their claims and interests are not antagonistic to those of the class.  They distinguish this case from the cases relied upon by the Defendants and explain that there are no possible conflicts of interest or close associations between the class representative and class counsel that could lead to a collusive settlement that is detrimental to the absent class members.  They also assert that a class representative's diminished credibility will only undermine its adequacy to represent the class in extreme cases:  "For an assault on the class representative's credibility to succeed, the party mounting the assault must demonstrate that there exists admissible evidence so severely undermining plaintiff's credibility that a fact finder might reasonably focus

on plaintiff's credibility, to the detriment of the absent class members' claims." *CE Design*, 637 F.3d at 728 (citation and quotation marks omitted).

The Plaintiffs explain that the Defendants' assertion that Platinum Motors is not motivated to vigorously pursue the claims for the class based on its participation in discovery is not accurate. At the time of filing their Reply Brief, discovery was ongoing, Platinum Motors' deposition was scheduled for the near future, and Platinum Motors was working on locating additional documents for production. The Plaintiffs conclude that they are adequate class representatives because they suffered the same injury due to NextGear's actions as the other class members, and they are committed to vigorously pursuing this action on behalf of the entire class.

As noted in the previous section, the Plaintiffs' claims are typical of the class claims. The materials submitted by the parties indicate that the Plaintiffs engaged in hundreds of transactions utilizing the NextGear floorplan agreements. Red Barn used NextGear's floorplan agreement for 524 transactions, and NextGear electronically debited approximately $80,000.00 in interest from Red Barn's bank account (Filing No. 154-2). Mattingly Auto used NextGear's floorplan agreement for more than one hundred transactions (Filing No. 154-4), and Platinum Motors used the floorplan agreement several times (Filing No. 154-3). These hundreds of transactions resulting in the electronic debiting of thousands of dollars give the Plaintiffs a sufficient stake in the outcome to ensure zealous advocacy.

Furthermore, the Plaintiffs' claims and interests appear to be consistent with the claims and interests of the proposed class members as they are of the same nature and arise out of the same conduct of the Defendants, resulting in similar injuries of premature and excessive interest charges. There is nothing that indicates a conflict of interest among the class representatives, class counsel,

and the other class members.  The Plaintiffs have indicated their intent to vigorously pursue the class claims.

The Defendants' reliance on the Plaintiffs' deposition testimony does not fully support the Defendants' assertion that the Plaintiffs have no knowledge of the factual basis of their claims thereby making them inadequate to represent the proposed class.  The cited deposition testimony shows that the Plaintiffs' corporate representatives had a basic understanding of their claims against the Defendants but did not know how to quantify the damages suffered by the Plaintiffs. The deposition testimony also confirms the obvious fact that the Plaintiffs were not privy to the internal corporate conversations had among the Defendants (*see* Filing No. 160-14, Red Barn Dep. 189:5–191:13, 195:20–25, 203:8–206:11; Filing No. 160-18, Mattingly Auto Dep. 155:11–157:6, 160:2–11, 195:23–196:10).  These facts do not raise such doubt about the Plaintiffs' knowledge and commitment to make them inadequate to serve as class representatives.  Moreover, the deposition testimony regarding unjust enrichment (and the Defendants' argument specific to that claim) is no longer relevant because that claim has been dismissed.

Lastly, the Court is not convinced that specific defenses or potential credibility issues will create problems for the Plaintiffs' adequate representation of the proposed class where the "fact finder might reasonably focus on [specific defenses or] plaintiff's credibility, to the detriment of the absent class members' claims." *CE Design*, 637 F.3d at 728.  This is especially the case where the Plaintiffs' claims will be tried by the Court, not by a jury (*see* Filing No. 187).  The Court is capable of recognizing the pertinent issues in this litigation to resolve the class claims.  The Court finds that the named Plaintiffs are adequate representatives of the proposed class members.

