IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RED BARN MOTORS, INC., PLATINUM MOTORS, INC., and MATTINGLY AUTO SALES, INC., individually and on behalf of other members of the general public similarly situated,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>COX AUTOMOTIVE, INC., NEXTGEAR CAPITAL, INC. F/K/A DEALER SERVICES CORPORATION, successor by merger with Manheim Automotive Financial Services, Inc., and JOHN WICK,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 1:14-cv-01589-TWP-DML<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## **MOTION TO RECONSIDER AND/OR MODIFY CLASS CERTIFICATION ORDER**

Defendants respectfully move the Court to reconsider and/or modify its Entry on Plaintiffs' Motion for Class Certification [Doc. 220] ("Certification Order") pursuant to Rules 59(e) and 23(c)(1)(C) of the Federal Rules of Civil Procedure. The Certification Order properly held that Plaintiffs' constructive fraud claim could not be certified, but it certified a class as to the claims for breach of contract and RICO. It appears that certification of the class was based primarily, if not exclusively, on Plaintiffs' Amended Complaint and the now-outdated motion to dismiss and class briefing. The Certification Order does not rigorously analyze Plaintiffs' current actual theories of recovery, many of the defenses pled by Defendants, or the undisputed evidence in this case, despite the "rigorous analysis" standard for certification. Following that standard should result in the denial of class certification.

First, Plaintiffs' current theory—squarely argued for the first time during summary judgment briefing—is that the floor plan agreements on which they base their claims are ambiguous on their face. (Pls.' MPSJ Br. [Doc. 195] at 12-18; Pls.' MSJ Resp. Br. [Doc. 209] at 10-14.) That is now the breach of contract theory that will be tried if summary judgment is not granted for either party. Indiana and California law both make clear that such a theory requires recourse to plaintiff-by-plaintiff extrinsic evidence, including the parties' intent, statements between the parties, course of dealing, and course of conduct. Thus, trial of the breach of contract claim will require an individualized analysis not susceptible to common proof.

Second, Plaintiffs' RICO claim likewise cannot be tried on a classwide basis. As the Court recognizes, that claim is based on a written floor plan agreement and an alleged scheme to conceal from each putative class member that NextGear charged interest from the floor planning date, even if funds were transferred on a later date. (Certification Order at 38.) But a major defense to the RICO claim—that many putative class members actually knew that which was allegedly concealed—is inherently individualized. The now-developed record makes clear that at least two of the three named Plaintiffs were aware when doing business with NextGear of the facts they now complain about, yet they continued to borrow. Not only does this evidence raise individualized waiver and ratification defenses for those named Plaintiffs, but it also demonstrates that proof of concealment will vary by class member based on communications over the course of each dealer's relationship with NextGear. In addition, there can be no misrepresentation based on Defendants' reasonable interpretation of what Plaintiffs contend is an ambiguous contract. Because the Defendants' defense of the RICO claim will require individualized discovery and proof across thousands of dealers, certification of a class as to the RICO claims is not appropriate.

Third, the class definition includes claims that would be timely only if the Court were to apply the doctrine of fraudulent concealment or the discovery rule.  But determining whether these doctrines should apply, thereby allowing class members to assert claims beyond the applicable statute of limitations, will require an analysis the Court has already held to be too individualized for certification.  The class therefore should be decertified, or, at the very least, narrowed.

Plaintiffs' actual operative theories on breach of contract and RICO are not susceptible to class treatment.  There are also many other factual assumptions in the Certification Order that are belied by the now-developed, undisputed summary judgment record.  Defendants therefore respectfully request that the Court reconsider the Certification Order under Rule 59 and/or modify the Order under Rule 23(c) and deny certification as to all claims.[1]

## PROCEDURAL HISTORY

After Plaintiffs amended their complaint to include class claims, Defendants moved to dismiss.  [Doc. 126.]  The case proceeded notwithstanding the motion to dismiss, and per the Court's scheduling order, Plaintiffs moved for class certification in September 2016.  [Doc. 153.]  Briefing on class certification was completed in November 2016, and extensive fact discovery continued in the case through December 2016.  (*See* Case Management Plan [Doc. 144].)  On March 27, 2017, the Court granted in part and denied in part Defendants' motion to dismiss [Doc. 186]; Defendants then answered and raised their affirmative defenses on April 10, 2017 [Doc. 188].

