UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RED BARN MOTORS, INC., )<br>PLATINUM MOTORS, INC., )<br>MATTINGLY AUTO SALES, INC., )<br>YOUNG EXECUTIVE MANAGEMENT & )<br>CONSULTING SERVICES, INC., )<br>Individually, and on behalf )<br>of other members of the )<br>general public similarly )<br>situated, )<br>           Plaintiffs, )<br>                           )<br>       -v-               )<br>                           )<br>COX ENTERPRISES, INC., )<br>COX AUTOMOTIVE, INC., )<br>NEXTGEAR CAPITAL, INC. f/k/a )<br>DEALER SERVICES CORPORATION, )<br>successor by merger with )<br>Manheim Automotive Financial )<br>Services, Inc., and JOHN WICK,)<br>           Defendants. ) | ) Docket No.<br>) 1:14-cv-01589-TWP-DKL<br>)<br>) Class Action |

**THE 30(B)(6) DEPOSITION OF
NEXTGEAR CAPITAL, INC. f/k/a DEALER SERVICES CORPORATION
UPON ORAL EXAMINATION OF ADAM GALEMA**

The 30(b)(6)deposition of NextGear Capital, Inc. f/k/a Dealer Services Corporation upon oral examination of **ADAM GALEMA,** a witness produced and sworn before me, Tami L. Scott, Notary Public in and for the County of Marion, State of Indiana, taken on behalf of the Plaintiffs at the offices of Bose, McKinney & Evans, 111 Monument Circle, Suite 2700, Indianapolis, Marion County, Indiana, on December 20, 2016, at 8:30 a.m., pursuant to the Federal Rules of Civil Procedure.

**ASSOCIATED REPORTING, INC.
251 EAST OHIO STREET, SUITE 940
INDIANAPOLIS, INDIANA 46204
(317) 631-0940
www.associated-reporting.com**

# EXHIBIT B

32

1       on stock number 209?

2 A   Yes.

3 Q   And again, that's not reflected in this Exhibit 2;
4       correct, those payments?

5 A   Timing of payments are not represented here, no.

6 Q   Now, does Discover include the timing of payments?
7       Is that included in the Discover system?

8 A   Yes.

9 Q   Is that a column that could be added to this report?

10 A   I mean, payment date is a data point inside our
11       system and could be reported, sure.

12 Q   So if we were again trying to replicate this $96.58
13       and payments were, in fact, made at the end of each
14       curtailment period, without knowing the amount and
15       dates of those payments, we would not be able to
16       replicate this $96.58 calculation, would we?

17 A   Again, I mean, timing of payments are not listed
18       here, but the interest that's noted on this sheet is
19       the interest charged by the system and would have
20       taken timing of payments into consideration.

21 Q   But knowing the timing and amount of payments is
22       necessary to calculate interest; correct?

23 A   Correct.

24 Q   So based only on the information listed here for
25       stock number 209, can we calculate the interest

1      assessed on stock number 209?

2  A    You can certainly calculate, you know, an average

3      per diem by taking the total interest listed here

4      and dividing it by the total number of days

5      outstanding for this vehicle and get an average per

6      day.

7  Q    So if we did an average -- so an average per day --

8      so is it your testimony on behalf of NextGear that

9      this $96.58 can be divided by the number of days

10     between February 14, 2012 and June 15, 2012, that

11     that would be an accurate per diem interest rate or

12     interest per day doing that calculation?

13  A   That would give you the average interest charged

14     each day during the term plan, or during the time

15     that that unit was on the floorplan.

16        MS. LASKY:  Let's take a break, please.

17        (A recess was taken.)

18  BY MS. LASKY:

19  Q   Now, I believe we spoke earlier that the interest

20     charged on these transactions was compounded daily;

21     is that correct?

22  A   That's correct.

23  Q   So how is a per diem amount of interest relevant

24     when the interest is compounded daily?

25  A   I mean, it gives you an average charge throughout

1        the life of the loan to give you a baseline of where
2        that average rate would be.
3   Q    But it does not give you the exact number because
4        it's compounded daily, so it changes based on the
5        amount of principal; correct?
6   A    Correct. That would not be the exact daily rate,
7        but it is an average that would be charged.
8   Q    So based on Exhibit 2 and the columns that are
9        contained here and the information contained here,
10       is the information contained here sufficient to
11       replicate the calculation that your Discover system
12       did to reach the amount of interest for stock number
13       209?
14  A    The information here represents the information that
15       was requested of us, which includes the interest
16       calculation that is the resulting interest calc for
17       daily compounding interest calculation.
18            MS. LASKY: I'm going to move to strike that
19       answer as nonresponsive, and I'm going to ask that
20       same question again.
21            MR. VINK: I'm going to object for the record.
22       I think it's perfectly responsive. You can go ahead
23       and answer it again.
24  Q    Based on Exhibit 2 and the information contained
25       herein, is there sufficient information to calculate

