UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
(Indianapolis Division)

| | | |
|---|---|---|
| **RED BARN MOTORS, INC.,** | * | **DOCKET NO. 1:14-cv-01589-TWP-DML** |
| **PLATINUM MOTORS, INC., and** | * | |
| **MATTINGLY AUTO SALES, INC.,** | * | **CERTIFIED AS A CLASS ACTION** |
| individually, and on behalf of other | * | |
| members of the general public | * | |
| similarly situated, | * | |
| | * | |
| v. | * | |
| | * | |
| **COX ENTERPRISES, INC.,** | * | |
| **COX AUTOMOTIVE, INC.,** | * | |
| **NEXTGEAR CAPITAL, INC.,** | * | |
| **F/K/A DEALER SERVICES** | * | |
| **CORPORATION, successor by merger** | * | |
| with Manheim Automotive Financial | * | |
| Services, Inc., and JOHN WICK, | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO RECONSIDER AND/OR MODIFY CLASS CERTIFICATION ORDER**

Plaintiffs Red Barn Motors, Inc., Platinum Motors, Inc., and Mattingly Auto Sales, Inc. (collectively, "Plaintiffs") respectfully submit this memorandum in opposition to Defendants' Motion to Reconsider and/or Modify Class Certification Order (Dkt. 228). Defendants fail to raise any significant change in the law or facts of this case that would justify relief under Fed. R. Civ. P. 59(e), or any litigation development that would justify altering or amending the class certification decision under Fed. R. Civ. P. 23(c)(1)(C). Defendants' Motion simply re-urges arguments made by Defendants before class certification and should be denied in its entirety.

**I.     Introduction and Standards of Review.**

Although motions to reconsider are not specifically authorized by the Federal Rules of Civil Procedure, courts in the Seventh Circuit apply Rule 59(e) or Rule 60(b) standards to these motions. *Bell v. Turner,* 115CV00931TWPDKL, 2017 WL 2021404, at \*1 (S.D. Ind. May 12,

2017) (citing *Smith v. Utah Valley Univ.,* 2015 U.S. Dist. LEXIS 70271, at *3–4 (S.D. Ind. June 1, 2015)). The Seventh Circuit recognizes that "Rules 59(e) and 60(b) are reserved for extraordinary cases." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & NW Ind.*, 786 F.3d 510, 521 (7th Cir. 2015). "A Rule 59(e) motion will be successful only where the movant clearly establishes: (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment." *Cincinnati Life Ins. Co. v. Beyrer*, 772 F.3d 939, 954 (7th Cir. 2013) (internal quotation marks and citation omitted). "[A] Rule 59(e) motion is not appropriately used to advance arguments or theories that could and should have been made before the district court rendered judgment." *County of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 819 (7th Cir. 2006) (internal quotation marks and citation omitted). Most importantly, "a Rule 59(e) motion is not to be used to rehash previously rejected arguments[.]" *Vesely v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014) (internal quotation marks and citation omitted); *see also Newell v. Alden Village Health Facility for Children & Young Adults*, 651 Fed. Appx. 556, 559 (7th Cir. 2016). "Rule 59(e) motions were not created to allow the parties to relitigate matters already disposed of." *U.S. v. 2900 N. Hickory*, 919 F.2d 143, 1990 WL 183956, *3 (7th Cir. 1990).

As to class certification, Defendants are not relieved from the prohibition against simply relitigating already-disposed-of issues under Rule 23(c)(1)(C)'s authority to alter or modify certification orders:

> Although Rule 23(c)(1)(C) itself states, "An order that grants or denies class certification may be altered or amended before final judgment," courts uniformly apply the stringent law of the case standard to motions to reconsider initial class certification decisions. This choice stems from courts' reluctance to allow parties to have a "second bite at the apple" by relitigating issues that have already been decided, thereby incentivizing parties to put their best foot forward at the outset and avoiding costly delays to the proceedings.
>
> Courts therefore rarely grant motions to reconsider initial certification decisions, with two recurring exceptions [first, certifying for settlement purposes classes

> previously denied due to case management concerns, and, second, a circuit court order directing the lower court to reconsider its certification decision, often due to either a change in the law since the initial certification decision or a defect in the court's application of Rule 23].
>
> In short, motions styled as seeking reconsideration of initial class certification decisions are subjected to the strict law of the case doctrine and rarely succeed.

WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 7:35 (5th ed.) (citing cases from around the country, including *Kress v. CCA of Tennessee, LLC,* 1:08-CV-00431-LJM, 2011 WL 304648, at *2 (S.D. Ind. Jan. 25, 2011)). Indeed, Defendants concede that a Rule 23(c)(1)(C) motion must be supported by "subsequent developments in the litigation." Dkt. 228 at 5 (quoting *Gen. Tel. Co. of SW v. Falcon*, 457 U.S. 147, 160 (1982)). Further, "[i]n the absence of materially changed or clarified circumstances, or the occurrence of a condition on which the initial class ruling was expressly contingent, courts should not condone a series of rearguments on the class issues by . . . the opponent of the class...." *Parish v. Sheriff of Cook County,* 07 C 4369, 2016 WL 1270400, at *1 (N.D. Ill. Mar. 31, 2016) (citing NEWBERG ON CLASS ACTIONS § 7:47 (4th ed. 2011)).

Here, Defendants can make no showing that they have satisfied the "subsequent developments" standard of Rule 23(c)(1)(C). This Court issued its Entry on Plaintiffs' Motion for Class Certification (the "Class Certification Order") on June 29, 2017 (Dkt. 220) and Defendants' Motion was filed two weeks later, on July 12, 2017 (Dkt. 228). There were no developments in the litigation between June 29 and July 12 that could form the basis of a modification of the Class Certification Order under Rule 23(c)(1)(C). Further, while Defendants have noted subsequent procedural developments since the completion of class certification briefing, they have not identified any substantive developments in the facts or law that justify reconsideration,

decertification, or modification of class certification.[1] Accordingly, the true basis for Defendants' Motion is Rule 59(e)—and the extraordinary relief afforded by that Rule is not triggered because the Motion presents nothing more than an attempted relitigation of issues placed squarely before the Court well before it issued the Class Certification Order.

For example, Defendants' overarching theme that the Court failed to employ the "rigorous analysis" standard for class certification, which requires some overlap with the merits of the underlying claim (Dkt. 228 at 5), is a restatement of their invocation of the "rigorous analysis" standard in their original opposition to class certification (Dkt. 160 at 15-16) and of their specific return to that refrain at the May 9, 2017 oral argument of the motion for class certification (Dkt. 202 at 19:14-18). Regarding Defendants' assertion that the Plaintiffs' summary judgment position on their breach of contract claims is a new position that would alter the class certification analysis (Dkt. 228 at 7-9), Defendants are merely repeating both the argument and the exact authorities they put before the Court in their Notice of Additional Authority Regarding Class Certification, filed May 15, 2017 (Dkt. 204 at 1-2). Indeed, Defendants argued at the May 9 oral argument of the class certification motion that the issues raised by the parties in their summary judgment briefing would affect the class certification question. (5/9/2017 Tr. at 16:24-19:1). This Court did not enter its Class Certification Order until three weeks after all summary judgment briefing had been completed and six weeks after Defendants filed their Notice of Additional Authority. Thus, all of the arguments raised by Defendants were already before the Court when it issued its Order. Rule 59(e) is not the proper means by which to relitigate these same issues. The same holds true for Defendants' arguments regarding class certification on the RICO and constructive fraud claims,

---

[1] Even though discovery, as always, has provided more information about the facts of this case, no newly-discovered facts such as those cited by Defendants undermine the Court's analysis of the Rule 23 requirements for class certification.

4

which similarly merely restate arguments they put before the Court before the Class Certification Order. Moreover, Defendants point to no new developments in the law, as the cases they rely on in their Motion all were issued long before the Court's Class Certification Order—and Defendants do not even attempt to show that the Court ignored those cases in considering the class certification motion and entering the Class Certification Order.

Aside from the inaccuracy of Defendants' arguments, which will be addressed below, Defendants' Motion is fatally flawed and must be denied because Defendants have not made (and cannot make) any showing that would satisfy the actual standards that govern the limited availability of relief under Rules 59(e) or 23(c)(1)(C).

## II.  Plaintiffs' Summary Judgment Argument Regarding Interpretation of the Floorplan Agreements Does Not Require Revisiting the Class Certification Ruling.

