IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RED BARN MOTORS, INC., PLATINUM MOTORS, INC., and MATTINGLY AUTO SALES, INC., individually and on behalf of other members of the general public similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> COX AUTOMOTIVE, INC., NEXTGEAR CAPITAL, INC. F/K/A DEALER SERVICES CORPORATION, successor by merger with Manheim Automotive Financial Services, Inc., and JOHN WICK, <br><br> Defendants. | Case No. 1:14-cv-01589-TWP-DML |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO RECONSIDER
AND/OR MODIFY CLASS CERTIFICATION ORDER**

Plaintiffs devote most of the ink in their response brief to the contention that there is no suitable procedural vehicle for reconsideration of the Certification Order and that the Court already addressed Defendants' arguments. However, Plaintiffs ignore entirely that the Certification Order was expressly based on the Amended Complaint and six-month-old class briefing; it did not analyze the more recent developments in the case, including Defendants' answer and the summary judgment record and arguments. Indeed, the Court expressly re-used the factual summary from its motion to dismiss Order, which was based on nothing more than the allegations in the Amended Complaint—many of which have been proven wrong as the case progressed.

In particular, the Certification Order does not analyze Plaintiffs' recent theory that the contract on which they are suing is ambiguous, or the evidence indicating that two of the three

named Plaintiffs testified NextGear told them about the practice at issue, negating any evidence of concealment for RICO purposes. Plaintiffs concede those issues and evidence were in the record by the time the Court ruled on certification, and they spend most of their brief substantively rearguing them. But there is no escaping their absence from the Certification Order. Whether under Rule 59(e) or Rule 23(c)(1)(C), the Court should consider these fundamental developments arising after certification briefing was completed and modify its class certification order accordingly.

## ARGUMENT AND AUTHORITY

**I.    The Court's Continuing Duty to Perform a "Rigorous Analysis" Requires It to Analyze Issues Raised After Class Certification Briefing Closed.**

Plaintiffs seek to sidestep the Court's unflagging obligation to amend its Certification Order to comport with the record by insisting Defendants are in a procedural abyss. Plaintiffs contend that Rule 59(e) cannot be invoked to correct the Court's error because it is not a vehicle to rehash previous arguments, but instead requires some new evidence or manifest error. (Opp'n [Doc. 232] at 1-2.) Plaintiffs also argue that Rule 23(c)(1)(C) is equally improper because there were no material developments affecting the certification in the two weeks between the Certification Order and request for reconsideration. (*Id.* at 3-4.) Thus, Plaintiffs insist there is no procedural mechanism by which the Court can correct the recent Certification Order.

First, Plaintiffs overlook that the standard for a motion for reconsideration is relaxed in the class certification context because of the significant stakes involved in that decision, which is "often the most significant decision rendered in these class-action proceedings." *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980); *see also, e.g.*, *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 651-52 (C.D. Cal. 2000) ("usual reluctance to entertain motions for reconsideration simply does not apply in the class certification context"); *DL v. District of Columbia*, 312 F.R.D. 1, 6

(D.D.C. 2015) (same); *Lightfoot v. District of Columbia*, 273 F.R.D. 314, 324 (D.D.C. 2011) ("given the district court's special procedural role in supervising the maintenance of a class action, the 'usual reluctance to entertain motions for reconsideration simply does not apply'"). Certification orders are "inherently tentative," and, as such, the district court "remains free to modify [such orders] in the light of subsequent developments in the litigation." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).

Second, Plaintiffs' myopic focus on procedure misses the central point of the Motion for Reconsideration—that the Court did not perform a rigorous analysis of the complete record (including critical evidence on summary judgment) when deciding the certification issue. While Plaintiffs accuse the Defendants of merely seeking to relitigate issues previously raised, they do not (and cannot) point to any evidence in the Certification Order that the Court actually considered (1) Plaintiffs' new ambiguity argument on summary judgment, or (2) that two of the three Plaintiffs admitted to knowledge about how NextGear calculated interest and continue to borrow. As Plaintiffs concede by their argument, these issues were properly raised and before the Court (Opp'n [Doc. 232] at 1, 4), but they are not addressed in the Certification Order.

