IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RED BARN MOTORS, INC., PLATINUM MOTORS, INC., and MATTINGLY AUTO SALES, INC., individually and on behalf of other members of the general public similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>COX AUTOMOTIVE, INC., NEXTGEAR CAPITAL, INC. F/K/A DEALER SERVICES CORPORATION, successor by merger with Manheim Automotive Financial Services, Inc., and JOHN WICK,<br><br>    Defendants. | Case No. 1:14-cv-01589-TWP-DML |

## MOTION TO MODIFY CLASS CERTIFICATION ORDER TO NARROW CLASS

The class certified by the Court includes nearly 10,000 dealers who signed agreements with NextGear that contained an arbitration clause and an explicit waiver of the right to participate in a class action for any and all claims, including claims that predated the agreement. Those dealers must be excluded from the class. The Federal Arbitration Act requires courts to give effect to valid arbitration agreements, and federal courts have been clear that such agreements are favored and enforceable. Accordingly, Defendants respectfully move the Court to modify its Entry on Plaintiffs' Motion for Class Certification [Doc. 220] ("Certification Order") and redefine the class pursuant to Rule 23(c)(1)(C) of the Federal Rules of Civil Procedure.[1]

---

[1] NextGear reserves its right to move to compel arbitration against each of these dealers if necessary at a later stage. However, for the reasons outlined below, it would be more

## PROCEDURAL HISTORY

Plaintiffs moved for class certification in September 2016. [Doc. 153.] In their opposition to class certification, Defendants argued that one reason individual issues would predominate among the class was the existence of arbitration agreements signed by some proportion of the class:

> [V]arious putative class members have signed different contract documents. Plaintiffs have attempted to limit their class to those who did business with NextGear and its predecessors prior to 2013. But even that proposed class includes thousands of putative class members who later signed new NextGear contracts in which they agreed to arbitrate any past, present, or future claims on an individual basis and agreed to other limitations of liability.

(Defs.' Resp. in Opp'n to Pls.' Mot. for Class Certification [Doc. 160] at 20-21; *see also id.* at 1-2, 4-5.) In addition, the existence of those arbitration agreements—which the named Plaintiffs had never signed—rendered the named Plaintiffs atypical:

> [U]nlike the named Plaintiffs, the majority of NextGear's dealers do business with NextGear pursuant to the most recent version of NextGear's loan agreement, which contains an arbitration clause with class and damage waivers.

(*Id.* at 25.) Defendants submitted undisputed evidence that dealers who continued with NextGear after October 2013 signed a form of note containing an agreement to arbitrate. (10/31/2016 Declaration of Adam Galema ("10/31/2016 Galema Decl.") ¶ 12 & Ex. A [Doc. 160-2, 160-3].)

Following the close of briefing, the Court heard oral argument on the motion for class certification. At oral argument, Defendants again argued that it would be "entirely inappropriate to include [dealers subject to individual arbitration] in this class." (Hr'g Tr. [Doc. 202] 13:17-15:2.)

---

appropriate—and less cumbersome for the Court—to exclude them from the class before that becomes necessary.

On June 29, 2017, the Court issued its Certification Order, certifying a class of "all used car dealers in the United States of America that were parties to a Floorplan Agreement with DSC, n/k/a NextGear, effective during the time period of January 2005 through July 2013," with a similarly-defined California subclass.[2] (Certification Order at 40.) The Court did not exclude dealers subject to arbitration because it found the issue premature: "[T]he evidence does not suggest that the putative class actually includes customer dealers who signed 2013 agreements that require arbitration." (*Id.* at 37.) However, the Court expressly recognized that it could alter the class in light of such evidence: "If in fact the class does include members who executed 2013 agreements that supersede any earlier agreements and require arbitration, the Court can further narrow the class to exclude those customer dealers, the parties can petition the Court to narrow the class, the parties can stipulate the exclusion of those dealers, or the parties can file a motion to compel arbitration." (*Id.* at 37 n.5.)

Defendants have requested a stipulation to exclude the dealers subject to arbitration and class action waiver provisions, but Plaintiffs have refused. Defendants therefore submit this motion requesting that, as suggested in the Certification Order, the Court narrow the class to exclude customer dealers who have signed a floor plan agreement that supersedes their prior agreements and requires arbitration.

