UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
(Indianapolis Division)

| | | |
|---|---|---|
| **RED BARN MOTORS, INC.,** | * | **DOCKET NO. 1:14-cv-01589-TWP-DML** |
| **PLATINUM MOTORS, INC., and** | * | |
| **MATTINGLY AUTO SALES, INC.,** | * | **CLASS ACTION** |
| **individually, and on behalf of other** | * | |
| **members of the general public** | * | |
| **similarly situated,** | * | |
| | * | |
| **v.** | * | |
| | * | |
| **COX ENTERPRISES, INC.,** | * | |
| **COX AUTOMOTIVE, INC.,** | * | |
| **NEXTGEAR CAPITAL, INC.,** | * | |
| **F/K/A DEALER SERVICES** | * | |
| **CORPORATION, successor by merger** | * | |
| **with Manheim Automotive Financial** | * | |
| **Services, Inc., and JOHN WICK,** | * | |
| | * | |

**************************************************************************

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO MODIFY CLASS
CERTIFICATION ORDER TO NARROW CLASS**

Plaintiffs Red Barn Motors, Inc., Platinum Motors, Inc., and Mattingly Auto Sales, Inc.

(collectively, "Plaintiffs") respectfully submit this memorandum in opposition to Defendants'

Motion to Modify Class Certification Order to Narrow Class (Dkt. 237). This, Defendants' second

motion to modify the Court's class certification order (Dkt. 220), focuses on the effect of

arbitration and class-waiver clauses in a 2013 Demand Promissory Note and Loan and Security

Agreement ("the 2013 Agreement"). Defendants' motion should be denied because (1) the

arbitration clause does not mandate arbitration of the claims of any members of the Class; (2) the

class-waiver clause is expressly limited to claims pertaining to the 2013 Agreement, which is

outside the scope of the class; and (3) even if the arbitration and class-waiver clauses in the 2013

Agreement were mandatory, the 2013 Agreement did not novate the prior agreements under which

Plaintiffs' claims are brought. Therefore, Defendants again fail to raise any litigation development subsequent to certification of the class that would justify altering or amending the class certification decision under Fed. R. Civ. P. 23(c)(1)(C).

## I.    Background

On September 30, 2016, Plaintiffs moved for class certification. Dkt. 153. Among the grounds on which Defendants opposed certification of the proposed class was that the arbitration clause in the 2013 Agreement would create predominating individual issues precluding class certification. Dkt. 160, at 5. On June 29, 2017, this Court granted Plaintiffs' motion for class certification as to their breach of contract and RICO claims against Defendants NextGear Capital, Inc. ("NextGear"), Cox Automotive, Inc., and John Wick, for a class of "all used car dealers in the United States of America that were parties to a Floorplan Agreement with DSC, n/k/a NextGear, effective during the time period of January 2005 through July 2013," with a sub-class for California used car dealers with such floorplan agreements in the same time period. Dkt. 220, at 40. Regarding the effect of any arbitration clause, this Court held,

> [I]t would be premature to address the "individual" issue regarding mandatory arbitration because the evidence does not suggest that the putative class actually includes customer dealers who signed 2013 agreements that require arbitration. The proposed class is limited to the time period of January 2005 through July 2013. It would be inappropriate at this stage to speculate about whether customer dealers have executed 2013 agreements that supersede any earlier agreements that fall within the class definition.

Dkt. 220, at 37.

Subsequently, Defendants filed the motion at issue here, attaching information that they have exclusively had in their possession throughout the initial briefing on class certification (*i.e.*, not newly-discovered information), specifically including a redacted listing of class members who signed the 2013 Agreement and a related declaration of Adam Galema, and now argue that the issues regarding arbitration are no longer premature. Regardless whether Defendants have

belatedly raised the issue by attaching the redacted list of dealers and class members who signed the 2013 Agreements, Defendants' motion to narrow the class should be denied on its merits under both the language of the 2013 Agreement and the applicable law.

