IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RED BARN MOTORS, INC., PLATINUM MOTORS, INC., and MATTINGLY AUTO SALES, INC., individually and on behalf of other members of the general public similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> COX AUTOMOTIVE, INC., NEXTGEAR CAPITAL, INC. F/K/A DEALER SERVICES CORPORATION, successor by merger with Manheim Automotive Financial Services, Inc., and JOHN WICK, <br><br> Defendants. | Case No. 1:14-cv-01589-TWP-DML |

### REPLY IN SUPPORT OF DEFENDANTS' MOTION TO MODIFY CLASS CERTIFICATION ORDER TO NARROW CLASS

Even faced with an unequivocal arbitration clause and class action waiver, Plaintiffs refuse to concede that dealers who signed the 2013 Note should be excluded from the class. In an effort to characterize the arbitration clause as "non-mandatory," Plaintiffs' opposition brief vacillates between contorting the plain language of the note and outright ignoring portions that do not fit its narrative. But any fair reading of the 2013 Note demonstrates that dealers who signed it expressly agreed to arbitrate "all disputes, claims and counterclaims" of any nature whatsoever with NextGear, including specifically those under prior agreements. Those same dealers also expressly covenanted not to participate in any class action against NextGear in any forum. Plaintiffs do not dispute (because they cannot) that nearly 10,000 dealers currently in the class signed the 2013 Note containing these provisions. Yet Plaintiffs insist that the plain language of the arbitration and class action waiver clauses should not be given effect.

Plaintiffs' attempts to read the plain, unambiguous, and comprehensive arbitration and class action waiver provisions out of the 2013 Note are mere linguistic games and ignore the strong statutory presumption in favor of arbitration. The Court should modify its Certification Order to exclude from the class any dealers who signed an agreement with NextGear containing an arbitration clause and/or class action waiver.[1]

## ARGUMENT AND AUTHORITY

### I.   The Arbitration Clause in the 2013 Note Is Mandatory and Expressly Covers All Disputes.

Dealers who entered into the 2013 Note with NextGear expressly agreed to arbitrate any "dispute or claim that Borrower may have," including "all disputes, claims and counterclaims" under any legal theory and arising at any time:

> In most cases, any disputes or claims that Borrower may have can be resolved quickly and to Borrower's satisfaction by contacting Lender regarding such dispute or claims. In the unlikely event that Lender is unable to resolve a dispute or claim that Borrower may have, Borrower agrees to arbitrate any such dispute or claim. This agreement to arbitrate is intended to be broadly interpreted, and includes (i) all disputes, claims and counterclaims arising out of or relating to this Note or any other Loan Document or any aspect of Borrower's relationship with Lender, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory; (ii) all disputes, claims and counterclaims that may have arisen before this Note or any prior contract or agreement between Borrower and Lender (including all disputes, claims and counterclaims relating to any marketing or advertising by Lender); and (iii) any disputes, claims and counterclaims that may arise after the termination of this Note and any other Loan Document. . . .

---

[1] Plaintiffs unfairly accuse Defendants of not raising the arbitration issue timely. However, as Plaintiffs themselves acknowledge, Defendants argued that the existence of arbitration agreements raised individualized issues in response to the class certification motion *last year*. (*See, e.g.*, Defs.' Resp. in Opp'n to Pls.' Mot. for Class Certification [Doc. 160] at 20-21.) Defendants further raised it at oral argument on that motion. (Hr'g Tr. [Doc. 202] 13:17-15:2.) The Court in its Certification Order acknowledged the issue and invited the parties to petition the Court to narrow the class or to stipulate to the exclusion of dealers whose claims must be arbitrated. (Certification Order [Doc. 220] at 37 n.5.) Because Plaintiffs refused to stipulate (despite the plain language of the 2013 Note), Defendants filed the current motion.

