UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RED BARN MOTORS, INC., <br> PLATINUM MOTORS, INC., and <br> MATTINGLY AUTO SALES, INC., <br> <br> Plaintiffs, <br> <br> v. <br> <br> NEXTGEAR CAPITAL, INC. f/k/a DEALER <br> SERVICES CORPORATION, <br> COX ENTERPRISES, INC., <br> COX AUTOMOTIVE, INC., and <br> JOHN WICK, <br> <br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )  Case No. 1:14-cv-01589-TWP-DKL <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## <u>ORDER ON MOTIONS FOR SUMMARY JUDGMENT</u>

This matter is before the Court on a Motion for Summary Judgment filed by Defendants

NextGear Capital, Inc., formerly known as Dealer Services Corporation ("NextGear"; sometimes

referred to as "DSC"), Cox Automotive, Inc., and John Wick ("Mr. Wick") (collectively,

"Defendants") (Filing No. 192), and a Motion for Partial Summary Judgment on Breach of

Contract Claim filed by Plaintiffs Red Barn Motors, Inc., Platinum Motors, Inc., and Mattingly

Auto Sales, Inc. (collectively, "Plaintiffs") (Filing No. 194).

After entering into contracts with NextGear whereby the Plaintiffs were provided lines of

credit for financing their used car dealership operations, the Plaintiffs discovered that they were

being charged interest and fees on money that had not yet actually been paid on their behalf. The

Plaintiffs initiated this lawsuit against the Defendants, asserting claims for breach of contract,

constructive fraud, unjust enrichment, tortious interference, violation of the Racketeer Influenced

and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and a RICO conspiracy. The

Defendants filed a motion to dismiss the Plaintiffs' claims, and the Court dismissed the unjust enrichment, tortious interference, and RICO conspiracy claims. The Court also dismissed the breach of contract and constructive fraud claims against Cox Automotive and Mr. Wick and all claims against Defendant Cox Enterprises, Inc. (Filing No. 186 at 42).

The Defendants have moved for summary judgment on the Plaintiffs' remaining claims for breach of contract and constructive fraud against NextGear and the substantive RICO claim against NextGear, Cox Automotive, and Mr. Wick. The Plaintiffs have moved for partial summary judgment on their breach of contract claim against NextGear. For the following reasons, the Court grants in part and denies in part the Defendants' Motion for Summary Judgment and denies the Plaintiffs' Motion for Partial Summary Judgment.

## I.   **BACKGROUND**

The Plaintiffs are used car dealerships. Red Barn is a small, family-owned and operated used car dealership in Denham Springs, Louisiana, which began operations in 2010 (Filing No. 197-6 at 7–8). Platinum Motors was a small used car dealership located in Chesapeake, Virginia. It operated from about 2009 to 2014. The records of the Virginia State Corporation Commission indicate that Platinum Motors' corporate existence has been terminated (Filing No. 197-9 at 5, 20–21; Filing No. 197-38). Mattingly Auto sells used cars at its Hardinsburg, Kentucky dealership, which began operations in approximately 2003 (Filing No. 197-8 at 6).

Defendant NextGear is an automotive financing company that offers revolving line-of-credit financing to used car dealers throughout the United States. This financing is sometimes called a "floor plan".  Used car dealers utilize floor plans to purchase vehicle inventory, which then is resold at their used car dealerships (Filing No. 197-24 at 2; Filing No. 188 at 2–3). NextGear was initially formed as Dealer Services Corporation and began doing business in 2005 as an

independent automotive financing company (Filing No. 197-24 at 1). Dealer Services Corporation was acquired by Defendant Cox Automotive on March 1, 2012. In January 2013, a Cox Automotive affiliate and former competitor of Dealer Services Corporation was merged into Dealer Services Corporation and the merged companies were renamed NextGear. *Id.* Dealer Services Corporation did not change its general practices regarding charging interest after it was acquired by Cox Automotive or after its merger and being renamed NextGear. Cox Automotive has indirect oversight of NextGear but does not direct NextGear's day-to-day interest and fee structure, contract terms, or default reporting. *Id.* at 2.

Defendant Mr. Wick is the senior vice president of lending and international operations for NextGear. Before working in his current position, Mr. Wick worked as general counsel and corporate secretary for NextGear. He has been with the company since March 2005 when it started operations as Dealer Services Corporation. In his roles with the company, Mr. Wick has provided legal advice and participated in general executive management. Mr. Wick has not directed NextGear's operations for sales representations, interest calculations, or default reporting (Filing No. 197-29 at 1).

NextGear's floor plan agreements allow used car dealers to purchase vehicles for resale from auctions and other locations without having to pay cash for the vehicles. Instead, the dealer puts the vehicle purchase on the floor plan agreement, and NextGear takes the credit risk while the dealer tries to sell the vehicle. A floor plan allows dealers to obtain possession of vehicles for their inventory on the date of purchase but defer payment until later. When a dealer floor plans a vehicle, NextGear becomes obligated to pay the auction (or other seller) the price of the vehicle. Under the floor plan agreements, the car dealers agree to pay the amount borrowed, interest, and fees to NextGear in exchange for the credit and financing. Dealers grant a security interest in the

purchased vehicles and in their inventory to NextGear to secure the dealers' debt. After a dealer

sells the financed vehicle or the transaction reaches the maturity date, the dealer must pay the debt

to NextGear (Filing No. 197-24 at 2). NextGear's floor plan agreement—formally called a

"Demand Promissory Note and Security Agreement"—is "generally a take-it-or-leave-it" contract

(Filing No. 196-1 at 24).

Red Barn executed a NextGear floor plan agreement in July 2011, which provided a line

of credit to Red Barn in the amount of $200,000.00 (Filing No. 197-31).  From July 2011 through

March 2013, Red Barn financed more than five hundred vehicles using NextGear's floor plan

agreement (Filing No. 197-15).  Red Barn generated a daily report using NextGear's online

account portal, which showed Red Barn's transactions that had been floor planned with NextGear

(Filing No. 197-6 at 34–35).

Platinum Motors executed a floor plan agreement with NextGear in May 2011, which

provided a line of credit to Platinum Motors in the amount of $35,000.00 (Filing No. 197-37).  In

June and July 2011, Platinum Motors financed approximately twenty vehicles using NextGear's

floor plan agreement (Filing No. 197-20).

Mattingly Auto executed NextGear floor plan agreements in October 2006 and February

2009, which provided a line of credit to Mattingly Auto in the amount of $100,000.00 (Filing No.

197-34; Filing No. 197-35). From November 2006 through May 2012, Mattingly Auto financed

approximately one hundred sixty vehicles using NextGear's floor plan agreement (Filing No. 197-

17).

Pursuant to the floor plan agreements, NextGear could charge interest to the Plaintiffs for

their use of NextGear's credit and financing. The agreements provide,

> Interest shall accrue on all Dealer Liabilities in accordance with the following: (a)
> All outstanding Liabilities under this Note shall accrue interest (based upon a 360

day year), on a per annum basis and shall be compounded daily at the Base Rate
plus the applicable Contract Rate, Risk Rate, or Default Rate until paid in full.

(Filing No. 197-31 at 4.)

The contracts define "Liabilities" as,

any and all Advances, debts, DSC Financed Inventory Liabilities, financial
obligations, DSC Administrative Fees, DSC Universal Fees, Interest, Floorplan
Fees, NSF fees, late fees, charges, expenses, attorney fees, costs of collection,
covenants, and duties owing, arising, due or payable from Dealer to DSC of any
kind or nature, present o[r] future, under any instrument, guaranty, or other
document whether arising under this Note or any other agreement, whether directly
or indirectly (including those acquired by assignment), absolute or contingent,
primary or secondary, due or to become due, now existing or hereafter arising and
however acquired.

*Id.* at 3. Thus, under the parties' agreements, interest accrues on "Liabilities," which include

"Advances". The agreements define "Advances" as "any loan or payment in any amount made

pursuant to this Note by DSC to Dealer or on Dealer's behalf to any third party." *Id.* at 2.

NextGear began charging interest to the Plaintiffs on the "flooring date" (the date when the

Plaintiffs used the floor plan agreement to obtain a vehicle), typically the date of an auction.

NextGear's account transaction documents provide a "total for" date, which is the date that

NextGear actually sent cash to the seller on the Plaintiffs' behalf. The "total for" date sometimes

occurred a period of time after the "flooring date;" in other words, NextGear sometimes did not

pay an auction on behalf of the Plaintiffs on the date of the auction, but it would start charging

interest to the Plaintiffs on the date of the auction (Filing No. 196-1 at 9; Filing No. 196-2 at 16).

