UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RED BARN MOTORS, INC., PLATINUM MOTORS, INC., and MATTINGLY AUTO SALES, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> NEXTGEAR CAPITAL, INC., f/k/a/ DEALER SERVICES CORPORATION, <br><br> Defendants. | ) ) ) ) ) ) ) CASE NO. 1:14-cv-01589-TWP-DML ) ) ) ) ) ) ) |

**PLAINTIFFS' MOTION TO REVISE CLASS DEFINITION AND PROCEED WITH CLASS NOTICE TO KNOWN CLASS MEMBERS AND PROPOSED PROCEDURES FOR PROVIDING NOTICE TO CLASS MEMBERS PURSUANT TO RULE 23(c)(2)(B)**

Plaintiffs, Red Barn Motors, Inc., Platinum Motors, Inc., and Mattingly Auto Sales, Inc., hereby respectfully move this Court for an order (a) making a minor revision to the class definition based on discovery from Defendants relating to the class; (b) allowing Plaintiffs to proceed with class notice to the 17,411 class members whose names and contact information have been produced by Defendants and are known to Plaintiffs; and (c) approving the proposed procedures described herein for providing notice to the known class members pursuant to Fed. R. Civ. P. 23(c)(2)(B), for the reasons set forth below.

**I.      The Members of the Class and Class Definition**

As discussed in Plaintiffs' Rule 16-2 statement of position, filed contemporaneously herewith, Defendants have provided a list of 17,411 class members. In fall 2017, at Plaintiffs' request, Defendants provided a declaration describing the process used by NextGear to identify and verify the 17,411 members of the class (as well as their contact information) listed on the spreadsheet provided to Plaintiffs; and affirming that the information provided therein is both

1

complete (excluding the 9,980 dealers they seek to exclude) and accurate based on NextGear's records. See **Exhibit A** hereto (9/29/17 Declaration of Adam Galema). Specifically, the declaration states that:

> Subject to the limitations of NextGear's computer database system and the inherent risk of human error, NextGear believes this to be a complete and accurate list of the dealers in the class certified by the Court (with the exception of those dealers who signed the 20103 Note) who floor planned a vehicle with DSC or NextGear.

*Id.,* ¶ 6. At the Rule 30(b)(6) deposition of NextGear, corporate representative Adam Galema confirmed that the list that NextGear provided is the most accurate list that NextGear could create of all dealers who signed contracts between the applicable dates. See **Exhibit B** hereto (Excerpt of Transcript of 11/30/17 Rule 30(b)(6) Deposition of NextGear), 51:23-52:4 ("Q: Do you believe that the initial list that you created of dealers who had transactions between January 1, 2005, and July 31, 2013, is the most accurate list of all dealers who signed contracts between those dates that could be created by NextGear? A: Yes, I do.").

However, Mr. Galema testified that NextGear's list of class members would not include dealers, if any, who signed a floorplan agreement with NextGear but never utilized that agreement to floorplan a vehicle. *See, e.g.,* Exh. B at 23:4-23:20. Mr. Galema testified that identifying dealers who signed a contract but never floor planned a vehicle with NextGear would be extremely burdensome, requiring extensive manual review of NextGear's records. *See, e.g., id.* at 39:24-40:14 and 51:23-52:18. Based on Defendants' representations as to the disproportionate burden and difficulty associated with attempting to locate any additional class members who never floor planned a vehicle, Plaintiffs respectfully submit that the class definition should be modified, pursuant to Rule 23(c)(1)(C), to include only dealers who entered into a floorplan agreement with NextGear during the relevant dates and had one or more transactions with NextGear under that

2

agreement. The proposed revised class definition is set forth below, with the proposed new language in bold text:

> *All used car dealers in the United States of America that were parties to a Floorplan Agreement with DSC, n/k/a NextGear, effective during the time period of January 2005 through July 2013,* ***and floor planned one or more vehicles with DSC/NextGear under such agreement.***

This proposed revised class definition would reflect, with greater specificity, the scope of the class based on the above developments in class discovery.[1]

## II. Class Notice to the Known Class Members Should Proceed

With respect to class notice, Rule 23(c)(2)(B) states as follows:

For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plan, easily understood language:

(i)   the nature of the action;

(ii)  the definition of the class certified;

(iii) the class claims, issues, or defenses;

(iv)  that a class member may enter an appearance through an attorney if the member so desires;

(v)   that the court will exclude from the class any member who requests exclusion;

(vi)  the time and manner for requesting exclusion; and

(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

---

[1] If the Court does not believe it is necessary to revise the class definition, Plaintiffs respectfully request that—for the reasons set forth below and in light of Plaintiffs' "reasonable efforts" to locate the members of the certified class through discovery to NextGear—the Court nonetheless approve Plaintiffs' request to proceed with class notice to the 17,411 known members of the certified class.

