Transcript of the Oral Argument to the United States
Seventh Circuit Court of Appeals

September 7, 2018

Red Barn Motors vs. NextGear Capital



C O U R T   R E P O R T I N G   &   L I T I G A T I O N   S U P P O R T

P.O. Box 1554 ▪ Hammond ▪ Louisiana 70404
**(Toll Free) 866.870.7233 ▪ 985.542.8685 ▪ (Fax) 985.419.0799**
office@amersonwhite.com ▪ www.amersonwhite.com

EXHIBIT A

AUDIO RECORDING RE:

RED BARN MOTORS VS. NEXTGEAR CAPITAL

Amerson White®
COURT REPORTING & LITIGATION SUPPORT
866.870.7233    P.O. Box 1554  Hammond  LA  70404    Fax 985.419.0799

```
 1        JUDGE WOOD:  Yes.  Continuing our third
 2   case for this morning is Red Barn Motors
 3   against NextGear Capital.  Ms. DeLaney.
 4   MS. DELANEY:  May it please The Court.
 5   Kathleen DeLaney for Plaintiff appellants,
 6   Red Barn Motors.
 7        NextGear charged about 20,000 used
 8   car dealers interest and fees on funds
 9   that had not been advanced.  The central
10   issue here is whether the take it or leave
11   it form contract signed by all of these
12   dealers allowed NextGear to charge
13   premature interest and fees.  NextGear
14   argues, yes, in all instances.  And Red
15   Barn argues, no, in all instances.  Nobody
16   is arguing that any extrinsic evidence
17   would generate different contract
18   interpretations for individual dealers.
19   NextGear created this problem by drafting
20   an ambiguous contract, which should be
21   construed against the drafter.
22   JUDGE ROVNER:  Now, you point to cases
23   that established the claims involving
24   breach of form contracts could be resolved
25   on a classwide basis even when ambiguities
```

AmersonWhite®
COURT REPORTING & LITIGATION SUPPORT
866.870.7233    P.O. Box 1554  Hammond  LA  70404    Fax 985.419.0799

```
 1    are involved.  But the question here isn't
 2    whether The Court could have allowed the
 3    case.  It seems to me that the question is
 4    whether The Court could not have
 5    disallowed the class.  Is there any case
 6    you have holding that The Court could not
 7    deny class status when a contract was
 8    ambiguous?
 9    MS. DELANEY:  The cases that bear on this
10    issue are ones that talk about the fact
11    that form contracts are well suited for
12    class treatment, and which is what our
13    case is.  And Judge Pratt did certify this
14    case as a class action, with the --
15    JUDGE ROVNER:  Right, but that's not an
16    answer to the question.
17    MS. DELANEY:  I'm not sure I have an
18    answer to a double negative case.
19    JUDGE ROVNER:  Well, all right, is there
20    any case holding that The Court couldn't
21    deny class status where a contract is
22    ambiguous?  Surely you understand my --
23    MS. DELANEY:  I don't think there's an
24    automatic bright line that if there's a
25    form contract, then it's automatically
```

AmersonWhite®
COURT REPORTING & LITIGATION SUPPORT
866.870.7233   P.O. Box 1554  Hammond, LA 70404   Fax 985.419.0799

```
 1    class certified or vice versa.
 2    JUDGE ROVNER:  So could I maybe phrase
 3    it -- break it down a little bit.  Um --
 4    this contract is allegedly ambiguous about
 5    whether the interest can start running the
 6    date when the car is delivered to the used
 7    car dealers after the auction, or whether
 8    interest can start running only at the
 9    time NextGear advances the moneys.  That,
10    as I understand it, is the issue in
11    what -- what does the contract say.
12         I also understand the district court
13    judge to have said, actually in both
14    stages, that the extrinsic evidence that
15    had been proffered was not useful, that
16    this was a, a construe the contract within
17    its four corners situation.  Doesn't
18    necessarily always have to be that way,
19    but she thought this contract was that.
20    So that's kind of part one, you know,
21    whether that's where we are, and the
22    question about whether this is an
23    ambiguous contract, because there are
24    plenty of ambiguous contracts where
25    extrinsic evidence of the negotiating
```



```
 1      process isn't terribly useful.  You've
 2      argued there's an integration clause here.
 3      There are other instances where there
 4      doesn't happen to be any extrinsic
 5      evidence, and then you just resort to
 6      presumptions.  You do the best you can.
 7           The other thing is, um, how the
 8      district court handled the
 9      decertification.  So it's one thing to say
10      the district court has discretion to
11      certify the class or not to certify the
12      class or to revisit certification and
13      decertify.  It's another thing to say,
14      does the district judge have a procedural
15      obligation both at the certification stage
16      and at the decertification stage, to go
17      through the criteria of 23(a) and
18      23(b)(3), and explain what's the problem,
19      you know, why are we decertifying.  And I
20      understood you to be arguing that that
21      procedural step, ah, at the second
22      decision, the decertification decision,
23      was not undertaken.
24      MS. DELANEY:  That's correct.  The first
25      order, where the class was certified, did
```

```
 1        march through all the requirements and
 2        some 14 pages of analysis.  The
 3        decertification order, about 6 months
 4        later, spent about two sentences on the --
 5        JUDGE ROVNER:  So, maybe that's why we're
 6        guessing about the extrinsic evidence,
 7        because we don't have that kind of
 8        analysis from the district court
 9        explaining what exactly is missing, what
10        exactly would be different for all 20,000
11        minus 12, or whatever it is, dealers.
12        What -- that kind of explanation would
13        allow us to get our hands around whether
14        there was an abuse of discretion or not.
15        MS. DELANEY:  But the district court did
16        make factual findings that go to the heart
17        of this issue, stating that the Plaintiffs
18        were unaware of when NextGear paid the
19        auctions on their behalf.  And NextGear's
20        account executives were also unaware when
21        NextGear paid the auctions.  So they were
22        unable to inform the Plaintiffs or other
23        clients when the auctions were paid.
24        JUDGE ROVNER:  So I'm trying to figure out
25        how you want to use that evidence, because
```

