IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

RED BARN MOTORS, INC., PLATINUM MOTORS, INC., and MATTINGLY AUTO SALES, INC., individually and on behalf of other members of the general public similarly situated,

Plaintiffs,

v.

NEXTGEAR CAPITAL, INC. f/k/a DEALER SERVICES CORPORATION,

Defendant.

Case No. 1:14-cv-01589-TWP-DLP

**MOTION TO DECERTIFY CLASS**

**Introduction**

Seeking further elaboration of the grounds for decision, the Seventh Circuit vacated and remanded the Court's order decertifying the plaintiff class of commercial borrowers. The premise for the Court's decertification order was its determination that the contracts in issue were ambiguous. [Doc. 261.] That premise—which was urged by Plaintiffs—necessarily means here that the case cannot be adjudicated on a class basis, just as the Court correctly determined. Here's why. If an ambiguous contract is claimed to have been breached, the ambiguous contract terms, by definition, do not resolve the claim of breach. So the key question becomes: how have the parties themselves construed the contract over time, as they have performed? As the Restatement (Second) of Contracts § 202(4) puts it: "Where an agreement involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement."

Here, because the contracts call for repeated performances by the parties, sometimes spanning years, there logically should be ample evidence available on the course of performance, and the testimony of two of the three class representatives confirms that this is so. This issue simply can't be litigated for tens of thousands of borrowers without positing, as Plaintiffs do, a fantasy world, where all borrowers—whether small, large, defaulting, performing, sophisticated, or otherwise—interacted with the predecessor company to NextGear Capital, Inc. ("NextGear") in exactly the same way. To indulge this fantasy would deprive NextGear of basic due process, by forcing it to try to defend claims for which basic important facts cannot, as a practical matter, be adjudicated in a single trial. The Court's decertification decision was absolutely sound, given the stated premise for Plaintiffs' claims, as detailed below.

**Factual Background**

A floor plan with NextGear allows used car dealers to acquire vehicles for resale at auctions without having to pay cash for them. (4/26/2017 Galema Decl. ¶ 9 [Doc. 197-24]; Red Barn Dep. 71:11-20 [Doc. 197-6].) When a dealer puts a car on its floor plan, NextGear immediately becomes obligated to pay the auction, and the dealer pays interest and fees in exchange for NextGear taking credit risk on its behalf. (4/26/2017 Galema Decl. ¶¶ 9-10 [Doc. 197-24]; Modjeski Decl. ¶ 4 [Doc. 197-26]; Werner Decl. ¶ 4 [Doc. 197-28].) Exactly when NextGear settles up with the auction varies, but in some cases this does not occur immediately. (10/31/2016 Galema Decl. ¶¶ 15-16 [Doc. 197-13]; 4/26/2017 Galema Decl. ¶ 10 [Doc. 197-24]; Modjeski Decl. ¶ 5 [Doc. 197-26]; Werner Decl. ¶ 5 [Doc. 197-28].) That gap between floor planning and settling up is the basis for Plaintiffs' claim.

Two of the three named Plaintiffs knew that NextGear sometimes charges interest before it settles up with the auction: Red Barn Motors, Inc. ("Red Barn") first signed a contract and began doing business with NextGear in 2011. (Red Barn Note [Doc. 197-31]; Red Barn

Transaction Report [Doc. 197-15].) It learned that NextGear charged interest "from the date of the sale" almost a year before it defaulted on its obligations to NextGear for unrelated reasons. (Red Barn Dep. 183:5-184:23, 217:23-218:20, 108:17-109:16 [Doc. 197-6]; Red Barn Resp. to Interrog. 6 [Doc. 197-2]; Red Barn Transaction Report [Doc. 197-15].) Mattingly Auto Sales, Inc. ("Mattingly") signed a contract and began floor planning vehicles with NextGear in 2006, and then signed a new contract in 2009 and continued to do business with NextGear. (Mattingly 2006 Note [Doc. 197-34]; Mattingly 2009 Note [Doc. 197-35]; Mattingly Transaction Report [Doc. 197-17].) Mattingly, too, continued to borrow after it learned that NextGear had sometimes charged interest before it paid the auction—until it defrauded NextGear and defaulted on its obligations. (Mattingly Dep. 75:6-76:18, 79:4-16, 154:4-155:9 [197-8]; NextGear's Resp. to Interrog. 13 [Doc. 197-1].)

