IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RED BARN MOTORS, INC., PLATINUM MOTORS, INC., and MATTINGLY AUTO SALES, INC., individually and on behalf of other members of the general public similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>NEXTGEAR CAPITAL, INC. f/k/a DEALER SERVICES CORPORATION,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 1:14-cv-01589-TWP-DLP<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DECLARATION OF GARRETT JOREWICZ

1. I am over twenty-one years of age, of sound mind, and competent to make this declaration. This Declaration is based on my own personal knowledge.

2. I currently serve as a Director of Performance Management for Defendant NextGear Capital, Inc. ("NextGear") and have held that or a similar position for five years. I held a similar position in 2013 and earlier when NextGear was known as "Dealer Services Corporation" or "DSC." In those roles, I have been responsible for signing up new dealer borrowers, monitoring their floor plan performance, and responding to their questions and concerns about their floor plan.

3. I have been the account representative for many dealers that signed with DSC before August 2013, who I understand would be class members in this case. Some of those dealers continue with us now under a newer NextGear contract; some do not.

4. In 2013 and earlier, I met with dealers at our local branch and in the field, and there were occasional questions from dealers regarding when interest would begin to accrue on their floor planned units. I recall explaining the timing of interest accrual as part of my contract closing process. These questions would also come up after contract closing.

5. In fact, when interest would begin to accrue was a common point of contention with dealers. I always explained and re-explained that interest ran from the auction purchase date when the issue came up, regardless of when we paid the auction behind the scenes.

6. I did not keep records on the content of such conversations, but prior to August 2013, it came up at most of my contract closings and several dozen times after closing.

**EXHIBIT 3**

7. Based on other general discussions I had with dealers, auctions, and colleagues, and my experience in the industry, many of our dealers understood that interest began to run from the purchase date regardless of when DSC paid the auction, whether I specifically discussed it with them or not. I am fairly confident it is the industry standard for floor planners.

8. I am not aware of any dealers I worked with canceling their line of credit with DSC in response to such a conversation about interest, and a large majority continued to borrow from us thereafter.

9. Based on my discussions with them, I believe Cruisin Auto Sales (account number 10087); Grand Prix Motors, Inc. (account number 30705); D & C Motorz (account number 35660); and Silverline Automotive, Inc. (account number 41299) understood that we sometimes settled with auctions after interest began to accrue. Each continued to borrow with DSC for some time.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and accurate to the best of my knowledge.

Executed at Carmel, IN, this 30th day of April, 2019.

_____
Garrett Jorewicz