IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| RED BARN MOTORS, INC., PLATINUM MOTORS, INC., and MATTINGLY AUTO SALES, INC., individually and on behalf of other members of the general public similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:14-cv-01589-TWP-DLP |
| NEXTGEAR CAPITAL, INC. f/k/a DEALER SERVICES CORPORATION, | ) ) ) | |
| Defendant. | ) ) | |

## DECLARATION OF TROY THOMPSON

1.  I am over twenty-one years of age, of sound mind, and competent to make this declaration. This Declaration is based on my own personal knowledge.

2.  I currently serve as a regional Director of Performance Management for Defendant NextGear Capital, Inc. ("NextGear") and have held that or a similar position for almost four years. I held an account executive position in 2013 and earlier when NextGear was known as "Dealer Services Corporation" or "DSC." In those roles, I have been responsible for signing up new dealer borrowers, monitoring their floor plan performance, and responding to their questions and concerns about their floor plan.

3.  I have been the account representative for many dealers that signed with DSC before August 2013, who I understand would be class members in this case. Some of those dealers continue with us now under a newer NextGear contract; some do not.

4.  In 2013 and earlier, I met with dealers at our local branch and in the field, and there were occasional questions from dealers regarding when interest would begin to accrue on their floor planned units. Some questions came up at contracting; others came up after contracting. When it came up, I made it a point of emphasis to clarify that interest would accrue from the date of sale for most auction purchases, regardless of when title was delivered or when settlement with the auction occurred behind the scenes.

5.  I would typically explain that, if DSC provided credit availability to the auction at the time of sale, we had to honor it per our agreement with the auction. Thus, we were committed and at risk on the dealer's units from the date of sale.

**EXHIBIT 4**

6.     I did not keep records on the content of such conversations, but I am confident that it came up in most of my closings and more than twenty times post-closing before August 2013.

7.     Based on other general discussions I had with dealers, auctions, and colleagues, and my experience in the industry, many of our dealers understood that interest began to run from the auction date regardless of when DSC paid the auction, whether I specifically discussed it with them or not. I believe it is the industry standard for floor planners.

8.     I am not aware of any dealers I worked with canceling their line of credit with DSC in response to such a conversation about interest, and most continued to borrow from us thereafter.

9.     I specifically recall clarifying the interest timing issue for Ryan Motors (account number 27668), DuPage Auto (account number 29454), Anything in Motion (account number 30217), Champion Motorsports (account number 31545), and Windy City Exotics d/b/a Ridez (account number 38544) while each of those dealers was doing business with DSC. Each continued to borrow with us for some time after those discussions.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and accurate to the best of my knowledge.

Executed at _Zionsville, IN_____, this 30th day of April, 2019.

Troy Thompson