## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### (Indianapolis Division)

| | | |
|---|---|---|
| **RED BARN MOTORS, INC.,** | * | **DOCKET NO. 1:14-cv-01589-TWP-DLP** |
| **PLATINUM MOTORS, INC., and** | * | |
| **MATTINGLY AUTO SALES, INC.,** | * | **CLASS ACTION** |
| **individually, and on behalf of other** | * | |
| **members of the general public** | * | |
| **similarly situated,** | * | |
| | * | |
| **v.** | * | |
| | * | |
| **NEXTGEAR CAPITAL, INC.,** | * | |
| **F/K/A DEALER SERVICES** | * | |
| **CORPORATION,** | * | |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
### DEFENDANT'S RENEWED MOTION TO DECERTIFY CLASS
### AND INCORPORATED MOTION TO STRIKE IMPROPER DECLARATIONS

The Named Plaintiffs—Red Barn Motors, Inc. ("Red Barn"), Platinum Motors, Inc.

("Platinum"), and Mattingly Auto Sales, Inc. ("Mattingly")—oppose the Motion to Decertify Class

(the "Motion") filed by Defendant NextGear Capital, Inc. ("NextGear") (Dkt. 295). The Court

should deny NextGear's Motion under Rules 59(e) and 23(c)(1)(C) because it is untimely,

procedurally improper, and based upon an incorrect reading of the opinion issued by the United

States Court of Appeals for the Seventh Circuit vacating and remanding this Court's order

decertifying the class in this case (Dkt. 261). NextGear ignores the appellate court's endorsement

of this Court's analysis in the Entry Granting Plaintiffs' Motion for Class Certification [Dkt. 220],

rejection of the rationale behind the decertification Order [Dkt. 261], and recognition that the

interpretation of form contracts like the floorplan agreements are particularly well suited for class

treatment. NextGear cannot and should not be permitted yet another bite at the decertification apple

where absolutely nothing has genuinely changed in the litigation. NextGear's attempt to generate

"new" evidence through additional declarations, where that evidence was available to it at the time of the class certification briefing and NextGear's first attempt to de-certify the class, should be stricken as improper. This Court should reject NextGear's attempt to litigate class certification yet again, and this case which has been pending for five years should proceed to trial as a class action.

## INTRODUCTION

On January 12, 2018, this Court entered an Order on Pending Motions, which, *inter alia*, granted NextGear's motion to reconsider the Court's prior certification of a class on the Named Plaintiffs' breach-of-contract and RICO claims and thereby decertified the class. Dkt. 261 at 5-9. The Named Plaintiffs appealed that order, and, on February 13, 2019, the Seventh Circuit vacated this Court's order and remanded for further proceedings. Op. at 10.[1] As a result of the Seventh Circuit's vacatur of the decertification order, this Court's original certification order is in full force and effect—a fact implicitly conceded by NextGear in filing a new motion for decertification.

In its Motion, NextGear requests, for a second time, that the Court decertify the class and effectively asks this Court to reconsider the Seventh Circuit's ruling recertifying the class—a procedurally improper attempt to undermine the function of the appellate process. NextGear argues that the Court should "elaborate[e]" on its earlier order and again decertify the class on the grounds that individual issues will predominate over common ones in resolving, through extrinsic evidence, the ambiguity in the floorplan agreements over when interest began to accrue and in deciding the merits of NextGear's defenses. Dkt. 295 at 18. NextGear makes this pitch out of desperation, even after representing to the Seventh Circuit that this Court should *not* do exactly what NextGear now

---

[1] In its Motion, NextGear cites to the version of the Seventh Circuit's opinion filed in the record, both in the appellate court (7th Cir. Dkt. 26) and this Court (Dkt. 273). The opinion is also reported at *Red Barn Motors, Inc. v. NextGear Capital, Inc.*, 915 F.3d 1098 (7th Cir. 2019).

asks it to do: "We submit it would be a waste of judicial resources now just to remand, for the district judge to add a few sentences to an order that is otherwise sound."[2]

NextGear's Motion improperly seeks a second bite at the decertification apple, ignoring the relevant and very high standards applicable to its motion and, despite the Seventh Circuit's vacatur of the decertification Order, incorrectly argues that the Seventh Circuit invited the requested "elaboration" on decertification. NextGear largely ignores the Court of Appeals' reasoning in asking for that relief.[3] NextGear certainly has not satisfied its burden of proving a right to the extreme remedy of re-decertification following the Seventh Circuit's decision, because:

- While the Motion was filed under Rule 23(c)(1)(C), it is in reality an untimely and meritless motion for reconsideration under Rule 59(e) because there have been no further developments in the litigation since NextGear's original motion to de-certify that would otherwise merit an alteration or amendment of the certification order under Rule 23(c)(1)(C).

- The Motion does not properly seek to alter or amend the Court's certification order under Federal Rule of Civil Procedure 23(c)(1)(C);

- NextGear premises its Motion upon a misreading of the Seventh Circuit's opinion, completely ignoring the appellate court's recognition that the interpretation of form contracts, such as the floorplan agreements, presents an issue "capable of a common answer and for which that common question predominates over questions affecting individual class members," Op. at 9;

- NextGear reiterates its earlier argument that the Court will need to consider extrinsic evidence, including "course of performance" evidence, but the declarations it cites are an improper creation of purportedly "new" evidence that was available to NextGear previously and that should be stricken by the Court, and to the extent that this evidence is considered at all, it does not prove the parties' course of performance; and

- NextGear's various defenses do not predominate over the common questions to be tried in this case.

---

[2] Dkt. 277-1, at 30:21-25.
[3] NextGear effectively waived or should be estopped from seeking any such further "elaboration" because it expressly asked the Seventh Circuit not to remand the case for this Court simply "to add a few sentences to an order that is otherwise sound." Dkt. 277-1 at 30:21-25.

3

Accordingly, the Court should deny NextGear's Motion and set this class action for trial.

**ARGUMENT**

**A.     The Motion Should Be Denied as an Untimely and Meritless Second Motion for Reconsideration Under Rule 59(e).**

While NextGear frames its motion as a motion for decertification under Rule 23(c)(1)(C), as detailed below, NextGear's motion relies on no genuine new developments in the litigation since NextGear's original motion to de-certify. Accordingly, the Motion should be construed as a motion for reconsideration under Rule 59(e). However, the Motion is untimely under Rule 59(e) because NextGear filed its Motion more than 28 days after the entry of the certification judgment it seeks to reconsider (as well as more than 28 days after the issuance of the mandate of the Court of Appeals' judgment vacating this Court's ruling on that original motion to de-certify).[4] Moreover, the extraordinary relief afforded by that Rule is not triggered because the Motion presents nothing more than an attempted re-litigation of issues placed squarely before the Court on class certification and NextGear's first Motion for Reconsideration and most recently, before the Seventh Circuit.

