IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RED BARN MOTORS, INC., PLATINUM MOTORS, INC., and MATTINGLY AUTO SALES, INC., individually and on behalf of other members of the general public similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>NEXTGEAR CAPITAL, INC. f/k/a DEALER SERVICES CORPORATION,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 1:14-cv-01589-TWP-DLP<br>)<br>)<br>)<br>)<br>)<br>) |

## REPLY IN SUPPORT OF MOTION TO DECERTIFY CLASS

This case fundamentally changed when the Court—accepting Plaintiffs' argument—found the governing contract provisions to be ambiguous. Interpretation of those ambiguous provisions is the central issue for trial. How can breach of contract claims be adjudicated on a class basis where the language of the contract itself does not answer the question of whether there has been a breach? NextGear has submitted that it will be impossible: the evidence necessary to prove breach at trial varies by dealer and account representative, so the Court cannot adjudicate the claims of 27,000 dealers in one stroke. The common question is not susceptible of a common answer, a bedrock requirement for class certification.

Plaintiffs scrupulously avoid describing the class trial they envision, but apparently expect a trial based on a set of presumed "facts" for each of the thousands of commercial-borrower class members, ignoring the actualities of the long-term, recurring business relationships between those class members and NextGear. In that hypothetical trial, it would be impossible for NextGear to defend itself against inherently individualized claims—a procedure

that would steamroll over the substantive law of the claims and defenses in violation of the Rules Enabling Act and due process. The Court got it right: this case cannot lawfully proceed as a class action.

Plaintiffs' arguments about general legal principles simply do not meet their burden to help the Court envision a workable trial on the ambiguity issue and on NextGear's many dealer-specific defenses. Because they cannot meet their burden, Plaintiffs hide behind a fog of baseless procedural arguments, such as the claim of a "second bite at the apple" (which the Seventh Circuit invited this Court to take), and waiver of the right to bring this motion because NextGear argued to the Seventh Circuit that the Court's original decertification order was sound and required no further elaboration. For all their bluster, Plaintiffs cannot avoid the fact that, given the evidence now before the Court and which will come before the Court, a class trial affording due process to NextGear would be a practical impossibility. Plaintiffs don't try to deny this; they simply ignore it. Plaintiffs have no plan for trying this case.

The Court should provide the additional detail sought by the Seventh Circuit supporting its sound conclusion that a classwide trial is inappropriate on the evidence and law of this particular case.

**I.    The Court's Finding of Ambiguity Is a Sufficient Basis for Decertification, Given the Individualized Proof of Claims and Defenses.**

The Court "has broad discretion to determine whether certification of a class is appropriate." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). Indeed, the Court has a "*duty* to monitor its class decisions . . . in response to the progression of the case from assertion to facts." *Hickey v. Great W. Mortg. Corp.*, No. 94 C 3638, 1995 WL 121534, at *3 (N.D. Ill. Mar. 17, 1995) (emphasis added) (granting motion to decertify).

As Plaintiffs acknowledge, Rule 23(c) permits decertification at any time before final judgment if the developments in the case warrant. (Opp'n Br. [Doc. 298], at 5.) Plaintiffs contend NextGear has the burden to prove a right to decertification, but this gets the burden exactly backwards. It is Plaintiffs' burden to show the case should continue as a class action. Fed. R. Civ. P. 23; *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 947 (9th Cir. 2011) (recognizing that on decertification, party seeking certification bears burden of showing Rule 23 requirements are met, and decertifying class following summary judgment appeal); *Stepp v. Monsanto Research Corp.*, No. 3:91cv468, 2012 WL 604328, at *3 n.3 (S.D. Ohio Feb. 24, 2012) ("An order certifying a lawsuit as a class action is always subject to reconsideration (*see* Rule 23(c)(1)(C)); therefore, the burden should remain throughout the litigation on the party seeking certification, even in the face of Defendants' motion seeking decertification."); *cf. Day v. Celadon Trucking Servs., Inc.*, 827 F.3d 817, 832 n.9 (8th Cir. 2016) (noting that holding on burden was limited to "the instant facts").

