IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

RED BARN MOTORS, INC., PLATINUM           )
MOTORS, INC., and MATTINGLY AUTO          )
SALES, INC., individually and on behalf of )
other members of the general public similarly )
situated,                                  )
                                           )
          Plaintiffs,                      )
                                           )      Case No. 1:14-cv-01589-TWP-DLP
v.                                         )
                                           )
NEXTGEAR CAPITAL, INC. f/k/a DEALER        )
SERVICES CORPORATION,                      )
                                           )
          Defendant.                       )

**[PROPOSED] ORDER ON MOTION TO DECERTIFY CLASS**

This action is before the Court on a Motion to Decertify Class filed by Defendant

NextGear Capital, Inc. formerly known as Dealer Services Corporation ("NextGear") (Filing No.

295).

Plaintiffs each executed a separate contract with NextGear, whereby they were provided

lines of credit to finance inventory for their used car dealerships.  They initiated this action

against NextGear and other defendants because, in some instances, NextGear charged interest

before actually paying funds to third-party auctions on the Plaintiffs' behalf.  Plaintiffs initially

asserted claims against NextGear and related entities and individuals for breach of contract,

constructive fraud, tortious interference with business relationships, unjust enrichment, violation

of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*,

and RICO conspiracy.  Following the Court's orders on Defendants' motion to dismiss and

motion for summary judgment (Filing No. 186; Filing No. 262), only Plaintiffs' claim against

NextGear for breach of contract remains pending.

Plaintiffs moved for certification of a class.  With respect to Plaintiffs' breach of contract claim against NextGear and substantive RICO claim against NextGear and other defendants, the Court certified a class of "all used car dealers in the United States of America that were parties to a Floorplan Agreement with DSC, n/k/a NextGear, effective during the time period of January 2005 through July 2013," and a subclass of "all California used car dealers that were parties to a Floorplan Agreement with DSC, n/k/a NextGear, effective during the time period of January 2005 through July 2013, which Floorplan Agreement requires the application of California law." (Filing No. 220 at 40.)

NextGear moved the Court to reconsider the class certification order, and both parties moved for summary judgment.  The Court granted summary judgment to NextGear and its co-defendants on Plaintiffs' non-contract claims.  (Filing No. 262 at 38.)  As a result, only the breach of contract claim against NextGear remains in the case.  (*Id.*)  On that breach of contract claim, the Court held that the floor plan agreements between NextGear and Plaintiffs were "ambiguous as to when interest may begin to accrue."  (*Id.* at 18.)  In reviewing the extrinsic evidence submitted by the parties on summary judgment, the Court concluded that the evidence was inconclusive and would require a trial on the breach of contract claim against NextGear.  (*Id.* at 19.)

The same day, the Court granted NextGear's motion to reconsider and decertified the class, finding that resolving the ambiguity in the contract would require individualized proof at trial and undermine the Rule 23 elements of commonality and predominance.  (Filing No. 261 at 8.)

Plaintiffs appealed the Court's decertification order. The Seventh Circuit addressed "only the narrow issue of whether the district court erred in rescinding class certification," ultimately

finding a lack of sufficient explanation.  (Filing No. 273 at 4, 9, 13.)  As a result, the Seventh

Circuit vacated the decertification order and remanded the case to this Court.  (*Id.* at 13.)  The

Seventh Circuit did not alter the Court's holdings that the contracts were ambiguous and that

further extrinsic evidence was needed to resolve the ambiguity.

After the case returned to this Court, NextGear filed a Motion to Decertify Class.  (Filing

No. 295.)  In its motion, NextGear argues that the decertification order was correctly decided and

requests that the Court reaffirm its earlier decision while elaborating on its reasoning and

supporting evidence, as invited by the Seventh Circuit.  In response, Plaintiffs argue that the

Seventh Circuit's opinion holds that form contracts such as the floor plan agreements with

NextGear are particularly suitable for class certification and that neither NextGear's evidence nor

NextGear's defenses are sufficient to overcome the commonality and predominance factors for

form contracts.

Because the Court finds that individual issues undermine commonality, predominance,

and superiority, the Court decertifies the class pursuant to Rule 23(c) of the Federal Rules of

Civil Procedure, based on the following findings and conclusions.

