UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RED BARN MOTORS, INC., PLATINUM MOTORS, INC., and MATTINGLY AUTO SALES, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> NEXTGEAR CAPITAL, INC., f/k/a/ DEALER SERVICES CORPORATION, <br><br> Defendant. | CASE NO. 1:14-cv-01589-TWP-DLP |

**[PLAINTIFFS' PROPOSED] ORDER AND REASONS**

Defendant NextGear Capital, Inc. ("NextGear") has filed a Motion to Decertify Class (Dkt. 295) (the "Motion to Decertify"), which has been opposed by Plaintiffs, Red Barn Motors, Inc., Platinum Motors, Inc., and Mattingly Auto Sales, Inc.[1] For the reasons set forth below, as well as those set forth in the Seventh Circuit's decision (Dkt. #273), this Court **DENIES** NextGear's Motion to Decertify.

**I.    Relevant Background**

The background of this litigation is set forth in this Court's prior orders regarding Defendants' motions to dismiss (Dkt. #186), class certification (Dkt. #220), and summary judgment (Dkt. #262). The Court reiterates here those facts it finds supported by the record and that are relevant to NextGear's current Motion to Decertify.

Named Plaintiffs and other dealers of used automobiles ("Dealers") use "floorplan agreements" to purchase used cars (most commonly at auction) for resale. Dkt. #117, at 5. Each dealer in the putative class signed a floorplan agreement with NextGear in the form of a Demand

---

[1] While NextGear's Motion would be an untimely motion for reconsideration under Rule 59(e), this Court construes the Motion as a motion to alter or amend this Court's original class certification order under Rule 23(c)(1)(C).

Promissory Note and Security Agreement ("the Floorplan Agreement"). Dkt. #117-1, 117-3, 117-4. The Floorplan Agreement was a form, "take-it-or-leave-it" contract prepared by NextGear and used between 2005 and July 2013. Dkt. #262, at 4; *see also* Dkt. #196-1, at 24. Terms were changed for individual dealers in fewer than ten contracts out of more than 20,000 executed during the class period (*i.e.*, fewer than .05% of floorplan agreements). Dkt. #196-1, at 24-25.

Section 3 of the Floorplan Agreement provides for the accrual of interest: "Interest shall accrue on all Dealer Liabilities in accordance with the following: (a) All *outstanding* Liabilities under this Note shall accrue interest … on a per annum basis and shall be compounded daily … until paid in full." Dkt. #117-1, at 3; 117-3, at 3; 117-4, at 3 (emphasis added). "Liabilities" are defined, in turn, as

> any and all Advances, debts, DSC Financed Inventory Liabilities, financial obligations, DSC Administrative Fees, DSC Universal Fees, Interest, Floorplan Fees, NSF fees, late fees, charges, expenses, attorney fees, costs of collection, covenants, and duties owing, arising, due or payable from Dealer to DSC [NextGear] of any kind or nature, present o[r] future, under any instrument, guaranty, or other document whether arising under this Note or any other agreement, whether directly or indirectly (including those acquired by assignment), absolute or contingent, primary or secondary, due or to become due, now existing or hereafter arising and however acquired.

Dkt. #117-1, at 2; 117-3, at 2; 117-4, at 2.[2] "Advance" is defined as "any loan or payment in any amount made pursuant to this Note by DSC to Dealer or on Dealer's behalf to any third party[.]" Dkt. #117-1, at 1; 117-3, at 1; 117-4, at 1. If NextGear makes an Advance, "the Advance shall be deemed an additional Liability under this Note *from the date on which the Advance is made*." Dkt. #117-1, at 5; 117-3, at 5; 117-4, at 5 (emphasis added). The form floorplan agreements also all included an integration clause, which states, "this Note may not be modified or amended except

---

[2] In the Floorplan Agreement, "DSC" refers to Dealer Services Corporation, the former name of NextGear. Dkt. #117-1, at 1; 117-3, at 1; 117-4, at 1.

upon the written consent of DSC [NextGear] and Dealer." Dkt. #117-1, at 8; 117-3, at 8; 117-4, at 7.

