**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| RED BARN MOTORS, INC.,<br>PLATINUM MOTORS, INC., and<br>MATTINGLY AUTO SALES, INC.,<br><br>        Plaintiffs,<br><br>        v.<br><br>NEXTGEAR CAPITAL, INC. f/k/a DEALER<br>SERVICES CORPORATION, successor by<br>merger with Manheim Automotive Financial<br>Services, Inc.,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 1:14-cv-01589-TWP-DLP<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## <u>ORDER ON PENDING MOTIONS</u>

This matter is before the Court on several pending motions. Plaintiffs Red Barn Motors, Inc. ("Red Barn"), Platinum Motors, Inc. ("Platinum Motors"), and Mattingly Auto Sales, Inc. ("Mattingly Auto") (collectively, "Plaintiffs"), have filed a Motion to Revise Class Definition and Proceed with Class Notice (Filing No. 276); Motion to Strike (Filing No. 299); and Motion for Leave to File Proposed Order and Reasons (Filing No. 302). Defendant NextGear Capital, Inc., formerly known as Dealer Services Corporation ("NextGear"), has filed a Motion to Stay Discovery and Class Notice (Filing No. 285); Motion to Modify Class Certification Order to Narrow Class (Filing No. 286); Objections to Magistrate Judge's Orders (Filing No. 287; Filing No. 288); Motion to Decertify Class (Filing No. 295); and Alternative Motion to Modify Class Certification Order to Narrow Class (Filing No. 306). Rulings on the motions are set forth below.

# I. BACKGROUND

The Plaintiffs are used car dealerships. Red Barn is a used car dealership in Denham Springs, Louisiana, which began operations in 2010 (Filing No. 197-6 at 7–8). Platinum Motors was a small used car dealership located in Chesapeake, Virginia. It operated from approximately 2009 to 2014. The records of the Virginia State Corporation Commission indicate that Platinum Motors' corporate existence has been terminated (Filing No. 197-9 at 5, 20–21; Filing No. 197-38). Mattingly Auto sells used cars at its Hardinsburg, Kentucky car lot, which began operations in approximately 2003 (Filing No. 197-8 at 6).

Defendant NextGear is an automotive financing company that offers revolving line-of-credit financing to used car dealers throughout the United States. This line-of-credit financing is often called a "floorplan". Used car dealers utilize floorplans to purchase vehicle inventory, which then is resold at their used car dealerships (Filing No. 197-24 at 2). NextGear was initially formed as Dealer Services Corporation and began doing business in 2005 as an independent automotive financing company. *Id.* at 1. Dealer Services Corporation was acquired by Cox Automotive, Inc. on March 1, 2012. In January 2013, a Cox Automotive affiliate and former competitor of Dealer Services Corporation was merged into Dealer Services Corporation and the merged companies were renamed NextGear. *Id.*

NextGear's floorplan agreements allow used car dealers to purchase vehicles for resale from auctions and other locations without having to pay cash for the vehicles. Instead, the dealer puts the vehicle purchase on the floorplan agreement, and NextGear takes the credit risk while the dealer tries to sell the vehicle. A floorplan allows dealers to obtain possession of vehicles for their inventory on the date of purchase but defer payment until later. When a dealer floorplans a vehicle, NextGear becomes obligated to pay the auction the price of the vehicle. Under the floorplan

agreements, the car dealers agree to pay the amount borrowed, interest, and fees to NextGear in exchange for the credit and financing. Dealers grant a security interest in the purchased vehicles and in their inventory to NextGear to secure the dealers' debt. After a dealer sells the financed vehicle or the transaction reaches the maturity date, the dealer must pay the debt to NextGear ([Filing No. 197-24 at 2](#)). While there are a small number of instances where individual contract negotiations occurred, NextGear's floorplan agreement is "generally a take-it-or-leave-it" contract ([Filing No. 196-1 at 24](#)).

The Plaintiffs each executed a floorplan agreement with NextGear, whereby the Plaintiffs were provided lines of credit for financing their used car dealership operations ([Filing No. 197-31](#); [Filing No. 197-34](#); [Filing No. 197-35](#); [Filing No. 197-37](#)). After the Plaintiffs discovered that NextGear had been charging interest and fees on money that it had not yet actually paid on Plaintiffs' behalf, they initiated this lawsuit against NextGear and other defendants. They asserted claims for breach of contract, constructive fraud, unjust enrichment, tortious interference, violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*., and a RICO conspiracy ([Filing No. 117](#)). Following a motion to dismiss the claims, the Court dismissed the unjust enrichment, tortious interference, and RICO conspiracy claims. The Court also dismissed the breach of contract and constructive fraud claims against other defendants, Cox Automotive and John Wick, and all claims against other defendant Cox Enterprises, Inc. ([Filing No. 186 at 42](#)).

The Plaintiffs sought class certification on their claims for a class involving "[a]ll used car dealers in the United States of America that were parties to a Floorplan Agreement with DSC, n/k/a NextGear, effective during the time period of January 2005 through July 2013." ([Filing No. 165 at 2](#).) On June 29, 2017, the Court granted class certification on the Plaintiffs' breach of

3

contract claim against NextGear and the substantive RICO claim against NextGear, Cox Automotive, and John Wick, but class certification was denied on the constructive fraud claim. (Filing No. 220). The certified class was defined as "all used car dealers in the United States of America that were parties to a Floorplan Agreement with DSC, n/k/a NextGear, effective during the time period of January 2005 through July 2013," with a subclass for "all California used car dealers that were parties to a Floorplan Agreement with DSC, n/k/a NextGear, effective during the time period of January 2005 through July 2013, which Floorplan Agreement requires the application of California law." (Filing No. 220 at 40.)

The parties sought summary judgment on the remaining claims, and NextGear asked the Court to reconsider the class certification decision and to decertify the class. On January 12, 2018, the Court granted NextGear's motion to reconsider and decertified the class on the Plaintiffs' breach of contract claim against NextGear and the substantive RICO claim against NextGear, Cox Automotive, and John Wick (Filing No. 261 at 9). Also on January 12, 2018, the Court granted summary judgment on the constructive fraud claim in favor of NextGear and on the RICO claim in favor of NextGear, Cox Automotive, and John Wick. The summary judgment Order left the breach of contract claim against NextGear as the only remaining claim to be decided at trial (Filing No. 262 at 38).

Soon thereafter, the Plaintiffs filed a notice of appeal, asking the Seventh Circuit Court of Appeals to review the Court's Order decertifying the class action. In its decision, the Seventh Circuit noted, "This appeal presents us with only the narrow issue of whether the district court erred in rescinding class certification." (Filing No. 273 at 4.) In reaching its decision, the Seventh Circuit explained, "The court's denial of class certification lacks sufficient reasoning for our court, on review, to ascertain the basis of its decision," and "[a]bsent a more thorough explanation of its

reasoning, we cannot uphold the decision decertifying the class. The decision of the district court is VACATED and the case REMANDED for further proceedings." *Id.* at 9, 13.

With the class decertification Order having been vacated, this case was returned to the status of a class action on the sole remaining claim for breach of contract against NextGear. In the pending Motions, NextGear asks the Court to decertify the class, alternatively modify and narrow the class, stay discovery and class notice, and vacate the Magistrate Judge's Orders denying a stay of class discovery and denying a stay of class notice. The Plaintiffs ask the Court to revise the class definition and to allow the parties to proceed with class notice, to strike the declarations that NextGear submitted with its Motion to Decertify Class, and to grant them leave to submit a proposed order concerning NextGear's Motion to Decertify Class. The Court will address the pending Motions in turn.

