IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| RED BARN MOTORS, INC., PLATINUM MOTORS, INC., and MATTINGLY AUTO SALES, INC., individually and on behalf of other members of the general public similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:14-cv-01589-TWP-DLP |
| NEXTGEAR CAPITAL, INC. f/k/a DEALER SERVICES CORPORATION, | ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT**

Plaintiffs Red Barn Motors, Inc. ("Red Barn"), Platinum Motors, Inc. ("Platinum Motors"), and Mattingly Auto Sales, Inc. ("Mattingly Auto"), on behalf of a certified class of 17,208 used car dealerships[1] (collectively, "Plaintiffs") respectfully move this Court pursuant to Fed. R. Civ. P. 23 for an Order: (1) granting preliminary approval ("Preliminary Approval Order") of a proposed settlement agreement ("Settlement," or the "Settlement Agreement"[2]) with Defendant NextGear Capital, Inc., formerly known as Dealer Services Corporation, ("NextGear"); (2) preliminarily appointing Donlin Recano & Company, Inc. ("Donlin Recano") as settlement administrator ("Settlement Administrator"); (3) directing notice to all class members who would be bound by the Settlement Agreement; (4) preliminarily approving the terms of the Settlement as

---

[1] *See* (Filing No. 220). *See also* (Filing No. 315, at 9-19).

[2] *See* Settlement Agreement, attached hereto as Exhibit 8. Settlement Agreement Exhibits B-1 and B-2 will be filed under seal, as those documents contain confidential information regarding the class members. *See* Joint Motion to Maintain Exhibits B-1 and B-2 to Settlement Agreement Under Seal [Filing No. tbd].

likely approvable under Fed. R. Civ. P. 23(e)(1)(B); (5) approving the Notice Plan set forth hereinbelow and approving the form and content of the proposed Class Settlement Notice and the Class Action Fairness Act ("CAFA") Notice ("CAFA Notice"); (6) staying all proceedings in the litigation unrelated to the Settlement pending final approval of the Settlement ("Final Approval," evidenced by the "Final Approval Order"); (7) staying and/or enjoining, pending Final Approval of the Settlement, any actions brought by Class Members concerning a claim that is released under the Settlement Agreement; (8) authorizing the pre-payment of $50,000 of the estimated Settlement Administrator's costs within ten (10) days of the Preliminary Approval Order and granting a request by the Parties to authorize the Settlement Administrator to perform a search for those names and addresses from whom class notice was returned  between April 2020 and June 2020; and (9) scheduling a Final Approval hearing for a time and date convenient for the Court that is not less than 90 days after service of the last CAFA Notice, at which hearing the Court will conduct an inquiry into the fairness of the Settlement, determine whether it was made in good faith and should be finally approved, and determine whether to approve Class Counsel's application for attorneys' fees, costs, and expenses ("Final Approval Hearing").

### INTRODUCTION

The Plaintiffs are a certified class of 17,208 used car dealerships.[3] Class representative Red Barn is a small, family-owned and operated used car dealership in Denham Springs, Louisiana,

---

[3] The class definitions are as follow:
"All used car dealers in the United States of America that were parties to a Floorplan Agreement with DSC, n/k/a NextGear, effective during the time period of January 2005 through July 2013, and that floor planned one or more vehicles with DSC/NextGear under such agreement, excluding any dealer that signed an agreement containing an arbitration or class action waiver provision" and "All California used car dealers that were parties to a Floorplan Agreement with DSC, n/k/a NextGear, effective during the time period of January 2005 through July 2013, which Floorplan Agreement requires the application of California law, and that floor planned one or more vehicles with DSC/NextGear under such agreement, excluding any dealer that signed an agreement

which began operations in 2010. Class representative Platinum Motors was a small used car dealership located in Chesapeake, Virginia. It operated from about 2009 to 2014. Class representative Mattingly Auto sells used cars at its Hardinsburg, Kentucky dealership, which began operations in approximately 2003.

Defendant is an automotive financing company that offers revolving line-of-credit financing to used car dealers throughout the United States. The financing is sometimes called a "floor plan." NextGear's "Floorplan Agreement"—formally called a "Demand Promissory Note and Security Agreement"—is "generally a take-it-or-leave-it" contract. Used car dealers utilize floor plans to purchase vehicle inventory, which then is resold at their used car dealerships.

NextGear does not dispute that it began charging interest to the Plaintiffs on the "flooring date" (the date when the Plaintiffs used the Floorplan Agreement to obtain a vehicle), typically the date of an auction. NextGear's account transaction documents provide a "total for" date, which is the date that NextGear actually sent cash to the seller on the Plaintiffs' behalf. NextGear does not dispute that the "total for" date sometimes occurred a period of time after the "flooring date." In other words, even though NextGear did not always pay an auction house on behalf of the Plaintiffs on the flooring date, it started charging interest to the Plaintiffs on that date. Based on the language contained in the Floorplan Agreements, Plaintiffs claim that NextGear could only start charging interest to the Plaintiffs after it made an advance of funds on the Plaintiffs' behalf.

Class representatives have testified that they did not know NextGear was going to charge them interest before disbursing sums when they entered into the Floorplan Agreements. Plaintiffs would not have agreed that NextGear could charge them interest before funds were advanced to the seller auction houses. By charging interest to Plaintiffs on funds that NextGear still held, Plaintiffs

---

containing an arbitration or class action waiver provision." (Filing No. 315 at 34-35.)

contend that NextGear enjoyed a commercially unreasonable windfall because only once NextGear actually advanced the funds to the auction house did it risk its assets and become entitled to the accrual of interest.[4] Plaintiffs claim that NextGear breached the Floorplan Agreement by charging and collecting interest not owed, and that NextGear is liable to the Class for the total amount of overcharged interest as damages, which the Plaintiffs' expert calculates to be $9,539,118.92. Plaintiffs also seek statutory prejudgment interest.[5]

The Parties have advanced competing positions concerning the interpretation of the contracts and whether NextGear breached the Floorplan Agreement by charging interest before disbursing money on the Plaintiffs' behalf. The Parties have extensively briefed the Court on the contract documents at issue in numerous pleadings, with the Court ruling that the contracts were ambiguous and the contract interpretation issue would need to be resolved at trial after consideration of extrinsic evidence. (Filing No. 262 at 38).

