# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| RED BARN MOTORS, INC., PLATINUM MOTORS, INC., and MATTINGLY AUTO SALES, INC., individually and on behalf of other members of the general public similarly situated, )<br><br>Plaintiffs, )<br><br>v. )<br><br>NEXTGEAR CAPITAL, INC. f/k/a DEALER SERVICES CORPORATION, )<br><br>Defendant. ) | Case No. 1:14-cv-01589-TWP-DLP |

## DECLARATION OF JAY CUNNINGHAM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

I. INTRODUCTION

1. My name is Jay Cunningham. I am a Director of KSM Business Services, Inc.'s ("KSM") Litigation Services practice and have more than 17 years of accounting and finance experience as a consultant in litigation, investigative and other business dispute matters. Prior to joining KSM, I was employed at the international consulting and accounting firms of FTI Consulting and KPMG LLP. I am a Certified Public Accountant (CPA), Certified in Financial Forensics, Master Analyst in Financial Forensics, and a Certified Valuation Analyst and a member of the American Institute of Certified Public Accountants, the Indiana Society of Certified Public Accountants and the National Association of Certified Valuation Analysts. I am a licensed CPA in Indiana (license CP10700024). I earned my Bachelor of Science degree in Accounting and my Master's degree in Professional Accountancy from Murray State University. I have included a copy of my curriculum vitae, as Exhibit 1 to this Declaration.

2. I have been retained by Plaintiffs' counsel in the above-captioned matter, to calculate the damages to the Class, which I did in my report dated September 30, 2020 and to calculate the amounts of the Initial Distribution pursuant to the Settlement Agreement and Release between Plaintiffs and NextGear Capital, Inc. ("NextGear"), f/k/a Dealer Services Corporation.

EXHIBIT 1

II. BACKGROUND

3. On January 10, 2017, I issued an expert report (the "2017 Report") to calculate the economic damages sustained by the Named Plaintiffs in this matter. Because class certification has since been granted by the Court, the number of plaintiffs has expanded significantly to comprise the Plaintiff Class Members. As such, I produced another report on September 30, 2020 to supersede any conclusions or opinions within the 2017 Report.

4. Defendant NextGear Capital, Inc., f/k/a Dealer Services Corporation ("NextGear") is an automotive financing company which provides revolving line-of-credit financing (termed "Floorplan Agreements" in the industry) to used car dealers throughout the United States. Used car dealers utilize these Floorplan Agreements s to purchase vehicle inventory, which then is placed on their used car dealership lots for sale and, ultimately, resold.

III. The Nature of the Dispute

5. When used car dealers buy vehicles at auction by means of a Floorplan Agreement, the automotive financing company lends the money to pay the auction house for the purchase of the vehicle, and that loan is generally paid back to the automotive financing company after the vehicle is sold by the used car dealer to a customer. Each of the Named Plaintiffs entered into a Floorplan Agreement with NextGear in the form of a Demand Promissory Note and Security Agreement:
   a. On or about July 29, 2011, Red Barn and NextGear entered into a Demand Promissory Note and Security Agreement in the principal sum of $200,000.00, together with interest payable and other charges as stated in the Red Barn Note. In turn, Red Barn utilized a Floorplan Agreement as needed with NextGear to purchase vehicles at auction in order to sell them at the Red Barn used car lot.

   b. Similarly, Platinum Motors and NextGear entered into a Demand Promissory Note and Security Agreement in the principal sum of $35,000.00, together with interest payable and other charges as stated in the Platinum Motors Note. In turn, Platinum Motors utilized a Floorplan Agreement as needed with NextGear/DSC to purchase vehicles at auction in order to sell them at the Platinum Motors used car lot.

   c. Similarly, Mattingly Auto and NextGear entered into a Demand Promissory Note and Security Agreement in the principal sum of $100,000.00, together with interest payable and other charges as stated in the Mattingly Auto Note. In turn, Mattingly Auto utilized a Floorplan Agreement as needed with NextGear to purchase vehicles at auction in order to sell them at the Mattingly Auto used car lot.

