IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **RED BARN MOTORS, INC., PLATINUM MOTORS, INC., and MATTINGLY AUTO SALES, INC.**, individually and on behalf of other members of the general public similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**NEXTGEAR CAPITAL, INC. f/k/a DEALER SERVICES CORPORATION,**<br><br>Defendant. | Case No. 1:14-cv-01589-TWP-DLP |

### DECLARATION OF NELLWYN VOORHIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY SETTLEMENT APPROVAL

I, Nellwyn Voorhies, declare:

1. I am the President of Donlin, Recano & Company, Inc. ("Donlin Recano"), an administrative services firm that specializes in the administration of class action settlements and large Chapter 11 cases, with offices located at 6201 15th Avenue, Brooklyn, New York 11219. I submit this declaration in support of the Motion for Preliminary Approval (the "Motion") of a proposed settlement agreement (the "Agreement") with Defendant NextGear Capital, Inc., formerly known as Dealer Services Corporation ("NextGear"), in the above-captioned matter pending in the United States District Court for the Southern District of Indiana. The Motion includes a request that the Court appoint Donlin Recano as Settlement Administrator for the Court appointed Class Counsel (Filing No. 220) (the "Clients"). Donlin Recano has previously mailed Notice of Class Certification to the Class in this matter, and is intimately familiar with this matter. Except as otherwise noted, I have personal knowledge of the matters set forth herein.

2. Donlin Recano will perform, at the request of the Clients, any noticing and claims-related services, including but not limited to maintaining an informational website, answering telephone and email inquiries regarding the Agreement, providing notice to the appropriate federal and state authorities as required by 28 U.S. Code § 1715 ("CAFA

EXHIBIT 7

Notices"), researching and locating addresses for potential claimants under the Agreement, and making distributions pursuant to the terms of the Agreement. In addition, at the Clients' request, Donlin Recano will perform such other noticing, claims, administrative, technical, and support services necessary to effectuate the purposes of the Agreement.

3. Donlin Recano has extensive experience in claims administration. Over the last 30 years, we have noticed millions of t claimants, in nearly every country in the world, and we have successfully administered billions of dollars in claims. We were recently appointed Class Action Noticing and Settlement Administrator for the Conseco Life Insurance Company class action settlement also pending in the United States District Court for the Southern District of Indiana.

   We have provided similar services in other class action settlements, including, among others:

   - Campus Crest Communities, Inc. — Shareholder Class Action Noticing and Settlement Administrator
   - Capital Bank Financial Corp. — Shareholder Class Action Noticing and Settlement Administrator
   - CCI Student Trust — Noticing and Communications agent
   - Celgene Corporation — Shareholder Class Action Noticing and Settlement Administrator
   - CytRx Corporation — Shareholder Class Action Noticing and Settlement Administrator
   - EZ Corp — Shareholder Class Action Noticing and Settlement Administrator
   - Krispy Kreme Doughnuts, Inc. — Shareholder Class Action Noticing and Settlement Administrator
   - Leucadia National Corporation — Shareholder Class Action Noticing, Distribution and Settlement Administrator
   - Ocean Shore Holding Co. — Shareholder Class Action Noticing and Settlement Administrator
   - Peregrine Semiconductor Corp. — Shareholder Class Action Noticing and Settlement Administraton

4. I have reviewed the Class Notice Plan found at Articles 5 and 6 of the Agreement. The Class Notice Plan is designed to provide Notice of Settlement of Class Action Lawsuit ("Settlement Notice") to the Class Members, and to provide the CAFA Notices. Based on my personal experience and the experience of Donlin Recano, the Class Notice Plan sets forth the "best notice that is practicable under the circumstances, including individual

notice to all members who can be identified through reasonable effort."[1] For example, under the Class Notice Plan,

   a. Donlin Recano will search for and update any addresses that were returned from the April 2020 Class Action Notice mailing in an effort to identify the most current addresses for the Class Members.
   b. Donlin Recano will mail the Settlement Notice to Class Members at their updated addresses via U.S. first-class mail. Where applicable, Donlin Recano will also email the Settlement Notice to the email addresses NextGear provided as part of its discovery responses.
   c. Donlin Recano will also run an advertisement in the Wall Street Journal, will publish the Settlement Notice on a class action website (which has been online since April 2020) along with frequently asked questions, and will man a toll free-call hotline.

