# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | |
|---|---|
| **RED BARN MOTORS, INC., PLATINUM MOTORS, INC., and MATTINGLY AUTO SALES, INC., individually and on behalf of other members of the general public similarly situated,** )<br><br>)<br>)<br>)<br>)<br><br>)<br>**Plaintiffs,** )<br>)<br>**v.** )<br>)<br>**NEXTGEAR CAPITAL, INC. f/k/a DEALER SERVICES CORPORATION,** )<br>)<br>)<br>**Defendant.** )| **Case No. 1:14-cv-01589-TWP-DLP** |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
## FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Class Counsel[1] for Plaintiffs Red Barn Motors, Inc. ("Red Barn"), Platinum Motors, Inc. ("Platinum Motors"), and Mattingly Auto Sales, Inc. ("Mattingly Auto"), on behalf of a certified class of 17,208 used car dealerships (collectively, "Plaintiffs") respectfully move this Court pursuant to Fed. R. Civ. P. 23 for an Order (1) granting final approval of the Settlement Agreement with Defendant NextGear Capital, Inc. ("NextGear"), finding its terms fair, reasonable, and adequate; (2) designating Plaintiffs as Settlement Class Representatives; (3) appointing attorneys from Sher Garner Cahill Richter Klein & Hilbert, L.L.C.; Jones Swanson Huddell & Daschbach LLC; Kerry Murphy Law LLC; DeLaney & DeLaney LLC; and The Cassie Felder Law Firm as Settlement Class Counsel; (4) approving the Allocation Plan set forth in the Settlement Agreement;

---

[1] Capitalized terms have the definitions assigned to them in Plaintiffs' Settlement Agreement and Release, Filing No. 373-9.

and (5) confirming the appointment of Donlin Recano & Company, Inc. ("Donlin Recano") as Settlement Administrator for the purposes of continuing to respond to Class Members with questions and distributing Settlement proceeds in accordance with the Allocation Plan.

## I.   BACKGROUND

**A.   <u>Plaintiffs' Claims and Procedural, Class Certification, and Discovery History.</u>**

Plaintiffs are a certified Class of 17,208 used car dealerships. Class Representatives operated used car dealerships in Louisiana, Virginia and Kentucky. Defendant NextGear is an automotive financing company that offers revolving line-of-credit financing sometimes referred to as "floor plans" to used car dealers throughout the United States. NextGear's "Floorplan Agreement"—formally called a "Demand Promissory Note and Security Agreement"—is "generally a take-it-or-leave-it" contract, meaning its terms cannot be negotiated. Used car dealers utilize floor plans to purchase vehicle inventory, which then is resold at their used car dealerships.

In 2013, Plaintiffs sued NextGear for interest charges they paid to NextGear on funds not yet advanced by NextGear. NextGear does not dispute that it began charging interest to the Plaintiffs on the "flooring date" (the date when the Plaintiffs indicated they would use the Floorplan Agreement to obtain a vehicle), typically the date of an auction. However, even though NextGear did not always pay an auction house on behalf of the Plaintiffs on the flooring date, it started charging interest to the Plaintiffs on that date. Based on the language contained in the Floorplan Agreements, Plaintiffs claim that NextGear could only legitimately start charging interest to the Plaintiffs after it made an advance of funds on the Plaintiffs' behalf.

Class Representatives have testified that they did not know NextGear was going to charge them interest before disbursing sums when they entered into the Floorplan Agreements. Plaintiffs would not have agreed that NextGear could charge them interest before funds were advanced to the

seller auction houses. By charging interest to Plaintiffs on funds that NextGear still held, Plaintiffs contend that NextGear enjoyed a commercially unreasonable windfall because only once NextGear actually advanced the funds to the auction house did it risk its assets and become entitled to the accrual of interest.[2] Plaintiffs claim that NextGear breached the Floorplan Agreement by charging and collecting interest not owed, and that NextGear is liable to the Class for the total amount of overcharged interest as damages, which the Plaintiffs' expert calculates to be $9,539,118.92. Plaintiffs also sought statutory prejudgment interest.[3]

In this case, the Parties have advanced competing positions concerning the interpretation of the contracts and whether NextGear breached the Floorplan Agreement by charging interest before disbursing money on the Plaintiffs' behalf. The Parties have extensively briefed the Court on the contract documents at issue in numerous pleadings, with the Court ultimately ruling that the contract interpretation issue would need to be resolved at trial after consideration of extrinsic evidence. Filing No. 262 at 38.

One of NextGear's defenses has been that many Class Members' claims are barred by set off and/or recoupment, because many Class Members defaulted on their loans with NextGear, and therefore, NextGear is entitled to a set off in the specific amount that those dealers still owe under their contracts with NextGear. While the Court has recognized that NextGear's right to set off "may reduce the amount of any liability to the Plaintiffs in the event that the Plaintiffs are successful on their claim[,]" it denied summary judgment on that defense. *Id.* at 33. Based on NextGear's records, NextGear claims

---

[2] As set forth in the numerous pleadings in this litigation, NextGear disagrees with Plaintiffs' contention and contends that it is obligated to pay for a vehicle and its assets are at risk the moment a vehicle is purchased at auction using a NextGear floor plan.

[3] Based on an 8% rate of interest pursuant to Ind. Code Ann. § 24-4.6-1-102 (West), Plaintiffs' expert calculated total prejudgment interest in the sum of $5,471,534.07.

that 6,803 Plaintiffs have negative balances, and that those Plaintiffs account for $4,537,835.56 of the $9,539,118.92 in interest overcharges.

On September 30, 2016, Plaintiffs sought class certification on their claims. Filing Nos. 153 and 154; *see also* Filing No. 165. On June 29, 2017, the Court granted class certification to the class defined by Plaintiffs on Plaintiffs' breach of contract claim against NextGear. Filing No. 220.

In July 2017, NextGear asked the Court to reconsider the class certification decision and to decertify the class (*see* Filing No. 228), and in August 2017, NextGear asked the Court to narrow the certified class (*see* Filing No. 237). On January 12, 2018, the Court granted NextGear's motion to reconsider and decertified the class on the Plaintiffs' breach of contract claim against NextGear. Filing No. 261 at 9.

Soon thereafter, the Plaintiffs filed a notice of appeal, asking the Seventh Circuit Court of Appeals to review the Court's Order decertifying the class action. In its decision, the Seventh Circuit noted, "This appeal presents us with only the narrow issue of whether the district court erred in rescinding class certification." Seventh Circuit Decision, Filing No. 273 at 4. "The decision of the district court is VACATED and the case REMANDED for further proceedings." *Id.* at 9, 13. With the class decertification Order having been vacated, this case was returned to the status of a class action on the sole remaining claim for breach of contract against NextGear.