As noted above, the Defendants do not challenge the adequacy of the Plaintiffs' class counsel.  A review of the declarations of counsel reveals that counsel have sufficient work

experience generally and significant work in this case specifically to make them qualified and adequate to serve as class counsel in this litigation (*see* Filing No. 154-5; Filing No. 154-6; Filing No. 154-7; Filing No. 154-8).  Such is also the case for counsel who filed an Amended Motion for Appointment of Class Counsel (Filing No. 198; Filing No. 198-1).

The Court finds that the Plaintiffs can meet the requirements of Rule 23(a)— numerosity, commonality, typicality, and adequacy—as well as the requirement of ascertainability.  However, in order for the Court to certify their proposed class action, the Plaintiffs must also satisfy at least one of the requirements of Rule 23(b).  They assert that they can satisfy the requirements of both Rule 23(b)(1)(A) and Rule 23(b)(3).

## F.   Rule 23(b)(1)(A): A Risk of Inconsistent or Varying Adjudications

The Plaintiffs first assert that they can meet the requirements of Rule 23(b)(1)(A) because prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.  The Plaintiffs advance the notion that common sense dictates that "tens of thousands" of individual suits will undoubtedly lead to inconsistent adjudications leading to varying, incompatible standards of conduct for the Defendants.  They cite to *Stoll v. Kraft Foods Glob., Inc.*, which explained, "[s]imply stated, if over 100 individual cases are tried, varying judgments are likely to ensue.  In this sense—and [defendant] does not dispute this—Plaintiffs satisfy 23(b)(1)."  2010 U.S. Dist. LEXIS 92930, at *21 (S.D. Ind. Sep. 6, 2010).  The Plaintiffs conclude that this class action may be maintained under Rule 23(b)(1)(A) as a matter of common sense.

The Defendants respond that there is no risk of inconsistent results in this case because this is not a case where a party will be required by law to treat the members of the class alike or where

the party must treat all alike as a matter of practical necessity.  There is no injunctive relief requested in this case, and the Defendants assert that the Plaintiffs have conceded that the new NextGear contract, effective August 2013, allows the interest charges of which the Plaintiffs complain.  Thus, separate judgments against the Defendants would only require them to pay damages to some class members but not to others or to pay the class members in different amounts, but separate/inconsistent judgments would not change any standards of conduct applicable to the Defendants.  In support of their argument, the Defendants point the Court to *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) ("Rule 23(b)(1)(A) takes in cases where the party is obliged by law to treat the members of the class alike . . . or where the party must treat all alike as a matter of practical necessity") and 7AA Wright & Miller, *Federal Practice & Procedure* § 1773 (3d ed. 2005) (a risk of inconsistent or varying results in individual actions under Rule 23(b)(1)(A) "requires more than a risk that separate judgments would oblige the opposing party to pay damages to some class members but not to others or to pay them different amounts").

Rule 23(b)(1)(A) is met when separate actions would create a risk of inconsistent or varying adjudications that would establish "incompatible standards of conduct" for the party opposing the class.  Such is not the case here.  Having separate actions against the Defendants would not lead to the establishment of incompatible standards of conduct whereby it would be impossible for the Defendants to fulfill those incompatible standards toward the various class members.  This action seeks damages for breach of contract and deceptive practices under RICO arising out of form contracts.  Separate actions could likely lead to varying judgments and damages awards, thereby requiring the Defendants to pay individual class members no damages or differing damages, but such is not "incompatible standards of conduct" as required by Rule 23(b)(1)(A).

"[M]any courts considering the language of Rule 23(b)(1)(A) have held that it does not apply to actions seeking compensatory damages." *Cashman v. Dolce Int'l/Hartford*, 2004 U.S. Dist. LEXIS 24805, at *59 (D. Conn. Dec. 7, 2004) (collecting cases). As the Defendants noted, Rule 23(b)(1)(A) "requires more than a risk that separate judgments would oblige the opposing party to pay damages to some class members but not to others or to pay them different amounts." 7AA Wright & Miller, *Federal Practice & Procedure* § 1773. This action cannot proceed as a class action under Rule 23(b)(1)(A).