---

[1] The Court has recognized that certain class members' claims may be subject to arbitration. (Certification Order at 37 & n.5.)  Defendants reserve and do not waive their right to seek to arbitrate those class members' claims on an individual basis in the event they remain parties following the Court's ruling on this motion.

In accordance with the scheduling order, the parties moved for summary judgment on April 26, 2017. [Docs. 192, 194.] Before either party filed a summary judgment opposition brief, on May 9, 2017, the Court held oral argument on the motion for class certification. At oral argument, Defendants specifically requested that the Court look to the defenses and other merits issues in their Answer and in the parties' motions for summary judgment when deciding class issues. (Hr'g Tr. [Doc. 202] 16:24-19:9.) Defendants thereafter promptly filed a Notice of Additional Authority that identified specific authority relating to the ambiguity theory Plaintiffs raised in their summary judgment motion, long after certification briefing had closed. [Doc. 204; *see also* Doc. 223.] The parties completed summary judgment briefing on June 7, 2017.

On June 29, 2017, the Court issued its Certification Order, which contained no specific reference to or analysis of the parties' summary judgment briefing (including Plaintiffs' new contract theory), the authority in the Notice of Additional Authority, or additional affirmative defenses Defendants raised in their Answer. Because the Certification Order did not consider the operative state of the case, it was also based on numerous factual inaccuracies; for example, the Certification Order incorrectly states that NextGear owns and operates some auction houses[2] and that NextGear charged Red Barn approximately $80,000 in interest.[3]

## ARGUMENT AND AUTHORITY

A district court may "reconsider a prior decision when there has been a significant change in the law or facts since the parties presented the issue to the court, when the court misunderstands a party's arguments, or when the court overreaches by deciding an issue not

---

[2] *Compare* Certification Order at 3, 6, *with* 4/26/2017 Declaration of Adam Galema [Doc. 197-24] ¶ 3; Declaration of Mike McKinney [Doc. 197-25] ¶ 5.

[3] *Compare* Certification Order at 5, 27, *with* Red Barn Transaction Report [Doc. 197-15] (showing total interest charges of less than $40,000); Expert Report of Jay Cunningham [Doc. 197-30] at 10 (Plaintiffs' own expert asserted wrongful interest charges were, at most, approximately $7,000).

4

properly before it." *United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008). A motion to reconsider is subject to an abuse of discretion standard. *In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996).

Likewise, under Rule 23(c)(1)(C), a court may alter or amend an order certifying a class "in the light of subsequent developments in the litigation." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). "[T]he court has a duty to monitor its class decisions in light of the evidentiary development of the case; the court must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts." *Hickey v. Great W. Mortg. Corp.*, No. 94 C 3638, 1995 WL 121534, at *3 (N.D. Ill. Mar. 17, 1995) (granting motion to decertify). Thus, a court must monitor the plaintiffs' current theory of the case and decertify if the theory of liability no longer meets Rule 23's requirements. *See Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 520-21 (6th Cir. 2015) ("If later evidence disproves Plaintiffs' contentions that common issues predominate, the district court may consider at that point whether to modify or decertify the class." (internal punctuation omitted)).

**I.     On Class Certification, the Court Must Perform a "Rigorous Analysis," Which Requires It to Consider the Merits of the Case.**

This Court has recognized that it is black-letter law that a class certification decision requires some assessment of the merits of a case. (Certification Order at 9-10 (citing *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672 (7th Cir. 2001).) To certify a class, the trial court must be satisfied, "after a rigorous analysis," that the Rule 23 standard is met; that "rigorous analysis" will frequently "entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011). "[I]n evaluating class certification, the court must take into consideration the substantive elements of the plaintiff's cause of action, inquire into the proof necessary for the various elements, and envision the form that trial on the

5

issues would take." *Cox v. Sherman Capital LLC*, No. 1:12-cv-01654-TWP, 2016 WL 274877, at *4 (S.D. Ind. Jan. 22, 2016).