| | | |
|---|---|---|
| 1 | | the amount of interest that is listed in the final |
| 2 | | column of Exhibit 2? |
| 3 | A | I would say that the information here, again, is |
| 4 | | what was requested and provided and specifically |
| 5 | | states the amount of interest that was calculated |
| 6 | | for each particular vehicle. |
| 7 | Q | Okay. And you have said that in order to calculate |
| 8 | | the interest, you need to know the date and amount |
| 9 | | of payments made during the life of a floorplan; |
| 10 | | correct? |
| 11 | A | Sure. That would be information that I would want |
| 12 | | to have. |
| 13 | Q | And that is relevant to the interest calculation |
| 14 | | that's listed on Exhibit 2; correct? |
| 15 | A | Sure. |
| 16 | Q | That's part of the calculation; yes? |
| 17 | A | Yes. |
| 18 | Q | And there is no column here for reflecting the date |
| 19 | | and amount of any payments made; is that correct? |
| 20 | A | There is no information here for timing of payments. |
| 21 | Q | Or the amount of payments? |
| 22 | A | Or the amount. |
| 23 | Q | And the timing and amount of payments is a variable |
| 24 | | that Discover took into account when coming up with |
| 25 | | the -- when calculating the $96.58 in interest on |

36

```
 1          stock number 209; correct?
 2   A      That's correct.
 3   Q      Now, based on the information contained in Exhibit
 4          2, can an accurate calculation be done of the
 5          interest charged to Red Barn Motors on stock number
 6          209 for the time between February 14, 2012 and
 7          February 16, 2012?
 8   A      Can you repeat that question, please?
 9   Q      Sure.  Based on the information contained on Exhibit
10          2, can an accurate calculation of the interest
11          charged Red Barn Motors for stock number 209 between
12          the time of February 14, 2012 and February 16, 2012
13          be done?
14   A      Yes, you could get an interest amount.
15   Q      How?
16   A      Because you have the principal amount, original
17          financed amount; you know the first fee, right, the
18          $85, and if there were other fees included in there,
19          you know, that would be added to it.  But you know
20          the rate is 9 and a half percent and you know it's
21          for two days, so you could get a general calculation
22          of what those two days would be.
23   Q      A general calculation is, I would assume for an
24          accountant, is not an exact calculation; correct?
25   A      Correct.
```

37

| | | |
|---|---|---|
| 1 | Q | And accountants want exact calculations; correct? |
| 2 | A | Generally. |
| 3 | Q | And you said there were other -- if there were other |
| 4 | | fees, and again, these other fees that you |
| 5 | | referenced are not included on Exhibit 2; correct? |
| 6 | A | Correct.  It's my understanding they were not |
| 7 | | included.  Only the fees requested were included. |
| 8 | Q | So again, is it your testimony that you could get an |
| 9 | | accurate calculation of the interest paid by Red |
| 10 | | Barn Motors between February 14, 2012 and |
| 11 | | February 16, 2012 based solely on the information |
| 12 | | contained on Exhibit 2? |
| 13 | | MR. VINK:  Objection.  Asked and answered.  You |
| 14 | | can answer. |
| 15 | A | I would say that for that particular vehicle with |
| 16 | | the information provided here, you could get an |
| 17 | | interest calculation for those two days that is very |
| 18 | | close, if not exactly the same, as what would have |
| 19 | | been calculated. |
| 20 | Q | So if we come to trial in this matter and we put |
| 21 | | forward a calculation based on the formula that you |
| 22 | | just said or the calculation method you just said, |
| 23 | | is it your testimony on behalf of NextGear and DSC |
| 24 | | that that's a proper calculation of the interest |
| 25 | | between February 14th and February 16th charged to |

38

1           Red Barn Motors for stock number 209?
2                MR. VINK: Object to the form. You can answer
3           the question.
4     A     Can you clarify, you said something about is that a
5           proper calculation?
6     Q     You've just testified on behalf of NextGear and DSC
7           how you would perform the calculation to figure out
8           the amount of interest charged between February 14,
9           2012 and February 16, 2012; correct?
10    A     Correct.
11    Q     And it's your testimony on behalf of NextGear/DSC
12          that you can do that based on the information
13          contained on Exhibit 2; correct?
14    A     You can get an accurate, or excuse me, a general
15          calculation for those two days based on the
16          information here.
17    Q     And is it your testimony on behalf of NextGear/DSC
18          that a general calculation is sufficient to
19          calculate the amount of interest paid between those
20          two days by Red Barn Motors?
21               MR. VINK: Object to the form. You can answer.
22    A     Yeah. A general -- a calculation using information
23          here would be, for those two days, very close to,
24          again, if not exactly, the amount that was charged
25          for those two days.