Defendants' argument that reconsideration is merited as Plaintiffs have changed their theory on breach of contract to rely on facial ambiguity of the floorplan agreements, which will require examination of extrinsic evidence for each class member, fails. Dkt. 228 at 2, 5. As discussed below, this assertion takes Plaintiffs' summary judgment arguments on breach of contract out of context and misstates Plaintiffs' argument as to how any ambiguity should be treated by the Court.

First, one of Plaintiffs' theories of the case—omitted from Defendants' Motion—is that the floorplan agreements unambiguously provide that interest will not accrue until funds are provided to the auction houses from Defendants. In Plaintiffs' opposition to Defendants' motion for summary judgment, they analyze the terms of the floorplan agreements—and particularly the term "outstanding" in the phrase "all outstanding Liabilities"—to show that Defendants' suggested interpretation of the agreements is not commercially reasonable while Plaintiffs' interpretation is the only reasonable interpretation. Dkt. 209 at 11-14. "Ambiguity" can only exist in the traditional

5

sense where there is more than one reasonable interpretation of the contract. *See, e.g., Gen. Cas. of Wisc. v. Diversified Painting Serv., Inc.*, 603 N.E.2d 1389, 1390 (Ind. Ct. App. 1992) ("The fact that the parties disagree as to the interpretation of the contract does not by itself establish an ambiguity; instead, we will find the contract to be ambiguous only if it is susceptible to more than one interpretation and reasonable persons would honestly differ as to its meaning."). Here, Plaintiffs have urged this Court to find as a matter of law that the floorplan agreements can only be reasonably interpreted in the way suggested by Plaintiffs—an argument advanced both in their opposition to Defendants' motion for summary judgment (Dkt. 209 at 14: "As shown above, the contract as a whole provides that interest was to be charged beginning when NextGear made a payment to a third party on the dealer's behalf.") and in their briefing in support of their own motion for summary judgment (Dkt. 211 at 4-8, specifically at 5: "The only reasonable interpretation of § 3 of the Contracts that resolves the absurdity and impossibility suggested by NextGear's interpretation is to read the term 'outstanding' back into the provision to modify 'Liabilities.'").

If the Court agrees with this argument that the only reasonable interpretation of the floorplan agreements is that interpretation suggested by Plaintiffs, then there is no ambiguity as a matter of law. Therefore, Defendants are incorrect to imply that Plaintiffs' theory of the case now relies on a finding of ambiguity. As Plaintiffs observed in their reply in support of their motion for summary judgment, "[b]ecause the only reasonable interpretation of the Contracts is that interest should only accrue on 'outstanding' Liabilities, Defendants' attempt to sidestep the distinction between latent and patent ambiguities is of little moment." Dkt. 211 at 8.[2] Ambiguity is merely an

---

[2] This observation applies equally to Defendants' argument that the "new" theory of ambiguity of the floorplan agreements undermines the Court's reliance on common issues arising from those floorplan agreements for its RICO class certification ruling. Dkt. 228 at 11 n. 6. Defendants

6

alternative theory advanced by Plaintiffs, but Defendants fail to appreciate the distinction here between facial, or "patent," ambiguity, which does not require resort to extrinsic evidence, and the latent ambiguity that arises only from application of the contracts. Plaintiffs' alternative theory is one of facial ambiguity, and therefore Plaintiffs have advanced no theory of the case that would require extrinsic evidence.

As argued in support of Plaintiffs' summary judgment motion, contract terms in form contracts or contracts of adhesion that are facially ambiguous do not require review of extrinsic evidence, but, instead, require construing the contract against the drafter. Dkt. 195 at 16-18 (citing *Walker v. Trailer Transit, Inc.*, 1 F. Supp. 3d 879, 882 (S.D. Ind. 2014); *Craig v. Pepperidge Farm, Inc.*, 2011 WL 1626585, *2 (S.D. Ind. 2011); *Bradshaw v. Chandler*, 916 N.E.2d 163, 166 (Ind. 2009); *Fresh Cut, Inc. v. Fazli*, 650 N.E.2d 1126, 1132 (Ind. 1995)); *see also Victoria v. Superior Court*, 710 P.2d 833, 835 (Cal. 1985) (applying same principle of construing ambiguity in form contract against the drafter under California law: "Finally, ambiguities in standard form contracts are to be construed against the drafter."); *Sandquist v. Lebo Auto., Inc.*, 376 P.3d 506, 514 (Cal. 2016) (same). While Defendants have argued on the merits of that principle that the latent/patent ambiguity distinction has been left behind by Indiana courts, that is a merits issue that will be common to the full class.