The whole point of a Rule 23(b)(3) analysis is to ensure that a case can be tried on a class basis; therefore, if the Court did not consider evidence obtained and theories articulated after class certification briefing was completed that will affect whether the class should be certified, it should do so now.

> Rule 23(b)(3)'s command that class questions predominate over individual questions may lead to decertification if, as the case develops, the evidence fails to support the predominance of common issues. Courts may also decertify initially certified classes if plaintiffs' proposed trial methodology proves unworkable and class adjudication is therefore no longer a superior method of adjudication.

*Newberg on Class Actions* § 7:38 (5th ed.).  Plaintiffs cannot eliminate the Court's continuing duty to evaluate whether a class was properly certified by claiming no rule of procedure allows it.  Rule 23(c)(1)(C) plainly does.

## II.     Plaintiffs' Ambiguity Theory Requires Individualized Extrinsic Evidence at Trial.

Plaintiffs' theory on summary judgment that the floor plan agreements are ambiguous is fatal to class certification.  Any "rigorous analysis" of class certification questions requires detailed consideration of that theory, but the Certification Order does not address it.  Such consideration demonstrates that the certified class is simply untenable and should be decertified or modified.

### A.     Although Plaintiffs Now Attempt to Backtrack, Their Theory of the Case Is Contractual Ambiguity.

Plaintiffs have vacillated back-and-forth over the last year with respect to interpretation of the floor plan agreement.  In certification briefing, Plaintiffs carefully avoided developing their ambiguity argument, undoubtedly aware that doing so would create individualized issues dependent on extrinsic evidence to resolve.  However, on summary judgment—when faced with Defendants' consistent argument that the floor plan agreements were unambiguous and allowed interest to be charged from the date of auction—Plaintiffs quickly pivoted and argued that the contracts were ambiguous.  Now, once again in the context of class certification, Plaintiffs retreat and seek to downplay their ambiguity position because doing so is expedient for the current issue before the Court.

Plaintiffs represent that "Defendants are incorrect to imply that Plaintiffs' theory of the case now relies on a finding of ambiguity."  (Opp'n [Doc. 232] at 6.)  But Plaintiffs sounded a very different tune in their summary judgment briefing.  There, they clearly stated that "the contract is ambiguous on its face" and that "The Plaintiffs' Contract with NextGear Was a Form

4

Contract and Was Ambiguous on the Issue of Whether Interest Could Be Charged Prior to an Advance by NextGear."  (Pls.' MPSJ [Doc. 194] at 2; Pls.' MPSJ Br. [Doc. 195] at 11; *see also, e.g.*, Pls.' MPSJ Br. [Doc. 195] at 12 ("That form NextGear contract . . . is ambiguous on the issue of when NextGear could begin charging interest"), 15 ("Because Plaintiffs' contract uses undefined terms within its definition of Liabilities and lacked any language specifically allowing NextGear to charge interest before making an advance, the contract Plaintiffs signed was ambiguous on its face as to the issue of when interest could be charged.").)

After seeking to distance themselves from their ambiguity theory loudly proclaimed on summary judgment, Plaintiffs ultimately double down in their response brief and acknowledge their position that the floor plan agreements are ambiguous.  (Opp'n [Doc. 232] at 6-7.)  Thus, absent summary judgment in Defendants' favor on the plain language of the floor plan agreements, ambiguity will remain an issue for trial.

        B.      <u>Ambiguity Here Can Only Be Resolved by Resorting to Extrinsic Evidence.</u>

Plaintiffs have not rebutted—and cannot rebut—the clear federal authority that the need for extrinsic evidence to resolve a contractual ambiguity precludes certification of a class on that claim.  *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1030 (8th Cir. 2010); *Adams v. Kansas City Life Ins. Co.*, 192 F.R.D. 274, 282 (W.D. Mo. 2000).  That authority is dispositive of the current motion, and Plaintiffs do not even address it in their response.