**FACTUAL BACKGROUND**

After the 2013 merger of NextGear's predecessor companies, Dealer Services Corporation ("DSC") and Manheim Automotive Financial Services, Inc. ("MAFS"), NextGear revised its contract forms, and dealers who wished to continue to do business with NextGear

---

[2] Defendants have filed a Motion to Reconsider and/or Modify the Class Certification Order, which requests that the Court reconsider its Order and deny certification of all claims, or modify the Order to decertify certain claims and/or transactions outside the statute of limitations. [Doc. 228.] Granting that motion in full would render the present motion moot.

3

entered into a new form of note and security agreement (the "2013 Note"). The 2013 Note replaced and novated any prior agreements with either MAFS or DSC. (10/31/2016 Galema Decl. [Doc. 160-2] ¶ 12.) Dealers signing the 2013 Note agreed that any "disputes, claims and counterclaims" under any legal theory would be subject to arbitration on an individual basis, regardless of whether the dealer had also signed a prior agreement with DSC or MAFS:

> DISPUTE RESOLUTION; WAIVER OF CLASS ACTION RIGHTS.
>
> (a) In most cases, any disputes or claims that Borrower may have can be resolved quickly and to Borrower's satisfaction by contacting Lender regarding such dispute or claims. In the unlikely event that Lender is unable to resolve a dispute or claim that Borrower may have, Borrower agrees to arbitrate any such dispute or claim. This agreement to arbitrate is intended to be broadly interpreted, and includes (i) all disputes, claims and counterclaims arising out of or relating to this Note or any other Loan Document or any aspect of Borrower's relationship with Lender, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory; (ii) all disputes, claims and counterclaims that may have arisen before this Note or any prior contract or agreement between Borrower and Lender (including all disputes, claims and counterclaims relating to any marketing or advertising by Lender); and (iii) any disputes, claims and counterclaims that may arise after the termination of this Note and any other Loan Document. Additionally, Borrower acknowledges that Lender may (but shall in no event be required to) arbitrate any dispute or claim that it may have against Borrower, with any such arbitration being governed by the provisions of this Section 22. Borrower, at its election, may opt-out of the arbitration provisions set forth in Sections 22(a), 22(c) and 22(d) by providing written notice of its election to opt-out no later than thirty (30) days after the Effective Date, which notice shall be provided to Lender pursuant to Section 15 ("Opt-Out Notice"), provided that such Opt-Out Notice shall become effective only upon Borrower's receipt of written confirmation from Lender that such Opt-Out Notice has been received by Lender within the required time period. Borrower acknowledges and agrees that, irrespective of any Opt-Out Notice or any written confirmation thereof, Borrower shall in all events be subject to the provisions of Section 22(b).
>
> (b) ANY ARBITRATION PROCEEDING UNDER THIS NOTE WILL TAKE PLACE ON AN INDIVIDUAL BASIS. CLASS ARBITRATIONS AND CLASS ACTIONS OF ANY KIND (WHETHER PURSUED THROUGH ARBITRATION OR THROUGH THE COURTS) ARE NOT PERMITTED. BORROWER AGREES THAT IT MAY BRING CLAIMS AGAINST LENDER ONLY IN ITS

INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.  BORROWER AGREES THAT, BY ENTERING INTO THIS NOTE, BORROWER IS WAIVING ITS RIGHT TO PARTICIPATE IN ANY CLASS ACTION OR OTHER SIMILAR REPRESENTATIVE PROCEEDING.  UNLESS CONSENTED TO IN WRITING BY LENDER, THE ARBITRATOR MAY NOT CONSOLIDATE MORE THAN ONE PERSON'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A REPRESENTATIVE OR CLASS PROCEEDING.  BORROWER ACKNOWLEDGES AND AGREES THAT THE SIZE OF BORROWER'S CREDIT LINE, THE INTEREST RATE TO WHICH ADVANCES ARE SUBJECT AND CERTAIN FEES CHARGED TO BORROWER, AS WELL AS THE SIZE AND DATES OF SPECIFIC ADVANCES, ARE UNIQUE TO AND NEGOTIATED BY BORROWER, AND THAT SUCH FACTORS WILL AND DO VARY AMONG BORROWERS.