## II.    Applicable Standard

A Rule 23(c)(1)(C) motion to modify a class certification order must be supported by "subsequent developments in the litigation." *Gen. Tel. Co. of SW v. Falcon*, 457 U.S. 147, 160 (1982). Here, Defendants merely reiterate the same argument they placed before the Court at the initial certification stage, adding a redacted list of used car dealer borrowers who are class members under the certified class definition but who also executed the 2013 Agreement—a list Defendants had the ability to produce, yet failed or chose not to produce, during the initial certification briefing nearly a year ago. Regardless, as set forth below, the identification of the potentially-impacted dealers does not justify narrowing of the class definition as the 2013 Agreement does not provide for mandatory arbitration of the class claims or waiver of class treatment of the claims and does not novate the original Floorplan Agreements.

## III.    Argument and Authority

### A.    The Arbitration Clause Does Not Mandate Arbitration of the Claims of Any Members of the Class.

As a threshold matter, Defendants do not—and cannot—argue that there are any arbitration or class waiver provisions applicable to any class members prior to the 2013 Agreement. Furthermore, as discussed below, the dispute resolution provisions in the 2013 Agreement do not mandate arbitration. Rather, those provisions mandate court resolution in state or federal court in Indiana and provide for non-mandatory arbitration of claims not resolved through the elective, informal mediation procedure offered by NextGear.

### 1.    The 2013 Agreement Includes a Mandatory Forum-Selection Clause for Indiana Federal or State Courts.

Under the 2013 Agreement, § 21 contains the first dispute resolution provision and sets

forth a mandatory forum-selection clause:

> JURISDICTION AND VENUE. As evidenced by Borrower's signature below, Borrower submits to the personal jurisdiction and venue of the state and federal courts of Marion County and Hamilton County, Indiana, and agrees that ***any and all claims or disputes*** pertaining to this Note or any other Loan Document, or to any matter arising out of or related to this Note or any other Loan Document, ***initiated by Borrower against Lender, shall be brought in the state or federal courts*** of Marion County or Hamilton County, Indiana.

Dkt. 237-2, at 10 (§ 21) (emphasis added). Defendants argue that this forum-selection clause only

"applies to proceedings that are not subject to arbitration[.]" Dkt. 237, at 13. There is no language

in the above provision, however, that restricts the mandatory venue provision at all, such as only

to certain proceedings not subject to arbitration or instances where litigation is elected to be

brought, *e.g.*, after an arbitration award has been entered. Instead, the language of the provision

unequivocally requires that "all claims or disputes … initiated by the Borrower against the

Lender[] shall be brought in the state or federal courts" of Marion or Hamilton counties. The

Seventh Circuit "ha[s] found such mandatory language to require enforcing a forum selection

clause. … [W]here venue is specified with mandatory or obligatory language, the clause will be

enforced[.]" *Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 762 (7th Cir. 2006) (citing

*Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753 (7th Cir. 1992)); *see also Coral

Chem. Co. v. Chemetall US, Inc.*, 2016 WL 3521952, *7 (S.D. Ind. June 28, 2016).

The cases cited by Defendants for the premise that a forum-selection clause cannot be given

effect to trump an arbitration provision are inapposite as those cases did not involve mandatory

forum-selection clauses like the one in the 2013 Agreement. For example, in *Patten Securities

Corp. v. Diamond Greyhound & Genetics, Inc.*, 819 F.2d 400 (3d Cir. 1987), the forum-selection

clause did not contain language mandating that any and all disputes shall be brought in certain courts, instead only containing language consenting to certain courts' jurisdiction. *Id.* at 407 n.3 ("'[T]he Company hereby consents and will submit to the jurisdiction of the courts of the State of New Jersey and of any federal court sitting in the State of New Jersey with respect to controversies arising under this Agreement.'"). Only in the face of this permissive consent language did the *Patten* Court find that "[c]onspicuously absent from the forum selection clause in the underwriting agreement is any reference to arbitration whatsoever." *Id.* at 407. In contrast, mandatory language has led other courts to reach a different result. For example, in *America Life Insurance Co. v. Parra*, 25 F. Supp. 2d 467, 477 (D. Del. 1998), the court distinguished *Patten* on this basis, holding:

> While the defendant in *Patten Securities* agreed to submit to a New Jersey court's jurisdiction, the defendant did not agree to exclude all other forums. The General Release Agreement's forum selection clause accomplishes a different purpose from the clause interpreted by the Third Circuit in *Patten Securities*. The General Release Agreement states "any interpretation or adjudication" related to the agreement is to take place "in a court located in the State of Delaware United States of America." This clause prevents a party from seeking to resolve disputes arising under the agreement in any forum other than a Delaware court.