(NextGear 2013 Note [Doc. 237-2] § 22(a), NG_005157.)  The United States Supreme Court has been crystal clear that an arbitration agreement is to be read broadly and respected by the courts: "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

The Federal Arbitration Act establishes that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," thus rejecting "widespread judicial hostility to arbitration agreements."  9 U.S.C. § 2; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).  The FAA reflects "both a 'liberal federal policy favoring arbitration,' . . . and the 'fundamental principle that arbitration is a matter of contract.'"  *Concepcion*, 563 U.S. at 339 (citations omitted).  "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, . . . and enforce them according to their terms." *Id.*

Plaintiffs' opposition brief twists the arbitration agreement in the 2013 Note until it is nearly unrecognizable.  Plaintiffs first invent a mediation process out of whole cloth, claiming that Section 22 is "a non-mandatory provision for arbitration of disputes that are subjected first to an elective, informal mediation."  (Pls.' Opp'n Br. [Doc. 241] at 6.)  But Section 22 contains no reference to mediation at all; the first sentence of Section 22(a) is plainly a prefatory statement encouraging dealers to consider contacting NextGear before proceeding directly to arbitration.  Plaintiffs' description of this as a clause requiring mediation is indicative of the strained—and sometimes bizarre—contractual analysis throughout their opposition brief.

3

The next two sentences of Section 22(a) demonstrate the fallacy of Plaintiffs' argument. "In the unlikely event that Lender is unable to resolve *a dispute or claim that Borrower may have*, Borrower agrees to arbitrate *any such dispute or claim*." (NextGear 2013 Note [Doc. 237-2] § 22(a), NG_005157 (emphasis added).) As a grammatical matter, the antecedent to "any such dispute or claim" is the phrase "a dispute or claim that Borrower may have" from the same sentence, not the phrase "[i]n most cases" from an earlier sentence (which is what Plaintiffs contend). In other words, all disputes raised by a dealer borrower must be arbitrated.

The third sentence of Section 22 further confirms the breadth of the phrase "any such dispute or claim":

> This agreement to arbitrate is intended to be *broadly interpreted*, and includes (i) *all disputes, claims and counterclaims* arising out of or relating to this Note or any other Loan Document *or any aspect of Borrower's relationship with Lender, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory*; (ii) *all disputes, claims and counterclaims that may have arisen before this Note or any prior contract or agreement between Borrower and Lender* (including all disputes, claims and counterclaims relating to any marketing or advertising by Lender); and (iii) any disputes, claims and counterclaims that may arise after the termination of this Note and any other Loan Document.

(*Id.* (emphasis added).) Plaintiffs' repeated characterization of the foregoing provision as "non-mandatory" is frivolous. Dealers who signed the 2013 Note agreed to arbitrate "all disputes, claims and counterclaims," regardless of the legal theory or the timing of the dispute. It is hard to envision how the parties could have crafted broader or more mandatory language.

By its terms, the arbitration agreement in the 2013 Note applies to the claims of the class—claims that arise in contract, statute, and/or fraud or misrepresentation, and that arose before the effective date of the note. Plaintiffs have raised no grounds for revoking the agreement; nor can this Court ignore it. Further, there is no challenge to Defendants' evidence that the nearly 10,000 dealers identified in the opening brief signed arbitration agreements. The

4

Federal Arbitration Act and Supreme Court precedent compel this Court to defer to the arbitration agreement by excluding dealers who signed such an agreement from the class.

## II. The Arbitration Clause in the 2013 Note Includes Any Dispute or Claim Arising Under Dealers' Prior Notes.

Plaintiffs' argument against novation of certain dealers' prior contracts sets up a straw man.  The 2013 Note unambiguously states that the arbitration clause applies to "all disputes, claims and counterclaims that may have ***arisen before this Note or any prior contract or agreement between Borrower and Lender*** (including all disputes, claims and counterclaims relating to any marketing or advertising by Lender)."  (*Id.* (emphasis added).)  Plaintiffs inexplicably omit any reference to this explicit language in their protracted novation discussion.  (Pls.' Opp'n Br. [Doc. 241] at 12-16.)  It is not necessary for the Court to decide whether this language creates a "novation" of the entire contract.[2]  If there is a dispute relating to transactions under prior contracts (which is precisely what Plaintiffs allege in this case), then the parties must arbitrate.  Plaintiffs cannot simply pick and choose isolated sections of the 2013 Note to enforce while ignoring others.[3]

Dealers who signed the 2013 Note agreed to arbitrate all disputes, including those "that may have arisen before this Note or any prior contract or agreement between Borrower and Lender."  (NextGear 2013 Note [Doc. 237-2] § 22(a), NG_005157.)  Nothing about that

---

[2] *But see infra* note 6.