"[T]here is no dispute [NextGear] charges interest beginning on the floorplan date and that there

are some times and some transactions a time period between when NextGear/DSC begins charging

interest to the dealers and when they pay the auction for the car." (Filing No. 196-1 at 39.)

The Plaintiffs were unaware of when NextGear paid the auctions on their behalf, and

NextGear's account executives (the field representatives who managed relationships with the

dealer clients) also were unaware of when NextGear paid the auctions, so the account executives

were unable to inform the Plaintiffs or other dealer clients when the auctions were paid (Filing No.

210-1 at 24; Filing No. 210-8 at 14–15). Red Barn did not know that NextGear was charging

interest before making payments on its behalf until a particular transaction in 2013.

> [I]t really came to light with the Ford 500 in 2013 where we had paid off the vehicle.
> We had paid all of the curtailment fees. We had paid all of the interest. We had paid
> everything to DSC and DSC was the one that reimbursed us for the money that we
> paid, because they had never paid the auction for the car. So if the auction had never
> gotten paid for the car, DSC utilized all of our funds for the time since they were
> collected without ever making a loan on the vehicle.

(Filing No. 210-10 at 26–27.)

With a better understanding of when interest was being charged and when the auctions

were being paid on their behalf, the Plaintiffs dispute NextGear's practice of charging them interest

before actually paying the auctions on their behalf. In response, NextGear asserts that the floor

plan agreements allow it to start charging interest from the day of the auction when a vehicle is

floor planned rather than wait to accrue interest until NextGear has paid the auction house. The

Plaintiffs ask for summary judgment on their breach of contract claim against NextGear. The

Defendants ask for summary judgment on the Plaintiffs' breach of contract and constructive fraud

claims against NextGear and the substantive RICO claim against NextGear, Cox Automotive, and

Mr. Wick.

## II.   SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d

487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the

record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

These same standards apply even when each side files a motion for summary judgment. The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., LLC v. Int'l Union of Operating Eng'rs.*, 335 F.3d 643, 647 (7th Cir. 2003). The process of taking the facts in the light most favorable to the non-moving party, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With cross-motions, [the Court's] review of the record

requires that [the Court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) (citation and quotation marks omitted).

### III.    DISCUSSION

The Defendants have asked the Court to enter summary judgment in their favor on the Plaintiffs' three remaining claims: breach of contract against NextGear, constructive fraud against NextGear, and a RICO violation against NextGear, Cox Automotive, and Mr. Wick. The Plaintiffs in turn have asked the Court to enter summary judgment in their favor on their breach of contract claim against NextGear. The Court will address each claim in turn.

### A.    Breach of Contract

The Defendants assert that NextGear is entitled to summary judgment on the breach of contract claim because the undisputed evidence shows that NextGear did not breach the terms of the floor plan agreements. They assert that the contracts allowed NextGear to start charging interest to the Plaintiffs on the day of the auction (rather than waiting until it actually paid the auction house on behalf of the Plaintiffs), and thus, NextGear committed no breach by its interest practices. A breach of contract claim is founded on "the existence of a contract, the defendant's breach of that contract, and damages resulting from the breach." *Haegert v. Univ. of Evansville*, 977 N.E.2d 924, 937 (Ind. 2012). The parties do not dispute the existence of a contract.

The Defendants argue that there can be no breach of any NextGear obligation to the Plaintiffs when NextGear charged interest from the date of the auction because the contracts allowed this. They argue the contracts state interest shall accrue on all outstanding liabilities, which does not require anything of NextGear. The Plaintiffs were obligated to pay for any vehicles purchased at auction before they could leave the auction with the vehicle. Because of the floor plan

agreement, NextGear became obligated on the date of the auction to pay for the vehicle on behalf of the Plaintiffs. Nothing in the floor plan agreement required NextGear to pay the auction houses at a certain time. However, the floor plan agreement required the Plaintiffs to repay NextGear at or before maturity.

The Defendants assert the obligation to pay for vehicles purchased at auction was a "financial obligation," "covenant," or "duty" due or owing from the Plaintiffs. It was a "liability" as defined in the contracts. As such, the Defendants argue, the Plaintiffs promised NextGear to pay interest from the date of auction while there was no NextGear promise to the contrary. The Defendants further assert that, even under the term "advance" in the contract, the Plaintiffs would be obligated to pay interest as of the date of the auction. The contract defined "advance" broadly to include a payment made or a loan made, and the Defendants point out that a loan is "the creation of debt by the lender's payment of or agreement to pay money to the debtor or to a third party for the account of the debtor," quoting Indiana Code § 24-4.5-3-106(1).  Thus, the Defendants argue, an advance includes NextGear's payment of the purchase price for a vehicle as well as NextGear's commitment to pay auctions on behalf of a dealer. The Defendants argue that reading "advance" to mean only a "payment" would improperly render the word "loan" in the contract meaningless and redundant.

Based on this interpretation of the contract language, the Defendants assert that NextGear's commitment to fund—whether termed a liability or an advance—is what triggers the accrual of interest.  And the Defendants note that this commitment to fund occurred on the date of the auctions because that was the date on which NextGear was obligated to pay the auctions on the Plaintiffs' behalf.

The Defendants also assert that their reading of the floor plan agreements—the advance or liability occurs on the date of the auction and interest may begin to accrue on that date—is commercially reasonable because the Plaintiffs have received the benefit of their bargain on the date of the auction, which is a new vehicle for their inventory financed through NextGear's credit. They argue that it is commercially reasonable to start charging interest on the date of the auction because the Plaintiffs became obligated to fund the vehicle purchase on the date of the auction, the Plaintiffs used NextGear's name and credit to cover that obligation, NextGear assumed the obligation to pay, and the Plaintiffs incurred a new obligation to repay NextGear. They assert that, from the moment the car was purchased at auction, the Plaintiffs enjoyed the benefit of NextGear's credit.

With a loan provided from the moment of sale at auction, NextGear incurred a risk that it would have to pay the auction on behalf of the Plaintiffs and the Plaintiffs possibly not repaying the loan. The Defendants assert NextGear's risk was established the date of the auction because NextGear became obligated to pay for the Plaintiffs' purchases on the date of the auction. Thus, they argue, it is reasonable to begin charging interest on the date of the auction when NextGear's risk arose.

Finally, the Defendants point out that the floor plan agreements provided a thirty-day window after a "statement" within which the Plaintiffs could object to their debts listed on the statement. The floor plan provided,

> [A]ny statement of Dealer's account furnished to Dealer by DSC, to the extent no objection is made in writing by Dealer within 30 days after receipt of such statement, shall constitute a definitive statement of Dealer's Credit Line and Liabilities as of the date of the statement and shall be binding upon Dealer.

(Filing No. 197-31 at 5.) The Defendants assert that the Plaintiffs never objected to their account statements, and NextGear was entitled to rely on the binding effect of the statements when it

10

continued making loans on the Plaintiffs' behalf. They argue the Plaintiffs are bound to the amounts they were billed, including interest, and cannot now sue years later for allegedly improperly charged interest.

Responding to the Defendants' argument, the Plaintiffs first point to the Court's Order on Defendants' Motion to Dismiss wherein the Court held that the "contracts are not sufficiently clear to support the argument that NextGear was plainly allowed to charge interest and fees before actually paying the auction houses on the Plaintiffs' behalf. Thus, there are sufficient allegations of a breach to allow the case to proceed beyond the motion to dismiss stage." (Filing No. 186 at 27.) The Plaintiffs then argue that none of the arguments advanced by the Defendants at the summary judgment stage are new or different or show that they are now entitled to judgment as a matter of law. They assert, "Therefore, under the summary judgment standard, where the terms in dispute remain ambiguous, Defendants' motion should be denied." (Filing No. 209 at 16.) Quoting *English Coal Co. v. Durcholz*, the Plaintiffs assert, "Where the terms of a contract are ambiguous and must be determined by extrinsic evidence, construction of the contract is for the jury." 422 N.E.2d 302, 308–09 (Ind. Ct. App. 1981).

The Plaintiffs further argue that the Defendants' contentions regarding the interest provision in the contracts and the definitions of "liabilities" and "advances" remove from the contracts the word "outstanding" and is an attempt to impose interest on "all liabilities" rather than on "all outstanding liabilities," which is the language used in the contract. The Plaintiffs assert that interest is not to accrue on "all liabilities," but only on that subset of liabilities that are due and owing, because the word "outstanding" cannot mean nothing. The debts existing at the time of the execution of the contracts would be "outstanding liabilities," but debts that were not yet in existence were not "outstanding" and should not be subject to the accrual of interest. The Plaintiffs

similarly argue that "future" or "contingent" liabilities, which are included in the definition of "liabilities," cannot be termed "outstanding" under any commercially reasonable interpretation, and thus, cannot be subject to the accrual of interest.