This case has been pending since 2013. It was certified as a class action in June of 2017. It was then decertified in January of 2018. The decertification was appealed to the Seventh Circuit Court of Appeals, which vacated that decertification order in February of 2019. Trial of this class action had been set to begin on March 5, 2018, approximately six weeks from the date of the decertification order. Defendants have refused to provide a full list of class members (despite Magistrate Judge Lynch's clear instructions to do so). However, they have produced a list of 17,411 class members along with their contact information.[2]

As Magistrate Judge Lynch held in her Order on Motion to Stay Class Discovery and Class Notice filed on August 11, 2017, "Delaying notice is not efficient at all. Notice is a first and necessary step after a class is certified" and "must proceed immediately[,]" and "[c]lass members must have an opportunity to learn about this case and their rights to opt out of the litigation." Dkt. 239 at 2 and 3. In October of 2017, in its Order on Motion for Protective Order to "relieve [defendants] 'from any obligation to produce information regarding dealer customers who . . . agreed to arbitrate the claims made by the class action,'" Magistrate Judge Lynch denied the motion, for the same reason, "[i]t already ruled on this issue in the Order on Motion to Stay Class Discovery and Class Notice, at Dkt. 239." Dkt. 250.

Despite these court orders, Defendants have withheld the remaining 9,980 class members' information; as a result, it is impossible right now for notice to be issued to the entire class. Nonetheless, it is possible for Plaintiffs, with the Court's approval, to move forward with notice to the 17,411 class members disclosed by Defendants. Prior to decertification, the parties

---

[2] Excluded from Defendants' list of class members, they say, are 9,980 class members who should not be permitted to participate in this action because they later signed contracts containing arbitration and class waiver provisions—as argued in their various pending motions, all of which Plaintiffs have opposed.

4

succeeded in crafting a form of class notice acceptable to both Plaintiffs and Defendants to be used in the event of notice only to those class members. *See* Dkt. 247-1. Plaintiffs have now revised that class notice based on the Court's summary judgment rulings. *See* **Exhibit C** hereto. Accordingly, and in light of the amount of time that has passed since the 2017 class certification, Plaintiffs respectfully request that this Court approve the issuance of class notice to the 17,411 known class members, with the remaining members to be notified at a later date and as soon as possible. Plaintiffs respectfully submit that such a two-part notice procedure (the mechanics of which are detailed below) satisfies Rule 23(c)(2)(B) as it is the "best notice that is practicable under the circumstances" and includes "individual notice to all members who can be identified through reasonable effort" (here, discovery to Defendants, who have all members' information in their possession).

Plaintiffs intend to seek approval of class notice to the remaining 9,980 class members as soon as Defendants identify and provide contact information for those class members. However, if Defendants' Rule 72 objections are denied prior to a ruling on the Motion to Proceed such that Defendants are required to promptly identify the remaining 9,980 class members, Plaintiffs respectfully request that this Court approve class notice to all 27,391 members of the class in accordance with the below procedures. Sending one notice to all class members at once would preserve litigation resources and avoid unnecessary expense for the class as a whole.[3]

---

[3] Plaintiffs have obtained from their proposed class action administrator—Analytics Consulting LLC—pricing data for sending class notice to all 27,391 class members at once versus a two-part notice process (sending class notice to 17,411 class members first, and then later sending notice to 9,980 class members). The difference is approximately $6,000. Because the need to send out the notice in two parts is due to Defendants' refusal to provide all class members' information, Plaintiffs reserve the right to request that Defendants bear the additional cost of sending the notices in two parts rather than one.

### III. Plaintiffs' Proposed Procedures for Class Notice

With the requirements of Rule 23(c)(2)(B) in mind, Plaintiffs make the following specific proposal for providing individual notice by first-class United States Mail[4] to each class member who can be identified through reasonable effort, beginning with the 17,411 class members disclosed to date by Defendants.

### A. Individual Notice by First-Class U.S. Mail

1. Defendants have provided to Plaintiffs a single comprehensive electronic file containing all of the necessary data elements (legal names, dealer names, street addresses, telephone numbers, and email addresses) for each class member, excluding those class members who Defendants contend signed 2013 agreements containing arbitration and class waiver provisions, in a consistent agreed format (Excel) with no duplication. The electronic file provided by Defendants contains data for 17,411 class members.

2. Plaintiffs have engaged a nationally-known and experienced class action administration service (Analytics Consulting LLC)[5] which shall create a database of the class members from the electronic information provided by Defendants.

3. The class member database will be processed through the USPS National Change of Address ("NCOA") database to maximize deliverability and to take advantage of presort postage discounts. In addition, this process will minimize the amount of time required to process undeliverable mail and reduce the costs associated with re- mailing.

4. Within 14 days of Plaintiffs' request to the vendor, the vendor will mail the Class Notice to the 17,411 known class members on duplex 11" x 17" paper, folded to a 5.5" x 8.5" tabbed

---

[4] *See, e.g.*, *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 356 n.22 (1978) (speaking favorably of mail notice without specifying the class of mail that should be used).
[5] *See, e.g.*, *id.*

6

        self-mailer. The individual names and addresses printed on the mailing labels along with a unique barcode for ease of identifying and processing returned mail. The vendor will furnish affidavits of notice mailing to the Court as the Court may require.