1    I saw that, and I thought you were using

2    that to show that, at least at this stage,

3    um, any kind of course of dealing argument

4    would be difficult to make; and that I

5    thought you were also relying on the

6    contract to say that changes stemming from

7    later developments, whether course of

8    dealing, whether later conversations,

9    couldn't be, ah, embodied in the contract

10   until there was a writing anyhow.

11   MS. DELANEY:  Correct on both counts.  But

12   the fundamental point here is that all the

13   different types of extrinsic evidence that

14   NextGear is pointing to and arguing

15   require individualized analysis, all of

16   those result in class-wide treatment.

17   They lend itself to class-wide treatment,

18   because the account representatives didn't

19   know that the interest was being charged

20   prematurely.  Therefore, what they told

21   our clients is of no moment, because they

22   didn't know the answer themselves.  The --

23   JUDGE ROVNER:  Well, suggest that the

24   reasonable inference, that wasn't even a

25   topic if they didn't know about it.

```
 1        MS. DELANEY:  Well, but all of that
 2     happened after contract formation, as
 3     well.  And the contract also has a no
 4     modification or waiver provision that says
 5     it can't be changed after the fact without
 6     a writing signed by both parties.  And
 7     that didn't happen here either.
 8          Same issue with the account
 9     statements and the web information that's
10     available across the class.  None of that
11     revealed the answer to this question of
12     when did the interest start being charged.
13     JUDGE BRENNAN:  Help us understand, then,
14     what requests -- what relief you're
15     requesting.
16     MS. DELANEY:  We're requesting --
17     JUDGE BRENNAN:  Do you want reversal, with
18     regard to the certification?
19     MS. DELANEY:  Correct.
20     JUDGE BRENNAN:  You -- the last resort
21     case law, there's a lot of discussion
22     about when we get into contra proferentem.
23     We get to contra proferentem, you're
24     asking that to happen now or on remand?
25     MS. DELANEY:  Either way.  I mean, our
```

AmersonWhite
COURT REPORTING & LITIGATION SUPPORT

866.870.7233    P.O. Box 1554  Hammond, LA 70404    Fax 985.419.0799

```
 1        primary goal here is to get our class
 2        reinstated and get the case remanded for
 3        trial on the breach of contract claims.
 4        JUDGE WOOD:  So it's a 23(f) appeal, of
 5        course?
 6        MS. DELANEY:  Exactly.
 7        JUDGE WOOD:  That's all that's really
 8        here.
 9        JUDGE ROVNER:  Now, of course, the
10        district court, in considering the summary
11        judgment motion stated that the parties
12        had evidences to conversations between
13        various party representatives about
14        NextGear's interest practices, but that
15        the evidence was not undisputed and, ah,
16        would require trial.  Isn't that the type
17        of extrinsic evidence that would support
18        The Court's decertification of the class?
19        MS. DELANEY:  Your Honor, I disagree,
20        because all of the categories of extrinsic
21        evidence that have been pointed to apply
22        equally across the class.  And NextGear is
23        not arguing that anything that one
24        particular account representative told one
25        particular class member would result in a
```

AmersonWhite
COURT REPORTING & LITIGATION SUPPORT
866.870.7233    P.O. Box 1554 Hammond LA 70404    Fax 985.419.0799

1    different interpretation of the contract

2    for that particular class member.  They're

3    asking that, uniformly across the class,

4    the contract be interpreted to authorize

5    them to prematurely charge interest.  We

6    believe the contract does not allow them

7    to do that.