**Procedural Background**

On summary judgment, the Court held that the floor plan agreements between NextGear and its dealer customers were "ambiguous as to when interest may begin to accrue." (Order on Motions for Summary Judgment [Doc. 262], at 18.) It therefore followed Indiana law and held that all extrinsic evidence could be considered in resolving the ambiguity. (*Id.* at 17-18 (citing *Univ. of S. Ind. Found. v. Baker*, 843 N.E.2d 528, 535 (Ind. 2006)).) In reviewing the extrinsic evidence submitted on summary judgment, however, the Court concluded that the disputed facts were inconclusive and would require a trial on the breach of contract claim against NextGear, where further extrinsic evidence could be elicited by the parties and weighed by the Court. (*Id.* at 19.) For that reason, the Court also recognized trying the case as a class action would not be feasible because resolving the ambiguity in the contract would require individualized proof and undermine the Rule 23 elements of commonality and predominance. (Order on Pending Motions [Doc. 261], at 8.) So the Court decertified the class. (*Id.* at 10.)

Plaintiffs challenged the Court's decertification order in the Seventh Circuit, and the Court of Appeals vacated that order and remanded the case to this Court. The Seventh Circuit addressed "only the narrow issue of whether the district court erred in rescinding class certification"; it did not question the Court's finding that the contracts were ambiguous or that extrinsic evidence was needed to resolve the ambiguity. (Seventh Circuit Decision [Doc. 273], at 1.) The Seventh Circuit merely found that the denial of class certification "lack[ed] sufficient reasoning for our court, on review, to ascertain the basis of its decision" and concluded, "[a]bsent a more thorough explanation of its reasoning, we cannot uphold the decision decertifying the class." (*Id.* at 6, 10.) Rather than reversing the decertification order as wrongly decided, though, the Seventh Circuit invited the Court "to identify why that extrinsic evidence would lead to" the conclusion that common questions no longer predominate. (*Id.* at 9.)

**Argument and Authority**

As the Court has already recognized, decertification of the class is appropriate. "[T]he court has a duty to monitor its class decisions in light of the evidentiary development of the case; the court must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts." *Hickey v. Great W. Mortg. Corp.*, No. 94 C 3638, 1995 WL 121534, at *3 (N.D. Ill. Mar. 17, 1995) (granting motion to decertify). Rule 23(c)(1)(C) gives a court "authority to modify or vacate a class certification *at any time* prior to final judgment." (Order on Pending Motions [Doc. 261], at 4 (citing Fed. R. Civ. P. 23(c)(1)(C)) (emphasis added).) "If the certification of the class is later deemed to be improvident, the court may decertify, subclassify, alter the certification, or permit intervention." *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 896 (7th Cir. 1981) (citations omitted).

## I. The Court Has Already Found the Floor Plan Agreements to Be Ambiguous, Requiring It to Evaluate Extrinsic Evidence.

Throughout the case, NextGear has argued that the floor plan agreements expressly permit it to charge interest on vehicles directly floor planned at auction from the auction date. But the Court agreed with Plaintiffs and found that the agreements are ambiguous as to when interest may begin to accrue on cars financed at auction. To resolve the ambiguity, under governing Indiana and California law, the Court must analyze extrinsic evidence. (*See* Order on Motions for Summary Judgment [Doc. 262] at 17-18.)

The Indiana Supreme Court has held that "where an instrument is ambiguous, *all relevant extrinsic evidence may properly be considered in resolving the ambiguity*." *Univ. of S. Ind. Found. v. Baker*, 843 N.E.2d 528, 535 (Ind. 2006) (emphasis added); *see also City of Kokomo ex rel. Goodnight v. Pogue*, 940 N.E.2d 833, 841 (Ind. Ct. App. 2010) ("Indiana adheres to the rule that when interpreting an ambiguous written instrument, all relevant extrinsic evidence may be considered to resolve any ambiguity, regardless of its nature."). The result is the same for the California sub-class. *See Steller v. Sears, Roebuck & Co.*, 189 Cal. App. 4th 175, 183, 116 Cal. Rptr. 3d 824, 831 (2010) ("Where a word or a phrase used in a contract can reasonably be understood in more than one way, the court must admit and consider extrinsic evidence to determine what the parties actually intended the word or phrase to mean.") (citation omitted).