**B.     NextGear's Motion Does Not Properly Seek Decertification Under Federal Rule of Civil Procedure 23(c)(1)(C).**

If this Court does not construe NextGear's Motion as an untimely and meritless motion for reconsideration under Rule 59(e), it should nonetheless deny the Motion under Rule 23(c)(1)(C) because NextGear has failed to demonstrate that any new facts, law, or circumstances justify

---

[4] *See* FED. R. CIV. P. 28(e); *Arendovich Invs., Inc. v. NNR Global Logistics, Inc.*, 754 F. App'x 472, 474 (7th Cir. 2019). This Court entered its certification order (Dkt. 220) on June 29, 2017, and Defendants filed their initial motion to reconsider that order (Dkt. 228) on July 12, 2017. The Court of Appeals vacated this Court's decertification order and remanded the case effective March 8, 2019, when it issued its mandate. Dkt. 273. Even if the remand gave NextGear a new 28 days to seek reconsideration of the initial class certification order, that 28-day period elapsed, on April 5, 2019, nearly a month before NextGear filed its Motion on May 1, 2019. As such, the Motion should be denied as untimely under Rule 59(e).

4

decertification—and no such new facts, law, or circumstances exist here. Rule 23(c)(1)(C) gives courts the discretion to alter or amend an order certifying a class (or denying certification) before final judgment. FED. R. CIV. P. 23(c)(1)(C). The federal courts and commentators view decertification, however, as a "'drastic step, not to be taken lightly.'" *Alig v. Quicken Loans, Inc.*, Civil Action No. 5:12-CV-114, 2017 WL 5054287, at *10 (N.D. W.Va. July 11, 2017) (quoting 3 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 7:37 (5th ed. 2013) (hereafter "NEWBERG ON CLASS ACTIONS")). Decertification is considered an especially "extreme step" where, as here, it is sought at a late stage in the litigation. *Id.* at *11 (citing *Gulino v. Board of Educ. of City Sch. Dist.*, 2012 WL 6043803, at *8 (S.D.N.Y. Dec. 5, 2012)). Consequently, a court should not allow a defendant to utilize a motion to decertify simply "as another bite at the apple in the absence of changed circumstances" as NextGear attempts to do here. *Id.* at *10.

Rather, decertification is appropriate only where the further development of the case produces new facts or law that call into question the court's prior order. *See* Fed. R. Civ. P. 23(c)(1)(C), advisory committee's note to 1966 Amendment ("A determination once made can be altered or amended . . . if, upon fuller development of the facts, the original determination appears unsound."), advisory committee's notes to 2003 Amendments ("Decertification may be warranted after further proceedings."); *see also Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir. 1983) (noting decertification may be appropriate "in response to the progression of the case from assertion to facts"). "Courts thus consistently hold that 'there must be some development or change in circumstances to merit revisiting a class certification decision.'" *Alig*, 2017 WL 5054287, at *10 (quoting *In re J.P. Morgan Chase Cash Balance Litig.*, 255 F.R.D. 130, 133 (S.D.N.Y. 2009), and citing cases); *see also* 3 NEWBERG ON CLASS ACTIONS § 7:34 (5th ed. Nov. 2018 update).

In *J.P. Morgan Chase*, the court noted that "[t]his standard echoes the law of the case doctrine, which advises a court to exercise caution in revising its earlier decision *absent special circumstances*." 255 F.R.D. at 133 (emphasis added) (citing *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008)); *cf. Day v. Celadon Trucking Servs., Inc.*, 827 F.3d 817, 832 (8th Cir. 2016). Where, as here, the defendant can point to no new facts or law that materially changes or clarifies the circumstances, a court "should be wary of motions to decertify which simply reargue certification. . . ." *Alig*, 2017 WL 5054287, at *10. Importantly, the defendant, as the movant seeking decertification, bears the burden of proving that the district court mistakenly granted certification. *Day*, 827 F.3d at 832. The defendant "bears a more onerous burden in challenging certification where, as here, the initial certification decision was carefully considered and made after certification-related discovery." *Id.* (footnote omitted); *see also* Op. at 4, 5 (recognizing this Court's extensive, clear, and thorough analysis in granting certification). *Accord In re Myford Touch Consumer Litig.*, Case No. 13-cv-03072-EMC, 2018 WL 3646895, at *1 (N.D. Cal. Aug. 1, 2018); 3 NEWBERG ON CLASS ACTIONS § 7:39 (5th ed. Nov. 2018 update).

NextGear fails to satisfy its burden of proving that any change in the facts or law since the Court granted certification justifies re-decertification—particularly following the Seventh Circuit's decision. Instead, NextGear merely makes the same arguments it raised originally before this Court in opposing certification and in previously seeking decertification, that is, that the need to consider extrinsic evidence to construe any ambiguity in the floorplan agreements and its various defenses against individual class members predominate over common issues and preclude certification. *Compare* Dkt. 295 at 9-13 *with* Dkt. 160 at 17-18 (dealer-specific facts regarding interest charges), 26-27 (dealer-specific defenses) *and* Dkt. 228 at 2-3 (dealer-specific extrinsic evidence), 8-9 (same), 11-12 (defenses). NextGear likewise cited these very same arguments,

including evidence regarding an alleged course of performance, to the Seventh Circuit in opposing the Named Plaintiffs' appeal. The Court of Appeals, however, rejected those arguments and vacated this Court's decertification order. *See* Dkt. 277-1 at 22:12-26:16.

In an apparent attempt to create "new" facts for this Court to consider, NextGear argues that declarations from four of its employees show how different account executives allegedly discussed the interest due under the floorplans with some of the dealership members of the class at various times and in various ways. *See* Dkt. 295 at 11-12 (citing Dkt. 295-2, 295-3, 295-4, 295-5). These declarations do not represent, however, facts that have been developed through the course of discovery or the progression of this case. Rather, these facts were in NextGear's possession throughout this litigation, including at the time of the original class certification briefing and the briefing on the first motion for reconsideration. Nonetheless, NextGear did not produce this information in the course of discovery and did not cite any testimony from these witnesses in opposing certification (or partial summary judgment). *See* Dkt. 157.