No matter who has the burden, the developments in this case warrant decertification. After the Court certified the class in June 2017 (and after NextGear moved for reconsideration of the certification order), the fundamental legal issues in the case changed. In particular, on January 12, 2018, the Court found that the floor plan agreements between NextGear and the class members "are ambiguous as to when interest may begin to accrue."[1] (Order on Motions for Summary Judgment [Doc. 262], at 18.) The Court also found that factual disputes over NextGear's defenses precluded a ruling on the merits of those defenses at the summary judgment

---

[1] Although NextGear's position has consistently been that the floor plan agreements are not ambiguous, the Court rejected that argument in its summary judgment order, so at trial, the parties must focus on the evidence that would resolve the ambiguity found by the Court.

stage. (*Id.* at 30-37.)  Thus, the parties and the Court need to consider the specific evidence that would resolve the breach of contract claim and NextGear's defenses at trial.

Plaintiffs repeatedly mischaracterize NextGear's motion as seeking an "extreme remedy" constituting "extraordinary relief," while accusing NextGear of "ignoring the relevant and very high standards applicable to its motion."  (Opp'n Br. [Doc. 298], at 3-4.)  All of Plaintiffs' hyperbolic language is in reference to a motion for reconsideration pursuant to Rule 59(e), which is a motion not before this Court.  Rule 23(c) plainly permits the Court to reevaluate class certification at any point in the proceedings before final judgment, and doing so is neither "extreme" nor "extraordinary."  It is well within the discretion of the Court—and indeed is its obligation—to take a fresh look at the form of trial required and decertify the class based on the Court's post-certification decision on the merits.

**II.     The Seventh Circuit Stated General Principles That Do Not Require Continued Certification of the Class in This Particular Case.**

The central premise of Plaintiffs' brief is unmistakably false: the Seventh Circuit did not direct the Court how to rule on NextGear's motion for decertification.  Any reading of the Seventh Circuit's opinion confirms this, and no amount of "pay no attention to the actual evidence behind the curtain" posturing by Plaintiffs can obscure it.  The Seventh Circuit asked the Court to clarify and explain its ruling.  This is the most sensible path forward, in which the Court further explains why its decision to decertify was sound—because it was.

**A.     The Seventh Circuit Did Not Apply Its General Principles to the Facts in This Case.**

In its opinion, the Seventh Circuit declined to impose a *per se* rule against certification when a court is faced with construing an ambiguous contract using extrinsic evidence.  The court stated, "Neither the categorization of the contract as ambiguous, nor the prospect of extrinsic evidence, *necessarily* imperils class status. . . . [T]he mere need for extrinsic evidence does not *in*

4

*itself* render a case an improper vehicle for class litigation." (Seventh Circuit Decision [Doc. 273], at 7, 8 (emphasis added).) This careful language recognizes that ambiguity and extrinsic evidence could sometimes preclude class certification depending on the circumstances.

While the Seventh Circuit acknowledged that form contracts are often appropriate for class certification, it left open the possibility that certification may not be appropriate in particular cases: "In fact, with a form contract such as this one, uniform application and interpretation of the clauses would be expected *absent evidence that the form contracts in fact had a meaning that varied from one signatory to another*." (*Id.* at 7 (emphasis added).) In other words, the Seventh Circuit expressly acknowledged that form contracts cannot be interpreted on a class basis where—as here—the extrinsic evidence demonstrates the meaning of the contract varies among class members. If the Court concludes class certification is not appropriate under the circumstances of this case and based on the evidence to be tried, the Seventh Circuit left the Court free to provide more detail and identify why the extrinsic evidence would lead to that conclusion. (*Id.* at 9.)