## FINDINGS OF FACT

1.      Defendant NextGear, formerly known as Dealer Services Corporation ("DSC"), is

an automotive financing company that offers revolving lines of credit to used car dealers for the

purchase of motor vehicle inventory.  These revolving lines of credit are referred to in the

industry as "floor plans."  (Filing No. 197-24 at 2.)

2.      A floor plan with NextGear allows used car dealers to acquire vehicles without

having to pay cash for them at the time of purchase.  (Filing No. 197-24 at 2; Filing No. 197-6 at

29.)

3.      If the dealer had a floor plan with NextGear, it could purchase cars from third-party auctions for immediate resale by directing the auction to put the cost of the car on the dealer's floor plan.  The dealer could then take the vehicle from the auction and sell it for a profit, without paying any cash out of its own pocket, which was a significant benefit to the dealers.  (Filing No. 197-6 at 24-25; Filing No. 197-9 at 32.)

4.      The dealer paid interest and fees to NextGear for vehicles it floor planned with NextGear, and in exchange, NextGear took the credit risk on the dealer's behalf while the dealer attempted to sell the inventory.  During that time, the vehicle was inventory collateral subject to NextGear's security interest.  Once the dealer sold the vehicle, it was required to pay NextGear out of the proceeds.  (Filing No. 197-24 at 2; Filing No. 197-26 at 1.)

5.      The moment a vehicle was floor planned, NextGear was committed to pay the auction on a dealer's behalf, and it is only because of that commitment and NextGear's credit that dealers were permitted to leave the auction with the vehicle without paying the auction for it. NextGear paid auctions with funds that NextGear itself borrowed and was obligated to repay. (Filing No. 197-24 at 2; Filing No. 197-26 at 1; Filing No. 197-10 at 5.)

6.      For vehicles purchased at auction and put directly on a dealer's floor plan, NextGear began to charge interest from the date of auction.  (Filing No. 197-24 at 2.)

7.      The exact timing of NextGear's financial settlement with the auction varied; in some cases, NextGear did not pay the auction until days or sometimes weeks after the date of auction.  (Filing No. 197-24 at 2; Filing No. 197-26 at 1.)

8.      Plaintiffs contend that NextGear should not charge interest during the period before it pays the auction even though they have the benefit of the vehicle.  They claim as

4

damages the interest charged before NextGear actually paid the auction for the vehicles on their floor plans.  (Filing No. 154 at 3-4.)

9.     Red Barn Motors, Inc. ("Red Barn") was a used car dealership in Louisiana that first executed a floor plan agreement and began doing business with NextGear in 2011.  (Filing No. 197-31.)  From July 2011 through March 2013, Red Barn financed more than 500 vehicles using its floor plan with NextGear.  (Filing No. 197-15.)

10.     While it was doing business with NextGear, Red Barn discovered that NextGear did not always pay the auction on the date that interest began to accrue.  (Filing No. 197-6 at 83-85, 87-88, 110-113.)  In June 2012, Red Barn's General Manager "confronted" his NextGear representative over interest charges.  He said the representative's response was to explain that NextGear always charged interest "from the date of the sale."  (*Id.* at 110-111 ("That was just the way that it was.  He said that -- that's the way it was.  They always go from the date of the sale.").)

11.     Red Barn continued to borrow from NextGear for nearly a year after June 2012, until it ultimately defaulted on its obligations to NextGear for unrelated reasons.  (Filing No. 197-15; Filing No. 197-6 at 85, 112, 63-64.)

12.     Mattingly Auto Sales, Inc. ("Mattingly") was a used car dealership in Kentucky that executed NextGear floor plan agreements in October 2006 and February 2009.  (Filing No. 197-34; Filing No. 197-35.)  From November 2006 through May 2012, Mattingly financed approximately 160 vehicles using NextGear's floor plan agreement.  (Filing No. 197-17.)

13.     Mattingly's owner realized that, in some cases, he would pay off a vehicle before NextGear obtained title from the auction, and that this meant he would have to pay interest on the vehicle before NextGear had to pay the auction.  He raised this concern with NextGear's

account representatives "from day one."  Specifically, he "[j]ust in a -- I said in a jokingly -- I'm sure that they told me it was common practice, but I said, 'That's kind of a shame that I'm paying interest on something that you-all are still holding the money on that I don't even have yet.'"  (Filing No. 197-8 at 55-56, 121.)  Mr. Mattingly was "aware [he was] being charged interest for that period" when title was absent and NextGear had yet to pay the auction.  (*Id.* at 121-122.)