This Court previously granted Plaintiffs' Motion for Class Certification. Dkt. #220. This Court subsequently granted NextGear's motion to decertify the class on the basis that the floorplan agreement's interest-accrual provision was ambiguous as to timing, requiring extrinsic evidence and thereby undermining commonality. Dkt. #261. After granting Plaintiffs' Rule 23(f) petition for appeal, the Seventh Circuit Court of Appeals vacated the order decertifying the class, leaving the original class certification intact. Dkt. #273. Upon remand, NextGear has filed the instant Motion to Decertify, arguing that the need for extrinsic evidence to resolve the ambiguity in the floorplan agreement and the process necessary to resolve NextGear's affirmative defenses support findings that the class certified in this matter will not meet the requirements for commonality, predominance, and superiority.

## II. Analysis

Rule 23(c)(1)(C) gives courts the discretion to alter or amend an order certifying a class (or denying certification) before final judgment. Fed. R. Civ. P. 23(c)(1)(C). Decertification, however, is a "'drastic step, not to be taken lightly.'" *Alig v. Quicken Loans, Inc.,* Civil Action No. 5:12-CV-114, 2017 WL 5054287, at *10 (N.D. W.Va. July 11, 2017) (quoting 3 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 7:37 (5th ed. 2013)). Decertification is considered an especially "extreme step" where, as here, it is sought at a late stage in the litigation. *Id.* at *11 (citing *Gulino v. Board of Educ. of City Sch. Dist.,* 2012 WL 6043803, at *8 (S.D.N.Y. Dec. 5, 2012)). Consequently, a court should not allow a defendant to utilize a motion to decertify simply "as another bite at the apple in the absence of changed circumstances." *Id.* at *10.

Decertification is appropriate only where the further development of the case produces new facts or law that call into question the court's prior order. *See* FED. R. CIV. P. 23(c)(1)(C), advisory

3

committee's note to 1966 Amendment ("A determination once made can be altered or amended … if, upon fuller development of the facts, the original determination appears unsound."), advisory committee's notes to 2003 Amendments ("Decertification may be warranted after further proceedings."); *see also Richardson v. Byrd,* 709 F.2d 1016, 1019 (5th Cir. 1983) (noting decertification may be appropriate "in response to the progression of the case from assertion to facts"). "Courts thus consistently hold that 'there must be some development or change in circumstances to merit revisiting a class certification decision.'" *Alig,* 2017 WL 5054287, at *10 (quoting *In re J.P. Morgan Chase Cash Balance Litig.,* 255 F.R.D. 130, 133 (S.D.N.Y. 2009), and citing cases); *see also* 3 NEWBERG ON CLASS ACTIONS § 7:34 (5th ed. Nov. 2018 update).

As this Court previously held, each of the requirements of Rule 23(a)—ascertainability, numerosity, commonality, typicality, and adequacy—is satisfied here. Dkt. #220, at 10-29. With respect to commonality, whether NextGear charged interest on money not actually loaned is a question common to all putative class members as well as whether prematurely charging interest was a breach of contract. Dkt. #220, at 15. Further, common issues predominate pursuant to Rule 23(b)(3), including the legal question of the resolution of ambiguities in the floorplan agreement, which is a form contract. Whether the floorplan agreements allowed premature charges of interest and fees and whether the contracts were breached are the core questions of this litigation, and they can be answered on a class-wide basis. Dkt. #220, at 36.