## II. DISCUSSION

### A. Plaintiffs' Motion for Leave to File Proposed Order and Reasons (Filing No. 302)

The Plaintiffs ask the Court for leave to submit a proposed order concerning NextGear's Motion to Decertify Class. The Plaintiffs explain that NextGear filed its Motion to Decertify Class without a proposed order, then Plaintiffs filed their response brief, and then NextGear submitted a proposed order with its reply brief. The Plaintiffs assert that the Court's Local Rules do not provide for the submission of proposed orders on non-routine motions, and NextGear's submission of a proposed order with its reply brief denied the Plaintiffs an opportunity to address it in their response brief. Thus, they ask for the opportunity to submit a proposed order so that the Court can give equal treatment to the parties and fairly consider competing proposed orders when ruling on the Motion to Decertify Class.

NextGear "does not oppose Plaintiffs' request for leave to submit a proposed order [Doc. 302], but objects to the content of Plaintiffs' Proposed Order [Doc. 302-1], which misstates the law and the parties' positions, as briefed." (Filing No. 304.) In order to provide equal consideration and treatment to the parties, the Court **grants** the Plaintiffs' unopposed Motion for Leave to File Proposed Order and Reasons (Filing No. 302).

## B.    Plaintiffs' Motion to Strike (Filing No. 299)

With its Motion to Decertify Class, NextGear submitted the declarations of Mark Bohannon, Eric Chevalier, Garrett Jorewicz, and Troy Thompson filed at Docket Nos. 295-2, 295-3, 295-4, and 295-5.  The Plaintiffs move the Court to strike these declarations along with the portions of NextGear's Motion to Decertify Class that rely on the declarations.

Federal Rule of Civil Procedure 37(c)(1), provides "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless."  Rule 37(b)(2)(A)(iii) permits a court to strike pleadings, in whole or in part, as a sanction.  "The exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless."  *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004).

The Plaintiffs argue that NextGear never disclosed proposed witnesses Mark Bohannon, Eric Chevalier, Garrett Jorewicz, or Troy Thompson, during the course of this litigation.  Because these potential witnesses were never identified or disclosed by NextGear, the Plaintiffs assert they were never given the opportunity to depose or cross-examine the witnesses.  The Plaintiffs argue there is no justification for failing to disclose these witnesses because each witness is employed

by NextGear and has been since at least 2013; thus, they are not "new" witnesses and cannot provide "new" evidence.

Concerning prejudice, the Plaintiffs contend the late disclosure prohibited them from serving additional discovery requests related to the declarants' testimonies, such as information regarding the identity of the other parties to the discussions and conversations about which the declarants identify, and seeking documents related to the accounts that are specifically identified in the declarations. NextGear knew of these witnesses and facts throughout the litigation but never disclosed the witnesses when opposing the original motion for class certification, in the summary judgment briefing, in the motion to reconsider class certification, and in two rounds of briefing at the Court of Appeals. The Plaintiffs argue they are prejudiced by the late disclosure, and thus, the declarations should be stricken.

Responding to the Motion to Strike, NextGear asserts,

> [T]he subject of the declarations—course of performance evidence related to unnamed class members—only recently became relevant to this case following the Court's summary judgment ruling and the Seventh Circuit's March 8, 2019 *vacatur* of decertification. Only since remand, on March 11, has class member course of performance become a central issue for trial.

(Filing No. 301 at 1.)

NextGear argues that its specific identification of the four witnesses with its Motion to Decertify on May 1, 2019 rather than immediately after remand of the case from the Seventh Circuit on March 11, 2019, is harmless. NextGear did disclose the four declarants when it identified "current or former employees or representatives of NextGear Capital, Inc. . . . with knowledge of the subject matter of this dispute" on its preliminary witness list (Filing No. 157 at 2). The Plaintiffs did not object to this general characterization of the witnesses when NextGear disclosed them.

NextGear asserts that there is no prejudice to the Plaintiffs because they knew of "NextGear employee" witnesses since the time of the initial disclosures, and the Plaintiffs themselves listed "NextGear employees" on their own initial disclosures (Filing No. 301-1). Even if there was any prejudice, it would be easily curable because discovery has not closed, so the Plaintiffs can still seek discovery related to the witnesses. NextGear also asserts that the disclosure of these witnesses cannot disrupt trial because no trial date has been reset in this case. NextGear dispute there is any prejudice, asserting there was no bad faith in its disclosures, both parties served initial disclosures before the case involved class claims. Moreover, the parties did not supplement the initial disclosures throughout the litigation. Both parties have since relied on declarations of witnesses who were not specifically identified by name on the initial disclosures, therefore, striking the declarations is not warranted.

The Court is persuaded by Plaintiff's argument. The declarants are NextGear employees and have been known to NextGear throughout the litigation, and the declarations represent facts that have been known to NextGear from the beginning; they are not facts that have been developed through the course of discovery. Although NextGear broadly identified its employees as potential witnesses in a timely manner and the Plaintiffs did not initially object to the broad identification, it would be unfairly prejudicial to the Plaintiffs to allow the declarations of the later specifically-identified witnesses to be considered with the Motion to Decertify.

While additional discovery could be taken by the Plaintiffs, that opportunity is not available to them for opposing the Motion to Decertify as the Motion has been fully briefed. The Court also finds it compelling that NextGear presented the course of performance argument many times throughout the litigation, yet it never specifically disclosed these four witnesses and did not present declarations from these witnesses until after the Seventh Circuit's remand. NextGear provided no

justification for making the argument but not disclosing the witnesses or their declarations, and "[t]he exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless." *Musser*, 356 F.3d at 758. Because the Plaintiffs did not have any opportunity to conduct discovery as to these four specifically-named witnesses in connection with the Motion to Decertify—thus resulting in unfair prejudice—the Court **grants** the Plaintiffs' Motion to Strike the declarations (Filing No. 299). The Court will not consider the declarations when deciding the Motion to Decertify.

**C.** **NextGear's Motion to Decertify Class (Filing No. 295)**

As explained above, the Court certified a class on the Plaintiffs' claim on June 29, 2017 (Filing No. 220). Upon NextGear's motion, after further consideration, the Court determined that there had been important developments in the litigation since the time that the Plaintiffs had filed their motion for class certification, warranting reconsideration of the class certification Order. The Court decertified the class on January 12, 2018 (Filing No. 261). On appeal, the Seventh Circuit held that this "court's denial of class certification lack[ed] sufficient reasoning for our court, on review, to ascertain the basis of its decision," and "[a]bsent a more thorough explanation of its reasoning, we cannot uphold the decision decertifying the class." (Filing No. 273 at 9, 13.) The Seventh Circuit vacated the decertification Order and remanded the case for further proceedings. NextGear's Motion to Decertify Class followed.

Federal Rule of Civil Procedure 23(c)(1)(C) states, "An order that grants or denies class certification may be altered or amended before final judgment." The "district court has broad discretion to determine whether certification of a class is appropriate." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). Under Rule 23(c)(1)(C), the district court retains authority to modify or vacate a class certification at any time prior to final judgment.

"[T]he district court has the power at any time before final judgment to revoke or alter class certification if it appears that the suit cannot proceed consistent with Rule 23's requirements." *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977).

"[A] favorable class determination by the court is not cast in stone. If the certification of the class is later deemed to be improvident, the court may decertify, subclassify, alter the certification, or permit intervention." *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 896 (7th Cir. 1981) (citations omitted); *see also Ellis v. Elgin Riverboat Resort*, 217 F.R.D. 415, 419 (N.D. Ill. 2003) ("the court's initial certification of a class 'is inherently tentative'") (citation omitted).

NextGear argues:

> The premise for the Court's decertification order was its determination that the contracts in issue were ambiguous. [Doc. 261.] That premise—which was urged by Plaintiffs—necessarily means here that the case cannot be adjudicated on a class basis, just as the Court correctly determined. Here's why. If an ambiguous contract is claimed to have been breached, the ambiguous contract terms, by definition, do not resolve the claim of breach.