One of NextGear's defenses is that many class members' claims are barred by set off and/or recoupment, because many class members defaulted on their loans with NextGear and NextGear will be entitled to a set off in the specific amount that those dealers still owe under their contracts with NextGear. While the Court has recognized that NextGear's right to set off "may reduce the amount of any liability to the Plaintiffs in the event that the Plaintiffs are successful on their claim[,]" it denied summary judgment on that defense. *Id*. at 33. Based on NextGear's records, NextGear claims that 6,803 Plaintiffs have negative balances, and that those Plaintiffs account for $4,537,835.56 of the $9,539,118.92 in interest overcharges.

---

[4] As set forth in the numerous pleadings in this litigation, NextGear disagrees with Plaintiffs contention and contends that it is obligated to pay for a vehicle and its assets are at risk the moment a vehicle is purchased at auction using a NextGear floor plan.

[5] Based on an 8% rate of interest pursuant to Ind. Code Ann. § 24-4.6-1-102 (West), Plaintiffs' expert calculated total prejudgment interest in the sum of $5,471,534.07.

After seven years of litigation, including extensive discovery, class certification and then decertification, a trip to the U.S. Court of Appeals for the Seventh Circuit vacating the decertification order, an all-day mediation, and months of back and forth negotiation between counsel, Plaintiffs and NextGear have reached agreement on a $6.75 million common fund settlement and have executed a formal Settlement Agreement.  The Settlement breaks down into: $4.25 million cash, to be used for pro-rata cash payments to Class Members that do not have a negative account balance with NextGear, and payment of the class's legal fees, costs, and settlement administrative costs, and $2.5 million in pro-rata account credits to those class members that do have a negative account balance with NextGear. Certain class members will receive both cash and credits. No cash portion of the Settlement will revert to NextGear. The Settlement Agreement specifies that the three class representatives will also each receive a $7,500.00 service award for serving as class representatives. Other than required W-9 tax documents for those Class Members receiving cash payments of more than $600.00, the Settlement Agreement requires no claims process; Class Members entitled to a cash payment will receive a check in the mail, and NextGear will automatically credit those Class Members receiving credit.  No class member is required to conduct any further business with NextGear to receive funds or credits under the Settlement Agreement.

Under the circumstances, the Court likely will be able to conclude that the Settlement Agreement is "fair, reasonable, and adequate," Fed. R. Civ. P. 23(e)(2). Accordingly, the Plaintiffs request that the Court grant the preliminary approvals requested and approve the proposed class settlement notice.

# I.   PROCEDURAL, CLASS CERTIFICATION, AND DISCOVERY HISTORY.

## A.  This Case's Procedural History Shows the Parties Have Litigated Vigorously.

On December 3, 2013, Red Barn filed the Original Complaint in this action in the United States District Court for the Middle District of Louisiana. (Filing No. 1).  Subsequently, the case was transferred to this District based on the Floorplan Agreement's Indiana forum selection clause. (Filing No. 35). The case was then amended to become a class action lawsuit against NextGear and other Defendants alleging multiple causes of action, including breach of contract, Racketeering Influenced and Corrupt Organization Act (RICO) claims, unjust enrichment, constructive fraud, and tortious interference. (Filing No. 117).

This action has been extensively litigated in motion practice. NextGear (and the other defendants) filed motions to dismiss, motions for summary judgment, and multiple motions regarding class certification issues. *See, e.g.*, Filing Nos.186 and 262. Ultimately, all defendants except for NextGear were dismissed from the litigation. In addition, the claims in the case have been narrowed, and the Court has ruled that Plaintiffs' only remaining claim against NextGear is for breach of contract, dismissing the rest of Plaintiffs' claims. *Id.*

The class certification issue was also hotly contested. While the Court initially certified the class, it then decertified the class upon reconsideration. (Filing Nos. 220 and 262); *see also* (Filing No. 315, at 9-19). Plaintiffs appealed the Decertification Order to the Seventh Circuit, which vacated the Court's Decertification Order. (Filing No. 273). Upon reconsideration of the class certification issue, on February 26, 2020, the Court upheld its earlier order certifying the class; however, the Court narrowed the class significantly, ruling that nearly 10,000 used car dealers who signed later Floorplan Agreements containing an arbitration clause and a waiver of the right to participate in class actions were not part of the class.  (Filing No. 315 at 27).

6

After approval by the Court, a Notice of Pendency of Class Action Lawsuit was mailed to the class on or about April 24, 2020, by first-class U.S. mail. (Filing Nos. 326 and 342-1.) That notice gave Class Members the right to opt out of the Class by returning a written request to be excluded from the Class by June 26, 2020. Only four (4) putative class members timely asked to be excluded from the Class.

### B.  The Parties Have Conducted Extensive Discovery.

The Parties have conducted extensive discovery, with Plaintiffs propounding seven written discovery requests. The Parties responded to dozens of interrogatories, requested and reviewed tens of thousands of documents, and took numerous corporate representative and fact witness depositions. Also, multiple expert reports have been exchanged and the expert witnesses were deposed. The Parties filed Motions in Limine and the Court has ruled denying the motions, allowing the experts to testify at trial. *See* Motions in Limine (Filing Nos. 183 and 218) and Orders denying Motions in Limine (Filing Nos. 225 and 264).  The parties also engaged in other motion practice regarding discovery, particularly with respect to the timing and scope of class-related discovery. During the course of discovery, class Counsel also reviewed thousands of court pleadings, judgments, and other documents from other litigation related to NextGear's affirmative defense of setoff.