6. As the Court explained on page 5 of the Order on Motions for Summary Judgment, "NextGear began charging interest to the Plaintiffs on the 'flooring date' (the date when the Plaintiffs used the floor plan agreement to obtain a vehicle), typically the date of an auction. NextGear's account transaction documents provide a 'total for' date, which is the

date that NextGear actually sent cash to the seller on the Plaintiffs' behalf. The 'total for' date sometimes occurred a period of time after the 'flooring date;' in other words, NextGear sometimes did not pay an auction on behalf of the Plaintiffs on the date of the auction, but it would start charging interest to the Plaintiffs on the date of the auction... There is no dispute [NextGear] charges interest beginning on the floorplan date and that there are some times and some transactions a time period between when NextGear begins charging interest to the dealers and when they pay the auction for the car."

7. Plaintiff Class Members allege that that NextGear's actions of charging interest on money not lent (i.e., charging interest before advancing funds) constituted a breach of the Floorplan Agreements.

8. I am in receipt of data files produced by NextGear on July 16, 2020, containing certain historical financing data for each vehicle that the Plaintiff Class Members floorplanned with NextGear (the "Class Member Database"). The Class Member Database consists of two Microsoft Excel files ("Class Member File 1" and "Class Member File 2") which reportedly provide a complete listing of all applicable transactions that Plaintiff Class Members floorplanned with NextGear from January 2005 into January 2017. The Class Member Database was provided in sequential order by NextGear dealer number (field name: "BuyerNumber") followed by a sequential ordering of vehicle stock numbers (field name: "StockNumber") for that dealer.

9. As described above, the Plaintiff Class Members allege — and NextGear does not dispute—that NextGear began assessing interest on the floorplan date, even though there was often a delay before NextGear would advance payments on the Plaintiff Class Members' behalf. As a result, in this litigation, the Plaintiff Class Members seek to recover damages including all interest assessed to the Plaintiff Class Members prior to a payment by NextGear. to a third party on the Plaintiff Class Members' behalf.

10. To illustrate, the Class Member Database reveals the differentials in timing between when NextGear began assessing Plaintiff Class Members accrued interest — the FlooringDate — and when NextGear actually advanced the loan funds for the purchase of a vehicle — the LastDisbursementDate.

11. The calculation of interest accrued on an account is a function of variables including principal loan amount, rate of interest, period of time, and periodic principal loan balance (which is impacted by timing and amount of interest-bearing fees and payments against principal). The Class Member Database does not contain all data points found in NextGear's Discover computer system that NextGear would have used to calculate interest, such as the timing and amounts of certain fees and payments on the accounts and resulting principal balances by day. While the Class Member Database does not provide the extensive dataset needed to perform an exact calculation of Accrued Interest Overcharges, a reliable alternate

3

damages calculation of Accrued Interest Overcharges can be performed by computing interest on a per diem basis.

12. Applying the amount of interest accrued per diem on a given loan to the number of days between flooring date and date of advance provides an interest overcharge on said loan. Such an approach was described by NextGear's Corporate Designee as a "very accurate estimate of that interest." As a result, I have prepared a calculation of Accrued Interest Overcharges to the Plaintiff Class Members by calculating the per diem interest applied against the number of days between the flooring date and the date of advance for all loans.

13. My September 30, 2020 Report describes in detail the methodology used to calculate the tables attached to that report that listed the Accrued Interest Overcharges for each class member.

14. The parties have reached a written settlement (the "Settlement Agreement") and have asked me to calculate the Initial Distribution for the Class Members based on the Settlement Agreement. Relevant terms of the Settlement Agreement for calculating the Initial Distribution are found on pages 4-7:

   a. (Section 3.1). NextGear agrees to pay a total of six million, seven hundred fifty thousand dollars ($6,750,000), inclusive of Class Settlement Notice and Administrative Costs, attorneys' fees, and expenses, comprised of a cash payment of four million, two hundred fifty thousand dollars ($4,250,000) and a setoff credit against amounts Class Members owe to NextGear of two million, five hundred thousand dollars ($2,500,000) (the "Common Fund").
   b. (Section 3.2.) A Class Member who does not have any outstanding obligation to NextGear, or whose Damages Claim exceeds the amount the Class Member owes to NextGear, will receive a cash payment from the Common Fund as described below [Section 3.2.1]. A Class Member who has an outstanding obligation to NextGear will receive a setoff credit allocation as described below [Section 3.2.3].
   c. (Section 9.2). Class Counsel may ask the Court to award attorneys' fees payable to Class Counsel in a total amount that shall not exceed $2,250,000 (which is one-third of the Common Fund) and to award costs and expenses of counsel in an amount that shall not exceed $300,000. Any attorneys' fees, costs, and expenses awarded shall be paid from the Common Fund...
   d. (Section 9.4). Class Counsel will ask the Court to allow payment of the reasonable and necessary Class Settlement Notice and Administrative Costs, which shall not exceed $400,000…
   e. (Section 3.2.2). Any Class Member who would be entitled to receive less than $6.00 pursuant to the calculation in Section 3.2.1 shall not receive any cash payment, as the cost of processing payment to those Class Members would exceed the amount of their payment.

 f. (Section 2.14). "Damages Claim" means the amount by which NextGear allegedly overcharged interest to a Class Member, as calculated in the September 30, 2020 Expert Report of Jay Cunningham, the class damages expert engaged by Class Representatives.

 g. (Section 2.21). "Net Damages Claim" means the amount of a Class Member's Damages Claim, less the amount that Class Member owes to NextGear, as disclosed in the report of write offs produced by NextGear to Class Counsel on May 11, 2020.

 h. (Section 2.22). "Net Settlement Fund" means the cash component of the Common Fund, less attorneys' fees, costs, and expenses awarded to Class Counsel and Class Settlement Notice and Administrative Costs.

 i. (Section 2.31). "Setoff Amount" means the lesser of (a) a Class Member's Damages Claim, or (b) the amount the Class Member owes to NextGear, as disclosed in the report of write offs produced by NextGear to Class Counsel on May 11, 2020.

15. I have complied as lists the Exhibits attached to the Motion for Preliminary Approval of Settlement as B-1 and B-2 setting the Initial Distribution amount for each class member, based on whether they will receive a cash or a credit on their account, with some receiving both. Those Exhibits are based on the following formula derived from the Settlement Agreement and the damage model I created and that has been used throughout this litigation:

 a. (Section 3.2.1) For Class Members entitled to receive a cash payment, the amount to be paid to each Class Member shall be calculated as follows: Divide the Net Settlement Fund by the sum of the Net Damages Claims for all Class Members entitled to receive a cash payment. The resulting percentage shall then be multiplied by a particular Class Member's Net Damages Claim to arrive at the amount of that Class Member's cash payment. A list of Class Members entitled to a cash payment, and the estimated amount of said payment (subject to Court approval of the fees and costs requested as set forth in Article 9), is set forth in Exhibit B-1.

 b. (Section 3.2.3) For Class Members entitled to receive a credit allocation, the amount to be credited to each Class Member's account shall be calculated as follows: Divide the setoff credit component of the Common Fund by the sum of the Setoff Amount for all Class Members who have outstanding obligations to NextGear. The resulting percentage shall then be multiplied by a particular Class Member's Setoff Amount to arrive at the amount of that Class Member's credit allocation. A list of Class Members entitled to a credit allocation, and the amount of said credit, is set forth in Exhibit B-2.

16. While the Class Members receiving a credit allocation are recovering at a higher percentage basis than the Class Members receiving a cash payment, Class Members receiving a credit allocation also had on average 28% higher Accrued Interest Overcharges than the Class Members entitled to receive a cash payment. Further, the administration costs of the Class Members receiving a credit allocation are lower than the Class Members receiving a cash

payment because NextGear is internally applying the credit and no expenses for mailing or paper checks will be incurred.

17. In my expert opinion the Plan of Allocation provides equivalent benefits to all Class Members.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 13, 2021.

*[signature: Jay Cigh]*

_____