5. I also have reviewed the Plan of Allocation. Based on my personal experience and the experience of Donlin Recano, the Plan of Allocation sets forth an effective and practical manner of making the Initial Distribution and Second Distribution.

6. Donlin Recano has the experience and skill to execute the Class Notice Plan, the Plan of Allocation, and all other responsibilities assigned to it in the Agreement and supporting exhibits.

7. Donlin Recano responded to a detailed request for proposal from the Clients in arriving at its fee structure for this engagement. The engagement letter between Donlin Recano and Class Counsel is attached hereto as Exhibit A.

8. Donlin Recano will be paid in accordance with the Fee Schedule attached to the engagement letter as Schedule A. Donlin Recano does not charge any premium on postage or publishing costs, they simply pass on those costs without mark-up.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 13, 2021, at Brooklyn.

---

[1] Fed. R. Civ. P. 23(c)(2)(B).

# Exhibit A

## Donlin, Recano & Company, Inc.

### CLASS ACTION ADMINISTRATIVE AGENT AGREEMENT

### TERMS AND CONDITIONS

Donlin, Recano & Company, Inc. (hereinafter called "DRC") agrees to act as the Noticing and Settlement Administrator for Jones, Swanson, Huddell & Garrison L.L.C. and its co-counsel in the *Red Barn Motors, Inc. et al. vs. NextGear Capital Inc.* matter (hereinafter called the "Client"), and Client agrees to purchase Services (as defined below) upon the terms and conditions and other provisions stated herein. Client agrees and understands that none of the services constitute legal advice.

**1. SERVICES:** DRC agrees to provide the Client with consulting and administrative services regarding noticing, call center support if necessary, and any other services agreed upon by the parties or otherwise required by applicable law, government regulations, or court rules or orders. A more detailed description of the types of services offered by DRC, as well as the fees charged for such services, is annexed hereto as Schedule A.

**2. CHARGES**: All charges shall be based upon the time and materials incurred by DRC, billed at the DRC then-prevailing standard rate unless another rate schedule is specifically and mutually agreed upon herein. DRC reserves its rights to adjust its standard rates in January of each year to reflect changes in the business and economic environment. In the event that rates are based other than on time and materials, and such other bases for rates is set forth herein, the Client agrees to pay, in addition to those rates, for all charges incurred by DRC as a result of Client error or omission as determined by DRC. Such charges shall include but shall not be limited to re-runs and any additional clerical work, phone calls, travel expenses, or any other disbursements. When possible, DRC will notify Client in advance of any additional charges. Checks are accepted subject to collection and the date of collection shall be deemed the date of payment. Any check received from Client may be applied by DRC against any obligation owing by Client to DRC, and an acceptance by DRC of any partial payment shall not constitute a waiver of DRC's right to pursue the collection of any remaining balance. DRC requires advance deposits for all noticing, newspaper publishing or other significant expenditures as defined by DRC. In addition, Client shall reimburse DRC for all actual out-of-pocket expenses reasonably incurred by DRC. The out-of-pocket expenses may include, but are not limited to, postage, delivery services, travel, meals and other similar costs and expenses. In addition to all charges for services and materials hereunder, Client shall pay to DRC all taxes, however designated, levied or based that are applicable to this Agreement or are measured directly by payments made under this Agreement and are required to be collected by DRC or paid by DRC to taxing authorities. This provision includes but is not limited to, sales, use and excise taxes, but does not include personal property taxes or taxes based on net income.

**3. TRANSPORTATION OF DATA**: Data submitted by the Client to DRC for processing shall be transported at the Client's risk and expense to and from the DRC office. In the event the Client fails to deliver the input data to DRC at the time scheduled, the Client agrees that DRC may extend, as necessary, the time for the completion of processing of such data. Client further agrees that the time for the completion or processing of such data may be extended because of the following holidays in addition to any Bank holidays recognized in the city in which DRC is located: New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and Christmas Day. In any event, DRC does not warrant or represent that shipment or availability dates will be met, but will use its best efforts to do so. If DRC is required to stay open to perform required tasks on such days, an additional mutually agreed upon cost may be required by DRC.