Following the Seventh Circuit Decision, the Court reconsidered the class certification issue. On February 26, 2020, the Court upheld its earlier order certifying the class, while granting NextGear's motion to narrow the class, ruling that nearly 10,000 used car dealers who signed later Floorplan Agreements containing an arbitration clause and a waiver of the right to participate in class actions were not part of the class. Filing No. 315 at 27.

After approval by the Court, a *Notice of Pendency of Class Action Lawsuit* was mailed to the class on or about April 24, 2020, by first-class United States mail. Filing Nos. 326 and 342-1. That notice gave Class Members the right to opt out of the Class by returning a written request to be excluded from the Class by June 26, 2020. Only four (4) putative Class Members timely asked to be excluded from the Class.

Over the course of this litigation, the Parties have conducted extensive discovery, with Plaintiffs propounding seven sets of written discovery requests. The Parties together responded to dozens of discovery requests, requested and reviewed tens of thousands of documents, and took numerous corporate representative and fact witness depositions. Also, multiple expert reports have been exchanged and the expert witnesses were deposed. The Parties filed Motions in Limine and the Court denied the motions, which would have allowed the experts to testify at trial. *See* Motions in Limine (Filing Nos. 183 and 218) and Orders denying Motions in Limine (Filing Nos. 225 and 264). The parties also engaged in other motion practice regarding discovery, particularly with respect to the timing and scope of class-related discovery. During the course of discovery, Class Counsel also reviewed thousands of court pleadings, judgments, and other documents from other litigation related to NextGear's affirmative defense of setoff.

After more than seven years of litigation, including extensive discovery, class certification and then decertification, a trip to the U.S. Court of Appeals for the Seventh Circuit, which vacated the decertification order, two mediation sessions, and months of back and forth negotiation between counsel, Plaintiffs and NextGear reached agreement on a $6.75 million common fund settlement and have executed a formal Settlement Agreement (Filing No. 373-9), which received preliminary approval from this Court on June 7, 2021. *See generally* Filing No. 378 ("Preliminary Approval Order").

The Settlement breaks down into: $4.25 million cash, to be used for pro-rata cash payments to Class Members that do not have a negative account balance with NextGear and payment of the Class's legal fees, costs, and the settlement's administrative costs, and $2.5 million in pro-rata account credits to those Class Members that do have a negative account balance with NextGear. Certain Class Members will receive both cash and credits. No portion of the Settlement will revert to NextGear. The Settlement Agreement specifies that the three class representatives will also each request a $7,500 service award for serving as class representatives. Other than an IRS-required Form W-9 from those 431 Class Members receiving cash payments of more than $600, the Settlement Agreement requires no claims process; Class Members entitled to a cash payment will receive a check in the mail, and NextGear will automatically credit those Class Members receiving credit. No Class Member is required to conduct any further business with NextGear to receive funds or credits under the Settlement Agreement.

On June 7, 2021, this Court preliminarily approved the Settlement Agreement and ordered that notice of the settlement be distributed to members of the proposed Settlement Class. *See* Preliminary Approval Order at Filing No. 378. Class Settlement Notice has now been distributed. *See* Notice of Settlement of Class Action Lawsuit, Exhibit C to the Burlacu Decl. For the reasons set forth herein, Plaintiffs now request that the Court grant final approval and hold that the Settlement Agreement is fair, reasonable, and adequate.

**B.**     **Settlement History.**

In 2018, while this case was pending before the Seventh Circuit Court of Appeals, the Parties engaged in a mediation with a Seventh Circuit mediator. That mediation was unsuccessful.

Two years later, in September of 2020, following the Seventh Circuit Decision, vacatur to this Court, and this Court's subsequent rulings, the Parties participated once more in an all-day

6

mediation before William Baten.[4] After that mediation, the Parties continued discussing the possibility of settlement, and structure and terms of a potential settlement for several months. During these additional intense and months-long arm's-length negotiations, the Parties discussed various forms of relief for Class Members, including cash payments and credits for those Class Members who had negative account balances with NextGear.

The Parties reached an agreement in principle on the terms of the settlement on November 20, 2020. Even after the principal terms of the settlement were agreed upon, the Parties continued negotiations over other terms for months, including the precise language of the pro-rata settlement calculation, the terms of the release, and notice provisions, among other terms. Plaintiffs and NextGear confirmed to this Court on April 8, 2021 that they had reached an agreement, and the Settlement Agreement was fully executed as of that date.

## C.   <u>Class Certification.</u>

As referenced above, the Court certified a Class in June of 2017 which was confirmed in February 2020, finding class certification appropriate in this action because (1) Plaintiffs meet all the requirements of Rule 23(a)—ascertainability; numerosity, commonality, typicality, and adequacy; and (2) there is a predominance of common questions over individual questions, and superiority of a class action vehicle over other available methods of adjudication as set forth in Rule 23(b)(3). Filing Nos. 220, 315. The June 2017 *Entry of the Court on Plaintiffs' Motion for Class Certification* was characterized by the Seventh Circuit Court of Appeals as "a model of clarity and thoroughness, analyzing the factors [of Rule 23] in detail." Seventh Circuit Decision, Filing No. 273 at 7. The February 2020 confirmation of class certification dictated a narrower Class and California Subclass of dealers who could pursue a breach of contract claim against

---

[4] Due to COVID-19 protocols, the parties participated in the mediation via video conferencing.

NextGear as a class action: "the Court determines that the Plaintiffs' claim for breach of contract against NextGear should proceed as a class action." Filing No. 315 at 17. After approval by the Court, on April 24, 2020, a *Notice of Pendency of Class Action Lawsuit* was mailed to Class Members who fall within the following two classes:

> All used car dealers in the United States of America that were parties to a Floorplan Agreement with DSC, n/k/a NextGear, effective during the time period of January 2005 through July 2013, and that floor planned one or more vehicles with DSC/NextGear under such agreement, excluding any dealer that signed an agreement containing an arbitration or class action waiver provision.

> and

> all California used car dealers that were parties to a Floorplan Agreement with DSC, n/k/a NextGear, effective during the time period of January 2005 through July 2013, which Floorplan Agreement requires the application of California law, and that floor planned one or more vehicles with DSC/NextGear under such agreement, excluding any dealer that signed an agreement containing an arbitration or class action waiver provision.