**G.**     **Rule 23(b)(3): Predominance of Common Questions and Superiority of a Class Action**

The Plaintiffs assert that they can meet the requirements of Rule 23(b)(3) in that the questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy between the parties and the proposed class. The Plaintiffs acknowledge that there will be some individual questions unique to individual class members, but they assert those questions will not predominate the common questions shared by all class members—whether the floorplan agreements allowed premature charges of interest and fees, whether the contracts were breached, and whether the Defendants' conduct against each of the class members amounted to a RICO violation. These are questions that can be answered on behalf of the class as a whole, and these are the questions at the heart of the dispute. The presentation of evidence with regard to these central questions will be common across all class members' claims.

The Plaintiffs further argue their theories of class liability do not depend on individual issues of causation or reliance, and the class does not rely on separate individual courses of conduct or misrepresentation directed at or received by individual class members. Rather, their claims are based on a uniform course of conduct by the Defendants consisting of soliciting a form contract

and concealing and misrepresenting information to all their customers.  Thus, their legal theory is capable of proof at trial through evidence that is common to the class rather than individual to its members.

The Plaintiffs argue the individual questions that the Defendants raise regarding damages do not predominate the common questions relative to the class as a whole, and those individual questions could be resolved in a separate, bifurcated proceeding on damages after a class action on liability.  Additionally, they explain a consistent methodology can be applied to determine damages for all class members.  Damages would be calculated by determining the total amount of interest and fees that NextGear charged between the date of the auction and the date on which NextGear actually advanced money on the customer dealer's behalf under the floorplan agreement.  Where NextGear charged interest and fees even though the customer dealer did not ultimately use the floorplan agreement, the class member would be entitled to all interest and fees charged.  This method of calculating damages could be applied across the entire class.

The Plaintiffs also assert that most of the defenses that the Defendants could raise would be common to all class members such that even common defenses would predominate any individual defenses.  They point to the Defendants' statute of limitations defense and the argument that there is no special duty that could support a constructive fraud claim.  The Plaintiffs assert that these defenses can be resolved on a classwide basis with similar evidence.

Finally, the Plaintiffs argue that conducting separate, numerous trials would involve the same repetitive evidence and would be a waste of judicial resources.  The same theories, evidence, and arguments would be utilized again and again.  A class action would be superior to other methods of adjudication.  Individual cases would waste resources and likely lead to inconsistent results regarding the same conduct of the Defendants.  Individual cases would be cost-prohibitive

for individual class members who are primarily small, used car dealers and who suffered tens of thousands of dollars in damages.  The cost of litigation would likely exceed any individual's damages and would deter individual plaintiffs from pursuing valid claims.  The Plaintiffs assert that they are not aware of any other similar actions that already have been initiated.  They explain that having a class action in this forum is desirable because the floorplan agreements that NextGear offered to the Plaintiffs called for jurisdiction in this forum, and NextGear's operations are centered in this forum.  Lastly, they assert that managing a class action will not be difficult because of the Court's discretion and flexibility in case management.  Thus, a class action would be superior to other methods of adjudication.

Responding to the Plaintiffs' predominance argument, the Defendants assert that there are no common questions that predominate individual questions.  The central questions in this case would have to be answered on an individual case-by-case basis and are not capable of being answered on a classwide basis.  They assert that the following questions would have to be answered individually, not as a class: whether NextGear actively solicited any particular putative class member to enter into a floorplan agreement, whether NextGear made any representation (either true or false) to any putative class member about when interest begins to accrue, and whether NextGear charged interest and fees before it actually delivered funds to an auction on behalf of a dealer.

The Defendants argue the Plaintiffs' claims necessarily require an individualized analysis of the particular factual circumstances of each class member.  They assert that the Plaintiffs' RICO, constructive fraud, and breach of contract claims are based on oral communications between the parties, and those oral communications are going to be unique from class member to class member. Issues concerning concealment of information, misrepresentations, knowledge, and reliance must

33

be resolved individually; these issues cannot be resolved on a classwide basis.  The issues of reliance and oral misrepresentations alone raise numerous, vital questions that will predominate any common questions that might exist.