Among the things the Court must consider is the theory of the case asserted by the Plaintiffs—and not only the theory as articulated in the complaint, but the theory that would be pursued at trial. *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1430-31 (2013) (reviewing propriety of class certification order based on theories of case articulated by plaintiffs). Thus, for example, in *Mednick v. Precor, Inc.*, the court held that an expert's damages opinion in support of certification was "problematic" insofar as it relied on an allegation that the plaintiffs were no longer making by the time of the court's decision. No. 14 C 3624, 2017 WL 1021994, at *15 (N.D. Ill. Mar. 16, 2017). At the time the expert gave his opinion, over a year before, plaintiffs had not yet "focused their claims." *Id.* But the court held that the damages model supporting class certification was required to "correspond to Plaintiffs' *current* theory of liability." *Id.* (emphasis added).[4]

The purpose of a court's class certification decision is to determine whether a class action is the appropriate mechanism to fairly and efficiently adjudicate a controversy. *Cf.* Fed. R. Civ. P. 23(b)(3). Where class certification takes place relatively late in the case, as here, the Court should look to how the controversy will actually be adjudicated at trial, not at how Plaintiffs broadly alleged their claims months ago before engaging in discovery and refining their theory of the case.

---

[4] Thus, for example, it would not be a "rigorous analysis" to ignore affirmative defenses in considering commonality, typicality, and predominance simply because those defenses were pled after briefing on class certification. (*Cf.* Hr'g Tr. [Doc. 202] 16:24-19:9.)

### II. A Rigorous Analysis of Plaintiffs' Current Theory of the Case Demonstrates That the Breach of Contract Claim Should Not Have Been Certified.

Plaintiffs' current theory of the case—that their floor plan agreements were ambiguous—will require the Court to hear and decide extrinsic evidence as to each of thousands of class members at trial. Yet nowhere in the Certification Order is that new theory addressed, despite the requirements of a rigorous analysis and "a preliminary inquiry into the merits." *Szabo*, 249 F.3d at 676. The Court should therefore reconsider certification of the breach of contract claim.[5]

Several months after completing class certification briefing, Plaintiffs moved for summary judgment on their breach of contract claim, arguing that the floor plan agreement they entered into with NextGear "is ambiguous on the issue of when NextGear could begin charging interest." (Pls.' MPSJ Br. [Doc. 195] at 12.) In other words, Plaintiffs' current theory of the case is that the contracts on which they sued are ambiguous and must therefore be construed against NextGear. But—as discussed in Defendants' summary judgment briefing—Plaintiffs' conclusion about what state law requires in the event of an ambiguous contract is incorrect.

The Indiana Supreme Court has held that "where an instrument is ambiguous, *all relevant extrinsic evidence may properly be considered in resolving the ambiguity*." *Univ. of S. Ind. Found. v. Baker*, 843 N.E.2d 528, 535 (Ind. 2006) (emphasis added); *see also City of Kokomo ex rel. Goodnight v. Pogue*, 940 N.E.2d 833, 841 (Ind. Ct. App. 2010) ("Indiana adheres to the rule that when interpreting an ambiguous written instrument, all relevant extrinsic evidence may be considered to resolve any ambiguity, regardless of its nature."). (*See also* Notice of Add'l Auth. [Doc. 204].) The result is the same for the California sub-class. *See Steller v. Sears, Roebuck &*

---

[5] To be clear, Defendants' motion for summary judgment can be granted as to the named Plaintiffs (and all class members) because the relevant contracts allow the charges at issue, but if Plaintiffs' ambiguity theory is accepted, it will, by operation of state law, require review of individualized extrinsic evidence.

*Co.*, 189 Cal. App. 4th 175, 183, 116 Cal. Rptr. 3d 824, 831 (2010) ("Where a word or a phrase used in a contract can reasonably be understood in more than one way, the court must admit and consider extrinsic evidence to determine what the parties actually intended the word or phrase to mean."). Thus, under Plaintiffs' theory of contractual liability, the Court must hear and decide extrinsic evidence to resolve the ambiguity and determine the meaning of the NextGear floor plan agreement.