1    January 4th and March 9th and the interest charged
2    during that period.
3  Q  Okay.  And so it's your testimony on behalf of
4    NextGear/DSC that we cannot calculate the amount of
5    interest paid by Red Barn during that gap time on
6    stock number 153 based on the information contained
7    on Exhibit 2; is that correct?
8       MR. VINK:  Object to the form.  Asked and
9    answered many, many, many times.  Maybe one last
10   time, and then we're going to stop answering that.
11   I understand you're looking for a different answer,
12   but this is about the tenth time you've asked the
13   question.
14      MS. LASKY:  I'm looking for an answer because I
15   want to know when we go to trial and we provide a
16   damage calculation that if the position of
17   NextGear/DSC is that all the information we need is
18   on Exhibit 2, which we'll -- we're going to have to
19   take that up with the Court because I think we've
20   established it's not, that the calculation that
21   we're performing is not -- is the calculation that
22   he is testifying to on behalf of NextGear/DSC.
23      So with that, you can answer my question.  If
24   you need it read back, I'm happy to do that.
25 A  I think I've got it.

52

1  Q     Okay.
2  A     The information here, again, gives you enough data
3        to produce an estimate, an accurate estimate of the
4        interest paid. It certainly gives you the total
5        interest paid over the life of the loan which you
6        can divide by the number of days within any given
7        time period to come up with a per diem.
8  Q     Are you endorsing a per diem calculation of interest
9        as the proper calculation to determine the amount of
10       interest charged during a certain period in this
11       case?
12             MR. VINK: Object to the form. You can answer.
13 A     I don't know that that's necessarily up to me. I
14       think that would be up to our counsel.
15 Q     You are the fact witness; you're the corporate
16       witness on behalf of NextGear and DSC, and if you
17       were going to calculate the interest paid by Red
18       Barn Motors between January 4th, 2012 and March 9th,
19       2012 on stock number 153, would you do it based on a
20       per diem calculation?
21             MR. VINK: Object to the form. You can answer.
22 A     Based on the information presented here that was
23       requested, you could certainly do that, yes.
24 Q     My question was, is that how you on behalf of
25       NextGear/DSC would perform the calculation to

53

1     determine the interest paid by Red Barn Motors
2     during the time between January 4th, 2012 and
3     March 9th, 2012 on the Mazda Miata?
4         MR. VINK: Object to the form. You can answer.
5 A   That is certainly a calculation that I could perform
6     to come up with that amount of interest paid, or
7     amount of interest accrued. Excuse me.
8 Q   And that would not be the amount of interest paid;
9     correct?
10 A   Correct.
11 Q   And would that be a precise calculation?
12 A   No. It would be an estimate. But again, the total
13     amount listed there is an accurate and precise
14     number.
15 Q   The amount of interest listed there is an accurate,
16     precise number of the interest paid throughout the
17     life of the floorplan loan; correct?
18 A   That's correct.
19 Q   And other than doing a per diem estimate, is there
20     any way to calculate the amount of interest accrued
21     per day on any of these transactions based solely on
22     the information contained in Exhibit 2?
23 A   Again, the information here provides you with most,
24     if not all, of the information that you would need
25     that you could put a presumptive calculation

54

1            together that would come up with a very accurate
2            estimate of that interest.
3      Q     So when you say most, if not all, it means it does
4            not contain all the information we need to do that
5            calculation; correct?
6      A     As we established before, there are potentially fees
7            here not listed, and again, timing and amount of
8            payments are not listed on this report either.
9      Q     And those are necessary to figure out the exact
10           interest charged per day on these floorplanned
11           vehicles; correct?
12     A     You would need that to calculate a per day, the
13           exact to the penny, yes.  But you could obviously
14           get a per diem.
15                 MS. LASKY:  All right.  Let's take a break.
16           Won't be long.
17                 (A recess was taken.)
18     BY MS. LASKY:
19     Q     Mr. Galema, can you list for me every variable that
20           Discover uses to calculate the interest listed there
21           on Exhibit 2, please?
22     A     Try to give you an exhaustive list.  It would be
23           principal amount; interest rate; fees; time, number
24           of days; payment history.  I think that's probably
25           about it.