Moreover, Defendants are incorrect in their assessment of the lack of vitality of the distinction drawn as to patent or facial ambiguity. The cases relied on by Defendants are not to the contrary. *University of Southern Indiana Foundation v. Baker* is specific to whether courts may

---

misconstrue of Plaintiffs' theory regarding the floorplan agreements; Plaintiffs' theory is consistent that the floorplan agreements provide a common basis for the RICO claim, whether the Court finds those agreements to be unambiguous or resolves any ambiguity against Defendants on the basis of patent or facial ambiguity without resort to extrinsic evidence.

7

look to extrinsic evidence specifically in the trusts context, to determine a settlors' intent. 843 N.E.2d 528, 534-35 (Ind. 2006) (citing RESTATEMENT THIRD OF PROPERTY: WILLS AND OTHER DONATIVE TRANSFERS § 11.1). *City of Kokomo ex rel. Goodnight v. Pogue*, 940 N.E.2d 833 (Ind. Ct. App. 2010), actually held that the contract before it was "clear and unambiguous," so the court had no need to turn to extrinsic evidence. *Id.* at 841. Regardless, Defendants' insistence that the patent/latent ambiguity distinction "is a vestige of the past" does not hold up under a review of recent Indiana decisions, which still employ the distinction where appropriate. *See, e.g.*, *Sauter v. Perfect N. Slopes, Inc.*, 993 F. Supp. 2d 926, 933-34 (S.D. Ind. 2014); *In re Estate of Rupley*, 12 N.E.3d 900, 903-04 (Ind. App. 2014) (Riley, J., concurring in part); *Weinreb v. Fannie Mae*, 993 N.E.2d 223, 232 (Ind. App. 2013); *see also Sandquist*, 376 P.3d at 514 (same principle under California law).

    The distinction merely frames the analysis that, if an ambiguity in a contract arises on the face of the contract and not from its application, then the interpretation of that contract must be confined to the terms that are on the face of the contract—i.e., extrinsic evidence may only be relied on to resolve an extrinsically manifested ambiguity in the application of the contract. Plaintiffs' theory of the case can be resolved on a finding of no ambiguity, but even Plaintiffs' alternative theory of the case regarding facial ambiguity argues that the ambiguity is confined to the terms of the contract, the contract was a "take-it-or-leave-it" form contract drafted by Defendants, and it therefore requires no resort to extrinsic evidence but instead can be resolved against Defendants as a matter of law.

    This dispute as to the interpretation of the contract—whether framed as a dispute between competing arguments that the contract is unambiguously in favor of Plaintiffs or Defendants, or framed as a dispute involving facial ambiguity—is one that involves a common question as to all

class members. Moreover—and most importantly for purposes of disposing of Defendants' current Motion—this dispute was fully briefed and before this Court well before issuance of the Class Certification Order, and is therefore not susceptible to relief under Rule 59(e). As no relevant further developments in the litigation have transpired since the June 29 certification of the class, neither is relief appropriate under Rule 23(c)(1)(C).

### III. The Court Correctly Rejected Defendants' Argument That Plaintiffs' RICO Claims Preclude Class Certification, and It Should Not Reconsider That Holding.

Like Defendants' argument for reconsideration of class certification on breach of contract, their argument for reconsideration on certification of the RICO claim also fails. Defendants previously urged this Court not to grant class certification because Plaintiffs' RICO claims did not raise common questions of law and fact, Dkt. 160 at 22-24, any common questions did not predominate over individual questions, *id.* at 27, and the claims were not typical, *id.* at 26. *See also* Dkt. 202 at 15-16, 19. Defendants now re-argue those points, asserting that Plaintiffs' RICO claims necessarily involve individualized questions of concealment and certification will prevent Defendants from raising certain defenses. However, the Court fully considered all of these arguments and correctly rejected them. *See* Dkt. 220 at 16-19, 23, 33-34, 38-39. Defendants make no showing of manifest error in rejecting these arguments initially and provides no new evidence or intervening change in the law to support a different result now. Therefore, the Court should deny the Motion pursuant to Rule 59. The Motion also presents no developments meriting reconsideration under Rule 23(c)(1)(C).