Instead, Plaintiffs continue to misstate Indiana and California law on the distinction between latent and patent ambiguities, and try to cast their theory here as the latter.  But the distinction they rely on is not the law, and even if it were, the ambiguity would be latent, still requiring extrinsic evidence to resolve.

As explained in NextGear's response to Plaintiffs' summary judgment brief, Indiana courts have abolished the patent/latent ambiguity distinction. (Opp'n to MPSJ Br. [Doc. 207] at

5

12-16 (citing cases).) On this point the Indiana Supreme Court has clearly spoken: "[T]he latent/patent distinction has not been consistently applied and no longer serves any useful purpose. . . . [W]here an instrument is ambiguous, *all relevant extrinsic evidence may properly be considered in resolving the ambiguity.*" *Univ. of S. Ind. Found. v. Baker*, 843 N.E.2d 528, 535 (Ind. 2006) (emphasis added). While Plaintiffs seek to limit *Baker* to "the trusts context" (Opp'n [Doc. 232] at 7-8), Indiana appellate courts have repeatedly rejected that distinction and applied the rule announced in *Baker* in "plain vanilla" contract cases as well. *See, e.g.*, *Kelly v. Kelly*, 45 N.E.3d 31, 38 (Ind. Ct. App. 2015) (stating that "[i]n 2006, the Indiana Supreme Court abrogated the patent/latent ambiguity rule" in context of construing settlement agreement); *Tender Loving Care Mgmt., Inc. v. Sherls*, 14 N.E.3d 67, 72 n.1 (Ind. Ct. App. 2014) (nursing home admission agreement). Plaintiffs cannot cite to any Indiana Supreme Court opinion that reverses or limits *Baker*.[1]

      Plaintiffs contend that the patent/latent ambiguity distinction makes sense because "if an ambiguity in a contract arises on the face of the contract and not from its application, then the interpretation of that contract must be confined to the terms that are on the face of the contract." (Opp'n [Doc. 232] at 8.) Plaintiffs do not explain why the intent of the parties—a cornerstone of ambiguous contract construction—is no longer important merely because the contract is unclear on its face. Indeed, dozens—perhaps hundreds—of Indiana decisions recite the well-known standard that courts look to the intent of the parties when construing an ambiguous contract, without the distinction claimed by Plaintiffs. *See, e.g.*, *Citimortgage, Inc. v. Barabas*, 975 N.E.2d 805, 813 (Ind. 2012) ("If we find ambiguous terms or provisions in the contract, 'we will

---

[1] In California, too, extrinsic evidence may be introduced if there is a patent ambiguity. *Watts v. Crocker-Citizens Nat'l Bank*, 132 Cal. App. 3d 516, 522, 183 Cal. Rptr. 304, 307 (1982) ("Further, given the [patent] ambiguity, the trial court should have considered the extrinsic evidence.").

construe them to determine and give effect to the intent of the parties at the time they entered into the contract.'"); *In re Kemper Ins. Cos.*, 819 N.E.2d 485, 490 (Ind. Ct. App. 2004) ("If the terms of the contract are unclear, ambiguous, or capable of more than one interpretation, we will construe them to determine and give effect to the intent of the parties at the time they entered into the contract."). Ascertaining the intent of the parties is an inherently individualized task that will vary from dealer to dealer.

In any event, any ambiguity here is plainly latent and so requires evaluation of extrinsic evidence. A latent ambiguity "arises not upon the face of the instrument by virtue of the words used, but emerges in attempting to apply those words in the manner directed in the instrument." *Hauck v. Second Nat'l Bank of Richmond*, 286 N.E.2d 852, 862 (Ind. Ct. App. 1972). In other words, latent ambiguities are uncovered during the implementation of the contract, if the terms of the contract apply to the situation in an ambiguous way. *See Adams v. Reinaker*, 808 N.E.2d 192, 196 (Ind. Ct. App. 2004). Here, the terms of the contract are perfectly straightforward: the dealer agrees to pay interest on a Liability, which includes an Advance. The dealer receives an Advance and begins to pay interest when NextGear pays funds *or* makes a loan (*i.e.*, incurs an obligation) on its behalf.