(c) Any dispute or claim subject to arbitration pursuant to this Section 22 shall be submitted to binding arbitration administered by the Judicial Arbitration and Mediation Service ("JAMS") pursuant to its Comprehensive Arbitration Rules and Procedures as then in effect (the "JAMS Comprehensive Rules"); provided, however, that any dispute or claim that is subject to arbitration pursuant to this Section 22 and that involves disputes or claims where the aggregate amount reasonably in dispute or controversy is less than $100,000, shall be submitted to binding arbitration administered by JAMS pursuant to its Streamlined Arbitration Rules and Procedures as in effect on the Effective Date (the "JAMS Streamlined Rules").  The disputes and claims subject to arbitration pursuant to this Section 22 will be resolved by a single arbitrator selected pursuant to the JAMS Comprehensive Rules or the JAMS Streamlined Rules, as the case may be.  The arbitrator shall be bound by and shall strictly enforce the terms of this Note and the other Loan Documents and may not limit, expand, or otherwise modify any term or provision of this Note or any other Loan Document or any other contract or document between Borrower and Lender.  The arbitrator shall not have the power to award to Borrower any damages that are excluded or that have been waived by Borrower under this Note or any other Loan Document, and Borrower irrevocably waives any claim that it may have thereto.  The arbitrator shall not have the power to order pre-hearing discovery of documents or the taking of depositions.  The arbitrator shall render a written decision within six (6) months after being selected.  Any arbitration will be held in Indianapolis, Indiana (or its greater metro area).  Each Party will bear its own expenses in the arbitration and will share equally the costs of the arbitration; provided, however, that the arbitrator may, in his or her discretion, award costs and fees to the prevailing Party.  The result of any arbitration shall be final and binding upon the Parties.

> > Judgment upon any arbitration award may be entered in any court having jurisdiction over the award or over the applicable party or its assets.
>
> (d) This Note and the other Loan Documents evidence transactions in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this Section 22, notwithstanding the provisions of Section 20.

(NextGear 2013 Note [Ex. A] § 22, NG_005157 to -58.)

From March through October of 2013, almost all dealers who continued to obtain financing from NextGear transitioned from their prior DSC and/or MAFS agreements to the 2013 Note containing an agreement to arbitrate. (10/31/2016 Galema Decl. [Doc. 160-2] ¶ 13.) Of dealers in the class and subclass certified in the Certification Order, Defendants determined that 9,940 executed the 2013 Note and agreed to the arbitration and class action waiver terms quoted above. (8/10/2017 Declaration of Adam Galema ("8/10/2017 Galema Decl.") ¶ 6.) A redacted list of these 9,940 dealers is provided as Exhibit B to the supporting Declaration of Adam Galema. (*Id.* ¶ 7 & Ex. B.)[3] None of these dealers timely elected to opt out of the arbitration agreement by means of the procedures outlined in the contract. (*Id.* ¶ 8.)

## ARGUMENT AND AUTHORITY

As the Court recognized in its Certification Order, a court may alter or amend an order certifying a class under Rule 23(c)(1)(C) "in the light of subsequent developments in the litigation." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). "[T]he court has a duty to monitor its class decisions in light of the evidentiary development of the case; the court must define, redefine, subclass, and decertify as appropriate in response to the progression of the case

---

[3] By binding agreement, these dealers cannot participate in this action; thus, Plaintiffs are not entitled to any information about any of them. If the Court deems it necessary, however, NextGear will provide the unredacted list of these dealers and/or copies of their signed agreements (or, more efficiently, a sampling of signed agreements) to the Court for *in camera* review.

6

from assertion to facts." *Hickey v. Great W. Mortg. Corp.*, No. 94 C 3638, 1995 WL 121534, at *3 (N.D. Ill. Mar. 17, 1995) (granting motion to decertify); *see also Garcia v. JCPenney Corp.*, No. 12-cv-3687, 2016 WL 878203, at *7 (N.D. Ill. Mar. 8, 2016). As Judge Easterbrook has explained: "If the evidence calls into question the propriety of defining a class in a particular way, then the definition must be modified or subclasses certified. . . . The class definition must yield to the facts, rather than the other way 'round." *Fonder v. Sheriff of Kankakee Cty.*, 823 F.3d 1144, 1147 (7th Cir. 2016). Here, the evidence demonstrates that the current class is overbroad and must be modified to exclude all dealers who agreed to arbitrate on an individual basis.