Similarly, in this case, the 2013 Agreement's mandatory language—unlike the permissive language analyzed in *Patten*—prevents the Borrowers from seeking to resolve disputes under the agreement in any forum other than Marion County or Hamilton County, Indiana court.

The forum-selection language at issue in another case cited by Defendants, *Bank Julius Baer & Co., Ltd. v. Waxfield Ltd.*, 424 F.3d 278 (2d Cir. 2005), was similarly non-mandatory and therefore inapt here. *See id.* at 282 ("'[Waxfield] hereby irrevocably agrees that any Action *may* be heard and determined in such New York State court or in such Federal court.'") (emphasis added by court). The forum-selection clauses in the other cases relied on by Defendants contain similarly distinguishable terms. *See ChampionsWorld, LLC v. U.S. Soccer Fed'n, Inc.*, 487 F.

Supp. 2d 980, 989 (N.D. Ill. 2007) (providing for "personal jurisdiction in Illinois courts and venue in Chicago 'in connection with any action or proceeding arising out of or relating to the Agreement,'" rather than to any and all disputes and claims arising from the agreement); *Higman Marine Servs., Inc. v. BP Amoco Chem. Co.*, 114 F. Supp. 2d 593, 596 (S.D. Tex. 2000) (providing that "[l]itigation if any, shall be initiated in the United States District Court for the Southern District of Texas"). Defendants' cited caselaw provides no authority for reading the 2013 Agreement to require arbitration of the Borrowers' claims here.

> **2.**    **The 2013 Agreement's Arbitration Provisions Are Part of Its Non-Mandatory Dispute Resolution Procedures and Do Not Apply to the Claims Presented in this Case.**

In the 2013 Agreement, following the mandatory forum-selection provision is a non-mandatory provision for arbitration of disputes that are subjected first to an elective, informal mediation:

> ***In most cases***, any disputes or claims that Borrower may have can be resolved quickly and to Borrower's satisfaction by contacting Lender regarding such dispute or claims. In the unlikely event that Lender is unable to resolve a dispute or claim that Borrower may have, Borrower agrees to arbitrate any ***such dispute or claim***.

Dkt. 237-2, at 10 (§ 22(a)) (emphasis added). The mandatory language contained in the mandatory forum-selection provision is notably absent in this informal mediation and arbitration provision. There is no requirement that "any and all claims or disputes" by the Borrower be subjected to this informal mediation and arbitration requirement but, rather, a vague reference to "[i]n most cases." Also, while the mandatory forum-selection provision requires that any and all claims and disputes "shall be brought" in state or federal courts, the arbitration provision notes that Borrower "agrees" to arbitrate certain disputes, omitting the mandatory "shall be brought."

Further, contrary to Defendants' arguments at pages 9 and 10, even that non-mandatory agreement does not apply to "any and all claims and disputes" but only to "such dispute or

claim"—referring to any "dispute or claim" that Borrower may have elected to submit to informal mediation with Lender. While the arbitration provision goes on to define the types of disputes and claims that may be raised through this informal mediation and arbitration process broadly—in the language selectively excerpted by Defendants in their motion—that broad definition does not contain any further indicia of a mandate, instead only noting, "This agreement to arbitrate is to be broadly interpreted …." The "agreement to arbitrate" in the first place, however, still is only triggered in the limited circumstances indicated in the opening two sentences of the provision.

Even if this provision were read broadly, the Court should still deny Defendants' motion because the language of the provision as a whole does not compel its application to the claims the Borrowers have brought in this case.

> It is well established … that the federal policy favoring arbitration does not give us license to compel arbitration absent an agreement to do so. True, the scales tip in favor of arbitration when we *construe* an arbitration clause, but only after we find, as an initial matter, that an enforceable arbitration clause exists.