[3] Plaintiffs admit in their opposition brief that they are cherry-picking certain sections of the 2013 Note to support their claim that arbitration is permissive: "The 'agreement to arbitrate' . . . is only triggered in the limited circumstances indicated in the opening two sentences of the provision."  (Pls.' Opp'n Br. [Doc. 241] at 7.)  Plaintiffs do not explain why the Court is limited to reviewing the first two sentences while ignoring the remainder of the arbitration clause, including the very next sentence stating that "all disputes, claims and counterclaims"—whether arising under the 2013 Note or a prior note—must be arbitrated.  One of the most sacrosanct canons of contract construction is that "[c]ontractual phrases are not read in isolation; rather, the contract must be read as a whole."  *Lawson v. Sun Microsys., Inc.*, 791 F.3d 754, 762 (7th Cir. 2015).

language is equivocal or difficult to understand.  A party's agreement to arbitrate a claim is valid and enforceable even if the claim arose before the agreement was made.  *Furgason v. McKenzie Check Advance of Ind., Inc.*, No. IP00-121-C H/G, 2001 WL 238129, at *2 (S.D. Ind. Jan. 3, 2001) (ordering arbitration of claim arising from contract that did not contain arbitration terms based on later agreement to arbitrate disputes "arising from . . . any prior agreement" between company and customer); *see also Ortiz v. Winona Mem'l Hosp.*, No. 1:02-CV-1975-JDT-TAB, 2003 WL 21696524, at *2 n.2 (S.D. Ind. June 4, 2003) (finding that lack of "temporal limitation" in arbitration agreement indicates claims based on acts that occurred before execution of agreement are subject to arbitration).  Plaintiffs cite no case law to the contrary and offer no justification for violating the Federal Arbitration Act by interpreting the arbitration agreement inconsistent with its express terms.  Dealers who signed an arbitration agreement should therefore be excluded from the class, even if their claims arose prior to the 2013 Note.

**III.     Other Courts Have Already Rejected Plaintiffs' Forum Selection Clause Argument.**

It is settled law that a forum selection clause does not negate the effect of an arbitration clause.  As the Northern District of Illinois has explained, "Courts will only find a waiver of arbitration rights when, under the totality of the circumstances, the defaulting party acted inconsistently with the arbitration right."  *ValuePart, Inc. v. Farquhar*, No. 14-cv-3004, 2014 WL 4923179, at *5 (N.D. Ill. Sept. 29, 2014) (internal punctuation and citation omitted).  The court in *ValuePart* analyzed whether arbitration should be compelled in light of a forum selection clause providing that certain courts "shall have jurisdiction over all actions, suits and disputes" between the parties and establishing that those courts were the "sole and exclusive tribunals for resolution of any such action, suit or dispute."  *Id.* at *4.  It concluded that the forum selection clause did not specifically exclude or prohibit arbitration—even though state and

federal courts were the exclusive tribunals for resolution of disputes—and therefore held that the dispute before it should be arbitrated:

> In light of the federal policy that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, and the requirement that waiver of a mandatory arbitration provision be explicit, under these circumstances the forum selection clause does not trump the provisions of the mandatory arbitration clause.

*Id.* at *6.

Indiana courts have similarly rejected arguments that a forum selection clause and consent to jurisdiction "demonstrate an intention not to arbitrate." As the Indiana Supreme Court has pointed out, "[i]t is not uncommon to find both arbitration and forum selection clauses in agreements." *ISP.com LLC v. Theising*, 805 N.E.2d 767, 776-77 (Ind. 2004) (directing lower court to compel arbitration).[4] Plaintiffs make no attempt to dispute the logic of, or to distinguish the facts before, the courts in *ValuePart* or *Theising*. This Court should follow that logic and find that arbitration is appropriate notwithstanding the existence of a forum selection clause.