The Plaintiffs assert the Defendants' argument—that they assume the Plaintiffs' risk from the moment of the auction and should be able to charge interest at that time—is unavailing because it "ignores the basic economic reality that, as long as NextGear keeps the money, it is still enjoying the value of the use of that money—they have not *risked* the money yet, but can continue to invest it or otherwise earn interest on it." (Emphasis in original.) (Filing No. 209 at 18.) NextGear can actually advance funds to auctions only once, and it is at that time that interest should start to accrue, not earlier.

The Plaintiffs argue that the contracts allowed interest to be charged once NextGear made a payment on their behalf, and in any event, any dispute about when interest could begin to accrue should be resolved in the Plaintiffs' favor because ambiguous contracts are construed against the drafter. *See MPACT Const. Grp., LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 910 (Ind. 2004). The Plaintiffs further point out that the revisions to the form agreement used in the 2013 agreement show that NextGear knew how to draft a contract for accrual of interest from the floor plan date, yet the language in the contracts at issue did not have the same language.

The Plaintiffs lastly assert that the Defendants' argument about the thirty-day notice provision regarding account statements is simply a repackaging of their *res judicata* argument that the Court already rejected in the motion to dismiss Order. Because the Defendants did not provide sufficient information in the account statements to allow the Plaintiffs to even know that interest was improperly charged, the Plaintiffs argue the thirty-day notice provision was ineffective.

In their Motion for Partial Summary Judgment, the Plaintiffs argue that the only dispute between the parties is a legal one: whether NextGear's practice of charging interest before actually paying auctions on their behalf constituted a breach of contract. They claim the contracts are ambiguous on their face and must be construed against NextGear as the drafter. The Plaintiffs assert that there is no dispute that NextGear routinely began charging interest on the "flooring date" (the date on which the Plaintiffs would place a particular vehicle on their floor plan) rather than on the date that NextGear sent cash to the auction on the Plaintiffs' behalf. They argue that, by charging interest beginning on the flooring date rather than the date of advance, NextGear sometimes charged Plaintiffs interest for days or weeks before advancing any money on their behalf, which is a breach of contract.

Plaintiffs argue the contract language clearly does not allow NextGear to begin charging interest before an advance is made, and that further, the contract is ambiguous on its face regarding when interest can begin to accrue. The Plaintiffs assert that the ambiguity is demonstrated by NextGear's revised 2013 contract that specifically allows the accrual of interest from the date of sale (the floor plan date) regardless of when funds are actually transferred to the auction. Because the same language was not contained in the contracts at issue in this case, the Plaintiffs contend that the contracts are ambiguous. The ambiguity is further created, the Plaintiffs argue, by the lack of definition for contract terms such as "financial obligations" and "debts".

In arguing that the floor plan agreements are ambiguous, the Plaintiffs assert that the ambiguity arises on the face of the contracts (in other words a patent ambiguity), which allows the Court to resolve the ambiguity as a question of law without resorting to extrinsic evidence. *See Walker v. Trailer Transit, Inc.*, 1 F. Supp. 3d 879, 882 (S.D. Ind. 2014) ("Extrinsic evidence is admissible to explain the meaning of a latent ambiguity, but is not admissible to explain a patent

ambiguity."). The Plaintiffs argue the ambiguity is patent because the uncertainty of when NextGear may begin to charge interest arises from the language used in the contracts rather than in applying the contracts. Thus, the Plaintiffs assert, the Court can interpret the contract as a matter of law without considering extrinsic evidence. They further argue that ambiguities in a contract are construed against the drafter, and where NextGear drafted a take-it-or-leave-it contract, the ambiguities should be construed against it.

Concerning the element of damages caused by the breach of contract, the Plaintiffs assert that there is no dispute that NextGear charged interest before actually making a payment on the Plaintiffs' behalf. The Plaintiffs have presented evidence from their retained expert witness, accountant Jay Cunningham, who calculated the amount of interest charged on the Plaintiffs' accounts before NextGear actually made payments on their behalf. Cunningham calculated that Red Barn was prematurely charged $7,083.82 in interest on their transactions, Platinum Motors was charged $44.55, and Mattingly Auto was charged $961.58 before payments were made to the auctions. The Plaintiffs claim they are entitled to prejudgment interest on their damages.

Responding to the Plaintiffs' Motion for Partial Summary Judgment, the Defendants advance many of the same arguments asserted in their own summary judgment motion regarding contract interpretation and that the contracts allowed NextGear to charge interest starting on the date of the auction.

The Defendants repeat their argument that the plain language of the contracts allowed them to charge interest on liabilities, which included advances, which in turn included actual payment on behalf of the Plaintiffs as well as loans (or a commitment to pay). The Defendants assert that the Plaintiffs' position attempts to write a new provision into the contract that requires NextGear to wait to charge interest until the auctions were actually paid, which is not in the contracts. Instead,

14

the contracts allowed interest to be charged on advances, which were made on the date of the auctions because NextGear was committed to pay money as of that date.

Pointing to evidence that the Plaintiffs collectively failed to pay NextGear more than $224,000.00 on their payment obligations to NextGear, the Defendants assert that it is "galling" that the Plaintiffs would seek $8,089.95 in allegedly overcharged interest when compared to their much larger unpaid debts (*compare* Filing No. 195 at 7 *with* Filing No. 197-24 at 3 ¶17; Filing No. 197-22 at 3 ¶c; Filing No. 197-36 at 3 ¶c). The Defendants also assert that the Plaintiffs' payments occasionally were returned for insufficient funds and they fraudulently sold vehicles out of trust (Filing No. 197-1 at 2–5).

The Defendants argue that the contracts unambiguously allowed NextGear to charge interest from the date of the auction, but in the event it is determined that the contracts are ambiguous, summary judgment would be inappropriate because resolving the ambiguity would require consideration of extrinsic evidence. They assert that any distinction between patent and latent ambiguities raised by the Plaintiffs is a vestige of the past because the Indiana Supreme Court abolished the distinction in *University of Southern Indiana Foundation v. Baker*, 843 N.E.2d 528 (Ind. 2006), holding "the latent/patent distinction has not been consistently applied and no longer serves any useful purpose," and "where an instrument is ambiguous, all relevant extrinsic evidence may properly be considered in resolving the ambiguity." *Id.* at 535.[1] *See also City of Kokomo v. Ordinance # 6541*, 940 N.E.2d 833, 841 (Ind. Ct. App. 2010) ("Indiana adheres to the rule that when interpreting an ambiguous written instrument, all relevant extrinsic evidence may be considered to resolve any ambiguity, regardless of its nature."). But in any event, the Defendants

---

[1] The Plaintiffs reply that recent Indiana decisions show that the patent/latent ambiguity distinction is still employed where appropriate. *See, e.g.*, *Sauter v. Perfect North Slopes, Inc.*, 993 F. Supp. 2d 926, 933–34 (S.D. Ind. 2014); *In re Estate of Rupley*, 12 N.E.3d 900, 903–04 (Ind. Ct. App. 2014) (Riley, J., concurring in part); *Weinreb v. Fannie Mae*, 993 N.E.2d 223, 232 (Ind. Ct. App. 2013).

assert, any ambiguity would be latent because it would only arise from the implementation of the contract rather than from the contract terms themselves, so extrinsic evidence would be required to determine the parties' intent regarding the accrual of interest.

The Defendants also argue that the rule of construction to construe ambiguous provisions against the drafter is only a last resort tool when other rules of construction fail. *St. Paul Fire & Marine Ins. Co. v. Schilli Transp. Servs. Inc.*, 672 F.3d 451, 456 (7th Cir. 2012) (quoting *In re Kemper Ins. Cos.*, 819 N.E.2d 485, 490 (Ind. Ct. App. 2004)) ("We construe a contract against the drafter only if we cannot ascertain the parties' intent from all the ordinary interpretive guides."). Thus, the Defendants assert, if the Court determines that the contracts are ambiguous regarding interest charges, the Court must consider extrinsic evidence to determine the parties' intent rather than immediately construe the contracts against the drafter.