5.     Mail returned as Forward Order Expired ("FOE") or Undeliverable As Addressed ("UAA") will be recorded in the class member database. FOEs will be processed and a Class Notice will be mailed to the new address. UAAs will require additional locator services and searches through national database resources for a more current address of the class member. If one is located, the class member database will be updated with the revised address and a Class Notice will be mailed to the new address. The return rate of FOEs and UAAs is assumed to be 2% and 4% respectively. Analytics will also open a dedicated Post Office box for correspondence and undeliverable mail, which will be swept and reviewed on a daily basis.

6.     The same process set forth above would later be followed for the remaining 9,980 class members.

       **B.**     **Case Website**

1.     Analytics will create, develop, implement, host and maintain a custom website and URL (including domain name registration and strategic search engine optimization) for the class members. The website will allow the posting of notices, pleadings, court orders, frequently asked questions ("FAQs"), and other information. Class members will also have the ability to request additional information via the website.

2.     The website design will be required to include sufficient security protocols to ensure confidentiality of class member information.

### C. Call Center/Hotline

1. Analytics will also establish a toll-free telephone number and create a call center with Interactive Voice Response ("IVR") messaging to provide answers to FAQs. The IVR will encourage callers to use the website for more detailed information to questions.

2. Callers who wish to speak with a live agent will promptly be forwarded to a call center attendant who will have online access to the class member case database with the ability to run queries and record notes, as well as to the dedicated case website. In addition, written question and answer scripts that contain key information and FAQs will be developed for call center attendants to use as a reference.

3. All inbound and outbound telephone calls to and from the call center relating to this case will automatically be digitally recorded, saved and archived. Callers will be informed of this prior to speaking with an agent.

### D. Detailed Reporting to the Court

1. Analytics will provide detailed reports on the noticing process, including affidavits attesting to what was done, and the results. Reports can be submitted on all facets of the mailing as the Court directs, including without limitation such things as the total number of mailings, the number of new addresses identified by the NCOA search, the number of notices returned as FOE, the number of notices returned as UAA, the number of notices re-mailed, results of advanced address searches, and so forth.

2. Plaintiffs will provide encrypted access to case data and Class information via the Internet for the Court.

### E. Proposed Notice

Plaintiffs' proposed notice to the 17,411 class members is attached hereto as Exhibit C.

**Conclusion**

Plaintiffs respectfully request that this Court enter an Order (a) revising the class definition as proposed herein; (b) allowing Plaintiffs to proceed with class notice to the 17,411 known class members, and (c) approving the proposed notice procedures described herein.

Respectfully submitted,

/s/ Kerry A. Murphy
CATHERINE E. LASKY (La. Bar No. 28652)
*Pro Hac Vice*
KERRY A. MURPHY (La. Bar No. 31382)
*Pro Hac Vice*
**LASKY MURPHY LLC**
715 Girod Street, Suite 250
New Orleans, Louisiana 70130
Telephone: (504) 603-1500
Facsimile: (504) 603-1503
klasky@laskymurphy.com
kmurphy@laskymurphy.com

GLADSTONE N. JONES, III (La. Bar No. 22221) *Pro Hac Vice*
LYNN E. SWANSON (La. Bar No. 22650)
*Pro Hac Vice*
**JONES, SWANSON, HUDDELL & GARRISON, L.L.C**.
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
Telephone: (504) 523-2500
Facsimile: (504) 523-2508
gjones@jonesswanson.com
lswanson@jonesswanson.com

CASSIE E. FELDER (La. Bar No. 27805)
*Pro Hac Vice*
**THE CASSIE FELDER LAW FIRM**
7515 Jefferson Hwy., #313
Baton Rouge, LA 70806
(504) 400-1127
cassie@cassiefelderlaw.com

JAMES M. GARNER (La. Bar No. 19589)
*Pro Hac Vice*
RYAN D. ADAMS (La. Bar No. 27931)
*Pro Hac Vice*
MATTHEW M. COMAN
(La. Bar No. 23613)
*Pro Hac Vice*
**SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C.**
909 Poydras Street, Suite 2800
New Orleans, Louisiana 70112
Telephone: (504) 299-2100
Facsimile: (504) 299-2300
jgarner@shergarner.com
radams@shergarner.com
mcoman@shergarner.com

Kathleen A. DeLaney (# 18604-49)
**DELANEY & DELANEY LLC**
3646 North Washington Blvd.
Indianapolis, IN 46205
Telephone: (317) 920-0400
Facsimile: (317) 920-0404
Kathleen@delaneylaw.net

**COUNSEL FOR PLAINTIFFS AND THE CLASS**

9

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 22nd day of March, 2019, a copy of the foregoing was filed electronically. Notice of the filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

David J. Jurkiewicz
Paul D. Vink
BOSE MCKINNEY & EVANS, LLP
111 Monument Circle
Suite 2700
Indianapolis, IN 46204

Jason S. McCarter
Tracey K. Ledbetter
EVERSHEDS SUTHERLAND (US) LLP
999 Peachtree Street, NE, Suite 2300
Atlanta, GA 30309-3996

                                          */s/ Kerry A. Murphy*
                                          Kerry A. Murphy