8    JUDGE ROVNER:  Would I be wrong if I

9    thought that the integration clause of the

10   contract addresses only the modification

11   or amendment of the contract?

12   MS. DELANEY:  That would be incorrect.

13   It's a broader provision than that.  And

14   it basically says I can -- I can -- it's

15   cited in our brief, and I have it here

16   somewhere.

17   JUDGE ROVNER:  It's one of those that said

18   nothing that's been said before this

19   contract was entered into --

20   MS. DELANEY:  Right.

21   JUDGE ROVNER:  -- can vary or change the

22   terms of the contract.

23   MS. DELANEY:  The deal is the deal, and

24   the deal is in the four corners of the

25   document.  And then there's another

```
 1        provision that says it can't be modified
 2        on a going-forward basis without a writing
 3        reduced to both parties.
 4            Um, the other important point to note
 5        here is that this is a take it or leave it
 6        contract.  The company's representative
 7        testified in less than one-half of one
 8        percent of cases was there any
 9        consideration of negotiation on a
10        one-on-one basis.
11        JUDGE BRENNAN:  Can you put a number on
12        that?  Then are we talking about --
13        MS. DELANEY:  He said fewer than 10 out of
14        20,000.
15        JUDGE BRENNAN:  Thank you.
16        MS. DELANEY:  The general counsel of the
17        company described the contract as "kind of
18        like a credit card application or a credit
19        card agreement."  This is exactly -- it's
20        as if NextGear is giving credit cards to
21        our used car dealer clients that they can
22        only use at auction, and then they're
23        charging them interest on cash advances
24        when the advances haven't even happened
25        yet.  So that's what's happening here.
```

AmersonWhite®
COURT REPORTING & LITIGATION SUPPORT
866.870.7233    P.O. Box 1554  Hammond, LA 70404    Fax 985.419.0799

```
 1      And it happened across the class.
 2      Irrespective of when they signed their
 3      contract, they all signed the same
 4      contract.  It was in use for a number of
 5      years, until 2013.  They changed the
 6      language to address this problem.
 7      JUDGE WOOD:  Well, they moved arbitration,
 8      didn't they?
 9      MS. DELANEY:  They changed the contract
10      on -- on multiple levels in order to avoid
11      the problem.  But they created the
12      ambiguity in a form contract.  They
13      provided information that was opaque, both
14      to their own employees and to their
15      customers, about when the interest and
16      other fees would begin to be charged.  And
17      we think this case is just like the
18      Suchanek case and the Newman case, and the
19      ambiguities in take or leave it contracts
20      ought to -- they do meet Rule 23's
21      commonality and predominance requirements,
22      and they can be resolved by looking at the
23      Defendant's uniform conduct across the
24      class.
25          Additionally, we reiterate the point
```

```
 1        that ambiguities in form contracts should
 2        be construed against the drafter,
 3        NextGear, who created the problem.
 4        JUDGE WOOD:  Do you need that -- I mean,
 5        Indiana seems more open to extrinsic
 6        evidence, ah, than you're suggesting, but
 7        it also seems, ah, to lean to the position
 8        that the contra proferentem principle is
 9        really a last resort.  You try other form.
10        You try exclusio unius.  You try, you
11        know, whatever other canons of the
12        construction you like to have.  So I don't
13        know whether we've boiled down to that
14        point here or whether you're asking us to
15        insert it too soon.
16        MS. DELANEY:  At this point, we really are
17        at the last resort.  We were about 6 weeks
18        away from trial at the time that the class
19        was decertified.  Discovery had closed.
20        We were ready to try the case.
21        JUDGE WOOD:  Let's emphasize that.  So no
22        other evidence was going to come into this
23        record?
24        MS. DELANEY:  Exactly.  And as the
25        district court found, as a fact finding
```

```
 1      that's on an abuse of discretion standard,
 2      there was no helpful evidence on that
 3      point, because NextGear didn't tell its
 4      account executives and didn't tell its
 5      customers when they started lending the
 6      money.  So, you know, they like to argue
 7      that, after the fact, some of our clients
 8      learned about this timing issue.  But they
 9      learned that they were being overcharged
10      after they had already signed a contract
11      that they were stuck with.  And none of
12      that bears on the meaning of the contract
13      that was signed in the first place.
14           I'd like to reserve the balance of my
15      time, please.
16      JUDGE WOOD:  Okay, that's fine.
17           Mr. Byrne.  Take your time.
18      MR. BYRNE:  Thank you, Your Honor.  May it
19      please The Court.  Let me begin a little
20      bit of context here.  The practice that's
21      being complained of is as conventional as
22      it could be.  The idea is this:  When a
23      lender extends a binding commitment of
24      credit, they're entitled to be paid.
25      JUDGE WOOD:  But they haven't extended the
```