Various types of extrinsic evidence can be relevant when resolving a contractual ambiguity. That evidence may include contemporaneous records revealing the parties' intent, *Baker*, 843 N.E.2d at 535, and course of performance and course of conduct, *St. Paul Fire & Marine Ins. Co. v. Schilli Transp. Servs. Inc.*, 672 F.3d 451, 462 (7th Cir. 2012) (applying Indiana law); *see also S. Pac. Transp. Co. v. Santa Fe Pac. Pipelines, Inc.*, 74 Cal. App. 4th

1232, 1242, 88 Cal. Rptr. 2d 777, 784 (1999) (recognizing conduct of parties, industry custom, and circumstances of formation of agreements as valid forms of extrinsic evidence).[1]

## II. The Key Extrinsic Evidence Stems from the Parties' Course of Performance, Which Is Unique to Each Dealer.

> "Where an agreement involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement."
>
> -- Restatement (Second) of Contracts § 202(4)

The Restatement and state law make clear that extrinsic evidence of the parties' course of performance after contracting should be considered in construing an ambiguous contract. NextGear has submitted and is submitting evidence of course of performance with the named Plaintiffs and other class members. As the Court recognized on summary judgment, this evidence is highly fact-specific, requiring individual inquiries into what each named Plaintiff knew and did throughout its business relationship with NextGear. Trying that issue for over 27,000 dealers in the currently-defined class would be impossible, at least in a fashion consistent with due process. The Court correctly determined that class certification was inappropriate; it should now explain why in sufficient detail to satisfy the Seventh Circuit.

### A. Post-contractual course of performance must be given great weight in interpreting an ambiguous agreement.

Indiana and California courts will consider course of performance and course of conduct evidence throughout the contract term to interpret ambiguous provisions in a contract. *See*

[1] In any trial to resolve the contractual ambiguity found by the Court, NextGear expects to submit additional evidence about (among other things) the purpose of the parties, consistent reading of the contracts as a whole, prevailing meaning of relevant terms, course of dealing, and usage of trade, all of which dictate that the contracts at issue allowed the charging of interest from the floor plan date. *See generally* Restatement (Second) of Contracts § 202. For purposes of this motion, however, NextGear focuses on the relevant extrinsic evidence that may vary among the class members given the Court's finding of ambiguity.

*Schilli*, 672 F.3d at 462 (where policy language is ambiguous, "evidence concerning the history of the formation of the policy and the course of dealing under it would be admissible, if available and relevant, to establish the intention of the parties") (internal quotation marks omitted); *Emp'rs Reins. Co. v. Super. Ct.*, 161 Cal. App. 4th 906, 922, 74 Cal. Rptr. 3d 733, 746 (2008), *as modified* (Apr. 22, 2008) ("If the parties to a contract have, for years, harmoniously performed the contract in a way that reflects a particular, reasonable, understanding of the terms of the contract, that performance is relevant to determining the meaning of the contract.").

Courts consider both the parties' conduct at the time the contract was formed and the parties' course of performance afterward. *See, e.g.*, *Entm't USA, Inc. v. Moorehead Commc'ns, Inc.*, No. 1:12-cv-116 RLM, 2017 WL 3432319, at *12 (N.D. Ind. Aug. 9, 2017) (turning to evidence of parties' course of dealing during contract performance to interpret ambiguous contract term), *aff'd*, 897 F.3d 786 (7th Cir. 2018); *Gold v. Rowland*, 156 A.3d 477, 505 (Conn. 2017) ("More generally, however, we disagree with the plaintiffs that, under Indiana law, the only intent that is relevant to the interpretation of an ambiguous contract is that which existed at the time of contracting. Rather, Indiana follows the general rule that the parties' course of conduct after forming a contract may provide extrinsic evidence of the meaning of ambiguous terms.") (citing *Bank of Am., N.A. v. Ping*, 879 N.E.2d 665, 671 (Ind. Ct. App. 2008); *Noble Roman's, Inc. v. Pizza Boxes, Inc.*, 835 N.E.2d 1094, 1099 (Ind. Ct. App. 2005)); *S. Pac. Transp.*, 74 Cal. App. 4th at 1242, 88 Cal. Rptr. 2d at 784 ("In construing contract terms, the construction given the contract by the acts and conduct of the parties with knowledge of its

terms, and before any controversy arises as to its meaning, is relevant on the issue of the parties' intent.").[2]