In its Motion, perhaps anticipating that its newly-created declarations may be deemed improper, NextGear incorrectly suggests that class discovery is not complete, Dkt. 295 at 9. To the contrary, the only remaining discovery concerns damages, not liability.[5] When the now-vacated decertification order was entered in January 2018, this case was less than 60 days from trial. The time for discovery—with the exception of class damages discovery and NextGear's long-delayed production of the names and addresses of the remaining class members—is over.

---

[5] *See* Dkt. 277 at 6-7. A review of the parties' filings shows the status of class discovery prior to decertification. On October 12, 2017, when the trial was set for December 4, 2017, the parties filed a joint motion to continue the trial and remaining pre-trial deadlines. *See* Dkt. 254. The parties' joint motion identified the remaining class merits discovery as including only discovery regarding the class members' damages, a Rule 30(b)(6) deposition of NextGear to address class merits issues (which was subsequently taken), and NextGear's written class merits discovery to the Named Plaintiffs (which was subsequently answered). *See id.* at 2. On January 19, 2018, the parties again moved the Court to continue the trial date (then set for March 5, 2018), in light of the pending appeal, but did not identify any additional outstanding class merits discovery. *See* Dkt. 263.

NextGear cites no authority supporting the Court's consideration of facts that were in NextGear's possession and about which it was or could have been aware throughout this litigation as a basis for decertification, especially at this late stage of the litigation. *Cf. Schell v. OXY USA Inc.*, No. 07–1258–JTM, 2013 WL 4857686, at *5 (D. Kan. Sept. 11, 2013) (denying decertification motion based upon circumstances known to parties at time of class certification). **Accordingly, the Named Plaintiffs, in conjunction with this opposition, move to strike the declarations attached to NextGear's Motion as improper "evidence." NextGear never produced the declarations during discovery, did not rely upon them when briefing class certification, the earlier motion to decertify, or in two rounds of briefing at the appellate court, and the declarations are not material to the inquiry under Rule 23(c)(1)(C).[6]**

Therefore, this Court should deny NextGear's Motion under Rule 23(c)(1)(C), because it has failed to demonstrate that any new facts, law, or circumstances justify decertification. *See, e.g.*, *J.P. Morgan Chase*, 255 F.R.D. at 134 (refusing to amend certification where movant failed to show development in case warranting changing original order); *In re Apple iPod iTunes Antitrust Litig.*, Case No. 05-CV-0037 YGR, 2014 WL 6783763, at *6 (N.D. Cal. Nov. 25, 2014) (denying decertification "so soon before trial especially where no intervening events have led to changed circumstances"); *Langley v. Coughlin*, 715 F. Supp. 522, 553 (S.D.N.Y. 1989) (denying decertification where movant failed to show any "significant intervening event" required reevaluation of prior order).

---

[6] To be clear, even if the Court does not strike NextGear's newly-created declarations, those declarations provide no basis for decertification. As discussed in more detail herein, not only are the declarations irrelevant in light of the integration clause in the standard-form floorplan agreements at issue, they do not prove a course of performance across the 27,000-member class or otherwise undermine predominance of common factual issues across the class.

**C.**     **NextGear Mischaracterizes the Seventh Circuit's Opinion as a Basis for Re-Decertification, Ignoring Its Holding That Consideration of Extrinsic Facts Does Not Defeat Commonality and Predominance for Form Contracts.**

NextGear asserts that the Seventh Circuit vacated this Court's decertification order and remanded for further proceedings only "[s]eeking further elaboration of the grounds for decision. . . ." Dkt. 295 at 1. Again, this argument contradicts NextGear's counsel's argument before the Seventh Circuit: "We submit it would be a waste of judicial resources now just to remand, for the district judge to add a few sentences to an order that is otherwise sound."[7] According to NextGear, the Seventh Circuit's opinion

> merely found that the denial of class certification "lack[ed] sufficient reasoning for our court, on review, to ascertain the basis of its decision" and concluded, "[a]bsent a more thorough explanation of its reasoning, we cannot uphold the decision decertifying the class." ([Op.] at 6, 10.) Rather than reversing the decertification order as wrongly decided, though the Seventh Circuit *invited the Court* "to identify why that extrinsic evidence would lead to" the conclusion that common questions no longer predominate. (*Id.* at 9.)

Dkt. 295 at 4 (emphasis added). NextGear's summary of the Seventh Circuit's holding mischaracterizes both the substance of the appellate court's opinion and the nature of the "invitation" it supposedly extended to this Court. In particular, NextGear completely ignores the significance the Seventh Circuit attached to the "form" nature of the floorplan agreements in determining commonality and predominance under Rule 23. NextGear also undermines its own argument by filing a new Motion to Decertify Class – if the Seventh Circuit had not reinstated the class certification order, then there would be no need to now move, again, to decertify the class.

The Seventh Circuit found this Court's orders decertifying the class and denying summary judgment on the Named Plaintiffs' breach-of-contract claim "insufficient to sustain the court's assumption that commonality and predominance were lacking." Op. at 7. Importantly, the Court

---

[7] Dkt. 277-1, at 30:21-25.

of Appeals rejected the basic assumption underlying this Court's decertification order *and NextGear's Motion*, holding that "[n]either the categorization of the contract as ambiguous, nor the prospect of extrinsic evidence, necessarily imperils class status." *Id.* The Seventh Circuit rejected the very premise of NextGear's Motion, *i.e.,* that consideration of extrinsic evidence to resolve a contractual ambiguity precludes certification, because, as this Court has previously found (Dkt. 262 at 4), the floorplan agreements are standard form contracts:

> All parties concede that the floorplan contract in this case is a standard form contract. And neither the plaintiffs nor the defendants argue that the language in the contract has different meaning for different signatories; instead, all argue for an interpretation that would apply to all signatories of the contract. *In fact, with a form contract such as this one, uniform application and interpretation of the clauses would be expected absent evidence that the form contracts in fact had a meaning that varied from one signatory to another.* Even if the determination that the language is ambiguous as to when interest could accrue opens the door to extrinsic evidence to ascertain the intended meaning of that provision, the determination of its meaning would apply to all signatories and therefore would be capable of class-wide resolution.

Op. at 7 (emphasis added). As the Seventh Circuit noted, this Court itself recognized in certifying the class that the possible need to consider dealer-specific evidence did not defeat commonality because the floorplan agreements – standard form contracts – could be construed on a class-wide basis. *See id.* at 7-8 (citing Dkt. 220 at 16, 18); *see also* Dkt. 220 at 36-37.