NextGear is not asking the Court to lay down *per se* rules about class certification in general or reach broad conclusions about all ambiguous contracts. Rather, NextGear merely argues the Court was correct in its prior decertification order: *in this case*, given the varied history between NextGear and each commercial-borrower class member, often involving advances and interactions over many years, application of the general rules about ambiguity, extrinsic evidence, and form contracts is incompatible with class certification. The Court should therefore identify the extrinsic evidence that leads to this conclusion in decertifying the class.

## B. The "Form Contract" Language Does Not Provide the Requisite Common Answer to the Common Question.

Plaintiffs argue that NextGear does not address how extrinsic evidence defeats class treatment in cases involving "standard-form floorplan agreements." But that was the whole point of NextGear's motion. Given the ambiguity found by the Court and the evidence before or soon to be before the Court about course of performance among dozens of representatives and thousands of class members, the supposedly standard floor plan language does not provide the requisite common answer to the common question of when interest may begin to accrue. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."). Instead, the substantive law requires the Court to sift through the evidence of the performance of the parties, both to interpret the contract and to evaluate defenses to breach. The Court cannot interpret ambiguous language based on the ambiguous language alone.

Although other types of extrinsic evidence may be relevant and presented at trial by the parties, NextGear intends to rely heavily on course of performance, both its own and that of individual dealers. The motion to decertify provides examples of the types of evidence NextGear would present at trial. It shows that some dealers knew or learned that interest on some auction purchases began to accrue before NextGear settled with the auction, and continued to borrow with NextGear anyway, while other dealers may not ever have realized how interest was charged. In some cases, that evidence may point to a breach of contract; in others, it points to performance in accordance with the parties' mutual intent and understanding; in yet others, it may point to a change from the former to the latter over time, as dealers learned and accepted (in various ways and at various times during their relationships with NextGear) how interest was

6

charged.  In other words, the interest provisions could be interpreted and applied by the Court in varying ways based on the evidence about each relationship between a dealer and NextGear.  The question of breach simply cannot be resolved on a classwide basis, as the answer to the question varies from dealer to dealer.

Rather than offering any suggestions for handling such varied evidence at trial, Plaintiffs argue generally that "the interpretation of language in form contracts arises often in the context of class certification," and cite several cases certifying class actions involving form contracts.  (Opp'n Br. [Doc. 298], at 11.)  It is true that some disputes involving form contracts may be appropriate for class treatment.  But, as the Seventh Circuit recognized, that is not a rule for every single case.  None of Plaintiffs' cited cases addresses the inherently particularized set of facts presented by an ambiguous contract.  From the Court's close review of the contractual terms at issue, the parties' intent cannot be discerned from the standard form contract provisions; other evidence, which will vary from party to party, will be needed to resolve the ambiguity.  The extrinsic evidence here undermines the commonality and predominance requirements for certification, because establishing breach of contract for one class member would not necessarily establish it for another.

Federal courts have considered cases in which interpretation of an ambiguous form contract requires extrinsic evidence and have held that the predominance and commonality elements of Rule 23 cannot be satisfied in those cases because resolving the ambiguity calls for individualized evidence.  *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1030 (8th Cir. 2010) (finding liability to entire class could not be established with common evidence because evidence of "each purchaser's understanding of the contract" would be needed to resolve ambiguity in form annuity contract); *Monaco v. Bear Stearns Cos.*, No. CV 09-05438 SJO (JCx),

7

2012 WL 10006987, at *7-8 (C.D. Cal. Dec. 10, 2012) (rejecting argument that court should disregard extrinsic evidence and interpret form contracts uniformly because contracts were facially ambiguous, and concluding "[b]ecause extrinsic and parol evidence is needed to determine the intent of each of the putative Subclass members in entering into the loan agreements, classwide resolution of this issue is not appropriate"); *Adams v. Kansas City Life Ins. Co.*, 192 F.R.D. 274, 282 (W.D. Mo. 2000) ("By allowing extrinsic evidence of the parties' dealings, the breach of contract claims become individualized and not reasonably susceptible to class action treatment.").