14.     Mattingly continued to borrow from NextGear after it learned how NextGear charged interest, until Mattingly defaulted on its obligations.  (Filing No. 197-1 at 2-3.)

15.     Platinum Motors, Inc. ("Platinum") was a used car dealer in Virginia that executed a floor plan agreement with NextGear in May 2011.  (Filing No. 197-37.)  In June and July 2011, Platinum financed seven auction vehicles using NextGear's floor plan agreement. (Filing No. 197-20.)

16.     Platinum's owner never asked about or discussed when interest would begin to run.  She does not suggest that anyone from NextGear made any false representations to her; there was simply no discussion of the issue.  (Filing No. 197-9 at 55-58, 74.)

17.     Platinum defaulted on its obligation to repay NextGear and ceased to do business in 2014.  (Filing No. 197-9 at 20-21, 89; Filing No. 197-1 at 4-5.)

18.     NextGear account executives informed dealers that interest could accrue before the auctions were paid.  Some of those discussions occurred at contract closing, and many occurred post-closing as dealers raised questions.  For example, some dealers noticed on the account statements that they were charged interest from the floor plan date and asked NextGear about it.  Some dealers even complained about the practice.  NextGear account executives explained that interest began immediately on most auction purchases because NextGear was

obligated to the pay the auction at that moment.  (Filing No. 295-2; Filing No. 295-3; Filing No. 295-4; Filing No. 295-5.)

19.     Many, if not most, dealers continued to borrow from NextGear thereafter with the knowledge that interest began on the floor plan date regardless of when NextGear settled up with the auction, while some also borrowed from other lenders.  (Filing No. 295-2 at 2; Filing No. 295-3 at 2; Filing No. 295-4 at 2; Filing No. 295-5 at 2.)

20.     All NextGear borrowers had 24-hour online access to account statements containing information about their transactions, including balances, fees, interest, floor plan and maturity dates, and to whom NextGear made payment.  Those online statements do not say when NextGear settled with the third-party auctions behind the scenes, but they did tell dealers the amount of interest and number of days charged.  (Filing No. 197-6 at 34-35; Filing No. 295-7; Filing No. 295-6 at 5-10.)  Red Barn reviewed these online statements daily.  (Filing No. 197-6 at 34-35.)

21.     The floor plan agreements between the parties provide that "any statement of Dealer's account furnished to Dealer by DSC, to the extent no objection is made in writing by Dealer within 30 days after receipt of such statement, shall constitute a definitive statement of Dealer's Credit Line and Liabilities as of the date of the statement and shall be binding upon Dealer."  (Filing No. 197-31 at 5.)  Those agreements do not provide that such account statements must include the date NextGear pays the auction (or other seller) or otherwise indicate that such a date was material to the parties.  (*Id.*)  NextGear has asserted a number of affirmative defenses, including defenses of waiver, voluntary payment, set-off, release, and discharge in bankruptcy.  (Filing No. 188.)  These defenses may affect many dealers in the class.

22.     The class as certified includes over 27,000 customers of NextGear.  (Filing No. 276-2; Filing No. 286-2.)  NextGear contends that nearly 10,000 of these class members have executed contracts with NextGear in which they agreed to arbitrate and waived their right to participate in a class action.  (Filing No. 286.)

## CONCLUSIONS OF LAW

### I.     The Court Has Discretion to Alter or Amend Its Prior Order Granting Class Certification.

1.     Rule 23(c)(1)(C) of the Federal Rules of Procedure provides that "[a]n order that grants or denies class certification may be altered or amended before final judgment."

2.     "[A] district court has broad discretion to determine whether certification of a class is appropriate." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993).

3.     Under Rule 23(c)(1)(C), the Court retains authority to modify or vacate a class certification at any time prior to final judgment.  "[T]he district court has the power at any time before final judgment to revoke or alter class certification if it appears that the suit cannot proceed consistent with Rule 23's requirements." *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977).

4.     "[T]he court has a duty to monitor its class decisions in light of the evidentiary development of the case; the court must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts." *Hickey v. Great W. Mortg. Corp.*, No. 94 C 3638, 1995 WL 121534, at *3 (N.D. Ill. Mar. 17, 1995) (granting motion to decertify).