The Seventh Circuit specifically rejected the premise that the need for extrinsic evidence to resolve ambiguity in the floorplan agreement would cause individual issues to predominate over common issues, finding that premise "insufficient to sustain the court's assumption that commonality and predominance were lacking." Dkt. #273, at 10 (Op. at 7). The Seventh Circuit held, instead, that "[n]either the categorization of the contract as ambiguous, nor the prospect of extrinsic evidence, necessarily imperils class status." *Id.* In reaching this holding, the Seventh

Circuit emphasized the standard form of the floorplan agreements, which this Court previously acknowledged (Dkt. #262 at 4), and noted its presumption that such contracts should be uniformly construed across the class:

> All parties concede that the floorplan contract in this case is a standard form contract. And neither the plaintiffs nor the defendants argue that the language in the contract has different meaning for different signatories; instead, all argue for an interpretation that would apply to all signatories of the contract. In fact, with a form contract such as this one, uniform application and interpretation of the clauses would be expected absent evidence that the form contracts in fact had a meaning that varied from one signatory to another. Even if the determination that the language is ambiguous as to when interest could accrue opens the door to extrinsic evidence to ascertain the intended meaning of that provision, the determination of its meaning would apply to all signatories and therefore would be capable of class-wide resolution.

*Id*. The Court of Appeals held further:

> But the mere need for extrinsic evidence does not in itself render a case an improper vehicle for class litigation. … The proper focus for commonality is whether determination of the question will yield common answers that could resolve the litigation. Here, the class was already narrowed to those who signed the specific form contract at issue here. With such a form contract, almost universally signed without negotiation or modification, there is no reason to think that the interpretation of the [interest] provision will vary from one signatory to another, and therefore the issue is one that is capable of a common answer and for which that common question predominates over questions affecting individual class members.

Dkt. #273, at 11-12 (Op. at 8-9).

As this Court has already held, "the parties' intent *at the time of contracting*" is the crucial inquiry in interpreting the interest-accrual provisions of the floorplan agreement. Dkt. #262, at 18 (emphasis added). NextGear argues that declarations from four of its employees show how different account executives discussed the interest due under the floorplans with some of the dealership members of the class at various times and in various ways. *See* Dkt. #295 at 11-12 (citing Dkt. #295-2, 295-3, 295-4, 295-5). These declarations do not represent, however, facts that have been developed through the course of discovery or the progression of this case; they represent facts that were in NextGear's possession throughout this litigation.

5

Even if those declarations were properly before the Court, however, this proposed new evidence—in the form of declarations regarding the course of performance *after* contracting by NextGear and the various Plaintiffs—is irrelevant to the question of the parties' intent at the time of contracting. The floorplan agreement contains an integration clause prohibiting any oral representations from amending the agreement. *E.g.*, Dkt. #117-1, at 8. Accordingly, extrinsic evidence about understandings of the contract—particularly post-contracting understandings of how the contract is to be performed—are irrelevant to the meaning of the contract. *Cf. Utica Mut. Ins. Co. v. Vigo Coal Co.*, 393 F.3d 707, 714-15 (7th Cir. 2004).

As seen in the Seventh Circuit's decision in this case, bright-line rules that individual reliance by class members necessarily precludes predominance of common issues for purposes of class certification are anathema in this Circuit. *See Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 755-56, 759-60 (7th Cir. 2014); *see also Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 379-80 (7th Cir. 2015) (rejecting approach that individualized questions of relief or liability would necessarily preclude predominance finding; "[t]he fact that the plaintiffs might require individualized relief or not share all questions in common does not preclude certification of a class.").

Class treatment is appropriate where a primary issue in litigation is the interpretation of ambiguities in form contracts. *See, e.g.*, *Venerus v. Avis Budget Car Rental, LLC*, 2017 WL 565260, *6-7 (11th Cir. Jan. 25, 2018); *McKeage v. TMBC, LLC*, 847 F.3d 992, 999 (8th Cir. 2017); *Gillis v. Respond Power, LLC*, 677 F. App'x 752 (3d Cir. 2017); *Kolbe v. BAC Home Loans Servicing, LP*, 738 F.3d 432, 441 (1st Cir. 2013); *Catholic Health Care West v. U.S. Foodservice Inc.*, 729 F.3d 108, 124-25 (2d Cir. 2013); *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003); *Smilow v. Southwestern Bell Mobile Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003); *see also* 1 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 3:24 & n.17 (5th ed.); *Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 164 F.R.D. 659, 664 (N.D. Ill. 1996)