([Filing No. 295 at 1](#).) "The Court's decertification decision was absolutely sound, given the stated premise for Plaintiffs' claims." *Id.* at 2. Thus, NextGear argues, the Court should again decertify the class and, as the Seventh Circuit invited, simply provide additional detail regarding the basis for its decision.

NextGear asserts that the Plaintiffs argued for the first time during summary judgment proceedings that the floorplan agreements were ambiguous as to when interest may begin to accrue. NextGear has maintained throughout the litigation that it may begin charging interest from the date of the auction. NextGear points out that the Court agreed with the Plaintiffs in its summary judgment Order, determining that the agreements were ambiguous as to when interest may begin to accrue. To resolve the ambiguity, the Court must analyze extrinsic evidence because, "where

an instrument is ambiguous, all relevant extrinsic evidence may properly be considered in resolving the ambiguity." *Univ. of S. Ind. Found. v. Baker*, 843 N.E.2d 528, 535 (Ind. 2006). NextGear asserts that it is on this basis—the contract being ambiguous and the need to consider extrinsic evidence—that the Court first decertified the class.

NextGear argues that various types of extrinsic evidence are relevant when resolving contractual ambiguities such as contemporaneous records revealing the parties' intent, course of performance, course of conduct, industry custom, and circumstances of formation of the agreements. NextGear asserts that, in this case, the most relevant extrinsic evidence to resolve the ambiguity is the parties' course of performance. *See St. Paul Fire & Marine Ins. Co. v. Schilli Transp. Servs.*, 672 F.3d 451, 462 (7th Cir. 2012) (in resolving ambiguity, "evidence concerning the history of the formation of the policy and the course of dealing under it would be admissible, if available and relevant, to establish the intention of the parties"); *Emp'rs Reinsurance Co. v. Superior Court*, 161 Cal. App. 4th 906, 922 (Cal. Ct. App. 2008) ("If the parties to a contract have, for years, harmoniously performed the contract in a way that reflects a particular, reasonable understanding of the terms of the contract, that performance is relevant to determining the meaning of the contract.").

NextGear asserts that this course of performance evidence is highly fact-specific, requiring individual inquiries into what each named Plaintiff and putative class member knew and did throughout its business relationship with NextGear. Trying that issue for thousands of dealers in the currently-defined class would be impossible. Course of performance will vary from dealer to dealer, and each dealer's communications, understanding, experience, and conduct are important to interpreting each dealer's contract.

In June 2012, Red Barn's general manager confronted a NextGear representative about interest charges. He said the representative responded that NextGear always charged interest from the date of the sale ([Filing No. 197-6 at 84](#)–85, 110–11). Even after learning that NextGear charged interest from the date of the sale rather than when NextGear paid the auction house, Red Barn still continued to finance auction purchases using NextGear's funding ([Filing No. 197-6 at 84](#)–85; [Filing No. 197-15 at 13](#)–23). NextGear argues that this course of performance should be given great weight when resolving ambiguities in the floorplan agreement.

NextGear notes that the owner of Mattingly Auto realized that in some cases he would pay off a vehicle before NextGear obtained title from the auction and that he would have to pay interest on the vehicle before NextGear had paid the auction house. He raised this concern with NextGear's account representatives "from day one" when he realized it, yet he continued borrowing from NextGear after learning that charging interest before settling up was "common practice." ([Filing No. 197-8 at 55](#)–56, 121–22.) NextGear again argues that this course of performance should be given great weight when resolving ambiguities in the floorplan agreement.

Concerning Platinum Motors, it did business with NextGear for a short time in 2011. Platinum Motors floorplanned only seven auction vehicles with NextGear, and its owner did not ask about when interest would begin to accrue ([Filing No. 197-19](#); [Filing No. 197-20](#); [Filing No. 197-9 at 58](#), 72, 74).

NextGear asserts that its own course of performance points to its understanding that the floorplan agreements allowed it to charge interest from the floorplan date. Since 2005, NextGear has consistently charged interest and fees from the date of auction rather than the date it pays the auction house. NextGear understood this to be the common industry practice. In turn, NextGear's customer dealers had 24-hour online access to detailed information about their accounts including

balances, principal and interest owed, and maturity dates ([Filing No. 197-24 at 2](#); [Filing No. 197-13 at 3](#)).

NextGear argues that, to fairly assess the evidence, the Court would have to review individualized evidence for every dealer that did business with NextGear. The course of performance evidence necessary to resolve the ambiguity in the floorplan agreements requires individual evidence from each dealer in the class. NextGear asserts that individual questions about each dealer's understanding and performance of its contract will overwhelm any questions that are common to the class, and those questions and evidence will point to different interpretations for different dealers. Thus, the course of performance evidence will not "generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

NextGear also argues that its many individual defenses against the thousands of class member car dealers will predominate any common questions, making class treatment inappropriate. NextGear points out that the Court already determined factual disputes precluded summary judgment on NextGear's defenses of *res judicata*, setoff, unclean hands, and waiver and ratification. Concerning the waiver defense, NextGear notes, "The Court has already concluded factual disputes precluded summary judgment because it was unclear if Plaintiffs were sufficiently informed to waive their claims. The Court would need to perform a similar analysis for each dealer in the class who had potentially waived its claims." ([Filing No. 295 at 15](#).) NextGear argues that these defenses, and other various defenses, are applicable to some dealers but not all dealers, and the evidence as to each dealer will be individualized thereby predominating any common questions. NextGear asserts that it "is entitled to prove those defenses at trial, and it would be

unmanageable, if not impossible, to do so across 27,000 class members. That is another, independent reason the Court's prior decision to decertify the class was correct." *Id.* at 13.

Responding to NextGear's Motion to Decertify Class, the Plaintiffs first argue that the Motion should not be considered by the Court because it actually is an untimely filed motion for reconsideration under Rule 59(e). The Motion was filed more than twenty-eight days after entry of the class certification Order and more than twenty-eight days after the Seventh Circuit's Mandate in this case and, therefore, the Motion was untimely filed.[1]

Alternatively, the Plaintiffs argue that the Motion is improper under Rule 23(c)(1)(C) because there have been no new developments in the law or the facts since the time of the class certification Order, so the Court should not reevaluate the class certification question and decertify the class. The Plaintiffs assert that NextGear's arguments are simply a repeat of its same arguments advanced when it opposed class certification and asked for decertification the first time, and NextGear should not get another bite at the apple. The Plaintiffs argue that NextGear's new declarations submitted with the Motion to Decertify Class are not new developments in the case that would justify reconsidering class certification.[2]

---

[1] The Court briefly addresses this argument by noting that, even if the Court took up the Plaintiffs' position, the Motion would be classified as a motion to reconsider under Rule 54(b), not Rule 59(e), because no final judgment has been entered in this case. Thus, Rule 59(e)'s 28-day limitation would not apply, and under Rule 54(b), "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Furthermore, Rule 23(c)(1)(C) states, "An order that grants or denies class certification may be altered or amended before final judgment." Therefore, this argument from the Plaintiffs is unavailing.

[2] The Court briefly addresses the Plaintiffs' alternative procedural argument. In the Order decertifying the class, this Court recognized that there had been important developments in the litigation since the time that the Plaintiffs had filed their motion for class certification—the most important and significant development being the Plaintiffs' theory that the floorplan agreements forming the basis of their claims are ambiguous. Subsequent to class certification, the Court agreed with the Plaintiffs' position that the floorplan agreements are ambiguous. That development in the litigation warrants reevaluating the propriety of class certification. Furthermore, as the Court noted in the previous section of this Order, it is striking the new declarations that NextGear submitted with its Motion to Decertify Class and is not considering those declarations when deciding the Motion.