### C.  Settlement Negotiations Were Long and Conducted at Arms-Length.

The proposed Settlement Agreement was reached after intense and months-long arms-length negotiations. The Parties participated[6] in an all-day mediation before William Baten on September 1, 2020. After the mediation, the Parties continued discussing the possibility of settlement and structure and terms of a potential settlement for several months.  During the

---

[6] Due to COVID19 protocols, the parties participated in the mediation via video conferencing.

negotiations, the Parties discussed various forms of relief for Class Members, including cash payments and credits for those class members who had negative account balances with NextGear. The Parties reached an agreement in principle on the terms of the settlement on November 20, 2020.

Even after the principal terms of the settlement were agreed upon, for months the Parties continued negotiations over other terms, including the precise language of the pro-rata settlement calculation, the terms of the release, and notice provisions, among others. Plaintiffs and NextGear confirmed to this Court April 8, 2021 that they had reached an agreement, and they started executing the Settlement Agreement on April 9, 2021.

## II.     SUMMARY OF SETTLEMENT TERMS.

### A.  Class Definition and Settlement Sums.

The Settlement Agreement encompasses all class members' claims as certified by the Court, with the added language excluding any class members that opted out during the Court's previously ordered opt out period. *See* (Filing No. 315 at 34-35); (Filing No. 326). The class definitions are:

> All used car dealers in the United States of America that were parties to a Floorplan Agreement with DSC, n/k/a NextGear, effective during the time period of January 2005 through July 2013, and that floor planned one or more vehicles with DSC/NextGear under such agreement, excluding any dealer that signed an agreement containing an arbitration or class action waiver provision. The Class excludes those putative class members who opted out of the Class prior to June 26, 2020

> and

> all California used car dealers that were parties to a Floorplan Agreement with DSC, n/k/a NextGear, effective during the time period of January 2005 through July 2013, which Floorplan Agreement requires the application of California law, and that floor planned one or more vehicles with DSC/NextGear under such agreement, excluding any dealer that signed an agreement containing an arbitration

or class action waiver provision. The California Subclass excludes those putative class members who opted out of the Class prior to June 26, 2020.

Under the Settlement Agreement, NextGear agrees to pay a total of six million seven hundred fifty thousand dollars ($6,750,000), inclusive of Class Settlement Notice and Administrative Costs, attorneys' fees, and expenses, comprised of a cash payment of four million two hundred fifty thousand dollars ($4,250,000) and a setoff credit against amounts Class Members owe to NextGear of two million five hundred thousand dollars ($2,500,000) (the "Common Fund"). Settlement Agreement, ¶ 3.1 at p. 6, Ex. 8.  No portion of the Common Fund will revert to NextGear. *Id.* ¶ 3.4 at 9.[7]

### B.  NextGear's Withdrawal Rights.

Because the Court-ordered opt out period expired on June 26, 2020, the Parties request that the Court disallow any additional opt out period. If the Court does choose to allow another opt out period, and if 20 or more Class Members elect to opt out, NextGear reserves the right to withdraw from the Settlement Agreement. *Id.* ¶ 10.1.1 at 17. NextGear also reserves the right to withdraw from the settlement if five or more substantive objections to the Settlement are submitted by Class Members during the Court approval process.  *Id.* ¶ 10.1.2.

### C.  The Parties Negotiated for Multiple Forms of Class Notice.

Class Members will receive notices that explain in plain language the claims asserted in this case, the amount the Class Member will receive, and the procedure for objecting to the settlement. *See id.* Ex. A. Notices will be mailed to each Class Member within 30 days after entry of the Preliminary Approval Order by first-class U.S. Mail to the address used in the April 2020 Notice or any updated address discovered through a search by the Settlement Administrator for

---

[7] Capitalized terms not defined herein are as defined in the Settlement Agreement.

those names and addresses from whom class notice was returned between April 2020 and June 2020. *Id.* ¶ 6.2 at 11. In addition, within 30 days after entry of the Preliminary Approval Order, a copy of the Class Settlement Notice in .pdf format will be sent by email to those Class Members as to which NextGear provided email addresses from its records in December 2017; a summary of the Class Settlement Notice will be published in the Wall Street Journal once; the Class Settlement Notice will be posted to the existing class informational website; and a toll-free hotline set up to answer questions regarding this Settlement Agreement will be staffed from 8:00 a.m. until 5:00 p.m. (Central Time) during business days, and will maintain a voice messaging service so that messages can be left after business hours and returned by the toll-free hotline staff within 24 hours of having left the message. *Id.*

### D.  The Proposed Plan of Allocation Is a Principled, Fair, and Reasonable Means to Compensate Class Members.

Under the proposed Plan of Allocation, the Settlement Administrator will distribute the Net Settlement Fund (*i.e.,* $4.25 million minus Court-approved fees and expenses), in two distributions. *Id.* ¶ 3.1 at 6. For deceased Class Members, the Class Member's estate shall be the presumptive legal successor in interest. *Id.* ¶ 2.7 at 4. The proposed Plan of Allocation represents a principled, fair, and reasonable means to compensate the Class Members. The Common Fund will be allocated pro rata per the damages model developed by Plaintiffs' expert in this case.

### 1.  Plaintiffs' expert used NextGear's transactional data to create a damages model.

After an exhaustive review of NextGear's discovery responses and the transactional data NextGear produced in discovery, Plaintiffs' expert Jay Cunningham, a CPA with Katz, Sapper & Miller in Indianapolis, Indiana created a spreadsheet revealing the timing differential between when NextGear began assessing Plaintiff Class Members accrued interest — called the

FlooringDate in the Database — and when NextGear advanced the loan funds to the third party for the purchase of a vehicle — called the LastDisbursementDate in the Database.  (Exs. B-1 and B-2 will be filed under seal). *See also*, Declaration of Jay Cunningham, attached hereto as Exhibit 1, "Cunningham Decl."). Mr. Cunningham calculated Plaintiffs' Accrued Interest Overcharges by computing interest on a per diem basis. *Id*. Mr. Cunningham then calculated each Class Member's respective accrued interest overcharges by multiplying the per diem interest calculation by the number of days between when NextGear began assessing Plaintiff Class Members accrued interest and when NextGear advanced the loan funds to the third party for the purchase of a vehicle. Mr. Cunningham also used this model to calculate prejudgment interest for the Class. *Id*.