**4. INVOICES**: Client shall pay the charges set forth in Schedule A, attached hereto. DRC shall invoice the Client monthly for all services rendered during the preceding month. Charges for a partial month's service shall be prorated based on a thirty (30) day month. Terms are net 20 days following the date of billing. Failure to pay any fees, costs or other amounts to DRC shall be a breach of this Agreement (a "Failure to Pay"). Notwithstanding anything else contained in this Agreement, in the event of a Failure to Pay, DRC reserves the right to withhold

**Donlin, Recano & Company, Inc.**

reports and materials of the Client, in addition to all other remedies available to DRC. Upon a Failure to Pay, DRC may assess a late charge at a rate of one and one-half percent (1-1/2%) per month or the highest rate permitted by law, whichever is less, on all unpaid amounts until paid in full. DRC shall also have the right, at its option, to terminate this agreement for non-payment of invoices after 30 days from the date unpaid invoices are rendered (a "Non-Payment Breach"). If the invoice amount is disputed, notice shall be given to DRC within ten (10) days of receipt of the invoice by the Client. The undisputed portion of the invoice will remain due and payable. Late charges shall not accrue on any amounts in dispute. Notwithstanding anything contained in this agreement to the contrary, a Failure to Pay shall under no circumstances be construed as an agreement by DRC to reduce or waive DRC's fees and expenses. The Client shall not agree or otherwise consent to a unilateral reduction or waiver of DRC fees and expenses without the explicit written consent of DRC and any such agreement or consent to such reduction or waiver by the Client without DRC's explicit written consent shall be deemed null and void and constitute a breach of this Agreement (a "Material Breach"). Notwithstanding anything contained in this agreement to the contrary, upon the occurrence of a Material Breach, DRC shall have the right, at its option, to terminate this agreement upon five (5) business days of notice to the Client.

**5. STORAGE**: Client shall assume the risks and DRC shall not be responsible for any damages, liability or expenses incurred in connection with any delay in delivery of or damage to cards, disks, magnetic tapes or any input data furnished by Client unless DRC has agreed in writing to assume such responsibility. Forms storage at DRC beyond a normal 90 day supply will be billed at standard warehousing rates established by DRC.

**6. E-MAIL COMMUNICATIONS**: DRC and the Client and its agents acknowledge that they may wish to communicate electronically with each other at a business e-mail address. However, the electronic transmission of information cannot be guaranteed to be secure or error free and such information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete or otherwise be adversely affected or unsafe to use. Accordingly, each party agrees to use commercially reasonable procedures to check for the then most commonly known viruses and to check the integrity of data before sending information to the other electronically, but each party recognizes that such procedures cannot be a guarantee that transmissions will be virus-free. It remains the responsibility of the party receiving an electronic communication from the other to carry out a virus check on any attachments before launching any documents, whether received on disk or otherwise.

**7. SUPPLIES**: All supplies shall be furnished at Client's expense.

**8. WARRANTY AND RELIANCE**: Client acknowledges and agrees that DRC will take direction from the Client's representatives, employees, agents and/or professionals (collectively, the "Client Parties") with respect to services being provided under this Agreement. Client and DRC agree that DRC may rely upon, and the Client agrees to be bound by, any requests, advice, or information provided by the Client Parties to the same extent as if such requests, advice, or information were provided by the Client. DRC shall have the right to rely on the accuracy of all data provided by the Client and the Client Parties to DRC. Client is responsible for the accuracy of all programs, data and other information it submits to DRC. The DRC warranty under this agreement shall be limited to the re-running at its expense, of any inaccurate reports provided that such inaccuracies were caused solely as a result of performance hereunder and provided further that DRC shall receive written notice of such inaccuracies within thirty (30) days of delivery of such report. If said notice is not made to DRC within the prescribed time limit, Client is due and liable for all charges. Client agrees that the foregoing constitutes the exclusive remedy available to it.

**9. TERM**: This agreement shall be effective from the date upon which it is accepted by DRC as set forth herein and shall remain in force until terminated by either party upon thirty days' written notice to the other party or by DRC upon occurrence of a Non-Payment Breach or a Material Breach, as defined in paragraph 4 above. The payment obligation and the indemnity obligation set forth in sections 4 and 11 herein, respectively, shall survive termination of this Agreement. In the event this Agreement is terminated, DRC shall coordinate with the Client

**Donlin, Recano & Company, Inc.**

for an orderly transfer of record keeping functions and shall provide all necessary staff, services and assistance required for such orderly transfer. Client agrees to pay for such services in accordance with DRC's then-existing fees for such services.