**D.      Preliminary Approval and Class Settlement Notice.**

Plaintiffs filed their Motion for Preliminary Approval of the settlement agreement on June 2, 2021. *See* Filing No. 373. The Court granted the motion on June 7, 2021. *See* Preliminary Approval Order (Filing No. 378). The Court held that "the Settlement and the Allocation Plan are sufficiently within the range of reasonableness that the Court will likely be able to approve the proposal under Rule 23(e)(2) and that the direction of notice to Class Members is justified by the parties' showing, as provided for in this Order." *Id.* at 1. The Court appointed the firm of Donlin Recano to be engaged by Class Counsel as the Settlement Administrator to perform all duties specified in the Settlement Agreement. *Id.* at 2.

Donlin Recano began the notice process shortly after the Preliminary Approval Order was entered. In accordance with the Settlement Agreement, Donlin Recano updated a dedicated Red Barn Settlement website (www.donlinrecano.com/rbm) with the Notice of Settlement of Class

Action Lawsuit (the "Class Settlement Notice"), pleadings and court orders from the litigation, Frequently Asked Questions, and other information. With Plaintiffs' counsel and NextGear's input, Donlin Recano drafted those Frequently Asked Questions and answers that are posted to the dedicated website. Visitors to the website have the ability to download, free of charge, copies of the documents which are posted there. The website was operational beginning April 24, 2020 and is accessible 24 hours a day, 7 days a week. August 26, 2021 Declaration of John Burlacu ("Burlacu Decl."), attached hereto as Exhibit 1 at ¶ 3.

Donlin Recano also obtained and maintains a dedicated toll-free telephone hotline to inform Class Members and field their inquiries. Donlin Recano employees have been manning the toll-free telephone hotline since its inception. Callers are assisted by these live operators who answer their questions using the Frequently Asked Questions and answers drafted by Donlin Recano with input from the parties to the settlement. Callers can also obtain information and request copies of the Notice from the live operators. The call center's dedicated representatives were trained on the specifics of the action and are available Monday through Friday from 9:00 a.m. to 5:00 p.m. Eastern Standard Time. During non-business hours, callers are greeted with a voicemail message instructing them to visit the case website for more information and to leave their name, phone number, and a brief message. All inquiries are responded to within 24 hours. Burlacu Decl. at ¶ 4.

On the 11th day of June, 2021, employees of Donlin Recano properly served the *CAFA Notice of Settlement* on the appropriate federal and state officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715. Burlacu Decl. at ¶ 5. June 23, 2021 Affidavit of Service of John Burlacu, attached to the Burlacu Decl. as Exhibit A.

On July 1st and 2nd, 2021, employees of Donlin Recano properly served the Class Settlement Notice on the Class Members via First Class U.S. Mail to all of the Class Members and also a .pdf version of the Class Settlement Notice via electronic mail to those Class Members as to which NextGear provided email addresses from its records during discovery in December 2017. Two different mailings went out. One, sent to those Class Members who are entitled to a cash payment of more than $600, contained the Class Settlement Notice, a Form W-9, Request for Taxpayer Identification Number and Certification, and a postage pre-paid return envelope addressed to Donlin Recano. Burlacu Decl. at ¶ 6. July 12, 2021 Affidavit of Service of John Burlacu ("July Burlacu Aff."), attached to the Burlacu Decl. as Exhibit B. The other, sent to all other Class Members except for the four who timely opted out of the Litigation, contained only the Class Settlement Notice.[5] The Notice form distributed to the Class contains minor differences from the version of the Notice that Plaintiffs submitted with their Motion for Preliminary Approval. The finalized notice includes the deadlines set forth in the Court's preliminary approval order, and each Class Member's credit allocation and/or cash payment amount. Burlacu Decl. at ¶ 7. Redacted Sample Notice of Settlement of Class Action Lawsuit, Exhibit C to the Burlacu Decl. Plaintiffs and NextGear jointly agreed to these modifications. The finalized notice form is attached as Exhibit C to the Burlacu Decl.

On July 9, 2021, employees of Donlin Recano caused a summary version of the Class Settlement Notice to be published in the Wall Street Journal. Burlacu Decl. at ¶ 9 and July 9, 2021 "The Wall Street Journal Affidavit of Publication for Legal Notice of Settlement of Class Action Lawsuit" by Nora Morales, attached to the Burlacu Decl. as Exhibit D.

---

[5] Exhibits to the July 12, 2021 Affidavit of Service (filed under seal) contain the names of all of the Class Members and which version of the Class Settlement Notice each Class Member received, and whether by United States Mail and/or email.

Since the Class Settlement Notice was sent and the summary Notice was published, Donlin Recano has re-processed forwarded mail and tracked undeliverable mail, and has continuously been tracking Class Members' responses to the Class Settlement Notice to the extent it receives them. Burlacu Decl. at ¶ 8. As of the date of this filing, Donlin Recano has received 15 Forms W-9 out of 431 that were sent out to Class Members along with their Class Settlement Notice. Burlacu Decl. at ¶ 10. It has received no letters of objection to the Settlement or the Settlement Agreement. Burlacu Decl. at ¶ 11

## II.      SUMMARY OF SETTLEMENT

### A.      <u>Class Definition and Settlement Sums.</u>

The Settlement Agreement encompasses all Class Members' claims as certified by the Court, with the added language excluding any Class Members that opted out during the Court's previously ordered opt out period. *See* Filing No. 315 at 34-35; Filing No. 326. The class definitions are:

> All used car dealers in the United States of America that were parties to a Floorplan Agreement with DSC, n/k/a NextGear, effective during the time period of January 2005 through July 2013, and that floor planned one or more vehicles with DSC/NextGear under such agreement, excluding any dealer that signed an agreement containing an arbitration or class action waiver provision. The Class excludes those putative class members who opted out of the Class prior to June 26, 2020

> and

> all California used car dealers that were parties to a Floorplan Agreement with DSC, n/k/a NextGear, effective during the time period of January 2005 through July 2013, which Floorplan Agreement requires the application of California law, and that floor planned one or more vehicles with DSC/NextGear under such agreement, excluding any dealer that signed an agreement containing an arbitration or class action waiver provision. The California Subclass excludes those putative class members who opted out of the Class prior to June 26, 2020.

11

Under the Settlement Agreement, NextGear agrees to pay a total of six million, seven hundred fifty thousand dollars ($6,750,000), inclusive of Class Settlement Notice and Administrative Costs, attorneys' fees, and expenses, comprised of a cash payment of four million, two hundred fifty thousand dollars ($4,250,000) and a setoff credit against amounts Class Members owe to NextGear of two million, five hundred thousand dollars ($2,500,000) (the "Common Fund"). Settlement Agreement, Filing No. 373-9, ¶ 3.1 at p. 6, Exhibit 8. No portion of the Settlement Fund will revert to NextGear. *Id.*, ¶ 3.4 at 9.