The Defendants explain that not all car dealers entered into the same floorplan agreement, and thus, common questions do not exist regarding the various class members' agreements. Different questions regarding contract interpretation will necessarily result in different answers for the class members.  The Defendants assert that, even if a common question could be established, individual questions would predominate.  The focus would be on the individual contracts entered into by the numerous class members.  Varying contract provisions would have to be considered. Different interest rates, different controlling state laws (Georgia, California, or Indiana), and mandatory arbitration would have to be considered among the class members.  Statutes of limitations would apply to some class members.  The numerous sales and financing transactions would vary from class member to class member and would have to be separately considered as well as considering when NextGear charged interest to the class members.  All these individual questions would predominate any common question that the Plaintiffs have proposed.

Additionally, the Defendants argue individualized defenses against class members would vary greatly from class member to class member.  Some would be subject to setoff defenses, others would be subject to mandatory arbitration, and others would be subject to statutes of limitation. They explain that some of the putative class members have not even been damaged by NextGear and have ongoing, working relationships with NextGear.  The Defendants also explain that any damages analysis would be unique and individualized, overbearing any common questions relative to the entire proposed class.

As to superiority of a class action, the Defendants argue other adjudicatory methods are well-suited because individual members would have a great incentive to bring and manage their own action that could result in an award of "tens of thousands of dollars," pointing to the Plaintiffs' damage estimate. They also explain that this class action would be "incredibly difficult to manage" because of the varying elements of the claims, the varying defenses, the varying damages, and the varying contracts (Filing No. 160 at 37). Causation and mitigation of damages would be different as to each class member, which would make a class action less manageable.

The Seventh Circuit has provided ample guidance regarding the application of the predominance requirement. Under the proper standard for considering predominance, a plaintiff's "burden at the class certification stage [is] not to prove the element of [the claim], but only to demonstrate that the element of [the claim] *is capable of proof at trial* through evidence that is common to the class rather than individual to its members." *Messner*, 669 F.3d at 818 (citation and quotation marks omitted) (emphasis in original).

> If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question.

*Id.* at 815. "Individual questions need not be absent. The text of Rule 23(b)(3) itself contemplates that such individual questions will be present. The rule requires only that those questions not predominate over the common questions affecting the class as a whole." *Id.*

The Seventh Circuit further explained, "A proposed class of plaintiffs must prove the *existence* of a common question, and one that predominates over individual questions, but it need not prove that the answer to that question will be resolved in its favor." *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 376 (7th Cir. 2015) (emphasis in original). "The Rule 23(b)(3) predominance

35

inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods.*, 521 U.S. at 623.

The claims remaining in this action are the Plaintiffs' breach of contract claim and constructive fraud claim against NextGear and the substantive RICO claim against NextGear, Cox Automotive, and Mr. Wick (Filing No. 186 at 42).

"The elements of a breach of contract action are the existence of a contract, the defendant's breach thereof, and damages."  *Murat Temple Ass'n v. Live Nation Worldwide, Inc.*, 953 N.E.2d 1125, 1128–29 (Ind. Ct. App. 2011).  Given the specific nature of the Plaintiffs' breach of contract claim in this case, the Court finds that the elements of this claim are "capable of proof at trial through evidence that is common to the class rather than individual to its members."  The Plaintiffs' claim rests on a form contract offered by NextGear to all its customer dealers, a uniform breach of the contract by prematurely charging interest and fees, and damages in the form of excessive interest payments.

Whether the floorplan agreements allowed premature charges of interest and fees and whether the contracts were breached are the core questions of this litigation, and they can be answered on a classwide basis.  While the Court is cognizant of the fact that damages amounts will vary among the class members, numerous courts have held that "[t]he need for such individual damages calculations does not defeat class certification."  *Nelson*, 2003 U.S. Dist. LEXIS 26392, at *36; *see also Arreola*, 546 F.3d at 800–01.