Plaintiffs' new theory of ambiguity is fatal to class certification, because determining the contract's meaning would require borrower-by-borrower proof of intent, course of performance, and other extrinsic evidence. Where ambiguity in a contract has "open[ed] the door for extrinsic evidence," courts have held that "liability to the entire class for breach of contract cannot be established with common evidence." *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1030 (8th Cir. 2010). Put another way, "[b]y allowing extrinsic evidence of the parties' dealings, the breach of contract claims become individualized and not reasonably susceptible to class action treatment." *Adams v. Kansas City Life Ins. Co.*, 192 F.R.D. 274, 282 (W.D. Mo. 2000). In this case, Plaintiffs acknowledge that both NextGear's and Plaintiffs' reading of the contract is plausible (otherwise the contract would not be ambiguous); therefore, individualized extrinsic evidence must be considered to resolve the ambiguity and certification is inappropriate. *Avritt*, 615 F.3d at 1030; *see also Cox*, 2016 WL 274877, at *11 (predominance and superiority requirements not met "without some indication that the Plaintiffs' claims are capable of proof through evidence common to the class").

Nowhere in the Certification Order does the Court address "the form that trial on the issues would take" when interpretation of the contract will depend on what each individual dealer intended, how each dealer interpreted the contract, communications with NextGear about

8

the contract, whether any individual dealer objected to the manner in which NextGear charged interest, how the parties performed (or continued to perform after becoming aware of the issue), and various other questions that must be answered on a dealer-by-dealer basis. *Cox*, 2016 WL 274877, at *4. (*Cf.* NextGear's Resp. in Opp. to Pls.' MPSJ [Doc. 207] at 13-14 (describing extrinsic evidence of named Plaintiffs' understanding and intent).) As the Certification Order currently stands, to determine answers to these questions, Defendants will have to depose and/or cross-examine at trial each of thousands of dealers in the class, obtain testimony from hundreds of account representatives who worked with those dealers, and seek each dealer's unique business records for proof of awareness, intent, and course of dealing.

Claims requiring a review of extrinsic evidence should not be certified, *see Avritt*, 615 F.3d at 1030, and therefore Plaintiffs' current theory of liability should lead the Court to reconsider or modify its Certification Order and deny certification on Plaintiffs' breach of contract claim.

### III. A Rigorous Analysis of the Evidence Required to Prove (and Disprove) a Scheme of Concealment Demonstrates That the RICO Claim Should Not Have Been Certified.

The Defendants respectfully request that the Court reconsider its order certifying a class as to Plaintiffs' RICO claim. Where, as here, the RICO claim is indisputably based on an alleged scheme of concealment, the claim cannot be adjudicated on a classwide basis. To hold otherwise, as the Certification Order does, is to deny the Defendants their right to defend against the claims of the Plaintiffs.

The class action device may not be used to prevent Defendants from presenting their side of the case. *See Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000) (federal joinder rules are designed to permit "economies in litigation, not to merge the plaintiffs' rights so that the defendant loses defenses that he might have had against one of the plaintiffs"); *Sacred Heart*

*Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1176 (11th Cir. 2010) ("The Rules Enabling Act, 28 U.S.C. § 2072—and due process—prevents the use of class actions from abridging the substantive rights of any party."). Thus, the Supreme Court has held that "a class cannot be certified on the premise that [the defendant] will not be entitled to litigate its statutory defenses to individual claims." *Wal-Mart*, 564 U.S. at 367.

The Seventh Circuit recognized in *Mullins v. Direct Digital, LLC*, that in certain cases a class action might violate a defendant's due process rights. Whether that is so "depends on the nature of the class action, the plaintiff's theory of recovery, and the defendant's opportunity to contest liability and the amount of damages it owes. The due process question is . . . whether the defendant will receive a fair opportunity to present its defenses when putative class members actually come forward." 795 F.3d 654, 669-70 (7th Cir. 2015). In this case, certification will deny Defendants a fair opportunity to present their defenses to Plaintiffs' RICO claim.