55

1   Q   And again, payment history would include the date
2       and amount of the payments; correct?
3   A   That's correct.
4   Q   Now, we talked about the base rate, and is it
5       correct that the base rate was 5 percent from
6       August 2008 through the end of 2013?
7   A   That's correct.
8   Q   So it remained unchanged; correct?
9   A   Correct, uh-huh.
10  Q   I'm going to turn now to, do you recall executing a
11      declaration or affidavit -- I can't remember what it
12      was filed as -- a declaration in this case?
13  A   Declaration, yes.
14  Q   I'm going to mark that as Exhibit 4.
15          (Deposition Exhibit 4 marked for
16      identification.)
17  Q   And I know you testified, you were asked some
18      questions about this at your individual deposition.
19      I want to turn to number 9, which is on the second
20      page.
21  A   Okay.
22  Q   "From January 2005 through July 2013, various
23      customers of MAFS and DSC signed materially
24      different versions and subsets of MAFS' and/or DSC's
25      respective agreements."

56

1             I just want to focus on the DSC agreements for
2     purposes of this question.
3  A  Sure.
4  Q  What agreements did you look at in order to make the
5     statement that DSC customers signed materially
6     different versions of DSC agreements?
7  A  I have seen agreements for many of our dealers, and
8     I'm familiar with the term sheets for each of our
9     dealers and know them to be different.
10 Q  And when you say the term sheets, that would be what
11    is reflected under the "Term Plan Description"
12    column on Exhibit 2; is that correct?
13 A  That's correct.
14 Q  So all of the different information in the different
15    versions of the term sheets would be reflected in
16    the "Term Plan Description" of Exhibit 2; is that
17    correct?
18 A  Can you repeat that?  Excuse me.  Sorry.
19 Q  That's okay.  All of the relevant information from
20    the term plans, the different term plans executed by
21    the DSC customers, that would all be included in the
22    "Term Plan Description" column of Exhibit 2; is that
23    correct?
24 A  Correct.
25 Q  And you say in the second sentence of number 10,

57

```
 1            "Interest rates and fees varied by customer and by
 2            particular financing program."  And again, were the
 3            interest rates and fees, are those reflected in the
 4            "Term Plan Description" column of Exhibit 2?
 5    A       Yes.
 6    Q       And we've established that prior to August of 2008,
 7            so is that up to and including July of 2008 that you
 8            used the Wall Street Journal prime rate as the base
 9            rate?
10    A       Yes, I believe that's true.
11    Q       And then as of August 1st, 2008 through the end of
12            2013, the base rate was 5 percent; correct?
13    A       Correct.
14    Q       And then on 11, you say, "The agreements" -- and
15            again, I just want to focus on DSC -- that DSC used
16            "were substantially and independently revised at
17            least twice since 2007 and have also been revised
18            for specific customers, after negotiation with those
19            customers, on numerous other occasions."
20            Have you reviewed the deposition testimony of
21            anyone else in this case, other than your own?
22    A       No.  I've only reviewed mine.
23    Q       Now, Mr. LaBauve testified -- do you know who he is?
24    A       Yes.
25    Q       That the promissory note, the Demand Promissory Note
```

58

| | | |
|---|---|---|
| 1 | | and Security Agreement that DSC used during the |
| 2 | | relevant time period was a take-it-or-leave-it |
| 3 | | contract. Do you understand what is meant by a |
| 4 | | take-it-or-leave-it contract? |
| 5 | | MR. VINK: Objection to the form. You can |
| 6 | | answer. |
| 7 | A | Yeah, in a general sense, I would understand what |
| 8 | | that means. |
| 9 | Q | Do you, on behalf of NextGear/DSC, have any |
| 10 | | knowledge of the Demand Promissory Note and Security |
| 11 | | Agreement, any of the terms in the Demand Promissory |
| 12 | | Note and Security Agreement being individually |
| 13 | | negotiated -- not including the Term Sheet -- the |
| 14 | | Demand Promissory Note and Security Agreement, the |
| 15 | | individual terms being individually negotiated with |
| 16 | | any dealers during the relevant time period? |
| 17 | A | They are generally not. It is generally a |
| 18 | | take-it-or-leave-it. I am aware that there have |
| 19 | | been instances where certain points of that contract |
| 20 | | and agreement have been negotiated. |
| 21 | Q | Do you have any specifics on those negotiations? |
| 22 | A | I was not involved in them directly. |
| 23 | Q | Do you know how many times that terms on the Demand |
| 24 | | Promissory Note and Security Agreement were changed |
| 25 | | for individual dealers? |