Defendants' arguments concerning certification of the RICO claims should again be rejected. Defendants wrongly analogize Plaintiffs' RICO claims to their constructive fraud claims and argue that the Court should refuse to certify the RICO claims as well as the fraud claims because both sets of claims allegedly require proof of specific communications to each dealer,

9

reliance, and each dealer's knowledge of the interest charged. *See* Dkt. 228. at 11. Defendants' comparison of the RICO claims to their constructive fraud claims is incorrect.

As this Court previously recognized, to "state a claim under § 1962(c), a RICO plaintiff must show the '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 472 (7th Cir. 2007) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 474 U.S. 479, 496 (1985)); *see also DeGuelle v. Camilli*, 664 F.3d 192, 199 (7th Cir. 2011); Dkt. 220 at 38. Plaintiffs have pleaded and demonstrated that common factual and legal questions regarding these elements of their RICO claims predominate and justify class certification. In particular, Plaintiffs properly pleaded a "pattern of racketeering" by alleging specific facts showing that Defendants improperly engaged in a common scheme to charge Plaintiffs interest and fees on funds not actually lent through standard form floorplan agreements and receivable detail reports and by electronically debiting their accounts. *See* Dkt. 117, ¶¶ 100-112. The Court correctly held that Plaintiffs' RICO claims presented factual and legal questions that were common to the entire class and predominated as "Plaintiffs have demonstrated that the putative class has suffered the same alleged wrongful, premature collection of interest and fees based on the same form contract and similar conduct by NextGear. [¶] . . . [T]he central common questions—whether the floorplan agreement allowed NextGear to charge interest and fees on money not yet actually loaned—will produce an answer that can lead to resolution of the claim for the class 'in one stroke.'" Dkt. 220 at 18; *see also id.* at 38.

Contrary to Defendants' suggestion, the elements of a RICO claim do not require proof of "concealment," let alone that Defendants concealed their scheme through oral statements or misrepresentations. *See* Dkt. 228 at 9-11. Even to the extent Plaintiffs have alleged that Defendants concealed this common scheme from them, however, the concealment issue is common to the class

10

because Defendants concealed their wrongful conduct class-wide through form documents. *See* Dkt. 220 at 18-19; *see also* Dkt. 154 at 6; Dkt. 165 at 14-15; Dkt. 209 at 4-5. As the Court observed in certifying the class, Defendants' form receivable detail reports allegedly concealed "information regarding when funds were actually paid on [Plaintiffs'] behalf," which was a part of Defendants' fraudulent scheme. Dkt. 220 at 38.[3]

RICO similarly does not require proof of reliance, as Defendants wrongly suggest, and, therefore, any individualized issues concerning reliance do not preclude certification. *See* Dkt. 228 at 11. Defendants' argument ignores the Supreme Court's holding in *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 661 (2008), that a RICO plaintiff need not prove that it relied upon the defendant's alleged misrepresentations as an element of a claim predicated on mail or wire fraud or as proof of causation. In affirming the Seventh Circuit's holding, *Bridge* adopted the longstanding rule in this Circuit. *See, e.g.*, *Ruiz v. Stewart Assocs., Inc.*, 171 F.R.D. 238, 240-41 (E.D. Ill. 1997) (holding detrimental reliance was not element of mail fraud action and certifying class for RICO claims); *Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 164 F.R.D. 659, 666 (N.D. Ill. 1996) (holding individual issues of reliance did not preclude certification of

---

[3] *See also, e.g.,* Dkt. 209 at 4-6 (discussing evidence on this issue). Defendants incorrectly assume that "a 'concealment' theory inevitably raises the question of what was communicated orally or in extra-contractual writings and what knowledge each dealer possessed about how interest was charged." Dkt. 228 at 10-11. Although Defendants may seek to avoid paying damages to individual Plaintiffs based upon such a defense, the defense itself does not prevent class certification. As this Court held in granting certification, Plaintiffs premise their RICO claims on a common scheme involving the use of the same form documents. *See* Dkt. 220 at 17, 19, 38. Defendants ignore this holding in arguing that "the Court has acknowledged that a RICO claim founded on oral communications 'would create individual issues and questions.'" Dkt. 228 at 10. After acknowledging that possibility, the Court expressly found that "the Plaintiffs' RICO claim is focused on, one, the written floorplan agreement that contains the same provisions and, two, the Defendants' concealment of the same information from all the putative class members." Dkt. 220 at 38.