It is only when the parties apply the floor plan agreement to directly-financed auction purchases with delayed settlement behind the scenes between NextGear and the auction—a factual scenario not specifically addressed anywhere in the Note—that the alleged ambiguity occurs. In that particular real-world context, Plaintiffs allege confusion about whether interest accrues upon payment of funds, as Plaintiffs now claim, or upon the incurring of an obligation, as Defendants maintain. Thus, the ambiguity only emerges (if at all) in attempting to apply the broad general words of the contract to the particular circumstances of directly-financed auction

purchases. As such, if Defendants' motion for summary judgment is not granted, any ambiguity is latent and requires recourse to extrinsic evidence.

Plaintiffs' reliance on the principle of construction against the drafter is also misplaced. That rule of construction is one of last resort that only applies when all other rules of construction fail. *Bishop v. Sanders*, 624 N.E.2d 64, 67-68 (Ind. Ct. App. 1993). Moreover, the Court should not blindly construe the floor plan agreements against NextGear without considering critical evidence such as the intent of the parties. *Entm't USA, Inc. v. Moorehead Commc'ns, Inc.*, 93 F. Supp. 3d 915, 930 n.8 (N.D. Ind. 2015) (questioning "premise that the rule of construing ambiguities against the drafter gives [court] a license to bypass relevant, extrinsic evidence in favor of declaring judgment for the non-drafter"); *Steller v. Sears, Roebuck & Co.*, 189 Cal. App. 4th 175, 183, 116 Cal. Rptr. 3d 824, 831 (2010) (rule that ambiguous contracts should be interpreted against drafter "'is to be used only when there is no extrinsic evidence available to aid in the interpretation of the contract or where the uncertainty cannot be remedied by other rules of interpretation'"). If it finds the floor plan agreements to be ambiguous, this Court is obligated to adhere to the Indiana Supreme Court's instruction to apply "all relevant extrinsic evidence" to resolve the ambiguity. *Baker*, 843 N.E.2d at 535. (*Cf.* Opp'n to MPSJ Br. [Doc. 207] at 13-14.) As discussed further below, two of the named Plaintiffs were expressly aware that they were charged interest before NextGear funded a loan, yet they continued to borrow, belying any intent on their part to the contrary, and the record is clear that NextGear's intent was consistent with its practice. (4/26/2017 Declaration of Adam Galema [Doc. 197-24] ¶¶ 9-12; *see also* Defs.' MSJ Br. [Doc. 193] at 8-9, 11, 24.)

Thus, to the extent the Court looks beyond the plain language of the Note, which expressly allows interest to be charged from the date of auction under the broad definitions of

8

Liabilities and Advance,[2] any trial of Plaintiffs' ambiguity theory will require dealer-by-dealer extrinsic evidence of intent, course of dealing, and knowledge/ratification by the particular dealer.  The need for such evidence means that common issues do not predominate, class trial is no longer a superior method of adjudication, and the class should be decertified.  Federal case law, including *Avritt* and *Adams*, compels that result.

      C.      <u>Plaintiffs' Theory of Ambiguity Also Demonstrates the Absurdity of Their RICO Claim.</u>

Plaintiffs insist—and indeed, argue they are entitled to judgment as a matter of law because—the NextGear floor plan agreement is ambiguous.  (*See generally* Pls.' MPSJ [Doc. 194]; Pls.' MPSJ Br. [Doc. 195].)  As they now acknowledge, "'[a]mbiguity' can only exist in the traditional sense where there is more than one reasonable interpretation of the contract." (Opp'n [Doc. 232] at 5-6 (citing *Gen. Cas. of Wisc. v. Diversified Painting Serv., Inc.*, 603 N.E.2d 1389, 1390 (Ind. Ct. App. 1992) ("we will find the contract to be ambiguous only if it is susceptible to more than one interpretation and reasonable persons would honestly differ as to its meaning").)  In other words, the *central thesis* of Plaintiffs' request for summary judgment was that reasonable persons could disagree over the meaning of the floor plan agreements.