**I.      Federal Law Strongly Favors Agreements to Arbitrate.**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, "declare[s] a national policy favoring arbitration of claims that parties contract to settle in that manner." *Vaden v. Discover Bank*, 556 U.S. 49, 58 (2009) (internal quotation marks omitted); *see also Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2308-09 (2013); *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). As the Supreme Court has emphasized in several cases upholding the validity of mandatory arbitration provisions and class action waivers like those at issue here, Congress enacted the FAA to overcome judicial resistance to arbitration. *Italian Colors*, 133 S. Ct. at 2308-09; *Concepcion*, 563 U.S. at 339. To promote this purpose, "the FAA compels judicial enforcement of a wide range of written arbitration agreements." *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 111 (2001).

The FAA mandates that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. It further provides that a party may seek a stay of litigation and petition a court of competent jurisdiction to compel arbitration. If the dispute is arbitrable, then the court

7

must order that arbitration proceed in accordance with the agreement. *Id*. §§ 3, 4.  The FAA applies to all contracts "affecting commerce," which "ordinarily signal[s] the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003).

Consistent with this policy, where a contract contains an arbitration clause, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also James v. McDonald's Corp.*, 417 F.3d 672, 676-77 (7th Cir. 2005).  "[O]nly the most forceful evidence of a purpose to exclude the claim from arbitration can prevail," *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (internal punctuation omitted), and any claims that "touch matters" covered by the agreement must be arbitrated.  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n.13 (1985).  If a court determines that an arbitration agreement is valid and enforceable, "the status of the other contract terms is for the arbitrator to decide." *Hawkins v. Aid Ass'n for Lutherans*, 338 F.3d 801, 807 (7th Cir. 2003) (internal quotation marks omitted).

**II.     All Dealers Who Executed the 2013 Note Should Be Excluded from the Class.**

Because the 2013 Note contains an arbitration agreement that supersedes any prior agreements and applies to prior transactions, dealers who signed the 2013 Note must arbitrate their claims on an individual basis.  In other words, it would literally be a breach of contract for those dealers to join the class in this case, and including them in the class would deny NextGear its contracted-for rights.  Including these dealers in the class would also create manageability headaches and would impose significant burdens on the Court and the parties.  Thus, the class should be modified to exclude all dealers who signed the 2013 Note.

### A. The Valid Agreement by Dealers Who Signed the 2013 Note to Arbitrate Their Claims Should Be Enforced.

By executing the 2013 Note, dealers agreed to arbitrate any dispute they may have against NextGear. The broad language of the arbitration provision covers any past, present, or future claims that a class member might raise under any legal theory. There is no question the agreement to arbitrate is valid, the disputes at issue here are within the scope of the agreement, and the agreement supersedes any prior notes that may have been executed by the dealers prior to 2013. (And if those questions must be addressed on a dealer-by-dealer basis, the individualized issues would be so unmanageable as to call for decertifying the class altogether.) The Court should therefore find that the dealers who agreed to arbitrate cannot be part of a class.

First, the arbitration agreement in the 2013 Note is a valid agreement to arbitrate. A signed arbitration agreement is presumed to be valid and enforceable, and courts (or arbitrators) must resolve all doubts in favor of arbitration. 9 U.S.C. § 2 (written arbitration agreements "shall be valid, irrevocable, and enforceable"). Here, the dealers identified in Mr. Galema's declaration signed the 2013 Note containing the arbitration agreement. The arbitration provision also contains an internal opt-out process, and none of the dealers at issue exercised the right to opt out. (8/10/2017 Galema Decl. ¶ 8.)