*Adamovic v. METME Corp.*, 961 F.2d 652, 654 (7th Cir. 1992) (emphasis in original) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *Graphic Communs. Union, Local No. 2 v. Chicago Tribune*, 794 F.2d 1222, 1225 (7th Cir. 1986)). In determining whether an enforceable arbitration clause exists here as an initial matter, the language of the arbitration clause in the 2013 Agreement—particularly in comparison with the unequivocally mandatory language of the forum-selection clause that precedes it—is clear that it only applies as to "such dispute or claim" that the Borrower has elected to subject to informal mediation for quick resolution. Plaintiffs did not invoke this permissive dispute-resolution procedure, and, therefore, it does not prevent them from pursuing their claims, as a class action, in this Court.

Defendants also wrongly argue that the disputes at issue fall within the temporal scope of the arbitration provisions as those provisions include disputes arising under both the 2013 Agreement and prior agreements. *See* Dkt. 237, at 10 (citing cases analyzing temporal scope of arbitration agreements). The Court need not even reach this issue, however, because, as demonstrated above, the arbitration provisions (a) are non-mandatory and (b) apply only to disputes or claims that a Borrower elects to submit first to informal mediation with the Lender. Moreover, the cases cited by Defendants as to the temporal limitations of arbitration clauses did not confront the same situation as the one before this Court, where prior agreements exist that do not contain an arbitration provision, the claims arise under those prior agreement, and the agreement containing a (non-mandatory) arbitration provision also contains a mandatory forum-selection clause. *See Ortiz v. Winona Mem'l Hosp.*, 2003 WL 21696524 (S.D. Ind. June 4, 2003) (no prior inconsistent agreement; mandatory arbitration provision; no countervailing mandatory forum-selection clause); *Furgason v. McKenzie Check Advance of Ind. Inc.*, 2001 WL 238129 (S.D. Ind. Jan. 31, 2001) (mandatory arbitration provision; no countervailing mandatory forum-selection clause); *In re Oil Spill by Amoco Cadiz*, 659 F.2d 789 (7th Cir. 1981) (no prior inconsistent agreement; mandatory arbitration provision; no countervailing mandatory forum-selection clause); *Campbell v. Verizon Wireless, LLC*, 2015 WL 416484 (S.D. Ala. Jan. 29, 2015) (no prior inconsistent agreement; mandatory arbitration provision; no countervailing mandatory forum-selection clause). Therefore, the Court should reject Defendants' argument based on the 2013 Agreement's arbitration provision and deny their motion.

### 3.    Any Ambiguity in the Scope of the Arbitration Provisions Should Be Resolved Against NextGear as the Drafter.

Alternatively, even if this Court were to find an ambiguity as to whether the arbitration provision applies to the claims brought in this case,[1] any such ambiguity would have to be resolved against NextGear as the drafter of the contract. As the Court held in *Showboat Marina Casino Partnership v. Tonn & Blank Construction*:

> When determining whether the parties have agreed to arbitrate a dispute, we apply ordinary contract principles governed by state law. In addition, when construing arbitration agreements, every doubt is to be resolved in favor of arbitration, and the parties are bound to arbitrate all matters, not explicitly excluded, that reasonably fit within the language used.
>
> However, parties are only bound to arbitrate those issues that by clear language they have agreed to arbitrate; arbitration agreements will not be extended by construction or implication. …
>
> Here, the Agreement expressly states that either party "*may*" institute arbitration if an informal resolution does not resolve the dispute. In turn and most peculiarly, the Agreement expressly states: "Any and all such disputes arising out of this Agreement, and/or Project *shall* be decided by a court of competent jurisdiction, within the State of Indiana." Finally, the Agreement states that any controversy which is unresolved following mediation "shall be settled by arbitration." The Agreement contains a definite ambiguity, and we agree with the trial court that such ambiguity is to be construed against Showboat, the drafter of the contract.