In this case, the forum selection clause and the arbitration clause in the 2013 Note are easily harmonized. *Lawson*, 791 F.3d at 762 (Indiana courts prefer interpretation that harmonizes contract provisions); *cf. Moses H. Cone*, 460 U.S. at 24-25 ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, ***whether the problem at hand is the construction of the contract language itself*** or an allegation of waiver, delay, or a like defense to arbitrability." (emphasis added)). Some issues cannot be arbitrated—for example, motions to compel arbitration, proceedings to enforce or vacate an arbitration award, and litigation with dealers who

---

[4] The 2013 Note requires application of Indiana law, except that the arbitration and other dispute resolution provisions are governed by the Federal Arbitration Act. (*See* NextGear 2013 Note [Doc. 237-2] § 20, NG_005157.) Thus, California law is not at issue for the subset of dealers affected by this motion.

opted out of the arbitration provision in accordance with its terms—and those issues shall be litigated only in certain courts. All other disputes, however, should be arbitrated pursuant to the contract's mandatory arbitration agreement.

Most of the cases Plaintiffs cite about "mandatory" forum selection clauses are inapposite because they do not involve arbitration provisions. For example, *Muzumdar v. Wellness International Network, Ltd.* considered whether a mandatory forum selection clause trumped a later permissive forum selection clause—not whether a forum selection clause trumped an arbitration agreement. 438 F.3d 759, 761 (7th Cir. 2006). Similarly, the other cases Plaintiffs cite do not arise in the context of the FAA or compelling arbitration. *See Paper Exp., Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753 (7th Cir. 1992) (not involving arbitration clause); *Coral Chem. Co. v. Chemetall US, Inc.*, No. 4:16-cv-00023-RLY-DML, 2016 WL 3521952 (S.D. Ind. June 28, 2016) (not involving arbitration clause, and applying New Jersey law). And the *Parra* case that Plaintiffs cite in no way suggests arbitration and forum selection clauses are contradictory. The agreement at issue in that case only contained a forum selection clause, while a separate, ***previously-terminated*** agreement contained an arbitration provision. *See Am. Life Ins. Co. v. Parra*, 25 F. Supp. 2d 467, 469-70, 476-77 (D. Del. 1998).

The forum selection provision and the arbitration provision in this case are consistent with one another, the contract contains no waiver of the arbitration agreement, and doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. Dealers who signed mandatory arbitration agreements with NextGear are therefore subject to arbitration and must be excluded from the class.

**IV.      Plaintiffs' Efforts to Avoid the Plain Language of the 2013 Note Are Without Merit.**

None of Plaintiffs' hodgepodge of arguments about the terms of the 2013 Note provides grounds for ignoring the plain terms of the agreement to arbitrate.

### A. The Class Action Waiver in the 2013 Note Is Applicable and Enforceable.

There is zero textual support for Plaintiffs' argument that the class action waiver in the 2013 Note is limited to disputes about transactions under that particular note. The class action waiver provision states that "class arbitrations and class actions *of any kind* . . . are not permitted" and that the "Borrower is waiving its right to participate *in any class action* or other similar representative proceeding." (NextGear 2013 Note [Doc. 237-2] § 22(b), NG_005157 (capitalization omitted, emphasis added).) That language is unambiguous and comprehensive. As discussed above, *all* claims brought by a dealer who signed the 2013 Note are subject to individual arbitration, regardless of when they arose or the legal theory advanced. The reference in the first sentence of Section 22(b) to "any arbitration proceeding under this note" covers all disputes included within the arbitration clause in the preceding subparagraph, which expressly includes "all disputes, claims and counterclaims that may have arisen before this Note or any prior contract or agreement between Borrower and Lender." (*Id.* § 22(a), (b), NG_005157 (capitalization omitted).) The 2013 Note goes on to provide that "by entering into this Note," dealers agreed to give up their "right to participate in any class action or other similar representative proceeding." (*Id.* § 22(b), NG_005157 (capitalization omitted).) Nothing in these sentences suggests that the class waiver applies only to claims arising from transactions made under the 2013 Note. Thus, dealers who agreed to the class waiver should be excluded from the class.