When considering a breach of contract claim,

the Court's primary objective is to effectuate the intent of the parties at the time the contract was made, which is determined by examining the language the parties used to express their rights and duties. The Court must read the contract as a whole, construing language to give meaning to all of the contract's words, terms, and phrases. Likewise, the Court must accept a contract interpretation that harmonizes provisions, not one that places provisions in conflict.

*Nikish Software Corp. v. Manatron, Inc.*, 801 F. Supp. 2d 791, 800 (S.D. Ind. 2011) (citations omitted). The parties' "differing, self-interested interpretations do not create ambiguity. Instead, a contract is ambiguous only when it is susceptible to more than one interpretation and reasonably intelligent persons would honestly differ as to its meaning." *Id.* (citations and quotation marks omitted).

Case law is clear that "[e]xtrinsic evidence cannot be used to create an ambiguity." *Bar Plan Mut. Ins. Co. v. Likes Law Office, LLC*, 44 N.E.3d 1279, 1285 (Ind. Ct. App. 2015) (citation omitted); *see also DeBoer v. DeBoer*, 669 N.E.2d 415, 421 (Ind. Ct. App. 1996) ("The ambiguity

allowing admission of parol evidence must appear on the face of the document; extrinsic evidence is not admissible in an attempt to create an ambiguity."). "[W]here an instrument is ambiguous, all relevant extrinsic evidence may properly be considered in resolving the ambiguity." *Baker*, 843 N.E.2d at 535.

The Court first notes that the Plaintiffs cannot use NextGear's 2013 agreement to create an ambiguity in the earlier contracts regarding the timing of interest charges. The Plaintiffs did not enter into the 2013 NextGear contract, and regardless, the 2013 contract is extrinsic evidence, which cannot be used to create an ambiguity in the first place. Even if the Court were to consider the 2013 contract in analyzing any ambiguity in the earlier contracts, the terms of the 2013 contract are not indicative of the parties' intent in 2006, 2009, and 2011 when the parties executed the agreements that are at issue in this case.

Next, the Court briefly addresses the Plaintiffs' argument that the contracts are ambiguous on their face (patent) and that patent ambiguities are resolved without resort to extrinsic evidence. The 2006 Indiana Supreme Court case of *University of Southern Indiana Foundation v. Baker* held that "the latent/patent distinction has not been consistently applied and no longer serves any useful purpose," and "where an instrument is ambiguous, all relevant extrinsic evidence may properly be considered in resolving the ambiguity." 843 N.E.2d at 535. The Plaintiffs assert that more recent Indiana decisions show that the patent/latent ambiguity distinction is still employed, see footnote 1 above; however, those more recent cases relied on cases that predate the Indiana Supreme Court's *Baker* decision and are from courts that cannot overrule the Indiana Supreme Court's decision. Contrary to the Plaintiffs' suggestion, there is nothing that indicates the *Baker* decision was limited to cases involving trusts. Thus, this Court will follow the direction provided in *Baker* that "where

an instrument is ambiguous, all relevant extrinsic evidence may properly be considered in resolving the ambiguity." *Id.*

While advancing their conflicting interpretations of the floor plan agreements, both the Plaintiffs and the Defendants omit various words or phrases (such as "outstanding" or "loan") and also inject other language to support their position. However, the omissions and additions provided by the parties fail to adequately address the central issue on summary judgment—whether the contracts specify the timing of when interest may begin to accrue. The Court's careful review of the parties' contracts reveals that the contracts are ambiguous as to when interest may begin to accrue.

There is no clear provision (or provisions) that unambiguously describes when NextGear could begin to charge interest on the Plaintiffs' accounts. The contracts provide that "[a]ll outstanding Liabilities under this Note shall accrue interest," (Filing No. 197-31 at 4), indicating on *what* interest may accrue, but the contract language does not state *when* that interest may begin to accrue. This leaves an uncertainty regarding the parties' intent about the timing of interest, which requires consideration of extrinsic evidence.

The parties' designated evidence supports their respective positions regarding the contract provisions governing on what interest may accrue. However, this evidence is not helpful to the Court in determining the parties' intent concerning the timing of interest. The parties have designated evidence suggesting that various party representatives had conversations about NextGear's interest practices after the contracts had been executed. But this evidence does not establish an undisputed factual basis supporting either parties' summary judgment position regarding the interpretation of the contract or the parties' intent at the time of contracting. The parties' evidence fails to show that there is no genuine issue as to any material fact and that either

party is entitled to a judgment as a matter of law regarding the timing of interest charges. Instead, the summary judgment evidence and arguments reveal that neither side has enough to prevail without a trial on the breach of contract claim. Therefore, the parties' summary judgment motions are **DENIED** as to the breach of contract claim.

**B.**   **Constructive Fraud**

Next, the Defendants assert that NextGear is entitled to summary judgment on the constructive fraud claim because it is duplicative of the breach of contract claim, and the evidence shows that the Plaintiffs cannot support the elements of reliance, materiality, injury, or unfair advantage for the constructive fraud claim.

The Defendants explain, "[A] claimant who brings both a breach of contract and a fraud claim must prove that (1) the breaching party committed the separate and independent tort of fraud; and (2) the fraud resulted in injury distinct from that resulting from the breach." *Tobin v. Ruman*, 819 N.E.2d 78, 86 (Ind. Ct. App. 2004). The Defendants assert that the constructive fraud claim should be dismissed on summary judgment because it is, "in fact, merely a repackaged version of [the] breach of contract claim." *Id.* They argue the alleged tort and injury are not distinct from the alleged breach of contract and damages, and thus, dismissal of the tort claim is necessary. The Defendants assert that the Plaintiffs' allegations are that they were defrauded because NextGear did not explain how interest would be calculated under their agreements, resulting in excessive interest charges. Thus, the Defendants argue, the constructive fraud claim is merely a repackaged breach of contract claim and should be dismissed.

The Defendants further argue that the constructive fraud claim fails because the evidence shows that the Plaintiffs did not rely on any statements or silence of NextGear. The Plaintiffs did not ask about the details of the timing of payment to the auctions or the accrual of interest when

they executed contracts with NextGear. They learned during their contractual relationship with NextGear that interest began to accrue on their debts before funding was actually transferred to the auctions on their behalf, yet the Plaintiffs continued to use NextGear's floor plan agreements after gaining this knowledge. Thus, the Defendants assert, there was no reliance on a representation by or silence on the part of NextGear.

The Defendants also argue that the evidence shows a lack of materiality, injury, or unfair advantage, thus entitling them to summary judgment. Each time the Plaintiffs used NextGear's floor plan agreement, they were able to immediately take possession of vehicles acquired at auction without having to pay any money for the vehicles. This was possible because NextGear immediately assumed the obligation to pay the auctions on the Plaintiffs' behalf. The Plaintiffs received the benefit of their bargain by taking possession of vehicles without immediately paying for them out of pocket, and therefore, the Defendants argue, the Plaintiffs suffered no injury and NextGear did not gain an unfair advantage over them.

The Plaintiffs respond that NextGear has provided no authority that a plaintiff cannot bring both a constructive fraud claim and a breach of contract claim, and NextGear's cited cases do not involve constructive fraud claims. In any event, the Plaintiffs argue, their constructive fraud claim is not a repackaged breach of contract claim. The Plaintiffs point to the Court's Order on Defendants' Motion to Dismiss, where the Court determined that the pleadings were sufficient to allege a special relationship between the parties, giving rise to a duty on the part of NextGear to inform the Plaintiffs about the interest charges, as well as reasonable reliance (*see* Filing No. 186 at 21–22). The Plaintiffs further argue that NextGear charged fees in addition to interest, and thus, the Plaintiffs are not trying to use NextGear's credit for free by challenging the interest charges. They assert that the designated evidence shows they did not and could not know when NextGear

20

began charging them interest and when NextGear paid the auctions on their behalf, and as a result of NextGear's actions, they suffered injury in the form of excessive interest charges. Therefore, they argue, there is evidence of materiality, injury, and unfair advantage to support their claim.

In reply, the Defendants point out that, contrary to the Plaintiffs' assertion, the *Tobin* case on which they rely does involve a fraud claim and gives the clear rule that a plaintiff cannot bring both a fraud claim and a breach of contract claim without establishing by evidence a separate and distinct tort and injury. The Defendants point out that summary judgment was granted to dismiss the fraud claim in *Tobin* because "the allegations making up [the] fraud claim amount to a series of misrepresentations stemming from and about the contract itself," and the plaintiff "has offered no evidence establishing that [the defendants'] actions constitute the separate and independent tort of fraud." *Tobin*, 819 N.E.2d at 86.