Amerson White
COURT REPORTING & LITIGATION SUPPORT

866.870.7233    P.O. Box 1554  Hammond, LA 70404    Fax 985.419.0799

```
1    credit.  I mean, interest is typically a
2    price for the use of money.  And the money
3    isn't being used until it's been extended.
4    I presume that, um, NextGear has its money
5    in income-earning accounts, and the money
6    is happily earning income until it's
7    removed from those accounts and sent over
8    to the auction house.
9    MR. BYRNE:  Well, Your Honor, I beg to
10   differ on the point.  But when a binding
11   commitment --
12   JUDGE WOOD:  You don't put your money in
13   an income-generating account?
14   MR. BYRNE:  Well, there's no evidence of
15   that particular practice in the record
16   here.
17   JUDGE WOOD:  I'm just saying, any business
18   I can think of would do that.
19   MR. BYRNE:  Well, any business you can
20   think of that lends money, though, Your
21   Honor, would also charge you a fee upon
22   the commitment for binding credit.
23   JUDGE WOOD:  But that's not what you're
24   doing.  You're charging interest.
25   MR. BYRNE:  Well, just --
```



AmersonWhite
COURT REPORTING & LITIGATION SUPPORT
866.870.7233    P.O. Box 1554  Hammond, LA 70404    Fax 985.419.0799

```
 1        JUDGE WOOD:  Let me ask you this
 2        question --
 3        MR. BYRNE:  -- fee for lending.
 4        JUDGE WOOD:  No.  No.  No.  I mean,
 5        sometimes there are origination fees, you
 6        know, $100 for origination fee, and the
 7        interest is going to be 3 percent once the
 8        money is loaned.  Um, let me ask you this:
 9        Is it your position that of these 20,000
10        different agreements, 7,000 of them, once
11        we look at all of the evidence, are going
12        to turn out to be agreements in which it's
13        okay to charge the interest from the date
14        of the auction, and 13,000 of them are
15        going to turn out to be agreements when
16        it's not okay to charge interest from the
17        date of the auction?
18        MR. BYRNE:  Your Honor, that's not our
19        position about the text of the agreements.
20        JUDGE WOOD:  Well, so, um, this is why --
21        my reason for asking that is:  Unless
22        you're willing to concede that this
23        particular provision is going to vary
24        agreement by agreement, I don't know why
25        this issue isn't suitable for class
```

```
 1     treatment.  Because if your position is
 2     that that feature, at least, is common to
 3     the full class, you could have an issue
 4     class.
 5     MR. BYRNE:  Well, Your Honor, an issue
 6     class hasn't been requested.  Let's put
 7     that aside for a second.  Now, here --
 8     JUDGE WOOD:  But it'd the same as, I mean,
 9     as they argue very similar to Suchanek
10     class.  It really is.  All class actions,
11     in the end, have an individualized stage
12     when relief is granted.  Maybe some used
13     car dealers only have a few cars, and
14     maybe some have very large lots.  So
15     amounts are gonna differ.  There are a lot
16     of things.  Period of time might differ.
17     But whether this was a legitimate clause
18     in the contract, you just told me it's
19     going to be the same across all 20,000
20     contracts.
21     MR. BYRNE:  Well, Your Honor, that clause
22     just begins to tell the story.  These are
23     ongoing commercial relationships.  Let's
24     consider the testimony we had from two of
25     the three class representatives.  They
```

Amerson White
COURT REPORTING & LITIGATION SUPPORT
866.870.7233    P.O. Box 1554 Hammond LA 70404    Fax 985.419.0799

```
 1      both admitted that they knew that they
 2      were being charged interest upon the time
 3      of the purchase of the vehicle.  They
 4      drove the --
 5      JUDGE WOOD:  But they didn't say they knew
 6      as of the time -- first of all, whether
 7      that's a permissible practice, when
 8      they've been -- when they're already bound
 9      by the contract, you know, you're telling
10      me something that's different, sort of
11      apples and oranges, you know.  What does
12      the contract say, and is the interest
13      being charged?  This is a state law claim,
14      right?  This is just diversity
15      jurisdiction.
16      MR. BYRNE:  State law breach of contract
17      claim, Your Honor.
18      JUDGE WOOD:  Yes, it's a state law breach
19      of contract claim.  So when they said
20      we'll charge you interest on advances, is
21      this an advance?  It's a very
22      straightforward question.
23      MR. BYRNE:  Well, Your Honor, it could be
24      seen that way under the contract.  Our
25      position in the district court was the
```