In cases interpreting ambiguous contracts, then, courts have looked to the parties' performance during the contract term. For example, in *Schilli*, the court looked closely at the parties' billing practices to resolve an ambiguity in an insurance policy. The Seventh Circuit remanded the case for the district court to consider extrinsic evidence, including "evidence of how the Parties dealt with liability for the deductibles in the past." 672 F.3d at 462. On remand, the district court gave "great attention" to "who was billed and paid the premiums, particularly whether the money was advanced or taken straight from a coinsurer's account." *St. Paul Fire & Marine Ins. Co. v. Schilli Transp. Servs., Inc.*, No. 2:08 cv 176, 2012 WL 5471966, at *6 (N.D. Ind. Nov. 9, 2012). The court also considered other course of dealing evidence, including where the bills for the insurance premiums were sent and who paid the premiums. *Id.* at *8. *See also Entm't USA*, 2017 WL 3432319, at *12 (plaintiff's "years of silence . . . strongly and persuasively demonstrate[] that [plaintiff] didn't develop a belief of entitlement to compensation for other activations until [defendant] stopped making payments under the referral agreement"); *Epic Commc'ns, Inc. v. Richwave Tech., Inc.*, 237 Cal. App. 4th 1342, 1355, 188 Cal. Rptr. 3d 844, 855 (2015) ("[h]ere the most potent extrinsic evidence may be the parties' subsequent conduct").

---

[2] In this regard, Plaintiffs' repeated assertion that post-contractual dealings are irrelevant and/or integrated into the parties' contract is incorrect. The integration clause in Plaintiffs' floor plan agreements only addresses modification or amendment of the contract, not methods of construing the ambiguous contract. (*E.g.*, Red Barn Note § 14 [Doc. 197-31].) And where a contract is found ambiguous, all forms of extrinsic evidence, including post-signing performance between the parties, are relevant to help resolve the ambiguity. *Baker*, 843 N.E.2d at 535; Restatement (Second) of Contracts § 202.

**B. Course of performance evidence will be highly individualized, potentially leading to different outcomes for different dealers.**

Course of performance cannot be evaluated on a classwide basis. Intrinsically, performance will vary by dealer; individual evidence of a particular dealer's communications, understanding, and experience under its floor plan agreement would be relevant to a fair determination of how the parties, by their performance, interpreted their contract. Although class discovery is not complete, discovery from the named Plaintiffs themselves and from NextGear's account representatives demonstrates the variety among the class.

1. Most tellingly, the course of performance differed among the three named Plaintiffs. Two continued to do business with NextGear fully aware that interest began to accrue before NextGear settled with the auctions. The other never had any idea when interest was charged:

*Red Barn*. In June 2012, Red Barn's General Manager "confronted" his NextGear representative over interest charges. He said the representative's response was to explain that the company always charged interest "from the date of the sale." (Red Barn Dep. 217:23-218:20 [Doc. 197-6] ("That was just the way that it was. He said that -- that's the way it was. They always go from the date of the sale.").) In other words, Red Barn's General Manager understood that Red Barn was sometimes accruing interest before NextGear paid the auction for his vehicles, but he still continued to finance auction purchases using NextGear's funding. (*Id.* 183:5-184:23; Red Barn Transaction Report [Doc. 197-15] (showing over 200 units floored with NextGear *after* June 2012).) That Red Barn continued to do business without complaint after learning how NextGear interpreted the contract should be "given great weight" in resolving any ambiguity in its floor plan.

*Mattingly*. Mattingly learned about the interest accrual issue in a slightly different way. Mattingly's owner realized that in some cases, he would pay off a vehicle before NextGear

obtained title from the auction, and that this meant he would have to pay interest on the vehicle before NextGear had to pay the auction. (Mattingly Dep. 75:6-76:18, 79:4-16 [Doc. 197-8].) He raised this concern with NextGear's account representatives "from day one"; specifically, he "[j]ust in a -- I said in a jokingly -- I'm sure that they told me it was common practice, but I said, 'That's kind of a shame that I'm paying interest on *something that you-all are still holding the money on* that I don't even have yet.'" (*Id.* 76:7-11 (emphasis added).) Mattingly continued to borrow from NextGear after learning that charging interest before settling up was "common practice." (*Id.* 75:6-76:18; *see also id.* 154:4-155:9 (Mr. Mattingly was "aware [he was] being charged interest for that period" when title was absent).) Again, Mattingly's course of performance demonstrated its understanding and acceptance that interest could be charged before NextGear made payment to the auction for a vehicle, which should be "given great weight" in resolving any ambiguity in its floor plan.