The Court of Appeals held further:

> But the mere need for extrinsic evidence does not in itself render a case an improper vehicle for class litigation. . . . The proper focus for commonality is whether determination of the question will yield common answers that could resolve the litigation. Here, the class was already narrowed to those who signed the specific form contract at issue here. *With such a form contract,* almost universally signed without negotiation or modification*, there is no reason to think that the interpretation of the [interest] provision will vary from one signatory to another, and therefore the issue is one that is capable of a common answer and for which that common question predominates over questions affecting individual class members*.

Op. at 8-9 (emphasis added) (citation omitted). NextGear omits this predicate to the Seventh Circuit's "invitation" that for this Court "to conclude otherwise, [it] would have to identify why that extrinsic evidence would lead to another conclusion." *Compare id.* at 9 *and* Dkt. 295 at 4. This omission is fatal to NextGear's Motion because nowhere in the Motion does NextGear address, let alone establish, that the interest provision in the standard-form floorplan agreements should be construed differently across the class. Consequently, even if this Court were to consider extrinsic evidence at trial, including the type of evidence cited by NextGear in its Motion, the common question whether the interest provision allowed NextGear to charge interest before it advanced any money should be interpreted and applied uniformly to all members of the class. That common question predominates over any individual issues.

Indeed, the interpretation of language in form contracts arises often in the context of class certification. Adopting reasoning similar to the Seventh Circuit's in this case, a number of federal courts "have certified classes for contract disputes over form contracts because the form contracts are interpreted uniformly across members of the class, and thus the outcome does not depend on extrinsic evidence that would be different for each putative class member." *Kolbe v. BAC Home Loans Servicing, LP*, 738 F.3d 432, 441 (1st Cir. 2013) (en banc) (citing cases) (footnotes omitted). *See also* 1 NEWBERG ON CLASS ACTIONS § 3:24 & n.17 (5th ed. Nov. 2018 update). *Cf. Suchanek v. Sturm Foods, Inc.,* 764 F.3d 750, 756 (9th Cir. 2014) (holding, in consumer protection action, that "[w]here the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question" and "[n]either Rule 23 nor any gloss that decided cases have added to it requires that every question be common").

In *Gillis v. Respond Power, LLC*, 677 F. App'x 752 (3d Cir. 2017), for example, the Third Circuit addressed this issue directly. In *Gillis*, the plaintiffs, comprising approximately 50,000

customers, claimed the defendant breached the parties' contracts by charging them higher rates for energy services than communicated in their form variable rate agreements. *Id.* at 753-54. The district court denied the plaintiffs' motion to certify the class because extrinsic evidence demonstrated that the named plaintiffs did not have the same understanding (or any understanding at all) of the meaning of the contractual provisions at issue, thereby defeating commonality. *Id.* at 755. The Third Circuit expressly rejected the district court's premise similar to NextGear's here:

> In the context of standard form contracts, like the Disclosure Statement, extrinsic evidence of individual understandings is especially irrelevant. Individual signatories to such contracts understand that they have no bargaining power as to specific terms, and they expect to be treated like all other signatories to the form document. Logically, then, standard form contracts should be interpreted uniformly as to all similarly situated signatories whenever it is reasonable to do so, rendering individual, transaction-specific interpretations inapposite.

*Id.* at 756. The Third Circuit observed further that, "[b]ecause form contracts should be interpreted uniformly as to all signatories, Pennsylvania and federal courts have recognized that claims involving the interpretation of standard form contracts are particularly well-suited for class treatment." *Id.* (citing cases).

Similarly, in *Kolbe*, a mortgagor brought a class action against his mortgagee and flood insurer based on the mortgagee bank's standard-form requirement that he maintain flood insurance sufficient to cover the replacement value of his home. 738 F.3d at 436. The lead opinion stated that "[e]xtrinsic evidence of the parties' unique intentions regarding a uniform clause is generally uninformative because unlike individually tailored contracts, uniform clauses do not derive from the negotiations of the specific parties to a contract. Instead, courts seek to determine the uniform meaning of the clause as a matter of law. . . ." *Id.* at 436-37. The lead opinion reasoned further that: "When a contract uses uniform language that is contained in a large number of contracts, as is the case here, it is a well-established common law principle of contract interpretation that such

contracts are 'interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing.'" *Id.* at 440-41 (citations and footnote omitted). *See also* RESTATEMENT (SECOND) OF CONTRACTS § 211(2) (1981) (A standardized agreement "is interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing."); *id.*, cmt. e ("[C]ourts in construing and applying a standardized contract seek to effectuate the reasonable expectations of the average member of the public who accepts it.").

The rationale in these cases, as well as in the Seventh Circuit's opinion in this case, comports with numerous other federal circuit court decisions recognizing that claims arising from form contracts are particularly suited for class treatment. *See, e.g.*, *Venerus v. Avis Budget Car Rental, LLC*, 723 F. App'x 807, 815 (11th Cir. 2018) (reversing denial of certification of class of car renters who claimed rental company breached rental agreement by not procuring insurance for which renters paid where contracts were "materially similar" and acknowledging that "form contracts are ideal for class treatment"); *McKeage v. TMBC, LLC*, 847 F.3d 992, 999 (8th Cir. 2017) (affirming certification where customers signed standard form contract as "classic case for treatment as a class action"); *Catholic Health Care West v. U.S. Foodservice Inc.*, 729 F.3d 108, 125 (2d Cir. 2013) (affirming certification of class of persons who alleged that defendant fraudulently inflated the prices it charged plaintiffs under their contracts to purchase food products and holding breach-of-contract claims satisfied commonality and predominance because the record did not "indicate material differences in contract language or other significant individualized evidence"); *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003) (approving certification of class of dealers suing Exxon for breach of fuel-purchase contracts because dealer agreements imposed materially uniform duty on Exxon); *Smilow v. Southwestern*

13

*Bell Mobile Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003) (reversing decertification of class of purchasers of cellular telephone services under standard form contract and holding commonality and predominance satisfied: "The common factual basis is found in the terms of the [standard form] contract, which are identical for all class members. The common question of law is whether those terms precluded defendant from charging for incoming calls.").