On the other hand, many of Plaintiffs' form contract cases are irrelevant here because they do not discuss the interpretation of *ambiguous* contracts. *E.g.*, *Gillis v. Respond Power, LLC*, 677 F. App'x 752, 755 (3d Cir. 2017) (recognizing that if contract provision was ambiguous—which the court did not find—extrinsic evidence might be needed to determine parties' intent); *Kolbe v. BAC Home Loans Serv., LP*, 738 F.3d 432 (1st Cir. 2013) (interpretation of unambiguous language in consumer form contracts); *see also, e.g.*, *Venerus v. Avis Budget Car Rental, LLC*, 723 F. App'x 807 (11th Cir. 2018) (no finding of ambiguity); *McKeage v. TMBC, LLC*, 847 F.3d 992 (8th Cir. 2017) (no finding of ambiguity in claim for violating unauthorized practice of law statute); *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750 (7th Cir. 2014) (claim arose under consumer protection statutes and did not involve contracts at all); *Catholic Health Care W. v. U.S. Foodserv. Inc. (In re U.S. Foodserv. Inc. Pricing Litig.)*, 729 F.3d 108, 124-25 (2d Cir. 2013) (recognizing "extrinsic evidence can illuminate the meaning of ambiguous contract terms," but not finding contract ambiguous); *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248 (11th Cir. 2003) (unambiguous contract); *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32 (1st Cir. 2003) (no ambiguity). Indeed, in *Gillis*, the Third Circuit recognized

8

that there might be circumstances in which it is not "reasonable" to interpret standard form contracts uniformly. 677 F. App'x at 756 ("Logically, then, standard form contracts should be interpreted uniformly as to all similarly situated signatories *whenever it is reasonable to do so*, rendering individual, transaction-specific interpretations inapposite." (emphasis added)).

And Plaintiffs take liberties with some of the cases they cite. For example, they describe *Hanks v. Lincoln Life & Annuity Co. of New York*, No. 16-cv-6399 (PKC), 2019 WL 1167752 (S.D.N.Y. Mar. 13, 2019), as "holding that consideration of extrinsic evidence to determine ambiguity did not defeat commonality or predominance." (Opp'n Br. [Doc. 298], at 14.) In fact, the court declined to decide whether the contracts were ambiguous and held that there was no extrinsic evidence identified by either party relevant to solving any ambiguity in the contract. *Hanks*, 2019 WL 1167752, at *6.

The form contract cases cited by Plaintiffs may indicate a usual outcome, particularly in consumer protection cases, but this is a commercial lending breach of contract case where the contract has been found ambiguous. That necessarily opens the door to relevant extrinsic evidence, which will likely result in different interpretations of the contract for different dealers and give rise to varying defenses. Even the class representatives' testimony demonstrates that the extrinsic evidence available in this case will differ from dealer to dealer, meaning that so will the answer to any purportedly common question. Plaintiffs accuse NextGear of not "mak[ing] clear whether it contends that the interest provision should be construed differently across the class." (Opp'n Br. [Doc. 298], at 15.) If NextGear's contention wasn't clear from its assertion that "[c]ourse of performance evidence will be highly individualized, potentially leading to different outcomes for different dealers" (Mot. [Doc. 295], at 9), NextGear reiterates its position below.

9

### III. The Meaning of the Interest Provision in the Floor Plan Agreements May Vary From One Class Member to the Next.

In this case involving commercial borrowers who took hundreds of advances from NextGear—repeatedly borrowing, charging, and paying over months or even years—the parties' course of performance is critical extrinsic evidence of their understanding and intent. The Court should give that extrinsic evidence "great weight" in interpreting the ambiguous interest provisions in the floor plan agreements, and should follow the evidence to its conclusion. That conclusion may well be that the interest provisions should be construed differently among the class because of the varying course of performance.

#### A. Course of Performance Evidence Shows That Different Dealers May Have Understood the Floor Plan Agreements Differently.