5.     "[A] favorable class determination by the court is not cast in stone.  If the certification of the class is later deemed to be improvident, the court may decertify, subclassify,

alter the certification, or permit intervention."  *Eggleston v. Chicago Journeymen Plumbers'*

*Local Union No. 130*, 657 F.2d 890, 896 (7th Cir. 1981) (citations omitted).

6.      Rule 23 requires that Plaintiffs seeking to represent a class must show that

> (1) the class is so numerous that joinder of all members is impracticable; (2) there
> are questions of law or fact common to the class; (3) the claims or defenses of the
> representative parties are typical of the claims or defenses of the class; and (4) the
> representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

7.      The Court must conduct "a rigorous analysis" to determine whether the

prerequisites of Rule 23(a) have been satisfied.  *Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir.

2003); *see also Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("actual, not presumed,

conformance with Rule 23(a) remains . . . indispensable").

8.      "To be certified, a proposed class must satisfy the requirements of Federal Rule of

Civil Procedure 23(a), as well as one of the three alternatives in Rule 23(b)."  *Messner v.*

*Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).  Plaintiffs have sought

certification under Rule 23(b)(3), requiring them to show that "the questions of law or fact

common to class members predominate over any questions affecting only individual members,

and that a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

9.      The court should "make whatever factual and legal inquiries are necessary under

Rule 23" to ensure that the requirements for class certification are satisfied even if the underlying

considerations overlap with the merits of the case.  *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d

672, 676 (7th Cir. 2001).  In evaluating class certification, the court must take into consideration

the substantive elements of a plaintiff's claim, inquire into the proof necessary for the various

elements, and envision the form that trial on the issues would take.  *See Simer v. Rios*, 661 F.2d 655, 672 (7th Cir. 1981).

10.     A party seeking class certification bears the burden of proof in establishing each of the requirements under Rule 23.  *Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 90 (7th Cir. 1977).

11.     The failure to satisfy any one of these elements precludes certification.  *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 596 (7th Cir. 1993).

12.     The Court has certified the Plaintiffs' breach of contract claim against NextGear to proceed as a class action.  (Filing No. 220 at 40.)  But issues raised by NextGear's Motion to Decertify Class implicate the Rule 23 requirements of commonality, predominance, and superiority, so the Court will focus on those requirements in this Order.

## II.     The Evidence Required to Resolve the Ambiguity in the Floor Plan Agreements Undermines Commonality, Predominance, and Superiority.

13.     Where, as here, the sole claim is one for breach of contract, and that contract is ambiguous, Plaintiffs cannot demonstrate each of the Rule 23 requirements has been met.

14.     "To prevail on a claim for breach of contract [under Indiana law], the plaintiff must prove the existence of a contract, the defendant's breach of that contract, and damages resulting from the breach."  *Haegert v. Univ. of Evansville*, 977 N.E.2d 924, 937 (Ind. 2012).  Similarly, members of the California subclass will have to show "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff."  *Oasis W. Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011).

15.    Related to the element of breach, the Court concluded on summary judgment that Plaintiffs' floor plan agreements with NextGear were ambiguous as to the "central issue": when interest may begin to accrue.  (Filing No. 262 at 18.)

16.    Under governing Indiana law, and the California law governing the sub-class, interpretation of an ambiguous contract permits submission of extrinsic evidence to ascertain the intent of the parties.

17.    "[W]here an instrument is ambiguous, all relevant extrinsic evidence may properly be considered in resolving the ambiguity."  *Univ. of S. Ind. Found. v. Baker*, 843 N.E.2d 528, 535 (Ind. 2006).  If a contractual term "can reasonably be understood in more than one way, the court must admit and consider extrinsic evidence to determine what the parties actually intended the word or phrase to mean."  *Steller v. Sears, Roebuck & Co.*, 189 Cal. App. 4th 175, 183, 116 Cal. Rptr. 3d 824, 831 (2010) (citation omitted).

18.    By definition, the evidence that can resolve a contractual ambiguity must come from outside that ambiguous language itself.  A key piece of evidence is how the parties themselves have construed the contract over time, as they have performed.  "Where an agreement involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement."  Restatement (Second) of Contracts § 202(4).