("A common nucleus of operative fact is typically found where the defendants have engaged in standardized conduct toward members of the proposed class. Claims arising out of standard documents present a classic case for treatment as a class action.) (internal citations and quotation marks omitted); *In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 2018 WL 1003548, *16 (D.S.C. Feb. 22, 2018) ("The Court begins with the common sense principle, stated in the Restatement (Second) of Contracts, that standardized agreements should be 'interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing.' § 211(2). The contracts at issue are contracts of adhesion, involving non-negotiable terms and a vast bargaining/information imbalance between the parties. … If there is *any* type of standardized agreement that ought to be interpreted uniformly, without regard to the non-drafting party's idiosyncratic comprehension of its terms, it is a consumer checking account agreement. … In this context, the focus is on the Bank's conduct in relation to the contractual language, and individual customers' 'intent' and 'course of performance' is largely irrelevant to resolving any ambiguity."); *Feller v. Transamerica Life Ins. Co.*, 2017 WL 6496803, *11 (C.D. Cal. Dec. 11, 2017); *In re Checking Account Overdraft Litig.*, 307 F.R.D. 630, 646 (S.D. Fla. 2015) ("The reasonable expectations of a party to a form contract are judged objectively, from the perspective of a reasonable person, making the subjective views of class members irrelevant.").

Because NextGear has not presented extrinsic evidence showing individuated treatment of the floorplan agreement at the time of contracting, decisions it points to where such extrinsic evidence was present are inapposite here. *See, e.g., Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1030-31 (8th Cir. 2010) (finding under Washington state law, after looking extensively to particular extrinsic evidence in the record in that matter, that specific individual issues would exist for putative class members in that case, but not applying a bright-line rule that extrinsic evidence would automatically render individual issues predominant); *Monaco v. Bear Stearns Companies,*

*Inc.*, 2012 WL 10006987, *8 (C.D. Cal. Dec. 10, 2012) (examining specific evidence in the court's record showing class member's individual understanding of contract provision at issue). Regardless, the resolution of the question of the parties' intent at the time of contracting is capable of resolution on a class-wide basis because the floorplan agreement is a form contract that varied in no more than ten out of 20,000 executions of that contract. Accordingly, the factual issues raised by any extrinsic evidence presented by the parties that is relevant to the question of the parties' intent at the time of contracting will be class-wide issues, not individual issues, and extrinsic evidence will therefore not result in individual issues predominating over common issues. Indeed, as discussed below, the extrinsic evidence presented belatedly by NextGear here does not appear intended to support a premise that the interest provision should be applied differently to different dealers—the use of extrinsic evidence is still to determine the parties' intent in interpretation of a form contract to be applied uniformly across the class.

As the Seventh Circuit held in vacating this Court's decertification order, "Even if the determination that the language is ambiguous as to when interest could accrue opens the door to extrinsic evidence to ascertain the intended meaning of that provision, the determination of its meaning would apply to all signatories and therefore would be capable of class-wide resolution." Dkt. #273 at 10 (Op. at 7).

NextGear does not address the question actually posed by the Seventh Circuit or the conclusions reached by these other courts—how extrinsic evidence defeats commonality or predominance in this case involving the breach of standard-form floorplan agreements. Instead, NextGear merely focuses its Motion on the extrinsic evidence it anticipates introducing at trial. NextGear neither makes clear whether it contends that the interest provision should be construed differently across the class nor, if so, explains why its form contract should apply differently to individual class members. Indeed, NextGear's "new" declarations only specifically address eleven

dealerships of the more than 27,000 class members and thus do not demonstrate that individual issues will predominate over the common question regarding how any ambiguity in the form contract should be resolved. Most of the evidence upon which NextGear indicates it intends to rely, such as the "prevailing meaning of relevant terms, "usage of trade," and its employees' testimony that the question of interest supposedly came up "regularly" or in "most" of their closings (despite their lack of written records), concerns the interpretation of the floorplan agreements on a class-wide, not an individual, basis. *See, e.g.*, Dkt. 295 at 6 n.1; Dkt. 295-2, 295-3, 295-4, 295-5.