The Plaintiffs argue that, when the Seventh Circuit vacated this Court's decertification Order, it reinstated the class certification Order. They assert that class certification is proper because of the nature of the "form contract" between the parties. The Plaintiffs point to the Seventh Circuit's opinion where that court explained, "[n]either the categorization of the contract as ambiguous, nor the prospect of extrinsic evidence, necessarily imperils class status." (Filing No. 273 at 10.) The Seventh Circuit continued:

> All parties concede that the floorplan contract in this case is a standard form contract. And neither the plaintiffs nor the defendants argue that the language in the contract has different meaning for different signatories; instead, all argue for an interpretation that would apply to all signatories of the contract. In fact, with a form contract such as this one, uniform application and interpretation of the clauses would be expected absent evidence that the form contracts in fact had a meaning that varied from one signatory to another. Even if the determination that the language is ambiguous as to when interest could accrue opens the door to extrinsic evidence to ascertain the intended meaning of that provision, the determination of its meaning would apply to all signatories and therefore would be capable of class-wide resolution.

*Id.* The Plaintiffs assert that the standard form contracts can be construed on a class-wide basis.

They argue,

> even if this Court were to consider extrinsic evidence at trial, including the type of evidence cited by NextGear in its Motion, the common question whether the interest provision allowed NextGear to charge interest before it advanced any money should be interpreted and applied uniformly to all members of the class. That common question predominates over any individual issues.

(Filing No. 298 at 11.) According to Plaintiffs, claims arising out of form contracts are particularly well-suited for class treatment.

The Plaintiffs further argue that course of performance evidence is not, as NextGear suggests, conclusive of the parties' intent and the meaning of ambiguous contracts. But even considering course of performance evidence, the Court could still determine on a class-wide basis when the floorplan agreements permitted NextGear to begin charging interest. The course of

performance evidence all concerns NextGear's reading of the floorplan agreement's interest provision, and the evidence does not show that any of the class members voluntarily paid interest on money NextGear had agreed to pay but had not yet advanced based upon their own independent understanding of the contract terms. Rather, the evidence shows that the class members performed in a certain manner after being told by NextGear what the ambiguous contract supposedly meant and required.

The Plaintiffs also assert that NextGear's reliance on industry custom, standard, or practice to resolve the contractual ambiguity does not support NextGear's position to decertify the case. Instead, industry custom, standard, and practice would apply on a class-wide basis, not just to individual dealers.

Concerning NextGear's argument that its many defenses should preclude class certification, the Plaintiffs assert that NextGear made this same argument when initially opposing class certification and again in its motion for reconsideration, and the Court rejected NextGear's argument. Instead, the Court previously determined that, "[w]hile there may be some variations in the applicability of defenses against various class members, those variations do not undermine the essential characteristics of the claims asserted in this action that drive the resolution of the dispute," and "the common questions regarding the breach of contract claim predominate any individual questions." (Filing No. 220 at 24, 37.) The Plaintiffs further point out that the "Court previously noted, 'some of the asserted defenses (such as default, setoff, and unclean hands) may be similarly raised against numerous class members, not just the named Plaintiffs,' Dkt. 220 at 24, and, therefore, should be handled on a class-wide basis. NextGear's affirmative defenses do not support decertification." (Filing No. 298 at 22.) The Plaintiffs also point out the Supreme Court's guidance concerning affirmative defenses and class certification:

When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (U.S. 2016) (citation and quotation marks omitted).

After a careful review of the Seventh Circuit's remand Order and the parties' arguments, the Court determines that the Plaintiffs' claim for breach of contract against NextGear should proceed as a class action. In describing this Court's class certification Order, the Seventh Circuit explained that "the decision to grant class certification was a model of clarity and thoroughness, analyzing the factors in detail," and providing "extensive analysis in its decision granting class certification." (Filing No. 273 at 8, 9.) The Seventh Circuit then unequivocally stated,

[W]ith a form contract such as this one, uniform application and interpretation of the clauses would be expected absent evidence that the form contracts in fact had a meaning that varied from one signatory to another. Even if the determination that the language is ambiguous as to when interest could accrue opens the door to extrinsic evidence to ascertain the intended meaning of that provision, the determination of its meaning would apply to all signatories and therefore would be capable of class-wide resolution.

*Id.* at 10.

The Seventh Circuit noted that this Court's class certification Order already addressed NextGear's argument concerning individualized, dealer-specific evidence about representations made by NextGear to its customer-dealers. NextGear had argued that questions about representations to dealers must be answered on an individual, not class-wide, basis. The Seventh Circuit pointed out that this Court still found commonality existed to support class certification, and the Seventh Circuit went on to explain,

[T]he mere need for extrinsic evidence does not in itself render a case an improper vehicle for class litigation. We have considered numerous cases in which the

testimony of individuals would be necessary to establish the meaning or existence of a policy, and the prospect of such individual testimony did not render class status improper.

*Id.* at 11–12.

In vacating the decertification Order and remanding the case back to this Court, the Seventh Circuit concluded,

Here, the class was already narrowed to those who signed the specific form contract at issue here. With such a form contract, almost universally signed without negotiation or modification, there is no reason to think that the interpretation of the provision will vary from one signatory to another, and therefore the issue is one that is capable of a common answer and for which that common question predominates over questions affecting individual class members.

*Id.* at 12.

The evidence in the record provided by NextGear supports its position that it is industry practice to begin charging interest on floorplanned vehicles as of the date of the auction. NextGear's evidence also indicates that it does not generally initiate verbal representations to dealers about the accrual of interest, but it will describe the practice if asked by the dealers ([Filing No. 197-24 at 2](#)–3).  This evidence leads to a common answer about the common question of when interest may begin to accrue.

Similarly, NextGear's evidence about course of performance of Red Barn, Mattingly Auto, and Platinum Motors leads to a common answer about the common question of when interest may begin to accrue.[3]  NextGear asserts that "[e]ven those two dealers' courses of performance were different: Mattingly asked questions and learned the answer 'from day one,' while Red Barn did not become aware of the interest issue until 'midstream' into its relationship with NextGear." ([Filing No. 300 at 11](#).)  However, the evidence is clear that Mattingly Auto did not know about the

---

[3] The evidence indicates that Platinum Motors did not ask questions about charged interest, and NextGear asserts this is yet another "different" course of performance, but NextGear also acknowledges this "course of performance is therefore inconclusive in demonstrating the meaning of [the] contract." ([Filing No. 295 at 10](#).)

interest charges "from day one" of the contractual relationship.  Rather, the evidence shows that the owner of Mattingly Auto discussed interest charges with NextGear "from day one" after he realized the situation with interest charges (Filing No. 197-8 at 121).  Thus, this is similar to what occurred with Red Barn.  And NextGear's evidence also indicates that both dealers continued borrowing from NextGear after learning about its practices of charging interest.  Therefore, the evidence suggests a common answer to the common question that drives resolution of this litigation.

NextGear's evidence about its own course of performance is consistent with the evidence about the dealers' course of performance and the evidence about industry practice.  Since 2005, NextGear has consistently charged interest and fees from the date of auction rather than the date it pays the auction house.  NextGear understood this to be the common industry practice (Filing No. 197-24 at 2).  Again, this evidence leads to a common answer about the common question of when interest may begin to accrue.