**2.   Class Members will receive pro rata compensation from the common fund.**

For Class Members entitled to receive a cash payment under the Settlement Agreement, the amount to be paid to each Class Member shall be calculated by dividing the Net Settlement Fund by the sum of the Net Damages Claims for all Class Members entitled to receive a cash payment. Settlement Agreement, ¶ 3.2.1 at 7. The resulting percentage shall then be multiplied by a particular Class Member's Net Damages Claim to arrive at the amount of that Class Member's cash payment. A list of Class Members entitled to a cash payment, and the estimated amount of said payment (subject to Court approval of the fees and costs), is set forth in Exhibit B-1 to the Settlement Agreement. Any Class Member who would be entitled to receive less than $6.00 pursuant to the calculation in ¶ 3.2.1 shall not receive any cash payment, as the cost of processing payment to those Class Members would exceed the amount of their payment. *Id*. ¶ 3.2.2 at 7.

For Class Members entitled to receive a credit allocation, the amount to be credited to each Class Member's account shall be calculated by dividing the setoff credit component of the Common Fund by the sum of the Setoff Amount for all Class Members who have outstanding

obligations to NextGear. *Id*. ¶ at 3.2.2. The resulting percentage shall then be multiplied by a particular Class Member's Setoff Amount to arrive at the amount of that Class Member's credit allocation. *Id*. A list of Class Members entitled to a credit allocation, and the amount of said credit, is set forth in Exhibit B-2 to the Settlement Agreement.  In Mr. Cunningham's expert opinion, "the Plan of Allocation provides equivalent benefits to all Class Members." Cunningham Decl. ¶ 17.

### 3.   The allocation plan has two distributions.

In the Initial Distribution, the Settlement Administrator will distribute the cash payments to Class Members entitled to receive such payments in accordance with the Allocation Plan within 45 days after Final Approval, or within 45 days of receiving a W-9 Form from the Class Member if required, whichever occurs later.  Ex. 8, Settlement Agreement, ¶ 3.1.3 at 7.  After the Initial Distribution is complete, 210 days after the first mailing of distribution checks, the Settlement Administrator shall determine the remaining value of the Common Fund. *Id*. ¶ 3.3.6 at 8. A second distribution shall be made to the Class Members who cashed their first distribution checks, and the amount to be distributed shall be determined by (a) dividing the cash component of the remaining Net Settlement Fund by the sum of the Net Damages Claims for all Class Members who cashed the first distribution check; and (b) multiplying the resulting percentage by a particular Class Member's Net Damages Claim to arrive at the amount of that Class Member's second cash payment. *Id*. The second round of cash payments shall be handled in the same manner as the first round of cash payments. *Id*. No Class Member can receive more than 100% of its damages. *Id*.

Within 21 days after Final Approval, NextGear will record the $2,500,000 in setoff credits against the accounts of Class Members entitled to receive such setoff credits in NextGear's internal accounting records in accordance with the Allocation Plan. *Id*. 3.1.4 at 7.

Finally, any portion of the Common Fund that remains unclaimed after the Second Distribution will be used to fund a *cy pres* award to the Indiana Bar Foundation, because the State of Indiana has a strong connection to this case. Indiana is the chosen forum and Indiana law (except for the California subclass) was the chosen law in the Floorplan Agreement. Alternatively, the Court may exercise its discretion to designate another *cy pres* recipient. *Id*. ¶ 3.4 at 9.

### E.  Release of Claims.

Once the settlement becomes final and NextGear funds the Common Fund, Plaintiffs and Class Members will release any and all claims against NextGear (and certain related persons and entities) based on the Floorplan Agreements. The details of the release are contained in Article 8 of the Settlement Agreement. *See id*. Art. 8 at p. 15-16.

### F.  Fees and Expenses Sought Are Reasonable and Appropriate.

No attorneys' fees, or expenses will be distributed out of the Common Fund without the Court's approval. The class representative awards will be funded separately from the Common Fund. The proposed Settlement Agreement provides that Plaintiffs may seek an award for attorneys' fees, litigation costs, and Settlement Administrator Fees. *See id*. Art. 9 at p. 16-17. Plaintiffs are seeking an attorneys' fee payable to Class Counsel in a total amount that shall not exceed $2,250,000 (which is one-third of the Common Fund) and an award of costs and expenses of counsel in an amount that shall not exceed $300,000.  *Id*. at ¶ 9.2. In addition, Plaintiffs are seeking payment of the reasonable and necessary Class Settlement Notice and Administrative Costs, which shall not exceed $400,000 from the Common Fund, $50,000 of which shall be pre-paid by NextGear within ten (10) days after entry of the Preliminary Approval Order.  *Id*. at ¶ 9.4.

## III.    ARGUMENT

### A.  The Proposed Settlement Is Fair, Adequate, and Reasonable.

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *see also Uhl v. Thoroughbred Tech. & Telecommunications, Inc*., 309 F.3d 978, 986 (7th Cir. 2002). Preliminary approval of a proposed class action settlement "is the first step in a two-step process to determine whether a proposed Rule 23 settlement is fair, adequate, reasonable, and not a product of collusion." *Butler v. Am. Cable & Tel., LLC,* No. 09-5336, 2011 WL 4729789, at *9 (N.D. Ill. Oct. 6, 2011). The result of granting preliminary approval is an order directing notice of the proposed settlement class, not the finalization of the settlement. *See* Fed. R. Civ. P. 23(e)(1)(B); *McCue v. MB Fin., Inc*., No. 1:15-CV-00988, 2015 WL 1020348, at *1 (N.D. Ill. Mar. 6, 2015). Thus, at this stage Plaintiffs need only show that final approval is likely, not that it is certain. *See* Fed. R. Civ. P. 23(e)(1)(B). At the preliminary approval stage, the parties must show only that the proposed settlement is "within the range of possible approval." *In re General Motors Corp. Engine Interchange Litig*., 594 F.2d 1106, 1124 (7th Cir. 1979); *see also In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig*., 314 F.R.D. 580, 588 (N.D. Ill. 2016) (same). "This bar is low." *In re Bromine Antitrust Litig*., 203 F.R.D. 403, 416 (S.D. Ind. 2001). "After the notice period, the Court will be able to evaluate the settlement with the benefit of the class members' input." *McCue*, 2015 WL 1020348, at *1.