**10. TERMS OF AGREEMENT**: The terms of this Agreement prevail over any and all terms contained in Client's purchase order or authorization and no waiver, discharge, or modification of the terms of this Agreement shall bind DRC unless in writing and signed by an authorized representative of DRC.

**11. LIMITATION OF LIABILITY**: Client agrees that the foregoing warranty is in lieu of all other warranties, express or implied, including but not limited to any implied warranty of merchantability, fitness or adequacy for any particular purpose, or use, quality, productiveness or capacity. DRC shall be without liability to the Client with respect to anything done or omitted to be done, in accordance with the terms of this Agreement or instructions properly received pursuant hereto, if done in good faith and without negligence or willful or wanton misconduct. DRC's liability to Client or any person claiming through or under Client for any Losses (as defined below) of any kind, even if DRC has been advised of the possibility of such Losses, whether direct or indirect and unless due to gross negligence or willful misconduct of DRC, shall be limited to the total amount billed or billable to Client for the portion of the particular work which gave rise to the alleged loss. In no event shall DRC's liability to Client for any Losses (as defined below), arising out of this Agreement, whether direct or indirect, exceed the total amount billed to Client and actually paid to DRC for the services contemplated under this Agreement. In no event shall DRC be liable for any indirect, special, or consequential damages such as loss of anticipated profits or other economic loss in connection with or arising out of the services provided for in this Agreement, regardless of whether the claim is for breach of warranty, contract, tort (including negligence), strict liability, or otherwise.

**12. INDEMNIFICATION**: The Client shall indemnify and hold DRC and its affiliates, officers, directors, agents, employees, consultants, and subcontractors (collectively, the "Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, liabilities, costs, obligations, judgments, causes of action, charges (including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), arising out of or relating to (a) this Agreement or DRC's rendering of services pursuant hereto (including any erroneous instructions or information provided to DRC by the Client or the Client Parties for use in providing services under this Agreement), (b) any breach or alleged breach of this Agreement by Client, or (c) any negligence or willful or reckless actions or misconduct of Client or Client Parties with respect to this Agreement, other than Losses resulting solely from DRC's gross negligence or willful misconduct. Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Parties. The Client shall notify DRC in writing promptly of the institution, threat or assertion of any claim of which the Client is aware with respect to the services provided by DRC under this Agreement. Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of DRC and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to DRC's liabilities.

**13. CONFIDENTIALITY**: Each of DRC and the Client, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the services provided under this Agreement; provided, however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency or other regulatory body, it may, upon not less than five (5) business days' written notice to the other party, release the required information.

**14. OWNERSHIP OF PROGRAMS**: Unless otherwise agreed in writing, all programs developed by DRC in connection with any services to be performed under this Agreement shall remain the sole property of DRC. All programs and/or systems documentation in the possession of DRC which DRC has agreed in writing to return to

## Donlin, Recano & Company, Inc.

the Client, prepared for the Client by DRC, shall be returned to the Client upon demand providing all charges for such programming and/or systems documentation have been paid in full.

**15. SYSTEMS IMPROVEMENTS**: DRC's policy is to provide continuous improvements in the quality of service to its clients. DRC, therefore, reserves the right to make changes in operating procedures, operating systems, programming languages, application programs, time period of accessibility, equipment, and the DRC data center serving the Client, so long as any such changes do not materially interfere with ongoing services provided to the Client.

**16. UNUSUAL MEASURES**: Where the Client requires measures that are unusual and beyond the normal business practice and hours of DRC such as, but not limited to, CPA Audit, Errors and Omissions Insurance, and/or Off-Premises Storage of Data, the cost of such measures, if provided by DRC, shall be charged to the Client. Said charges may be required in advance if DRC deems it appropriate.

**17. JURISDICTION.** Jurisdiction over all matters regarding this Agreement, and all disputes regarding this matter, shall be resolved by the United States District Court for the Southern District of Indiana.