**B.     NextGear's Withdrawal Rights.**

Because the Court-ordered opt out period expired on June 26, 2020, the Parties requested that the Court disallow any additional opt out period. If the Court did choose to allow another opt out period, and if 20 or more Class Members elected to opt out, NextGear reserved the right to withdraw from the Settlement Agreement. *Id.* ¶ 10.1.1 at 18.[6] NextGear also reserved the right to withdraw from the settlement if five or more substantive objections to the Settlement are submitted by Class Members during the Court approval process. *Id.* ¶ 10.1.2. Thus far, no objections have been submitted.

**C.     The Parties Negotiated for Multiple Forms of Class Settlement Notice.**

Pursuant to the terms of the Settlement Agreement, the Parties agreed that Class Members would receive notices that explain in plain language the claims asserted in this case, the amount the Class Member will receive, and the procedure for objecting to the settlement. Redacted Sample

---

[6] In the Court's preliminary approval Order, the Court did not allow another opt-out period. *See* Filing No. 378, ¶ 14 ("The Court finds, pursuant to Fed. R. Civ. P. 23(e)(4), that the Class Members, in light of the previously furnished notice about the certification of this case as a class action, were afforded adequate opportunity to exclude themselves from this class action proceeding and should not, under the circumstances of this case and its settlement, be afforded a second opportunity for exclusion, but rather shall solely have the right to object to the Settlement as set forth in this Order.").

12

Notice of Settlement of Class Action Lawsuit, Exhibit C to the Burlacu Decl. The Parties further agreed that notices would be mailed to each Class Member within 30 days after entry of the Preliminary Approval Order by first-class United States Mail to the address used for the April 2020 Notice or any updated address discovered through a search by the Settlement Administrator for those names and addresses from whom class notice was returned in the period between April and June 2020. Settlement Agreement, Filing No. 373-9, ¶ 6.2 at 11. In addition, the Parties agreed that within 30 days after entry of the Preliminary Approval Order, a copy of the Class Settlement Notice in .pdf format would be sent by email to those Class Members as to which NextGear provided email addresses from its records in December 2017; the Class Settlement Notice would be published in the Wall Street Journal once; the Class Settlement Notice would be posted to the existing class informational website; and a toll-free hotline would be set up to answer questions regarding the Settlement Agreement, which would be staffed from 8:00 a.m. until 5:00 p.m. (Eastern Standard Time) during business days, and would maintain a voice messaging service so that messages could be left after business hours and returned by the toll-free hotline staff within 24 hours of a message having been left. *Id*. at 11-13.

**D.**     **The Proposed Plan of Allocation Is a Principled, Fair, and Reasonable Means to Compensate Class Members.**

Under the proposed Plan of Allocation, the Settlement Administrator will distribute the Net Settlement Fund (*i.e.,* $4.25 million minus Court-approved fees and expenses), in two distributions. *Id*. ¶ 3.1 at 6. For deceased Class Members, the Class Member's estate shall be the presumptive legal successor in interest. *Id*. ¶ 2.7 at 4. The proposed Plan of Allocation represents a principled, fair, and reasonable means to compensate the Class Members. The Settlement Fund will be allocated pro rata per the damages model developed by Plaintiffs' expert in this case.

13

E.    **Plaintiffs' Expert Used NextGear's Transactional Data to Create a Damages Model.**

After an exhaustive review of NextGear's discovery responses and the transactional data NextGear produced in discovery, Plaintiffs' expert Jay Cunningham, a CPA with Katz, Sapper & Miller in Indianapolis, Indiana created a spreadsheet revealing the timing differential between when NextGear began assessing Plaintiff Class Members accrued interest — called the FlooringDate in NextGear's data— and when NextGear advanced the loan funds to the third party for the purchase of a vehicle — called the LastDisbursementDate. *Id*. at Exs. B-1, at p. 37 and B-2, at p. 39 to the Settlement Agreement (both exhibits filed under seal). *See also*, Declaration of Jay Cunningham, Filing No. 373-2 ("Cunningham Decl."). Mr. Cunningham calculated Plaintiffs' Accrued Interest Overcharges by computing interest on a per diem basis. *Id*. Mr. Cunningham then calculated each Class Member's respective accrued interest overcharges by multiplying the per diem interest calculation by the number of days between when NextGear began assessing Plaintiff Class Members accrued interest and when NextGear advanced the loan funds to the third party for the purchase of a vehicle. Mr. Cunningham used a similar model to calculate prejudgment interest for the Class. *Id*.

1.    **Class Members will receive pro rata compensation from the common fund.**

For Class Members entitled to receive a cash payment under the Settlement Agreement, the amount to be paid to each Class Member is calculated by dividing the Net Settlement Fund by the sum of the Net Damages Claims for all Class Members entitled to receive a cash payment. Filing No. 373-9, ¶ 3.2.1 at 7. The resulting percentage is then multiplied by a particular Class Member's Net Damages Claim to arrive at the amount of that Class Member's cash payment. A list of Class Members entitled to a cash payment, and the estimated amount of said payment (subject to Court approval of the fees and costs), is set forth in Exhibit B-1 to the Settlement

Agreement (filed under seal). Any Class Member who would be entitled to receive less than $6.00 pursuant to the calculation in ¶ 3.2.1 will not receive any cash payment, as the cost of processing payment to those Class Members would exceed the amount of their payment. *Id*. ¶ 3.2.2 at 7.

For Class Members entitled to receive a credit allocation, the amount to be credited to each Class Member's account is calculated by dividing the setoff credit component of the Common Fund by the sum of the Setoff Amount for all Class Members who have outstanding obligations to NextGear. *Id*. ¶ at 3.2.2. The resulting percentage is then multiplied by a particular Class Member's Setoff Amount to arrive at the amount of that Class Member's credit allocation. *Id*. A list of Class Members entitled to a credit allocation, and the amount of said credit, is set forth in Exhibit B-2 to the Settlement Agreement (filed under seal). In Mr. Cunningham's expert opinion, "the Plan of Allocation provides equivalent benefits to all Class Members." Cunningham Decl., Filing No. 373-2 at ¶ 17.