The "individual" issues raised by the Defendants concerning different contract provisions, including Georgia controlling law, contained in the MAFS agreement (as opposed to the "DSC"/NextGear agreement) are no longer relevant because of the Plaintiffs' revised class definition, which clarifies the inclusion of only the DSC/NextGear agreement in the class.

Additionally, it would be premature to address the "individual" issue regarding mandatory arbitration because the evidence does not suggest that the putative class actually includes customer dealers who signed 2013 agreements that require arbitration.  The proposed class is limited to the time period of January 2005 through July 2013. It would be inappropriate at this stage to speculate about whether customer dealers have executed 2013 agreements that supersede any earlier agreements that fall within the class definition.  Thus, this premature "individual" issue cannot defeat certification.  As another district court in this Circuit held, "[i]f it turns out that [some class members] must arbitrate, the court can always decertify, subclassify, or otherwise alter the class later." *Garcia v. JCPenney Corp.*, 2016 U.S. Dist. LEXIS 29969, at *21 (N.D. Ill. Mar. 8, 2016).[5]

The Court determines that the common questions regarding the breach of contract claim predominate any individual questions; however, the Defendants' argument concerning controlling state law is well-taken.  The DSC/NextGear floorplan agreement establishes that Indiana law controls the parties' dispute, but any dealer that has its place of business in California will be governed by California law ([Filing No. 154-13 at 10](Filing No. 154-13 at 10)).  Nevertheless, this difference does not prevent class certification as the Defendants suggest.  Rather, "[w]hen appropriate, a class may be divided into subclasses that are each treated as a class under this rule."  Fed. R. Civ. P. 23(c)(5).

> The problem of choice of law created by a nationwide class action governed by laws of different states or other jurisdictions is usually solved by the district court's certifying a different subclass for class members in each jurisdiction whose law differs in some relevant respect from that of the other jurisdictions in which members of the class reside or the allegedly unlawful acts were committed.

*Thomas v. UBS AG*, 706 F.3d 846, 849 (7th Cir. 2013).  The Court concludes that such a subclass for California customer dealers would be appropriate in this case.

---

[5] If in fact the class does include members who executed 2013 agreements that supersede any earlier agreements and require arbitration, the Court can further narrow the class to exclude those customer dealers, the parties can petition the Court to narrow the class, the parties can stipulate the exclusion of those dealers, or the parties can file a motion to compel arbitration.

Turning to the Plaintiffs' RICO claim, this claim requires proof of "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Crissen v. Gupta*, 994 F. Supp. 2d 937, 946 (S.D. Ind. 2014). "Racketeering activity" includes "any act which is indictable . . . relating to wire fraud." 18 U.S.C. § 1961.

The wire fraud statute states,

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice . . .

commits wire fraud. 18 U.S.C. § 1343.

The Plaintiffs' RICO claim is based on the Defendants' alleged scheme to defraud and to obtain money by offering a uniform floorplan agreement and then electronically debiting premature interest and fees from the customer dealers' bank accounts while concealing information regarding when funds were actually paid on their behalf. The RICO claim asserts that all dealers were defrauded through a common scheme using the same documents and concealing the same information by way of similar conduct on the part of the Defendants.

While oral misrepresentations would create individual issues and questions, the Plaintiffs' RICO claim is focused on, one, the written floorplan agreement that contains the same provisions and, two, the Defendants' concealment of the same information from all the putative class members. The same evidence would be necessary to prove this claim for the Plaintiffs as well as for the class members. Similar to the breach of contract claim, damage amounts likely will vary among the class members, but variations in damage amounts do not preclude class certification. It appears to the Court that common questions regarding the RICO claim will predominate any individual questions.

38

To support their claim for constructive fraud, the Plaintiffs must show:

(i) a duty owing by the party to be charged to the complaining party due to their relationship; (ii) violation of that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when a duty to speak exists; (iii) reliance thereon by the complaining party; (iv) injury to the complaining party as a proximate result thereof; and (v) the gaining of an advantage by the party to be charged at the expense of the complaining party.