The RICO claim is based on an alleged scheme to conceal information from all the putative class members. (Certification Order at 38.) But whether Defendants concealed information depends on individual questions of what, exactly, was said to each dealer and what each dealer knew with respect to interest charges. *See, e.g.*, *Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*, 215 F.R.D. 523, 532 (E.D. Tex. 2003) (in fraudulent concealment case, "[r]equiring each of the 52,000 Plaintiffs to testify and be cross-examined about their knowledge and due diligence raises the strong potential that the action will degenerate into a series of individual trials"). Indeed, the Court has acknowledged that a RICO claim founded on oral communications "would create individual issues and questions." (Certification Order at 38.) But a "concealment" theory inevitably raises the question of what was communicated orally or in extra-contractual writings and what knowledge each dealer possessed about how interest was

10

charged. In this way, the RICO claim is very similar to the constructive fraud claim rejected by the Court for class certification. Both claims hinge on the specific communications to a dealer, reliance on those communications, and the knowledge each dealer possessed as to how interest was charged. (*Cf.* Hr'g Tr. [Doc. 202] 15:20-16:23.)

One of Defendants' principal defenses to the concealment "scheme" is the fact that many dealers actually knew the information that was allegedly concealed. But Defendants cannot assert that defense on a classwide basis. Defendants would need to obtain discovery from each of thousands of class members as to what they knew, what they asked, and what they were told by NextGear representatives. Such discovery from the named Plaintiffs revealed that NextGear told two of them that it sometimes charged interest before funding was transferred to the auctions. (*See* Defs.' MSJ Br. [Doc. 193] at 8-9, 11, 24.) (In other words, the alleged "scheme" was not concealed from 66% of the named Plaintiffs.) Defendants would then need to present evidence from each of the thousands of class members and/or hundreds of account representatives in thousands of mini-trials—simply to determine whether the Defendants concealed anything from the particular class member. In other words, whether Defendants are liable for a RICO violation *at all* requires individualized evidence that cannot be determined on a classwide basis. *Cf. Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002) (fraud claims cannot satisfy predominance requirement "[w]here there are material variations in the nature of the misrepresentations made to each member of the proposed class," as each putative class member must submit individual proof).[6]

---

[6] Along with concealment, the Court identifies the written floor plan agreements as the other basis for Plaintiffs' RICO claim. (Certification Order at 38.) But Plaintiffs now argue that the agreement is ambiguous (*see* Section II, above), meaning it *could* be read Defendants' way. It is unclear how any scheme to defraud could be based on an allegedly ambiguous contract that could (and should) be interpreted to permit charging interest from the moment NextGear became

Certification of a RICO class prevents Defendants from fully investigating and presenting their side of the case, which would be an abuse of the class action mechanism. Defendants cannot defend a charge that they schemed to conceal information from each of thousands of dealers without discovery into and proof of what each of those dealers in fact knew or were told. Therefore, the Court should reconsider or modify its Certification Order and deny certification on Plaintiffs' claim for violation of RICO.

### IV. A Rigorous Analysis of the Statute of Limitations Demonstrates That Such a Broad Class Should Not Have Been Certified.

The class as certified is overbroad. It includes numerous members whose claims are, on their face, wholly or partially barred by the statute of limitations, and only an individualized analysis of tolling doctrines and the discovery rule can save those earlier claims. The longest limitations period applicable to the breach of contract and RICO claims is six years under Indiana law and four years under California law. Ind. Code § 34-11-2-9; Cal. Civ. Proc. Code § 337.

Any claims for transactions occurring prior to January 2010 (for the nationwide class) or prior to January 2012 (for the California class) are time-barred, unless a particular claim is saved by application of the fraudulent concealment doctrine or the discovery rule. But analysis of the discovery rule for each dealer would be nearly impossible, and certainly not efficient. Concealment is an individualized issue that cannot be certified. Under both Indiana and California law, fraudulent concealment requires a showing of reasonable reliance. "[A] party

---

obligated to an auction. Even were the Court to disagree with NextGear's interpretation, that is at most a breach of an ambiguous contract, not a criminal-styled tort that warrants treble damages and attorneys' fees. The Court's duty to perform a "rigorous analysis" requires denial of certification on plainly meritless theories. *Panwar v. Access Therapies, Inc.*, No. 1:12-cv-00619-TWP, 2015 WL 329013, at *3 (S.D. Ind. Jan. 22, 2015) (citing *Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 679 (7th Cir. 2009)) (inclusion of great number of non-injured plaintiffs renders class too broad, and thus not ascertainable).

asserting fraudulent concealment must establish by a preponderance of the evidence, (1) the wrongdoer had a duty to disclose certain facts to another, (2) it knowingly failed to do so, and (3) the other justifiably relied upon such non-disclosure to his detriment." *Dow Chem. Co. v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 553 N.E.2d 144, 149-50 (Ind. Ct. App. 1990); *Grisham v. Philip Morris U.S.A., Inc.*, 151 P.3d 1151, 1159 (Cal. 2007) (tolling based on fraudulent concealment "will last as long as a plaintiff's reliance on the misrepresentations is reasonable").