11

class because reliance was not element of RICO). Accordingly, the Court need not and should not reconsider its Class Certification Order based upon any individualized issues concerning reliance.

In addition, Defendants' claim that certification of the RICO class will prevent them from presenting one of their principal defenses is wrong and does not justify reconsideration. Defendants premise their argument on a misconstruction of *Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015). *Mullins* does not support Defendants' contention that "certification will deny Defendants a fair opportunity to present their defenses to Plaintiffs' RICO claim." Dkt. 228 at 10. The *Mullins* Court considered whether to adopt a heightened ascertainability requirement that would have required class action plaintiffs to "show a reliable and administratively feasible way to determine whether a particular person is a member of the class."[4] 795 F.3d at 661. The Court acknowledged that some courts had adopted such a requirement based upon due process concerns, *id.* at 669-70, but nevertheless rejected the defendant's argument that permitting putative class members to demonstrate their membership in the class through self-identifying affidavits would deny the defendant's "due process right to challenge the plaintiffs' evidence at any stage of the case, including the claims or damages stage." *Id.* at 669.

*Mullins* concluded, instead, that district courts had various means of protecting the rights of class action defendants, such as Defendants here, that obviated the need to impose unreasonable and unnecessary procedural impediments to class certification. "As long as the defendant is given the opportunity to challenge each class member's claim to recovery during the damages phase, the defendant's due process rights are protected." *Id.* at 770. In reaching this holding, the Seventh Circuit cited, with approval, the holding in *Johnson v. General Mills, Inc.*, 276 F.R.D. 519, 524

---

[4] In its Class Certification Order, this Court properly applied the *Mullins* Court's holding in holding that Plaintiffs' class definition satisfied the ascertainability requirements. Dkt. 220 at 10.

(C.D. Cal. 2011), that "'[i]f Mr. Johnson establishes liability for the class, Defendants may challenge reliance and causation individually during a determination of damages, after the issues that are common have been litigated and resolved.'" *Mullins*, 795 F.3d at 770; *accord Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1131-32 (9th Cir. 2017); *Mitchell v. LVNV Funding, LLC*, 2:12-CV-523-TLS, 2016 WL 299044, *2 (N.D. Ind. Jan 25, 2006). Indeed, in the sentence following those cited by Defendants from *Mullins* in their Motion, Dkt. 228 at 10, the Seventh Circuit opined that a "district court can tailor fair verification procedures to the particular case, and a defendant may need to decide how much it wants to invest in litigating individual claims." *Mullins*, 795 F.3d at 670.

This analysis from *Mullins* applies to, and disposes of, Defendants' argument for reconsideration of the Class Certification Order. Defendants, not the class members, control the discovery and production of what information Defendants supposedly conveyed to the dealers about how and when they would charge interest.[5] Class certification does not prevent Defendants from asserting their defense of non-concealment or producing that evidence, to the extent it exists, to prove that any particular member of the class is not entitled to recover damages. As the Seventh Circuit held in *Mullins*, any such individualized defense can be presented as a part of the damages phase of the trial and it is up to Defendants to decide how much to litigate individual claims.

The Second Circuit's holding in *Moore v. PaineWebber, Inc.*, 306 F.3d 1247 (2d Cir. 2002), cited by Defendants, is, likewise, distinguishable and does not support reconsideration. *See* Dkt. 228 at 11. In *Moore*, the plaintiffs based their RICO (and fraud) claims on oral misrepresentations

---

[5] Defendants assert that "discovery from the named Plaintiffs revealed that NextGear told two of them that it sometimes charged interest before funding was transferred to the auctions" and supports their contention that they will need discovery from all of the Plaintiffs. Dkt. 228 at 11. Plaintiffs dispute this assertion and have previously refuted it. *See* Dkt. 209 at 4-6, 23-24.