Notwithstanding that they have represented to the Court that the floor plan agreements have two reasonable interpretations (*compare* Pls.' MPSJ Br. [Doc. 195] at 11-16, *with* Opp'n [Doc. 232] at 5-6), Plaintiffs assert that those agreements directly give rise to their claims of misrepresentation and a scheme to defraud.  (Certification Order [Doc. 220] at 38.)  But it is simply absurd that any RICO scheme or fraud claim could be based on NextGear following and acting consistently under a reasonable interpretation of its contract.  *See Perlman v. Zell*, 185

---

[2] As noted in Defendants' summary judgment briefs, Section 4(k) of the Notes, regarding the "definitive" "binding" effect of the dealers' regular account statements, also allows the Court to read the Notes as NextGear does.  (Defs.' MSJ Br. [Doc. 193] at 21; Opp'n to MPSJ Br. [Doc. 207] at 20-22, 13-14.)

F.3d 850, 852 (7th Cir. 1999) ("When the substance of the promise is fairly debatable . . . , and many promises are kept for extended periods before a dispute breaks out, it is hard to see how it could be said that the defendants never intended to keep their bargains."). Thus, Plaintiffs' concession that the contract could reasonably be read Defendants' way precludes any scheme based on that document, even if the Court were ultimately to find that Defendants' reading is incorrect. *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, No. 92 C 2808, 1993 WL 8340, at *4 (N.D. Ill. Jan. 8, 1993) (mere breach of contract is not scheme to defraud under RICO), *aff'd*, 20 F.3d 771 (7th Cir. 1994). *Cf. Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 227 (7th Cir. 1997) (describing "prototypical RICO case" as one involving criminal seizing control over legitimate company).

Any other basis for finding a RICO scheme—for example, NextGear expressly stating outside the contract that it would calculate interest differently than it did—would be inherently individualized and require plaintiff-specific evidence. (*Cf.* Certification Order [Doc. 220] at 38 ("oral misrepresentations would create individual issues and questions").) (There is also no evidence in the record of any such misleading extra-contractual communications.) The need for that type of individualized evidence precludes certification of any RICO class. Defendants have moved for summary judgment on the RICO claim on that and other grounds, but the weight of those arguments precludes class certification as well. Plaintiffs' RICO theory should not be allowed to proceed on a class basis given Plaintiffs' claim that the floor plan agreements are susceptible to differing interpretations regarding interest.

### III. A Scheme of Concealment Is a Required Element of Plaintiffs' Liability Claim and Requires Individualized Evidence.

Although the Court has properly recognized that concealment is a core component of Plaintiffs' RICO theory, the Certification Order does not analyze the summary judgment

evidence on this issue or acknowledge the individualized manner in which Defendants must defend themselves from the concealment theory in this case. The Certification Order repeatedly notes that Plaintiffs' RICO claim is based on concealment. (*E.g.*, Certification Order [Doc. 220] at 19, 38.) And that is necessarily correct: a RICO scheme cannot arise from a mere breach of contract, but requires some evidence of a misrepresentation (or concealment) and intent to defraud. *Carr v. Tillery*, 591 F.3d 909, 918 (7th Cir. 2010); *Bell Enters. Venture v. Santanna Nat. Gas Corp.*, No. 01 C 2212, 2003 WL 1338453, at *2 (N.D. Ill. Mar. 12, 2003). But the Certification Order takes no notice of the fact that trial on the issue of concealment requires an individualized showing.

"A defendant has a due process right to challenge the plaintiffs' evidence at *any stage of the case*, including the claims or damages stage." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 669 (7th Cir. 2015) (emphasis added). That due process right includes the right "to present individualized defenses if those defenses affect its liability." *Id.* "[A] class cannot be certified on the premise that [the Defendant] will not be entitled to litigate its statutory defenses to individual claims." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011). Contrary to Plaintiffs' reading of *Mullins*, Defendants must be permitted to raise their defenses to concealment *in the liability phase* of a trial; it would violate Defendants' due process rights for the Court simply to find liability based on the pleadings and then force Defendants to challenge damages. Stated differently, if there has been no concealment of how interest was charged, there is neither liability nor damages. Plaintiffs are not permitted to simply defer to the damages phase key evidentiary hurdles necessary to sustain a claim.[3]

---

[3] Read in context, the reference in *Mullins* to "challeng[ing] each class member's claim to recovery during the damages phase" refers to a defendant's right to challenge the *amount* of damages claimed by a member of the class. *See* 795 F.3d at 671.