Second, the class claims at issue in this case are well within the broad scope of the arbitration agreement. The agreement covers "all disputes, claims and counterclaims arising out of or relating to this Note or any other Loan Document or any aspect of Borrower's relationship with Lender, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory." (NextGear 2013 Note [Ex. A] § 22(a), NG_005157.) An agreement to arbitrate claims "arising out of" a contract is extremely broad, covering "any dispute between contracting parties that is in any way connected with their contract." *Sweet Dreams Unlimited, Inc. v. Dial-a-*

9

*Mattress Int'l*, 1 F.3d 639, 642-43 (7th Cir. 1993). Dealers who signed the 2013 Note have therefore agreed that they would arbitrate their claims for breach of contract and RICO. *See, e.g.*, *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 407 (2003) (requiring arbitration of RICO claim); *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 242 (1987) (holding RICO claims are arbitrable); *Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, 713 F. Supp. 2d 734, 740-41 (N.D. Ill. 2010) (requiring arbitration of RICO claims connected with plaintiffs' contracts).

In addition, the disputes at issue in this case fall within the temporal scope of the arbitration agreement. Specifically, dealers who signed the 2013 Note agreed that they would arbitrate "all disputes, claims and counterclaims *that may have arisen before this Note or any prior contract or agreement between Borrower and Lender*." (NextGear 2013 Note [Ex. A] § 22(a), NG_005157 (emphasis added).) On its face, the arbitration provision applies to "all" claims, past, present, or future—including "all" claims that arose during the class period or before a dealer executed the 2013 Note.

This Court has held that arbitration provisions similar to the one here apply to claims or conduct that fall within the scope of the provision, whether they arose or occurred before or after the agreement was reached. *See, e.g.*, *Ortiz v. Winona Mem'l Hosp.*, No. 1:02-CV-1975-JDT-TAB, 2003 WL 21696524, at *2 n.2 (S.D. Ind. June 4, 2003) (finding that "claims based on acts which occurred before [plaintiff] signed the arbitration agreement would seem to be subject to arbitration" because "[t]here is no temporal limitation" in arbitration agreement); *Furgason v. McKenzie Check Advance of Ind., Inc.*, No. IP00-121-C H/G, 2001 WL 238129, at *2 (S.D. Ind. Jan. 3, 2001) (ordering arbitration of claim arising from contract that did not contain arbitration agreement based on later loan contracts requiring arbitration of disputes "arising from . . . any

10

prior agreement" between company and customer); *cf., e.g.*, *In re Oil Spill by Amoco Cadiz Off Coast of France Mar. 16, 1978*, 659 F.2d 789, 795 (7th Cir. 1981) ("We conclude that the tort claims raised by plaintiffs-appellees must be submitted to arbitration as coming under Clause 1 of the [arbitration agreement], whether the torts are alleged to have been committed before or after the commencement of any salvage activity or before or after the execution of the [arbitration agreement]."); *Campbell v. Verizon Wireless, LLC*, No. 14-0517-WS-N, 2015 WL 416484, at *5 (S.D. Ala. Jan. 29, 2015) ("[N]or does the Arbitration Clause purport to be limited to disputes arising in a particular temporal span . . . . [T]his Court cannot and will not unilaterally solder such restrictions onto those agreements.").[4]

Finally, by its terms, the 2013 Note and its arbitration agreement supersedes any earlier note signed by the dealer. (NextGear 2013 Note [Ex. A] § 13, NG_005156.) As discussed below, the limited exception to this provision does not affect mandatory arbitration of the claims at issue in this case. Thus, the arbitration provision in the 2013 Note applies to all claims and disputes, even those arising under earlier contracts executed within the class period.

---

[4] If there is any doubt regarding the scope of the arbitration agreement and the arbitrability of a dispute, those questions should properly be presented to the arbitrator. The arbitrator, rather than the court, has authority to decide whether the parties agreed to arbitrate a particular dispute when the parties have "clearly and unmistakably" demonstrated an intent to arbitrate that question. *AT & T Techs.*, 475 U.S. at 649; *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Here, the parties have clearly and unmistakably demonstrated such an intent by incorporating Judicial Arbitration and Mediation Service ("JAMS") rules that give the arbitrator authority to resolve jurisdictional and arbitrability disputes. (NextGear 2013 Note [Ex. A] § 22(c), NG_005158.) *Compare Gilman v. Walters*, 61 F. Supp. 3d 794, 800-01 (S.D. Ind. 2014), *with* JAMS Comprehensive Arbitration Rule 11(b), *and* JAMS Streamlined Arbitration Rule 8(b).