---

[1] Defendants' argument that ambiguities regarding arbitrability should be determined by an arbitrator is not well-founded. The decisions cited by Defendants specify that this would be the case only where the parties have "clearly and unmistakably" decided to submit the arbitrability question itself to an arbitrator. Dkt. 237, at 11 n.4. Defendants cite to § 22(c) of the 2013 Agreement as that clear and unmistakable intent here because of the citation to the JAMS arbitration rules; however, § 22(c) is unequivocally prefaced with the phrase, "Any dispute or claim subject to arbitration pursuant to this Section 22," showing that the arbitrability question is to be resolved **before** the triggering of the JAMS rules. Furthermore, Defendants ignore recent Supreme Court pronouncements on this issue, including that, "[w]here a party contests either or both matters [formation of arbitration agreement or enforceability or applicability to dispute at issue], the court must resolve the disagreement." *Granite Rock Co. v. Int'l Broth. of Teamsters*, 561 U.S. 287, 299-300 (2010) (internal quotation marks and citations omitted). Of course, here, Plaintiffs have not even brought suit under the 2013 Agreement, the contract that contains the arbitration provision at issue.

790 N.E.2d 595, 598-99 (Ind. Ct. App. 2003) (internal quotation marks and citations omitted); *see also Brockmann v. Brockmann*, 938 N.E.2d 831, 836 (Ind. Ct. App. 2010) ("[A]lthough we recognize a general policy in Indiana towards favoring arbitration, we will not construe an arbitration agreement to apply to matters not clearly delineated by the agreement. The agreement here did not clearly state … that it was to apply to any possible dispute that might arise between the parties for an indefinite period of time. The trial court erred in concluding otherwise."); *Daimler Chrysler Corp. v. Franklin*, 814 N.E.2d 281, 284-85 (Ind. Ct. App. 2004); *Craig v. Pepperidge Farm, Inc.*, 2010 WL 3447560, *6 (S.D. Ind. Aug. 27, 2010) ("Ambiguities may be construed against the drafter … without considering whether extrinsic evidence would clarify the parties' intent.").[2]

The court's opinion in *Showboat* is clearly instructive here. As in *Showboat*, the contract at issue contains a mandatory forum-selection clause denominating courts as the forum for "any and all" claims and disputes. Also, as in *Showboat*, the contract at issue then contains a provision regarding the availability of informal mediation and for arbitration of claims not resolved in that informal mediation. Unlike in *Showboat*, there is no mandatory "shall" language in that mediation and arbitration provision. Indeed, even in *Showboat*, the combination of the mandatory forum-selection, informal mediation, and arbitration provisions led to a finding of ambiguity that required

---

[2] Defendants' alternative argument that resolving any ambiguities regarding the applicability of the 2013 Agreement's arbitration provision would present a manageability issue is a canard. *See* Dkt. 237, at 16. As an initial matter, on the face of the 2013 Agreement, this Court can determine that the arbitration provision is not mandatory. Moreover, even if there were ambiguity, it is not as to the temporal scope of the arbitration provision but as to whether arbitration is mandatory in the first place based on language that is uniform across all affected class members, which ambiguity the *Showboat* decision shows is a facial ambiguity resolved against the drafter without any need for an individualized examination of parties' intent. Accordingly, the issue would not be decided on "10,000 individual motions to compel arbitration" but would be decided on the Court's disposition of this one motion. The ambiguity asserted as an alternative basis to deny Defendants' motion is not an ambiguity with inherently individualized grounds for resolution.

construction against the drafter. Here, without the "shall" language in the informal mediation and arbitration provision, this dispute can be resolved purely on the language of the agreement; but, at the very least, it should be resolved against the drafter—NextGear—for the same reasons as expressed in *Showboat*.

**B.       The Class Waiver Does Not Apply to Plaintiffs' Claims.**

The 2013 Agreement also contains a class-waiver provision, which Defendants urge this Court to apply here. The language of the agreement makes clear, however, that the class waiver unambiguously applies only to claims that arise under the 2013 Agreement and not under previous agreements.