### B. Plaintiffs Are Wrong (Again) About Construing Ambiguities Against the Drafter.

As shown in Defendants' opening brief and above, there is no ambiguity in the arbitration provision. Dealers who signed the 2013 Note agreed to arbitrate all claims they might have against NextGear on an individual basis:

9

(a) In most cases, any disputes or claims that Borrower may have can be resolved quickly and to Borrower's satisfaction by contacting Lender regarding such dispute or claims. In the unlikely event that Lender is unable to resolve a dispute or claim that Borrower may have, Borrower agrees to arbitrate any such dispute or claim. This agreement to arbitrate is intended to be broadly interpreted, and includes (i) all disputes, claims and counterclaims arising out of or relating to this Note or any other Loan Document or any aspect of Borrower's relationship with Lender, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory; (ii) all disputes, claims and counterclaims that may have arisen before this Note or any prior contract or agreement between Borrower and Lender (including all disputes, claims and counterclaims relating to any marketing or advertising by Lender); and (iii) any disputes, claims and counterclaims that may arise after the termination of this Note and any other Loan Document. . . .

(b) ANY ARBITRATION PROCEEDING UNDER THIS NOTE WILL TAKE PLACE ON AN INDIVIDUAL BASIS. CLASS ARBITRATIONS AND CLASS ACTIONS OF ANY KIND (WHETHER PURSUED THROUGH ARBITRATION OR THROUGH THE COURTS) ARE NOT PERMITTED. BORROWER AGREES THAT IT MAY BRING CLAIMS AGAINST LENDER ONLY IN ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. BORROWER AGREES THAT, BY ENTERING INTO THIS NOTE, BORROWER IS WAIVING ITS RIGHT TO PARTICIPATE IN ANY CLASS ACTION OR OTHER SIMILAR REPRESENTATIVE PROCEEDING. . . .

(NextGear 2013 Note [Doc. 237-2] § 22(a), (b), NG_005157.) Nothing in the 2013 Note draws this agreement to arbitrate into question. Unlike the arbitration provision at issue in the *Showboat Marina* case, this provision is not permissive or ambiguous; the "clear language" of the provision shows that the parties "have agreed to arbitrate." *Cf. Showboat Marina Casino P'ship v. Tonn & Blank Constr.*, 790 N.E.2d 595, 598 (Ind. Ct. App. 2003). Thus, there is no reason to apply secondary canons of construction to the arbitration agreement.[5]

---

[5] The *Showboat Marina* case and other cases cited on page 10 of Plaintiffs' opposition brief have limited precedential value here, as they appear to be decided under Indiana law rather than the Federal Arbitration Act. To the extent these cases depart from a presumption of arbitration, they are preempted by federal law. *See Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421 (2017) (holding that FAA preempts Kentucky case law governing formation of arbitration agreements); *Moses H. Cone*, 460 U.S. at 24-25 (Section 2 of FAA "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of

Further, as has been briefed at some length on summary judgment, Plaintiffs are incorrect when they argue that any ambiguity must be construed against the drafter of a contract. First, a court should construe a contract against the drafter only as a last resort, when all other rules of construction fail. *Bishop v. Sanders*, 624 N.E.2d 64, 68 (Ind. Ct. App. 1993); *see also St. Paul Fire & Marine Ins. Co. v. Schilli Transp. Servs. Inc.*, 672 F.3d 451, 456 (7th Cir. 2012) ("We construe a contract against the drafter only if we cannot ascertain the parties' intent from all the ordinary interpretive guides." (quoting *In re Kemper Ins. Cos.*, 819 N.E.2d 485, 490 (Ind. Ct. App. 2004))). (*See also* NextGear's Opp'n to MPSJ [Doc. 207] at 14-16.) That rule of construction certainly should not be applied here, where Plaintiffs cannot "offer an interpretation of the Notes that is reasonably consistent with the contract language." *BKCAP, LLC v. CAPTEC Franchise Tr. 2000-1*, 572 F.3d 353, 361 (7th Cir. 2009). Plaintiffs' construction of the arbitration agreement is inconsistent with the broad, mandatory language of that agreement and should be rejected.