The Defendants argue that summary judgment on the constructive fraud claim is appropriate because the Plaintiffs have not provided any evidence to support the separate and independent tort of constructive fraud. The Plaintiffs also have not demonstrated that the alleged constructive fraud resulted in any injury distinct from the interest charges arising out of the alleged breach of the floor plan agreements. The Defendants point out,

> Plaintiffs repeatedly represented to the Court that "all of the claims that remain in the case flow from that form contract [that plaintiffs signed with NextGear]. . . . On our constructive fraud and RICO claims, those also flow from the same contracts …." (Hr'g Tr. [Doc. 202] 6:1-9.) Plaintiffs even specified that "the material terms where the deception occurred, where the constructive fraud derives from . . . are three provisions that are defined in the same way across the contracts," namely Interest, Liabilities, and Advance. (*Id.* at 8:5-10; *see also id.* at 6:19-21.)

([Filing No. 212 at 11](#).)

The Court agrees with the Defendants' position that a plaintiff cannot bring both a fraud claim and a breach of contract claim without establishing by evidence a separate and independent

tort and injury. This is supported by case law in *Tobin* as well as other court decisions. The Plaintiffs distinguish this case from the Defendants' proffered case of *Fritzinger v. Angie's List* on the bases that *Fritzinger* involved a deception claim rather than a constructive fraud claim and was decided on a motion to dismiss rather than a motion for summary judgment. Although these distinctions are accurate, the principle supporting the Defendants' argument applies equally to this case: "While it is true that a party may plead as many separate claims as it has, regardless of consistency, Fed. R. Civ. Pro. 8(d)(3), a contract claim disguised as a tort cannot survive under Indiana law." *Fritzinger v. Angie's List, Inc.*, 2013 U.S. Dist. LEXIS 27414, at *8 (S.D. Ind. Feb. 28, 2013) (citing *Tobin*, 819 N.E.2d at 86).

The Plaintiffs' reliance on the Court's Order on Defendants' Motion to Dismiss is misplaced because of the difference in standards of pleading and proof at the dismissal stage and summary judgment stage. While pleadings may be sufficient at the dismissal stage, parties must come forward with more than just pleadings at the summary judgment stage. On the motion to dismiss, the Court determined that the Plaintiffs' pleadings of breach of contract and constructive fraud were sufficient to allow both claims to survive dismissal. However, at the hearing on the motion for class certification (which was held after the Court ruled on the motion to dismiss and after the parties filed their motions for summary judgment), the Plaintiffs made it clear that their constructive fraud claim was based on NextGear's "form contract." (Filing No. 202 at 6):1–9 ("On our constructive fraud and RICO claims, those also flow from the same contracts and the associated statements provided by NextGear. So all of the claims derive from the same form contracts."); *see also id.* at 8:6–10 ("[T]he material terms where the deception occurred, where the constructive fraud derives from . . . are three provisions that are defined in the same way across the contracts.")).

Because the Plaintiffs must show by evidence that their constructive fraud claim and injury is separate and independent from their breach of contract claim and damages, and because the Plaintiffs have asserted that the constructive fraud claim is based on "a series of misrepresentations stemming from and about the contract itself," and they have not offered any "evidence establishing that [the Defendants'] actions constitute the separate and independent tort of fraud," *Tobin*, 819 N.E.2d at 86, the Court concludes that summary judgment is appropriate on this claim. Therefore, the Court **GRANTS** the Defendants' Motion for Summary Judgment to dismiss the Plaintiffs' constructive fraud claim against NextGear.

## C.   RICO Violation

The Defendants argue that NextGear, Cox Automotive, and Mr. Wick are entitled to summary judgment on the substantive RICO claim because there is no evidence of a predicate act to support a RICO claim, there is no conduct on the part of a RICO enterprise, and there is no proximate cause.

Based on the allegations in the Plaintiffs' Amended Complaint, the Defendants initially argued that there is no predicate act to support a RICO violation because allegedly blacklisting the Plaintiffs from auto auctions is not a predicate act that can give rise to RICO liability. With clarification from the Plaintiffs' response brief, the Defendants argue in their reply brief that there is no evidence to support the predicate act of wire fraud, and thus, summary judgment is appropriate on the RICO claim.

The Defendants explain that wire fraud requires a plaintiff to prove (1) the defendant's participation in a scheme to defraud; (2) the defendant's intent to defraud; and (3) the defendant's use of the wire services in furtherance of the scheme to defraud. *Aronoff v. DiBruno*, 2005 U.S. Dist. LEXIS 16942, at *16 (S.D. Ind. July 1, 2005) (citing 18 U.S.C. §§ 1341, 1343; *Corley v.*

*Rosewood Care Ctr.*, 388 F.3d 990, 1005 (7th Cir. 2004)). The Defendants argue that the Plaintiffs have presented no evidence of a scheme to defraud or intent to defraud, and thus, the predicate act of wire fraud is not viable.

The Defendants assert that the wire fraud allegation is simply a claim that the Defendants used the wires in the process of allegedly breaching the contracts with the Plaintiffs. They argue that the Plaintiffs cannot transform their breach of contract claim into a claim for wire fraud under RICO. They point to the Seventh Circuit's opinion in *Carr v. Tillery* to explain, "[A] breach of contract claim . . . cannot be transmogrified into a RICO claim by the facile device of charging that the breach was fraudulent, indeed criminal." 591 F.3d 909, 918 (7th Cir. 2010). If such were permitted, "every garden-variety breach of contract claim could morph into a RICO claim." (Filing No. 212 at 13 (citing *Carr*, 591 F.3d at 918).)

The Defendants again point to the Plaintiffs' representations to the Court that "all of the claims that remain in the case flow from that form contract. . . .  On our constructive fraud and RICO claims, those also flow from the same contracts and the associated statements provided by NextGear. So all of the claims derive from the same form contracts." (Filing No. 202 at 6:1–9.) *See also* Filing No. 202 at 6:19 ("the deceptive material is the contracts themselves"); Filing No. 202 at 8:6–10 ("the material terms where the deception occurred, where the constructive fraud derives from, where the RICO claim comes from, are three provisions that are defined in the same way across the contracts"). The Defendants argue that, even if the Court were to agree with the Plaintiffs' interpretation of the contracts, a breach of contract in itself does not constitute a scheme to defraud. *Vicom, Inc. v. Harbridge Merch. Servs.*, 1993 U.S. Dist. LEXIS 125, at *12 (N.D. Ill. Jan. 8, 1993).

The Defendants explain, "[A] scheme to defraud is conduct intended or reasonably calculated to deceive a person of ordinary prudence or comprehension." *United States v. Walker*, 746 F.3d 300, 308 (7th Cir. 2014) (citation omitted). The Defendants assert that the Seventh Circuit emphasized the narrow scope of wire fraud: "[W]e do not imply that all or even most instances of non-disclosure of information that someone might find relevant come within the purview of the mail and wire fraud statutes." *United States v. Weimert*, 819 F.3d 351, 357 (7th Cir. 2016) (citation and quotation marks omitted). When concealment is the alleged basis for the scheme to defraud, the "mere failure to disclose, absent something more," such as an "elaborate attempt at concealment," will not constitute wire or mail fraud under RICO. *See Reynolds v. E. Dyer Dev. Co.*, 882 F.2d 1249, 1252 (7th Cir. 1989).

The Defendants assert that there is no evidence of fraudulent attempts to conceal information from the Plaintiffs and no evidence of affirmative misrepresentations to deceive the Plaintiffs. They point to the Plaintiffs' deposition testimony to support their position. *See* Filing No. 197-6 at 83–85 (no affirmative representation of when interest would start to accrue when Red Barn entered into the contract; Red Barn confronted NextGear about interest midway through the relationship and NextGear acknowledged the timing of when it started to charge interest); Filing No. 197-8 at 39, 54–56 (no representations about when interest would begin to accrue when Mattingly Auto entered into the contract); Filing No. 197-9 at 70, 74 (no representations about when interest would begin to accrue when Platinum Motors entered into the contract). The Defendants argue that the Plaintiffs' only evidence on this issue is the account summaries, which simply show that NextGear charged interest starting on the date of the auction. The account summaries do not show any misrepresentations or concealment of information to support a scheme

to defraud. Further, the Defendants assert there is no evidence that any of the Defendants had the intent to defraud. Thus, there is no predicate act of wire fraud to support a RICO claim.