AmersonWhite®
COURT REPORTING & LITIGATION SUPPORT
866.870.7233    P.O. Box 1554  Hammond LA 70404    Fax 985.419.0799

```
 1        contract wasn't ambiguous, that we were
 2        entitled to do this.  But the district
 3        judge found that the contract was
 4        ambiguous.  She wanted to hear more,
 5        because she heard evidence -- there was
 6        evidence of these conversations showing
 7        the course of performance of the parties.
 8        JUDGE WOOD:  But the thing is, could
 9        course of performance vary?  And also, are
10        you going to stand up there in the
11        district court -- or were you planning on
12        standing up there in the district court
13        and saying, an advance under some of our
14        contracts starts the day the money is sent
15        over to the auction house, but an advance
16        in some of our other contracts, depending
17        on what we've been doing with the dealer
18        or what we said during the negotiations,
19        can start on the day of the sale; was that
20        going to be what you were going to say?
21        MR. BYRNE:  No, Your Honor, that was not
22        our position.
23        JUDGE WOOD:  No!
24        MR. BYRNE:  The text of the agreement is
25        the text.  But the text just begins to
```



AmersonWhite®
COURT REPORTING & LITIGATION SUPPORT
866.870.7233    P.O. Box 1554  Hammond, LA 70404    Fax 985.419.0799

```
 1      tell the story if it's going to be told
 2      fairly.
 3      JUDGE WOOD:  Why does it, if there is an
 4      integration clause and a clause that says,
 5      no changes except in writing?
 6      MR. BYRNE:  Well, there isn't an
 7      integration clause, for the first thing,
 8      Your Honor.  There's a clause called an
 9      integration clause --
10      JUDGE WOOD:  Oh, for Heaven's sake.
11      MR. BYRNE:  -- but if you read the
12      language, it's simply an anti-modification
13      clause.  The doctrine of waiver, that
14      there is an anti-waiver provision, a
15      separate one in the agreement, but it
16      applies only to the lender, not -- it
17      doesn't go both ways.  So you could have a
18      waiver of breach here.  And in fact, the
19      evidence, the actual evidence that the
20      district judge looked at with respect --
21      JUDGE WOOD:  I can't tell what evidence
22      she looked at.  I mean, that's my
23      procedural problem with this.  You may be
24      right about a lot of the substance, but
25      her failure, when she decertifies, to
```

```
 1     explain exactly which elements have
 2     persuaded her, that this is no longer
 3     suitable for class treatment, um, leaves
 4     me at something of a loss, to know how
 5     even to evaluate what she did.
 6     MR. BYRNE:  Well, Your Honor, there's 50
 7     pages of orders here from the district
 8     judge just on these last two issues.
 9     THE COURT:  No.  No.  No.  But it's not a
10     50-page decertification decision.  She
11     just whips through that pretty quickly.
12     MR. BYRNE:  Well, Your Honor, the standard
13     of review, of course, is abuse of
14     discretion.
15     THE COURT:  Exactly.  But even under an
16     abuse of discretion, this Court has
17     procedural requirements for the district
18     judges that you can't just sort of say,
19     yes, you know, thumbs up, thumbs down.
20     And you still have to affirm me on the
21     abuse of discretion standard.
22     MR. BYRNE:  Your Honor, with due respect
23     to Judge Pratt, she did more than thumbs
24     up, thumbs down.  This is a single breach
25     of contract claim.  Only, there are two
```