*Platinum Motors, Inc. ("Platinum").* Platinum did business with NextGear briefly in 2011 and only floor planned seven auction vehicles with NextGear. (Platinum Note [Doc. 197-19]; Platinum Transaction Report [Doc. 197-20].) In contrast to Red Barn and Mattingly, Platinum's owner never asked about or brought up when interest would begin to run. (Platinum Dep. 81:14-16, 97:22-25 [Doc. 197-9].) She does not suggest that anyone from NextGear made any false representations to her; there was simply no discussion of the issue. (*Id.* 95:5-10, 78:23-81:16, 93:3-10, 97:17-25.) Her course of performance is therefore inconclusive in demonstrating the meaning of her contract.

2. NextGear's own course of performance points to its understanding that the contract allowed it to charge interest from the floor plan date. For directly-floored vehicles, NextGear has consistently, since 2005, charged interest and fees from the date of auction, rather than the

date it transmits payment to the auction. (4/26/2017 Galema Decl. ¶ 12 [Doc. 197-24].) Consistent with that practice, dealers had 24-hour online access to detailed information about balances, fees, interest, floor plan and maturity dates, and to whom NextGear made payment. (Red Barn Receivable Detail Reports, 3/18/2013 & 4/26/2013 [Ex. 6]; LaBauve Dep. 178:3-183:3 [Ex. 5].) Those online statements do not say when NextGear settled with the third-party auctions behind the scenes; the absence of that auction settlement information suggests it was not material to the parties and did not play a role in their course of performance. And the parties agreed that regardless of whether they contained settlement dates, the billing statements were the decisive and binding evidence of what the dealer owed (principal, interest, and all) if not objected to within 30 days. (*E.g.*, Red Barn Note § 4(k) [Doc. 197-31].)

3. Finally, if the Court expands its view to the entire class, it will find other dealers performed their contracts in completely different ways from the named Plaintiffs. NextGear's account executives communicated with dealers about various issues during the lending relationship, including how interest was calculated and when it began to accrue. The topics and depth of these conversations varied by dealer. In some cases, NextGear's account representatives explained how interest worked at the time of contracting, while others discussed the issue with dealers when questions arose—and some did both. (Bohannon Decl. ¶¶ 4-5 [Ex. 1]; Chevalier Decl. ¶¶ 4-5 [Ex. 2]; Jorewicz Decl. ¶¶ 4-5 [Ex. 3]; Thompson Decl. ¶¶ 4-5 [Ex. 4].) In all of these cases, the account representatives explained that interest could begin to accrue before NextGear settled with the auctions. (Bohannon Decl. ¶ 5 [Ex. 1]; Chevalier Decl. ¶ 5 [Ex. 2]; Jorewicz Decl. ¶ 5 [Ex. 3]; Thompson Decl. ¶ 4 [Ex. 4].) Many dealers continued to do business with NextGear after learning that NextGear charged interest before transmitting payment to auctions—which shows that NextGear's interpretation of its contract is shared by

those dealers. (*E.g.*, Jorewicz Decl. ¶¶ 8-9 [Ex. 3].) Some continued to do business, but also used other floor plan finance companies if those companies' terms were preferable. (Chevalier Decl. ¶ 9 [Ex. 2].) But not all dealers knew, understood, or cared about how NextGear charged interest. To fairly assess the evidence would require a "mini-trial" for every dealer that did any significant business with NextGear.

For all these reasons, the Court should find that the course of performance evidence needed to resolve the ambiguity it found in the contracts requires individual evidence from each dealer in the class. Individual questions about each dealer's understanding and performance of its contract will overwhelm questions common to the class and point to different interpretations for different dealers—or put another way, course of performance evidence will not "generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citation omitted). Consequently, Plaintiffs cannot meet the requirements of Rule 23(b)(3). Not only does the need for extrinsic evidence undermine commonality and predominance, but it also destroys the requisite superiority of a class action over individual trials; classwide trial of these issues will be unmanageable.

## III. NextGear's Individual Defenses Predominate, Which Is Yet Another Reason Plaintiffs Cannot Meet the Rule 23 Standard for Class Certification.