District courts have also consistently reached similar results. *See, e.g.*, *Hanks v. Lincoln Life & Annuity Co. of N.Y.*, — F.R.D. —, 2019 WL 1167752, at *6 (S.D.N.Y. Mar. 13, 2019) (certifying class in breach-of-contract case involving form policies and holding that consideration of extrinsic evidence to determine ambiguity did not defeat commonality or predominance); *In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, MDL No. 2613, 2018 WL 1003548, at *16 (D.S.C. Feb. 22, 2018) (following RESTATEMENT (SECOND) OF CONTRACTS § 211(2) in holding that bank's adhesion contracts should be interpreted uniformly and "individual customers' 'intent' and 'course of performance' is largely irrelevant to resolving any ambiguity"); *Emergency Med. Care Facilities, P.C. v. BlueCross BlueShield of Tenn., Inc.*, No. 1:15-cv-01014-JDB-egb, 2016 WL 7429256, at *4 (W.D. Tenn. Apr. 15, 2016) (finding commonality satisfied because "'an overwhelming number of courts have held,' in situations like the one here, that 'claims arising out of form contracts are particularly appropriate for class treatment'") (quoting *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 37 (E.D.N.Y. 2008), and citing additional cases); *Ellsworth v. U.S. Bank, N.A.*, No. C 12–02506 LB, 2014 WL 2734953, at *22 (N.D. Cal. June 13, 2014) ("Also, with identical form contracts, courts in this district generally hold that extrinsic evidence is unlikely to be important, and ambiguous terms would be construed against the drafter."); *In re FEDEX Ground Package Sys., Inc. Employment Practices Litig.*, No.3:05-MD-527 RM (MDL-1700), 2007 WL 3027405, at *23 (N.D. Ind. Oct. 15, 2007) ("Claims arising from a defendant's

standardized conduct towards members of the proposed class or from the interpretation of a standard contract often present a case for treatment as a class action.") (citing *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998)); *Flanagan v. Allstate Ins. Co.*, 242 F.R.D. 421, 428 (N.D. Ill. 2007) ("Claims arising out of form contracts are particularly appropriate for class action treatment. . . . Additionally, our courts have often found a common nucleus of operative facts when the defendants are, as here, alleged to have directed standardized conduct toward the putative class members.") (citations omitted); *Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 164 F.R.D. 659, 664 (N.D. Ill. 1996) ("A common nucleus of operative fact is typically found where the defendants have engaged in standardized conduct toward members of the proposed class. Claims arising out of standard documents present a classic case for treatment as a class action.) (internal citations and quotation marks omitted).

NextGear does not address the question actually posed by the Seventh Circuit (or the conclusions reached by these other courts)—how extrinsic evidence defeats commonality or predominance in this case involving the breach of standard-form floorplan agreements. Instead, NextGear merely focuses its Motion on the extrinsic evidence it anticipates introducing at trial. NextGear neither makes clear whether it contends that the interest provision should be construed differently across the class nor, if so, explains why its form contract should apply differently to individual class members. Indeed, NextGear's "new" declarations only specifically address eleven of the more than 27,000 class members and thus do not demonstrate that individual issues will predominate over the common question regarding how any ambiguity in the form contract should be resolved.[8] Accordingly, in light of the Seventh Circuit's opinion, NextGear has provided no

---

[8] Most of the evidence upon which NextGear indicates it intends to rely, such as the "prevailing meaning of relevant terms," "usage of trade," and its employees' testimony that the question of interest supposedly came up "regularly" or in "most" of their closings (despite their lack of written records), concerns the interpretation of the floorplan agreements on a class-wide, not an individual, basis. *See, e.g.*, Dkt. 295 at 6 n.1; Dkt. 295-2, 295-3, 295-4,

basis for reconsidering this Court's prior certification order and decertifying the class. The Court should deny the Motion.

### D. NextGear's Evidence Does Not Prove the Parties' Course of Performance, Especially Across the More Than 27,000-Member Class.

NextGear contends, relying upon § 202(4) of the RESTATEMENT (SECOND) OF CONTRACTS, that evidence of course of performance must be given great weight in interpreting the ambiguous interest provision in the floorplan agreements. *See* Dkt. 295 at 6-8. The comments to this section of the RESTATEMENT clarify, however, that "such 'practical construction' is not conclusive of meaning." RESTATEMENT (SECOND) OF CONTRACTS § 202, cmt. g (1981). Instead of proving the parties' true intent, course-of-performance evidence may simply be evidence of "a mistake which should be corrected." *Id.*

The case law from Indiana and California upon which NextGear relies also does not support decertification in this case. Initially, none of the cases NextGear cites involved the alleged breach of an ambiguous standard-form contract provision *in a class action*. Even if the Court ultimately considers this evidence, it may do so at trial in determining, on a class-wide basis, when the floorplan agreements permitted NextGear to charge interest. As demonstrated above, courts routinely certify class actions to resolve such breach-of-contract claims even where the contract at issue is ambiguous. *See supra* at 14.

Next, the facts concerning course of performance in these cases are very different than the facts here. NextGear references three types of evidence it contends show the parties' course of

---

295-5. Moreover, if this evidence does not definitively prove the parties' intent, any ambiguity in its standard form contract should be construed, for the entire class, against NextGear as the drafter. *See Bradshaw v. Chandler*, 916 N.E.2d 163, 166 (Ind. 2009) (construing ambiguous provision in insurance policy against insurer); *Keithley's Auction Serv. v. Children of Jesse Wright*, 579 N.E.2d 657, 659-60 (Ind. Ct. App. 1991) (construing ambiguity against drafter of form auction contract because an "ambiguous contract is construed against the party who furnished and drafted the agreement").

16

performance: (1) the actions of the Named Plaintiffs; (2) NextGear's own actions; and (3) the communications between some of NextGear's account executives and some dealers. Dkt. 295 at 9-12. As explained further below, the one thing that all of this evidence has in common is that it all concerns NextGear's reading of the floorplan agreement's interest provision. None of the evidence shows that any of the class members, including the Named Plaintiffs, voluntarily paid interest on money NextGear had agreed to pay, but had not yet advanced, based upon their own, independent understating of the contract terms.