Plaintiffs assert that if the Court considers the evidence in the declarations submitted by NextGear, "it may do so at trial in determining, on a class-wide basis, when the floorplan agreements permitted NextGear to charge interest." (Opp'n Br. [Doc. 298], at 16.) A bold statement—but one Plaintiffs leave unexplained. How exactly will the Court do this when dozens of NextGear representatives interacted with the 27,000 dealers in the class in various ways over eight years? Plaintiffs make absolutely no effort to meet their burden to help the Court envision the form of trial. *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 818 (7th Cir. 2012) (plaintiff's "burden at the class certification stage [is] not to prove the element of [the claim], but only to demonstrate that the element of [the claim] *is capable of proof at trial* through evidence that is common to the class rather than individual to its members" (citation and quotation marks omitted)). NextGear has shown, by reference to testimony of the named Plaintiffs and four of NextGear's own account representatives, that the course of performance varied by representative, by dealer, and over time in these commercial arrangements with repeated advances. In light of this variation, NextGear would be entitled to

10

submit evidence from dozens of NextGear representatives and individual dealer customers to establish the course of performance for each dealer for whom evidence could be obtained.

Plaintiffs provide no alternative suggestions. Instead, they criticize NextGear's evidence as not being evidence of course of performance or not meaning what NextGear suggests. But they are wrong about that, too, as even the would-be class representatives' testimony shows.

First, the deposition testimony from the representatives of Red Barn and Mattingly shows they knew interest began to run before NextGear paid the auctions and continued to do business with NextGear anyway. Even those two dealers' courses of performance were different: Mattingly asked questions and learned the answer "from day one," while Red Barn did not become aware of the interest issue until "midstream" into its relationship with NextGear.[2] (Mattingly Dep. 75:6-76:18, 154:4-155:9 [Doc. 197-8]; Red Barn Dep. 217:16-218:20 [Doc. 197-6].) But neither one stopped floor planning vehicles with NextGear; neither one objected to their statements of account every 30 days, as they could have done; neither one asked for additional information about when NextGear paid the auctions. Instead, they continued to put auction vehicles on their floor plans and pay the supposedly offensive interest charges. (Red Barn Transaction Report [Doc. 197-15]; Mattingly Transaction Report [Doc. 197-17].)

Was their acquiescence sufficient to demonstrate a course of performance? Plaintiffs claim it was not because they "simply relied upon NextGear's representations that it always charged interest from the date of the sale." (Opp'n Br. [Doc. 298], at 18 (internal quotation marks omitted).) Plaintiffs do not explain why it matters how they came to understand how the contract worked. But the Court will need to hear more detail at trial about NextGear's true statements to dealers about how it charged interest and determine what effect those statements—

---

[2] The third named Plaintiff, Platinum, had yet a third course of performance; she apparently never asked about or learned how interest was calculated.

and dealers' acquiescence—have on the interpretation of their contracts. That is a distinctly individualized question for which there is no common answer, and no real-world means of actually finding the answers in one fell swoop for the thousands of unnamed class members through a trial—at least not means that afford due process.

Second, NextGear's consistent interpretation of its own contract over eight years is a part of the course of performance evidence that will be relevant to interpreting the contract, not the "self-serving conduct" that Plaintiffs dismiss. (Opp'n Br. [Doc. 298], at 19-20.) NextGear charged interest from the date of auction even if it settled with the auction later; Plaintiffs paid that interest. There is certainly no evidence NextGear "hid" anything from dealers, as Plaintiffs keep asserting without evidence. The auction settlement dates were unimportant, where the dealers had received the bargained-for inventory by using NextGear's credit, but NextGear's representatives would have provided that information to any dealer who asked—and did. (4/26/2017 Galema Decl. ¶ 13 [Doc. 197-24]; Bohannon Decl. ¶ 5 [Doc. 295-2]; Chevalier Decl. ¶ 5 [Doc. 295-3]; Jorewicz Decl. ¶ 5 [Doc. 295-4]; Thompson Decl. ¶ 4 [Doc. 295-5].)