19.    When contractual language is ambiguous, "evidence concerning the history of the formation of the policy and the course of dealing under it would be admissible, if available and relevant, to establish the intention of the parties."  *St. Paul Fire & Marine Ins. Co. v. Schilli Transp. Servs. Inc.*, 672 F.3d 451, 462 (7th Cir. 2012) (citation omitted) (applying Indiana law);

*see also S. Pac. Transp. Co. v. Santa Fe Pac. Pipelines, Inc.*, 74 Cal. App. 4th 1232, 1242, 88 Cal. Rptr. 2d 777, 784  (Cal. Ct. App. 1999) ("In construing contract terms, the construction given the contract by the acts and conduct of the parties with knowledge of its terms, and before any controversy arises as to its meaning, is relevant on the issue of the parties' intent.").

20.     Evidence regarding the course of performance of parties to a contract must be determined on an individual basis, by reviewing evidence of a particular dealer's communications, understanding, and experience under its floor plan agreement.

21.     The evidence will almost certainly lead to different interpretations of the contract for different dealers, as exemplified by the three named Plaintiffs: Mattingly asked about how interest was charged and understood it "from day one," Red Barn became aware during the course of its lending relationship with NextGear when it inquired about interest charges, and Platinum apparently never asked about how interest was calculated.  Although Red Barn and Mattingly were aware that interest could accrue before an auction was paid, they continued doing business with NextGear.  This suggests that they understood the contract to permit the interest charges about which they now complain.  On the other hand, there is no evidence that Platinum—which financed only seven vehicles at auction—knew how interest was charged, so the course of performance as to that dealer is inconclusive.

22.     As discussed above in more detail, NextGear has presented evidence demonstrating that the named Plaintiffs' varied experience is likely true across the class.  Many dealers in the class were made aware of how NextGear calculated interest at the time of contracting and accepted it by continuing to borrow from NextGear.  Other dealers were not aware at the onset, but became aware during the lending relationship based on conversations

12

with NextGear account executives, and yet continued to borrow.  Those dealers' course of performance indicates that their interpretation of the contract was the same as NextGear's.

23.     The course of performance evidence also shows that dealers' understanding and interpretation of the contract evolved over time.  For example, Red Barn learned during the course of its business relationship how NextGear charged interest, and yet continued to borrow. Thus, some transactions occurred prior to Red Barn understanding how NextGear charged interest, and some after, meaning that the course of performance evidence yields different conclusions depending on the timeframe.

24.     The experience of Red Barn, Mattingly, and Platinum are consistent with those of the class generally.  The declarations submitted by NextGear reveal that some dealers knew from the outset how interest was charged, and continued to borrow anyway.  Other dealers did not know from the outset but learned that interest on some auction purchases began to accrue before NextGear settled with the auction, and continued to borrow with NextGear.  Other dealers may never have realized how interest was charged.  For those dealers whose course of performance reveals they knew and accepted the interest charges Plaintiffs now complain of from day one, there would be no breach of contract.  Other dealers may present course of performance evidence to the contrary.  Either way, this issue cannot be resolved on a classwide basis, as both the evidence and the answers vary from dealer to dealer.

25.     The varying evidence among dealers makes proceeding as a class action at trial unwieldly and perhaps impossible.  Each dealer in the approximately 27,000-member class could theoretically be questioned about its understanding of the floor plan contract and whether it continued to borrow from NextGear after being aware of how interest was charged.  Class

discovery, which has not been completed, would also be unwieldy as depositions or statements from hundreds or thousands of class members is both impractical and unmanageable.

26.     Plaintiffs argue that the floor plan agreement contains an integration clause that precludes any course of dealing evidence.  However, the integration clause only prohibits modification or amendment of the contract through oral statements.  (Filing No. 197-31 at 8-9.) The integration clause is not a bar to considering all extrinsic evidence, including course of dealing, to construe ambiguous terms in the contract.

### A.     Commonality

27.     "Class relief is peculiarly appropriate when the issues involved are common to the class as a whole and when they turn on questions of law applicable in the same manner to each member of the class."  *Gen. Tel. Co.*, 457 U.S. at 155 (citation and quotation marks omitted).