NextGear relies on § 202(4) of the RESTATEMENT (SECOND) OF CONTRACTS to contend that evidence of course of performance must be given great weight in interpreting the ambiguous interest provision in the floorplan agreements. Dkt. #295 at 6-8. The comments to this section of the RESTATEMENT clarify, however, that "such 'practical construction' is not conclusive of meaning." RESTATEMENT (SECOND) OF CONTRACTS § 202, cmt. g (1981). Instead of proving the parties' true intent, course-of-performance evidence may simply be evidence of "a mistake which should be corrected." *Id.*

NextGear relies on cases from Indiana and California to argue that course-of-performance extrinsic evidence is relevant to resolving contract ambiguities, but none of the cases NextGear cites involved breach of an ambiguous standard-form contract provision in a class action. Even if relevant, there is no reason such evidence may not be considered at trial in determining, on a class-wide basis, when the floorplan agreements permitted NextGear to charge interest. Regardless, the facts concerning course of performance in the cases NextGear cites are distinct from the facts here. NextGear references three types of evidence it contends show the parties' course of performance: (1) the actions of the Named Plaintiffs; (2) NextGear's own actions; and (3) the communications between some of NextGear's account executives and some dealers. *See* Dkt. 295 at 9-12. The one

9

thing that all of this evidence has in common is that it all concerns NextGear's reading of the floorplan agreement's interest provision, not that any of the class members, including the Named Plaintiffs, voluntarily paid interest on money NextGear had agreed to loan but had not yet advanced, based on their own, independent understating of the contract terms.

The courts in the cases cited by NextGear looked to the parties' independent post-contracting actions, not to how one party acted after being told what an ambiguous contract supposedly said or meant. *See Entertainment USA, Inc. v. Moorehead Commc'ns, Inc.*, Cause No. 1:12-cv-116 RLM, 2017 WL 3432319 (N.D. Ind. Aug. 9, 2017) (holding defendant's payment of compensation for cellular service activations based upon monthly summaries persuaded court as to meaning of ambiguous term "activations" in parties' contract where plaintiff did not complain until payments ended but did not resolve ambiguity as to tiered payments); *St. Paul Fire & Marine Ins. Co. v. Schilli Transp. Servs., Inc.*, No. 2:08 cv 176, 2012 WL 5471966 (N.D. Ind. Nov. 9, 2012) (rejecting insurer's argument that its policy created joint liability based upon evidence that one of multiple related insureds paid premiums for all insureds); *Bank of America, N.A. v. Ping*, 879 N.E.2d 665 (Ind. Ct. App. 2008) (in dicta, citing evidence that borrower withdrew and bank advanced funds against line of credit after original loan had been paid in full to prove that court had read unambiguous term of agreement consistent with parties' mutual intent); *Noble Roman's, Inc. v. Pizza Boxes, Inc.*, 835 N.E.2d 1094 (Ind. Ct. App. 2005) (in UCC case, referencing parties' course of performance as supplemental proof of parties' intent in unambiguous, integrated agreement); *Epic Commc'ns, Inc. v. Richwave Tech., Inc.*, 237 Cal.App.4th 1342 (Cal. Ct. App. 2015) (finding release ambiguous and reversing summary judgment on behalf of third parties to release based, in part, on extrinsic evidence of parties' – not third parties' – post-release actions); *Employers Reins. Co. v. Superior Court (Thorpe Insulation Co.)*, 161 Cal.App.4th 906 (Cal. Ct. App. 2008) (holding course of performance under insurance claims handling agreements could not

be used as extrinsic evidence of parties' understanding of meaning of separate insurance policies, i.e., for policy interpretation).