While some of NextGear's defenses may require consideration of individual issues, many of its defenses can be resolved class-wide.  The evidence suggests that many defenses can be resolved class-wide because they depend upon a dealer's knowledge of when interest began to accrue compared to when NextGear actually paid the auction houses or a dealer having any knowledge at all that NextGear paid the auction houses subsequent to when it began collecting interest.  There is some evidence that suggests the dealers never had this information, so some of NextGear's defenses may not apply at all on a class-wide basis. The Court is mindful that "[i]ndividual questions need not be absent.  The text of Rule 23(b)(3) itself contemplates that such individual questions will be present.  The rule requires only that those questions not predominate over the common questions affecting the class as a whole." *Messner v. Northshore Univ.*

*HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012). Further, the Supreme Court has directed that "the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods*, 136 S. Ct. at 1045. The Court is persuaded by the evidence and arguments that the common questions, evidence, and common answers predominate over any individual questions concerning some of the defenses raised by NextGear.

For the foregoing reasons, the Court determines that the breach of contract claim against NextGear should proceed as a class action. Therefore, the Court **denies** NextGear's Motion to Decertify Class (Filing No. 295).

**D.     NextGear's Motion to Modify Class Certification Order to Narrow Class (Filing No. 286)**

NextGear asks the Court to modify the class certification Order to narrow the scope of the class. The current class definition includes nearly 10,000 used car dealers who signed agreements containing an arbitration clause and a waiver of the right to participate in class actions. Therefore, NextGear argues, narrowing the class to exclude these dealers is appropriate.

After the 2013 merger of DSC and Manheim Automotive Financial Services, which resulted in the formation of NextGear, NextGear revised its contract forms. Dealers who wanted to continue doing business with NextGear had to execute this new 2013 agreement, which replaced any prior agreements between NextGear and the dealer. NextGear argues that dealers who signed the 2013 contract agreed that any disputes, claims, or counterclaims under any legal theory would be subject to arbitration on an individual basis. The 2013 agreement states:

> 22. DISPUTE RESOLUTION; WAIVER OF CLASS ACTION RIGHTS.
>
> (a) In most cases, any disputes or claims that Borrower may have can be resolved quickly and to Borrower's satisfaction by contacting Lender regarding such dispute or claims. In the unlikely event that Lender is unable to resolve a dispute

or claim that Borrower may have, Borrower agrees to arbitrate any such dispute or claim. This agreement to arbitrate is intended to be broadly interpreted, and includes (i) all disputes, claims and counterclaims arising out of or relating to this Note or any other Loan Document or any aspect of Borrower's relationship with Lender, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory; (ii) all disputes, claims and counterclaims that may have arisen before this Note or any prior contract or agreement between Borrower and Lender (including all disputes, claims and counterclaims relating to any marketing or advertising by Lender); and (iii) any disputes, claims and counterclaims that may arise after the termination of this Note and any other Loan Document. Additionally, Borrower acknowledges that Lender may (but shall in no event be required to) arbitrate any dispute or claim that it may have against Borrower, with any such arbitration being governed by the provisions of this Section 22. Borrower, at its election, may opt-out of the arbitration provisions set forth in Sections 22(a), 22(c) and 22(d) by providing written notice of its election to opt-out no later than thirty (30) days after the Effective Date, which notice shall be provided to Lender pursuant to Section 15 ("Opt-Out Notice"), provided that such Opt-Out Notice shall become effective only upon Borrower's receipt of written confirmation from Lender that such Opt-Out Notice has been received by Lender within the required time period. Borrower acknowledges and agrees that, irrespective of any Opt-Out Notice or any written confirmation thereof, Borrower shall in all events be subject to the provisions of Section 22(b).

(b) ANY ARBITRATION PROCEEDING UNDER THIS NOTE WILL TAKE PLACE ON AN INDIVIDUAL BASIS. CLASS ARBITRATIONS AND CLASS ACTIONS OF ANY KIND (WHETHER PURSUED THROUGH ARBITRATION OR THROUGH THE COURTS) ARE NOT PERMITTED. BORROWER AGREES THAT IT MAY BRING CLAIMS AGAINST LENDER ONLY IN ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. BORROWER AGREES THAT, BY ENTERING INTO THIS NOTE, BORROWER IS WAIVING ITS RIGHT TO PARTICIPATE IN ANY CLASS ACTION OR OTHER SIMILAR REPRESENTATIVE PROCEEDING. UNLESS CONSENTED TO IN WRITING BY LENDER, THE ARBITRATOR MAY NOT CONSOLIDATE MORE THAN ONE PERSON'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A REPRESENTATIVE OR CLASS PROCEEDING. BORROWER ACKNOWLEDGES AND AGREES THAT THE SIZE OF BORROWER'S CREDIT LINE, THE INTEREST RATE TO WHICH ADVANCES ARE SUBJECT AND CERTAIN FEES CHARGED TO BORROWER, AS WELL AS THE SIZE AND DATES OF SPECIFIC ADVANCES, ARE UNIQUE TO AND NEGOTIATED BY BORROWER, AND THAT SUCH FACTORS WILL AND DO VARY AMONG BORROWERS.

(c) Any dispute or claim subject to arbitration pursuant to this Section 22 shall be submitted to binding arbitration administered by the Judicial Arbitration and Mediation Service ("JAMS") pursuant to its Comprehensive Arbitration Rules and Procedures as then in effect (the "JAMS Comprehensive Rules"); provided, however, that any dispute or claim that is subject to arbitration pursuant to this Section 22 and that involves disputes or claims where the aggregate amount reasonably in dispute or controversy is less than $100,000, shall be submitted to binding arbitration administered by JAMS pursuant to its Streamlined Arbitration Rules and Procedures as in effect on the Effective Date (the "JAMS Streamlined Rules"). The disputes and claims subject to arbitration pursuant to this Section 22 will be resolved by a single arbitrator selected pursuant to the JAMS Comprehensive Rules or the JAMS Streamlined Rules, as the case may be. The arbitrator shall be bound by and shall strictly enforce the terms of this Note and the other Loan Documents and may not limit, expand, or otherwise modify any term or provision of this Note or any other Loan Document or any other contract or document between Borrower and Lender. The arbitrator shall not have the power to award to Borrower any damages that are excluded or that have been waived by Borrower under this Note or any other Loan Document, and Borrower irrevocably waives any claim that it may have thereto. The arbitrator shall not have the power to order pre-hearing discovery of documents or the taking of depositions. The arbitrator shall render a written decision within six (6) months after being selected. Any arbitration will be held in Indianapolis, Indiana (or its greater metro area). Each Party will bear its own expenses in the arbitration and will share equally the costs of the arbitration; provided, however, that the arbitrator may, in his or her discretion, award costs and fees to the prevailing Party. The result of any arbitration shall be final and binding upon the Parties. Judgment upon any arbitration award may be entered in any court having jurisdiction over the award or over the applicable party or its assets.

(d) This Note and the other Loan Documents evidence transactions in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this Section 22, notwithstanding the provisions of Section 20.

(Filing No. 286-3 at 10–11.)

Of dealers in the class and subclass certified in the Certification Order, Defendants determined that 9,940 executed the 2013 Note and agreed to the arbitration and class action waiver terms quoted above. . . . None of these dealers timely elected to opt out of the arbitration agreement by means of the procedures outlined in the contract.

(Filing No. 286-1 at 6 (*see* Filing No. 286-2 at 2).)

NextGear asserts that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, "declare[s]

a national policy favoring arbitration of claims that parties contract to settle in that manner." *Vaden*

*v. Discover Bank*, 556 U.S. 49, 58 (2009) (internal citation and quotation marks omitted). To further this policy, "the FAA compels judicial enforcement of a wide range of written arbitration agreements." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001). Where a contract contains an arbitration clause, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

Based upon this national policy of favoring arbitration, and based upon the plain language of the arbitration and class waiver provisions in the 2013 agreement, NextGear argues that the 9,940 customer-dealers who executed the 2013 agreement should be excluded from the class. They agreed to arbitrate any past, present, or future claims against NextGear and waived any right to participate in a class action. Thus, they should not be included in the class, and the class definition should be narrowed to exclude them from the class.

The Plaintiffs respond that the dispute resolution provisions in the 2013 agreement do not mandate arbitration. Instead, the provisions require court resolution in state or federal court in Indiana and provide for non-mandatory arbitration of claims not resolved through the elective, informal mediation procedure offered by NextGear.

Section 21 of the 2013 agreement provides a mandatory forum selection clause:

JURISDICTION AND VENUE. As evidenced by Borrower's signature below, Borrower submits to the personal jurisdiction and venue of the state and federal courts of Marion County and Hamilton County, Indiana, and agrees that any and all claims or disputes pertaining to this Note or any other Loan Document, or to any matter arising out of or related to this Note or any other Loan Document, initiated by Borrower against Lender, shall be brought in the state or federal courts of Marion County or Hamilton County, Indiana. . . .

(Filing No. 286-3 at 10.) The Plaintiffs argue that nothing in this provision restricts the forum selection clause to proceedings that are not subject to arbitration. The mandatory language that

any and all claims or disputes initiated by Borrower against Lender shall be brought in the state or federal courts of Marion County or Hamilton County requires the Plaintiffs to bring their claims to court, not to arbitration.

The Plaintiffs further argue that the dispute resolution provisions of the 2013 agreement are not mandatory and do not apply to the claim in this case. The Plaintiffs point to the first two sentences of the dispute resolution provision:

> In most cases, any disputes or claims that Borrower may have can be resolved quickly and to Borrower's satisfaction by contacting Lender regarding such dispute or claims. In the unlikely event that Lender is unable to resolve a dispute or claim that Borrower may have, Borrower agrees to arbitrate any such dispute or claim.

*Id.* The Plaintiffs assert the agreement states that "in most cases" disputes and claims can be informally resolved, but if not, then the borrower agrees to arbitrate "such dispute or claim." Thus, the Plaintiffs argue, this provision provides an informal mediation procedure to resolve disputes, and if those disputes are not resolved through informal mediation, then the borrower agrees to arbitrate those disputes that unsuccessfully went through informal mediation. "Plaintiffs did not invoke this permissive dispute-resolution procedure, and, therefore, it does not prevent them from pursuing their claims, as a class action, in this Court." (Filing No. 241 at 7.) Additionally, the Plaintiffs did not bring their claim against NextGear pursuant to 2013 agreement, which is the agreement that contains the arbitration provision. The Plaintiffs alternatively assert that any ambiguity in the scope of the arbitration provisions should be resolved against NextGear as the drafter of the contract.

Concerning the class waiver provision, the Plaintiffs argue that the waiver unambiguously applies only to claims that arise under the 2013 agreement and not under previous agreements. In support of their position, the Plaintiffs quote portions of the agreement: "Any arbitration proceeding under this Note will take place on an individual basis. Class arbitrations and class

actions of any kind (whether pursued through arbitration or through the courts) are not permitted." Furthermore, "Borrower agrees that, by entering into this Note, Borrower is waiving its right to participate in any class action or other similar representative proceeding." (Filing No. 286-3 at 10.) The Plaintiffs assert that the class waiver provision's reference to "this Note"—which is defined as the 2013 "Demand Promissory Note and Loan and Security Agreement and all present and future amendments, modifications, and addendums referenced herein," *id.* at 15—limits the class waiver to claims under the 2013 agreement and subsequent amendments only, not to prior agreements between the parties.

The Plaintiffs additionally argue that the 2013 agreement did not novate the earlier floorplan agreements that serve as the basis for this lawsuit. Section 13 of the 2013 agreement, concerning "Amendment; Merger," did not novate the prior floorplan agreements, and it did not waive existing claims against NextGear or release NextGear from any existing liability at the time the 2013 agreement was executed. Thus, the forum and dispute resolution provisions of the prior floorplan agreements should govern in this case, which involves claims under the prior agreements.

Responding to the Plaintiffs' argument, NextGear asserts that the Plaintiffs simply ignore much of the plain language of the 2013 agreement to avoid the obvious conclusion that arbitration is required and any right to class participation was waived.

NextGear argues,

Plaintiffs first invent a mediation process out of whole cloth, claiming that Section 22 is "a non-mandatory provision for arbitration of disputes that are subjected first to an elective, informal mediation." (Pls.' Opp'n Br. [Doc. 241] at 6.) But Section 22 contains no reference to mediation at all; the first sentence of Section 22(a) is plainly a prefatory statement encouraging dealers to consider contacting NextGear before proceeding directly to arbitration.

(Filing No. 243 at 3.)

NextGear asserts that the plain language of the contract shows that a dispute or claim that a dealer has against NextGear must be arbitrated, and the language is broad to include all disputes, claims, and counterclaims arising out of or relating to "this Note," "any other Loan Document," or "any aspect of Borrower's relationship with Lender," including "all disputes, claims and counterclaims that may have arisen before this Note or any prior contract or agreement between Borrower and Lender." (Filing No. 286-3 at 10.) The Plaintiffs completely ignore this language.

NextGear further responds that a forum selection clause does not necessarily negate the effect of an arbitration clause, and forum selection clauses do not trump the provisions of a mandatory arbitration clause. *See ValuePart, Inc. v. Farquhar*, 2014 WL 4923179, at *5 (N.D. Ill. Sept. 29, 2014). Additionally, "[i]t is not uncommon to find both arbitration and forum selection clauses in agreements." *ISP.com LLC v. Theising*, 805 N.E.2d 767, 776 (Ind. 2004). NextGear argues the forum selection clause and the arbitration provision in the 2013 agreement are easily harmonized.

> Some issues cannot be arbitrated—for example, motions to compel arbitration, proceedings to enforce or vacate an arbitration award, and litigation with dealers who opted out of the arbitration provision in accordance with its terms—and those issues shall be litigated only in certain courts. All other disputes, however, should be arbitrated pursuant to the contract's mandatory arbitration agreement.

(Filing No. 243 at 7–8.)

NextGear also asserts that there is no support in the contract for the Plaintiffs' argument concerning the class waiver provision. The contract unambiguously states that "class arbitrations and class actions of any kind (whether pursued through arbitration or through the courts) are not permitted," and "Borrower is waiving its right to participate in any class action or other similar representative proceeding." (Filing No. 286-3 at 10.) The language does not limit the class waiver to claims under the 2013 agreement.

After reviewing the parties' arguments and the language of the 2013 contract, the Court agrees that NextGear's position is well-taken. The Plaintiffs' position ignores portions of the contract in an attempt to create an ambiguity or to sidestep the inevitable conclusion that dealers agreed to arbitrate and waived class action rights when they signed the 2013 contract. These dispute resolution provisions (arbitration and class waiver) apply to all disputes and claims concerning the 2013 agreement and any aspect of the relationship between dealers and NextGear as well as all disputes and claims that arose before the 2013 agreement such as under any prior contract or agreement between dealers and NextGear.

The forum selection clause does not supersede the arbitration clause thereby making the arbitration clause meaningless or superfluous. Furthermore, the dispute resolution clause does not, as the Plaintiffs suggest, create an informal mediation option that can be chosen by a dealer. Rather, the dispute resolution clause unambiguously requires arbitration. And the forum selection clause applies to matters not subject to arbitration such as proceedings to enforce or vacate an arbitration award, a motion to compel arbitration, or litigation with dealers who opted out of the arbitration provision.

For these reasons, NextGear's Motion to Modify Class Certification Order to Narrow Class (Filing No. 286) is **granted**. The Court will modify the class definition to exclude from the class the 9,940 customer-dealers who executed the 2013 agreement that contained the arbitration and class waiver provisions.

E.  <u>**NextGear's Alternative Motion to Modify Class Certification Order to Narrow Class (Filing No. 306)**</u>

NextGear next asks the Court to modify the class certification Order to narrow the scope of the class based upon statute of limitations issues. The class as currently defined goes back fifteen years to 2005 and NextGear contends it includes dealers whose claims are barred by the

statutes of limitations applicable to contract claims in Indiana and California. The limitations period applicable to the Plaintiffs' breach of contract claim is six years under Indiana law (*see* Ind. Code § 34-11-2-90), and the California subclass is subject to a shorter limitations period of four years (*see* Cal. Civ. Proc. Code § 337). NextGear asserts that the statutes of limitations bar claims by a majority of dealers in the class—of the 17,411 dealers in the class and subclass created by the class certification Order who have not agreed to arbitrate their claims, the majority did business with NextGear only outside the limitations period, so those dealers should be excluded from the class.

> NextGear argues:
>
> It was not until January 8, 2016 that Plaintiffs first raised class claims alleging that NextGear systematically charged interest inappropriately. (Motion for Leave to File Verified Amended Complaint [Doc. 89].) Thus, any claims arising from transactions that occurred before January 8, 2010 (for the nationwide class) or before January 8, 2012 (for the California class) are presumptively time-barred. Dealers who did all their business with NextGear before those dates cannot bring breach of contract claims against NextGear at all, while dealers who did some business before and some business after those dates will only be able to bring claims for the transactions that happened after.

(Filing No. 306 at 5.) More than 9,000 dealers in the class had transactions with NextGear only outside the limitations period, which is more than half the class that remains after dealers who agreed to arbitrate are excluded (Filing No. 306-1 at 2). These dealers, NextGear argues, must be excluded from the class.

The Plaintiffs respond that "NextGear readily admits that the statute of limitations issues raised in the Motion have been 'repeatedly' raised throughout this litigation, including in its original opposition to Plaintiffs' motion for class certification." (Filing No. 307 at 2.) However, the Plaintiffs argue, there have been no developments in the law or the facts in this case to justify modifying class certification under Rule 23(c)(1)(C).

Plaintiffs do not dispute that breach of contract claims are subject to a statute of limitations period of six years under Indiana law and four years under California law; however, Plaintiffs absolutely dispute that certain class members' claims are barred based on the dates of the transactions at issue. The date of a particular transaction does not, on its face, determine whether a claim is time-barred. NextGear's Motion is based on the false premise that the class members' claims accrued at the time of a particular transaction with NextGear.

*Id.* at 4.

The Plaintiffs argue a breach of contract claim accrues when a plaintiff knew or, in the exercise of ordinary diligence, could have discovered the breach of contract. *See, e.g., McFreen v. Alcatel-Lucent USA, Inc.*, 2014 WL 6997843 (S.D. Ind. Dec. 10, 2014); *Perez-Encinas v. AmerUs Life Ins. Co.*, 468 F. Supp. 2d 1127 (N.D. Cal. 2006). Thus, because the factual issue relevant to the statute of limitations defense is not the date of the class members' transactions, NextGear's argument regarding its proposed narrowing of the class based on transaction dates is misplaced.

In this case, the class members' knowledge of the breach by NextGear—the charging of interest on money not yet actually paid—was not discoverable at the time of the transaction. The relevant factual issue for purposes of a statute of limitations analysis is when the Plaintiffs discovered or could have discovered that NextGear was charging interest before making payments to the auction houses. And the evidence shows that the Plaintiffs could not have known when NextGear paid the auction houses. The Plaintiffs assert that this is true across the class because the date of NextGear's payments to the auction houses was not provided to the dealers or even to NextGear's account executives. None of the class members through ordinary diligence could have discovered that they had been charged interest prior to any advance by NextGear thereby making this a class-wide issue.

The Plaintiffs explain,

At trial, Plaintiffs intend to prove that NextGear failed to provide information regarding dates of payments to auctions to either the dealers or its own account

executives on a classwide basis, and as such, Plaintiffs could not have discovered NextGear's breach of contract at the time of those transactions. Accordingly, this Court should reject NextGear's argument that the applicability of the discovery rule would have to be proven on an individual or transactional rather than a classwide basis.

(Filing No. 307 at 9.)

The Plaintiffs again point to the Supreme Court's recent guidance concerning class actions and defenses:

> When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.

*Tyson Foods*, 136 S. Ct. at 1045 (citation and quotation marks omitted). Additionally,

> Statute of limitations defenses—like damage calculations, affirmative defenses, and counterclaims—rarely defeat class certification. In most cases, statutes of limitations can be applied to the class as a whole or to large groups of class members; this makes the issue a common, not individualized, one and supports a finding that common issues predominate. Moreover, class counsel will often define the class as those with live claims (e.g. buyers of a specific product within a specified time period), thereby precluding statute of limitations defenses from even arising. Finally, if statute of limitations issues are somewhat individualized, courts deem that these concerns can be resolved during the damage phase of the case and need not preclude certification of liability issues.

2 Newberg on Class Actions § 4:57 (5th ed.) (citations and footnotes omitted).

Relying on *Paskuly v. Marshall Field & Co.*, 646 F.2d 1210, 1211 (7th Cir. 1981), the Plaintiffs assert that the original complaint was filed on December 3, 2013, and the class members' claim relates back to that filing, so NextGear is incorrect to calculate any limitations period based on January 8, 2016, the date of the Amended Complaint.

In a footnote in its Reply Brief, NextGear argues that the Plaintiffs provide only a single, conclusory sentence regarding "relation back," and thus, have failed to meet their burden to prove the applicability of relation back. Additionally, in its Reply Brief, NextGear asserts that the

discovery rule does not allow dealers to "bury their heads in the sand" and fail to exercise diligence to learn of the alleged injury. NextGear argues that dealers knew or could have known "how interest was charged" as of the "date they entered into transactions with NextGear." ([Filing No. 308 at 4](#).) NextGear points out that Red Barn and Mattingly Auto each discovered the interest charge practices and then still continued to borrow from NextGear. NextGear asserts that Red Barn learned of the practice in June 2012, and Mattingly Auto learned of the practice "from day one." But even if the discovery rule applied, NextGear argues, it would require an individualized analysis improper for class treatment.

The Court first notes that, while the Plaintiffs' relation back argument is terse, it is well-taken. The Plaintiffs rely on good case law, and the facts necessary to deciding the issue are in the record. The original complaint was filed on December 3, 2013, by Red Barn against NextGear and brought a breach of contract claim based on the same facts that are alleged in the Amended Complaint. Thus, the Court concludes that the sole remaining claim for breach of contract against NextGear relates back to the original filing date of December 3, 2013.

Next, the Court notes that, according to NextGear, Red Barn discovered their claim for improperly charged interest in June 2012, which is well within the limitations period. NextGear's argument about Mattingly Auto learning of the interest charging practices "from day one" is not supported by the evidence, which the Court discussed above when deciding the Motion to Decertify Class.

NextGear has asserted that dealers knew or could have known how interest was charged as of the date they entered into transactions with NextGear, but the evidence suggests that the dealers and even the NextGear account executives did not know *when NextGear paid the auction houses*. Dealers would need to have this information in addition to "how interest was charged" in order to

realize that they had a claim for breach of contract for allegedly improperly charged interest. It appears that this issue may be resolved for the class as a whole or to large groups of class members. Therefore, the Court determines that this issue does not necessitate narrowing the class or decertifying the class. For these reasons, the Court **denies** NextGear's Alternative Motion to Modify Class Certification Order to Narrow Class (Filing No. 306).

**F.** **NextGear's Motion to Stay Discovery and Class Notice (Filing No. 285) and Objections to Magistrate Judge's Orders (Filing No. 287; Filing No. 288)**

NextGear's Motion to Stay Discovery and Class Notice (Filing No. 285) and Objections to Magistrate Judge's Orders (Filing No. 287; Filing No. 288) ask the Court for an order staying class discovery and class notice until the Court has an opportunity to rule on NextGear's motions addressing whether the case should proceed on a class basis and, if so, the scope of any class that remains certified. Because the Court has ruled upon NextGear's motions addressing class certification and the scope of the class in the sections above, the Court **denies as moot** these Objections and Motion.

**G.** **Plaintiffs' Motion to Revise Class Definition and Proceed with Class Notice (Filing No. 276)**

The Plaintiffs ask the Court to modify the class definition and allow them to proceed with class notice. In particular:

> Mr. Galema [NextGear's Rule 30(b)(6) representative] testified that NextGear's list of class members would not include dealers, if any, who signed a floorplan agreement with NextGear but never utilized that agreement to floorplan a vehicle. *See, e.g.,* Exh. B at 23:4-23:20. Mr. Galema testified that identifying dealers who signed a contract but never floor planned a vehicle with NextGear would be extremely burdensome, requiring extensive manual review of NextGear's records. *See, e.g., id.* at 39:24-40:14 and 51:23-52:18. Based on Defendants' representations as to the disproportionate burden and difficulty associated with attempting to locate any additional class members who never floor planned a vehicle, Plaintiffs respectfully submit that the class definition should be modified, pursuant to Rule 23(c)(1)(C), to include only dealers who entered into a floorplan agreement with NextGear during the relevant dates and had one or more transactions with NextGear

32

under that agreement. The proposed revised class definition is set forth below, with the proposed new language in bold text:

> *All used car dealers in the United States of America that were parties to a Floorplan Agreement with DSC, n/k/a NextGear, effective during the time period of January 2005 through July 2013, **and floor planned one or more vehicles with DSC/NextGear under such agreement.***

This proposed revised class definition would reflect, with greater specificity, the scope of the class based on the above developments in class discovery.

([Filing No. 276 at 2](#)–3.) (Emphasis in original.)

The Plaintiffs further ask the Court to allow them to proceed with class notice. They assert that this case has been pending since 2013, and it was certified as a class in June 2017 before decertification and the subsequent remand from the Court of Appeals. They note that "[p]rior to decertification, the parties succeeded in crafting a form of class notice acceptable to both Plaintiffs and Defendants to be used in the event of notice only to those class members" who had not signed the 2013 agreement containing the arbitration clause. *Id.* at 4–5. The Plaintiffs have revised that agreed upon class notice to reflect the Court's summary judgment ruling, and they request permission to proceed with class notice.

In response to this Motion, NextGear asserts that the parties should be given time to engage in additional necessary class discovery before sending out class notice. NextGear points out, "Plaintiffs assert that the revisions to their class notice are 'based on the Court's summary judgment rulings.' But, in fact, Plaintiffs have made several changes from the version previously negotiated and agreed by the parties that have nothing to do with the summary judgment ruling." ([Filing No. 281 at 4](#).) The Plaintiffs' "currently proposed notice has been revised unilaterally by Plaintiffs and should not be sent in its current form." *Id.* at 1. However, NextGear responds that it "does not object to the proposed redefined class definition." *Id.* at 4.

33

With no objection from NextGear, the Court determines that it is appropriate to revise the class definition as proposed by the Plaintiffs to reflect the developments revealed through discovery. Therefore, the Court will modify the class definition to include only those dealers who floor planned one or more vehicles with NextGear under their agreements. NextGear's position regarding the propriety of the proposed class notice is well-taken. The parties should first confer to attempt to reach an agreement about class notice before the Court orders such class notice. Accordingly, Plaintiffs' Motion to Revise Class Definition and Proceed with Class Notice is **granted in part and denied in part.**

### III. <u>CONCLUSION</u>

For the reasons stated above, the Plaintiffs' Motion for Leave to File Proposed Order and Reasons ([Filing No. 302](#)) and Motion to Strike ([Filing No. 299](#)) are **GRANTED**, NextGear's Motion to Decertify Class ([Filing No. 295](#)) is **DENIED**, NextGear's Motion to Modify Class Certification Order to Narrow Class ([Filing No. 286](#)) is **GRANTED**, NextGear's Alternative Motion to Modify Class Certification Order to Narrow Class ([Filing No. 306](#)) is **DENIED**, NextGear's Motion to Stay Discovery and Class Notice ([Filing No. 285](#)) and Objections to Magistrate Judge's Orders ([Filing No. 287](#); [Filing No. 288](#)) are **DENIED as moot**, and Plaintiffs' Motion to Revise Class Definition and Proceed with Class Notice ([Filing No. 276](#)) is **GRANTED in part and DENIED in part**.

Based on the Court's rulings above, the Plaintiffs' claim for breach of contract against NextGear will proceed as a class action for the following class and subclass:

"All used car dealers in the United States of America that were parties to a Floorplan Agreement with DSC, n/k/a NextGear, effective during the time period of January 2005 through July 2013, and that floor planned one or more vehicles with DSC/NextGear under such agreement,

excluding any dealer that signed an agreement containing an arbitration or class action waiver provision."

"All California used car dealers that were parties to a Floorplan Agreement with DSC, n/k/a NextGear, effective during the time period of January 2005 through July 2013, which Floorplan Agreement requires the application of California law, and that floor planned one or more vehicles with DSC/NextGear under such agreement, excluding any dealer that signed an agreement containing an arbitration or class action waiver provision."

The parties are **ORDERED** to promptly contact the Magistrate Judge to schedule a conference to discuss any remaining class discovery needs and to facilitate class notice and to discuss a date when the parties will be ready for trial.

**SO ORDERED.**

Date: 2/26/2020

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Ryan D. Adams
SHER GARNER CAHILL RICHTER
KLEIN & HILBERT LLC
radams@shergarner.com

Jacob A. Airey
SHER GARNER CAHILL RICHTER
KLEIN & HILBERT LLC
jairey@shergarner.com

Matthew M. Coman
SHER GARNER CAHILL RICHTER
KLEIN & HILBERT LLC
mcoman@shergarner.com

Kathleen Ann DeLaney
DELANEY & DELANEY LLC
kathleen@delaneylaw.net

Cassie E. Felder
THE CASSIE FELDER LAW FIRM
cassie@cassiefelderlaw.com

James M. Garner
SHER GARNER CAHILL RICHTER
KLEIN & HILBERT LLC
jgarner@shergarner.com

Steven D. Groth
BOSE MCKINNEY & EVANS, LLP
sgroth@boselaw.com

Paul D. Vink
BOSE MCKINNEY & EVANS, LLP
pvink@boselaw.com

Gladstone N. Jones
JONES SWANSON HUDDELL &
GARRISON, LLC
gjones@jonesswanson.com

David J. Jurkiewicz
BOSE MCKINNEY & EVANS, LLP
djurkiewicz@boselaw.com

Catherine E. Lasky
JONES SWANSON HUDDELL &
GARRISON, LLC
Klasky@laskymurphy.com

Tracey K. Ledbetter
EVERSHEDS SUTHERLAND (US) LLP
traceyledbetter@eversheds-sutherland.com

Jason S. McCarter
EVERSHEDS SUTHERLAND (US) LLP
jason.mccarter@sutherland.com

Kerry A. Murphy
JONES, SWANSON, HUDDELL &
GARRISON, LLC
kmurphy@laskymurphy.com

Lynn E. Swanson
JONES, SWANSON, HUDDELL &
GARRISON, LLC
lswanson@jonesswanson.com