Preliminary (and final) settlement approval is governed by Federal Rules that came into effect in December 2018, but that "essentially codified [the] prior practice" of courts. William B. Rubenstein, et al., Newberg on Class Actions § 13:13 (5th ed.) ("Newberg"). Case law applying the pre-2018 version of Rule 23 therefore remains relevant to the determination of preliminary approval of a proposed settlement. *See Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461,

14

2019 WL 2103379, at *5 (N.D. Ill. May 14, 2019) ("The six factors identified by the Seventh Circuit in *Wong v. Accretive Health, Inc*., 773 F.3d 859, 863-64 (2014), and numerous other cases subsume most of the factors listed in Rule 23(e)(2)."); *Hale v. State Farm Mut. Auto. Ins. Co*., No. 12-0660, 2018 WL 6606079 at *2 (S.D. Ill. Dec. 16, 2018) (the amended Rule 23 "considerations overlap with the factors previously articulated by the Seventh Circuit").

Rule 23(e)(1)(A) requires parties seeking preliminary approval of a proposed class action settlement to provide information sufficient to enable the Court "to determine whether to give notice of the proposal to the class." The parties must demonstrate that notice is "justified by the parties' showing that the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B) (emphasis added). Rule 23(e)(2) sets forth a list of factors that courts must consider in order to determine that the proposed settlement is "fair, reasonable, and adequate." Courts must consider whether:

    (A)    the class representatives and class counsel have adequately represented the class;

    (B)    the proposal was negotiated at arm's length;

    (C)    the proposal treats class members equitably relative to each other; and

    (D)    the relief provided by the settlement is adequate, taking into consideration:

        (i)    the costs, risks, and delay of trial and appeal;

        (ii)    the effectiveness of the proposed method of distributing relief;

        (iii)    the terms of any proposed award of attorneys' fees;

        (iv)    any agreements made in connection with the proposed settlement. Fed. R. Civ. P. 23(e)(2).

These elements are discussed in turn below, and the result should be a finding that the proposed settlement is "fair, adequate, and reasonable."

**B.  Class Representatives and Class Counsel Have Adequately Represented the Class.**

In evaluating a class action settlement, courts must consider whether the class representatives and class counsel have adequately represented the class. Here, the class representatives have adequately represented the class. Class representatives have participated in this litigation and been available to counsel. A corporate representative of each class representative was deposed, each class representative responded to discovery requests, and other fact witnesses of the class representatives were deposed. *See* Declaration of James M. Garner, ¶ 5, attached hereto as Exhibit 2.  In addition, Class Counsel have adequately represented the class. Class Counsel have vigorously prosecuted this case for more than seven years. Class Counsel have represented the Class's interests through two rounds of motions to dismiss, an appeal to the Seventh Circuit Court of Appeal, motions for summary judgment, multiple motions regarding class certification issues, and extensive discovery and discovery-related motions. Together, Class Counsel have invested hundreds of thousands of dollars in litigation expenses and thousands of hours of attorney and paraprofessional time. *Id. See also* Declarations of Lynn Swanson, Kathleen Delaney, Kerry Murphy, and Cassie Felder, attached hereto as Exhibits 3, 4, 5 and 6.  ¶

**C.  The Settlement Agreement Was Negotiated at Arm's Length.**

In evaluating a class action settlement, courts must consider whether it was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). This case could not be further from the "product of collusion" that gives rise to this concern. *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 279 (7th Cir. 2002). First, the Settlement Agreement is the product of years of litigation, not the type of quick settlement that sometimes raises concerns about collusion. *See Vasquez v. Coast Valley*

*Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010) ("By the time the settlement was reached, the litigation had proceeded to a point in which both plaintiffs and defendants had a clear view of the strengths and weaknesses of their cases."). The parties have litigated most of the issues in the case and the Court has narrowed the class, the causes of action, and the number of defendants.

Second, the participation of an experienced mediator in the settlement negotiations "reinforces that the Settlement Agreement is non-collusive." *Johnson v. Brennan*, 2011 WL 1872405, at *1 (S.D.N.Y. May 17, 2011). Here, the Parties participated in day-long mediation with a highly qualified neutral mediator, and even then negotiated for months afterward before reaching an agreement in principle. *See* Ex. 2, Garner Decl., ¶ 9-10. *See also* Declarations of Lynn Swanson, Kathleen Delaney, Kerry Murphy, and Cassie Felder, attached hereto as Exhibits 3, 4, 5 and 6. The Parties continued to negotiate for months after that over the fine print of the settlement. *Id*. "A strong presumption of fairness attaches to a settlement agreement when it is the result of this type of negotiation." *Great Neck Capital Appreciation Inv. P 'ship, L.P. v. PricewaterhouseCoopers*, L.L.P., 212 F.R.D. 400, 410 (E.D. Wis. 2002) (discussing settlement negotiations with "an experienced mediator" and over "several telephone conferences"); *see also Wong*, 773 F.3d at 864 ("Finally, and importantly, the settlement was proposed by an experienced third-party mediator after an arm's-length negotiation where the parties' positions on liability and damages were extensively briefed and debated").

Third, the terms of the Settlement Agreement itself reinforce its non-collusive nature. The consideration to be paid by NextGear is significant. The credit component of the Settlement Agreement is based upon a highly-litigated issue by means of which the Court recognized that NextGear's right to set off "may reduce the amount of any liability to the Plaintiffs in the event that the Plaintiffs are successful on their claim." (Filing No. 262 at 33). No unclaimed funds will

revert to NextGear. *See Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 785 (7th Cir. 2004) ("reversion of unclaimed refunds to the putative wrongdoer" is indicative of collusion). Class Counsel's proposed fees are well within the reasonable range. *See Ormond v. Anthem, Inc.*, No. 1:05-CV-01908-TWP, 2012 WL 5878031, at *5 (S.D. Ind. Nov. 20, 2012) (collecting cases in which courts have approved "a percentage market rate of 33.3%"). *See also*, *Burnett v. Conseco Life Ins. Co.*, 2021 WL 119205, at *10 (S.D. Ind. Jan. 13, 2021)(approving 1/3 legal fees in class action).

## D. The Relief Provided for the Class Is Based on a Pro Rata Formula and Is Substantial and Appropriate.

As discussed extensively in Section II(D), *supra*, the proposed settlement is based upon a pro rata formula. The $6.75 million settlement amount is an excellent result for the class. The settlement amount is over 70% of the $9,539,118.92 in interest Plaintiffs' expert calculated NextGear overcharged. It affords Class Members immediate relief in the form of a cash payment or credits toward negative account balances. *See Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 201 (S.D. N.Y. 2012) ("immediate payment of substantial amounts to Class Members," supports final approval "even if it means sacrificing speculative payment of a hypothetically larger amount years down the road") (quotation marks omitted). While the *pro rata* settlement amounts are necessarily reflective of the number of transactions a class member had, over a quarter of Class Members receiving a cash payment will receive more than $100.00, and the highest cash payment amount is almost $6,400.00. *See* Settlement Agreement, Ex. B-1 (to be filed under seal). Over half of the Class Members receiving a credit will receive more than $100.00, and the highest credit

amount is over $16,000.00.  *Id.* at Ex. B-2. Some Class Members, will receive both a credit and a cash payment as set forth in Exhibits B-1 and B-2.[8]

Of the 17,208 Class Members, 10,405 Class Members do not have a negative balance with NextGear. NextGear claims that the remaining Class Members have a negative account balance with NextGear. The Class Members that NextGear claims have a negative account balance on average have overcharged interest damage claims approximately 28% higher than those Class Members receiving a cash payment.[9] *See also*, Ex. 1, Cunningham Decl., ¶ 16. Thus, while the Class Members receiving a credit are recovering at a higher percentage than the Class Members that are receiving a cash payment, because the Class Members receiving a credit payment have on average higher damage claims, in Mr. Cunningham's expert opinion, the Plan of Allocation provides equivalent benefits to all Class Members. *Id.* at ¶ 16-17. The proposed settlement is undoubtedly within the "range of possible approval." *General Motors*, 594 F.2d at 1124 (7th Cir. 1979).

Furthermore, the *cy pres* relief will be used only for the small portion of the Common Fund, if any, that remains unclaimed after multiple distributions to Class Members. The use of a *cy pres* award is appropriate in these circumstances. *See* American Law Institute, Principles of the Law of Aggregate Litigation § 3.07 (2010) (endorsing this approach); *Aranda v. Caribbean Cruise Line, Inc.*, No. 12 C 4069, 2017 WL 818854, at *5 (N.D. Ill. Mar. 2, 2017), *aff'd*, 896 F.3d 792 (7th Cir. 2018) (rejecting objections to *cy pres* award for unclaimed funds after multiple distributions). The Indiana Bar Foundation is an appropriate proposed *cy pres* recipient because Indiana was the

---

[8] The recoveries for Class Members receiving both a credit and cash payment are listed in twice, once in Exhibit B-1 for their cash payment and once in Exhibit B2 for their credit.

[9] 6,803 Class Members with negative account balances have total interest overcharges of $4,537,835.56, equaling an average damage claim of $667.03. 10,405 Class Members receiving a cash payment have total interest overcharges in the sum of $5,001,283.36, for an average damage claim of $480.66, or 27.9% less than then Class Members with negative account balances.

contractually chosen forum for the class and Indiana law, with the exception of the California subclass, is the contractually chosen law for the class. The Court may also exercise its discretion to choose a different *cy pres* recipient if it so wishes.

### 1. Trial and Appeal Would Present Significant Costs, Risk, and Delay.

Rule 23(e)(2) may require courts "to forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment. "[T]he essence of a settlement is compromise an[d] abandonment of the usual total-win versus total-loss philosophy of litigation in favor of a solution somewhere between the two extremes." *Armstrong v. Board of School Dir. of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) (abrogated on other grounds) (citations omitted).

While Plaintiffs are confident in their claims against NextGear and their ability ultimately to prevail at trial, inherent risk exists in continuing to litigate this action. The Court has narrowed the case to a breach of contract case and ruled on the nature of the evidence it will consider regarding the ambiguities of the Floorplan Agreement. Significant risk exists that the Court would rule completely in favor of one party or the other. Further, Plaintiffs anticipate that, even if they prevail at trial, NextGear would appeal any ruling of the Court. Such proceedings would add significant costs and delays to this already-lengthy litigation.

Given the potential costs, risks, and delay of trial and appeal, the proposed settlement presents a favorable result for the Class.

### 2. The Proposed Method for Distributing Relief is Simple and Effective.

This Rule 23(e)(2) factor requires courts to look at "the method of processing class-member claims." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 40 (E.D.N.Y. 2019) (citing Fed. R. Civ. P. 23(e)(2)(C)(ii). "A claims processing method should deter

or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Id*. at 40 (citing Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment). Here, the Settlement Agreement does not require a demand from Class Members and their successors; the Common Fund will be distributed without the need for anyone to submit a claim form.

The plan for distributing relief is straightforward. There is no dispute about who is a member of the Class or the calculation of each Class Member's recovery under the proposed settlement. Both are determined using objective facts about the value of Class Members' transactions based on data found in NextGear's own records. Plaintiffs have engaged Donlin Recano, a company that specializes in claims administration, to conduct the notice and distribution processes. *See* Declaration of Nellwyn ("Voorhies Declaration"), ¶¶1-3, attached hereto as Ex. 7. Over 30 years, Donlin Recano has provided notice to millions of class members and has administered billions of dollars in claims. *Id*. at ¶ 3. Further, Donlin Recano is intimately familiar with this Class as it sent the notice of class certification in April 2020. *Id*. at ¶ 1.

### 3. The Proposed Attorneys' Fee Award Is Reasonable and Fair.

"The Seventh Circuit Court of Appeals uses a percentage basis rather than a lodestar or other basis when determining a reasonable fee." *Will*, 2010 WL 4818174, at *2 (*citing Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir.1998); *Florin v. Nationsbank of Georgia, NA*., 34 F.3d 560, 566 (7th Cir. 1994)); *see also Cooper v. IBM Pers. Pension Plan*, No. 99-829-GPM, 2005 WL 1981501, at *3 (S.D. Ill. Aug. 16, 2005), *reversed and remanded on other grounds*, 457 F.3d 636 (7th Cir. 2006) ("The approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred on the class."). Class Counsel is seeking $2.25 million in fees, or one-third of the Common Fund. As detailed in Plaintiffs' Motion for Attorneys' Fees, Expenses,

and Representative Plaintiffs' Incentive Awards, one-third of a common fund is a standard rate in complex class actions that reflects the risk that counsel takes on by accepting a case that may yield no fee at all. *See Ormond*, 2012 WL 5878031, at *5 (collecting cases in which courts have supported "a percentage market rate of 33.3%" when granting attorneys' fees). *See also*, *Burnett v. Conseco Life Ins. Co.*, 2021 WL 119205, at *10 (S.D. Ind. Jan. 13, 2021)(approving 1/3 legal fees in class action).

Class Counsel have further agreed to cap the costs they are seeking reimbursement for to the sum of $300,000. Ex. 2, Garner Decl., ¶ 10.  Any expenses above $300,000.00 will be borne by Class Counsel. *Id*. Given the complexity of the case and the positive results for the Class, such an award is reasonable and fair.

### 4. There Are No Other Agreements to Be Identified under Rule 23(e)(3) Aside from the Settlement Agreement.

Rule 23(e)(3) requires the parties seeking preliminary approval of a class action settlement to "file a statement identifying any agreement made in connection with the proposal." Plaintiffs have attached to the Voorhies Declaration the agreement between Class Counsel and Donlin Recano regarding administration of the settlement. Plaintiffs are not parties to, and are not aware of, any other agreement to be identified under Rule 23(e)(3).

### E. The Proposed Settlement Agreement Apportions Settlement Funds Equitably Among Class Members.

A district court's "principal obligation" in approving a plan of allocation "is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund." *Sullivan v. DB Investments, Inc*., 667 F.3d 273, 326 (3d Cir.2011); *In re HealthSouth Corp. Sec. Litig*., 334 Fed.Appx. 248, 251 (11th Cir. 2009) ("The district court determined that the Plan of Allocation was fair."). An allocation plan has to fair and the district court will be reviewed under an abuse of

discretion standard. *See In re Holocaust Victim Assets Litig*., 14 Fed. Appx. 132, 134 (2d Cir. 2001).

If a plan of allocation is "formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis in order to be fair and reasonable. *In re IMAX Sec. Litig*., 283 F.R.D. 178, 192 (S.D.N.Y. 2012). *See also*, *Kolinek v. Walgreen Co*., 311 F.R.D. 483, 493 (N.D. Ill.2015) (pro rata distribution). Here, all Class Counsel have filed Declarations recommending the proposed plan of allocation. *See* Exs. 2-6, Declarations of James M. Garner, Lynn Swanson, Kathleen Delaney, Kerry Murphy, and Cassie Felder.  A plan of allocation "carefully devised to ensure a fair distribution of the settlement fund," and "creating a structure for ensuring that reimbursement tied to the extent of damages incurred" is fair and reasonable. *Sullivan*, 667 F.3d at 326.

Based on Jay Cunningham's damages model, each Class Member or the Class Member's successor will receive a pro rata share of NextGear's accrued interest overcharges. Plaintiffs have maintained throughout this litigation that Mr. Cunningham's model is the appropriate method for apportioning damages. *See supra* at 9-10. In Mr. Cunningham's expert opinion, "the Plan of Allocation provides equivalent benefits to all Class Members." Cunningham Decl., ¶ 17.

The Settlement Agreement's distribution plan ensures that the Settlement Administrator will make reasonable efforts to locate Class Members and their successors and/or beneficiaries in order to distribute their portions of the Common Fund in an Initial Distribution. Furthermore, after the Settlement Administrator has done so, the Settlement Administrator will disburse remaining Net Settlement Funds to the Class Members and successors who deposited their initial distributions. Only the small amount remaining in the custody of the Settlement Administrator after that second distribution, if any, will be distributed by the Settlement Administrator to a *cy*

23

*pres* recipient approved by this Court. *See supra* at 12.  The proposed Settlement Administrator has also declared that "[b]ased on my personal experience and the experience of Donlin Recano, the Plan of Allocation sets forth an effective and practical manner of making the Initial Distribution and Second Distribution." Voorhies Declaration, ¶ 5, Ex. 7.

**IV.   The Court Should Approve the Proposed Notice Plan Because It Provides the Best Notice Practicable and Is Easily Understood.**

Under Federal Rule of Civil Procedure 23, for classes certified under "Rule 23(b)(3)… the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." When class members' names and addresses are known or knowable with reasonable effort, notice can be accomplished by first-class mail. *See, e.g.*, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174–75, 94 S. Ct. 2140, 40 L.Ed.2d 732 (1974). When that is not possible, courts may use alternative means such as notice through third parties, paid advertising, and/or posting in places frequented by class members, all without offending due process. *See Hughes v. Kore of Indiana Enterprise, Inc.*, 731 F.3d 672, 676–77 (7th Cir.2013). As long as the alternative means satisfy the standard of Rule 23(b)(3), there is no due process violation. *See, e.g.*, *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 665–66 (7th Cir. 2015).

In *Hughes v. Kore of Indiana Enterprise, Inc*., 731 F.3d 672, 676–77 (7th Cir. 2013), each plaintiff's claim was valued at approximately $1,000 or less, the court approved a notice plan consisting of sticker notices on the defendant's two ATMs, publication of a notice in the primary local newspaper, and notice on a website. The Court did not insist on first-class mail even though the notice plan likely would not reach everyone in the class. The notice was approved because the

notice plan was "commensurate with the stakes." *Id*. at 676. The Settlement Agreement's proposed notice plan satisfies this standard.

The proposed notice plan is calculated to reach as many class members as possible. Notice will be sent to all Class Members by first-class mail where mail was received during the April 2020 notice mailing. The Settlement Administrator will use NextGear's internal records of Class Members' last known addresses, and will use other databases to confirm addresses. Further, the Class Settlement Notice will be emailed to the email addresses NextGear provided during discovery. Additionally, a summary of the Class Settlement Notice will be published in the Wall Street Journal once; posted to the class settlement website; and a toll-free hotline to answer questions regarding this Settlement Agreement will be staffed from 8:00 a.m. until 5:00 p.m. (Central Time) during business days and will maintain a voice messaging service so that messages can be left after business hours and returned within 24 hours of having left the message. *See supra* p. 9. The plan is calculated to reach as many class members as possible, and thus satisfies Federal Rule of Civil Procedure 23(b)(3). The proposed Settlement Administrator has also declared that "[b]ased on my personal experience and the experience of Donlin Recano, the Class Notice Plan sets forth the 'best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort'" as set forth in the Federal Rules of Civil Procedure. Voorhies Declaration, ¶ 4, Ex. 7.

## V. Proposed Schedule of Events

Plaintiffs propose the following schedule for Class notice, objections, and final approval of the proposed Settlement Agreement:

| Event | Deadline |
|---|---|
| Send Settlement notice to Class Members | 30 days after preliminary approval |
| Serve CAFA Notices | 10 days after the motion for preliminary approval |
| File motion for final approval | 30 days before Final Approval Hearing |
| Deadline for objections | Earlier of 90 days after the Preliminary Approval Order or 28 days before the Final Approval Hearing |
| Reply in support of motion for final approval | 10 days before Final Approval Hearing |
| Final Approval Hearing | No earlier than 90 days after the CAFA Notices are served |

## CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully ask this Court pursuant to Fed. R. Civ. P. 23 for an Order: (1) granting preliminary approval of the proposed Settlement Agreement with Defendant NextGear Capital, Inc., formerly known as Dealer Services Corporation, ("NextGear"); (2) preliminarily appointing Donlin Recano as Settlement Administrator; (3) directing notice to all class members who would be bound by the Settlement Agreement; (4) preliminarily approving the terms of the Settlement as likely approvable under Fed. R. Civ. P. 23(e)(1)(B); (5) approving the Notice Plan set forth herein and approving the form and content of the proposed Class Settlement Notice and the CAFA Notice; (6) staying all proceedings in the litigation unrelated to the Settlement Agreement pending Final Approval of the Settlement; (7) staying and/or enjoining, pending Final Approval of the Settlement Agreement, any actions brought by Class Members concerning a claim that is released under the Settlement Agreement; (8) authorizing the pre-payment of $50,000 of the estimated Settlement Administrator's costs within ten (10) days of the Preliminary Approval Order and granting a request by the Parties to

26

authorize the Settlement Administrator to perform a search for those names and addresses from whom class notice was returned between April 2020 and June 2020; and (9) scheduling a Final Approval Hearing for a time and date convenient for the Court that is not less than 90 days after service of the last CAFA Notice, at which hearing the Court will conduct an inquiry into the fairness of the Settlement, determine whether it was made in good faith and should be finally approved, and determine whether to approve Class Counsel's application for attorneys' fees, costs, and expenses.

Respectfully submitted, this 2nd day of June, 2021.

    s/James M. Garner
James M. Garner (*pro hac vice*)
Ryan D. Adams (*pro hac vice*)
Jacob A. Airey (*pro hac vice*)
SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C.
909 Poydras Street, Suite 2800
New Orleans, Louisiana  70112
Telephone: (504) 299-2100
Facsimile: (504) 299-2300
jgarner@shergarner.com
radams@shergarner.com
jairey@shergarner.com

Gladstone N. Jones, III (*pro hac vice*)
Lynn E. Swanson (*pro hac vice*)
JONES SWANSON HUDDELL & DASCHBACH LLC
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
Telephone: (504) 523-2500
Facsimile: (504) 523-2508
gjones@jonesswanson.com
lswanson@jonesswanson.com

Kerry A. Murphy (*pro hac vice*)
KERRY MURPHY LAW LLC
715 Girod Street, Suite 250
New Orleans, LA 70130
Telephone: (504) 603-1502
Facsimile: (504) 603-1503
kmurphy@kerrymurphylaw.com

Kathleen A. DeLaney (#18604-49)
DELANEY & DELANEY LLC
3646 North Washington Blvd.
Indianapolis, IN 46205
Telephone: (317) 920-0400
Facsimile: (317) 0404
Kathleen@delaneylaw.net

Cassie E. Felder (*pro hac vice*)
THE CASSIE FELDER LAW FIRM
7515 Jefferson Hwy., #313
Baton Rouge, LA 70806
Main: (504) 232-1733
Cell: (504) 400-1127
cassie@cassiefelderlaw.com

**Attorneys for Plaintiffs and the Class**