**18. FORCE MAJEURE.** Whenever performance by DRC of any of its obligations hereunder is substantially prevented by reason of any act of God, strike, lock out or other industrial or transportational disturbance, fire, lack of materials, law, regulation or ordinance, war or war conditions, or by reasons of any other matter beyond DRC's reasonable control, then such performance shall be excused and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

**19. NOTICE.** Any notice or other communication required or permitted hereunder shall be in writing and shall be delivered personally, or sent by registered mail, postage prepaid, or overnight courier. Any such notice shall be deemed given when so delivered personally, or, if mailed, five days after the date of deposit in the United States mail, or, if sent by overnight courier, one business day after delivery to such courier, as follows: if to DRC, to Donlin, Recano & Company, Inc., 6201 15th Avenue, Brooklyn, NY 11219, Attention: Nellwyn Voorhies, Esq.; if to the Client, to Jones, Swanson, Huddell & Garrison L.L.C , 601 Poydras Street, Suite 2655, New Orleans, Louisiana 70130, Attention: Lynn E. Swanson, Esq.

**20. GOVERNING LAW.** This Agreement will be governed by and construed in accordance with the laws of the State of New York (without reference to its conflict of laws provisions).

**21. SEVERABILITY.** All clauses and covenants contained in this Agreement are severable and in the event any of them are held to be invalid by any court, such clause or covenant shall be valid and enforced to the maximum extent as to which it may be valid and enforceable, and this Agreement will be interpreted as if such invalid clauses or covenants were not contained herein.

**22. ASSIGNMENT.** This Agreement and the rights and obligations of DRC and the Client hereunder shall bind and inure to the benefit of any successors or assigns thereto.



## Donlin, Recano & Company, Inc.

**23. GENERAL.** The terms and conditions of this Agreement may be modified by DRC upon one (1) month's prior written notice to Client. Client will not employ any DRC employee within two (2) years from the termination of this Agreement. The term "this Agreement" as used herein includes any future written amendments, modifications, supplements or schedules duly executed by Client and DRC. This Agreement contains the entire agreement between the parties with respect to the subject matter hereof. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one in the same instrument. A facsimile copy, photocopy, or imaged copy of this Agreement shall be considered an original copy.

Accepted and Approved:

Donlin, Recano & Company, Inc.
1601 15th Avenue 11219
Brooklyn, New York

By: Nellwyn Voorhies

Signature: _____

Title: Executive Director

Date: April 7, 2020


Accepted and Approved:

By: Lynn E. Swanson

Signature: _____

Title: Managing Member

Date: April 7, 2020

This Agreement is subject to the terms and conditions set forth herein. Client acknowledges reading and understanding it and agrees to be bound by its terms and conditions and further agrees that it is the complete and exclusive statement of the Agreement between the parties, which supersedes all proposals, oral or written, and other prior communications between the parties relating to the subject matter of this Agreement.

**Donlin, Recano & Company, Inc.**

# SCHEDULE A

## Billing Rate and Cost Information

| Professional Service | Hourly Rates |
|---|---|
| Senior Consultant | $175 |
| Technology/Programming Consultant | $110 |
| Consultant/Analyst | $90 |
| Call Center Operators | $65 |
| Clerical | $45 |
| **Noticing Service** | |
| Laser Printing/ Photocopies | $.08 per Page |
| Personalization/ Labels | $.05 per addressee |
| Fax Noticing | $.08 per Page |
| Postage and Overnight Delivery | At Cost |
| Electronic Noticing | WAIVED |
| Publication Services | At Cost |
| **Distribution Services** | |
| Check Processing Fee | $1.50 per Check |
| 1099 Form Issuance Fee | $2.00 per 1099 Form |
| **Class Action Administrative Management** | |
| Website Development | WAIVED |
| Web Hosting | WAIVED |
| Class Member Data Storage/ Electronic Document Storage (PDF/JPG) | WAIVED |
| Document Imaging | $.08 per Image |
| **Data Room Services** | |
| DRC DocuLinks™ Virtual Data Room Services | Hosting WAIVED |
| Data Room Development | $90 per Hour |
| **Miscellaneous** | |
| Out-of-Pocket Expenses (including any required travel) | At Cost |
| Unanticipated Tasks | To be mutually agreed upon prior to performance |