## 2.  The allocation plan has two distributions.

In the Initial Distribution, the Settlement Administrator will distribute the cash payments to Class Members entitled to receive such payments in accordance with the Allocation Plan within 45 days after Final Approval, or within 45 days of receiving a Form W-9 from the Class Member if required, whichever occurs later. Filing No. 373-9, ¶ 3.1.3 at 6. After the Initial Distribution is complete, 210 days after the first mailing of distribution checks, the Settlement Administrator will determine the remaining value of the Common Fund. *Id*. ¶ 3.3.6 at 8. A second distribution will be made to the Class Members who cashed their first distribution checks, and the amount to be distributed will be determined by (a) dividing the cash component of the remaining Net Settlement Fund by the sum of the Net Damages Claims for all Class Members who cashed the first distribution check; and (b) multiplying the resulting percentage by a particular Class Member's

15

Net Damages Claim to arrive at the amount of that Class Member's second cash payment. *Id*. The second round of cash payments will be handled in the same manner as the first round of cash payments. *Id*.

Within 21 days after Final Approval, NextGear will record the $2,500,000 in setoff credits against the accounts of Class Members entitled to receive such setoff credits in NextGear's internal accounting records in accordance with the Allocation Plan. *Id*. 3.1.4 at 7.

Finally, any portion of the Net Settlement Fund that remains unclaimed after the Second Distribution will be used to fund a *cy pres* award to the Indiana Bar Foundation, because the State of Indiana has a strong connection to this case. Indiana is the chosen forum and Indiana law (except for the California subclass) was the chosen law in the Floorplan Agreement. Alternatively, the Court may exercise its discretion to designate another *cy pres* recipient. *Id*. ¶ 3.4 at 9.

**F.      Release of Claims.**

Once the settlement becomes final and NextGear funds the Settlement Fund, Plaintiffs and Class Members will release any and all claims against NextGear (and certain related persons and entities) based on the Floorplan Agreements. The details of the release are contained in Article 8 of the Settlement Agreement. *See id*. Art. 8 at p. 16.

**G.      Fees and Expenses Sought Are Reasonable and Appropriate.**

No attorneys' fees, expenses, or class representative awards will be distributed out of the Settlement Fund without the Court's approval. Pursuant to the Court's Preliminary Approval Order (Filing No. 378), Plaintiffs have filed a Motion for Attorneys' Fees, Expenses, and Representative Plaintiffs' Incentive Awards (Filing No. 383).

Class Members therefore will have adequate opportunity to object to these costs, fees, and awards. The Settlement Agreement provides that Plaintiffs may seek an award for attorneys' fees, litigation costs, and Settlement Administrator Fees. *See* Settlement Agreement Art. 9 at p. 17. Plaintiffs are seeking an attorneys' fee payable to Class Counsel in a total amount that shall

not exceed $2,250,000 (which is one-third of the Common Fund) and an award of costs and expenses of counsel in an amount that shall not exceed $300,000. *Id.*, ¶ 9.2 at p. 17. In addition, Plaintiffs are seeking payment of the reasonable and necessary Class Settlement Notice and Administrative Costs, which shall not exceed $400,000 from the Common Fund, $50,000 of which were required to be (and were) pre-paid by NextGear within ten (10) days after entry of the Preliminary Approval Order. *Id.*, ¶ 9.4 at p. 17; *see also* Burlacu Decl. at ¶ 12. The Settlement Administrator has incurred $ 65,537.83

in settlement administration expenses associated with Class Settlement Notice to date, and will incur additional expenses as Class Members' questions and responses are received and addressed and payments are distributed. Burlacu Decl. at ¶ 13. In addition, the named Plaintiffs are seeking court approval for incentive rewards of $7,500 each for serving as class representatives.

## III.   ARGUMENT

### A.   The Proposed Settlement Is Fair, Adequate, and Reasonable.

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *see also Uhl v. Thoroughbred Tech. & Telecommunications, Inc.*, 309 F.3d 978, 986 (7th Cir. 2002). Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." Rule 23(e)(2) sets forth a list of factors that courts must consider in order to determine that the proposed settlement is "fair, reasonable, and adequate." Courts must consider whether:

(A)   the class representatives and class counsel have adequately represented the class;

(B)   the proposal was negotiated at arm's length;

(C)   the proposal treats class members equitably relative to each other; and

(D)   the relief provided by the settlement is adequate, taking into consideration:

(i)   the costs, risks, and delay of trial and appeal;

(ii)   the effectiveness of the proposed method of distributing relief;

(iii)   the terms of any proposed award of attorneys' fees;

(iv)    any agreements made in connection with the proposed settlement.

Fed. R. Civ. P. 23(e)(2).

This rule came into effect in December 2018, but "essentially codified [the] prior practice" of courts. William B. Rubenstein, et al., *Newberg on Class Actions* § 13:13 (5th ed.) ("Newberg"). Case law applying the pre-2018 version of Rule 23 therefore remains relevant to the determination of preliminary approval of a proposed settlement. *See Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, 2019 WL 2103379, at *5 (N.D. Ill. May 14, 2019) ("The six factors identified by the Seventh Circuit in *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863-64 (2014), and numerous other cases subsume most of the factors listed in Rule 23(e)(2)."); *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660, 2018 WL 6606079 at *2 (S.D. Ill. Dec. 16, 2018) (the amended Rule 23 "considerations overlap with the factors previously articulated by the Seventh Circuit").

Plaintiffs' Settlement Agreement with NextGear satisfies all of these elements.

**1.   Class Representatives and Class Counsel Have Adequately Represented the Class.**

In evaluating a class action settlement, courts must consider whether the class representatives and class counsel have adequately represented the class. Here, the class representatives have adequately represented the class. Class representatives have participated in this litigation and been available to counsel. A corporate representative of each class representative was deposed, each class representative provided documents, reviewed pleadings, and was kept apprised of the status of this litigation and settlement negotiations throughout the entire case. *See* Garner Decl., Filing No. 373-3, at ¶ 5. In addition, Class Counsel have adequately represented the class. Class Counsel have vigorously prosecuted this case for more than seven years. Class Counsel have represented the Class's interests through two rounds of motions to dismiss, an appeal to the Seventh Circuit, motions for summary judgment, multiple motions regarding class certification

issues, and extensive discovery and discovery-related motions. Together, Class Counsel have invested hundreds of thousands of dollars in litigation expenses and thousands of hours of attorney and paraprofessional time. *See* Plaintiffs' Motion for Attorneys' Fees, Expenses, and Representative Plaintiffs' Incentive Awards (Filing No. 383), and Garner Declaration ("Garner Decl." at Filing No. 373-2), Swanson Declaration ("Swanson Decl." at Filing No. 373-3), DeLaney Declaration ("DeLaney Decl." at Filing No. 373-4), Murphy Declaration ("Murphy Decl." at Filing No. 373-5), and Felder Declaration ("Felder Decl." at Filing No. 373-6).

### 2. The Settlement Agreement Was Negotiated at Arm's Length.

In evaluating a class action settlement, courts must consider whether it was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). This case could not be further from the "product of collusion" that gives rise to this concern. *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 279 (7th Cir. 2002). First, the Settlement Agreement is the product of more than seven years of litigation, not the type of quick settlement that sometimes raises concerns about collusion. *See Vasquez v. Coast Valley Roofing, Inc*., 266 F.R.D. 482, 489 (E.D. Cal. 2010) ("By the time the settlement was reached, the litigation had proceeded to a point in which both plaintiffs and defendants had a clear view of the strengths and weaknesses of their cases."). The parties have litigated most of the issues in the case and the Court has narrowed the class, the causes of action, and the number of defendants.

Second, the participation of an experienced mediator in the settlement negotiations "reinforces that the Settlement Agreement is non-collusive." *Johnson v. Brennan*, 2011 WL 1872405, at *1 (S.D.N.Y. May 17, 2011). Here, the Parties participated in two mediation sessions: one with a Seventh Circuit mediator and another day-long mediation with a highly qualified neutral mediator, and even then negotiated for months afterward before reaching an agreement in

principle. *See* Garner Decl., ¶ 9-10. *See also* Swanson Decl., Delaney Decl., Murphy Decl., and Felder Decl., Filing Nos. 373-2 – 373-6. Following the agreement in principle, the Parties continued to negotiate for months over the details, the fine print, of the settlement. *Id.* "A strong presumption of fairness attaches to a settlement agreement when it is the result of this type of negotiation." *Great Neck Capital Appreciation Inv. P 'ship, L.P. v. PricewaterhouseCoopers*, L.L.P., 212 F.R.D. 400, 410 (E.D. Wis. 2002) (discussing settlement negotiations with "an experienced mediator" and over "several telephone conferences"); *see also Wong*, 773 F.3d at 864 ("Finally, and importantly, the settlement was proposed by an experienced third-party mediator after an arm's-length negotiation where the parties' positions on liability and damages were extensively briefed and debated").

Third, the terms of the Settlement Agreement itself reinforce its non-collusive nature. The consideration to be paid by NextGear is significant. The credit component of the Settlement Agreement is based upon a highly-litigated issue by means of which the Court recognized that NextGear's right to set off "may reduce the amount of any liability to the Plaintiffs in the event that the Plaintiffs are successful on their claim." (Filing No. 262 at 33). No unclaimed funds will revert to NextGear. *See Mirfasihi v. Fleet Mortg. Corp.,* 356 F.3d 781, 785 (7th Cir. 2004) ("reversion of unclaimed refunds to the putative wrongdoer" is indicative of collusion). Class Counsel's proposed fees are well within the reasonable range. *See Ormond v. Anthem, Inc.,* No. 1:05-CV-01908-TWP, 2012 WL 5878031, at *5 (S.D. Ind. Nov. 20, 2012) (collecting cases in which courts have approved "a percentage market rate of 33.3%"). *See also Burnett v. Conseco Life Ins. Co.,* 2021 WL 119205, at *10 (S.D. Ind. Jan. 13, 2021) (approving one-third of a common fund as legal fees in class action).

### 3. The Proposed Settlement Agreement Apportions Relief Equitably Among Class Members Based upon a Pro Rata Formula.

As discussed in the Summary of Settlement, Section II *supra*, the proposed settlement is based upon a pro rata formula. The $6.75 million settlement amount is an excellent result for the class. The settlement amount is a substantial settlement that recovers millions of dollars in interest Plaintiffs' expert calculated that NextGear overcharged the Class Members. It affords Class Members immediate relief in the form of a cash payment or credits toward negative account balances. *See Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 201 (S.D. N.Y. 2012) ("immediate payment of substantial amounts to Class Members," supports final approval "even if it means sacrificing speculative payment of a hypothetically larger amount years down the road") (quotation marks omitted). While the *pro rata* settlement amounts are necessarily reflective of the number of transactions a Class Member had, over a quarter of Class Members receiving a cash payment will receive more than $100, and the highest cash payment amount is almost $6,400. *See* Settlement Agreement, Exhibit B-1 (filed under seal). Over half of the Class Members receiving a credit will receive more than $100, and the highest credit amount is over $16,000. *Id*. at Exhibit B-2 (filed under seal). Some Class Members will receive both a credit and a cash payment as set forth in Exhibits B-1 and B-2 to the Settlement Agreement (both exhibits filed under seal).[7]

Of the 17,208 Class Members, 10,405 Class Members do not have a negative balance with NextGear. NextGear claims that the remaining Class Members have a negative account balance with NextGear. The Class Members that NextGear claims have a negative account balance on average have overcharged interest damage claims approximately 28% higher than those Class

---

[7] The recoveries for Class Members receiving both a credit and cash payment are listed in the exhibits to the Settlement Agreement twice, once in Exhibit B-1 for their allocated cash payment and once in Exhibit B-2 for their credit allocation.

Members receiving a cash payment. Cunningham Decl., Filing No. 373-2 at ¶ 16. Thus, while the Class Members receiving a credit are recovering at a higher percentage than the Class Members that are receiving a cash payment, because the Class Members receiving a credit payment have on average higher damage claims, in Mr. Cunningham's expert opinion, the Plan of Allocation provides equivalent benefits to all Class Members. *Id.* at ¶ 16-17. The proposed settlement is undoubtedly within the "range of possible approval." *General Motors*, 594 F.2d at 1124 (7th Cir. 1979).

Furthermore, the *cy pres* relief will be used only for the small portion of the Common Fund, if any, that remains unclaimed after two distributions to Class Members. The use of a *cy pres* award is appropriate in these circumstances. *See* American Law Institute, Principles of the Law of Aggregate Litigation § 3.07 (2010) (endorsing this approach); *Aranda v. Caribbean Cruise Line, Inc.*, No. 12 C 4069, 2017 WL 818854, at *5 (N.D. Ill. Mar. 2, 2017), *aff'd*, 896 F.3d 792 (7th Cir. 2018) (rejecting objections to *cy pres* award for unclaimed funds after multiple distributions). The Indiana Bar Foundation is an appropriate proposed *cy pres* recipient because Indiana was the contractually chosen forum for the class, and Indiana law, with the exception of the California subclass, is the contractually chosen law for the class. The Court may also exercise its discretion to choose a different *cy pres* recipient if it so wishes.

### 4.   The Relief Provided for the Class Is Substantial and Appropriate.

The $6.75 million settlement amount is an excellent result for the class, and thus meets Rule 23(e)(2)(D)'s adequacy requirement. As set forth above, the settlement amount is over 70% of the interest Plaintiffs' expert calculated that NextGear overcharged. It affords Class Members immediate relief in the form of a cash payment or credits toward negative account balances. It bears repeating that over a quarter of Class Members receiving a cash payment will receive more

than \$100, and the highest cash payment amount is almost \$6,400. *See* Settlement Agreement, Exhibit B-1 (filed under seal). And again, over half of the Class Members receiving a credit will receive more than \$100, and the highest credit amount is over \$16,000. *Id*. at Exhibit B-2 (filed under seal. Some Class Members will receive both a credit and a cash payment.

The relief provided for the class is clearly substantial and appropriate.

### a)  Trial and Appeal Would Present Significant Costs, Risk, and Delay.

Rule 23(e)(2) may require courts "to forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment. "[T]he essence of a settlement is compromise an[d] abandonment of the usual total-win versus total-loss philosophy of litigation in favor of a solution somewhere between the two extremes." *Armstrong v. Board of School Dir. of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) (abrogated on other grounds) (citations omitted). A "future victory is not as valuable as a present victory. Continued litigation carries with it a decrease in the time value of money, for '[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now.'" *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (quoting *Reynolds*, 288 F.3d at 284).

While Plaintiffs are confident in their claims against NextGear and their ability ultimately to prevail at trial, inherent risk exists in continuing to litigate this action. The Court has narrowed the case to a breach of contract case and ruled on the nature of the evidence it will consider regarding the ambiguities of the Floorplan Agreement. Significant risk exists that the Court would rule completely in favor of one party or the other. Even though this case has been extensively litigated through motions to dismiss, discovery, motions for summary judgment, class certification motions and an appeal, additional work would remain ahead absent settling this dispute, including

but not limited to completing additional discovery and preparing this class action for trial. Garner Decl. ¶ 18. Pretrial and trial proceedings would add significant costs and delays to the litigation. The likely complexity, length, and expense of trial weighs heavily in favor of the fairness, reasonableness, and adequacy of the proposed Settlement Agreement. Continuing to litigate this case would require vast expense and a great deal of time, on top of that already expended. Further, Plaintiffs anticipate that, even if they prevail at trial, NextGear would appeal any ruling of the Court. Such proceedings would add significant costs and delays to this already-lengthy litigation.

In light of the potential costs, risks, and delay of trial and appeal, the proposed settlement presents a favorable result for the Class.

### b) The Proposed Method for Distributing Relief is Simple and Effective.

This Rule 23(e)(2) factor requires courts to look at "the method of processing class-member claims." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig*., 330 F.R.D. 11, 40 (E.D.N.Y. 2019) (citing Fed. R. Civ. P. 23(e)(2)(C)(ii). "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Id*. at 40 (citing Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment). Here, the process for claiming recovery is clearly not demanding on Class Members and their successors; the Common Fund will be distributed without the need for anyone to submit a claim form.

The plan for distributing relief is straightforward. There is no dispute about who is a member of the Class or the calculation of each Class Member's recovery under the proposed settlement. Both are determined using objective facts about the Class Members and the value of their transactions based on information and data found in NextGear's own records. Plaintiffs have engaged Donlin Recano, a company that specializes in claims administration, to conduct the notice

24

and distribution processes. *See* Declaration of Nellwyn Voorhies, Filing No. 373-8, ¶¶ 1-3. Over 30 years, Donlin Recano has provided notice to millions of Class Members and has administered billions of dollars in claims. *Id*. at ¶ 3. Further, Donlin Recano is intimately familiar with this Class as it sent the notice of class certification in April 2020 (*id*. at ¶ 1) and sent the Class Settlement Notice in July 2021. Plaintiffs and Class Members request that Donlin Recano's continued service as Settlement Administrator be confirmed by the Court for the purposes of continuing to respond to Class Members with questions and distributing Settlement proceeds in accordance with the Allocation Plan.

### c)   The Proposed Attorneys' Fee Award Is Reasonable and Fair.

"The Seventh Circuit Court of Appeals uses a percentage basis rather than a lodestar or other basis when determining a reasonable fee." *Will*, 2010 WL 4818174, at *2 (*citing Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir.1998); *Florin v. Nationsbank of Georgia, NA*., 34 F.3d 560, 566 (7th Cir. 1994)); *see also Cooper v. IBM Pers. Pension Plan*, No. 99-829-GPM, 2005 WL 1981501, at *3 (S.D. Ill. Aug. 16, 2005), *reversed and remanded on other grounds*, 457 F.3d 636 (7th Cir. 2006) ("The approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred on the class."). Class Counsel is seeking $2.25 million in fees, or one-third of the Common Fund. As detailed in Plaintiffs' Motion for Attorneys' Fees, Expenses, and Representative Plaintiffs' Incentive Awards (Filing No. 383), one-third of a common fund is a standard rate in complex class actions that reflects the risk that counsel takes on by accepting a case that may yield no fee at all. *See Ormond*, 2012 WL 5878031, at *5 (collecting cases in which courts have supported "a percentage market rate of 33.3%" when granting attorneys' fees). *See also*, *Burnett v. Conseco Life Ins. Co.*, 2021 WL 119205, at *10 (S.D. Ind. Jan. 13, 2021) (approving one-third of a common fund as legal fees in class action).

Class Counsel have further agreed to cap the costs they are seeking reimbursement for to the sum of $300,000. Garner Decl. at ¶ 10. Any expenses above $300,000 will be borne by Class Counsel. *Id*.

Given the complexity of the case and the positive results for the Class, such fee and costs awards are reasonable and fair.

### d) There Are No Other Agreements to Be Identified under Rule 23(e)(3) Aside from the Settlement Agreement.

Rule 23(e)(3) requires the parties seeking preliminary approval of a class action settlement to "file a statement identifying any agreement made in connection with the proposal." Plaintiffs attached to the Declaraton of Nellwyn Voorhies (Filing No. 373-7) the agreement between Class Counsel and Donlin Recano regarding administration of the settlement. Plaintiffs are not parties to, and are not aware of, any other agreement to be identified under Rule 23(e)(3).

### B.   The Class Settlement Notice Process Provided Sufficient Notice.

The notice that has been provided to the Class Members satisfies the requirements of Rules 23(c)(2)(B), 23(e)(1), and due process. Rule 23(c)(2)(B) requires that a court that certifies a class under Rule 23(b)(3) must provide the class with the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Further:

The notice must clearly and concisely state in plain, easily understood language:

    (i)      the nature of the action;

    (ii)     the definition of the class certified;

    (iii)   the class claims, issues, or defenses;

    (iv)   that a class member may enter an appearance through an attorney if the member so desires;

(v)     that the court will exclude from the class any member who requests exclusion;

(vi)    the time and manner for requesting exclusion; and

(vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

The "reasonable effort" proviso recognizes that perfect notice is rarely achievable. Rather, counsel must "act[] reasonably in selecting means likely to inform persons affected." *Weigner v. New York*, 852 F.2d 646, 649 (2d Cir.1988); *see also In re VMS Sec. Litig.*, No. 89 C 9448, 1994 WL 386397, at *3 (N.D. Ill. July 20, 1994) ("In approving the use of first-class mail as the means for effecting notice, the Supreme Court has specifically recognized that 'reasonable risks that notice might not actually reach every beneficiary are justifiable.'") (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 319 (1950)).

Notice must also satisfy Rule 23(e)(1), which requires that notice of a class action settlement is directed "in a reasonable manner." "'The contents of a Rule 23(e) notice are sufficient if they inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, and that any class member may appear and be heard at the hearing.'" *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 351 (N.D. Ill. 2010) (quoting 3 Newberg § 8:32).

The notice provided by the Settlement Administrator satisfies both of these requirements. Pursuant to the Preliminary Approval Order, Donlin Recano mailed the Class Settlement Notice to each Settlement Class Member and emailed the Class Settlement Notice to those Class Members for which it was provided an email address. Burlacu Decl. at ¶ 6 and July Burlacu Aff. attached thereto. Donlin Recano also made the Class Settlement Notice and other key documents filed in this case available on a public settlement website, and established and maintained a toll-free hotline to inform and field potential questions from Settlement Class Members. Burlacu Decl. at ¶¶ 3-4.

The Notice distributed to the Settlement Class communicates in plain language (1) the issues in this litigation, (2) the benefits of the settlement and method for allocating the cash payments and credit allocations, (3) the Class Members' estimated Initial Distribution amounts, (4) the consequences of staying in the Settlement Class (including the full language of the Settlement Agreement's Release provisions, (5) the attorneys' fees, expenses, and service awards sought by Class Counsel and the representative Plaintiffs, and (6) details on how a Class Member may object to the Settlement Agreement or the petition for attorneys' fees and costs. *See* Burlacu Decl. Exhibit C. The Notice also supplies the address for the settlement website and provides a toll-free telephone hotline. *See id.* This Court has concluded that the proposed notice is "the best means of notice to Class Members that is practicable under the circumstances and, when completed, shall constitute due and sufficient notice of the Settlement and the Final Approval Hearing to all persons affected by and/or entitled to participate in the Settlement or the Final Approval Hearing, in full compliance with the requirements of due process and the Federal Rules of Civil Procedure." Preliminary Approval Order at ¶ 10.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order (1) granting final approval of the Settlement Agreement with Defendant NextGear, finding its terms fair, reasonable, and adequate; (2) designating Plaintiffs as Settlement Class Representatives; (3) appointing attorneys from Sher Garner Cahill Richter Klein & Hilbert, L.L.C; Jones Swanson Huddell & Daschbach LLC; Kerry Murphy Law LLC; DeLaney & DeLaney LLC; and Cassie Felder Law Firm as Settlement Class Counsel; (4) approving the Allocation Plan set forth in the Settlement Agreement; and (5) confirming the appointment of Donlin Recano as Settlement

Administrator for the purposes of continuing to respond to Class Members with questions and distributing Settlement proceeds in accordance with the Allocation Plan.

Respectfully submitted, this 27ᵗʰ day of August, 2021.

/s/ Lynn E. Swanson
Gladstone N. Jones, III (*pro hac vice*)
Lynn E. Swanson (*pro hac vice*)
JONES SWANSON HUDDELL &
DASCHBACH LLC
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
Telephone: (504) 523-2500
Facsimile: (504) 523-2508
gjones@jonesswanson.com
lswanson@jonesswanson.com

James M. Garner (*pro hac vice*)
Ryan D. Adams (*pro hac vice*)
Jacob A. Airey (*pro hac vice*)
SHER GARNER CAHILL RICHTER KLEIN & HILBERT,
L.L.C.
909 Poydras Street, Suite 2800
New Orleans, Louisiana 70112
Telephone: (504) 299-2100
Facsimile: (504) 299-2300
jgarner@shergarner.com
radams@shergarner.com
jairey@shergarner.com

Kerry A. Murphy (*pro hac vice*)
KERRY MURPHY LAW LLC
715 Girod Street, Suite 250
New Orleans, LA 70130
Telephone: (504) 603-1502
Facsimile: (504) 603-1503
kmurphy@kerrymurphylaw.com

Kathleen A. DeLaney (#18604-49)
DELANEY & DELANEY LLC
3646 North Washington Blvd.
Indianapolis, IN 46205
Telephone: (317) 920-0400
Facsimile: (317) 0404
Kathleen@delaneylaw.net

Cassie E. Felder (*pro hac vice*)
THE CASSIE FELDER LAW FIRM
7515 Jefferson Hwy., #313
Baton Rouge, LA 70806
Main: (504) 232-1733
Cell: (504) 400-1127
cassie@cassiefelderlaw.com

**Attorneys for Plaintiffs and the Class**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been served upon the following counsel of record via the Court's electronic service notification system, this 27th day of August, 2021:

Kathleen Ann DeLaney
kathleen@delaneylaw.net

Steven D. Groth
sgroth@boselaw.com

David J. Jurkiewicz
djurkiewicz@boselaw.com

Paul D. Vink
pvink@boselaw.com

Cassie E. Felder
cassie@cassiefelderlaw.com

James M. Garner
jgarner@shergarner.com

Ryan D. Adams
radams@shergarner.com

Kerry A. Murphy
kmurphy@kerrymurphylaw.com

Gladstone N. Jones
gjones@jonesswanson.com

Tracey K. Ledbetter
traceyledbetter@eversheds-sutherland.com

Jacob A. Airey
jairey@shergarner.com

Thomas M. Byrne
tombyrne@eversheds-sutherland.com

/s/ Lynn E. Swanson
Lynn E. Swanson