*Rice v. Strunk*, 670 N.E.2d 1280, 1284 (Ind. 1996).

While some of the elements of constructive fraud could be addressed on a classwide basis, including the uniform concealment or misrepresentation of information, the element of reliance would require evidence that is too individualized to consider on a classwide basis. Whether a particular class member relied at all on the Defendants' concealment or misrepresentation of information, and if so, how they relied on the Defendants' actions necessarily requires individual consideration. While some questions would be common to the class members, the individual questions would predominate the constructive fraud analysis. For this reason, the Court declines certifying the constructive fraud claim for class treatment.

Regarding Rule 23(b)(3)'s requirement of superiority, the Plaintiffs' argument is well-taken. The fact that the claims in this case are supported by the same evidence, theories, and arguments across the class suggests that numerous, individual trials would be repetitive and would hinder economies of time, effort, and expense for the Court and the parties. Furthermore, the Plaintiffs have represented, without contention from the Defendants, that there are no other similar actions that already have been initiated. The Defendants likewise have not refuted the Plaintiffs' argument that a class action in this forum is desirable because the floorplan agreements that NextGear offered to the Plaintiffs called for jurisdiction in this forum, and NextGear's operations are centered in this forum.

While the Defendants argue that individual members would have a great incentive to bring and manage their own action because individual actions could result in an award of "tens of thousands of dollars," the Court determines that such an award likely would be dwarfed by the cost of litigation for these claims, thereby discouraging individual plaintiffs from pursuing valid claims. Rule 23 provides the Court with discretion and flexibility in managing a class action. The Court concludes that a class action is superior to other methods of adjudication for the claims raised in this litigation.

## IV.    CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Class Certification and Appointment of Class Counsel (Filing No. 153) is **GRANTED in part and DENIED in part**. Plaintiffs' breach of contract claim against NextGear and substantive RICO claim against NextGear, Cox Automotive, and Mr. Wick are certified to proceed as a class action. Plaintiffs' constructive fraud claim against NextGear is denied certification and must proceed on an individual basis. The certified class is defined as "all used car dealers in the United States of America that were parties to a Floorplan Agreement with DSC, n/k/a NextGear, effective during the time period of January 2005 through July 2013," with a subclass for "all California used car dealers that were parties to a Floorplan Agreement with DSC, n/k/a NextGear, effective during the time period of January 2005 through July 2013, which Floorplan Agreement requires the application of California law." In addition, Plaintiffs' Amended Motion for Appointment of Class Counsel (Filing No. 198) is **GRANTED.**

**SO ORDERED.**

Date:  6/29/2017

_Tanya Walton Pratt_

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Cassie E. Felder
THE CASSIE FELDER LAW FIRM
cassie@cassiefelderlaw.com

Kathleen Ann DeLaney
DELANEY & DELANEY LLC
kathleen@delaneylaw.net

Catherine E. Lasky
Gladstone N. Jones
Kerry A. Murphy
Lynn E. Swanson
JONES SWANSON HUDDELL & GARRISON LLC
Klasky@laskymurphy.com
gjones@jonesswanson.com
KMurphy@laskymurphy.com
lswanson@jonesswanson.com

David J. Jurkiewicz
Paul D. Vink
Steven D. Groth
BOSE MCKINNEY & EVANS LLP
djurkiewicz@boselaw.com
pvink@boselaw.com
sgroth@boselaw.com

Matthew M. Coman
Ryan D. Adams
James M. Garner
Jacob A. Airey
SHER GARNER CAHILL RICHTER KLEIN &
HILBERT LLC
mcoman@shergarner.com
radams@shergarner.com
jgarner@shergarner.com
jairey@shergarner.com

Jason S. McCarter
Tracey K. Ledbetter
EVERSHEDS SUTHERLAND (US) LLP
jason.mccarter@sutherland.com
traceyledbetter@eversheds-sutherland.com