As this Court has already noted, "the element of reliance would require evidence that is too individualized to consider on a classwide basis." (Certification Order at 39.) For each dealer within the class—particularly those who entered agreements as far back as 2005—the Court would need to consider the dealer's knowledge of how NextGear charged interest, if and when that changed, and the reasonableness of any reliance on statements or silence by NextGear. Thus, individualized questions on the statute of limitations should preclude certification altogether. But if the Court still chooses to certify a class, the class definitions should be narrowed to exclude dealers who stopped borrowing from NextGear prior to January 2010 and to exclude California dealers who stopped borrowing from NextGear prior to January 2012.[7]

## CONCLUSION

The Certification Order does not reflect that the Court rigorously analyzed Plaintiffs' current theory of the case, took into consideration the summary judgment briefing and undisputed evidence, or considered Defendants' additional defenses raised by answer when it certified a class as to Plaintiffs' claims for breach of contract and RICO. A close review of the

---

[7] Even if the class members' claims were to relate back to Red Barn's original complaint—which they should not—a class going back to 2005 would still be overbroad and the statute of limitations issues would still require an individualized analysis. No matter the class period, some class members may have particular transactions that are time-barred, even if other transactions are timely.

13

current state of the case reveals that common issues do not predominate as to either the contract or the RICO claim, and therefore a class action is not a superior way to adjudicate those claims. Thus, the Court should reconsider or modify its Certification Order and deny certification on all claims.

Respectfully submitted, this 12th day of July, 2017.

    *s/ Tracey K. Ledbetter*
David J. Jurkiewicz (18018-53)
Paul D. Vink (23785-32)
BOSE McKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN  46204
(317) 684-5000
(317) 684-5173 fax
djurkiewicz@boselaw.com
pvink@boselaw.com

Jason S. McCarter (*pro hac vice*)
Tracey K. Ledbetter (*pro hac vice*)
EVERSHEDS SUTHERLAND (US) LLP
999 Peachtree Street, NE, Suite 2300
Atlanta, GA 30309-3996
(404) 853-8000
(404) 853-8806 fax
jasonmccarter@eversheds-sutherland.com
traceyledbetter@eversheds-sutherland.com

*Attorneys for Defendants Cox Automotive, Inc., NextGear Capital, Inc. f/k/a Dealer Services Corporation, and John Wick*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing has been served upon the following counsel of record via the Court's electronic service notification system, this 12th day of July, 2017:

| | |
|---|---|
| Ryan D. Adams<br>James M. Garner<br>Matthew M. Coman<br>Jacob A. Airey<br>SHER GARNER CAHILL RICHTER<br>KLEIN & HILBERT, L.L.C.<br>radams@shergarner.com<br>jgarner@shergarner.com<br>mcoman@shergarner.com<br>jairey@shergarner.com | Catherine E. Lasky<br>Kerry A. Murphy<br>LASKY MURPHY LLC<br>klasky@laskymurphy.com<br>kmurphy@laskymurphy.com |
| Cassie E. Felder<br>LUGENBUHL, WHEATON, PECK,<br>RANKIN & HUBBARD<br>cfelder@lawla.com | Gladstone N. Jones, III<br>Lynn E. Swanson<br>JONES, SWANSON, HUDDELL &<br>GARRISON, LLC<br>gjones@jonesswanson.com<br>lswanson@jonesswanson.com |
| Kathleen A. DeLaney<br>DELANEY & DELANEY LLC<br>Kathleen@delaneylaw.net | Lisa Brener<br>BRENER LAW FIRM, LLC<br>lbrener@brenerlawfirm.com |

                                           *s/ Tracey K. Ledbetter*
                                           Tracey K. Ledbetter