13

allegedly made by the defendant's brokers in selling an insurance product. *Moore*, 306 F.3d at 1249. The Second Circuit affirmed the district court's denial of class certification because the plaintiffs had failed to establish that the oral misrepresentations at issue were uniform. *Id.* at 1255-56. Nevertheless, the *Moore* Court acknowledged that: "Fraud actions must therefore be separated into two categories: fraud claims based on uniform misrepresentations made to all members of the class and fraud claims based on individualized misrepresentations. The former are appropriate subjects for class certification because the standardized misrepresentations may be established by generalized proof." *Id.* at 1253; *see also id.* at 1256. Unlike in *Moore*, and as this Court has already found, Plaintiffs base their claims on Defendants' materially uniform written misrepresentations in form documents, and thus common issues concerning Plaintiffs' RICO claims predominate over any individualized issues.[6] *See* Dkt. 220 at 38. The Court did not err in certifying the class over Defendants' objection that the RICO claims preclude certification, and it should deny this Motion, which simply repeats that argument.

IV. **The Court Correctly Rejected Defendants' Argument That Their Statute of Limitations Defense Precludes Class Certification, and It Should Not Reconsider That Holding.**

Lastly, the Court properly rejected Defendants' argument that their statute of limitations defense will require consideration of the fraudulent concealment doctrine or the discovery rule and, consequently, whether Plaintiffs reasonably relied on their misrepresentations. *Compare* Dkts. 160 at 23 *and* 202 at 19, 21 *with* Dkt. 220 at 32, 34. The Motion does not provide any valid legal or

---

[6] *Moore* also predates the Supreme Court's holding in *Bridge* and, thus, wrongly suggests that reliance is an element of a RICO claim. *See Spencer v. Hartford Fin. Servs. Group, Inc.*, 256 F.R.D. 284 (D. Conn. 2009) ("[A]fter *Bridge*, the *Moore* and *McLaughlin* decisions are no longer good law on the question whether a plaintiff must show that he or she was personally a recipient of a material misrepresentation.").

14

factual basis for reconsidering the Class Certification Order pursuant to Rule 59 or Rule 23(c)(1)(C) on those grounds and should be denied.

Moreover, both legal commentators and courts have observed that statute of limitations defenses rarely provide a proper basis for denying class certification:

> Statute of limitations defenses—like damage calculations, affirmative defenses, and counterclaims—*rarely defeat class certification*. In most cases, statutes of limitations can be applied to the class as a whole or to large groups of class members; this makes the issue a common, not individualized, one and supports a finding that common issues predominate. Moreover, class counsel will often define the class as those with live claims (*e.g.* buyers of a specific product within a specified time period), thereby precluding statute of limitations defenses from even arising. Finally, *if statute of limitations issues are somewhat individualized, courts deem that these concerns can be resolved during the damage phase of the case and need not preclude certification of liability issues*.
>
> In short, most courts reject the contention that statute of limitations defenses, on their face, preclude a finding of predominance and instead demand evidence that such defenses will in fact devolve into individualized hearings in the particular case. Such individualizing evidence may arise occasionally, but such cases are the exception, not the rule.

NEWBERG ON CLASS ACTIONS ¶ 4:57 (5th ed.) (citing cases) (footnotes omitted) (emphasis added).

In *In re Linerboard Antitrust Litigation Winoff Industries, Inc.*, 305 F.3d 145 (3d Cir. 2002), the Third Circuit considered and rejected a similar argument. Defendants maintained that the applicable statute of limitations barred plaintiffs' antitrust claims and that common issues of proof did not predominate with respect to plaintiffs' argument that the limitations period was tolled under the doctrine of fraudulent concealment. *Id.* at 160-61. The Court held that the fraudulent concealment issue did not preclude class certification: "To be sure, certain determinations involving the fraudulent concealment defense to the statute of limitations will require individualized proof, which might vary among the assorted Appellees. However, most courts have refused to deny class certification simply because there will be some individual questions raised during the proceedings." *Id.* at 162. *See also In re FedEx Ground Package Sys., Inc. Employment*

*Practices Litig.*, 662 F.R.D. 1069, 1094 (N.D. Ind. 2009) ("courts have rejected a per se rule that the presence of such [statute-of-limitations] issues compels a finding that individual issues predominate"); *In re FedEx Ground Package Sys., Inc. Employment Practices Litig.*, No. 3:05-MD-527 RM (MDL-1700), 2007 WL 3027405, *26 (N.D. Ind. Oct. 15, 2007) (same); *accord Bowen v. Groome*, No. 11-139-GPM, 2012 WL 2064702, *5 (S.D. Ill. June 7, 2012) (same).

The *Linerboard* Court observed further that issues of fraudulent concealment predominated because, as in this case, the inquiry would focus on defendants' actions, not plaintiffs' action:

> Notwithstanding the individual determinations that will undoubtedly arise at trial, common issues of concealment predominate here because "the inquiry necessarily focuses on defendants' conduct, that is, what defendants did rather than what plaintiffs did." . . . It is the fact of *concealment* that is the polestar in an analysis of fraudulent concealment. It is the camouflage that demands attention, the cover up, the acts of obscuring or masking. These allegations of proof are all common to the defendants, not the plaintiffs. It is not the conspiracy of the defendant that is relevant on the issue of tolling the statute of limitations, it is the act of concealing the conspiracy.

305 F.3d at 163 (quoting *In re Flat Glass Antitrust Litig.,* 191 F.R.D. 472, 488 (W.D.Pa.1999)). As a result, the Second Circuit followed the lead of many other courts in deferring any individual questions concerning fraudulent concealment to the later damages phase. *Id.* (citing NEWBERG ON CLASS ACTIONS and cases); *see also In re FedEx Ground Package Sys., Inc. Employment Practices Litig.*, 662 F.R.D. at 1094 (holding that the statute of limitations "defense can likely be resolved by categorical determinations at the damages stage"). Defendants' statute of limitations defense similarly does not preclude a finding of predominance. This Court should deny the Motion to reconsider class certification on these grounds and reject Defendants' alternative request to narrow the class definition because of its statute of limitations defense.

**V.     Conclusion.**

For these reasons, Defendants' Motion should be denied in its entirety.

Respectfully submitted,

 /s/ Kerry A. Murphy
CATHERINE E. LASKY (La. Bar No. 28652)
*Pro Hac Vice*
KERRY A. MURPHY (La. Bar No. 31382)
*Pro Hac Vice*
**LASKY MURPHY LLC**
715 Girod Street, Suite 250
New Orleans, Louisiana 70130
Telephone: (504) 603-1500
Facsimile: (504) 603-1503
klasky@laskymurphy.com
kmurphy@laskymurphy.com

GLADSTONE N. JONES, III (La. Bar No. 22221) *Pro Hac Vice*
LYNN E. SWANSON (La. Bar No. 22650)
*Pro Hac Vice*
**JONES, SWANSON, HUDDELL & GARRISON, L.L.C**.
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
Telephone: (504) 523-2500
Facsimile: (504) 523-2508
gjones@jonesswanson.com
lswanson@jonesswanson.com

CASSIE E. FELDER (La. Bar No. 27805)
*Pro Hac Vice*
**THE CASSIE FELDER LAW FIRM**
7515 Jefferson Hwy., #313
Baton Rouge, LA 70806
Main: (504) 232-1733
Cell: (504) 400-1127
cassie@cassiefelderlaw.com

JAMES M. GARNER (La. Bar No. 19589)
*Pro Hac Vice*
RYAN D. ADAMS (La. Bar No. 27931)
*Pro Hac Vice*
MATTHEW M. COMAN
(La. Bar No. 23613)
*Pro Hac Vice*
**SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C.**
909 Poydras Street, Suite 2800
New Orleans, Louisiana 70112
Telephone: (504) 299-2100
Facsimile: (504) 299-2300
jgarner@shergarner.com
radams@shergarner.com
mcoman@shergarner.com

Kathleen A. DeLaney (# 18604-49)
**DELANEY & DELANEY LLC**
3646 North Washington Blvd.
Indianapolis, IN 46205
Telephone: (317) 920-0400
Facsimile: (317) 920-0404
Kathleen@delaneylaw.net

**COUNSEL FOR PLAINTIFFS AND THE CLASS**

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 26th day of July 2017, a copy of the foregoing was filed electronically. Notice of the filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

David J. Jurkiewicz
Paul D. Vink
BOSE MCKINNEY & EVANS, LLP
111 Monument Circle
Suite 2700
Indianapolis, IN 46204

Jason S. McCarter
Tracey K. Ledbetter
EVERSHEDS SUTHERLAND (US) LLP
999 Peachtree Street, NE, Suite 2300
Atlanta, GA 30309-3996

                /s/ Kerry A. Murphy
                  Kerry A. Murphy