11

Plaintiffs do not explain how they will demonstrate concealment at trial; rather, they simply assert that the contract is the basis for their concealment claim. (*See* Opp'n [Doc. 232] at 10-11.) But even if Plaintiffs could simply assert that Defendants concealed information, without proof, and shift the burden of disproving concealment to Defendants, due process requires that Defendants be able to present evidence exonerating themselves. Defendants must have the opportunity, during the liability phase of trial, to show that many class members were aware of how interest was charged and when NextGear settled with auctions, that they learned it from communications with Defendants (or similar floor planners), that they read the contract the same way NextGear does, and/or that they simply (and logically) assumed they would have to pay interest from the date they acquired new inventory for resale without otherwise paying for it. As Plaintiffs seem to recognize, the necessary proof will inherently vary by dealer and will require discovery and testimony from each class member. (*Cf. id.* at 13.)

Plaintiffs suggest this evidence is within NextGear's control, but the fact is that such evidence is just as likely to come from the class members—as it did from the named Plaintiffs here. NextGear's account representatives often deal with hundreds of dealers over a broad territory and several years, and many have now moved on to other jobs and employers. Conversely, a dealer may only have one or two floor planners for years and recall better, or even keep records of, verbal and email discussions with them. The two NextGear account representatives who were deposed in this case did not specifically remember any discussions with the named Plaintiffs relating to interest. Yet the summary judgment record shows that those two account representatives' customers (named Plaintiffs Red Barn and Mattingly) both admitted they had discussed the interest issue with their account representatives, learned that NextGear charged interest before transferring funds to an auction, and continued to borrow, meaning there

was no concealment as to them. (*See* Defs.' MSJ Br. [Doc. 193] at 8-9, 11, 24; Reply on MSJ [Doc. 212] at 3-4.) There is no reason to think such evidence is unique to the named Plaintiffs.

Evidence of what NextGear's customers knew about interest is relevant to the existence of any scheme of concealment, and thus to Defendants' liability on the RICO claim. Obtaining this evidence will require extensive dealer-specific discovery in advance of trial if the issue is to be tried. Preventing Defendants from obtaining and presenting this evidence to defend against liability would violate Defendants' due process rights; on the other hand, the presentation of this evidence will require a multitude of mini-trials that is not appropriate for class treatment. The Court should therefore decertify the RICO claim.

### IV. A Rigorous Analysis of the Statute of Limitations Demonstrates That Such a Broad Class Should Not Have Been Certified.

Plaintiffs apparently concede that the statute of limitations precludes claims for transactions occurring prior to January 2010 (for the nationwide class) or prior to January 2012 (for the California class). They also concede that avoidance of the statute of limitations "will require individualized proof." (Opp'n [Doc. 232] at 15 (quoting *In re Linerboard Antitrust Litig. Winoff Indus., Inc.*, 305 F.3d 145, 162 (3d Cir. 2002)).) Indeed, questions of the plaintiff's due diligence and ultimate discovery of his cause of action both present individual questions. *Linerboard Antitrust Litig.*, 305 F.3d at 160; *see also Crissen v. Gupta*, 2:12-cv-00355-JMS-WGH, 2014 WL 4129586, at *18 (S.D. Ind. Aug. 19, 2014) ("Because determining whether each class member's claims were timely brought will involve highly individualized factual inquires, the Court finds that this issue predominates any common ones.").

Once Defendants establish that a claim is outside the limitations period—as they have here—the *burden is on each plaintiff* to prove that fraudulent concealment has tolled the statute of limitations. *A.J.'s Auto. Sales, Inc. v. Freet*, 725 N.E.2d 955, 964 (Ind. Ct. App. 2000);

13

*Czajkowski v. Haskell & White, LLP*, 208 Cal. App. 4th 166, 175, 144 Cal. Rptr. 3d 522, 528 (2012).  The individualized proof that a plaintiff must present to save its time-barred claims includes evidence of reliance, which this Court has already held precludes class certification. *Dow Chem. Co. v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 553 N.E.2d 144, 149-50 (Ind. Ct. App. 1990); *Grisham v. Philip Morris U.S.A., Inc.*, 151 P.3d 1151, 1159 (Cal. 2007).  (*See also* Certification Order [Doc. 220] at 39.)  (Again, two of the three named Plaintiffs were admittedly aware of the interest accrual timing years ago, while still borrowing from NextGear.)  Thus, the Court should find that the individualized evidence needed to save claims that accrued from 2005 through 2009 requires the class be decertified.

The authority cited by Plaintiffs suggests that the statute of limitations could be applied to large groups of class members, or that class counsel should define the class as those with live claims.  (Opp'n [Doc. 232] at 15 (quoting *Newberg on Class Actions* § 4:57 (5th ed.)).)  The class definition here indisputably includes dealers whose claims are barred by the statute of limitations.  However, the Court has authority to modify the class to "preclud[e] statute of limitations defenses from even arising."  (*Cf. id.*)  If the class is not decertified altogether based on the grounds discussed above, then—subject to any other modifications that may be necessary—the Court should exercise its authority by modifying the class definition to include only "the time period of January 2010 through July 2013," and modifying the subclass definition to include only "the time period of January 2012 through July 2013."  This modification would avoid a multiplicity of individualized and critical statute of limitations issues.

## CONCLUSION

Plaintiffs' current theories of liability and Defendants' defenses to those both require individualized extra-contractual evidence, but there is no indication the need for such evidence was analyzed in the Certification Order.  Failure to consider these issues would be erroneous.

But considering them now should lead the Court to modify its Certification Order and deny certification on all claims.

Respectfully submitted, this 2nd day of August, 2017.

   *s/ Tracey K. Ledbetter*
David J. Jurkiewicz (18018-53)
Paul D. Vink (23785-32)
BOSE McKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN  46204
(317) 684-5000
(317) 684-5173 fax
djurkiewicz@boselaw.com
pvink@boselaw.com

Jason S. McCarter (*pro hac vice*)
Tracey K. Ledbetter (*pro hac vice*)
EVERSHEDS SUTHERLAND (US) LLP
999 Peachtree Street, NE, Suite 2300
Atlanta, GA 30309-3996
(404) 853-8000
(404) 853-8806 fax
jasonmccarter@eversheds-sutherland.com
traceyledbetter@eversheds-sutherland.com

*Attorneys for Defendants Cox Automotive, Inc., NextGear Capital, Inc. f/k/a Dealer Services Corporation, and John Wick*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing has been served upon the following counsel of record via the Court's electronic service notification system, this 2nd day of August, 2017:

| | |
|---|---|
| Ryan D. Adams<br>James M. Garner<br>Matthew M. Coman<br>Jacob A. Airey<br>SHER GARNER CAHILL RICHTER<br>KLEIN & HILBERT, L.L.C.<br>radams@shergarner.com<br>jgarner@shergarner.com<br>mcoman@shergarner.com<br>jairey@shergarner.com | Catherine E. Lasky<br>Kerry A. Murphy<br>LASKY MURPHY LLC<br>klasky@laskymurphy.com<br>kmurphy@laskymurphy.com |
| Cassie E. Felder<br>THE CASSIE FELDER LAW FIRM<br>cassie@cassiefelderlaw.com | Gladstone N. Jones, III<br>Lynn E. Swanson<br>JONES, SWANSON, HUDDELL &<br>GARRISON, LLC<br>gjones@jonesswanson.com<br>lswanson@jonesswanson.com |
| Kathleen A. DeLaney<br>DELANEY & DELANEY LLC<br>Kathleen@delaneylaw.net | Lisa Brener<br>BRENER LAW FIRM, LLC<br>lbrener@brenerlawfirm.com |

                                          *s/ Tracey K. Ledbetter*
                                          Tracey K. Ledbetter