### B. Dealers Who Signed the 2013 Note Have Waived Their Right to Participate in a Class Action.

The 2013 Note contains a class action waiver as well as an arbitration agreement. The class waiver in the 2013 Note expressly provides that the dealer signing the Note will not participate in any sort of class proceeding:

> Class arbitrations and class actions of any kind (whether pursued through arbitration or through the courts) are not permitted. Borrower agrees that it may bring claims against Lender only in its individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding. Borrower agrees that, by entering into this Note, Borrower is waiving its right to participate in any class action or other similar representative proceeding.

(NextGear 2013 Note [Ex. A] § 22(b), NG_005157 (capitalization omitted).) It is well-settled that class waivers like this one are enforceable. *Italian Colors*, 133 S. Ct. at 2309; *Concepcion*, 563 U.S. at 339. If a dealer who signed the 2013 Note is included in the class, that dealer will be in breach of its agreement to "bring claims against [NextGear] only in its individual capacity" unless and until it opts out of the class. Indeed, there is no reason to incur the expense of sending class notice to the nearly 10,000 dealers who cannot participate in the class as a matter of law. And doing so unnecessarily and unjustly harms NextGear, as many of those dealers are current customers. Rather than inviting dealers to breach their contract and unnecessarily harming NextGear's business interests in the process, the Court should exclude those dealers from the class.

### C. The 2013 Note Is Clear and Unambiguous.

Plaintiffs have declined to stipulate to the exclusion of the dealers who signed the 2013 Note because they contend the 2013 Note is ambiguous based on Sections 13 and 21. However, a review of the 2013 Note reveals that it clearly and unambiguously provides for arbitration.

1. The Existence of a Forum Selection Clause Does Not Render an Arbitration Provision Ambiguous.

Plaintiffs contend that the judicial forum selection clause in Section 21 of the 2013 Note contradicts the agreement to arbitrate. But as courts repeatedly have held, "there is nothing inconsistent between the arbitration obligation and [a] . . . forum selection clause" because the forum clause applies to proceedings that are not subject to arbitration, such as proceedings to enforce the arbitration clause or to enforce an arbitral award, or suits brought by a dealer who opted out of arbitration by the mechanism provided in the arbitration clause. *Patten Sec. Corp. v. Diamond Greyhound & Genetics, Inc.*, 819 F.2d 400, 407 (3d Cir. 1987), *abrogation on other grounds recognized by Delgrosso v. Spang & Co.*, 903 F.2d 234, 236 & n.2 (3d Cir. 1990); *see also Bank Julius Baer & Co. v. Waxfield Ltd.*, 424 F.3d 278, 284-85 (2d Cir. 2005) ("The Forum Selection Clause can be understood, as the Third Circuit did [in *Patten*], as complementary to an agreement to arbitrate."), *abrogation on other grounds recognized by Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015); *ValuePart, Inc. v. Farquhar*, No. 14-cv-3004, 2014 WL 4923179, at *5-6 (N.D. Ill. Sept. 29, 2014) (finding "forum selection clause does not trump the provisions of the mandatory arbitration clause"); *ChampionsWorld, LLC v. U.S. Soccer Fed'n, Inc.*, 487 F. Supp. 2d 980, 988-89 (N.D. Ill. 2007) ("forum selection clauses are not inherently inconsistent with arbitration agreements"); *Higman Marine Servs., Inc. v. BP Amoco Chem. Co.*, 114 F. Supp. 2d 593, 596-97 (S.D. Tex. 2000). Thus, without question, the existence of a forum selection clause does not invalidate the broad agreement to arbitrate.

Moreover, even if a forum selection clause somehow trumps an arbitration clause (and it does not), it would not matter. Plaintiffs overlook that each of the dealers who signed arbitration agreements also unequivocally waived the right to participate in a class action. (NextGear 2013 Note [Ex. A] § 22(b), NG_005157 ("BORROWER AGREES THAT IT MAY BRING CLAIMS

AGAINST LENDER ONLY IN ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.  BORROWER AGREES THAT, BY ENTERING INTO THIS NOTE, BORROWER IS WAIVING ITS RIGHT TO PARTICIPATE IN ANY CLASS ACTION OR OTHER SIMILAR REPRESENTATIVE PROCEEDING.").)  By the plain terms of the 2013 Note, no dealer who signed it may participate in this (or any other) class action.

        2.    <u>The Arbitration and Class Waiver Provisions in Section 22 Override Other Provisions of the Contract.</u>

Plaintiffs also contend that certain transactions (though not the dealers that engaged in those transactions) are carved out of the arbitration provision by Section 13 of the 2013 Note. Section 13 provides that, notwithstanding the contract's broad merger clause,

> any advance and/or loan originated pursuant to one or more agreements between Borrower and [DSC or MAFS] prior to the Effective Date [of the 2013 Note] for which indebtedness from Borrower remains outstanding as of the Effective Date, shall remain subject to the terms and conditions of such prior agreement(s) for all intents and purposes until such indebtedness has been indefeasibly repaid and satisfied in full.

(NextGear 2013 Note [Ex. A] § 13, NG_005156.)  Nothing in Section 13 conflicts with the agreement to arbitrate disputes on an individual basis in Section 22 of the Note.

First, as discussed above, Section 22 is broad on its face and specifically applies to "all" disputes, including those arising prior to execution of the 2013 Note or any prior contract or agreement.  Section 22 overrides all other provisions in the agreement on its specific topic of arbitration.  Further, there is nothing in Section 13 that suggests the arbitration obligation would not apply to disputes about pre-existing debts.  Put another way, dealers signing the 2013 Note could, and did, agree to arbitrate all future disputes, arising pre- or post-Note, regardless of whether their earlier notes were merged into the 2013 Note.

14

Second, the carve-out in Section 13, by its express terms, only applies to the small number of advances or loans that were both (a) outstanding as of the effective date of a dealer's 2013 Note, *and* (b) never repaid. This is so because if the outstanding debts were repaid, Section 13 provides that the terms of the former note no longer apply for any purpose (*i.e.*, the former note is extinguished). Thus, even under Plaintiffs' theory, only pre-transition debts that have remained outstanding for the four years since the effective date of a dealer's 2013 Note are subject to a former note. NextGear's records show that only 174 dealers have transactions that fall into this category. (8/10/2017 Galema Decl. ¶ 9.) In other words, the carve-out in Section 13 is completely irrelevant to over 9,700 dealers who signed arbitration agreements. And for the 174 dealers who had outstanding (and never repaid) debts, those debts cannot have given rise to any damages because a dealer did not lose money from a charge that it never paid, *regardless* of when interest began to accrue. Stated differently, any dealer who received an advance or loan under a former note and has not paid it (the only group arguably carved out from the arbitration clause in the 2013 Note) cannot claim damages as a matter of law. Regardless, even if a small number of dealers subject to this motion have non-arbitrable transactions, they would not be prejudiced by the granting of this motion. They would still be free to pursue their claims outside of this action if they believed they could establish some harm.[5]

Third, the purpose of the last sentence of Section 13 was to facilitate the transition of dealers' outstanding receivables as DSC and MAFS merged to form NextGear by continuing the financial terms (*e.g.*, interest rates, curtailment periods, and fees) applicable to their outstanding

---

[5] To be clear, Defendants' position is that all dealers who signed the 2013 Note should be excluded from the class. However, to the extent the Court is concerned about the 174 dealers subject to the carve-out in Section 13, the Court should still grant this motion as to all other dealers subject to arbitration. Those 9,766 dealers can only be part of the class if the Court determines that the forum selection clause in Section 21 somehow negates the arbitration clause, a concept a litany of federal courts across the country have rejected. *See supra* p. 13.

transactions, while the 2013 Note would govern the parties' relationship for all other purposes. (*See* 8/10/2017 Galema Decl. ¶ 4.)  Section 13 was never intended to negate the broad arbitration and class waiver provisions in Section 22.

The broad arbitration and class waiver language found in Section 22 of the 2013 Note requires individual arbitration of all disputes.  Nothing in the language or purpose of Section 13 renders that language ambiguous.  The Court should therefore enforce Section 22 by excluding from the class all dealers who signed the 2013 Note.

### III. Keeping Dealers Who Executed the 2013 Note in the Class Would Create Additional Manageability Problems for the Parties and the Court.

Even if there were any uncertainty as to the applicability or enforceability of the arbitration agreement in the 2013 Note—which is not the case—the Court should still exclude from the class dealers who signed arbitration agreements and class action waivers with NextGear.  Since the named Plaintiffs did not sign the 2013 Note or agree to arbitrate, any arguments class counsel might raise against the enforceability of the arbitration provision would require speculation about what each absent dealer intended and would want.  What is more, leaving these dealers in the class means sending notice to a large number of current customers, irreparably and unjustly damaging NextGear's reputation in the process.  Notice would be followed by the filing and briefing of nearly 10,000 individual motions to compel arbitration.  The Court would then have to determine which of those arbitration agreements it will enforce, which it will not, and which must be determined by the arbitrators.  If the Court denies this motion, the process of sorting out arbitration and class waiver issues will be an immense burden for the Court and for the parties.  But if the Court grants this motion, dealers lose no substantive rights merely by being excluded from the class on the front end.  Any doubt regarding the

effectiveness of the arbitration agreement and class waiver should therefore be resolved in favor of removing from the class dealers subject to those provisions in the 2013 Note.

## CONCLUSION

The 2013 Note contains a "valid, irrevocable, and enforceable" agreement to arbitrate any and all disputes and claims, whether past, present, or future. The Federal Arbitration Act requires courts to honor such agreements to arbitrate. This Court should therefore exclude from the class and the subclass each of the dealers who signed the 2013 Note containing an arbitration agreement and/or class waiver. Subject to decision on Defendants' separate pending Motion to Reconsider and/or Modify [Doc. 228], the modified class definition might include "all used car dealers in the United States of America that were parties to a Floorplan Agreement with DSC, n/k/a NextGear, effective during the time period of January 2005 through July 2013, excluding any dealer who signed an agreement containing an arbitration or class action waiver provision," with a modified subclass that includes "all California used car dealers that were parties to a Floorplan Agreement with DSC, n/k/a NextGear, effective during the time period of January 2005 through July 2013, which Floorplan Agreement requires the application of California law, excluding any dealer who signed an agreement containing an arbitration or class action waiver provision."

Respectfully submitted, this 10th day of August, 2017.

                                              *s/ Tracey K. Ledbetter*
David J. Jurkiewicz (18018-53)
Paul D. Vink (23785-32)
BOSE McKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
(317) 684-5000
(317) 684-5173 fax
djurkiewicz@boselaw.com
pvink@boselaw.com

>Jason S. McCarter (*pro hac vice*)
>Tracey K. Ledbetter (*pro hac vice*)
>EVERSHEDS SUTHERLAND (US) LLP
>999 Peachtree Street, NE, Suite 2300
>Atlanta, GA 30309-3996
>(404) 853-8000
>(404) 853-8806 fax
>jasonmccarter@eversheds-sutherland.com
>traceyledbetter@eversheds-sutherland.com
>
>*Attorneys for Defendants Cox Automotive, Inc.,*
>*NextGear Capital, Inc. f/k/a Dealer Services*
>*Corporation, and John Wick*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing has been served upon the following counsel of record via the Court's electronic service notification system, this 10th day of August, 2017:

| | |
|---|---|
| Ryan D. Adams<br>James M. Garner<br>Matthew M. Coman<br>Jacob A. Airey<br>SHER GARNER CAHILL RICHTER<br>KLEIN & HILBERT, L.L.C.<br>radams@shergarner.com<br>jgarner@shergarner.com<br>mcoman@shergarner.com<br>jairey@shergarner.com | Catherine E. Lasky<br>Kerry A. Murphy<br>LASKY MURPHY LLC<br>klasky@laskymurphy.com<br>kmurphy@laskymurphy.com |
| Cassie E. Felder<br>THE CASSIE FELDER LAW FIRM<br>cassie@cassiefelderlaw.com | Gladstone N. Jones, III<br>Lynn E. Swanson<br>JONES, SWANSON, HUDDELL &<br>GARRISON, LLC<br>gjones@jonesswanson.com<br>lswanson@jonesswanson.com |
| Kathleen A. DeLaney<br>DELANEY & DELANEY LLC<br>Kathleen@delaneylaw.net | Lisa Brener<br>BRENER LAW FIRM, LLC<br>lbrener@brenerlawfirm.com |

 *s/ Tracey K. Ledbetter*
Tracey K. Ledbetter