Section 22(b) of the 2013 Agreement provides, "Any arbitration proceeding ***under this Note*** will take place on an individual basis. Class arbitrations and class actions of any kind (whether pursued through arbitration or through the courts) are not permitted. … Borrower agrees that, ***by entering into this Note***, Borrower is waiving its right to participate in any class action or other similar representative proceeding." Dkt. 237-2, at 10 (all-caps omitted; emphasis added). As an initial matter, this provision contemplates that arbitration is not the exclusive forum for resolving disputes brought by the Borrower as it references both class arbitration and class actions and both arbitration and "the courts." More importantly, by referring specifically to proceedings "under this Note," it shows the class waiver does not apply to disputes arising under prior agreements, such as the Floorplan Agreements at issue here.

In the 2013 Agreement, "'Note' shall mean ***this*** Demand Promissory Note and Loan and Security Agreement ***and all present and future amendments***, modifications, and addendums referenced herein." Dkt. 237-2, at 15 (Appendix A, ¶ 44) (emphasis added). Accordingly, by specifying disputes arising under "this Note" in the class waiver provision, the 2013 Agreement

11

expressly limits that class waiver to disputes arising under present and future agreement provisions and not to prior agreements between the parties. If NextGear intended to apply the class-waiver provision to prior agreements, it could have included language to that effect in § 22(b), but it clearly failed to do so. Accordingly, the class-waiver provision unambiguously applies only to disputes arising from the 2013 Agreement or *subsequent* amendments or iterations of that agreement, not to prior agreements such as the Floorplan Agreements on which Plaintiffs' claims are based. Notably, there is no dispute that those Floorplan Agreements do not contain a class waiver.

### C.    Independently, the 2013 Agreement Did Not Novate the Floorplan Agreements.

Even if the arbitration provision of the 2013 Agreement were mandatory for all disputes and the mandatory forum-selection provision were read out of the contract, the 2013 Agreement does not fully novate the prior Floorplan Agreements. Defendants assert in their motion, "The 2013 Note replaced and novated any prior agreements with [NextGear's predecessor entities]." Dkt. 237, at 4. There is, however, no support for this argument—and without it, Defendants' attempt to apply the dispute-resolution provisions of the 2013 Agreement to claims arising from charges and payments under the prior agreements must fail.[3]

Under Indiana law, novation requires a new contract be made with the intent to extinguish one already in existence. *Flexcel, Inc. v. COS 404, Inc.*, 458 F. Supp. 2d 935, 940 (S.D. Ind. 2006); (citing *Rose Acre Farms, Inc. v. Cone*, 492 N.E. 2d 61, 68 (Ind. Ct. App. 1986)). Novation requires: "(1) a valid existing contract; (2) the agreement of all parties to a new contract; (3) a valid new

---

[3] While Plaintiffs refer specifically to the arbitration provision of the 2013 Agreement here, novation would also be required to apply the class-waiver provision. However, as discussed above, even with a finding of novation, the class-waiver provision is limited temporally to disputes involving the 2013 Agreement or subsequent agreements.

contract; and (4) an extinguishment of the old contract in favor of the new one." *Id.* (citing *SSD Control Tech. v. Breakthrough Techs.*, 685 N.E.2d 1136, 1138 (Ind. Ct. App. 1997)). Even where a subsequent contract provides that it "supersedes" all prior contracts, without an express waiver of liabilities accrued under the prior contract, Indiana courts "will not conclude that a party to the first contract has waived its right to sue for breach of contract." *SSD*, 685 N.E.2d at 1138. In determining that a venue-selection provision of a prior contract governed claims that arose under that prior contract, the Indiana Court of Appeals affirmed a district court holding that:

> The 1996 contract clearly and unambiguously states that the new agreement "supersedes any prior written or oral agreements between the parties." [BTI], however, accurately points out that the new agreement contains no language stating that BTI waives claims already in existence against SSD, nor does it contain language that BTI released SSD from liability existing at the time the agreement was signed. Accordingly, the Court must conclude that the claims arising under the 1995 contract were not extinguished by the subsequent agreement, and because they arose under the old contract they are controlled by its terms.

*Id.* The same result should flow from the contract terms here.

The 2013 Agreement does not expressly provide at any point that § 13 novates the prior Floorplan Agreements, nor does it even contain the language dealt with by the *SSD* court, providing that the new agreement "supersedes" the prior agreements. Instead, it provides, "This Note and the other Loan Documents are intended by the Parties to be an amendment to and restatement of any prior Demand Promissory Note and Loan and Security Agreement or similar document or instrument … between Lender … and Borrower." Dkt. 237-2, at 9 (§ 13). Like the provision in *SSD*, moreover, the 2013 Agreement contains "no language stating that [Borrowers] waive[] claims already in existence against [Lenders], nor does it contain language that [Borrowers] released [Lenders] from liability existing at the time the agreement was signed." 685 N.E.2d 1138. As in *SSD*, therefore, there should be no novation found, and the forum and

13

dispute-resolution terms of the prior Floorplan Agreements should govern the claims arising under those contracts.

Additional language in § 13 of the 2013 Agreement further supports this conclusion. The provision goes on to state:

> Notwithstanding the foregoing, any advance and/or loan originated pursuant to one or more agreements between Borrower and [NextGear's predecessor entities] prior to the Effective Date for which indebtedness from Borrower remains outstanding as of the Effective Date, shall remain subject to the terms and conditions of such prior agreement(s) for all intents and purposes until such indebtedness has been indefeasibly repaid and satisfied in full.

Defendants attempt to limit the effect of the final sentence of § 13 with the *post-hoc* interpretation of that sentence by NextGear employee Adam Galema. Dkt. 237-1, at ¶ 4. Mr. Galema posits that that sentence's sole "purpose" was "to facilitate the transition of outstanding receivables by continuing the financial terms … applicable to those receivables."[4] *Id.* This rationalization of that sentence not only reads out "indefeasibly," as discussed below, but then it of necessity also reads out the provision that the terms and conditions of prior agreements are to apply to the affected transactions "***for all intents and purposes***" (Dkt. 237-2, at 9, § 13, emphasis added), not just for the one purpose identified by Mr. Galema. Moreover, Mr. Galema's identified "purpose" does not make sense: He would propose that the terms and conditions of the prior contracts apply to transactions arising under the prior contracts if the transactions are open at the time of the new contract but that the new contract's terms and conditions apply to ***completed*** transactions arising under prior contracts. Conceptually, this interpretation would produce the strange and

---

[4] Notably, Mr. Galema's declaration—although a flawed interpretation of § 13—demonstrates that NextGear understands that the 2013 Agreement's terms and conditions do not unambiguously apply to the class claims, as NextGear is attempting to rationalize (against the clear language of the agreement) that a novation was effected.

counterintuitive result that either party could engineer a dispute to apply the 2013 Agreement's financial or other terms to completed transactions, a recipe for chaos.

Defendants also wholly omit the term "indefeasibly" as they attempt to distinguish the final sentence of § 13 by stating that it is triggered by outstanding loans as of the execution of the 2013 Agreement that were "never repaid." Dkt. 237, at 15. They then argue that, even for this small universe of dealers who "never repaid," there could be no claim because "those debts cannot have given rise to any damages because a dealer did not lose money from a charge that it never paid[.]" *Id.* Defendants' entire line of analysis falls when the full text of § 13 is accounted for, specifically including the term "indefeasibly."

"Indefeasible" means "not to be defeated; not to be made void." Webster's New Twentieth Century Dictionary (Unabridged) (2d ed. 1983), at 928; *see also* Black's Law Dictionary (6th ed. 1990), at 769 (defining "indefeasible" as "[t]hat which cannot be defeated, revoked, or made void."). The requirement of § 13 of the 2013 Agreement that would provide expressly that the terms and conditions of a prior contract apply to an advance or loan is that it not have been "indefeasibly" repaid, not merely that it not have been repaid. Here, by definition, Plaintiffs' claims to recover portions of payments they made for certain advances or loans under the prior Floorplan Agreements means that those advances and loans have not been ***indefeasibly*** repaid because Plaintiffs now seek to defeat, revoke, or make void portions of those repayments. Defendants' arguments can only succeed if they wholly read "indefeasibly" out of the contract, an impermissible contract interpretation under Indiana law. *See Community Anesthesia & Pain Treatment, L.L.C. v. St. Mary Med. Ctr., Inc.*, 26 N.E.3d 70, 80 (Ind. Ct. App. 2015) ("[C]ourts should interpret a contract so as to harmonize its provisions, rather than place them in conflict, and we make all attempts to construe the language of a contract so as not to render any words, phrases,

15

or terms ineffective or meaningless.").[5] The agreement's own language simply does not support Defendants' proposed interpretation.

Therefore, that the prior Floorplan Agreements are not novated by the 2013 Agreement—particularly as to the resolution of disputes arising from advances or loans made under the prior Floorplan Agreements—is fully supported by the text of § 13, and the dispute-resolution provisions of the 2013 Agreement do not apply to Plaintiffs' claims.

## IV.   Conclusion

For these reasons, Defendants' Motion should be denied.

Respectfully submitted,


  /s/ Kerry A. Murphy
CATHERINE E. LASKY (La. Bar No. 28652)
*Pro Hac Vice*
KERRY A. MURPHY (La. Bar No. 31382)
*Pro Hac Vice*
**LASKY MURPHY LLC**
715 Girod Street, Suite 250
New Orleans, Louisiana 70130
Telephone: (504) 603-1500
Facsimile: (504) 603-1503
klasky@laskymurphy.com
kmurphy@laskymurphy.com


GLADSTONE N. JONES, III (La. Bar No. 22221) *Pro Hac Vice*
LYNN E. SWANSON (La. Bar No. 22650)
*Pro Hac Vice*
**JONES, SWANSON, HUDDELL & GARRISON, L.L.C**.
601 Poydras Street, Suite 2655

JAMES M. GARNER (La. Bar No. 19589)
*Pro Hac Vice*
RYAN D. ADAMS (La. Bar No. 27931)
*Pro Hac Vice*
MATTHEW M. COMAN
(La. Bar No. 23613)
*Pro Hac Vice*
**SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C.**
909 Poydras Street, Suite 2800
New Orleans, Louisiana  70112
Telephone: (504) 299-2100
Facsimile: (504) 299-2300
jgarner@shergarner.com
radams@shergarner.com
mcoman@shergarner.com

Kathleen A. DeLaney (# 18604-49)
**DELANEY & DELANEY LLC**
3646 North Washington Blvd.

---

[5] Defendants do not take issue with the provision in § 13 that indebtedness remains "outstanding" as of the effective date of the 2013 Agreement (*see* Dkt. 237, at 15), but that requirement is no more dispositive of the applicability of § 13 than the "indefeasibly repaid" requirement. The indefeasible nature of the repayment of that indebtedness itself evidences that the "indebtedness" remains "outstanding." In fact, the indebtedness remains outstanding as long as the repayment of the debt can be revoked or made void.

New Orleans, Louisiana 70130
Telephone: (504) 523-2500
Facsimile: (504) 523-2508
gjones@jonesswanson.com
lswanson@jonesswanson.com

CASSIE E. FELDER (La. Bar No. 27805)
*Pro Hac Vice*
**THE CASSIE FELDER LAW FIRM**
7515 Jefferson Hwy., #313
Baton Rouge, LA 70806
Main: (504) 232-1733
Cell: (504) 400-1127
cassie@cassiefelderlaw.com

Indianapolis, IN 46205
Telephone: (317) 920-0400
Facsimile: (317) 920-0404
Kathleen@delaneylaw.net

**COUNSEL FOR PLAINTIFFS AND THE CLASS**

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 24th day of August 2017, a copy of the foregoing was filed electronically. Notice of the filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

David J. Jurkiewicz
Paul D. Vink
BOSE MCKINNEY & EVANS, LLP
111 Monument Circle
Suite 2700
Indianapolis, IN 46204

Jason S. McCarter
Tracey K. Ledbetter
EVERSHEDS SUTHERLAND (US) LLP
999 Peachtree Street, NE, Suite 2300
Atlanta, GA 30309-3996

_/s/ Kerry A. Murphy_
Kerry A. Murphy

18