Second, where the contract is ambiguous, Indiana law requires a court to consider extrinsic evidence. *Univ. of S. Ind. Found. v. Baker*, 843 N.E.2d 528, 535 (Ind. 2006). (*See also* NextGear's Opp'n to MPSJ [Doc. 207] at 12-14.) Plaintiffs themselves rely on a case that holds extrinsic evidence is necessary if the arbitration provision is found ambiguous. In *Adamovic v. METME Corp.*, 961 F.2d 652 (7th Cir. 1992), the court was asked to interpret an ambiguous arbitration agreement to determine whether the parties had agreed to arbitrate. The court

---

the Act," which requires that "questions of arbitrability . . . be addressed with a healthy regard for the federal policy favoring arbitration," and that "any doubts concerning the scope of arbitrable issues . . . be resolved in favor of arbitration"). These cases are also distinguishable on their facts, as the arbitration provision in *Brockmann* was arguably ambiguous as to which disputes were subject to arbitration, and the party seeking to compel arbitration in *Franklin* had not signed the arbitration agreement. *See Brockmann v. Brockmann*, 938 N.E.2d 831 (Ind. Ct. App. 2010); *Daimler Chrysler Corp. v. Franklin*, 814 N.E.2d 281 (Ind. Ct. App. 2004).

11

concluded that the contract was ambiguous, and "[a]mbiguities are best resolved by turning to extrinsic evidence," so it remanded the case to allow the district court to consider extrinsic evidence of the meaning of the provision. *Id.* at 654. Thus, if the Court somehow finds that the arbitration agreement in the 2013 Note is ambiguous, it must consider extrinsic evidence of the parties' intent—which is an individualized issue demonstrating why the dealers who signed the 2013 Note should not be part of the class.

### C. The Term "Indefeasibly" Does Not Support Plaintiffs' Strained Interpretation.

The final sentence of Section 13 of the 2013 Note does not change the applicability and breadth of the arbitration agreement. Section 13 provides in relevant part:

> AMENDMENT; MERGER. This Note and the other Loan Documents are intended by the Parties to be an amendment to and restatement of any prior Demand Promissory Note and Loan and Security Agreement or similar document or instrument (including any prior promissory note, loan and security agreement or similar contract) between Lender (or any predecessor of Lender, including Dealer Services Corporation and/or Manheim Automotive Financial Services, Inc.) and Borrower. . . . Notwithstanding the foregoing, any advance and/or loan originated pursuant to one or more agreements between Borrower and [DSC or MAFS] prior to the Effective Date [of the 2013 Note] for which indebtedness from Borrower remains outstanding as of the Effective Date, shall remain subject to the terms and conditions of such prior agreement(s) for all intents and purposes until such indebtedness has been indefeasibly repaid and satisfied in full.

(NextGear 2013 Note [Doc. 237-2] § 13, NG_005156.)[6] By its terms, the last sentence of Section 13 only applies to transactions as to which (1) "indebtedness . . . remains outstanding as of the Effective Date," and (2) such indebtedness still exists (*i.e.*, has not been "indefeasibly repaid and satisfied in full"). NextGear's records show that only 174 dealers out of nearly 10,000 who signed the 2013 Note fulfill these two elements. (8/10/2017 Declaration of Adam

---

[6] While the Court need not conclude that the 2013 Note novated prior notes in order to rule in Defendants' favor on this motion, the language of Section 13 that the new note is an "amendment to and restatement of" any prior note could not be clearer.

12

Galema [Doc. 237-1] ¶ 9.) Thus, the last sentence of Section 13 is completely irrelevant to over 98% of dealers who executed a 2013 Note. Without question, those dealers must be excluded from the class.

Plaintiffs' argument that a debt is never "indefeasibly repaid and satisfied in full" because a dealer could theoretically sue to recover past payments produces absurd results. For example, if taken to its logical conclusion, Plaintiffs' argument means that NextGear will have a security interest in a dealer's collateral forever, regardless of whether that dealer stops borrowing and pays off NextGear, since some "portions of [a dealer's] repayments" could theoretically be revoked or made void through litigation. (*Compare* Pls.' Opp'n Br. [Doc. 241] at 15-16 & n.5, *with* NextGear 2013 Note [Doc. 237-2] § 17, NG_005157.) Dealers currently in the class might be surprised (and unhappy) to learn that their debts to NextGear are never extinguished. A better and more commercially reasonable reading of Section 13—one that actually harmonizes the contract provisions—is to interpret the prior DSC note as applicable to specific advances or loans outstanding as of the effective date of the new note until those loans are fully repaid in good funds. That is exactly what the last sentence of Section 13 says.

Plaintiffs' interpretation of Section 13 finds no support in the text, and even if it did, it would apply to fewer than 2% of dealers who signed the 2013 Note. The rest have unequivocally agreed to arbitrate any dispute they may have.

In any event, Section 13 and Section 22 can and must be read in harmony, meaning all dealers signing the 2013 Note must arbitrate on an individual basis and, as such, must be excluded from the class. (NextGear 2013 Note [Doc. 237-2] § 22(a), NG_005157.)

**CONCLUSION**

The question before the Court is not a difficult one. Is there an enforceable agreement to arbitrate? Yes; dealers who signed the 2013 Note "agree[d] to arbitrate" any "dispute or claim that [they] may have." That being so, the Court must not preclude enforcement of the arbitration agreement according to its terms with an overbroad class. Plaintiffs invite this Court to err by (1) sidestepping the Federal Arbitration Act and relevant Supreme Court precedent favoring the enforcement of arbitration clauses in favor of Plaintiffs' strained interpretation of the arbitration agreement and (2) advancing arguments that other courts have already rejected. The 2013 Note plainly states that all claims and disputes must be arbitrated, even claims or disputes that arose under prior notes. The 2013 Note equally clearly prohibits dealers from participating in a class action. For all these reasons, the Court should exclude from the class any dealer who signed an agreement with NextGear containing an arbitration clause and/or class action waiver.

Respectfully submitted, this 31st day of August, 2017.

    *s/ Tracey K. Ledbetter*
Jason S. McCarter (*pro hac vice*)
Tracey K. Ledbetter (*pro hac vice*)
EVERSHEDS SUTHERLAND (US) LLP
999 Peachtree Street, NE, Suite 2300
Atlanta, GA 30309-3996
(404) 853-8000
(404) 853-8806 fax
jasonmccarter@eversheds-sutherland.com
traceyledbetter@eversheds-sutherland.com

David J. Jurkiewicz (18018-53)
Paul D. Vink (23785-32)
BOSE McKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
(317) 684-5000
(317) 684-5173 fax
djurkiewicz@boselaw.com

pvink@boselaw.com

*Attorneys for Defendants Cox Automotive, Inc., NextGear Capital, Inc. f/k/a Dealer Services Corporation, and John Wick*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing has been served upon the following counsel of record via the Court's electronic service notification system, this 31st day of August, 2017:

| | |
|---|---|
| Ryan D. Adams<br>James M. Garner<br>Matthew M. Coman<br>Jacob A. Airey<br>SHER GARNER CAHILL RICHTER<br>KLEIN & HILBERT, L.L.C.<br>radams@shergarner.com<br>jgarner@shergarner.com<br>mcoman@shergarner.com<br>jairey@shergarner.com | Catherine E. Lasky<br>Kerry A. Murphy<br>LASKY MURPHY LLC<br>klasky@laskymurphy.com<br>kmurphy@laskymurphy.com |
| Cassie E. Felder<br>THE CASSIE FELDER LAW FIRM<br>cassie@cassiefelderlaw.com | Gladstone N. Jones, III<br>Lynn E. Swanson<br>JONES, SWANSON, HUDDELL &<br>GARRISON, LLC<br>gjones@jonesswanson.com<br>lswanson@jonesswanson.com |
| Kathleen A. DeLaney<br>DELANEY & DELANEY LLC<br>Kathleen@delaneylaw.net | Lisa Brener<br>BRENER LAW FIRM, LLC<br>lbrener@brenerlawfirm.com |

                                       *s/ Tracey K. Ledbetter*
                                       Tracey K. Ledbetter