Next, the Defendants argue there is no evidence that the Defendants participated in or managed the conduct of a RICO enterprise. Prior to 2012, DSC had no relationship with Cox Automotive, so an enterprise could not have existed before 2012 when the Plaintiffs signed their contracts with DSC/NextGear. Though Mr. Wick was employed by DSC before 2012, a company and its employee cannot by themselves be a RICO enterprise. *Blackford v. JPMorgan Chase Bank, N.A.*, 2015 U.S. Dist. LEXIS 152176, at *11 (S.D. Ind. Nov. 10, 2015) ("A firm and its employees . . . are not an enterprise separate from the firm itself.").

The Defendants further explain that, since 2012 after Cox Automotive acquired DSC, Cox Automotive has never directed NextGear's interest and fee structure or the terms of the floor plan agreements. They further explain Mr. Wick has never managed or participated in NextGear's operations relating to interest or sales representations. The Defendants point out that the Court previously dismissed the breach of contract and constructive fraud claims against Cox Automotive and Mr. Wick, which further supports their position that no RICO enterprise was conducted by the Defendants.

Lastly, the Defendants argue that the Plaintiffs cannot show proximate cause to support the RICO claim because there is no evidence that any misrepresentations led the Plaintiffs to enter into the transactions at issue in this case. They assert the Plaintiffs cannot prove that they only did business with NextGear because NextGear represented that interest would not accrue until the date NextGear sent funds to the auction. Thus, they argue, there is no proximate cause, and the RICO claim must fail.

Responding to the Defendants' argument, the Plaintiffs assert their RICO claim "center[s] on the multiple acts of wire fraud committed by Defendants day after day, year after year." (Filing No. 209 at 25.) They explain, "[T]he improper charging of interest are the wire fraud acts specifically pled and evidenced by Defendants' own records [the Plaintiffs' account summaries at Filing No. 210-7], which definitively show that Defendants executed multiple racketeering acts; to wit: wire fraud." (Filing No. 209 at 26.)

The Plaintiffs argue that NextGear, Cox Automotive, and Mr. Wick "clearly participated in the affairs of the NextGear Enterprise." *Id.* at 27. They assert that Mr. Wick personally created the "take-it-or-leave-it" contract, pointing to designated deposition testimony at Filing No. 210-4 at 12–14 (96:7–98:22).[2] The Plaintiffs further assert, "NextGear, Cox Automotive, and Wick collectively charged interest and fees on money they never lent in the first place (*i.e.* 'enjoyed the float' from Defendants' own customer dealers)." (Filing No. 209 at 27.) They rely on Mr. Wick's 2011 deposition testimony for this assertion. *See* Filing No. 210-4 at 5 (86:3–8, 20–23). They argue that NextGear continued DSC's interest charging practices after the Cox Automotive acquisition and merger.

The Plaintiffs assert they can show proximate cause to support their RICO claim because they suffered a direct injury as a result of the Defendants' fraudulent activity (wire fraud) of charging interest on money not yet actually paid, and the Defendants have admitted to charging interest before paying auctions on the Plaintiffs' behalf. The Plaintiffs contend this premature

---

[2] This 2011 deposition testimony comes from a state court case in California involving a different plaintiff. It is true that, "in a proper case, depositions from one case may be used at the summary judgment stage of another, even if Rule 32(a)(8)'s requirements [(the actions involve the same subject matter between the same parties)] are not met." *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 978 (7th Cir. 2014). However, in this case, the deposition testimony is not helpful to the Court because the Plaintiffs did not designate a copy of the contract discussed in the deposition and did not show that contract's relationship to the contracts at issue in this case, thereby leaving the Court to speculate regarding its relevancy.

accrual of interest directly caused the injury of which they complain, that being overcharged interest.

In order to move beyond the summary judgment stage on their RICO claim, the Plaintiffs must show a dispute of material fact regarding the existence of a predicate act, and in this case, the Plaintiffs allege the Defendants committed wire fraud as the predicate act. To support their wire fraud allegation, the Plaintiffs must show, "(1) the defendant's participation in a scheme to defraud; (2) defendant's commission of the act with intent to defraud; and (3) use of the [wires] in furtherance of the fraudulent scheme." *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 657 (7th Cir. 2015).

The Court agrees with the Defendants' position, as supported by the Seventh Circuit, that a wire fraud RICO claim cannot arise out of a breach of contract by simply calling the breach fraudulent. Indeed, as the Seventh Circuit noted, "[A] breach of contract claim . . . cannot be transmogrified into a RICO claim by the facile device of charging that the breach was fraudulent, indeed criminal." *Carr*, 591 F.3d at 918; *see also Natara Multimedia Grp., Inc. v. Carranza*, 2015 U.S. Dist. LEXIS 78218, at *17 (N.D. Ill. June 17, 2015) ("the [RICO] statute was not designed to permit plaintiffs to cast run-of-the-mill, state-law breach of contract and fraud claims as federal RICO actions"). Therefore, in order to support their RICO claim, the Plaintiffs must designate evidence supporting their allegation of wire fraud beyond just the alleged breach of contract.

However, as the Plaintiffs have acknowledged, their RICO claim "center[s] on the multiple acts of wire fraud committed by Defendants day after day, year after year," through "the improper charging of interest." (Filing No. 209 at 25, 26.) The Plaintiffs represented to the Court that "all of the claims that remain in the case flow from that form contract. . . . On our constructive fraud and RICO claims, those also flow from the same contracts and the associated statements provided

by NextGear. So all of the claims derive from the same form contracts." ([Filing No. 202 at 6](#):1–9.)
"[T]he deceptive material is the contracts themselves and the account statements." *Id.* at 6:19–20.
The Plaintiffs further represented, "the material terms where the deception occurred, where the
constructive fraud derives from, where the RICO claim comes from, are three provisions that are
defined in the same way across the contracts." *Id.* at 8:6–10. Thus, the Plaintiffs' wire fraud
allegation is that the Defendants used the wire system to help them allegedly breach the floor plan
agreements by prematurely charging interest. This is not enough to support a wire fraud claim
under RICO.

The Plaintiffs' evidence does not get them beyond a simple breach of contract claim to
support a wire fraud claim because the evidence does not show a scheme to defraud or intent to
defraud. Rather, the Plaintiffs' evidence shows that contracts were drafted by NextGear and
entered into by the parties, and pursuant to those contracts, the Plaintiffs began purchasing vehicles
on their lines of credit and NextGear began charging interest to the Plaintiffs. As noted above,
those contracts were ambiguous regarding the timing of when interest could begin to accrue. Based
on NextGear's understanding of its contractual rights, NextGear started charging interest on the
date of the auction even if NextGear did not actually send money to the auction until a later date.
While Mr. Wick acknowledged that this practice would allow NextGear to "enjoy the float" of
collecting interest on money not yet paid out, this does not show a scheme to defraud or intent to
defraud. The Plaintiffs also designated their account summaries, but those documents simply show
that interest was charged on the date of the auctions. The documents do not show a scheme to
defraud or intent to defraud.

Based on the evidence and the Plaintiffs' representations to the Court, it is clear that the
wire fraud RICO claim is simply the Plaintiffs' breach of contract claim with the label that the

breach was fraudulent.  The Plaintiffs admitted that their RICO claim "flows from," "derives from," and "comes from" the contract.  *See Vicom*, 1993 U.S. Dist. LEXIS 125, at *12 ("Nor does breach of contract in itself constitute a scheme to defraud.").  Because the Plaintiffs have not presented evidence of wire fraud beyond their allegations of a breach of contract, there is no evidence to support a predicate act to allow the RICO claim to move beyond the summary judgment stage.  Therefore, the Court **GRANTS** the Defendants' Motion for Summary Judgment to dismiss the RICO claim against NextGear, Cox Automotive, and Mr. Wick.

**D.    The Defendants' Defenses**

The Defendants assert that they are entitled to summary judgment on all of the remaining claims because of their defenses: *res judicata*, setoff, unclean hands, ratification and waiver, and release.  The Court will address the propriety of summary judgment on each defense.

**1.    *Res judicata***

The Defendants argue that the doctrine of *res judicata* bars the claims of Platinum Motors and Mattingly Auto because NextGear previously sued them when they failed to repay financing extended by NextGear, and NextGear obtained judgments against each of them. The Defendants raise the same arguments regarding *res judicata* that they advanced in their motion to dismiss (*see* Filing No. 127 at 24–26; Filing No. 136 at 15–16), and the Plaintiffs assert the same response (*see* Filing No. 135 at 7–12).

The Court directs the parties to its discussion and determination of the Defendants' *res judicata* argument in the Court's previous Order at Filing No. 186 at 13–18.  The Court provides this additional brief discussion on the parties' summary judgment evidence.  The Defendants argue that Mattingly Auto's owner admitted that he knew NextGear charged interest before a vehicle's title arrived and that he discussed the issue with NextGear personnel.  After learning that this was

30

NextGear's common practice, he continued to use NextGear financing.  The Plaintiffs respond that the timing of receipt of a title does not have anything to do with the timing of the payment to the auction, and this information would not inform Mattingly Auto that interest was being charged before money was actually sent to the auctions on its behalf. The Plaintiffs provide evidence that the date of NextGear's payments to the auctions was not provided to the dealers or to NextGear's account executives who in turn would not have been able to provide the information to the dealers. The parties' arguments and evidence reveal that factual disputes preclude summary judgment on the basis of *res judicata*; therefore, the Court **DENIES** the Defendants' Motion on this basis.

### 2.   <u>Set-off</u>

The Defendants also assert that Platinum Motors and Mattingly Auto should be barred from recovery under the doctrine of set-off, which "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A." *Citizens Bank v. Strumpf*, 516 U.S. 16, 18 (1995) (citation and quotation marks omitted).

The Defendants point out that there is no dispute that NextGear holds judgments in the amounts of $58,432.52 against Mattingly Auto, and $35,775.30 against Platinum Motors (Filing No. 197-36; Filing No. 197-22).  They note that the amount of these judgments far exceeds the amount Mattingly Auto and Platinum Motors claim to be owed—$961.58 and $44.55, plus prejudgment interest (Filing No. 197-30 at 3)—and in fact, they each owe NextGear more than ten times what they allege NextGear owes them.  Thus, the Defendants argue, Platinum Motors' and Mattingly Auto's claims should be dismissed because they will not be entitled to recover any money against NextGear even if their claims are successful.

The Plaintiffs respond:

> Defendants make the unsupported assertion that two Plaintiffs are "barred" from pursuing claims because of prior judgments that could exceed the judgment

31

value that those Plaintiffs could recover herein. However, this Court has recognized the contrary: that a claim for "setoff is not an affirmative defense that can destroy Plaintiffs' right of action; rather, it may reduce the amount of [Defendant's] liability to Plaintiffs in the event that Plaintiffs are successful on their claims." *Tharp v. Catron Int. Sys., Inc.*, 2016 WL 7210940, at *3 (S.D. Ind. Dec. 12, 2016) (Pratt, J.). Also in *Tharp*, this Court recognized that a claim for setoff is a permissive counterclaim, not an affirmative defense. *Id.* ("Therefore, Catron's claim for a setoff is properly characterized as a permissive counterclaim."). Because Defendants have not asserted any counterclaims in this matter, their claim for setoff is not properly before this Court.

(Filing No. 209 at 34–35 (footnotes omitted)).

Replying to the Plaintiffs' short response, the Defendants argue,

Plaintiffs' assertion that setoff must be pled as a counterclaim is simply incorrect. Setoff may be asserted as either an affirmative defense or a counterclaim. *See, e.g.*, *Perez v. PBI Bank, Inc.*, No. 1:14-cv-01429-SEB-MJD, 2015 WL 500874, at *8-9 (S.D. Ind. Feb. 4, 2015). . . . The Court can determine at the summary judgment stage that Defendants are entitled to a setoff, even if issues of Defendants' liability remain for trial.

(Filing No. 212 at 18).

The Court recognizes that set-off may be presented as an affirmative defense or a counterclaim. The Court also notes case law that it addressed in its *Tharp* decision, which is relied upon by the Plaintiffs:

See also Cole Energy Dev. Co. v. Ingersoll-Rand Co., 8 F.3d 607, 610 (7th Cir. 1993) ("[a] setoff is for most purposes just a permissive counterclaim"); *Ace Hardware Corp. v. Marn, Inc.*, 2008 U.S. Dist. LEXIS 84709, at *30 (N.D. Ill. Sep. 16, 2008) ("a claim for setoff, or recoupment for that matter, is not an affirmative defense because it does not destroy the plaintiff's right of action . . . [and a] claim for setoff or recoupment is not technically a 'defense' at all, but must be plead as a counterclaim"). Catron's claim for a setoff is not an affirmative defense that can destroy the Plaintiffs' right of action; rather, it may reduce the amount of Catron's liability to the Plaintiffs in the event that the Plaintiffs are successful on their claims.

*Tharp v. Catron Interior Sys.*, 2016 U.S. Dist. LEXIS 171749, at *10 (S.D. Ind. Dec. 12, 2016).

While the Defendants pled set-off as an affirmative defense (Filing No. 188 at 17), the set-off does not destroy the Plaintiffs' right of action by negating an essential element of their claim

for breach of contract. The Plaintiffs should be permitted to present their evidence at trial to support their breach of contract claim. The Court determines that the Defendants' right to set-off does not warrant summary judgment or preclude the Plaintiffs from pursing their claim.  However, the Court notes that the Defendants' right to set-off may reduce the amount of any liability to the Plaintiffs in the event that the Plaintiffs are successful on their claim. Therefore, summary judgment is **DENIED** on this issue.

### 3.   <u>Unclean Hands</u>

The Defendants assert that each of the Plaintiffs have unclean hands because they defaulted on their contractual obligations to NextGear by failing to pay what they owed, selling vehicles out of trust, making false representations to NextGear, and self-dealing. They argue, because of their unclean hands, the Plaintiffs should not be granted relief for their claims.

The Defendants argue that Mattingly Auto violated its contract by failing to repay NextGear for vehicles it sold within the time required. It obtained financing from NextGear by making false representations about the status of the vehicle it was floor planning and by colluding with another dealer to obtain inflated prices for certain vehicles. The Defendants also note that Mattingly Auto represented that it had no intention of repaying the debt it owes to NextGear (Filing No. 197-8 at 71–75, 79–80, 131–32, 143–53, 162–63; Filing No. 197-11 at 17–19).

The Defendants assert that Red Barn made payments to NextGear that were dishonored because of insufficient funds and that Red Barn also admitted to self-dealing from the NextGear collateral by using company funds to make payments on the house where its general manager lived (Filing No. 197-6 at 61–62, 74–75). They argue that Platinum Motors sold cars out of trust by failing to timely pay for vehicles that it sold (Filing No. 197-9 at 81–82). Relying on their own

discovery responses, the Defendants assert that some of Platinum Motors' payments were dishonored for insufficient funds (Filing No. 197-1 at 4).

The Plaintiffs respond that in order for "the doctrine of unclean hands to apply, the alleged wrongdoing must be intentional," and it "is not favored by the courts and must be applied with reluctance and scrutiny." *Coppolillo v. Cort*, 947 N.E.2d 994, 1000 (Ind. App. 2011). They assert that the Defendants' "attempts to paint Plaintiffs as fraudsters in this case is without merit and is certainly without sufficient basis to prevail on summary judgment on unclean hands." (Filing No. 209 at 36.)

They explain that Barry Mattingly, owner of Mattingly Auto ("Mr. Mattingly"), repeatedly testified on behalf of Mattingly Auto that any of the wrongs alleged by NextGear were not intentional if they were wrongdoings at all. He testified that selling one car out of trust was a mistake based on a listing error provided by NextGear for a Sport Trak that was listed as an Explorer (Filing No. 197-8 at 163). They further explain that the incident of selling a car out of trust by failing to pay NextGear within twenty-four hours of the sale was not in fact a completed sale. Rather, Mattingly Auto was holding onto a check for the customer who had the vehicle while awaiting the vehicle title. *Id.* at 79–80. The Plaintiffs explain that selling vehicles at a pre-arranged price was proper because it was done by NextGear on behalf of Mattingly Auto. And Mr. Mattingly testified that he did not intend to pay the outstanding debt because of a bankruptcy discharge.

The Plaintiffs assert that Red Barn did not provide NextGear with checks that did not clear and did not make payments on the general manager's (Devon London) house as suggested by NextGear (Filing No. 210-10 at 5–6, 8–9, 15–16). Nicol Perry testified on behalf of Platinum Motors that she had a dealership named CarKey Auto, Inc. ("CarKey") that she operated with her

former boyfriend for a number of years.  Ms. Perry testified that when their personal relationship

ended, she opened Platinum Motors as a separate dealership with a separate line of credit from

NextGear.  Ms. Perry explained that she thought she was no longer responsible for the CarKey line

of credit.  Subsequently and unbeknownst to Ms. Perry, CarKey sold vehicles out of trust and

defaulted on the contract.  Because Ms. Perry had not been removed as a guarantor of CarKey's

credit line, NextGear held her personally liable for CarKey's default.  Therefore, Platinum Motors'

default related to the actions of CarKey and her former boyfriend.  She further testified that

Platinum Motors did not sell cars out of trust (Filing No. 210-12 at 14, 21–22, 29).

After reviewing the evidence that has been designated by the parties, the Court briefly

mentions that the evidence suggests Platinum Motors did not have payments returned for

insufficient funds and may not have sold its cars out of trust (Filing No. 210-12 at 29).  Further,

what the Defendants describe as Mattingly Auto "selling at a pre-arranged price" and "colluding

with another dealer," it appears that this may have been done under the direction of NextGear

representatives and other lender representatives (Filing No. 197-8 at 144–45, 152–53).  The Court

agrees with the Defendants that they never claimed Red Barn wrote bad checks but rather had

electronic fund transfers returned. However, as it relates to the argument of unclean hands, the

Court recognizes an important difference between writing a bad check and failing to have enough

money in an account when another entity automatically withdraws funds from the account. The

Court determines there are factual disputes regarding the unclean hands of the Plaintiffs, and thus,

**DENIES** summary judgment on the unclean hands argument.

### 4.   <u>Ratification and Waiver</u>

The Defendants argue that all of the Plaintiffs have ratified or waived any claim for

excessive charges under their contracts because the floor plan agreements declare that any

statement of the dealers' accounts provided by NextGear is definitive and binding on the dealers as to the amount owed unless the dealers object within thirty days. The Defendants assert that failure to timely object constitutes a ratification or waiver of a later claim as a matter of law. They further assert that the Plaintiffs never objected to their account statements despite frequently and regularly receiving and reviewing their account statements, which showed interest charges.  They also argue that the Plaintiffs learned of the interest charging practices during the course of their relationship with NextGear, yet they continued to borrow from NextGear. Thus, they argue, the Plaintiffs are bound to the amounts they were billed, and they conclude, "[a]t the very least, factual disputes over Plaintiffs' ratification and/or waiver preclude an award of summary judgment in their favor." (Filing No. 207 at 22.)

In response, the Plaintiffs state that the Court already has rejected this argument from NextGear, and they briefly quote from the Court's Order on Defendants' Motion to Dismiss:

> The Defendants suggest that the Plaintiffs could have discovered the facts giving rise to their injuries by a diligent review of their own bank statements, which would show when interest and other charges had been automatically debited from their accounts. However, this argument overlooks the fact that the bank account statements would not have indicated the actual interest rate charged or when NextGear actually paid the auction houses. Without knowing when NextGear actually paid the auction houses, the Plaintiffs could not have been apprised of the alleged scheme to prematurely charge fees and interest on their accounts well before NextGear paid the auction houses.
>
> Dkt. 186 at 16. NextGear provides no new support for its argument, and it should be rejected for the same reasons. Indeed, the evidence in this case now establishes that Plaintiffs did not know and could not have known when NextGear paid the auctions.

(Filing No. 211 at 10.)

As the Court noted above in the section discussing *res judicata*, the Plaintiffs provided evidence that the date of NextGear's payments to the auctions was not provided to the dealers or

to NextGear's account executives who in turn would not have been able to provide the information to the dealers.  The evidence suggests that the Plaintiffs did not have sufficient information to make an informed decision regarding whether objecting to account statements was necessary. The parties present conflicting evidence. As the Defendants conceded at the end of their argument, factual disputes over the Plaintiffs' ratification or waiver preclude an award of summary judgment. Therefore, summary judgment is **DENIED** on the ratification and waiver argument.

**5.**    <u>**Release**</u>

Lastly, the Defendants argue that Mattingly Auto has released its breach of contract claim against NextGear by its written settlement agreement in a previous lawsuit filed by Mattingly Auto against NextGear (Filing No. 160-25).  The Defendants explain that Mr. Mattingly, filed a lawsuit against NextGear in October 2013 based on property damage caused by NextGear during its repossession of vehicles held as collateral under the floor plan agreement (Filing No. 160-24). The repossession occurred after Mattingly Auto's default on the NextGear agreement. Mr. Mattingly and NextGear settled the dispute by written agreement, in which Mr. Mattingly released NextGear from any and all claims related to the small claims lawsuit "and the claims that were raised or could have been raised therein." (Filing No. 160-25 at 2–3.) The Defendants assert that this release bars Mattingly Auto from bringing its breach of contract claim.

The Plaintiffs respond that the settlement agreement from the Kentucky small claims court litigation was narrow:

> The first recital of the Release defines "Lawsuit" as a "Small Claims Complaint against NextGear Capital in the District Small Claims Court of Breckinridge County, Kentucky" . . . for physical damage caused by NextGear to [Mr. Mattingly's] home garage. The relevant language in the Release clearly reflects that the settlement was only meant to resolve claims related that Lawsuit and reads in full:

> This Agreement constitutes a release by Mattingly, in which Mattingly, on behalf of himself, his current and former agents, representatives, successors in interest, assigns, affiliates, predecessors, parents and subsidiaries, and all those acting on his behalf, RELEASES and FOREVER DISCHARGES NextGear Capital . . . from any and all claims, demands, damages, indebtedness, action, and causes of action, known or unknown, **on account of, arising out of, or in any way connected with the Lawsuit and the claims that were raised or could have been raised therein.**
>
> The claims raised by Mattingly Auto Sales in the instant litigation are in no way "on account of, arising out of, or in any way connected with" the suit filed by Mr. Mattingly *pro se* in Small Claims Court in Breckinridge County, Kentucky for physical damage to his home garage.

([Filing No. 211 at 11](#)–12 (citations omitted, emphasis in original).)

The Court agrees with the Plaintiffs that Mr. Mattingly's Kentucky small claims court litigation against NextGear for property damage to his home garage does not arise out of or relate to this lawsuit for breach of contract based on allegedly overcharged interest to Mattingly Auto. Thus, the release of claims in that litigation does not release any claims in this litigation. Therefore, the Court **DENIES** the Defendants' Motion for Summary Judgment for this reason.

## IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES** the Plaintiffs' Motion for Partial Summary Judgment on Breach of Contract Claim ([Filing No. 194](#)), and **GRANTS in part and denies in part** the Defendants' Motion for Summary Judgment ([Filing No. 192](#)). The Defendants' Motion is **GRANTED** as to the constructive fraud claim against NextGear and the RICO claim against NextGear, Cox Automotive, and Mr. Wick. With no remaining claims pending against them, Cox Automotive and Mr. Wick are **dismissed** as defendants. The Defendants' Motion is **DENIED** as to the breach of contract claim against NextGear, and this claim will proceed to a bench trial. In light of the Court's Order at Filing No. 261, this litigation will no longer proceed as a class action.

**SO ORDERED.**

Date:  1/12/2018

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:


Ryan D. Adams
SHER GARNER CAHILL RICHTER KLEIN & HILBERT LLC
radams@shergarner.com

Jacob A. Airey
SHER GARNER CAHILL RICHTER KLEIN & HILBERT, LLC.
jairey@shergarner.com

Lisa Brener
Brener Law Firm, LLC
lbrener@brenerlawfirm.com

Matthew M. Coman
SHER GARNER CAHILL RICHTER KLEIN & HILBERT LLC
mcoman@shergarner.com

Kathleen Ann DeLaney
DELANEY & DELANEY LLC
kathleen@delaneylaw.net

Cassie E. Felder
THE CASSIE FELDER LAW FIRM
cassie@cassiefelderlaw.com

James M. Garner
SHER GARNER CAHILL RICHTER KLEIN & HILBERT, LLC
jgarner@shergarner.com

Steven D. Groth
BOSE MCKINNEY & EVANS, LLP
sgroth@boselaw.com

Gladstone N. Jones
JONES SWANSON HUDDELL & GARRISON, LLC
gjones@jonesswanson.com

David J. Jurkiewicz
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
djurkiewicz@boselaw.com

Catherine E. Lasky
JONES SWANSON HUDDELL & GARRISON, LLC
Klasky@laskymurphy.com

Tracey K. Ledbetter
EVERSHEDS SUTHERLAND (US) LLP
traceyledbetter@eversheds-sutherland.com

Jason S. McCarter
EVERSHEDS SUTHERLAND (US) LLP
jason.mccarter@sutherland.com

Kerry A. Murphy
JONES, SWANSON, HUDDELL & GARRISON, LLC
KMurphy@laskymurphy.com

Lynn E. Swanson
JONES, SWANSON, HUDDELL& GARRISON, LLC
lswanson@jonesswanson.com

Paul D. Vink
BOSE MCKINNEY & EVANS, LLP
pvink@boselaw.com