AmersonWhite
COURT REPORTING & LITIGATION SUPPORT
866.870.7233    P.O. Box 1554  Hammond LA 70404    Fax 985.419.0799

```
 1        state laws applicable, mostly Indiana,
 2        mostly the same.  It's not one of those
 3        abuse of discretion cases where the
 4        district judge faces multi-state law
 5        applicability, lots of elements of
 6        different claims.  In those cases, abuse
 7        of discretion because of inadequacy of the
 8        writing of the order has sometimes been
 9        found.  This is a simpler determination
10        based on the discussion the district judge
11        authored.
12        JUDGE WOOD:  It's on page 8.  And it
13        really -- it just zips right through.  I
14        mean, I don't know what she's looking at.
15        She has a little reference to patent
16        ambiguity, then suddenly says they're
17        ambiguous, extrinsic evidence, not
18        appropriate, boom, you know.  I don't know
19        what she thinks the extrinsic evidence is.
20        I don't know what issues she thinks it
21        pertains to.  Is it commonality; is it
22        typicality; is it predominance; is it
23        superiority, given your concession that
24        the contract is the contract; why is it
25        relevant?  I don't see anything.
```

```
 1      MR. BYRNE:  She says that there's an
 2   absence of predominance and commonality.
 3   JUDGE WOOD:  I don't understand why.  I
 4   see undermines.  She says the elements of
 5   commonality and predominance, but I don't
 6   understand how, given your position that
 7   the contract is actually the same contract
 8   for everybody.
 9   MR. BYRNE:  Because on the breach of
10   contract claim, Your Honor, common issues
11   do not predominate, because the contract
12   itself in this ongoing business
13   relationship lasts years.  There's regular
14   contacts with account representatives.
15   JUDGE WOOD:  So there's some people, after
16   the fact, for whom you cannot charge
17   interest from the date of the sale; and
18   there are other people post contract that
19   you can charge interest post sale; is that
20   your position?
21   MR. BYRNE:  Your Honor, uh, that could
22   well happen.  Here's how the -- listen,
23   the testimony of the --
24   JUDGE WOOD:  I'm surprised.
25   MR. BYRNE:  The testimony of the two class
```

```
 1        representatives about their ongoing
 2        performance really matters.  They asked
 3        about -- one of them asked about the very
 4        issue that's in front of us, and was told,
 5        no, the interest is charged from the date
 6        of sale.  So the remarks about no one
 7        knowing the date of the sale are wrong.
 8        That's a different topic entirely.  That
 9        doesn't mean that an account
10        representative sitting on the showroom
11        floor talking with a dealer can say this
12        unit was paid, the auction was paid on
13        such and such a date.  Doesn't have that,
14        of course, but he knows when interest
15        begins to be charged.  Now, because for
16        one thing, it's an industry standard
17        practice.  We say the contract permits it,
18        and it's completely fair, given that an
19        extension of credit has been made.
20        That --
21        JUDGE WOOD:  Those are merits arguments.
22        I don't know that that's helping me much
23        understand why this isn't, across the
24        board, an issue for every one of these
25        contracts.
```

AmersonWhite®
COURT REPORTING & LITIGATION SUPPORT
866.870.7233    P.O. Box 1554 Hammond LA 70404    Fax 985.419.0799

```
 1    MR. BYRNE:  Your Honor, with due
 2    respect --
 3    JUDGE ROVNER:  Specifically, what evidence
 4    was presented to the district court in the
 5    summary judgment motions that would be
 6    relevant to the interpretation of the
 7    ambiguous contract -- of it being
 8    ambiguous, actually, which I know -- you
 9    haven't brought that before us, because
10    you both agreed here that it's ambiguous,
11    or at what evidence would be relevant to
12    the defenses of waiver, ratification,
13    modification and a stop order.
14    MR. BYRNE:  Your Honor, as to the class --
15    let's take the class representatives'
16    evidence.  That's what we have before us.
17    This was a decision on whether to continue
18    to certify the class.  Two of the three
19    class representatives admitted that they
20    knew there was this timing difference that
21    is the basis for the claim of breach of
22    contract; yet, they continued to borrow.
23    They were okay with that.  And we all know
24    from basic contracts, that one of the best
25    ways in figuring out a contract
```

1    interpretation question is how the parties
2    perform the contract.  And that would be
3    relevant to every one of these 27,000 used
4    car dealers.
5         And to certify the class would be
6    grossly unfair to the Defendant, because
7    only part of the story could be told in a
8    class action trial.  The Defendant would
9    have its arms tied behind its back.
10   That's why it's important to be able to
11   tell the whole story on the breach of
12   contract claim.  It only begins with that
13   form contract.  It doesn't end with it.
14   That's only the beginning of the
15   relationship that went on for extended
16   period of time.
17   JUDGE BRENNAN:  But was that the reasoning
18   that the district court was giving?
19   That's what's opaque to us, is how to get
20   to that.
21   MR. BYRNE:  She alluded to -- these two
22   orders are linked, Your Honor.  That makes
23   it a little bit of a slight accessibility
24   problem in figuring out that very point.
25   But she alluded to the evidence of

```
 1      conversations by both sides and concluded
 2      that she wanted to hear more at trial
 3      about that, but that this case couldn't
 4      proceed on a class action basis.  The
 5      question before The Court, in a
 6      deferential standard of review, is that
 7      given the record, given the context, was
 8      that decision within the broad range of
 9      discretionary decisions the district judge
10      might have made.  I don't believe that on,
11      even on a deferential standard, The Court
12      wants to get into wordsmithing the
13      district court's opinion, so long as the
14      record supports it and the district
15      court's deliberative process is apparent
16      from the order.
17      JUDGE WOOD:  That's the problem, though,
18      the last thing that you touched on.  The
19      district court's deliberative process is
20      not apparent from the order, because we
21      don't know which -- I mean, you have your
22      theory about which of the extrinsic
23      evidence may have been particularly
24      persuasive and which issues it might have
25      gone to.  We don't know whether she agreed
```

AmersonWhite®
COURT REPORTING & LITIGATION SUPPORT
866.870.7233     P.O. Box 1554  Hammond, LA  70404     Fax 985.419.0799

```
 1      with you, whether she had some other
 2      theory, whether that theory is a sound
 3      one, because she never spells it out.
 4      MR. BYRNE:  Well, Your Honor, I would say,
 5      with due respect, it seemed that she
 6      agreed with us, because she decertified
 7      the class.  And there's enough --
 8      JUDGE WOOD:  We don't know why she did,
 9      though.
10      MR. BYRNE:  Well, she found no commonality
11      and predominance.  She cited the Averitt
12      case from the Eighth Circuit, which is
13      right on point, another case involving a
14      breach of contract claim, a classic breach
15      of contract claim, with an ambiguity, two
16      different interpretations, communications
17      between the sales representatives and the
18      plaintiffs.  And for the Eighth Circuit --
19      JUDGE WOOD:  But you keep talking about an
20      ambiguity; and, yet you, your view, of
21      course, is this contract is not ambiguous
22      at all; that it allows your client to
23      begin to charge interest from the day of
24      the sale, even though no moneys have been
25      advanced, and it uses the word "advanced,"
```

Amerson White
COURT REPORTING & LITIGATION SUPPORT
866.870.7233    P.O. Box 1554  Hammond, LA  70404    Fax 985.419.0799

```
 1        until some later date, you know, sometimes
 2        it's maybe when title passes; maybe
 3        sometimes it's some other date.  But your
 4        view is that that initial sale is the
 5        date, and that the word "advanced" in the
 6        contract doesn't mean moneys advanced.  It
 7        just means sale somehow, you know, or some
 8        other word.  So I don't know what's
 9        ambiguous about that.  I think that's what
10        they think it means, too.  And the
11        question is:  Is your practice of
12        collecting the money one which is not
13        authorized by the contract?
14        MR. BYRNE:  Well, that's the ultimate
15        question, Your Honor.  This is, of course,
16        the 23(f) appeal.  So we're only here on
17        whether or not the class should be
18        certified.
19        JUDGE WOOD:  And that's why we need -- you
20        know, look, I sort of think sauce for the
21        goose, sauce for the gander.  The Supreme
22        Court emphasized in the Walmart case, in
23        particular coming to my mind, that
24        district courts do have a job at the class
25        certification stage.  They've got to
```

```
 1        resolve facts about predominance and about
 2        commonality.  They sometimes need to have
 3        Daubert hearings, which doesn't happen to
 4        be this case, but it happens with some
 5        regularity.  They've got to take a deeper
 6        dive into this than had been thought the
 7        case prior to Walmart.  So, okay, the
 8        district judges are largely doing that.
 9             And what doesn't happen here is that
10        same care with explaining and resolving
11        facts at the decertification stage.
12        Certainly within her power, no question
13        about that.  Rule 23, she correctly says,
14        allows her to revisit this.  I wouldn't
15        question that for a minute, but we don't
16        know why she did it.
17        MR. BYRNE:  Well, Your Honor, we would
18        respectfully hope The Court, on
19        reflection, can look at the whole body of
20        the district court's work here since the
21        beginning of this case in 2013.  We submit
22        it would be a waste of judicial resources
23        now just to remand, for the district judge
24        to add a few sentences to an order that is
25        otherwise sound.
```

```
 1          I will make one final point to
 2     respond before my time expires.  The point
 3     made by the district judge that the
 4     evidence was not useful, the extrinsic
 5     evidence was not useful, is only
 6     addressing the point of whether or not it
 7     was the basis for summary judgment, which
 8     she said it was not, because it's
 9     disputed.  The evidence was not
10     non-existent.  It was simply disputed.  So
11     we would ask that The Court affirm the
12     order.
13     JUDGE WOOD:  Okay.  Thank you very much.
14          Ms. DeLaney.
15     MS. DELANEY:  Thank you.  I'd like to
16     begin by answering the question that I
17     misunderstood from Judge Rovner early on.
18     We cited a case on page 8 of our reply
19     brief, Smilow versus Southwestern Bell, a
20     First Circuit case where the First Circuit
21     reversed a district court's
22     decertification of a class that had
23     previously been certified.  That was
24     involving cell phone consumer contracts.
25     I'm sorry I didn't understand you at
```

AmersonWhite®
COURT REPORTING & LITIGATION SUPPORT
866.870.7233   P.O. Box 1554 Hammond LA 70404   Fax 985.419.0799

```
 1        first, but I hope that helps.
 2             In terms of the analysis in Judge
 3        Pratt's order certifying the class versus
 4        the order decertifying the class, when she
 5        certified our class, she walked through
 6        the elements and said specifically on
 7        commonality, "the central common question
 8        whether the floor plan agreement allowed
 9        NextGear to charge interest and fees on
10        money not yet actually loaned will produce
11        an answer that can lead to resolution of
12        the claims for the class in one stroke,
13        quoting Walmart."  That's the kind of
14        analysis that we don't find in the
15        decertification order.  And there's no
16        explanation for how we go from commonality
17        to, 6 months later, no commonality on the
18        same record.
19             In the first order certifying the
20        class, on predominance, Judge Pratt wrote:
21        "Given the specific nature of the
22        Plaintiff's breach of contract claim in
23        this case, the elements of this claim are
24        capable of proof at trial through evidence
25        that is common to the class rather than
```

```
1    individual to its members."  And if you
2    listened carefully to the answer to your
3    question, Chief Judge Wood, NextGear's not
4    claiming that 7,000 people would have one
5    interpretation and 13 another.  They want
6    the same interpretation of the language
7    across the class.  That's why this is a
8    class case.
9         And the language of the contract does
10   not allow them to charge interest earlier
11   than when funds are advanced.  And
12   advanced is defined in the contract as any
13   loan or payment in any amount made
14   pursuant to this note by DSC to dealer or
15   on dealer's behalf to a third party.
16   They're charging interest and fees before
17   they make payments.  And their definition
18   of advance does not allow them to do that.
19   That's why we're here on this case.
20        NextGear is the largest automotive
21   financing company in the country, and it
22   imposed its form contract on the dealers
23   on a take it or leave it basis.  NextGear
24   allowed the terms of the contract to be
25   revised for individual dealers in fewer
```

AmersonWhite
COURT REPORTING & LITIGATION SUPPORT
866.870.7233    P.O. Box 1554  Hammond LA 70404    Fax 985.419.0799

1    than 10 out of 20,000 contracts during the
2    class period.  Although they paint this
3    relationship as between equally
4    sophisticated businesses, it bears many of
5    the relationship hallmarks of a credit
6    card application, as testified to by their
7    own general counsel.
8        We ask that this case be remanded,
9    and that our class be reinstated for trial
10   on the breach of contract claim.  Thank
11   you.
12   JUDGE WOOD:  All right, thank you very
13   much.  Thanks to both counsel.  We will
14   take the case under advisement.
15
16
17
18
19
20
21
22
23
24
25



AmersonWhite
COURT REPORTING & LITIGATION SUPPORT
866.870.7233    P.O. Box 1554  Hammond LA  70404    Fax 985.419.0799

```
 1              REPORTER'S CERTIFICATE
 2         This certification is valid only for a
 3    transcript accompanied by my original signature and
 4    original seal on this page.
 5         I, ANNA C. COATES, CCR, RPR, do hereby certify
 6    this AUDIO RECORDING REGARDING RED BARN vs.
 7    NEXTGEAR, upon authority of R.S. 37:2554, above set
 8    forth in the foregoing 35 pages; that this audio
 9    recording was reported by me in the stenotype
10    reporting method, was prepared and transcribed by me
11    and is a true and correct transcript to the best of
12    my ability; that the transcript has been prepared in
13    compliance with transcript format guidelines
14    required by rules of the board; that I have acted in
15    compliance with the prohibition on contractual
16    relationships, as defined by Louisiana Code of Civil
17    Procedure Article 1434 and in rules and advisory
18    opinions of the board; that I am not related to
19    counsel or the parties hereto, nor am I otherwise
20    interested in the outcome of this matter.
21
22
23    _____          _____
24    DATE                      ANNA C. COATES, RPR, CCR
25                              LOUISIANA CCR NO. 97018
```



Amerson White®
COURT REPORTING & LITIGATION SUPPORT

866.870.7233    P.O. Box 1554 Hammond LA 70404    Fax 985.419.0799