The Court has already found that factual disputes preclude summary judgment as to certain defenses NextGear has against the named Plaintiffs, including *res judicata*, setoff, unclean hands, and waiver and ratification. (Order on Motions for Summary Judgment [Doc. 262], at 30-37.) Those factual disputes as to the three named Plaintiffs merely prefigure the issues that will need to be tried, both because the named Plaintiffs are subject to other defenses that NextGear did not raise on summary judgment, and because many unnamed class members are subject to even more defenses. (*See* Answer and Affirmative Defenses [Doc. 188], at 16-19

(listing 25 affirmative defenses against Plaintiffs and the putative class).) NextGear is entitled to prove those defenses at trial, and it would be unmanageable, if not impossible, to do so across 27,000 class members. That is another, independent reason the Court's prior decision to decertify the class was correct.

NextGear's defenses cannot be ignored simply because there are too many dealers to consider on an individual basis. *Wal-Mart*, 564 U.S. at 367 ("[A] class cannot be certified on the premise that [the Defendant] will not be entitled to litigate its statutory defenses to individual claims."); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 670 (7th Cir. 2015) ("The due process question is . . . whether the defendant will receive a fair opportunity to present its defenses when putative class members actually come forward."). To give NextGear a fair opportunity to present its defenses, the Court would have to hear evidence concerning the defenses available against each of the thousands of dealers in the class—a hopelessly fact-specific, time-consuming, and downright unmanageable proceeding.

**A. NextGear's waiver defense bars the claims of numerous dealers, but it must be evaluated on a case-by-case basis.**

As NextGear has previously argued, numerous class members—including two of the named Plaintiffs—have waived any breach of contract. A "contractual provision may be impliedly waived by the 'knowing and willing acquiescence' of the party for whose benefit the provision was inserted." *Terry v. Int'l Dairy Queen, Inc.*, 554 F. Supp. 1088, 1095 (N.D. Ind. 1983). "Waiver may be implied from the acts, omissions, or conduct of one of the parties to the contract." *Westfield Nat'l Ins. Co. v. Nakoa*, 963 N.E.2d 1126, 1132 (Ind. Ct. App. 2012); *see also Lynch v. Cal. Coastal Comm'n*, 396 P.3d 1085, 1088 (Cal. 2017) (waiver may be express or implied).

The conduct of a party "inconsistent with an intention to rely" on the terms of the agreement "may be sufficient to constitute waiver." *Nakoa*, 963 N.E.2d at 1132. For example, in *Terry*, a sub-license agreement prohibited selling any other product than Dairy Queen on the premises without prior written approval, but one sub-licensee started selling food along with Dairy Queen ice cream. The licensor knew about the sale of non-Dairy Queen products for over 25 years, but it failed to object. The court held that the licensor waived the written approval requirement. 554 F. Supp. at 1095.

Beyond the common-law requirements for waiver, the floor plan contracts themselves say that "any statement of Dealer's account" provided by NextGear is definitive and binding on dealers as to the amount owed unless the dealer objects within 30 days. (*E.g.*, Red Barn Note § 4(k) [Doc. 197-31].) Class members would have to show they objected within this time frame to avoid a contractual waiver defense.[3]

Here, Red Barn and Mattingly have waived their breach of contract claims. As discussed above, these two dealers knew NextGear charged interest before it sent payment to the auctions, yet they continued floor planning cars and paying the supposedly objectionable interest charges, without further objection of any sort. NextGear expects to provide further evidence on those waivers at trial.

Many other dealers in the class likewise continued to floor plan cars with NextGear without objection after they learned how interest was charged. (Bohannon Decl. ¶ 8 [Ex. 1]; Chevalier Decl. ¶¶ 8-9 [Ex. 2]; Jorewicz Decl. ¶¶ 8-9 [Ex. 3]; Thompson Decl. ¶¶ 8-9 [Ex. 4].) Others, however, took some business elsewhere. (Chevalier Decl. ¶ 9 [Ex. 2].) Whether Red Barn, Mattingly, or the other dealers described by NextGear's account executives waived their

[3] The floor plan contains an anti-waiver clause, but this clause only precludes waiver by NextGear. (*E.g.*, Red Barn Note § 17 [Doc. 197-31].)

objections to the interest charges is a fact-intensive inquiry that cannot be adjudicated in a single, classwide trial. The Court has already concluded factual disputes precluded summary judgment because it was unclear if Plaintiffs were sufficiently informed to waive their claims. (Order on Motions for Summary Judgment [Doc. 262], at 37.) The Court would need to perform a similar analysis for each dealer in the class who had potentially waived its claims. This need for individualized analysis of class members' waiver defenses is another reason the class must be decertified.

### B. NextGear's voluntary payment defense bars the claims of numerous dealers, but it must be evaluated on a case-by-case basis.

A host of dealers also cannot pursue claims against NextGear because they voluntarily paid the charges they now object to. The voluntary payment doctrine is a fact-specific defense against class members that hinges on whether a dealer knew about NextGear's interest practices when it made the disputed interest payments.

As a general rule in Indiana, "money voluntarily paid with a full knowledge of all the facts, and without any fraud or imposition on the payor, cannot be recovered back, although it was not legally due." *Time Warner Entm't Co. v. Whiteman*, 802 N.E.2d 886, 889 (Ind. 2004). There must also be a "*recognized uncertainty as to the existence or extent of the payor's obligation to the recipient*" for the voluntary payment doctrine to apply. *Id*. at 892. Applied here, that requirement means the Court will have to determine whether each class member knew there was an uncertainty in its obligation to pay the interest charged by NextGear. If the dealer recognized some uncertainty, then the voluntary payment doctrine will bar recovery. If the dealer did not recognize uncertainty, then it will not. *See, e.g.*, *Lady Di's, Inc. v. Enhanced Servs. Billing, Inc.*, No. 1:09-cv-340-SEB-DML, 2010 WL 4751659, at *7 (S.D. Ind. Nov. 16, 2010) (voluntary payment doctrine barred recovery because plaintiff "recognized a potential

dispute regarding the [disputed charges] but nonetheless voluntarily paid them"), *aff'd*, 654 F.3d 728 (7th Cir. 2011); *NIBCO Inc. v. Arthur J. Gallagher Risk Mgmt. Servs., Inc.*, No. 3:14-cv-00457, 2016 WL 1222217, at *10-11 (N.D. Ind. Mar. 29, 2016) (declining to apply voluntary payment doctrine after finding no evidence amount of fees at issue was disputed when plaintiff paid, "no evidence of a 'recognized uncertainty' regarding [plaintiff's] ability to obtain a refund when [plaintiff] paid" fees at issue, and no evidence plaintiff intended to relinquish right to refund by paying fees).

At trial, NextGear will raise a voluntary payment defense to the claims by Red Barn and Mattingly, who were aware of how interest was charged, were aware they disapproved of the charge, and paid it anyway. On the other hand, other dealers (like Platinum) may claim to have no understanding of how interest was calculated. The Court will need to analyze the specific facts of what each dealer knew, should have known, disputed, and paid—just not the stuff of class actions.

**C. NextGear's statute of limitations defense bars the claims of numerous dealers, but it must be evaluated on a case-by-case basis.**

The longest limitations period applicable to a breach of contract claim is six years under Indiana law and four years under California law. Ind. Code § 34-11-2-9; Cal. Civ. Proc. Code § 337. Thus, any claims for transactions occurring before January 2010 (for the nationwide class) or before January 2012 (for the California class) are time-barred, unless a particular claim is saved by application of the fraudulent concealment doctrine or the discovery rule. But analysis of the discovery rule for each transaction would be nearly impossible, and certainly not efficient. Concealment is an individualized issue that weighs heavily against certification.

Under both Indiana and California law, fraudulent concealment requires a showing of reasonable reliance. "[A] party asserting fraudulent concealment must establish by a

preponderance of the evidence, (1) the wrongdoer had a duty to disclose certain facts to another, (2) it knowingly failed to do so, and (3) the other justifiably relied upon such non-disclosure to his detriment." *Dow Chem. Co. v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 553 N.E.2d 144, 149-50 (Ind. Ct. App. 1990) (citation omitted); *Grisham v. Philip Morris U.S.A., Inc.*, 151 P.3d 1151, 1159 (Cal. 2007) (tolling based on fraudulent concealment "will last as long as a plaintiff's reliance on the misrepresentations is reasonable").

As this Court has already noted, "the element of reliance would require evidence that is too individualized to consider on a classwide basis." (Certification Order [Doc. 220], at 39.) For each dealer in the class who financed some vehicles outside the limitations period, the Court would need to consider what the dealer knew about how NextGear charged interest, if and when that changed, and whether any reliance on statements or silence by NextGear was reasonable. The Court would need to consider not only whether the dealer could be in the class, but whether each transaction by that dealer was barred by the statute of limitations. Thus, individualized questions on the statute of limitations should preclude certification.

### D. NextGear's other defenses bar the claims of numerous dealers, but they must be evaluated on a case-by-case basis.

NextGear raised other defenses in its answer that may be relevant to a wide variety of class members. The Court has already found that some defenses, like *res judicata*, set-off, and unclean hands, present factual disputes precluding summary judgment as to the three named Plaintiffs. (Order on Motions for Summary Judgment [Doc. 262], at 30-35.) NextGear will submit additional evidence on those defenses for the named Plaintiffs—not to mention any other dealers who might be subject to those defenses. Other defenses, like release or discharge in bankruptcy, may not apply to the named Plaintiffs, but inevitably would apply to numerous

dealers in the class. (*See* 10/31/2016 Galema Decl. ¶¶ 26, 29 [Doc. 197-13].)[4] Those defenses, too, would need to be analyzed on a dealer-by-dealer basis.

That NextGear has the due-process right to defend against class members' claims by raising its affirmative defenses is another reason why individualized issues related to defenses would overwhelm any common issues related to the breach of contract claim and would render a class trial unmanageable. The Court should find that class certification is inappropriate for this additional reason.

**Conclusion**

The Court properly decertified the class once before and should do so again, with the elaboration sought by the Seventh Circuit. Resolving the ambiguity in the floor plan agreements in accordance with Indiana and California law, and providing a fair opportunity for NextGear to raise its defenses on the merits, would require consideration of the significant individualized extrinsic evidence for each dealer in the class. This evidence will vary by dealer, potentially leading to different interpretations of the contract or different judgments on defenses. Because so much dealer-specific evidence is needed, individual issues will predominate over common ones, and a class action will quickly devolve into thousands of "mini-trials" that will take months to try. The one-sided proceeding envisioned by Plaintiffs, on the other hand, would arbitrarily presume that all facts are the same for all dealers while ignoring all the real-world evidence, a presumption that would deny due process to NextGear.

[4] As argued in NextGear's Motion to Modify Class Certification Order to Narrow Class [Docs. 237, 286-1], NextGear also has an arbitration defense: the arbitration agreement signed by nearly 10,000 class members supersedes any prior agreements and applies to prior transactions, so dealers who signed these agreements must arbitrate their claims on an individual basis and should be excluded from the class.

Respectfully submitted, this 1st day of May, 2019.

*s/ Paul D. Vink (with permission)*
David J. Jurkiewicz (18018-53)
Paul D. Vink (23785-32)
BOSE McKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
(317) 684-5000
(317) 684-5173 fax
djurkiewicz@boselaw.com
pvink@boselaw.com

*s/ Tracey K. Ledbetter*
Jason S. McCarter (*pro hac vice*)
Tracey K. Ledbetter (*pro hac vice*)
EVERSHEDS SUTHERLAND (US) LLP
999 Peachtree Street, NE, Suite 2300
Atlanta, GA 30309-3996
(404) 853-8000
(404) 853-8806 fax
jasonmccarter@eversheds-sutherland.com
traceyledbetter@eversheds-sutherland.com

*Attorneys for Defendant NextGear Capital, Inc. f/k/a Dealer Services Corporation*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing has been served upon the following counsel of record via the Court's electronic service notification system, this 1st day of May, 2019:

Ryan D. Adams
James M. Garner
Matthew M. Coman
Jacob A. Airey
SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C.
radams@shergarner.com
jgarner@shergarner.com
mcoman@shergarner.com
jairey@shergarner.com

Catherine E. Lasky
Kerry A. Murphy
LASKY MURPHY LLC
klasky@laskymurphy.com
kmurphy@laskymurphy.com

Cassie E. Felder
THE CASSIE FELDER LAW FIRM
cassie@cassiefelderlaw.com

Gladstone N. Jones, III
Lynn E. Swanson
JONES, SWANSON, HUDDELL & GARRISON, LLC
gjones@jonesswanson.com
lswanson@jonesswanson.com

Kathleen A. DeLaney
DELANEY & DELANEY LLC
Kathleen@delaneylaw.net

*s/ Tracey K. Ledbetter*
Tracey K. Ledbetter