In contrast, the courts in the cases cited in NextGear's Motion, all looked to the parties' independent post-contracting actions, not to how one party acted after being told what an ambiguous contract supposedly said or meant. *See Entertainment USA, Inc. v. Moorehead Commc'ns, Inc.*, Cause No. 1:12-cv-116 RLM, 2017 WL 3432319 (N.D. Ind. Aug. 9, 2017) (holding defendant's payment of compensation for cellular service activations based upon monthly summaries persuaded court as to meaning of ambiguous term "activations" in parties' contract where plaintiff did not complain until payments ended but did not resolve ambiguity as to tiered payments); *St. Paul Fire & Marine Ins. Co. v. Schilli Transp. Servs., Inc.*, No. 2:08 cv 176, 2012 WL 5471966 (N.D. Ind. Nov. 9, 2012) (rejecting insurer's argument that its policy created joint liability based upon evidence that one of multiple related insureds paid premiums for all insureds); *Bank of America, N.A. v. Ping*, 879 N.E.2d 665 (Ind. Ct. App. 2008) (in dicta, citing evidence that borrower withdrew and bank advanced funds against line of credit after original loan had been paid in full to prove that court had read unambiguous term of agreement consistent with parties' mutual intent); *Noble Roman's, Inc. v. Pizza Boxes, Inc.*, 835 N.E.2d 1094 (Ind. Ct. App. 2005) (in UCC case, referencing parties' course of performance as supplemental proof of parties' intent in unambiguous, integrated agreement); *Epic Commc'ns, Inc. v. Richwave Tech., Inc.*, 237

17

Cal.App.4th 1342 (Cal. Ct. App. 2015) (finding release ambiguous and reversing summary judgment on behalf of third parties to release based, in part, on extrinsic evidence of parties' – not third parties' – post-release actions); *Employers Reins. Co. v. Superior Court (Thorpe Insulation Co.)*, 161 Cal.App.4th 906 (Cal. Ct. App. 2008) (holding course of performance under insurance claims handling agreements could not be used as extrinsic evidence of parties' understanding of meaning of separate insurance policies, *i.e.,* for policy interpretation).

Ultimately, any extrinsic evidence of course of performance should be considered, if at all, at the trial on the merits of the certified class's claims. This evidence does not defeat certification. Nevertheless, because NextGear has devoted a significant portion of its brief to its course-of-performance evidence, the Named Plaintiffs address it briefly and preliminarily here. As demonstrated below, even if this Court considers NextGear's belated evidence at trial, it does not establish a course of performance between NextGear and the individual dealers or on a class-wise basis and certainly does not defeat certification.

First, the deposition testimony from the corporate representatives of Red Barn and Mattingly does not prove that they "'harmoniously performed the contract in a way that reflects a particular, reasonable, understanding of the terms of the contract,'" as NextGear suggests. Dkt. 295 at 7 (quoting *Employers Reins.*, 161 Cal.App.4th at 923). The cited testimony confirms, as this Court has found, that Red Barn and Mattingly, like other members of the class, could not tell from the various reports NextGear provided when it paid the auction house and, thus, when interest began to run. *See* Dkt. 209 at 10-13 (citing deposition testimony); Dkt. 262 at 5-6. This testimony also shows that the dealers did not have any independent knowledge or understanding of the interest provision in the floorplan agreements and simply relied upon NextGear's representations that it "always charged interest 'from the date of the sale.'" Dkt. 295 at 9 (citing Dkt. 197-6 at

217:23-281:20); *see also* Dkt. 295 at 9-10 (citing Dkt. 197-8 at 75:6-76:18, 79:4-16). Although this testimony may reflect NextGear's understanding of the ambiguous provision, it proves nothing about the Named Plaintiffs' understanding or intent in entering into the standard-form agreement.

The fact that the dealers did not or could not decipher the interest provision that this Court has now concluded is ambiguous provides no evidence of course of performance or the "parties' intent at the time they made the agreement." *Entertainment USA,* 2017 WL 3432319, at *4; *see also U.S. Cellular Inv. Co. v. GTE Mobilnet, Inc.*, 281 F.3d 929, 938 (9th Cir. 2002) (under California law, course-of-performance evidence may be considered when it shows "'acts and conduct of the parties *with knowledge of its terms*, before any controversy has arisen as to its meaning'") (quoting *Warner Constr. Corp. v. City of Los Angeles*, 2 Cal.3d 285, 296-97 (1970) (emphasis added)). Moreover, the deposition testimony of Red Barn's corporate representative, Mr. London, and Mr. Mattingly plainly shows that they both took issue with NextGear's practice and did not agree with it. *See also* Dkt. 295-4 ¶ 5 ("In fact, when interest would begin to accrue was a common point of contention with dealers."). That Red Barn and Mattingly ultimately required the assistance of legal counsel to make a claim for breach of contract under an agreement this Court has found to be ambiguous does not indicate that they previously paid this interest to NextGear "harmoniously."[9]

Second, contrary to its assertion, NextGear's own performance under the floorplan agreements does not provide course-of-performance evidence to be considered by this Court. *See* Dkt. 295 at 10. As noted above, NextGear premises its course-of-performance argument initially on § 202(4) of the RESTATEMENT (SECOND) OF CONTRACTS. *See supra* at 16. The RESTATEMENT's comments explain that "self-serving conduct is not entitled to weight." RESTATEMENT (SECOND)

---

[9] NextGear concedes that Platinum's course of performance does not support its contract interpretation argument. *See* Dkt. 295 at 10.

OF CONTRACTS § 202, cmt. g. The fact that NextGear hid the auction settlement information from the dealers, thereby preventing them from knowing when NextGear started to charge interest, yet, nonetheless, charged interest on funds it had not advanced does not provide evidence of the parties' intent when they entered into the floorplan agreements and is entitled to no weight at trial.

Third, the belated declarations from four of NextGear's account executives constitute no evidence of the parties' course of performance or, at best, are the type of evidence this Court could consider at the trial on the class's breach-of-contract claim.[10] *See* Dkt. 295 at 11-12. To the extent NextGear contends that these account executives' alleged practices of discussing the interest provision with some or most of the dealers represent a common practice among its account executives, this evidence should be considered with respect to the class as a whole and does not support decertification. More importantly, a class-wide-applicable reading of these declarations shows that they are inapt as a matter of the law between the parties; there is no dispute that the floorplan agreements are subject to an integration clause that states, "this Note may not be modified or amended except upon the written consent of DSC [NextGear] and Dealer." Dkt. 117-1, at 8; 117-3, at 8; 117-4, at 7. On the other hand, if NextGear cites this evidence to show that it had no general practice of telling the dealers about the interest provision, but rather some account executives discussed the interest provision with some dealers, then this testimony identifies only eleven of more than 27,000 dealers with whom the declarants specifically recall discussing interest,

---

[10] Each of the declarations reveals numerous grounds for doubting the credibility or accuracy of the declarant's statements. For example, none of the declarants has any written records of the discussions he had with the dealers, and none identifies in what years he met with dealers, with how many dealers he met, or with which particular dealers he met. The declarations are vague as to time and contain vague or imprecise words, such as "some," "sometime," "occasional," "most," and "many." *See generally* Dkt. 295-2, 295-3, 295-4, 295-5. Each of the declarations states that the declarant believes NextGear's practice reflected the industry standard, which applies class-wide and not merely to individual dealers. *See, e.g.*, Dkt. 295-2 ¶ 7. The declarations also include inadmissible hearsay about what "many of [NextGear's] dealers understood . . . whether I specifically discussed it with them or not." *See, e.g., id.* Nonetheless, in his declaration, Mr. Bohannon testifies that he "told dealers the interest clock starts from the date of sale *on most auction purchases*," which suggests that not even NextGear's performance was consistent. *Id.* ¶ 5 (emphasis added).

and this issue does not predominate over the common issue of the meaning of the interest provision in NextGear's form contract for the remaining thousands of members of the class. The Court should therefore deny NextGear's Motion.

###### E. NextGear's Various Defenses Do Not Predominate Over the Common Questions to Be Tried in This Case.

NextGear argues lastly that various defenses it plans to raise, namely, waiver, voluntary payments, statute of limitations, *res judicata*, set off, and unclean hands, predominate over the common issues to be tried in this case, thereby precluding certification. *See* Dkt. 295 at 12-18. NextGear made this same argument as to individual defenses in seeking to prevent class certification originally, and this Court rejected that argument. *See* Dkt. 220 at 21, 24, 34-37. NextGear raised this argument again in seeking reconsideration of the Court's class certification order. *See* Dkt. 261 at 6. The Court did not reconsider this issue in granting NextGear's reconsideration motion and in decertifying the class (*see* Dkt. 261 at 8-9), and the Seventh Circuit likewise did not address NextGear's defenses on appeal. *See* Op. at 6-10. This argument does not provide a proper basis for decertification under Rule 23(c)(1)(C) or a proper or timely basis to reconsider the certification order under Rule 59; thus, the Court should deny the Motion.

Even if the Court considers the substance of NextGear's argument, however, NextGear again fails to cite any authority holding that the defenses NextGear has pleaded and apparently intends to raise at trial defeat predominance and preclude class certification.[11] This Court has previously held, in addressing the typicality requirement, that "[w]hile there may be some variations in the applicability of defenses against various class members, those variations do not undermine the essential characteristics of the claims asserted in this action that drive the resolution of the dispute." Dkt. 220 at 24. The Court further rejected NextGear's argument that its defenses

---

[11] NextGear did not expressly plead "voluntary payments" as an affirmative defense. *See* Dkt. 188 at 16-19.

defeated predominance, holding that "the common questions regarding the breach of contract claim predominate any individual questions," except with respect to issues requiring a California sub-class. *Id.* at 37. In fact, NextGear has pleaded the defenses at issue either against all of the Named Plaintiffs and putative class members or against individual Named Plaintiffs and "many" putative class members. *See* Dkt. 188 at 16-19. Accordingly, as this Court previously noted, "some of the asserted defenses (such as default, setoff, and unclean hands) may be similarly raised against numerous class members, not just the named Plaintiffs," Dkt. 220 at 24, and, therefore, should be handled on a class-wide basis. NextGear's affirmative defenses do not support decertification.

In fact, the Supreme Court of the United States and a number of lower federal courts have expressly rejected the argument made by NextGear that individual affirmative defenses necessarily predominate over common issues and prevent certification. The Supreme Court has held that "[w]hen 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Tyson Foods, Inc. v. Bouaphakeo*, — U.S. —, 136 S. Ct. 1036, 1045 (2016) (quoting 7AA C. WRIGHT, A. MILLER, & M. KANE, FEDERAL PRACTICE AND PROCEDURE § 1778 at 123-24). *See also Day*, 827 F.3d at 833 (citing *Tyson Foods*). A leading class action commentator has also observed that statute-of-limitations and other affirmative defenses rarely provide a proper basis for denying class certification:

> Statute of limitations defenses—like damage calculations, affirmative defenses, and counterclaims—*rarely defeat class certification*. In most cases, statutes of limitations can be applied to the class as a whole or to large groups of class members; this makes the issue a common, not individualized, one and supports a finding that common issues predominate. Moreover, class counsel will often define the class as those with live claims (*e.g.* buyers of a specific product within a specified time period), thereby precluding statute of limitations defenses from even arising. Finally, if statute of limitations issues are somewhat individualized, courts

22

deem that these concerns can be resolved during the damage phase of the case and need not preclude certification of liability issues.

In short, most courts reject the contention that statute of limitations defenses, on their face, preclude a finding of predominance and instead demand evidence that such defenses will in fact devolve into individualized hearings in the particular case. Such individualizing evidence may arise occasionally, but such cases are the exception, not the rule.

WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS ¶ 4:57 (5th ed. July 2017 update) (citing cases) (footnotes omitted) (emphasis added).

Other circuits have addressed some of the same affirmative defenses pleaded by NextGear and rejected them as a reason for not certifying or for decertifying a class. *See, e.g.*, *Smilow*, 323 F.3d at 39 (waiver) ("Courts traditionally have been reluctant to deny class certification status under Rule 23(b)(3) because affirmative defenses may be available against individual defendants. [¶] [W]here common issues otherwise predominated, courts have usually certified Rule 23(b)(3) classes even though individual issues were present in one or more affirmative defenses."); *In re Linerboard Antitrust Litig. Winoff Inds., Inc.*, 305 F.3d 145, 160-62 (3d Cir. 2002) (statute of limitations); *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000) (statute of limitations) ("[T]he mere fact that such [statute-of-limitations] concerns may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones.").

As the Third Circuit held in *In re Linerboard*, for example, the defendants maintained that the applicable statute of limitations barred the plaintiffs' claims and that common issues of proof did not predominate with respect to the plaintiffs' argument that the limitations period was tolled under the doctrine of fraudulent concealment. 305 F.3d at 160-61. The Third Circuit rejected this argument, which NextGear also makes, holding that the issue of fraudulent concealment did not preclude class certification: "To be sure, certain determinations involving the fraudulent

concealment defense to the statute of limitations will require individualized proof, which might vary among the assorted Appellees. However, most courts have refused to deny class certification simply because there will be some individual questions raised during the proceedings." *Id.* at 162. *See also In re FedEx Ground Package Sys., Inc. Employment Practices Litig.*, 662 F.R.D. 1069, 1094 (N.D. Ind. 2009) ("courts have rejected a per se rule that the presence of such [statute-of-limitations] issues compels a finding that individual issues predominate"); *In re FedEx Ground Package Sys.*, 2007 WL 3027405, at *26 (same); *accord Bowen v. Groome*, No. 11-139-GPM, 2012 WL 2064702, at *5 (S.D. Ill. June 7, 2012) (same).

NextGear also wrongly suggests that class certification will deny it due process by preventing it from presenting its defenses against the putative class members. *See* Dkt. 295 at 2, 13. NextGear bases its argument on *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011), and *Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015). Neither case supports NextGear's argument here.

*Wal-Mart* involved a very different situation and bears no relationship to the case before this Court. In *Wal-Mart*, current and former female employees of Wal-Mart brought suit for injunctive and declaratory relief as well as backpay for sex discrimination under Title VII of the Civil Rights Act. The lower courts certified the class of over a million and half plaintiffs, including the claims for backpay, under Rule 23(b)(2), which permits class certification for injunctive and declaratory relief as to the entire class. Rather than requiring proof of the individual backpay claims, the lower courts approved of a "Trial by Formula," under which a sample set of claims would be selected, tried, and extrapolated to the remaining class. *Wal-Mart*, 564 U.S. at 367.

The Supreme Court held, *inter alia*, that the plaintiffs' class claims for backpay had been improperly certified under Rule 23(b)(2). *Id.* at 360. In particular, the Supreme Court rejected the

24

lower courts' "Trial by Formula" because it disregarded Title VII's detailed remedial scheme and prevented Wal-Mart from litigating its "statutory defenses to individual claims." *Id.* at 366-67. These holdings do not apply to the Named Plaintiffs' and putative class members' claims. The Named Plaintiffs have not proposed a trial of only representative claims, and NextGear will be able to present all of its defenses, which are not a part of a statutory remedial scheme as in *Wal-Mart*, even if tried separately as permitted by *Tyson Foods*.

*Mullins* also does not support NextGear's claim. The *Mullins* Court considered whether to adopt a heightened ascertainability requirement that would have required class action plaintiffs to "show a reliable and administratively feasible way to determine whether a particular person is a member of the class."[12] 795 F.3d at 661. The Seventh Circuit acknowledged that some courts had adopted such a requirement based upon due process concerns, *id.* at 669-70, but nevertheless rejected the defendant's argument that permitting putative class members to demonstrate their membership in the class through self-identifying affidavits would deny the defendant's "due process right to challenge the plaintiffs' evidence at any stage of the case, including the claims or damages stage." *Id.* at 669. *Mullins* concluded, instead, that district courts had various means of protecting the rights of class action defendants, such as NextGear, that obviated the need to impose unreasonable and unnecessary procedural impediments to class certification. "As long as the defendant is given the opportunity to challenge each class member's claim to recovery during the damages phase, the defendant's due process rights are protected." *Id.* at 770.[13] Accordingly, *Mullins* does not bar this Court from certifying the claims in this case for class treatment and, if

---

[12] In initially certifying the class, this Court properly applied *Mullins* in holding that the class definition satisfied the ascertainability requirements. *See* Dkt. 220 at 10.

[13] *Accord Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1131-32 (9th Cir. 2017); *Mitchell v. LVNV Funding, LLC*, 2:12-CV-523-TLS, 2016 WL 299044, at *2 (N.D. Ind. Jan 25, 2006).

necessary, considering any individualized defenses during the damages phase of the case. Due process concerns do not require decertification, and the Court should deny NextGear's Motion.

## CONCLUSION

For the foregoing reasons, the Named Plaintiffs respectfully request that the Court deny NextGear's Motion to Decertify Class and proceed with setting this class action for trial.

Respectfully submitted,

*/s/ Kerry A. Murphy*
CATHERINE E. LASKY (La. Bar No. 28652)
*Pro Hac Vice*
KERRY A. MURPHY (La. Bar No. 31382)
*Pro Hac Vice*
**LASKY MURPHY LLC**
715 Girod Street, Suite 250
New Orleans, Louisiana 70130
Telephone: (504) 603-1500
Facsimile: (504) 603-1503
klasky@laskymurphy.com
kmurphy@laskymurphy.com

GLADSTONE N. JONES, III (La. Bar No. 22221) *Pro Hac Vice*
LYNN E. SWANSON (La. Bar No. 22650)
*Pro Hac Vice*
**JONES, SWANSON, HUDDELL & GARRISON, L.L.C.**
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
Telephone: (504) 523-2500
Facsimile: (504) 523-2508
gjones@jonesswanson.com
lswanson@jonesswanson.com

CASSIE E. FELDER (La. Bar No. 27805)
*Pro Hac Vice*
**THE CASSIE FELDER LAW FIRM**
7515 Jefferson Highway, # 313
Baton Rouge, Louisiana 70806
Main: (504) 232-1733
Cell: (504) 400-1127
cassie@cassiefelderlaw.com

JAMES M. GARNER (La. Bar No. 19589)
*Pro Hac Vice*
RYAN D. ADAMS (La. Bar No. 27931)
*Pro Hac Vice*
MATTHEW M. COMAN
(La. Bar No. 23613)
*Pro Hac Vice*
**SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C.**
909 Poydras Street, Suite 2800
New Orleans, Louisiana 70112
Telephone: (504) 299-2100
Facsimile: (504) 299-2300
jgarner@shergarner.com
radams@shergarner.com
mcoman@shergarner.com

KATHLEEN A. DELANEY (# 18604-49)
**DELANEY & DELANEY LLC**
3646 North Washington Boulevard
Indianapolis, Indiana 46205
Telephone: (317) 920-0400
Facsimile: (317) 920-0404
Kathleen@delaneylaw.net

**COUNSEL FOR PLAINTIFFS AND THE CLASS**

26

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 15th day of May 2019, a copy of the foregoing was filed electronically. Notice of the filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

> David J. Jurkiewicz
> Paul D. Vink
> BOSE MCKINNEY & EVANS, LLP
> 111 Monument Circle
> Suite 2700
> Indianapolis, IN 46204
>
> Jason S. McCarter
> Tracey K. Ledbetter
> EVERSHEDS SUTHERLAND (US) LLP
> 999 Peachtree Street, NE, Suite 2300
> Atlanta, GA 30309-3996

*/s/ Kerry A. Murphy*
Kerry A. Murphy