Third, the declarations NextGear submitted with its motion show how individualized the course of performance evidence is. Whether an account representative spoke with a dealer about interest accrual, and when, depends on the representative, the time period, and the dealer. NextGear submitted declarations from four of its employees who have dealt with the interest issue to help the Court envision what a trial will look like. Plaintiffs are right when they say this is the type of evidence the Court can expect to hear and consider at trial. As to some dealers, NextGear's representatives specifically remember discussing interest accrual and auction settlement, but NextGear's representatives may or may not have discussed the issue with other

dealers. At trial, NextGear expects to present evidence from the dealers on the other side of those conversations, as well.

Unlike NextGear, Plaintiffs have submitted no course of performance or other extrinsic evidence of their own to contradict NextGear's evidence or to help the Court envision their trial plan. In a footnote, Plaintiffs make a passing reference to their (formerly lead) argument that the floor plan agreements should be construed against the drafter—an argument inconsistent with Indiana law, *e.g.*, *Bishop v. Sanders*, 624 N.E.2d 64, 67-68 (Ind. Ct. App. 1993) ("We apply [a construction against the drafter] rule, however, only when all other rules of construction fail."), and ignored by the Seventh Circuit—but Plaintiffs make no showing of actual evidence they have, or might offer at trial, to help the Court resolve the ambiguity in the agreements. As a result, NextGear's showing of varied courses of performance stands uncontroverted.

Plaintiffs' criticism of the merits of NextGear's course of performance argument ultimately points to just how complicated and individualized the evidence at trial will be. Looking to the Rule 23(b)(3) requirements, individual issues predominate and a class-action trial is not superior to individual trials. If this is the amount of ink spilled over three dealers, or eleven, imagine how much time and energy will be needed at a trial with over 27,000 dealers.

### B. NextGear's Declarations Are Appropriate Examples of the Evidence the Court Can Expect at Trial.

Plaintiffs complain that the declarations NextGear submitted are somehow improper or untimely. NextGear presented these declarations as examples of the type of evidence the Court can expect to hear at trial now that ambiguity is the central issue. NextGear did not provide similar declarations before because course of performance only became the core issue for trial following the Court's summary judgment ruling, which was issued well after the original class certification order and motion for reconsideration briefing. Thus, Plaintiffs' mantra that the

13

declarations are untimely or could have been provided during the motion for reconsideration briefing ignores the timing of the Court's decisions in the case. Also, Plaintiffs never asked for them. The only time NextGear had to identify potential trial witnesses, it included "representatives of NextGear . . . with knowledge of the subject matter of this dispute" (Defs.' Preliminary Witness & Exhibit List [Doc. 157], at 2), a designation that includes the four declarants.[3]

Though it is not directly relevant to this motion, Plaintiffs also argue that the only remaining discovery concerns class damages, not liability: *"When the now-vacated decertification order was entered in January 2018, this case was less than 60 days from trial."* (Opp'n Br. [Doc. 298], at 7.) This risible assertion must be offered on the vain hope that the Court does not recall the procedural history. It is literally correct that a trial was scheduled for March 2018, but there was no possibility of a class action trial being held on that date. Notice to the class had not been approved, much less sent—and because of opt-out rights of unnamed class members, that process by itself would require more than 60 days. (*See* Pls.' Reply re. Class Notice [Doc. 257], at 1 (requesting 60 days for class members to opt out of class).) And Plaintiffs admit that, even in their one-sided view of things, class discovery was far from over in January 2018.[4] To try to pass off the status of the case as nearly ready for a genuinely rare class-action trial before Plaintiffs initiated their Rule 23(f) appeal is an affront to the Court.

---

[3] NextGear will respond more fully to Plaintiffs' Motion to Strike the declarations [Doc. 299] at the appropriate time.

[4] Plaintiffs also claim to have answered class merits discovery, but in fact they deferred a response to requests relating to class members until after the notice and opt-out period, when they would know who was in the class.

### IV. An "Opportunity to Challenge Each Class Member's Claim to Recovery" Weighs in Favor of Decertification.

As with other issues, Plaintiffs overstate the law of class certification relating to individualized affirmative defenses, and then rely on general principles. They once again ignore how the general principles will apply in this specific case, where common issues do not otherwise predominate.

Contrary to Plaintiffs' argument, it is settled that "[a]ffirmative defenses should be considered in making class certification decisions." *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003) (citing *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 295 (2000)). If a defendant "proffers individualized and varying evidence to defend against claims of individual class members . . . significant questions concerning ultimate liability may remain for many class members, such that the common questions will not predominate." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1178 (11th Cir. 2010) (internal punctuation omitted). While Plaintiffs point out that courts have rejected *per se* rules treating affirmative defenses as an "automatic disqualifier" for certification, *Waste Mgmt.*, 208 F.3d at 296, they leave out that courts have also found that defenses requiring individualized evidence "weigh against certification," *In re FedEx Ground Package Sys., Inc. Emp't Practices Litig.*, 662 F. Supp. 2d 1069, 1094 (N.D. Ind. 2009). (*See* Opp'n Br. [Doc. 298], at 24 (describing *FedEx*).)

Thus, for example, some courts have denied class certification based on the existence of affirmative defenses whose merits "will have to be determined according to each individual plaintiff," as they "hinge on facts specific to each class member." *Sanneman v. Chrysler Corp.*, 191 F.R.D. 441, 454 (E.D. Pa. 2000) (denying certification to class alleging vehicle defects based on predominance of individualized issues, including affirmative defenses such as statute of

15

limitations, *res judicata*, settlement and release, accord and satisfaction, and unjust enrichment). And in a consumer fraud case, individual issues predominated where "[t]he defendants also have the right to assert affirmative defenses and these affirmative defenses will require a person-by-person evaluation of conduct to determine whether an individual potential class member's action precludes individual recovery." *Clark v. Experian Info., Inc.*, 233 F.R.D. 508, 512 (N.D. Ill. 2005), *aff'd sub nom. Clark v. Experian Info. Sols., Inc.*, 256 F. App'x 818 (7th Cir. 2007). That is precisely the case here. NextGear's defenses will turn on facts specific to each class member: What did this particular dealer know about how interest was charged and when NextGear paid the auctions? When did it learn? What did the particular dealer do about it? Did the dealer defraud NextGear, and how? How much does it owe NextGear? And so on.

Plaintiffs' argument that the affirmative defenses are common because they apply to many class members as well as the named Plaintiffs misses the point. The defenses are individualized because the *evidence* needed to evaluate them will vary from dealer to dealer. Even if every single dealer were subject to a waiver defense, for example, the evidence of waiver would vary greatly for each one. Similarly, some dealers have signed releases of all claims against NextGear, while others, like Mattingly, have signed more limited releases that may not apply here. And not every single dealer is subject to every single defense. One might be subject to the statute of limitations and a setoff defense, while another might be subject to a setoff defense, a waiver defense, and a bankruptcy discharge defense, a third might be subject to all of those defenses, and a fourth might—perhaps—be subject to none at all. (*Cf.* 10/31/2016 Galema Decl. ¶¶ 24-31 [Doc. 197-13]; Answer and Affirmative Defenses [Doc. 188], at 16-19.) Adjudicating those overlapping subsets of dealers, on facts unique to each, would be incredibly complicated if not impossible.

Plaintiffs breezily assert that "NextGear will be able to present all of its defenses" and that everything is fine so long as NextGear "is given the opportunity to challenge each class member's claim to recovery during the damages phase." (Opp'n Br. [Doc. 298], at 25 (citing *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 671 (7th Cir. 2015).) Plaintiffs are slightly misreading *Mullins* here: it holds that if the defendant's liability can be determined on a classwide basis, but there is no common method for determining individual damages, then the defendant must have the opportunity to challenge each class member's claim to recovery during the damages phase. *Mullins*, 795 F.3d at 671. But *Mullins* also provides, "A defendant has a due process right to challenge the plaintiffs' evidence *at any stage of the case*, including the claims or damages stage." *Id.* at 669 (emphasis added). Because NextGear's affirmative defenses go to its liability, as well as to class members' damages, *Mullins* recognizes NextGear's due process right to challenge each class member's claim at the liability stage as well.

Even if Plaintiffs were right about *Mullins*, what on earth does "the opportunity to challenge each class member's claim to recovery during the damages phase" look like here? Plaintiffs offer no hint. Will the Court truly take evidence on each defense applicable to each of thousands of dealers in a single trial? How long will that take? How will the Court manage the witnesses, the evidence—and the rest of its docket? Plaintiffs offer no solutions. They have the burden to show that the defenses are "capable of proof at trial through evidence that is common to the class rather than individual to its members." *Messner*, 669 F.3d at 818 (emphasis, citation, and quotation marks omitted). By failing to meet this burden, Plaintiffs fail to show that their class can satisfy the predominance and superiority requirements of Rule 23.

## V.     Conclusion

How will the Court manage a classwide trial, involving thousands of dealers whose courses of performance over many years differed and who are subject to different defenses

17

requiring different evidence? Plaintiffs never answer that question because they cannot provide a satisfactory answer. A classwide trial would be unmanageable and would be overrun with individualized inquiries as to particular dealers, because the common question—when may interest begin to accrue?—does not generate common answers. Again, the form of trial in this case changed dramatically at summary judgment, when the Court found the relevant contractual provision to be ambiguous, requiring the parties to present extrinsic evidence to help the Court resolve the ambiguity. NextGear's Motion to Decertify reflects that reality. Plaintiffs' opposition avoids it. In short, Plaintiffs have not met, and cannot meet, the predominance and superiority requirements of Rule 23(b)(3), so the class certified before summary judgment should be decertified with detailed findings of fact and conclusions of law. NextGear is submitting with this reply a proposed order to assist the Court in that regard.

Respectfully submitted, this 22nd day of May, 2019.

*s/ Paul D. Vink  (with permission)*
David J. Jurkiewicz (18018-53)
Paul D. Vink (23785-32)
BOSE McKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN  46204
(317) 684-5000
(317) 684-5173 fax
djurkiewicz@boselaw.com
pvink@boselaw.com

*s/ Tracey K. Ledbetter*
Jason S. McCarter (*pro hac vice*)
Tracey K. Ledbetter (*pro hac vice*)
EVERSHEDS SUTHERLAND (US) LLP
999 Peachtree Street, NE, Suite 2300
Atlanta, GA 30309-3996
(404) 853-8000
(404) 853-8806 fax
jasonmccarter@eversheds-sutherland.com
traceyledbetter@eversheds-sutherland.com

*Attorneys for Defendant NextGear Capital, Inc. f/k/a Dealer Services Corporation*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing has been served upon the following counsel of record via the Court's electronic service notification system, this 22nd day of May, 2019:

| | |
|---|---|
| Ryan D. Adams<br>James M. Garner<br>Matthew M. Coman<br>Jacob A. Airey<br>SHER GARNER CAHILL RICHTER<br>KLEIN & HILBERT, L.L.C.<br>radams@shergarner.com<br>jgarner@shergarner.com<br>mcoman@shergarner.com<br>jairey@shergarner.com | Catherine E. Lasky<br>Kerry A. Murphy<br>LASKY MURPHY LLC<br>klasky@laskymurphy.com<br>kmurphy@laskymurphy.com |
| Cassie E. Felder<br>THE CASSIE FELDER LAW FIRM<br>cassie@cassiefelderlaw.com | Gladstone N. Jones, III<br>Lynn E. Swanson<br>JONES, SWANSON, HUDDELL &<br>GARRISON, LLC<br>gjones@jonesswanson.com<br>lswanson@jonesswanson.com |
| Kathleen A. DeLaney<br>DELANEY & DELANEY LLC<br>Kathleen@delaneylaw.net | |

     *s/ Tracey K. Ledbetter*  
     Tracey K. Ledbetter