28.     "If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question."  *Messner*, 669 F.3d at 815 (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)).  This is exactly what the course of performance evidence needed to resolve the ambiguity in NextGear's floor plan agreements will require.

29.     This type of evidence will not "generate common *answers* apt to drive the resolution of the litigation."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citation omitted).  Instead, it will generate as many answers as there are class members.

30.     Citing Seventh Circuit case law, Plaintiffs argue that claims arising out of form contracts are particularly well-suited for class treatment.  *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (quoting *Kleiner v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683, 692 (N.D. Ga. 1983) ("When viewed in light of Rule 23, claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action . . . .")).  (*See also* Filing No. 273 at 10

(discussing form contracts and class certification).)  Plaintiffs argue that such is the case here: the named Plaintiffs and the putative class members each entered into a form contract with NextGear, and those form contracts are substantively identical in the relevant provisions.

31.     Where a form contract is ambiguous, though, Plaintiffs' argument does not support a finding of commonality under the specific circumstances of this case.  From this Court's close review of the contractual terms at issue, the parties' intent cannot be discerned from the ambiguous language itself.  Given that the contractual arrangement between the parties to this case involved repeated occasions for performance, the Court must instead look to evidence beyond the contract language to extrinsic evidence that may vary widely for individual dealers.  That is why other courts have found, depending on circumstances, that extrinsic evidence may render breach of contract claims "individualized and not reasonably susceptible to class action treatment."  *Adams v. Kansas City Life Ins. Co.*, 192 F.R.D. 274, 282 (W.D. Mo. 2000); *accord Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1030 (8th Cir. 2010).

32.     Having considered the parties' arguments and the case law, the Court finds that the question of whether the floor plan agreement allowed NextGear to charge interest before making payment to the auctions may be a common question, but it yields very different answers under the circumstances of this case. The answer to the question depends in part on each dealer's course of performance, which will vary from dealer to dealer.

33.     Plaintiff has made no showing that each of the class members will have substantially similar courses of performance with NextGear.  In fact, the varied experience of the three named Plaintiffs as to their knowledge, when and how they acquired their knowledge, and acceptance of the "central issue," along with the testimony of NextGear's account executives about their communications with other class members, shows otherwise.

34.     The declarations submitted by NextGear account executives demonstrate that
NextGear advised some dealers at the time of contracting when interest began to be charged,
while other dealers were told at some point during the business relationship when questions
arose, while still other dealers may never have been aware of how interest was calculated.
(Filing No. 295-2; Filing No. 295-3; Filing No. 295-4; Filing No. 295-5.)

35.     All of this leads the Court to conclude that commonality is lacking.

**B.     Predominance**

36.     The individual issue of how the parties construed and acted on their own contract
through their performance of it will predominate over any common issues that may arise in
interpreting the ambiguous text.

37.     "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are
sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v.
Windsor*, 521 U.S. 591, 623 (1997).

38.     Under the proper standard for considering predominance, a plaintiff's "burden at
the class certification stage [is] not to prove the element of [the claim], but only to demonstrate
that the element of [the claim] *is capable of proof at trial* through evidence that is common to the
class rather than individual to its members." *Messner*, 669 F.3d at 818 (citation and quotation
marks omitted).

39.     As noted above, "[i]f, to make a prima facie showing on a given question, the
members of a proposed class will need to present evidence that varies from member to member,
then it is an individual question." *Id.* at 815.

40.     The requirement of predominance is not satisfied if "individual questions . . .
overwhelm questions common to the class." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568
U.S. 455, 468 (2013).

41.     In this case, the key question is when the parties intended to allow NextGear to begin charging interest.  The contract itself is ambiguous, so the Court must look to evidence outside the contract to answer the question.  And the evidence outside of the contract, including the parties' course of performance of the contract, will be overwhelmingly individual.  Relevant questions might include what was discussed with NextGear, when those discussions took place, how each dealer learned, and what each dealer did thereafter.  These questions do not have a common answer; they all might be answered differently by different dealers, as the evidence of record demonstrates.

42.     Specifically, the evidence reveals that NextGear account executives informed some dealers at contract closing how interest was calculated, while other dealers were advised of how NextGear charged interest post-closing as dealers raised questions when dealers noticed on the account statements that they were charged interest from the floor plan date and asked NextGear about it.  (Filing No. 295-2; Filing No. 295-3; Filing No. 295-4; Filing No. 295-5.) For some dealers, the issue of how interest was calculated was never discussed, and those dealers to this day may not be aware.  Determining what each dealer knew, when it knew it, and whether the dealer continued to borrow are individualized questions that predominate over common issues.

43.     The Court concludes that individual questions regarding the breach of contract claim predominate over common questions.  Predominance does not exist to support class treatment of Plaintiffs' breach of contract claim.

**C.     Superiority**

44.     Plaintiffs also cannot meet the superiority requirement of Rule 23(b)(3).

45.     One key factor a court considers in determining whether a class action is superior to other available methods for fairly and efficiently adjudicating the controversy is "the

difficulties likely to be encountered in the management of a class action." *Amchem*, 521 U.S. at 615-16 (citing Fed. R. Civ. P. 23(b)(3)).

46.     Evidence of course of performance is too individualized to consider on a classwide basis.  Considering such evidence requires a number of witnesses—both from NextGear and from the class—to determine each dealer's intent and understanding of the floor plan agreement.  Trying this case will involve a series of individual trials rather than a decision on a classwide basis.

47.     Despite their burden to demonstrate that the class meets the Rule 23 requirements, Plaintiffs have made no showing of how each of 27,000 class members' understanding, intent, and course of performance can be proven efficiently at trial.  Based on the evidence recited above, the dealers' knowledge of how interest was calculated is anything but uniform.

48.     Because individual questions would predominate the interpretation of the floor plan agreements, and would render a class unmanageable, the Court finds that the class does not meet all the requirements of Rule 23 and certification is not appropriate.

**III.    Due Process Requires That NextGear Be Afforded the Right to Raise Defenses Against Individual Dealers, Which Further Undermines Predominance and Superiority.**

49.     NextGear also argues that it has numerous affirmative defenses against the named Plaintiffs and other members of the class.  The Court has already found that factual disputes preclude summary judgment as to certain of NextGear's defenses against the named Plaintiffs, including waiver, *res judicata*, setoff, and ratification.  (Filing No. 262 at 30-37.)  NextGear has asserted a number of other defenses against the named Plaintiffs and the unnamed class members.

50.     "[A] class cannot be certified on the premise that [the defendant] will not be entitled to litigate its statutory defenses to individual claims." *Wal-Mart*, 564 U.S. at 367.

51.     In a class action setting, "[t]he due process question is . . . whether the defendant will receive a fair opportunity to present its defenses when putative class members actually come forward." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 669-70 (7th Cir. 2015).  To give NextGear this fair opportunity, the Court will have to allow NextGear to litigate its defenses against each dealer.  Factual disputes precluded judgment as a matter of law on certain defenses, but they do not preclude the trial of such defenses.

52.     For example, NextGear has argued that many class members, including Red Barn and Mattingly, have waived their claims for breach of contract.  A "contractual provision may be impliedly waived by the knowing and willing acquiescence of the party for whose benefit the provision was inserted." *Terry v. Int'l Dairy Queen, Inc.*, 554 F. Supp. 1088, 1095 (N.D. Ind. 1983) (citation omitted).

53.     In addition, the statements of account provided by NextGear to dealers are definitive and binding as to the interest owed by those dealers unless objected to within 30 days. (Filing No. 197-31 at 3, 5.)  The floor plan agreement contains an anti-waiver clause, but this clause only precludes waiver by NextGear.  (*Id.* at 9.)

54.     NextGear contends that the evidence shows Red Barn and Mattingly have waived their breach of contract claims by continuing to do business with NextGear (and failing to object to their account statements) once they learned how NextGear charged interest.

55.     The Court has already found that factual disputes over these Plaintiffs' ratification or waiver preclude summary judgment.  (Filing No. 262 at 36-37.)  At trial, the Court would have to take evidence on Plaintiffs' knowledge and determine whether requirements for waiver were established.  Given NextGear's showing that all dealers received such account statements

and that account executives informed many dealers about the timing of interest, such evidence would be relevant to determining the merits of any dealer's claim.

56.     Another example is the voluntary payment defense.  "[M]oney voluntarily paid with a full knowledge of all the facts, and without any fraud or imposition on the payor, cannot be recovered back, although it was not legally due."  *Time Warner Entm't Co. v. Whiteman*, 802 N.E.2d 886, 889 (Ind. 2004).

57.     For the voluntary payment doctrine to apply, though, there must be a "*recognized uncertainty as to the existence or extent of the payor's obligation to the recipient*" for the voluntary payment doctrine to apply.  *Id*. at 892.

58.     NextGear has asserted a voluntary payment defense against the claims of class members.  (Filing No. 188 at 19.)  To evaluate this defense, the Court will need to analyze the specific facts of what each dealer knew, should have known, disputed, and paid.  That analysis can only be done on a dealer-by-dealer basis, not for the class as a whole.

59.     The statute of limitations bars any claims for transactions occurring before January 2010 (for the nationwide class) or before January 2012 (for the California class).  Ind. Code § 34-11-2-9 (six-year limitations period); Cal. Civ. Proc. Code § 337 (four-year limitations period).  Mattingly executed floor plan agreements with NextGear before June 2010, and some of its transactions with NextGear took place before that date as well.  (Filing No. 197-34; Filing No. 197-35; Filing No. 197-17.)  This is also true for many members of the class.  In a class extending back to 2005, some dealers' claims, like Mattingly's, will be barred by the statute of limitations.

60.     Whether any exceptions to the statute of limitations apply to particular transactions or particular dealers can only be determined on a case-by-case basis.  For example,

any class member "asserting fraudulent concealment" to overcome the statute of limitations for particular transactions "must establish by a preponderance of the evidence, (1) the wrongdoer had a duty to disclose certain facts to another, (2) it knowingly failed to do so, and (3) the other justifiably relied upon such non-disclosure to his detriment." *Dow Chem. Co. v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 553 N.E.2d 144, 149-50 (Ind. Ct. App. 1990) (citation omitted); *Grisham v. Philip Morris U.S.A., Inc.*, 151 P.3d 1151, 1159 (Cal. 2007) (tolling based on fraudulent concealment "will last as long as a plaintiff's reliance on the misrepresentations is reasonable"). But the element of reliance would require evidence that is too individualized to consider on a classwide basis.

61. Other defenses, such as release, set-off, or potential bankruptcy discharge will also require the Court to hear evidence as to the individual dealers who are subject to those defenses. NextGear has shown many of the current class members are subject to these potential defenses. (Filing No. 197-13 at 3-4.) And Plaintiffs have not shown otherwise.

62. As discussed above, the Rule 23 requirement of predominance is not satisfied if "individual questions . . . overwhelm questions common to the class." *Amgen*, 568 U.S. at 468. "If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question." *Messner*, 669 F.3d at 815.

63. In addressing NextGear's defenses, individual questions applicable only to a single dealer—what did a particular dealer know, pay, agree to, dispute, owe—will predominate over common questions that can be answered for the class as a whole.

64. NextGear is entitled to assert and prove its defenses against each member of the class. The evidence that one dealer waived its objections to when interest began to accrue will

have no bearing on whether NextGear's waiver defense is valid against another dealer; the evidence that one dealer relied on some non-disclosure by NextGear will have no bearing on whether another dealer can raise a concealment defense to the statute of limitations.

65.     While the Court could potentially take steps at trial to attempt to deal with these individualized inquiries into NextGear's defenses, the Court anticipates that it would encounter overwhelming difficulties in managing this case as a class action.  *Cf. Amchem*, 521 U.S. at 615-16.  The Court envisions the need for potentially thousands of mini-trials to resolve the contractual ambiguity and each of NextGear's defenses, which would not be superior to individual actions by members of this class of commercial borrowers.

66.     NextGear's right to present individualized defenses to the claims of each member of the class precludes the requisite findings of predominance and superiority under Rule 23(b)(3).  For this additional reason, the Court finds that class certification is inappropriate.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** NextGear's Motion to Decertify Class (Filing No. 295) and decertifies the Plaintiffs' breach of contract claim.  This litigation will no longer proceed as a class action.  The Court **DENIES as moot** Plaintiffs' Motion to Proceed with Class Notice (Filing No. 276), NextGear's Motion to Stay Discovery (Filing No. 285), NextGear's Motion to Narrow Class (Filing No. 286-1), and NextGear's Objections to Magistrate Judge's Orders (Filing No. 287, Filing No. 288).

**SO ORDERED.**


Date: _____


_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana


Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.