The deposition testimony from the corporate representatives of Red Barn and Mattingly merely confirms, as this Court has found, that Red Barn and Mattingly, like other members of the class, could not tell from the various reports NextGear provided when it paid the auction house and, thus, when interest began to run. *See* Dkt. #209 at 10-13 (citing deposition testimony); Dkt. #262 at 5-6. This testimony also shows that the dealers did not have any independent knowledge or understanding of the interest provision in the floorplan agreements and simply relied on NextGear's representations that it "always charged interest 'from the date of the sale.'" Dkt. #295 at 9 (citing Dkt. #197-6 at 217:23-281:20); *see also* Dkt. #295 at 9-10 (citing Dkt. #197-8 at 75:6-76:18, 79:4-16). Although this testimony may confirm *NextGear's* understanding of the ambiguous provision, it proves nothing about the parties' mutual understanding or intent in entering into the standard-form agreement.

The fact that the dealers did not or could not decipher the interest provision that this Court has now concluded is ambiguous provides no evidence of course of performance or the "parties' intent at the time they made the agreement." *Entertainment USA,* 2017 WL 3432319, at *4; *see also U.S. Cellular Inv. Co. v. GTE Mobilnet, Inc.*, 281 F.3d 929, 938 (9th Cir. 2002) (under California law, course-of-performance evidence may be considered when it shows "'acts and conduct of the parties *with knowledge of its terms*, before any controversy has arisen as to its meaning'") (quoting *Warner Constr. Corp. v. City of Los Angeles*, 2 Cal.3d 285, 296-97 (1970) (emphasis added)). Moreover, the deposition testimony of Red Barn's corporate representative, Mr. London, and Mr. Mattingly plainly shows that they both took issue with NextGear's practice and did not agree with it. *See also* Dkt. 295-4 ¶ 5 ("In fact, when interest would begin to accrue was a common point of contention with dealers."). That Red Barn and Mattingly ultimately

required the assistance of legal counsel to make a claim for breach of contract under an agreement this Court has found to be ambiguous does not indicate that they previously paid this interest to NextGear "harmoniously." *See* RESTATEMENT (SECOND) OF CONTRACTS § 202, cmt. G ("self-serving conduct is not entitled to weight.").

In short and in light of the Seventh Circuit's opinion, NextGear has provided no argument or evidence that changes this Court's holding in originally certifying the class in this matter: "[T]he central common question—whether the floorplan agreement allowed NextGear to charge interest and fees on money not yet actually loaned—will produce an answer that can lead to resolution of the claim for the class 'in one stroke.'" Dkt. #220, at 15-16 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011)). Additionally, as this Court has already held, "[w]hile there may be some variations in the applicability of defenses against various class members, those variations do not undermine the essential characteristics of the claims asserted in this action that drive the resolution of the dispute." Dkt. #220 at 24. The Supreme Court has held that "[w]hen 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Tyson Foods, Inc. v. Bouaphakeo*, — U.S. —, 136 S. Ct. 1036, 1045 (2016) (quoting 7AA C. WRIGHT, A. MILLER, & M. KANE, FEDERAL PRACTICE AND PROCEDURE § 1778 at 123-24); *see also* WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS ¶ 4:57 (5th ed. July 2017 update).

Absent extrinsic evidence resolving the issue of the parties' intent at the time of contracting, ambiguities in a form contract, under Indiana law, may be resolved against the drafter. *Bradshaw v. Chandler*, 916 N.E.2d 163, 166 (Ind. 2009); *Celadon Trucking Servs., Inc. v. Wilmoth*, 70 N.E.3d 833, 844 (Ind. Ct. App. 2017). For these reasons, NextGear has pointed this

12

Court to no reason that the commonality, predominance, or superiority elements of the original class certification are undermined, or that this Court's original certification analysis and order should be altered.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** NextGear's Motion to Decertify Class (Dkt. #295). This case will proceed as a class action.

**SO ORDERED.**

**Date:**_____

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana